**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BRETT BENSON, RAYMOND SLEDGE,** | ) | |
| **KENNETH PACHOLSKI, KATHRYN TYLER,** | ) | |
| **MICHAEL HALL SR., RICK PERE,** | ) | |
| **and the ILLINOIS ASSOCATION OF** | ) | |
| **FIREARMS RETAILERS,** | ) | **FILED: August 13, 2010** |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 10-04184** |
| | ) | **Judge Ronald A. Guzman** |
| **THE CITY OF CHICAGO and** | ) | **Magistrate Judge Geraldine Soat** |
| **RICHARD M. DALEY, Mayor of the** | ) | **Brown** |
| **City of Chicago,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>FIRST AMENDED COMPLAINT</u>
<u>FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF</u>**

Plaintiffs RAYMOND SLEDGE, BRETT BENSON, KATHRYN TYLER, KENNETH

PACHOLSKI, MICHAEL HALL SR., RICK PERE, and the ILLINOIS ASSOCIATION OF

FIREARMS RETAILERS, by and through their attorneys, for their complaint against

Defendants CITY OF CHICAGO and RICHARD M. DALEY, Mayor, state as follows:

**<u>INTRODUCTION</u>**

1.      This is an action to vindicate the federal constitutional rights of residents of

Chicago, Illinois, to keep and bear arms under the Second and Fourteenth Amendments to the

United States Constitution.

2.      The Supreme Court has unequivocally declared that the Second Amendment

"guarantee[s] the individual right to possess and carry" arms. *District of Columbia v. Heller*, 128

1

S. Ct. 2783, 2797 (2008).  In particular, *Heller* struck down a ban on the possession of handguns, "the most popular weapon chosen by Americans for self-defense in the home."  *Id.* at 2818.  The City of Chicago ("the City") has long denied this fundamental right to its citizens, banning, as of 1982, all possession of handguns for any purpose whatsoever.  In *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), the Supreme Court made clear that, like other fundamental constitutional rights, the right to keep and bear arms is protected against infringement by state and local governments.  Accordingly, the City's total ban on handgun possession was patently unconstitutional.

3.      As the Supreme Court has noted, the City views the Second Amendment as "a second-class right," *id.* at 3044 (plurality opinion), to be "singled out for … specially unfavorable [] treatment," *id.* at 3043 (majority opinion).  Thus, in the wake of *McDonald*, the City promptly enacted an ordinance imposing a host of new restrictions that have the purpose and effect of preventing Plaintiffs and other law-abiding residents of Chicago from exercising their fundamental right to keep and bear firearms for self-defense and other lawful purposes.

## PARTIES

4.      Plaintiff Brett Benson is a resident of Chicago and a citizen of the United States.

5.      Plaintiff Raymond Sledge is a resident of Chicago and a citizen of the United States.

6.      Plaintiff Kenneth Pacholski is a resident of Chicago and a citizen of the United States.

7.      Plaintiff Kathryn Tyler is a resident of Chicago and a citizen of the United States.

8.      Plaintiff Michael Hall Sr. is a resident of Chicago and a citizen of the United States.

9.     Plaintiff Rick Pere is a resident of Round Lake, Illinois, and a citizen of the United States.

10.     The Illinois Association of Firearms Retailers ("ILAFR") is a non-profit entity organized under the law of Illinois and Section 501(c)(6) of the Internal Revenue Code to promote the interests of the firearms retail industry and the protection of Second Amendment rights.  Its principal place of business is in Carbondale, Illinois.  Its members engage in the sale of firearms, the operation of shooting ranges, and the operation of combined retail operations/firing ranges in Illinois.

11.     Defendant City of Chicago is a political subdivision of the State of Illinois.

12.     Defendant Richard M. Daley is the Mayor of Chicago, which is his principal place of business, and he is sued in his official capacity.

13.     The City of Chicago, Mayor Daley, and their officers, agents, and employees will sometimes hereafter be referred to as "Defendants."

**JURISDICTION**

14.     This action seeks relief pursuant to 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 1983 and 1988.  Therefore, jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3), in that this action seeks to redress the deprivation, under color of law, of rights secured by the United States Constitution.

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

**BACKGROUND**

16.    On June 28, 2010, the Supreme Court of the United States held in *McDonald v.*
*Chicago*, 130 S. Ct. 3020 (2010), that the Second Amendment right to keep and bear arms
restrains state and local governments through incorporation in the Fourteenth Amendment.

