# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d, 2004 WL 407010 (N.D.Ill.)
**(Cite as: 2004 WL 407010 (N.D.Ill.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
Willie C. MURRY and Wylodean Murry, Plaintiffs,
v.
AMERICA'S MORTGAGE BANC, INC.; The Loan
Arranger, Inc.; Clearwater Title Company; Paragon
Home Lending, LLC; Homecomings Financial Net-
work, Inc., Michael Robins; and John Does 1-5; De-
fendants.
No. 03 C 5811.

March 1, 2004.

Cathleen M. Combs, Daniel A. Edelman, James O.
Latturner, Francis Richard Greene, Edelman, Combs
& Latturner, Chicago, IL, for Plaintiffs.

Tod H. Rottman, Best, Vanderlaan & Harrington,
Chicago, IL, James S Kreamer, Aaron C McKee,
Baker, Sterchi & Cowden, Kansas City, MO,
Raymond John Ostler, John Joseph Lydon, Gomberg,
Shafman, Gold & Ostler, P.C., Daniel Joseph Neppl,
Jamie A. Robinson, Michael Best & Friedrich, LLC,
Arthur F. Radke, Richard Eric Gottlieb, Ralph T.
Wutscher, Julie C Keller, Dykema Gossett PLIC,
Miles W Hughes, Dykema Gossett, Chicago, IL, for
Defendants.

*MEMORANDUM OPINION AND ORDER*

GUZMAN, J.

*1 This matter is before the Court on The Loan Ar-
ranger, Inc., Clearwater Title Company, Inc., Michael
Robins, and BWM Mortgage, LLC's motion for a
finding of relatedness and motion to reassign the pre-
sent case with *Blondell Greenleaf v. BWM Mortgage,
LLC* (03 C 6186) pursuant to Northern District of
Illinois Local Rule 40.4 ("LR 40.4"). For the reasons
set forth herein, the Court grants the motion.

*BACKGROUND*

In the instant case, Willie and Wylodean Murry, on
behalf of themselves and a putative class of similarly

situated individuals, defendants America's Mortgage
Banc, Inc., The Loan Arranger, Inc., Clearwater Title
Company, Paragon Home Lending, LLC, Homecom-
ings Financial Network, Inc., Michael Robins, and
five John Doe defendants. There are two putative
classes. Class A consists of all who obtained loans
from America's Mortgage Banc secured by their resi-
dences, on or after a date three years before the in-
stant action was commenced, involving Loan Ar-
ranger and Clearwater Title, where the charge for title
insurance was excluded from the finance charge.
Class B consists of all who obtained loans secured by
their residences, on or after three years before this
action was commenced, involving Loan Arranger and
Clearwater, where the charge for title insurance was
excluded from the finance charge.

Prior to April 3, 2002, the Murrys hired Loan Ar-
ranger as a mortgage loan broker. On April 3, 2002,
the Murrys closed on a loan that was arranged by
Loan Arranger and that was secured by their primary
household residence. The Murrys received a Truth in
Lending Statement from America's Mortgage Banc,
Inc. that listed charges in the amount of $1,145 for
obtaining title insurance from Clearwater Title. This
amount was in addition to title insurance charges of
$450 to Lakeshore title. America's Mortgage Banc,
Inc. did not label these charges as "finance charges,"
but rather included them in the total amount financed.
Clearwater Title is a company under common owner-
ship with the Loan Arranger. The Murrys contend
that these charges were unreasonable and duplicitous
and were included in an overstated amount financed
to disguise compensation that was being paid to Loan
Arranger in violation of, *inter alia,* 15 U.S.C. § 1637
of the Truth in Lending Act ("TILA"), Federal Re-
serve Board Regulation Z, 12 C.F.R. § 226.13, and
Section 2 of the Illinois Consumer Fraud Act
("ICFA"), 815 ILL. COMP. STAT.. 505/2. They now
seek rescission of the mortgage loan transactions,
damages in the form of attorney's fees, and other
statutory damages on behalf of all putative class
members.

*Greenleaf v. BWM Mortgage, LLC* (03 C 6186),
pending before Judge Amy St. Eve, is a putative class
action brought by a plaintiff against defendants
BWM Mortgage, LLC ("BWM"), Lenders Network

**EXHIBIT**

**A**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 407010 (N.D.Ill.)
(Cite as: 2004 WL 407010 (N.D.Ill.))

USA, Inc., Clearwater Title Co., The Loan Arranger, Inc., Michael Robins, and five John Doe defendants. Ms. Greenleaf hired Loan Arranger to act as a mortgage loan broker. On or about September 11, 2002, Loan Arranger arranged for such a loan from BWM that was to be secured by the plaintiff's household residence.

**\*2** Not unlike the Murrys, Greenleaf now alleges that Loan Arranger understated the finance charge amount and overstated the amount financed. On a Truth In Lending Statement received from BWM, there are charges in the amount of $540 to Lakeshore and $800 to Clearwater, both for title insurance. Ms. Greenleaf alleges that these charges are likewise duplicitous and, in light of what Chicago Title charges for the same title insurance, unreasonably high. The inclusion of these charges in the amount financed was designed to disguise compensation paid to Loan Arranger, in violation of 15 U.S.C. § 1637 of the TILA, 12 C.F.R. § 226.13, and Section 2 of ICFA, 815 ILL. COMP. STAT.. 505/2. Ms. Greenleaf also seeks the same remedies, in the form of rescission of the transaction, attorney's fees, and statutory damages.

*ANALYSIS*

The applicable Local Rule of the Northern District of Illinois is LR 40.4, which provides for reassignment of cases as related. Under LR 40.4(a), cases may be related if they involve any one of the following conditions:

(1) the cases involve the same property;

(2) the cases involve some of the same issues of fact or law;

(3) the cases grow out of the same transaction or occurrence; or

(4) in class action suits, one or more of the classes involved in the cases is or are of the same.

LR 40.4(a). Once relatedness is established, the case or cases may be reassigned if all four of the following criteria are met: (1) both cases are pending in this court; (2) reassignment will result in substantial saving of judicial resources; (3) reassignment will not

cause a substantial delay; and (4) it is possible for disposition of both cases in a single proceeding. LR 40.4(b).

The present case meets the requirement of LR 40.4(a) for relatedness. It is undisputed that both cases involve some of the same issues of law. Plaintiffs in both cases allege that Loan Arranger, in procuring a mortgage loan for each plaintiff, overstated the amount financed and understated the finance charge in violation of TILA and ICFA. Thus, any resolution of both disputes will necessarily require a determination of the legality of the same defendants' actions under the same statutes and regulations. What's more, the rule does not require complete identity of issues in order for cases to be considered related. *See, e.g., Fairbanks Capital Corp. v. Jenkins,* No. 02 C 3930, 2002 WL 31655277, at \*2 (N.D.Ill. Nov.25, 2002). Finally, the *Murry* Class B, all those who procured loans through Loan Arranger, includes the entire *Greenleaf* class.

The present case also satisfies the requirements of LR 40.4(b). There is no question that the first of these requirements has been met because both of these cases are pending before this Court. The second requirement under LR 40.4(b) has been met as well because reassignment of the *Greenleaf* case to this Court's docket will result in substantial time savings and promote judicial economy. With the reassignment of *Greenleaf,* only one judge will need to rule on the dispositive motions filed by defendants Homecoming Financial Network and Mortgage Lenders Network. In both cases the plaintiffs will be filing motions for Class Certification that will likely involve substantially identical briefs and issues because the same law firm represents the plaintiffs in both cases subject to this motion.

