**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BENSON, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-CV-4184** |
| | ) | **Judge Ronald A. Guzman** |
| **CITY OF CHICAGO, ET AL.,** | ) | **Magistrate Judge Geraldine Soat** |
| | ) | **Brown** |
| **Defendants.** | ) | |

**DEFENDANT CITY OF CHICAGO'S ANSWER AND DEFENSES TO
PLAINTIFFS' FIRST AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Defendants City of Chicago (the "City") and Mayor Richard M. Daley (collectively, "Defendants"), by their attorney, Mara S. Georges, Corporation Counsel for the City of Chicago, hereby file their Answer and Defenses to Plaintiffs' First Amended Complaint for Declaratory Judgment and Injunctive Relief.

**ANSWER**

**Introduction**

1.     This is an action to vindicate the federal constitutional rights of residents of Chicago, Illinois, to keep and bear arms under the Second and Fourteenth Amendments to the United States Constitution.

**ANSWER:**     The City admits that Plaintiffs' claims in this case arise under the Second and Fourteenth Amendments to the United States Constitution.   The City denies any remaining allegations contained in Paragraph 1.

2.     The Supreme Court has unequivocally declared that the Second Amendment "guarantee[s] the individual right to possess and carry" arms. *District of Columbia v. Heller*, 128 S. Ct. 2783, 2797 (2008).  In particular, *Heller* struck down a ban on the possession of handguns, "the most popular weapon chosen by Americans for self-defense in the home." *Id*. at 2818.  The City of Chicago ("the City") has long denied this fundamental right to its citizens, banning, as of 1982, all possession of handguns for any purpose whatsoever.  In *McDonald v. City of Chicago*, 130

S. Ct. 3020 (2010), the Supreme Court made clear that, like other fundamental constitutional rights, the right to keep and bear arms is protected against infringement by state and local governments. Accordingly, the City's total ban on handgun possession was patently unconstitutional.

**ANSWER:** The City admits that in *District of Columbia v. Heller*, 128 S. Ct. 2783, 2797 (2008), the Supreme Court recognized that the Second Amendment to the United States Constitution guarantees an individual right to possess arms in the home for self-defense and invalidated a District of Columbia law that prohibited the possession of handguns within the District. The City admits that the majority opinion in *Heller* states that handguns are "the most popular weapon chosen by Americans for self-defense in the home." The City admits that in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), the Supreme Court held that the Second Amendment applies to state and local governments through the Fourteenth Amendment. The City denies the remaining allegations contained in Paragraph 2.

3. As the Supreme Court has noted, the City views the Second Amendment as "a second-class right," *id*. at 3044 (plurality opinion), to be "singled out for ... specially unfavorable [] treatment," *id*. at 3043 (majority opinion). Thus, in the wake of *McDonald*, the City promptly enacted an ordinance imposing a host of new restrictions that have the purpose and effect of preventing Plaintiffs and other law-abiding residents of Chicago from exercising their fundamental right to keep and bear firearms for self-defense and other lawful purposes.

**ANSWER:** The City denies that it views the Second Amendment as a "second-class right" or that the Supreme Court made that observation in *McDonald*. Further answering, the City states that the plurality in *McDonald* stated that the City "ask[s] us to treat the right recognized in *Heller* as a second-class right" and that the majority stated that "[w]e assume that . . . what [the City] must mean is that the Second Amendment should be singled out for special – and specially unfavorable – treatment." The City admits that after the Supreme Court announced its decision in *McDonald*, the Chicago City Council passed the Responsible Gun Owners Ordinance on July 2, 2010. The City denies the remaining allegations contained in Paragraph 3.

**Parties**

4.    Plaintiff Brett Benson is a resident of Chicago and a citizen of the United States.

**ANSWER:**    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4.

5.    Plaintiff Raymond Sledge is a resident of Chicago and a citizen of the United States.

**ANSWER:**    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5.

6.    Plaintiff Kenneth Pacholski is a resident of Chicago and a citizen of the United States.

**ANSWER:**    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6.

7.    Plaintiff Kathryn Tyler is a resident of Chicago and a citizen of the United States.

**ANSWER:**    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7.

8.    Plaintiff Michael Hall Sr. is a resident of Chicago and a citizen of the United States.

**ANSWER:**    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8.

9.    Plaintiff Rick Pere is a resident of Round Lake, Illinois, and a citizen of the United States.

**ANSWER:**    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9.

10.    The Illinois Association of Firearms Retailers ("ILAFR") is a non-profit entity organized under the law of Illinois and Section 501(c)(6) of the Internal Revenue Code to promote the interests of the firearms retail industry and the protection of Second Amendment rights. Its principal place of business is in Carbondale, Illinois. Its members engage in the sale of firearms, the operation of shooting ranges, and the operation of combined retail operations/firing ranges in

Illinois.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10.

11. Defendant City of Chicago is a political subdivision of the State of Illinois.

**ANSWER:** The City admits the allegations contained in Paragraph 11.

12. Defendant Richard M. Daley is the Mayor of Chicago, which is his principal place of business, and he is sued in his official capacity.

**ANSWER:** The City admits the allegations contained in Paragraph 12.

13. The City of Chicago, Mayor Daley, and their officers, agents, and employees will sometimes hereafter be referred to as "Defendants."

**ANSWER:** The City admits the allegations contained in Paragraph 13.

## Jurisdiction

14. This action seeks relief pursuant to 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 1983 and 1988. Therefore, jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3), in that this action seeks to redress the deprivation, under color of law, of rights secured by the United States Constitution.