17.    The Supreme Court remanded the case for the lower courts to apply the Second
Amendment to the challenged Chicago ordinance that effectively banned private ownership of
handguns within the city.  In anticipation that the ordinance challenged in *McDonald* would be
struck down, the City Council of Chicago, on July 2, 2010, amended the Municipal Code of
Chicago as it pertains to firearms ("the Ordinance") (a copy is attached as Ex. A).

18.    In his statements during the July 2, 2010 City Council meeting, Alderman Fioretti
declared that the vindication of Second Amendment rights in *McDonald* "was not a good
decision for law-abiding citizens."  Alderman Solis concurred, stating that "the decision made by
the Supreme Court is not really in the best interests of our citizens."  Alderman Dixon denounced
what she called the Court's "blatant … misreading of the law."  Another Alderman likewise
criticized the Justices of the Supreme Court, saying that "[w]e're here today because of their
poor judgment … of how life is in large urban settings and cities like … Chicago.  I don't know
how they can say we would be safer by allowing individuals, even if they are law-abiding
citizens, to own and possess firearms in their homes."

19.    Alderman Lyle forecast that future generations would react to the Supreme Court's
decision in *McDonald* with "shock and awe.  They will be amazed that in a country that is a
leader of the free nations that we have such a reckless love affair with guns…. They're going to
wonder what madness overtook this country.  But that's where we find ourselves. … We find

4

ourselves with a Court that used to be occupied by literary legal giants, who now use this to take a slap at the leaders of the City of Chicago."

20. Alderman Hairston complained about what he described as "the message the Supreme Court is sending. I think that's the same message that the gang bangers are sending, that a life is not valuable. That truly hurts my soul here. I have to say it: I think the Supreme Court is wrong."

21. Alderman Mary Ann Smith echoed her fellows on the City Council, vowing to limit gun ownership with new legal restrictions and thanking "everyone who has worked to try and create as restrictive a tool as possible." In describing the new Ordinance on July 1, 2010, Chicago Corporation Counsel Mara Georges lauded its bans and restrictions and concluded that "[w]e've gone farther than anyone else ever has."

## THE NEW ORDINANCE

22. Several of the provisions of the Ordinance infringe Plaintiffs' constitutional right to keep and bear arms and are therefore challenged here.

23. Section 4-144-010 states that it shall be unlawful for any person "to engage in the business of selling, or to sell, give away or otherwise transfer, any firearm." Section 8-20-100 states that "no firearm may be sold, acquired or otherwise transferred within the city, except through inheritance of a firearm." Thus, apart from bequests, the Ordinance imposes a total ban on the sale or transfer of firearms within Chicago.

24. Section 8-20-110 prohibits possession of a firearm without a Chicago Firearms Permit, and Section 8-20-120 states that no person can obtain such a permit without "an affidavit signed by a firearm instructor certified by the State of Illinois … attesting that the applicant has completed a firearm safety and training course, which, at a minimum, provides one hour of range

training." Yet Section 8-20-280 states that "[s]hooting galleries, firearm ranges, or any other place where firearms are discharged are prohibited." Thus, the Ordinance dictates that there can be no place in Chicago where one can obtain the firearms training that the Ordinance itself mandates for legal possession of a firearm.

25.     Section 8-24-010 states that "[n]o person shall fire or discharge any firearm within the city, except in the lawful self-defense or defense of another" or for delimited hunting purposes. Although on its face this purports to preserve the right to use a firearm in self-defense, by proscribing the discharge of a gun for training or practice purposes, the Ordinance dictates that the residents of Chicago cannot obtain in Chicago the firearms training that the Ordinance itself requires and that is otherwise desired by Plaintiffs and other gun owners to achieve and maintain proficiency in the use of their firearms.

26.     Section 8-20-040 prohibits the possession of more than one "assembled and operable" firearm within the home, even by someone who is fully licensed to possess a firearm by the Ordinance. Any other firearms owned by that person must be disassembled or otherwise rendered "inoperable." If there two or more persons in the home with CFPs and registration certificates, each such person is allowed only one gun in an operable condition. The Ordinance thus bars a licensed gun owner from keeping more than one operable firearm in the home for self-defense, either to have a firearm available in more than one room of the dwelling in case of emergency, or to have a firearm available to more than one adult member of the family. In the event of a home invasion, all family members would be dependent upon the ability of a single person in a single location to obtain immediate access to a single operable weapon.