**\*3** The third requirement, that the earliest case has not progressed too far, has also been satisfied. *Murry* is still in the preliminary stages, and discovery has just begun. Reassignment of *Greenleaf* to this Court's docket would not, at this point, cause any substantial delay that would otherwise prejudice the resolution of the respective parties' dispute. Finally, the fourth requirement, that it be possible for both cases to be disposed of in a single proceeding, has been met. Both *Murry* and *Greenleaf* require a determination of whether Loan Arranger's pricing schedules are allowable under TILA, Federal Reserve Board Regulation

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 407010 (N.D.Ill.)
**(Cite as: 2004 WL 407010 (N.D.Ill.))**

Z, and ICFA. Moreover, the *Greenleaf* class is subsumed in *Murry* Class B. Thus, it is clear that the cases are susceptible of disposition in a single proceeding.

## *CONCLUSION*

For the reasons set forth above, the Court grants defendants' motion for a finding that case nos. 03 C 5811 and 03 C 6186 are related within the meaning of LR 40.4(a) [doc. no. 31-1] and grants defendants' motion for reassignment of case no. 03 C 6186 to this Court's docket pursuant to LR 40.4(b) [doc. no. 31-2].

SO ORDERED

N.D.Ill.,2004.
Murry v. America's Mortgage Banc, Inc.
Not Reported in F.Supp.2d, 2004 WL 407010 (N.D.Ill.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT B

Westlaw.

Slip Copy, 2009 WL 1684531 (N.D.Ill.)
**(Cite as: 2009 WL 1684531 (N.D.Ill.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
BP CORPORATION NORTH AMERICA INC. Savings Plan Investment Oversight Committee serving in its capacity as a named fiduciary of the BP Employee Savings Plan, the BP Capital Accumulation Plan, the BP DirectSave Plan, the BP Employee Savings Plan of Puerto Rico, and the BP Partnership Savings Plan under the BP Master Trust for Employee Savings Plans and the BP Solar Employee Savings Plan under the Trust for the BP Solar Employee Savings Plan, and BP COrporation North America Inc. Investment Committee serving in its capacity as a named fiduciary of the BP Retirement Accumulation Plan and the Enstar Corporation Retirement Plan under the BP Master Trust for Employee Pension Plans, Plaintiffs,
v.
NORTHERN TRUST INVESTMENTS, N.A. and The Northern Trust Company, Defendants.
**Civil Action No. 08-cv-6029.**

June 15, 2009.

Michael H. King, Bryan Michael Westhoff, Keith P. Schoeneberger, Therese King Nohos, Dewey & Leboeuf LLP, Chicago, IL, for Plaintiffs.

Caryn Leslie Jacobs, John Joseph Tharp, Jr., Michele Louise Odorizzi, Mayer Brown LLP, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

WILLIAM J. HIBBLER, District Judge.

**\*1** A Plaintiff in another case, Joseph L. Diebold, Jr., moves the Court to reassign that case, *Diebold v. Northern Trust Investments, N.A.,* No. 09-cv-1934 (hereinafter *Diebold* ), from the docket of Judge George Lindberg to this Court's docket. The Defendants in both cases, Northern Trust Investments (NTI) and the Northern Trust Company (Northern Trust), concur with Diebold's wishes, but the BP Committees object to the reassignment.

I. Factual Background

Northern Trust manages collective trusts for institutional investors and NTI serves as the trustee for the benefit of the approximately 600 trusts (including the BP Plans and the ExxonMobil Savings Plan, in which Diebold participates) that participate in those funds. Both the BP Plans and Exxon Plans invest in Northern Trust managed collective funds that engage in securities lending.

NTI, through Northern, "lends" stocks or bonds it holds to certain borrowers, who must put up collateral in order to borrow these securities. Northern, in turn, invests that collateral in accordance with a set of investment guidelines. Northern takes its fees as a percentage of the profits from the securities lending program. As the value of the borrowed securities fluctuates, Northern adjusts the amount of collateral it holds; Northern acquires more collateral if the value of the borrowed securities increases and returns it if the value of the borrowed securities declines. In this case, Northern established two collateral pools: the Core USA pool and the collective short term investment fund and the collective short term extendible portfolio (STIF/STEP Pool). In accordance with the guidelines for the Core USA and STIF/STEP Pools, Northern invested the collateral in fixed-income debt securities.

Diebold, on behalf of the Exxon Plans and other similarly situated plans, alleges that Northern and NTI breached their fiduciary duties under § 404(a) of the Employee Retirement Income Security Act (ERISA) and also engaged in ERTSA-prohibited transactions in violation of § 406(b) of ERISA. In short, Diebold alleges that the Defendants invested the collateral obtained via its securities lending programs into illiquid, highly-leveraged, unduly risky mortgaged-backed securities and other securitized debt instruments, which resulted in substantial losses to the Exxon Plans, The BP Committees allege similar violations of ERISA and also allege that the Defendants breached the investment agreements they reached with the BP Committees.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.


EXHIBIT

B

Slip Copy, 2009 WL 1684531 (N.D.Ill.)
**(Cite as: 2009 WL 1684531 (N.D.Ill.))**

Upon filing their Complaint in October 2008, the BP Committees immediately sought a preliminary injunction, requiring the Defendants to amend recently imposed withdrawal guidelines. The Court denied the BP Committees' request for a preliminary injunction in December 2008. The BP Committees amended their Complaint in January 2009, and the Defendants moved to dismiss the non-ERISA claims of the Amended Complaint. That motion is fully briefed and remains pending. In February 2009, the Court entered a discovery schedule and the parties have since engaged in (and contested) discovery.

**\*2** The Diebold Plaintiffs filed their suit in March 2009. The Defendants have moved to dismiss that claim, on the grounds that the Diebold Plaintiffs did not adequately state their claims and on the grounds that he does not have standing to sue on behalf of Plans in which he did not participate. The motion to dismiss in *Diebold* has not been fully briefed.

II. Discussion

Local Rule 40.4 governs when a later-filed case can be reassigned to a judge handling a earlier-filed case. Initially, Rule 40.4(a) requires that the cases are related. One definition of related cases under Rule 40.4(a) are those that involve some of the same issue of fact or law. Two cases need not be absolutely identical to be suitable for reassignment under Rule 40.4. *Global Patent Holdings, LLC v. Green Bay Packers, Inc.*, 00 C 4623, 2008 WL 1848142, at \*3 (N.D.Ill. Apr.23, 2008). Here, the two suits both concern allegations surrounding Defendants' securities lending practices and have sufficient common issues of fact and law to be deemed related.

Rule 40.4(b) then sets forth the criteria under which related cases may be reassigned to the calender of another judge. Four criteria must be met; 1) both cases must be pending in this Court; 2) the handling of both cases by the same judge must be likely to result in a substantial saving of judicial time and effort; 3) the earlier-filed case may not have progressed to the point where designating the later-filed case as related would likely delay the proceedings in the earlier-tiled case; and 4) the cases are susceptible of disposition in a single proceeding. The Court finds that each of these criteria are met here.

Assigning both cases to the calendar of one judge

will likely result in substantial saving of judicial time and effort. The BP Committees argue that the cases are not more than superficially related and that common legal and factual issues will not predominate. Therefore, according to the BP Committees, the Court will not save substantial time and effort. The Court disagrees.

Despite the fact that there are nuances particular to each case, *BP Committees* and *Diebold* both involve the intersection between complex financial transactions and ERISA law. In that sense, they are more than superficially related. In each case, the plaintiff alleges that the Defendants breached its fiduciary duties under ERISA, particularly as it related to the Defendants' securities lending practices. Thus, in resolving both cases, the Court confronts similar factual issues: the investment of collateral into allegedly risky securities; claims of loss arising from a collateral deficiency and write-downs in the collateral pools; interpretation of the Declaration of Trust and the Securities Lending Authorization Agreement between Northern Trust and NTI. Similarly, the Court will interpret the same provisions in ERISA and will apply the same case law regarding fiduciary duties and prohibited transactions under ERISA. This Court has already invested significant time familiarizing itself with the ways in which Defendants invested and managed the collateral posted by securities borrowers and it makes little sense to require another court in this District to sill through the volumes of similar or identical documents the parties are likely to produce. *See, e.g., Teachers Retirement Sys. Of La. v. Black*, No. 04 C. 834, 2004 WL 1244236, \* 2 (N.D.Ill. Jun.3, 2004) (reassigning securities fraud case where cases involved the same underlying fraudulent conduct).