**ANSWER:** The City admits that Plaintiffs seek relief pursuant to 28 U.S.C. §§ 2201 & 2202 and 42 U.S.C. §§ 1983 & 1988, but denies that Plaintiffs are entitled to any such relief or that Plaintiffs have stated a claim against the City. The City admits that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 & 1343.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

**ANSWER:** The City admits the allegations contained in Paragraph 15.

## Background

16. On June 28, 2010, the Supreme Court of the United States held in *McDonald v. Chicago*, 130 S. Ct. 3020 (2010), that the Second Amendment right to keep and bear arms restrains state and local governments through incorporation in the Fourteenth Amendment.

4

**ANSWER:** The City admits the allegations contained in Paragraph 16.

17. The Supreme Court remanded the case for the lower courts to apply the Second Amendment to the challenged Chicago ordinance that effectively banned private ownership of handguns within the city. In anticipation that the ordinance challenged in *McDonald* would be struck down, the City Council of Chicago, on July 2, 2010, amended the Municipal Code of Chicago as it pertains to firearms ("the Ordinance") (a copy is attached as Ex. A).

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegation that the Chicago City Council enacted the Responsible Gun Owners Ordinance in anticipation that the prior ban on handgun possession in the City would be invalidated. The City admits the allegations contained in Paragraph 17.

18. In his statements during the July 2, 2010 City Council meeting, Alderman Fioretti declared that the vindication of Second Amendment rights in *McDonald* "was not a good decision for law-abiding citizens." Alderman Solis concurred, stating that "the decision made by the Supreme Court is not really in the best interests of our citizens." Alderman Dixon denounced what she called the Court's "blatant... misreading of the law." Another Alderman likewise criticized the Justices of the Supreme Court, saying that "[w]e're here today because of their poor judgment... of how life is in large urban settings and cities like ... Chicago. I don't know how they can say we would be safer by allowing individuals, even if they are law-abiding citizens, to own and possess firearms in their homes."

**ANSWER:** The City admits that Paragraph 18 accurately quotes portions of statements made by Alderman Fioretti during the July 2, 2010 meeting of the Chicago City Council but denies that Paragraph 18 fully and completely cites the entirety of his statements during the July 2, 2010 meeting of the Chicago City Council. The City denies the remaining allegations contained in Paragraph 18.

19. Alderman Lyle forecast that future generations would react to the Supreme Court's decision in *McDonald* with "shock and awe. They will be amazed that in a country that is a leader of the free nations that we have such a reckless love affair with guns.... They're going to wonder what madness overtook this country. But that's where we find ourselves. ... We find ourselves with a Court that used to be occupied by literary legal giants, who now use this to take a slap at the leaders of the City of Chicago."

**ANSWER:** The City denies that Paragraph 19 accurately quotes portions of statements

5

made by Alderman Lyle during the July 2, 2010 meeting of the Chicago City Council. The City

denies the remaining allegations contained in Paragraph 19.

20.    Alderman Hairston complained about what [s]he described as "the message the
Supreme Court is sending. I think that's the same message that the gang bangers are sending, that
a life is not valuable. That truly hurts my soul here. I have to say it: I think the Supreme Court is
wrong."

**ANSWER:**    The City admits that Paragraph 20 accurately quotes portions of statements

made by Alderman Hairston during the July 2, 2010 meeting of the Chicago City Council but denies

that Paragraph 20 fully and completely cites the entirety of her statements during the July 2, 2010

meeting of the Chicago City Council. The City denies the remaining allegations contained in

Paragraph 20.

21.    Alderman Mary Ann Smith echoed her fellows on the City Council, vowing to limit
gun ownership with new legal restrictions and thanking "everyone who has worked to try and create
as restrictive a tool as possible." In describing the new Ordinance on July 1, 2010, Chicago
Corporation Counsel Mara Georges lauded its bans and restrictions and concluded that "[w]e've
gone farther than anyone else ever has."

**ANSWER:**    The City admits that Paragraph 21 accurately quotes portions of statements

made by Alderman Smith during the July 2, 2010 meeting of the Chicago City Council but denies

that Paragraph 21 fully and completely cites the entirety of Alderman Smith's statements during the

July 2, 2010 meeting of the Chicago City Council. The City further admits that Paragraph 21

accurately quotes portions of statements made by Corporation Counsel Mara S. Georges before the

City Council's Committee on Police and Fire on July 1, 2010 but denies that Paragraph 21 fully and

completely cites the entirety of Ms. Georges's statements before the Committee on July 1, 2010.

The City denies the remaining allegations contained in Paragraph 21.

### The New Ordinance

22.    Several of the provisions of the Ordinance infringe Plaintiffs' constitutional right to
keep and bear arms and are therefore challenged here.

6

**ANSWER:** The City denies the allegations contained in Paragraph 22.

23. Section 4-144-010 states that it shall be unlawful for any person "to engage in the business of selling, or to sell, give away or otherwise transfer, any firearm." Section 8-20-100 states that "no firearm may be sold, acquired or otherwise transferred within the city, except through inheritance of a firearm." Thus, apart from bequests, the Ordinance imposes a total ban on the sale or transfer of firearms within Chicago.

**ANSWER:** The City denies that Paragraph 23 accurately quotes section 4-144-010 of the Chicago Municipal Code. The City denies that Paragraph 23 accurately quotes section 8-20-100 of the Chicago Municipal Code. The City admits that the City's Ordinance prohibits the sale or transfer of firearms within the City except for firearms transferred by inheritance.