27.     Section 8-20-020 renders it "unlawful for any person to carry or possess a handgun, except when in the person's home." Section 8-20-030 renders it "unlawful for any person to

carry or possess a long gun, except when in the person's home or fixed place of business." The term "home" is sharply limited, defined to exclude "any garage, including an attached garage, on the lot" and "any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas." MCC § 8-20-010. Section 8-20-140(a) renders it "unlawful for any person to carry or possess a firearm without a firearm registration certificate," and Section 8-20-180(c) states that "[a] registration certificate shall only be valid for the address on the registration certificate," and "[e]xcept in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate." "Lawful transportation" means transportation by a person who has a FOID card, a CFP, and a firearm registration certificate, and whose firearm is "(i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case." MCC § 8-20-010. The Ordinance thus imposes a total ban in Chicago on possessing or carrying a firearm for personal protection outside one's "home" (as narrowly defined by the Ordinance), except in one's fixed place of business where long guns, but not handguns, are permitted.

28. As contemporaneous statements from City officials attest, the Mayor and City Council designed the Ordinance to negate the Supreme Court's vindication of Second-Amendment rights in *McDonald*, to be as "restrictive a tool as possible" for suppressing gun ownership, and to go "farther than anyone else ever has" in restricting the exercise of the right to keep and bear arms.

29. Violation of the Ordinance is punishable by fines up to $10,000 and incarceration for up to six months. Each day that such violation exists constitutes a separate offense. MCC § 8-20-300(a) & (b).

30.     Defendant Daley is responsible for enforcing the Ordinance through agencies and officers under his direction.  Mayor Daley appoints and supervises most municipal officers in Chicago, including (i) the Director of the Department of Administrative Hearings, which has authority to adjudicate enforcement of the Ordinance, and (ii) the Superintendent of Police, who has the authority to arrest Chicago residents for violations of the Ordinance and to make further rules and regulations under the Ordinance.  MCC §§ 2-4-010, 2-4-020, 2-14-010, 2-14-190, 2-84-040, 8-26-090.  Mayor Daley supervises the conduct of all municipal officers and has general authority to enforce (or to designate the officer who enforces) the Ordinance.  MCC § 2-4-030.  Mayor Daley signs all firearms licenses and permits under the Ordinance,  MCC §§ 2-4-040, 8-20-110, 8-20-140, and supervises the Superintendent of Police, who transmits all denials of firearms licenses under the Ordinance, MCC § 8-20-200.

## THE IMPACT OF THE ORDINANCE ON THE PLAINTIFFS

31.     Plaintiff Brett Benson is a 37-year-old, Caucasian male, and a resident of Chicago.  He is married and has three young children.  He is a trader on the Chicago Mercantile Exchange.  He owns a farm in central Illinois about two hours from Chicago.

32.     Mr. Benson desires to keep more than one operable handgun and long gun in his home for the protection of his family and property, but the Ordinance prohibits him from doing so.  He also desires to transport firearms between his farm and his home in Chicago.

33.     But for the Ordinance, Mr. Benson would on occasion carry a handgun for self-defense when outside his home, as that term is defined in the Ordinance.

34.     To purchase a gun under the current legal regime, Mr. Benson must travel outside the city at least twenty miles from his home.  He would buy firearms within the city if sales of these items were permitted.

8

35.    Plaintiff Raymond Sledge is a 53-year-old, African-American male, and a resident of Chicago.  He has been employed for the last sixteen years as a teaching assistant at a public elementary school in Chicago.

36.    Although he owns his own house, his current legal residence is his mother's house a few blocks away, in the south side neighborhood of Greater Grand Crossing.  He moved in with his mother several years ago to take care of her after his father passed away.  They share their Chicago home with Mr. Sledge's brother; Raymond Sledge assists in his brother's care, including taking him for kidney dialysis every week.

37.    The Sledge home is located just a few blocks from a high-crime area, and Mr. Sledge often has to travel through that part of town.  According to the City Council representative for the area, Alderman Lyle, the neighborhood has a shortage of commercial establishments, and residents complain of high crime and poor city services.  Since June 18, 2010, the following crimes have been reported within an eight-block radius of the Sledge home: battery, aggravated assault with a handgun, aggravated assault with a knife, and aggravated vehicular hijacking.

38.    Both Mr. Sledge's house and that of his mother have been burglarized; in each instance the burglars broke into the garage and stole property.  But a garage (attached or unattached) is expressly excluded from the statutory definition of one's "home," MCC § 8-20-010, and therefore the Ordinance would criminalize Mr. Sledge's use of a firearm to defend his life, family, or property in his own garage.