**\*3** In addition, judicial resources can be conserved if similar discovery issues arise in the two cases. Already the parties in *BP Committees* dispute what documents the plaintiffs should produce through discovery and the Defendants' brief in support of its motion is 18 pages in length with over 150 pages of exhibits. Discovery in these cases likely will be complex, and the court will preserve resources if only one judge, rather than two, must resolve similar discovery disputes.

The Court also finds that *BP Committees* will not be substantially delayed if *Diebold* is reassigned. The

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1684531 (N.D.Ill.)
(Cite as: 2009 WL 1684531 (N.D.Ill.))

BP Committees argue that because *Diebold* is roughly four months behind in fact discovery and does not yet have a case management schedule that reassignment will delay resolution. To be sure, the fact discovery close in *BP Committees* rapidly approaches. The deadline to file dispositive motions, however, is more than nine months away. Although the parties in *BP Committees* have exchanged document requests, they continue to dispute the scope of discovery and have yet to undertake fact depositions, let alone begin expert discovery. In short, discovery in *BP Committees* is still at the earliest of stages. Moreover, the Defendants have yet to answer the Complaint in either case. *See, e.g., River Village West LLC v. Peoples Gas Light and Coke, Co.,* No. 05 C 2103, 2007 WT 541948, * 2 (N.D.Ill. Feb. 14, 2007) (reassigning case where discovery in initial stages). *BP Committees* simply is not so far along that an extension of the discovery schedule, if necessary, significantly delays resolution of that case.

The BP Committees also argue that the class allegations in *Diebold* will substantially delay resolution in *BP Committees.* The presence of class allegations in one or more cases, however, is not a bar to reassignment. *Popovich v. McDonald's Corp.,* 189 F.Supp.2d 772, 778 (N.D.Ill.2002) (reassigning individual claims with a class action claim). There is no guarantee that a class will be certified. Indeed, the Defendants have already moved to dismiss those allegations for lack of standing. Even if the *Diebold* class allegations survive the motion to dismiss, nothing suggests that class discovery will significantly delay resolution in *BP Committees.*

Finally, the same core set of facts predominate in these two cases, making them susceptible to disposition in a single proceeding. At issue in both is Defendants' behavior in regards to its securities lending program, particularly whether Defendants invested collateral obtained in securities lending into unduly risky mortgage-backed securities. Although the theories of each Plaintiffs case may vary, the witnesses necessary for disposition likely will be the same: Defendants' employees responsible for developing the Declaration of Trust and Securities Lending Authorization agreements, Defendants' employees responsible for managing the collateral obtained through securities lending; Defendants' employees responsible for reacting to adverse market conditions that impaired that collateral; experts knowledgeable about

the market conditions that caused the collapse of the securities lending pools. Moreover, both cases require the Court to determine the legality under ERISA of Defendants' investment strategy regarding its securities lending program. *See, e.g., Global Patent Holdings, LLC,* 2008 WL 1848142, at *4 (holding that where both actions involve prima facie fundamentally similarly claims and defenses that actions are amenable to disposition in a single proceeding); *Teachers Retirement Sys. Of La. v. Black,* 2004 WL 1244236, at * 2; *Fairbanks Capital Corp. v. Jenkins,* No. 02 C 3930, 2002 WL 31655277, at *2-3 (N.D.Ill. Nov.25, 2002) (observing that both cases require the court to determine the legality of a common practice). In short, the Court has reviewed the Complaints and finds that the cases raise substantially the same claims and that therefore they are susceptible to disposition in a joint summary judgment motion or a single trial.

*4 The Court GRANTS the motion to reassign and *Diebold v. Northern Trust Investments, N.A.,* No. 09-cv-1934 is hereby transferred to this Court's calendar pursuant to Local Rule 40.4.

IT IS SO ORDERED.

N.D.Ill.,2009.
BP Corp. North America Inc. v. Northern Trust Investments, N.A.
Slip Copy, 2009 WL 1684531 (N.D.Ill.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT C

*IN THE UNITED STATES DISTRICT COURT*
*NORTHERN DISTRICT OF ILLINOIS*
*EASTERN DIVISION*

| | |
|---|---|
| *OTIS MCDONALD, ET AL.,* | *) DOCKET NO. 08 C 3645* |
| | *)* |
| *Plaintiffs,)* | |
| | *)* |
| *vs.* | *)* |
| | *)* |
| *CITY OF CHICAGO, ET AL.,* | *) Chicago, Illinois* |
| | *) August 18, 2008* |
| *Defendants.)* | *9 o'clock a.m.* |


*TRANSCRIPT OF PROCEEDINGS BEFORE THE HONORABLE*
*MILTON I. SHADUR, Judge*

*APPEARANCES:*

*For the Plaintiffs:*
            *MR. WILLIAM HOWARD,*
            *MR. DAVID SIGALE and*
            *MR. KOLODZIEJ*


*For the Defendants:*
            *MR. ANDREW WORSECK,*
            *MR. MICHAEL FORTI and*
            *MR. JACOB KARACA*


*JESSE ANDREWS*
*Official Court Reporter - U. S. District Court*
*219 S. Dearborn Street*
*Chicago, Illinois  60604*
*(312) 435-6899*


        *       *       *       *       *       *

**EXHIBIT**

C

2

1      THE CLERK:  08 C 3645, McDonald's vs. City of
2  Chicago.

3      MR. HOWARD:  Good morning, your Honor.  Bill Howard
4  on behalf of the NRA in the Oak Park case.

5      MR. KOLODZIEJ:  Steve Kolodziej on behalf of the
6  plaintiff in the NRA vs. City of Chicago, case number 3679.

7      MR. SIGALE:  Good morning, your Honor.  David Sigale
8  on behalf of the McDonald plaintiffs.

9      MR. WORSECK:  Good morning, your Honor.  Andrew
10  Worseck on behalf of the City of Chicago in both cases.

11      MR. FORTI:  Good morning, your Honor.  Michael
12  Forti, F-o-r-t-i, on behalf of the City of Chicago in both
13  cases.

14      MR. KARACA:  Good morning, your Honor.  Jacob
15  Karaca, K-a-r-a-c-a, on behalf of the Village of Oak Park.

16      THE COURT:  Good morning.

17      Before I turn to what I know is on for this morning,
18  I know that a motion was filed to reconsideration of my order
19  in connection with the Oak Park case, but I don't know that
20  it was noticed up for today for presentment.  I don't think
21  so, am I right?

22      MR. HOWARD:  No, Judge.  I think when we were here
23  last you had said to come back  on 18th and see where we were
24  at, and that's what we are here for.

25      THE COURT:  Okay.  But we also here for what I know

3

1  I had continued, and that was the motion to strike the City's

2  answer --

3          MR. WORSECK:  Correct.

4          THE COURT:  -- to the Complaint in the first case,

5  the McDonald case, right?