24. Section 8-20-110 prohibits possession of a firearm without a Chicago Firearms Permit, and Section 8-20-120 states that no person can obtain such a permit without "an affidavit signed by a firearm instructor certified by the State of Illinois ... attesting that the applicant has completed a firearm safety and training course, which, at a minimum, provides one hour of range training." Yet Section 8-20-280 states that "[s]hooting galleries, firearm ranges, or any other place where firearms are discharged are prohibited." Thus, the Ordinance dictates that there can be no place in Chicago where one can obtain the firearms training that the Ordinance itself mandates for legal possession of a firearm.

**ANSWER:** The City admits that section 8-20-110 of the Chicago Municipal Code makes it generally unlawful for any person to carry or posses a firearm in the City without a Chicago Firearms Permit. The City admits that section 8-20-120(a)(7) contains the language quoted in Paragraph 24 but denies that Paragraph 24 fully and completely cites the entirety of section 8-20-120(a)(7). The City admits that section 8-20-280 contains the language quoted in Paragraph 24 but denies that Paragraph 24 fully and completely cites the entirety of section 8-20-280. The City admits that the City does not allow a person to obtain in the City the one hour of range training necessary to obtain a CFP but denies that the City precludes a person from obtaining in the City the four hours of classroom instruction required under section 8-20-120(a)(7) to obtain a CFP.

25. Section 8-24-010 states that "[n]o person shall fire or discharge any firearm within the city, except in the lawful self-defense or defense of another" or for delimited hunting purposes.

7

Although on its face this purports to preserve the right to use a firearm in self-defense, by proscribing the discharge of a gun for training or practice purposes, the Ordinance dictates that the residents of Chicago cannot obtain in Chicago the firearms training that the Ordinance itself requires and that is otherwise desired by Plaintiffs and other gun owners to achieve and maintain proficiency in the use of their firearms.

**ANSWER:** The City admits that section 8-24-010 contains the language quoted in

Paragraph 25 but denies that Paragraph 25 fully and completely cites the entirety of section 8-24-

010. The City admits that section 8-24-010 prohibits the firing or discharge of a firearm within the

City except in lawful self-defense or defense of another and that, as a result, Chicago citizens cannot

discharge a firearm in the City for the purpose of completing the one hour of range training required

under section 8-20-120(a)(7) to receive a CFP. The City lacks knowledge or information sufficient

to form a belief as to the truth of Plaintiffs' allegation that they "and other gun owners" desire

training "to achieve and maintain proficiency in the use of their firearms."

26. Section 8-20-040 prohibits the possession of more than one "assembled and operable" firearm within the home, even by someone who is fully licensed to possess a firearm by the Ordinance. Any other firearms owned by that person must be disassembled or otherwise rendered "inoperable." If there two or more persons in the home with CFPs and registration certificates, each such person is allowed only one gun in an operable condition. The Ordinance thus bars a licensed gun owner from keeping more than one operable firearm in the home for self-defense, either to have a firearm available in more than one room of the dwelling in case of emergency, or to have a firearm available to more than one adult member of the family. In the event of a home invasion, all family members would be dependent upon the ability of a single person in a single location to obtain immediate access to a single operable weapon.

**ANSWER:** The City admits that section 8-20-040 contains the language quoted in

Paragraph 26 but denies that Paragraph 26 fully and completely cites the entirety of section 8-20-

040. The City admits that pursuant to section 8-20-040, every person who keeps or possesses a

firearm in his home shall keep no more than one firearm in his home assembled and operable. The

City further admits that if more than one person in the home has a valid CFP and registration

certificate, section 8-20-040 permits each person with a valid CFP and registration certificate to

8

possess one assembled and operable firearm in the home.

The City admits that section 8-20-040 prohibits a person with a valid CFP and registration certificate from possessing in the home more than one assembled or operable firearm. The City denies that the Ordinance precludes all adult family members from possessing firearms in the home provided each adult family member complies with the requirements of the Ordinance. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 26.

27.     Section 8-20-020 renders it "unlawful for any person to carry or possess a handgun, except when in the person's home." Section 8-20-030 renders it "unlawful for any person to carry or possess a long gun, except when in the person's home or fixed place of business." The term "home" is sharply limited, defined to exclude "any garage, including an attached garage, on the lot" and "any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas." MCC § 8-20-010. Section 8-20-140(a) renders it "unlawful for any person to carry or possess a firearm without a firearm registration certificate," and Section 8-20-180(c) states that "[a] registration certificate shall only be valid for the address on the registration certificate," and "[e]xcept in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate." "Lawful transportation" means transportation by a person who has a FOID card, a CFP, and a firearm registration certificate, and whose firearm is "(i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case." MCC § 8-20-010. The Ordinance thus imposes a total ban in Chicago on possessing or carrying a firearm for personal protection outside one's "home" (as narrowly defined by the Ordinance), except in one's fixed place of business where long guns, but not handguns, are permitted.