39.    Mr. Sledge grew up hunting with his father and owns two long guns that he is allowed to have within the city limits because they were grandfathered in the early 1980s when

the law preceding the current Ordinance was enacted.  He also owns several handguns but has been barred from keeping them in his residence by the statute that was challenged in *McDonald*.

40.    Mr. Sledge would keep his handguns in his residence in Chicago if the law permitted.

41.    In order to defend himself, Mr. Sledge also wants to be able to carry his handgun outside his home, as defined in the Ordinance, but he is prevented from doing so by the Ordinance.

42.    Mr. Sledge believes that he and other private citizens should be trained in responsible handling of their firearms and should practice with them to maintain proficiency. But he cannot practice or train with his firearms in Chicago because the Ordinance bans firing ranges and the discharge of firearms within city limits.  Nor can he purchase firearms within Chicago—again he must leave the city to do so.  He currently uses the firing range at a gun shop outside Chicago city limits some twenty minutes from his residence, but would use a closer facility if it existed within the city.

43.    Plaintiff Kenneth Pacholski is a 52 year-old, Caucasian male.  Plaintiff Kathryn Tyler is a 53 year-old, Caucasian female.  They are a married couple and are residents of Chicago.  Mr. Pacholski is self-employed in the aircraft-restoration business.  Dr. Tyler is a veterinarian and the owner of her own animal clinic.

44.    Mr. Pacholski and Dr. Tyler own firearms but, because of the prior ban, kept them outside the city limits.  They desire to keep more than one operable handgun each in their home, but are precluded from doing so under the Ordinance.

45.    Dr. Tyler, on occasion, has a desire to possess a handgun for armed self-defense at her place of business.  Dr. Tyler would much prefer to use a handgun rather than a long gun for

such purposes, both because a handgun is easier to use and because transporting a long gun is much less practicable. For example, in the past, the emergency alarm at her business has activated in the middle of the night and she has had to proceed alone to address the situation. She would carry a handgun for personal self-defense in such circumstances were she not precluded from doing so under the Ordinance.

46. To purchase a gun under the current legal regime, or to practice with and receive training for their firearms at a range, Mr. Pacholski and Dr. Tyler must travel outside the city. They would buy firearms within the city if sales of these items were permitted by the law; they would also practice at ranges within the city if such ranges were permitted to operate under the law.

47. Plaintiff Michael Hall Sr. is a 52-year-old, Caucasian male, and a resident of Chicago. He is married and has five children. He is employed in the telecommunications industry.

48. Mr. Hall is an ex-Marine and during his military service he repeatedly received an "expert" rating in firearms marksmanship.

49. Mr. Hall often works from his home office. He desires to keep more than one operable handgun in his home, so that he can have a ready means of self- and family-defense in both his bedroom and his home office.

50. Mr. Hall desires to be able to keep and bear arms for purposes of self-defense on all parts of his property, including the curtilage of his home. For example, on two separate occasions, Mr. Hall's truck has been burglarized while parked in the driveway of his home. The Ordinance, however, prohibits Mr. Hall from bearing arms in the driveway of his home.

11

51.    Mr. Hall would shop for and purchase firearms and firearms accessories within the city if sales of these items were not prohibited by the Ordinance.

52.    Mr. Hall desires to transport firearms between his home and western Illinois, Iowa, and South Dakota, where he travels for hunting and target-shooting purposes.

53.    Plaintiff Rick Pere is a 57-year-old male, married, and a resident of Round Lake, Illinois.  He is self-employed as a police-firearms and security-firearms instructor.  He served as a police officer, in several jurisdictions in Illinois, for over fifteen years.  Mr. Pere also served for over thirty years in the U.S. Army, the Illinois Army National Guard, and the U.S. Air Force Reserves.  He has also been employed as a military contractor in Afghanistan, Iraq, and Haiti.

54.    For many years, Mr. Pere held the record for handgun marksmanship, obtained at the Cook County Sherriff's Police Academy in 1979.

55.    Mr. Pere has a wide range of firearms and firearms-instructor certifications.  For example, Mr. Pere: is certified by the United States Army Training and Doctrine Command as a military instructor; is a certified police-academy instructor; is an Illinois-certified security-firearms instructor; is certified by the Illinois Law Enforcement Training Board as a police-firearms instructor; is certified by the NRA as an instructor in pistol, rifle, shotgun, and personal-home and outside-home protection and safety.