6          MR. WORSEK:  Correct.

7          THE COURT:  Let's talk about the motion to strike in

8  the first instance.  They have taken the position that a

9  number of the disclaimers of "knowledge or information

10 sufficient to form a belief" can't be asserted in the kind of

11 objective good faith that Rule 11(b) requires.  What's the

12 City's position on that?

13         MR. WORSECK:  Well, your Honor, the problem we were

14 initially faced with these allegations is that while they do

15 refer to an application date with the City and a disposition

16 of that application, they ultimately tie back to an underlying

17 firearm that may for instance be owned by a given plaintiff,

18 but be kept outside of Chicago, may have been purchased by a

19 plaintiff on such and such a date, may be intended to be used

20 by a plaintiff for a certain purpose, we don't know those

21 underlying facts about the underlying firearms.  And because

22 we don't know those, we don't know if the firearm they are

23 talking about in the application with the City is the firearm

24 that they are talking about in the underlying allegation.

25         THE COURT:  Why don't we cut to chase on that sort

4

1  of thing.  You know that's the kind of motion that seldom

2  advances the ball much.  You know because to the extent that

3  there is any kind of disclaimer of that nature, an early kind

4  of advances disclosure, and if need be follow-up discovery

5  requests, soon gets that out of the way in terms of its being

6  some kind of basis for a contested issue.

7          Remember the purpose of pleading, after all, is to

8  find out whether the parties are at loggerheads in terms of

9  having to prove matters as contrasted with the matters not

10 being controverted.  So again the idea of striking an answer

11 counsel is essentially saying, "Look, let's get the

12 information about the particular firearms and whatever is

13 involved, and then we will move on to more productive

14 activity," seems to me to make sense.

15         MR. WORSECK:  Judge, if I might.  If I might add,

16 Mr. Sigale and I had discussions about this in the intervening

17 two weeks.  And the City is amenable to filing an amended

18 answer that goes so far as to say, "Yes, on such and such date

19 we received a application, and we denied it on such and such a

20 date."  That's really as far as we can go.  We don't know if

21 that ties back again to the underlying firearm.

22         THE COURT:  Yes.

23         MR. WORSECK:  But we are amenable to doing that if

24 your Honor think that makes sense.

25         THE COURT:  Well, that's fine.  Again the whole

5

 1 purpose, remember, is that notice pleading cuts both ways.

 2 It's binding on plaintiffs and on defendants.  And therefore

 3 the whole purpose of the pleading process is to air out areas

 4 in which parties are going to have to engage in proof as

 5 contrasted with matters being established that are not in

 6 controversy.  So anything that you can do to serve that goal

 7 will be fine.  What kind of time are you going to need for

 8 that?

 9          MR. WORSECK:  Judge, I don't want to get too far

10 ahead of the game with respect to the NRA motion to vacate.

11 But our thinking was that if your Honor was inclined to deny

12 that motion and keep the NRA vs. Oak Park case here, and in

13 the NRA vs. Chicago case, we were just finally recently served

14 with that Complaint and we intend to answer that as well.  So

15 we would suggest that we answer -- we file an amended answer

16 in the McDonald case on the same track as we would be

17 answering the NRA vs. Chicago case.

18          THE COURT:  What kind of time are you talking about?

19 I will get to Oak Park?

20          MR. HOWARD:  I just wanted to clarify something.  He

21 had originally stated if you were inclined to grant the Oak

22 Park motion, are you saying counsel --

23          THE COURT:  That's unrelated.

24          MR. HOWARD:  Okay.  I just wanted to make sure,

25 because he started the preparatory comment was Oak Park being

6

1  included.

2         THE COURT:  I understand.  But it doesn't seem to me

3  that there is any reason that the thing shouldn't be going

4  forward, at least fleas in pleading terms.  Let's put aside

5  said for a moment how the cases may interact in terms of

6  discovery if they are kept here or not keep here.  But in

7  terms of pleading, I don't see any reason to one contingent on

8  the other.  Okay.

9         MR. HOWARD:  Okay.

10        MR. FORTI:  If I may, your Honor.

11        THE COURT:  Go ahead.

12        MR. FORTI:  I believe that the City got served with

13 the NRA Complaint on the 13th, on a Wednesday, the 13th.

14        MR. HOWARD:  I believe it was the 12th.

15        MR. FORTI:  The 12th. So 20 days from that takes

16 us --

17        THE CLERK:  Just after Labor day.

18        MR. FORTI:  Yes. something like September 4th or

19 something like that.

20        THE COURT:  Tell me when you would like to file the

21 amended answer in the McDonald case and the answer in the

22 NRA against the City of Chicago case?

23        MR. WORSECK:  September 2d, your Honor.

24        THE COURT:  Okay.  I will give that.  And that means

25 that I am denying the motion to strike without prejudice.

7

1          MR. SIGALE:  If I may, perhaps that motion could be

2  deemed entered and continued given -- until we see what the

3  City's answer is?  If I may, your Honor --

4          THE COURT:  Well, let me suggest something on that.

5          MR. SIGALE:  Sure.

6          THE COURT:  Okay.  If I deny it without prejudice,

7  and if it turns out that the amended pleading contains stuff

8  that is still objectionable from your perspective, I am not

9  going to ask you to reinvent the wheel.  You can

10  incorporate -- I am going to keep this thing, okay?

11          MR. SIGALE:  Sure.

12          THE COURT:  So you can incorporate by reference

13  whatever paragraphs you want to.  But there is no sense in

14  having pending a motion that we know is getting superseded by

15  an amended pleading.  Okay?

16          MR. SIGALE:  That's fine.

17          THE COURT:  So you are not being prejudiced by that

18  at all.

19          MR. SIGALE:  That's fine, your Honor.

20          THE COURT:  So I am denying the the motion to strike

21  basically as potentially moot because of the Amended Complaint

22  that's going to get filed.  Okay?  And then what I am going

23  to, by the way, is to set a status not long after the 2d,

24  instead of talking about what would be a response date, so

25  that counsel and I will have had a chance to see the amended

8

1  pleading and see where we are going to go on that.  Okay.

2           MR. SIGALE:  Sure.

3           THE COURT:  Now I might as well set that right now.

4  And maybe the -- if you file on the 2d I could give you maybe

5  Wednesday, the 10th, or I think perhaps Tuesday, the 9th of

6  Septembers as well.  Sandy, check how we are on the 9th.

7           MR. WORSEK:  Your Honor, did you also want to keep

8  on the books the status for the 26th of September?

9           THE COURT:  No.  It doesn't make any sense to do

10 that.

11          THE CLERK:  That's fine.

12          THE COURT:  All right.  Either the 9th or the 10th.

13 Does anybody have a preference as between those two?

14          MR. SIGALE:  I am in another court on the 9th, your

15 Honor, so the 20th would be better for me.

16          THE COURT:  Is that okay for you?

17          MR. WORSECK:  We can do the 10th, yes.

18          THE COURT:  All right.  Status then instead of

19 September 26th at 9 o'clock is going to September 10th at

20 9 o'clock.

21          MR. SIGALE:  9:15.

22          THE COURT:  9 o'clock.

23          MR. SIGALE:  9 o'clock.

24          THE COURT:  Okay.  Now let's go back to the Oak Park

25 motion.  And let me repeat what I had said, as I thought the

9

1  appropriate basis for reassignment on relatedness grounds --

2  and that is, I recognize that the issues are of course not

3  identical because the ordinances are not identical.  Oak Park

4  was essentially a prohibition as such, as I understand it,

5  whereas as the City had an interaction of a registration kind

6  of provision, and coupled with what amounted to a

7  prohibition on things, for example, on handguns that didn't

8  "qualify" for registration.  But it seemed to me that the

9  prohibition notion was basically subsumed within any attack on

10 the Chicago ordinance.

11         It might be that Chicago -- I don't know what they

12 are going to do -- it might be that they would try if they

13 believed that there was a flaw, they might try to cure it by

14 modification of the ordinance, but I am not going to predict

15 what they do.  All I am saying is that it struck me that

16 certainly in the inception the cases were sufficiently related

17 to call for reassignment.

18         Now it may well be that the cases are going to

19 diverge at some point in terms of when an issue gets resolved.