**ANSWER:**     The City admits that section 8-20-020(a) makes it "unlawful for any person to carry or possess a handgun, except when in the person's home." The City admits that section 8-20-030 makes it "unlawful for any person to carry or possess a long gun, except when in the person's home or fixed place of business." The City admits that section 8-20-010 defines "home" as "the inside of a person's dwelling unit which is traditionally used for living purposes, including the basement and attic" and "does not include:(i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit, including any stairs, porches, back, side or front yard

space, or common areas; or (iii) any dormitory, hotel, or group living, as that term is defined in

section 17-17-0102-A." The City admits that section 8-20-140(a) contains the language contained

in Paragraph 77 but denies that Paragraph 77 fully and completely cited the entirety of section 8-20-

140(a). The City admits that section 8-20-180(c) states: "A registration certificate shall only be

valid for the address on the registration certificate. Except in the lawful transportation of a firearm,

a person shall not carry or possess any firearm at any location other than that authorized by the

registration certificate." The City admits that "Lawful transportation" is defined in section 8-20-010

and "means the transportation of a firearm by a person; (1) in compliance with section 8-20-090;

or (2) who has a valid FOID card, a CFP, and firearm registration certificate, if applicable, and the

firearm is "(i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii)

unloaded and in a firearm case." The City admits that the Ordinance prohibits a person from

carrying or possessing a firearm outside of the home, as that term is defined in section 8-20-010,

except that a person may possess a long gun in a person's fixed place of business. The City denies

the remaining allegations contained in Paragraph 27.

28.     As contemporaneous statements from City officials attest, the Mayor and City Council designed the Ordinance to negate the Supreme Court's vindication of Second-Amendment rights in *McDonald*, to be as "restrictive a tool as possible" for suppressing gun ownership, and to go "farther than anyone else ever has" in restricting the exercise of the right to keep and bear arms.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 28.

29.     Violation of the Ordinance is punishable by fines up to $10,000 and incarceration for up to six months. Each day that such violation exists constitutes a separate offense. MCC § 8-20-300(a) & (b).

**ANSWER:**     The City admits that section 8-20-300(a) of the Chicago Municipal Code

states that "[any person who violates section 8-20-020, 8-20-030, 8-20-035, 8-20-060, 8-20-080 or

10

8-20-110 shall upon conviction be fined not less than $1,000.00 nor more than $5000.00 and be incarcerated for a term not less than 20 days nor more than 90 days. Each day that such violation exists shall constitute a separate and distinct offense." The City admits that section 8-20-300(b) provides that "[u]nless another fine or penalty is specifically provided, any person who violates any provision of this chapter, or any rule or regulation promulgated hereunder, shall upon conviction or a finding of liability for the first offense, be fined not less than $1,000.00, nor more than $5,000.00, or be incarcerated for not less than 20 days no more than 90 days, or both. Any subsequent conviction for a violation of this chapter shall be punishable by a fine of not less than $5,000.00 and not more than $10,000.00, and by incarceration for a term of not less than 30 days, nor more than six months. Each day that such violation exists shall constitute a separate and distinct offense."

30. Defendant Daley is responsible for enforcing the Ordinance through agencies and officers under his direction. Mayor Daley appoints and supervises most municipal officers in Chicago, including (i) the Director of the Department of Administrative Hearings, which has authority to adjudicate enforcement of the Ordinance, and (ii) the Superintendent of Police, who has the authority to arrest Chicago residents for violations of the Ordinance and to make further rules and regulations under the Ordinance. MCC §§ 2-4-010, 2-4-020, 2-14-010, 2-14-190, 2-84-040, 8-26-090. Mayor Daley supervises the conduct of all municipal officers and has general authority to enforce (or to designate the officer who enforces) the Ordinance. MCC § 2-4-030. Mayor Daley signs all firearms licenses and permits under the Ordinance, MCC §§ 2-4-040, 8-20-110, 8-20-140, and supervises the Superintendent of Police, who transmits all denials of firearms licenses under the Ordinance, MCC § 8-20-200.

**ANSWER:** The City admits that the mayor, through his or her designees, enforces the Responsible Gun Owners Ordinance. The City admits that pursuant to section 2-14-010 of the Chicago Municipal Code, the mayor appoints the director of the City's Department of Administrative Hearings. The City denies that the Department of Administrative Hearings has authority under section 2-14-190 to adjudicate violations of chapter 4-144 of the Chicago Municipal Code but admits that under section 8-20-300(d), the superintendent of police may institute an administrative adjudication proceeding with the Department of Administrative Hearings as set forth

11

in section 8-20-300. The City admits that pursuant to section 2-84-040, the mayor appoints the superintendent of police upon recommendation of the police board and with the advice and consent of the Chicago City Council. The City admits that pursuant to section 8-26-090, the superintendent has the authority to promulgate rules and regulations for the implementation of chapter 8-26 and to prescribe all forms and the information required. The City admits that pursuant to section 2-4-030 of the Chicago Municipal Code, the mayor supervises the conduct of all municipal officers and has general authority to enforce or to designate the officer who enforces the provisions of the Chicago Municipal Code in all cases in which an ordinance fails to specify the officer who shall be charged with the duty of enforcement. The City admits that pursuant to section 2-4-040, the mayor signs all licenses and permits except as provided by the Chicago Municipal Code. The City admits that the mayor signs permits issued under section 8-20-110 and registration certificates issued under section 8-20-140. The City admits that the mayor supervises the Superintendent of Police, who transmits all denials of CFP applications and all denials of applications for a registration certificate to the applicant pursuant to section 8-20-200. The City denies the remaining allegations contained in Paragraph 30.

### The Impact of the Ordinance on the Plaintiffs

31.     Plaintiff Brett Benson is a 37-year-old, Caucasian male, and a resident of Chicago. He is married and has three young children. He is a trader on the Chicago Mercantile Exchange. He owns a farm in central Illinois about two hours from Chicago.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31.

32.     Mr. Benson desires to keep more than one operable handgun and long gun in his home for the protection of his family and property, but the Ordinance prohibits him from doing so. He also desires to transport firearms between his farm and his home in Chicago.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the

12

truth of the allegations contained in Paragraph 32.