56.    Mr. Pere desires to open a shooting range in Chicago, where he would conduct firearms training and sell firearms.  The Ordinance prohibits him from doing so.

57.    Plaintiff ILAFR has members who desire to sell firearms and to operate shooting ranges inside Chicago city limits for patronage by law-abiding residents and would do so but for the Ordinance.

58.     Under the Ordinance, Plaintiffs Sledge, Benson, Pacholski, Tyler, Hall, and Pere

face arrest, prosecution, and incarceration should they possess, carry, or transfer firearms in

violation of the Ordinance.  Mr. Pere and the members of Plaintiff ILAFR face arrest,

prosecution, and incarceration if they sell firearms or operate a shooting range in violation of the

Ordinance.

## COUNT I

### (U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983)

59.     The preceding paragraphs are incorporated herein.

60.     The Ordinance outlaws use of firearms for self-defense within the curtilage of one's

own home.  *See* MCC §§ 8-20-020, -030   The statutory definition of "home" expressly excludes

"(i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit,

including any stairs, porches, back, side or front yard space, or common areas."  MCC § 8-20-

010.

61.     Thus the Ordinance outlaws the exercise of the right to bear arms in self-defense

even when one is in one's own garage, on one's own back porch, or on the steps leading up to

one's front door.

62.     These provisions infringe upon, and impose an impermissible burden upon, the

Plaintiffs' right to keep and bear arms under the Second and Fourteenth Amendment.

## COUNT II

### (U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983)

63.     The previous paragraphs are incorporated herein.

64.     Section 4-144-010 states that it shall be unlawful for any person "to engage in the

business of selling, or to sell, give away or otherwise transfer, any firearm."  Section 8-20-100

13

states that "no firearm may be sold, acquired or otherwise transferred within the city, except

through inheritance of a firearm."

65.    These provisions thus impose a total ban on the sale or transfer of firearms within

Chicago, and thereby infringe upon, and impose an impermissible burden upon, the Plaintiffs'

right to keep and bear arms under the Second and Fourteenth Amendments.

66.    These provisions prohibit Mr. Pere and members of ILAFR from selling firearms

within Chicago and infringe upon, and impose an impermissible burden upon, the right to keep

and bear arms of all adult law-abiding residents of Chicago.

## COUNT III

### (U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983)

67.    The previous paragraphs are incorporated herein.

68.    Section 8-20-110 prohibits possession of a firearm without a CFP, and Section 8-

20-120 states that no person can obtain a CFP without "an affidavit signed by a firearm instructor

certified by the State of Illinois … attesting that the applicant has completed a firearm safety and

training course, which, at a minimum, provides one hour of range training."

69.    Yet Section 8-20-280 states that "[s]hooting galleries, firearm ranges, or any other

place where firearms are discharged are prohibited."  The Ordinance thus dictates that there can

be no place in Chicago where one can obtain the firearms training that the Ordinance itself

mandates for legal possession of a firearm.

70.    Section 8-24-010 further provides that "[n]o person shall fire or discharge any

firearm within the city, except in the lawful self-defense or defense of another" or for very

limited hunting purposes.  By proscribing the discharge of a gun for training or practice

purposes, the Ordinance in fact precludes citizens from engaging anywhere in Chicago in the training that the Ordinance itself mandates as a prerequisite to legal gun ownership.

71.    These provisions infringe upon, and impose an impermissible burden upon, Plaintiffs' right to keep and bear arms under the Second and Fourteenth Amendments.

72.    These provisions prohibit Mr. Pere and members of Plaintiff ILAFR from operating shooting ranges within Chicago and infringe upon, and impose an impermissible burden upon, the right to keep and bear arms of all adult, law-abiding residents of Chicago.

## COUNT IV

### (U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983)

73.    The previous paragraphs are incorporated herein.

74.    Section 8-20-040 prohibits the possession of more than one "assembled and operable" firearm within the home by someone who is fully licensed under the Ordinance to possess a firearm.  Any other firearms owned by that person must be disassembled or otherwise rendered "inoperable."  If there is more than one person in the home with a CFP and a registration certificate, each such person is allowed only one gun in an operable condition.

75.    These provisions infringe upon, and impose an impermissible burden upon, the Plaintiffs' right to keep and bear arms under the Second and Fourteenth Amendments.