20 You know I know that -- well, I shouldn't say "I know."  (I am

21 sort of Like Will Rogers:  All I know is what I read in the

22 papers.)  I suspect that some part of the claimed attack is

23 going to be to try to differentiate between what the Supreme

24 Court did in the District of Columbia case, and the case

25 against the municipality because of the assertion of the

10

1  Second Amendment has been incorporated through the Fourteenth

2  against state entities, that that may be part of the argument.

3  But for example, if it is, that's going to common to the two

4  ordinances.  And that's why I say that it struck me that any

5  notion of my reconsideration of reassignment on relatedness

6  grounds didn't make a lot of sense.  So far as I could see the

7  conditions of our Rule 40.4, LR 40.4, were satisfied.  And so

8  again it may be that developments would cause a change in

9  that.  But at this point I just don't see any basis for

10  reconsideration.

11          MR. HOWARD:  Judge, if I may, just a couple of

12  points.

13          THE COURT:  Sure.

14          MR. HOWARD:  First of all, clearly the NRA and

15  individual plaintiffs have separate counsel in the Chicago

16  case than in the Oak Park matter.  I just wanted to point that

17  out.

18          THE COURT:  I know that.  But that's not, I've got

19  tell you, if you look carefully at 40.4 it doesn't say

20  anything about having the same lawyer in the case.

21          MR. HOWARD:  It's just one issue we are factored to

22  consider.  But the point is that there is some design to the

23  differences here.  In the Oak Park/NRA case there is an issue

24  with respect to the exceptions, we believe to be irrational

25  exceptions that are allowed under the Oak Park ordinance that

11

1  are not allowed in Chicago, number one.  The second thing is

2  with respect to the Chicago registration issues, as you can

3  see just from the discussion today, part of our concerns/issue

4  is that because of the registration distinction that exist in

5  Chicago that doesn't exist in Oak Park there is going to be a

6  lot of things -- issues, discovery, et cetera that are --

7            THE COURT:  There are a lot of issues that may be --

8  and I expect are going to separate in the two.  But our rule

9  does not require it.  It just doesn't.  And essentially what

10 we are looking at is the idea, for example, that there is no

11 reason that people have to be plowing the same field multiple

12 times because there are different lawsuits.  If somebody's

13 deposition is going to get taken, then there is no reason that

14 the deposition has to be taken twice or three times because

15 there are two or three lawsuits.  If discovery is going to be

16 taken in connection with substantive matters, there is no

17 reason that those things should be done on a separate basis

18 when they can more conveniently, more efficiently and more

19 cheaply be done on a combined bias.  That's the whole premise

20 behind the drafted and adopted LR 40.4.  And so the idea of

21 saying, "Well, there are going to be different -- some

22 different issues, that happens a great deal in connection with

23 cases that nonetheless qualify for reassignment on relatedness

24 grounds.

25            MR. HOWARD:  Right.  I understand that's one of the

12

1 criteria, your Honor.  Under 40.4(c) there is case law that's

2 suggest that the similarities must outweigh the differences.

3 And our concern is that the differences are significantly

4 greater than the similarities.  So I understand what your

5 Honor is saying.  You know we are concerned about things

6 being -- our case being derailed or sidetracked or whatever

7 because of other activities.

8        THE COURT:  They are not going to be derailed or

9 sidetracked.  Take my word for it.

10       MR. HOWARD:  I appreciate that.

11       THE COURT:  Okay.  To the extent that issues are

12 posed by the two different -- look.  I am the one that's going

13 to get stuck with two different sets of legal issue to the

14 extent that they diverge, but I am not complaining, you know.

15 And it seems to me that everybody interests are better served

16 by having essentially integration to the maximum extent

17 possible rather than saying, "Well, this snippet is going to

18 be true over here and not going to apply over here, and

19 therefore let's have two separate judges doing it."

20        I have got to tell you when I first came on the

21 court I inherited, because the computer delivered to me John

22 Grady's lowest-numbered case involving asbestosis decision in

23 the Johns Manville plant in Waukegon.  So I inherited the

24 oversight of something like 400 cases, you know.  Now those

25 didn't get reassigned to my calendar, but I ended up having to

13

1  draft something like 30 different opinion, and of course my

2  colleagues were free to follow them or not follow them as they

3  chose.  But that's not a very good way to run a railroad or

4  asbestosis plant, you know.  And so you learn from experience

5  what these things.  It makes a lot more sense, certainly at

6  this point, at this stage, to have the cases -- I am not going

7  to use the term "consolidated" because that's a term of art,

8  have the cases combined here and dealt with here.  If it turns

9  out that, for example, the cases are going to go to trial, and

10 that you really would need separate trials to deal with the

11 things, then it will be have time enough to take a look at

12 whether the cases are ought to be severed for that purpose.

13 Because remember we are not consolidating cases, and that's an

14 important distinction to keep in mind.  Rule 42 is not being

15 utilized here.  And simply reassigning the cases they maintain

16 their separate identify.  Okay?  So at least at this point I

17 am going to deny the motion for reconsideration for the

18 reasons that I have just outlined here.

19        Now when is the -- what's the story on the

20 responsive pleading there?

21        MR. KARACA:  I believe the Village of Oak Park was

22 also served in a similar time frame as the City of Chicago

23 finally.  I would think a motion - I mean a September 2d date

24 would work for the Village of Oak Park.

25        THE COURT:  Okay.  That's fine.  Then I expect that

14

1  the parties are going to engage, you know in advance

2  disclosures which tend to streamline the discovery process.

3  Because you don't then have to ask for everything from the

4  beginning of the world to the date of these presence.  The

5  whole -- one of the whole points of advance disclosure is to

6  permit a more narrowed focus on follow-up paper discover.

7          So I will then see you on basically all three cases

8  on September 10th at 9 o'clock, and we will see what the thing

9  looks like for everybody on that.  Okay.

10          MR. SIGALE:  Your Honor, except for, I believe we

11 are up for status today as to summary judgment motion that was

12 filed That was originally set for August 4th.  And I just -- I

13 believe it's up for status on that matter as well.  So it's

14 our position, your Honor, that -- you know the issues that are

15 present in the motion, the City has said these are the issues.

16 The Court has said a number of time before that we have been

17 before you, that this is -- these are the issues.  And we

18 agree these are the issues.  So we just thought it was

19 appropriate to bring these.

20          THE COURT:  I know what you thought.  But really if

21 you think further, the one thing that really doesn't benefit

22 anybody particularly is to treat an issue-narrowing motion

23 which is properly under Rule 16 as though it's a summary

24 judgment fully dispositive motion under Rule 56.  And so I

25 recognize Rule 56 says that you can bring a summary judgment

15

1 motion at any time, but if you look at the cases, the cases
2 don't really uphold that "at any time notion." You are really
3 premature on that one, and I am not going to set a schedule on
4 that one at this point. I expect that that kind of early
5 Rule 56 motion invariably triggers a Rule 56 saying  We need
6 some more time to do some discovery that's relevant." And so
7 that's -- I don't want to say this too critically, but it's
8 shortsighted, really, to be trying to pull the trigger on a
9 Rule 56 motion that early in the game. Some issues -- some
10 legal issues may be dispositive, but then again they may not
11 and there is no particular point in wasting resources to
12 discover whether that's the case at this threshold time.
13 Remember that to my knowledge -- well, maybe I ought to ask
14 this.  Is the City currently enforcing the existing ordinance
15 in accordance WITH its terms?
16         MR. WORSEK:  Yes, your Honor.
17         THE COURT:  And what does that mean in terms of
18 somebody who doesn't have, for example, a registration on a
19 firearm?
20         MR. WORSECK:  I would assume that they are not in
21 compliance with the requirements of the ordinance that they
22 would be subject to the penalties set forth in the ordinance.
23         THE COURT:  If they get that that's going to bring
24 about a Younger against Harris kind of situation.  Well, I
25 guess I can see that if and when it comes.  But meanwhile, I

16

1  am not going to set a schedule on a Rule 56 motion.  Okay?