33.     But for the Ordinance, Mr. Benson would on occasion carry a handgun for self-defense when outside his home, as that term is defined in the Ordinance.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33.

34.     To purchase a gun under the current legal regime, Mr. Benson must travel outside the city at least twenty miles from his home.  He would buy firearms within the city if sales of these items were permitted.

**ANSWER:**     The City admits that pursuant to sections 4-144-010 and 8-20-100 of the Chicago Municipal Code, Mr. Benson cannot purchase a firearm within the City. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 34.

35.     Plaintiff Raymond Sledge is a 53-year-old, African-American male, and a resident of Chicago.  He has been employed for the last sixteen years as a teaching assistant at a public elementary school in Chicago.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35.

36.     Although he owns his own house, his current legal residence is his mother's house a few blocks away, in the south side neighborhood of Greater Grand Crossing.  He moved in with his mother several years ago to take care of her after his father passed away.  They share their Chicago home with Mr. Sledge's brother; Raymond Sledge assists in his brother's care, including taking him for kidney dialysis every week.

**ANSWER:**     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36.

37.     The Sledge home is located just a few blocks from a high-crime area, and Mr. Sledge often has to travel through that part of town.  According to the City Council representative for the area, Alderman Lyle, the neighborhood has a shortage of commercial establishments, and residents complain of high crime and poor city services.  Since June 18, 2010, the following crimes have been reported within an eight-block radius of the Sledge home: battery, aggravated assault with a handgun, aggravated assault with a knife, and aggravated vehicular hijacking.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37.

38. Both Mr. Sledge's house and that of his mother have been burglarized; in each instance the burglars broke into the garage and stole property. But a garage (attached or unattached) is expressly excluded from the statutory definition of one's "home," MCC § 8-20-010, and therefore the Ordinance would criminalize Mr. Sledge's use of a firearm to defend his life, family, or property in his own garage.

**ANSWER:** The City admits that the definition of "Home" contained in section 8-20-010 of the Chicago Municipal Code excludes "any garage, including an attached garage, on the lot." The City admits that the carrying or possession of a firearm in a garage, whether attached or unattached, would be unlawful pursuant to section 8-20-020(a) of the Chicago Municipal Code. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 38.

39. Mr. Sledge grew up hunting with his father and owns two long guns that he is allowed to have within the city limits because they were grandfathered in the early 1980s when the law preceding the current Ordinance was enacted. He also owns several handguns but has been barred from keeping them in his residence by the statute that was challenged in *McDonald*.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 39.

40. Mr. Sledge would keep his handguns in his residence in Chicago if the law permitted.

**ANSWER:** The City denies that Mr. Sledge cannot possess handguns in his home provided he complies with the requirements of the City's Responsible Firearms Owners Ordinance, enacted by the Chicago City Council on July 2, 2010. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 40.

41. In order to defend himself, Mr. Sledge also wants to be able to carry his handgun outside his home, as defined in the Ordinance, but he is prevented from doing so by the Ordinance.

**ANSWER:** The City admits that section 8-20-020 of the Chicago Municipal Code

14

prohibits any person from carrying or possessing a handgun outside the person's home. The City

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations

contained in Paragraph 41.

42. Mr. Sledge believes that he and other private citizens should be trained in responsible handling of their firearms and should practice with them to maintain proficiency. But he cannot practice or train with his firearms in Chicago because the Ordinance bans firing ranges and the discharge of firearms within city limits. Nor can he purchase firearms within Chicago—again he must leave the city to do so. He currently uses the firing range at a gun shop outside Chicago city limits some twenty minutes from his residence, but would use a closer facility if it existed within the city.

**ANSWER:** The City admits that section 8-20-280 of the Chicago Municipal Code

prohibits within the City shooting galleries, firearm ranges, or any other place where firearms are

discharged. The City further admits that section 8-24-010 prohibits the firing or discharge of a

firearm within the City except in lawful self-defense or defense of another in the home and that, as

a result, Chicago citizens cannot discharge a firearm in the City for the purpose of training or

practicing. The City further admits that sections 4-144-010 and 8-20-100 of the Chicago Municipal

Code prohibit the sale or purchase of firearms within the City. The City lacks knowledge or

information sufficient to form a belief as to truth of the allegations contained in Paragraph 42.

43. Plaintiff Kenneth Pacholski is a 52 year-old, Caucasian male. Plaintiff Kathryn Tyler is a 53 year-old, Caucasian female. They are a married couple and are residents of Chicago. Mr. Pacholski is self-employed in the aircraft-restoration business. Dr. Tyler is a veterinarian and the owner of her own animal clinic.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to truth

of the allegations contained in Paragraph 43.

44. Mr. Pacholski and Dr. Tyler own firearms but, because of the prior ban, kept them outside the city limits. They desire to keep more than one operable handgun each in their home, but are precluded from doing so under the Ordinance.

**ANSWER:** The City admits that section 8-20-040 of the Chicago Municipal Code only

15

allows Plaintiffs Pacholski and Tyler to possess one assembled and operable firearm each in their home. The City lacks knowledge or information sufficient to form a belief as to truth of the remaining allegations contained in Paragraph 44.

45. Dr. Tyler, on occasion, has a desire to possess a handgun for armed self-defense at her place of business. Dr. Tyler would much prefer to use a handgun rather than a long gun for such purposes, both because a handgun is easier to use and because transporting a long gun is much less practicable. For example, in the past, the emergency alarm at her business has activated in the middle of the night and she has had to proceed alone to address the situation. She would carry a handgun for personal self-defense in such circumstances were she not precluded from doing so under the Ordinance.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to truth of the remaining allegations contained in Paragraph 45.