## COUNT V

### (U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983)

76.    The preceding paragraphs are incorporated herein.

77.    Section 8-20-020 makes it "unlawful for any person to carry or possess a handgun, except when in the person's home."  Section 8-20-030 makes it "unlawful for any person to carry or possess a long gun, except when in the person's home or fixed place of business."  Section 8-

15

20-140(a) renders it "unlawful for any person to carry or possess a firearm without a firearm registration certificate," and Section 8-20-180(c) states that "[a] registration certificate shall only be valid for the address on the registration certificate," and "[e]xcept in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate." "Lawful transportation" means transportation by a person who has a FOID card, a CFP, and a firearm registration certificate, and whose firearm is "(i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case." § 8-20-010.

78.     Thus the Ordinance imposes a complete and total ban in Chicago on possessing or carrying a firearm outside one's "home" (as narrowly defined by the Ordinance) for personal protection—except in one's fixed place of business, where long guns, but not handguns, are permitted—and thereby infringes upon, and imposes an impermissible burden upon, the Plaintiffs' rights under the Second and Fourteenth Amendments.

WHEREFORE, Plaintiffs pray that the Court:

A.     Enter a declaratory judgment that MCC §§ 4-144-010, 8-20-010 (to the extent it defines "home" and "lawful transportation"), 8-20-020, 8-20-030, 8-20-040, 8-20-100, 8-20-180(c), 8-20-280 , and 8-24-010 are null and void to the extent and because such provisions infringe Plaintiffs' constitutional rights, and the rights of all law-abiding adult residents of Chicago, under the Second and Fourteenth Amendments.

B.     Issue injunctive relief prohibiting Defendants and their agents from enforcing MCC §§ 4-144-010, 8-20-010 (to the extent it defines "home" and "lawful transportation"), 8-20-020, 8-20-030, 8-20-040 , 8-20-100, 8-20-180(c), 8-20-280, and 8-24-010 to the extent such provisions infringe Plaintiffs' constitutional rights, and the rights of all law-abiding adult

16

residents of Chicago, under the Second and Fourteenth Amendments.

      C.      Award Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

      D.      Grant such other relief as may be proper.

Respectfully submitted,


Stephen Kolodziej
Atty. ID# 6216375
BRENNER FORD MONROE & SCOTT LTD.
33 N. Dearborn St., Suite 300
Chicago, IL 60602
Tel: (312) 781-1970
Fax: (312)781-9202
Email: skolodziej@brennerlawfirm.com

*Designated Local Counsel*

s/ Charles J. Cooper
Charles J. Cooper*
David H. Thompson*
Jesse Panuccio*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
Email: ccooper@cooperkirk.com

Brian S. Koukoutchos*
28 Eagle Trace
Mandeville, LA 70471
Tel: (985) 626-5052
bkoukoutchos@gmail.com

*Admitted *pro hac vice*.

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BRETT BENSON, RAYMOND SLEDGE,** | ) | |
| **KENNETH PACHOLSKI, KATHRYN TYLER,** | ) | |
| **MICHAEL HALL SR., RICK PERE** | ) | |
| **and the ILLINOIS ASSOCATION OF** | ) | |
| **FIREARMS RETAILERS,** | ) | **FILED: August 13, 2010** |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 10-04184** |
| | ) | **Judge Ronald A. Guzman** |
| **THE CITY OF CHICAGO and** | ) | **Magistrate Judge Geraldine Soat** |
| **RICHARD M. DALEY, Mayor of the** | ) | **Brown** |
| **City of Chicago,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## L.R. 3.2 Notification of Affiliates

Pursuant to Local Rule 3.2 of the United States District Court for the Northern District of Illinois, Plaintiff Illinois Association of Firearms Retailers, a nonprofit corporation, hereby states that it has no publicly held affiliates.

Stephen Kolodziej
Atty. ID# 6216375
BRENNER FORD MONROE & SCOTT LTD.
33 N. Dearborn St., Suite 300
Chicago, IL 60602
Tel: (312) 781-1970
Fax: (312)781-9202
Email: skolodziej@brennerlawfirm.com

*Designated Local Counsel*

s/ Charles J. Cooper
Charles J. Cooper*
David H. Thompson*
Jesse Panuccio*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
Email: ccooper@cooperkirk.com

Brian S. Koukoutchos*
28 Eagle Trace
Mandeville, LA 70471

1

Tel: (985) 626-5052
bkoukoutchos@gmail.com

*Admitted *pro hac vice*.

*Counsel for Plaintiffs*

2