2          MR. HOWARD:  Thank you, your Honor.

3          MR. WORSECK:  Thank you, your Honor.

4          MR. KARACA:  Thank you, your Honor.

5      (WHICH WERE ALL OF THE PROCEEDINGS HAD AT THE HEARING OF
       THE ABOVE-ENTITLED CAUSE ON THE DAY AND DATE AFORESAID.)
6
                  C E R T I F I C A T E
7
   I HEREBY CERTIFY that the foregoing is a true and correct
8  transcript from the report of proceedings in the
   above-entitled cause.
9
   /S/JESSE ANDREWS
10 JESSE ANDREWS, CSR
   OFFICIAL COURT REPORTER
11 UNITED STATES DISTRICT COURT
   NORTHERN DISTRICT OF ILLINOIS
12 EASTERN DIVISION
   DATED: January 14, 2009
13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-CV-5135 |
| | ) | |
| Plaintiffs, | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN SUPPORT OF |
| v. | ) | EX PARTE MOTION FOR |
| | ) | TEMPORARY RESTRAINING ORDER |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

COME NOW the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action

Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and

through undersigned counsel, and submit their Memorandum of Points and Authorities in Support

of their Ex Parte Motion for Temporary Restraining Order.

Dated: August 22, 2010

Respectfully submitted,

Alan Gura (admitted pro hac vice)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445

By: /s/ Alan Gura/
    Alan Gura

By: /s/ David G. Sigale/
    David G. Sigale

Attorneys for Plaintiffs

**EXHIBIT**

D

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

### INTRODUCTION

There is little to add that is not contained in Plaintiffs' brief in support of the motion for preliminary injunction, filed and immediately delivered to opposing counsel on Monday, August 16. Gura Decl., ¶ 2. The evidence and argument supporting both motions are identical, and there is no need to burden the Court with repetitive filing. But Plaintiffs wish to explain why circumstances have changed, and more immediate relief is now requested.

Plaintiffs seeking preliminary injunctive relief must balance the imminence of irreparable harm against the strong professional and judicial interest in affording the Defendant notice and an opportunity to be heard. Although the irreparable harm in this case is severe, counsel believed that providing one week's notice of presentment of a motion, at which time a briefing schedule and argument date could be set, would be fair to the Defendant and assure the Court that it could consider both sides adequately prior to ruling.

However, Defendant has decided to oppose the motion not by responding to it on the merits, but rather, by pursuing a dilatory practice that would deprive Plaintiffs of a meaningful opportunity to be heard. When Defendant gave notice of its intent this past Friday, Plaintiffs immediately gave notice of this motion. Defendant essentially has had a week's notice of this motion for a temporary restraining order, which it should have foreseen once it determined to seek an indefinite delay of the motion for preliminary injunction.

A temporary restraining order now appears to be the safest avenue for bringing Plaintiffs a measure of relief, and could also serve to expedite the hearing on the motion for preliminary

1

injunction, Fed. R. Civ. Proc. 65(b)(3), at which time Plaintiffs could suggest, given the lack of a factual dispute and the purely legal nature of this case, that the Court consolidate the hearing with a trial on the merits per Fed. R. Civ. Proc. 65(a)(2).

## STATEMENT OF FACTS

Gun training saves lives and prevents serious injuries. For this reason, the City of Chicago demands that firearm owners get trained at a gun range. Yet it bans the very ranges necessary to obtain the required training.

As detailed in the preliminary injunction papers, every day that passes without injunctive relief, people are liable to be killed or seriously injured for lack of adequate firearms proficiency, either due to accidents, or inability to exercise proper self-defense. Every day that passes without injunctive relief, people lose their Second Amendment rights because their registrations expire and they cannot timely obtain gun range training necessary for renewal. On October 8, Plaintiff Hespen's registration of 24 firearms will expire absent range training.

Every day that passes without injunctive relief, the city's October 12 deadline for grandfathered registration of already-acquired guns draws nearer, yet with the intended beneficiaries of this provision deprived of training opportunities. On October 12, Plaintiff Brown will lose the ability to register his firearm absent range training.

These deadlines are not at issue in this lawsuit, and remain in place even if Plaintiffs prevail, barring any additional relief. The longer it takes Plaintiffs to obtain injunctive relief, the larger the number of people who will forever lose their right to keep their firearms – even firearms currently registered under the previous ordinance. And of course, this is to say nothing of the tragedies that might be averted by ensuring people can learn and practice the safe use of firearms.

2

Plaintiffs did not waste time or attempt to surprise the city. The moving papers were emailed to opposing counsel immediately upon filing of the lawsuit last week. Gura Decl., ¶¶ 2-3. Defendant responded by giving notice mid-day Friday that it would seek to have this case re-assigned to Judge Guzman, because he was assigned an earlier-filed case, *Benson v. City of Chicago*, No. 10-CV-4184. Gura Decl., ¶ 4.

Plaintiffs would oppose the motion for judicial reassignment as it lacks merit,[1] but do not begrudge the city its ability to have the motion considered. What alarmed Plaintiffs was Defendant's notice that it would invoke the fact of its judicial reassignment motion in asking this Court to avoid ruling on Plaintiff's request for injunctive relief. Notice of this motion for temporary restraining order was immediately given. Gura Decl, ¶ 4. It is unclear how mere notice of a judicial reassignment motion can deprive a party of the right to be heard under Rule 65's provision authorizing relief from immediate, irreparable harm. Doing so would truly elevate process over substance, under circumstances where the rules clearly call upon the Court to resolve the urgent substantive issue.

For their part, the *Benson* plaintiffs "desire" to operate gun ranges in Chicago. First Am. Complaint, No. 10-CV-4184, at ¶¶ 56, 57. That is all. That simple conjectural expression of "desire" is the total substance of *Benson*'s challenge to the range ban. None of the *Benson* plaintiffs claim the range ban impacts their ability to register firearms; none have built or operated ranges in Chicago, or secured the imminent delivery of gun ranges to Chicago for training purposes. *Benson* plaintiffs raise no First Amendment argument, a critical component of this

---

[1] The very fact that the reassignment motion is intended to cause delay suggests that it lacks merit, as a required element of obtaining such relief is a showing that it is "likely to result in a substantial saving of judicial time and effort." LR 40(b)(2).

3

lawsuit. Yet *Benson* raises numerous substantial constitutional issues having nothing to do with this case, relating to the carrying, transportation, storage, and sale of firearms.

And *Benson* is not yet at-issue. Asked when Defendant might respond to the *Benson* lawsuit, opposing counsel could only offer, "in due time." Gura Decl., ¶ 5. Moreover, the city has not (yet) sought the relation of a third case that overlaps with *Benson*, but does not at all intersect with this case: *Second Amendment Arms* v. *City of Chicago*, No. 10-CV-4257 (assigned to Judge Dow), the complaint in which has not yet been served.

In other words, *merely because other people claim they "desire" to operate gun ranges*, Defendant avers that Plaintiffs must be indefinitely deprived of their ability to obtain injunctive relief. Plaintiffs will need time to oppose the judicial reassignment motion, and if this Court disagrees with Judge Guzman's ruling, it could seek review before the Executive Committee. Local Rule 40.4(d). Yet every day of additional delay causes additional irreparable harm.

Plaintiffs would not seek to stop the city from having its motion heard "in due time." They simply want the same consideration for their own motion, whose time has come.