46. To purchase a gun under the current legal regime, or to practice with and receive training for their firearms at a range, Mr. Pacholski and Dr. Tyler must travel outside the city. They would buy firearms within the city if sales of these items were permitted by the law; they would also practice at ranges within the city if such ranges were permitted to operate under the law.

**ANSWER:** The City admits that sections 4-144-010 and 8-20-100 of the Chicago Municipal Code prohibit the sale or purchase of firearms within the City. The City further admits that section 8-20-280 of the Chicago Municipal Code prohibits within the City shooting galleries, firearm ranges, or any other place where firearms are discharged. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 46.

47. Plaintiff Michael Hall Sr. is a 52-year-old, Caucasian male, and a resident of Chicago. He is married and has five children. He is employed in the telecommunications industry.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 47.

48. Mr. Hall is an ex-Marine and during his military service he repeatedly received an "expert" rating in firearms marksmanship.

16

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 48.

49. Mr. Hall often works from his home office. He desires to keep more than one operable handgun in his home, so that he can have a ready means of self- and family-defense in both his bedroom and his home office.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49.

50. Mr. Hall desires to be able to keep and bear arms for purposes of self-defense on all parts of his property, including the curtilage of his home. For example, on two separate occasions, Mr. Hall's truck has been burglarized while parked in the driveway of his home. The Ordinance, however, prohibits Mr. Hall from bearing arms in the driveway of his home.

**ANSWER:** The City admits that the definition of "Home" contained in section 8-20-010 of the Chicago Municipal Code excludes "any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas." The City further admits that section 8-20-120 prohibits a person from carrying or possessing a handgun outside of the home and that section 8-20-030 prohibits any person from carrying or possessing a long gun except when in the person's home or fixed place of business. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 50.

51. Mr. Hall would shop for and purchase firearms and firearms accessories within the city if sales of these items were not prohibited by the Ordinance.

**ANSWER:** The City admits that sections 4-144-010 and 8-20-100 of the Chicago Municipal Code prohibit the sale or purchase of firearms within the City. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 51.

52. Mr. Hall desires to transport firearms between his home and western Illinois, Iowa, and South Dakota, where he travels for hunting and target-shooting purposes.

17

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52.

53. Plaintiff Rick Pere is a 57-year-old male, married, and a resident of Round Lake, Illinois. He is self-employed as a police-firearms and security-firearms instructor. He served as a police officer, in several jurisdictions in Illinois, for over fifteen years. Mr. Pere also served for over thirty years in the U.S. Army, the Illinois Army National Guard, and the U.S. Air Force Reserves. He has also been employed as a military contractor in Afghanistan, Iraq, and Haiti.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53.

54. For many years, Mr. Pere held the record for handgun marksmanship, obtained at the Cook County Sheriff's Police Academy in 1979.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 54.

55. Mr. Pere has a wide range of firearms and firearms-instructor certifications. For example, Mr. Pere: is certified by the United States Army Training and Doctrine Command as a military instructor; is a certified police-academy instructor; is an Illinois-certified security-firearms instructor; is certified by the Illinois Law Enforcement Training Board as a police-firearms instructor; is certified by the NRA as an instructor in pistol, rifle, shotgun, and personal-home and outside-home protection and safety.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55.

56. Mr. Pere desires to open a shooting range in Chicago, where he would conduct firearms training and sell firearms. The Ordinance prohibits him from doing so.

**ANSWER:** The City admits that section 8-20-280 of the Chicago Municipal Code prohibits within the City shooting galleries, firearm ranges, or any other place where firearms are discharged. The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56.

57. Plaintiff ILAFR has members who desire to sell firearms and to operate shooting ranges inside Chicago city limits for patronage by law-abiding residents and would do so but for the

18

Ordinance.

**ANSWER:** The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 57.

58. Under the Ordinance, Plaintiffs Sledge, Benson, Pacholski, Tyler, Hall, and Pere face arrest, prosecution, and incarceration should they possess, carry, or transfer firearms in violation of the Ordinance. Mr. Pere and the members of Plaintiff ILAFR face arrest, prosecution, and incarceration if they sell firearms or operate a shooting range in violation of the Ordinance.

**ANSWER:** The City admits that section 8-20-300(a) of the Chicago Municipal Code states that "[any person who violates section 8-20-020, 8-20-030, 8-20-035, 8-20-060, 8-20-080 or 8-20-110 shall upon conviction be fined not less than $1,000.00 nor more than $5000.00 and be incarcerated for a term not less than 20 days nor more than 90 days. Each day that such violation exists shall constitute a separate and distinct offense." The City admits that section 8-20-300(b) provides that "[u]nless another fine or penalty is specifically provided, any person who violates any provision of this chapter, or any rule or regulation promulgated hereunder, shall upon conviction or a finding of liability for the first offense, be fined not less than $1,000.00, nor more than $5,000.00, or be incarcerated for not less than 20 days no more than 90 days, or both. Any subsequent conviction for a violation of this chapter shall be punishable by a fine of not less than $5,000.00 and not more than $10,000.00, and by incarceration for a term of not less than 30 days, nor more than six months. Each day that such violation exists shall constitute a separate and distinct offense." The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 58.

## Count I
### (U.S. Const., Amends. II and XIV, 42 U.S.C. § 1983)

59. The preceding paragraphs are incorporated herein.

**ANSWER:** The City incorporates by reference its answers to Paragraphs 1-58 as if set forth fully herein.

60. The Ordinance outlaws use of firearms for self-defense within the curtilage of one's own home. *See* MCC §§ 8-20-020, -030. The statutory definition of "home" expressly excludes "(i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas." MCC § 8-20-010.