### ARGUMENT

It is the availability of immediate relief that could render the judicial reassignment motion pointless, and not the other way around. Defendant's fear that immediate injunctive relief would moot their judicial reassignment motion is precisely why that motion should be denied, whenever it gets heard, and why Defendant should concentrate on addressing the merits of this case instead of chasing judicial reassignment.

For purposes of the matter at hand, it would be highly inefficient for the Court to decline ruling on a ripe, fully-briefed request for injunctive relief, where Plaintiffs will suffer irreparable

4

injury and have worked hard taking significant preparatory action pending the Court's decision, merely because another set of Plaintiffs have proffered a conjectural statement of "desire," in a case not at issue where nothing has happened for over a month, and nothing may yet happen anytime soon.

No reason supports delaying this case pending a ruling on the reassignment motion. *First*, regardless of which judge rules on Plaintiffs' motion, or how that motion is ruled on, such order would be appealable; the Seventh Circuit will take up the matter and likely decide it before any meaningful progress is achieved in *Benson*. Thus, even if the case is re-assigned, the interest in judicial economy is best served by having Judge Guzman hold the allegedly overlapping argument in the as-yet unanswered *Benson* matter in abeyance, not by delaying this lawsuit indefinitely while *Benson* catches up – if it ever does, which is not clear.

*Second*, regardless of which judge rules on Plaintiffs' motion, or how that motion is ruled on, any appeal of that result by either side would be interlocutory in nature. The District Court would retain concurrent jurisdiction to consider the reassignment motion, or engage in any other proceedings. Defendant's motion will thus be considered "in due time." But it would certainly save Judge Guzman a great deal of time to have the range ban determined and on appeal in the (unlikely) event he would then wish to relate these distant cases.

*Finally*, the rules themselves strongly suggest that it would be improper to defer a ruling on Plaintiffs' motion. Not only is there no obvious authority for delaying a case averring imminent, irreparable harm simply because the Defendant wishes to obtain a judicial reassignment, but Rule 65 contemplates that there is a class of cases where the evidence submitted at the preliminary injunction stage suffices to convert the matter into a trial on the merits. Fed. R. Civ.

Proc. 65(a)(2). This may yet be such a case, because the basic facts are not at issue, only the law.

## CONCLUSION

Doubtless, many people "desire" to operate gun ranges or other businesses impacted by the challenged ordinances. But that is not a reason to delay resolution of this case, which might even be ripe for final judgment.

The range ban clearly violates Plaintiffs' Second and First Amendment rights, causing irreparable injury. If the city is not interested in seriously addressing this litigation, the Court can and should proceed to rule immediately. Therefore, for the reasons supplied and upon the evidence submitted in connection with the motion for preliminary injunction, Plaintiffs respectfully request the entry of a temporary restraining order, and the scheduling of a hearing on their motion for preliminary injunction pursuant to Fed. R. Civ. Proc. 65(b)(3).

Dated: August 22, 2010     Respectfully submitted,

Alan Gura (admitted pro hac vice)   David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC     Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405  4300 Commerce Court, Suite 300-3
Alexandria, VA 22314     Lisle, IL 60532
703.835.9085/Fax 703.997.7665   630.452.4547/Fax 630.596.4445

By: /s/ Alan Gura/      By: /s/ David G. Sigale/
  Alan Gura         David G. Sigale
              Attorneys for Plaintiffs

6

## CERTIFICATE OF SERVICE

The undersigned, an attorney of record for the plaintiffs, hereby certifies that on August 22, 2010, he served a copy of the above Memorandum of Points and Authorities in Support of the Motion for Temporary Restraining Order, and this certificate of service, on:

        Andrew W. Worseck
        City of Chicago Department of Law
        30 N. LaSalle Street, Suite 900
        Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF).


        /s/ Alan Gura_____
        Alan Gura

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.0.3
### Eastern Division

Rhonda Ezell, et al.

                     Plaintiff,

v.

City Of Chicago

                     Defendant.

Case No.: 1:10–cv–05135
Honorable Virginia M. Kendall

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, August 24, 2010:

      MINUTE entry before Honorable Virginia M. Kendall: Temporary restraining order hearing held on 8/24/2010. Plaintiff's motion for TRO [11] is denied without prejudice for the reasons stated on the record in open court. Minute entry [13] is stricken. Plaintiff's motion for preliminary and permanent injunction [4] is briefed as follows: Responses due by 9/20/2010 Replies due by 9/27/2010. Preliminary Injunction hearing set for 10/1/2010 at 01:00 PM. Defendant's oral motion to keep the previous schedule is denied. Any discovery shall be complete by 9/13/2010. Advised in open court notice(tsa, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

EXHIBIT

tabbies'

E

# EXHIBIT F

Westlaw.

Not Reported in F.Supp.2d, 2002 WL 31655277 (N.D.Ill.)
(Cite as: 2002 WL 31655277 (N.D.Ill.))

▷Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
FAIRBANKS CAPITAL CORP., Plaintiff,
v.
Johnny JENKINS and Annie J. Wesson-Jenkins, Defendants.
Johnny JENKINS and Annie J. Wesson-Jenkins,
Counterclaimants,
v.
FAIRBANKS CAPITAL CORP. and Nationscredit
Financial Services Corp., d/b/a EquiCredit Corporation of Illinois, Counterdefendants.
No. 02 C 3930.

Nov. 25, 2002.

*MEMORANDUM OPINION AND ORDER*

KENNELLY, J.

*1 Fairbanks Capital Corp., the assignee of a mortgage of real estate given to secure payment of a promissory note, sued the mortgagors, Johnny Jenkins and Annie J. Wesson-Jenkins, seeking to foreclose on the mortgage. The case was filed in this Court based on diversity of citizenship. In their answer, the defendants asserted as an affirmative defense that they were entitled under the Truth in Lending Act to rescind the transaction and were exercising that right. They also counterclaimed against Fairbanks and Nationscredit Financial Services Corp. (which does business as EquiCredit Corp. of Illinois), the original mortgagee, for damages under the TILA. The Court previously denied Fairbanks' motion to strike the affirmative defense and dismiss the counterclaim. *Fairbanks Capital Corp. v. Jenkins,* 225 F.Supp.2d 910, 2002 WL 31260011 (N.D.Ill. Oct. 9, 2002).

The defendants have now moved this Court pursuant to Northern District of Illinois Local Rule 40.4(c) to find that three later-filed cases pending before other judges of the Court are related to this one and for that reason to request reassignment of those cases to this Court's docket. Fairbanks and EquiCredit have objected to the motion. For the reasons stated below, the Court grants defendants' motion.

The defendants' TILA claim involves EquiCredit's alleged violation of TILA provisions requiring that they be given notice of their right to rescind the transaction within three business days. *See* 15 U.S.C. § 1635; 12 C.F.R. § 226.23. Defendants contend that a document they were asked to sign at closing purportedly "confirming" that they were not rescinding was invalid because it improperly negated their right to rescind. This TILA violation, defendants contend, had the effect of giving them an extended three-year period in which to rescind, *see* 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a), which they contend can be asserted against an assignee like Fairbanks. *See* 15 U.S.C. § 1641(c). As noted earlier, they seek rescission of the transaction as well as damages and attorney's fees.

*McWethy v. Nationscredit Financial Services Corp.,* Case No. 02 C 7262, pending before Judge Robert Gettleman, is a putative class action brought on behalf of eight named plaintiffs (two individual mortgagors and three groups of dual mortgagors) who are parties to mortgage loans made by EquiCredit and assigned to Fairbanks. The defendants are Nationscredit d/b/a EquiCredit Corp. of Illinois, EquiCredit Corp. of Missouri; EquiCredit Corp. of America; and Fairbanks. The plaintiffs' complaint asserts claims under TILA and the Illinois Consumer Fraud Act arising from EquiCredit's alleged practice of requiring borrowers to sign confirmation forms effectively giving up their right to rescind.