**ANSWER:** The City admits that section 8-20-020 of the Chicago Municipal Code makes it "unlawful for any person to carry or possess a handgun, except when in the person's home." The City further admits that section 8-20-030 makes it "unlawful for any person to carry or possess a long gun, except when in the person's home or fixed place of business." The City further admits that definition of "Home" contained in section 8-20-010 contains the language quoted in Paragraph 60 but denies that Paragraph 60 fully and completely cites the entirety of the definition of "Home" contained in section 8-20-010. The City denies the remaining allegations contained in Paragraph 60.

61. Thus the Ordinance outlaws the exercise of the right to bear arms in self-defense even when one is in one's own garage, on one's own back porch, or on the steps leading up to one's front door.

**ANSWER:** The City admits that section 8-20-020 of the Chicago Municipal Code makes it unlawful to carry or possess a handgun outside a person's "home," as that term is defined in section 8-20-010. The City admits that section 8-20-030 makes it unlawful to possess a long gun outside a person's home, as that term is defined in section 8-20-010, except when in the person's fixed place of business. The City denies the remaining allegations contained in Paragraph 61.

62. These provisions infringe upon, and impose an impermissible burden upon, the Plaintiffs' right to keep and bear arms under the Second and Fourteenth Amendment.

**ANSWER:** The City denies the allegations contained in Paragraph 62.

## Count II
### (U.S. Const., Amends. II and XIV, 42 U.S.C. § 1983)

63.     The previous paragraphs are incorporated herein.

**ANSWER:**     The City incorporates by reference its answers to Paragraphs 1-62 as if set

forth fully herein.

64.     Section 4-144-010 states that it shall be unlawful for any person "to engage in the
business of selling, or to sell, give away or otherwise transfer, any firearm." Section 8-20-100 states
that "no firearm may be sold, acquired or otherwise transferred within the city, except through
inheritance of a firearm."

**ANSWER:**     The City admits that section 4-144-010 contains the language quoted in

Paragraph 64 but denies that Paragraph 64 fully and completely cites the entirety of section 4-144-

010. The City admits that section 8-20-100 contains the language quoted in Paragraph 64 but denies

that Paragraph 64 fully and completely cites the entirety of section 8-20-100.

65.     These provisions thus impose a total ban on the sale or transfer of firearms within
Chicago, and thereby infringe upon, and impose an impermissible burden upon, the Plaintiffs' right
to keep and bear arms under the Second and Fourteenth Amendments.

**ANSWER:**     The City admits that pursuant to section 4-144-010 and section 8-20-100, the

City prohibits the sale, purchase and transfer of firearms in the City, except through inheritance.

The City denies the remaining allegations contained in Paragraph 65.

66.     These provisions prohibit Mr. Pere and members of ILAFR from selling firearms
within Chicago and infringe upon, and impose an impermissible burden upon, the right to keep and
bear arms of all adult law-abiding residents of Chicago.

**ANSWER:**     The City admits that pursuant to section 4-144-010 and section 8-20-100, the

City prohibits the sale, purchase and transfer of firearms in the City, except through inheritance.

The City denies the remaining allegations contained in Paragraph 66.

21

## Count III
### (U.S. Const., Amends. II and XIV, 42 U.S.C. § 1983)

67.     The previous paragraphs are incorporated herein.

**ANSWER:**     The City incorporates by reference its answers to Paragraphs 1-66 as if set forth fully herein.

68.     Section 8-20-110 prohibits possession of a firearm without a CFP, and Section 8-20-120 states that no person can obtain a CFP without "an affidavit signed by a firearm instructor certified by the State of Illinois ... attesting that the applicant has completed a firearm safety and training course, which, at a minimum, provides one hour of range training."

**ANSWER:**     The City admits that section 8-20-110 generally prohibits carrying or possessing a firearm without a CFP.  The City further admits that section 8-20-120(a)(7) contains the language quoted in Paragraph 68 but denies that Paragraph 68 fully and completely cites the entirety of section 8-20-120(a)(7).

69.     Yet Section 8-20-280 states that "[s]hooting galleries, firearm ranges, or any other place where firearms are discharged are prohibited."  The Ordinance thus dictates that there can be no place in Chicago where one can obtain the firearms training that the Ordinance itself mandates for legal possession of a firearm.

**ANSWER:**     The City admits that section 8-20-280 of the Chicago Municipal Code contains the language contained in Paragraph 69 but denies that Paragraph 69 fully and completely cited the entirety of section 8-20-280.  The City admits that it prohibits a person from obtaining in the City the required one hour of range training necessary to obtain a CFP but denies that it prohibits a person from obtaining in the City the four hours of classroom instruction or training necessary to obtain a CFP.

70.     Section 8-24-010 further provides that "[n]o person shall fire or discharge any firearm within the city, except in the lawful self-defense or defense of another" or for very limited hunting purposes.  By proscribing the discharge of a gun for training or practice purposes, the Ordinance in fact precludes citizens from engaging anywhere in Chicago in the training that the Ordinance itself mandates as a prerequisite to legal gun ownership.