*Brown v. Nationscredit Financial Services Corp.,* Case No. 02 C 5023, pending before Judge William Hibbler, is a putative class action brought by a single plaintiff against Nationscredit d/b/a EquiCredit Corp. of Illinois; EquiCredit Corp. of America; and Fairbanks. The plaintiff, a homeowner who obtained a mortgage loan from EquiCredit (and assigned to Fairbanks) in order to finance improvements to his home, alleges TILA and ICFA violations based on the practice of requiring borrowers to "confirm" their non-rescission at the time of the transaction. He also alleges that the loan was subject to the Home Ownership and Equity Protection Act, which he says EquiCredit violated by failing to make certain

EXHIBIT

tabbies®

F

Not Reported in F.Supp.2d, 2002 WL 31655277 (N.D.Ill.)
(Cite as: 2002 WL 31655277 (N.D.Ill.))

HOEPA-required disclosures.

**\*2** Finally, *Brown v. Nationscredit Financial Services Corp.,* Case No. 02 C 6059, pending before Judge Charles Norgle, is brought on behalf of two plaintiffs against Nationscredit d/b/a EquiCredit Corp. of Illinois; EquiCredit Corp. of America; and Fairbanks. The plaintiffs, who obtained a mortgage loan from EquiCredit which was assigned to Fairbanks, alleges violations of TILA and ICFA arising from the previously-mentioned practice of requiring borrowers to "confirm" non-rescission at the time of the transaction.

The plaintiffs in all of the cases that are subject to this motion are represented by the same law firm. As best we can tell, all of the Nationscredit / EquiCredit entities in all of the cases are represented by a single law firm, and Fairbanks is likewise represented by the same law firm in all of the cases.

Local Rule 40.4(a) states that two or more civil cases may be related if they involve the same property, the same issues of fact or law, arise from the same transaction or occurrence, or, in the case of class action suits, involve the same classes. N.D. Ill. LR 40.4(a)(1)-(4). EquiCredit and Fairbanks do not argue that the cases are not related within the meaning of Rule 40.4(a), and even if they had done so, the Court would find that the criteria of Rule 40.4(a)(2) have been met, as the cases involve the same issues of law. There is no question that each of these cases will involve the issue of the legality, under TILA and ICFA, of EquiCredit's alleged practice of requiring borrowers to sign non-rescission "confirmations." The Rule does not require complete identity of issues in order for cases to be considered related.

EquiCredit and Fairbanks' challenge to defendants' motion turns on the application of Local Rule 40.4(b), which provides the criteria for determining whether assignment of related cases to the judge with the lowest-numbered case is appropriate. Under Rule 40.4(b), reassignment may be ordered if four criteria are met as to all of the cases in question: they are pending in this Court; the handling of all the cases by the same judge is likely to result in a substantial saving of judicial time and effort; the earliest case has not progressed so far that designating later cases as related would likely delay substantially the proceedings in the earliest case; and the cases are susceptible

of disposition in a single proceeding. N.D. Ill. LR 40.4(b)(1)-(4). There is no question that the first and third of these criteria are met here; all of the cases are pending in this Court, and *Fairbanks Capital Corp. v. Jenkins,* the first of the cases to be filed, has not progressed all that far: the Court has ruled on a motion to dismiss the counterclaim, and discovery has just gotten started.

The Court likewise believes that significant judicial efficiency will result from having one judge handle all four of the cases. None of the cases can be disposed of without determining the legality of EquiCredit's alleged practice regarding non-rescission "confirmation" at the time of the loan, as well as the consequences of that practice vis-a-vis Fairbanks as assignee. Reassignment of all of the cases to this Court's calendar will permit these issues to be briefed and determined once, rather than four separate times, which will result in a substantial saving of judicial time and effort-not to mention a substantial saving of the parties' and their counsels' time and effort. The overall administration of justice will likewise be enhanced by having a single judge determine this issue in all four of the cases. Indeed, the Court of Appeals for the Seventh Circuit recently criticized the judges of this Court for permitting numerous lawsuits involving TILA and ICFA-related challenges to the practices of "payday loan" companies to proceed along different tracks before different judges, resulting in numerous and disparate decisions, as well as multiple appeals. *Smith v. Check-N-Go of Illinois, Inc.,* 200 F.3d 511, 513 n.[*] (7th Cir.1999). The criticism was not entirely justified, as none of the parties in any of those cases had sought reassignment under Local Rule 40.4 or on any other basis. But the same, of course, cannot be said here.

**\*3** Finally, all of the cases are reasonably subject to disposition in a single proceeding. EquiCredit and Fairbanks argue strenuously that the fact that the case already pending on this Court's docket is, unlike the other cases, a mortgage foreclosure case, requires denial of defendants' motion for reassignment. They contend that a mortgagee is "the master of his complaint" and is entitled to proceed with the foreclosure without the annoyance of extraneous matters. But even though Fairbanks is entitled to prosecute its foreclosure claim against the Jenkins defendants, that claim cannot be determined without addressing the TILA issue raised as part of defendants' affirmative

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31655277 (N.D.Ill.)
(Cite as: 2002 WL 31655277 (N.D.Ill.))

defense of rescission. Thus the Court will be required to consider that issue in *Fairbanks v. Jenkins* whether or not the other cases are reassigned to this Court. Determination of that same issue in four cases simultaneously is not likely to prolong the time needed to consider it; the same lawyers appear in all the cases, which can and will be briefed jointly on the common issues. The HOEPA issue raised in one of the *Brown* cases likely can be determined at the same time and thus likewise does not undercut the Court's ability to resolve all of the cases simultaneously.

Fairbanks and Nationscredit also argue that Illinois' mortgage foreclosure laws preclude the assertion of a class action as part of a counterclaim by the mortgagor/defendant. But that is not a necessary result of reassignment; the Jenkins defendants have not asserted a class claim, and reassignment of cases as related does not inexorably lead to their consolidation for all purposes. And although Rule 40.4(b) requires a showing that the cases to be reassigned be susceptible of determination in a single proceeding with the earlier case already pending on the judge's docket, it does not require proof that the cases can or should be consolidated. Rather, the Rule requires only a finding that the cases are "susceptible" (that is, capable) of determination in a single proceeding. The Court finds that this is so. Determination of the common TILA / ICFA issues raised in all four cases, whatever the outcome, will be outcome-determinative of *McWethy* and both *Brown* cases [FN1] as well as in *Fairbanks v. Jenkins* (in which the primary defense to foreclosure is the alleged TILA violation). Moreover, as defendants argue, the evidence regarding the manner in which each of the borrowers allegedly was required to sign the non-rescission confirmation is likely to be admissible in the other cases pursuant to Federal Rule of Evidence 404(b) to show *modus operandi* and/or the absence of mistake or accident.

> FN1. One of the *Brown* cases also involves a HOEPA claim, but this involves the same evidence as the TILA claim, and it likely can and will be determined together with that claim. The presence of the HOEPA claim thus does not suggest that the cases are not susceptible of being determined in a single proceeding.

Conclusion

For the reasons stated above, the Court finds that Case Nos. 02 C 5023, 02 C 6059, and 02 C 7262 are related to the present case within the meaning of Local Rule 40.4(a) and that reassignment of those cases to this Court's docket is appropriate under Local Rule 40.4(b) and therefore grants defendants' motion and second motion to designate those cases as related to this one [docket items 22-1, 25-1]. The appropriate request will be submitted to the Executive Committee. This case (as well as the others, assuming they are reassigned by then) is set for a status hearing on December 19, 2002 at 9:30 a.m.

N.D.Ill.,2002.
Fairbanks Capital Corp. v. Jenkins
Not Reported in F.Supp.2d, 2002 WL 31655277 (N.D.Ill.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.