22

**ANSWER:** The City admits that section 8-24-010 of the Chicago Municipal Code contains the language contained in Paragraph 70 but denies that Paragraph 70 fully and completely cited the entirety of section 8-20-280. The City further admits that the section 8-20-030(b) allows a person to carry or possess a long gun if the person is a duly licensed hunter who has a valid FOID card, a CFP and firearm registration certificate, while engaged in hunting in an area where hunting is permitted and that section 8-24-050 permits the discharge of a shot gun for hunting purposes as set forth therein. The City admits that section 8-24-010 precludes citizens from obtaining in the City the one hour of range training necessary to obtain a CFP.

71. These provisions infringe upon, and impose an impermissible burden upon, Plaintiffs' right to keep and bear arms under the Second and Fourteenth Amendments.

**ANSWER:** The City denies the allegations contained in Paragraph 71.

72. These provisions prohibit Mr. Pere and members of Plaintiff ILAFR from operating shooting ranges within Chicago and infringe upon, and impose an impermissible burden upon, the right to keep and bear arms of all adult, law-abiding residents of Chicago.

**ANSWER:** The City admits that it prohibits shooting ranges or galleries from operating within the City. The City denies the remaining allegations contained in Paragraph 72.

### Count IV
### (U.S. Const., Amends. II and XIV, 42 U.S.C. § 1983)

73. The previous paragraphs are incorporated herein.

**ANSWER:** The City incorporates by reference its answers to Paragraphs 1-72 as if set forth fully herein.

74. Section 8-20-040 prohibits the possession of more than one "assembled and operable" firearm within the home by someone who is fully licensed under the Ordinance to possess a firearm. Any other firearms owned by that person must be disassembled or otherwise rendered "inoperable." If there is more than one person in the home with a CFP and a registration certificate, each such person is allowed only one gun in an operable condition.

**ANSWER:** The City admits the allegations contained in Paragraph 74.

23

75.    These provisions infringe upon, and impose an impermissible burden upon, the Plaintiffs' right to keep and bear arms under the Second and Fourteenth Amendments.

**ANSWER:**    The City denies the allegations contained in Paragraph 75.

### Count V
### (U.S. Const., Amends. II and XIV, 42 U.S.C. § 1983)

76.    The preceding paragraphs are incorporated herein.

**ANSWER:**    The City incorporates by reference its answers to Paragraphs 1-75 as if set forth fully herein.

77.    Section 8-20-020 makes it "unlawful for any person to carry or possess a handgun, except when in the person's home." Section 8-20-030 makes it "unlawful for any person to carry or possess a long gun, except when in the person's home or fixed place of business." Section 8-20-140(a) renders it "unlawful for any person to carry or possess a firearm without a firearm registration certificate," and Section 8-20-180(c) states that "[a] registration certificate shall only be valid for the address on the registration certificate," and "[e]xcept in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate." "Lawful transportation" means transportation by a person who has a FOID card, a CFP, and a firearm registration certificate, and whose firearm is "(i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case." § 8-20-010.

**ANSWER:**    The City admits that section 8-20-020(a) makes it "unlawful for any person to carry or possess a handgun, except when in the person's home." The City admits that section 8-20-030 makes it "unlawful for any person to carry or possess a long gun, except when in the person's home or fixed place of business." The City admits that section 8-20-140(a) contains the language contained in Paragraph 77 but denies that Paragraph 77 fully and completely cited the entirety of section 8-20-140(a). The City admits that section 8-20-180(c) states: "A registration certificate shall only be valid for the address on the registration certificate. Except in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate." The City admits that "Lawful transportation" is defined in section 8-20-010 and "means the transportation of a firearm by a person; (1) in

24

compliance with section 8-20-090; or (2) who has a valid FOID card, a CFP, and firearm registration certificate, if applicable, and the firearm is "(i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case."

78.     Thus the Ordinance imposes a complete and total ban in Chicago on possessing or carrying a firearm outside one's "home" (as narrowly defined by the Ordinance) for personal protection -- except in one's fixed place of business, where long guns, but not handguns, are permitted -- and thereby infringes upon, and imposes an impermissible burden upon, the Plaintiffs' rights under the Second and Fourteenth Amendments.

**ANSWER:**     The City admits that section 8-20-020(a)  makes it "unlawful for any person to carry or possess a handgun, except when in the person's home." The City admits that section 8-20-030 makes it "unlawful for any person to carry or possess a long gun, except when in the person's home or fixed place of business." The City admits that section 8-20-010 defines "home" as "the inside of a person's dwelling unit which is traditionally used for living purposes, including the basement and attic" and "does not include:(i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas; or (iii) any dormitory, hotel, or group living, as that term is defined in section 17-17-0102-A." The City denies the remaining allegations contained in Paragraph 78.

**WHEREFORE**, the City respectfully requests that the Court enter judgment in its favor and against Plaintiffs on their First Amended Complaint for Declaratory Judgment and Injunctive Relief, and grant the City such further relief as the Court deems just and appropriate.

## DEFENSE - FAILURE TO STATE A CLAIM

The Complaint fails to state any claim upon which relief can be granted.

## DEFENSE - NO STANDING

Plaintiffs Benson, Sledge, Pacholski, Tyler, Hall, and Pere lack standing to bring their claims because they do not identify an injury in their First Amended Complaint.

25

## **DEFENSE - NO STANDING**

Plaintiff Illinois Association of Firearms Retailers does not have standing to bring a claim

under the Second Amendment because the Second Amendment only confers an individual right to

possess firearms in the home for self-defense.


Dated: October 12, 2010        Respectfully submitted,

MARA S. GEORGES,
Corporation Counsel for the City of Chicago

By:____/s/William Macy Aguiar_____
           Assistant Corporation Counsel

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert Hirsch
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-9018 / 6975 / 7129 / 4216

Attorneys for Defendants