IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRETT BENSON, KENNETH PACHOLSKI, ) <br> KATHRYN TYLER, MICHAEL HALL SR., ) <br> RICK PERE, and the ILLINOIS ASSOCATION ) <br> OF FIREARMS RETAILERS, ) <br> ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE CITY OF CHICAGO and ) <br> RICHARD M. DALEY, Mayor of the ) <br> City of Chicago, ) <br> ) <br> Defendants. ) | No. 10-CV-4184 <br> Judge Ronald A. Guzman |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO REASSIGN CASE**

Plaintiffs Brett Benson, Kenneth Pacholski, Kathryn Tyler, Michael Hall, Rick Pere, and the Illinois Association of Firearms Retailers respectfully submit this memorandum in opposition to Defendants' motion requesting reassignment of *Second Amendment Arms et al. v. City of Chicago et al.*, No. 10-cv-4257 ("*SAA*"). *See* Docs. 47, 48. Because reassignment of *SAA* would fail to advance the interests in judicial efficiency that are the hallmarks of Local Rule 40.4(b), Defendants' motion should be denied.

**BACKGROUND**

On July 6, 2010, the *Benson* Plaintiffs—several Chicago residents, an individual who desires to open a shooting range in Chicago, and the Illinois Association of Firearms Retailers— filed this suit for declaratory and injunctive relief against the City of Chicago and Mayor Daley (collectively, the "City"), challenging several specific provisions of Chicago's firearms

ordinance under the Second and Fourteenth Amendments to the United States Constitution. The *Benson* Plaintiffs filed an amended complaint on August 13, *see* Doc. No. 24, the Defendants answered on October 12, *see* Doc. No. 42, and fact discovery—which commenced September 1—is set to close on January 7, 2011, *see* Doc. No. 33.

On July 9, 2010, the *SAA* plaintiffs also filed suit in this district challenging Chicago's firearms ordinance. The scope of that suit sweeps well beyond *Benson* in almost every respect:

***Parties***. *SAA* Plaintiff Zieman seeks to represent a class of "all natural citizens and corporations and other entities" that have lived in or done business in Chicago since March 19, 1982. SAA Amended Complaint ¶¶ 38, 43-44 ("SAA Compl.," attached as Exhibit A to the City's motion to reassign).[1] And in addition to the City, *SAA* names as defendants Chicago's Superintendant of Police, City Clerk, and chief legal counsel. *Id*. ¶¶ 6-8.

***Laws Challenged***. *SAA* challenges "*all* of the provisions" of both Chicago's current firearms ordinance *and* "the Old Gun Ban Ordinance"—i.e., the ordinance in place at the time of the Supreme Court's decision in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). SAA Compl. ¶ 30.A.

***Basis of Challenge***. In addition to challenging Chicago's firearms ordinances under the Second and Fourteenth Amendments to the United States Constitution, *SAA* also challenges them under the First and Fourth Amendments, *id*. at 7, "the Illinois Constitution[,] and Illinois law," *id*. ¶ 11; *see also id*. ¶¶ 44, 46.A.

***Relief Sought***. In addition to a declaration and injunctive relief against enforcement of

---

[1] The *SAA* plaintiffs have filed three complaints—their initial complaint, an "Amended Complaint" on September 21, and a "First Amended Complaint" on October 1. Because the City has attached the Amended Complaint to its motion to reassign, and because the First Amended Complaint is not materially different from the Amended Complaint in relevant respects, we also focus our attention on the Amended Complaint. The First Amended Complaint is Doc. No. 6 in No. 10-4257.

2

Chicago's firearm ordinances (new and old) *in toto*, *SAA* seeks, *inter alia*: "loss of profits, goodwill, and other general and economic damages" for its firearms-dealer plaintiff, *id.* ¶ 30.C; a writ of mandamus directing defendants to grant that plaintiff a weapons dealer business license, *id.* ¶ 42.A; restitution on behalf of the asserted class ordering defendants to "account for, refund and pay over and back to them" all money collected in connection with enforcing the firearms ordinances, *id.* ¶ 40.B, 44.B; "general, compensatory and punitive damages" against defendants for enforcing the ordinances, *id.* ¶ 40.C, 44.C; expungement of convictions sustained against class members for violating the ordinances, *id.* ¶ 40.D, 44.D; and return of weapons and other items seized from class members pursuant to the ordinances (or a market value equivalent in cash), *id.* ¶ 40.E, 44.E.

*SAA* is calendared on the docket of Judge Dow. The defendants have yet to file an answer—indeed, they were not served with summons until October 6, *see SAA*, No. 10-4257, Doc. Nos. 13-17—and discovery deadlines have not been set.

A third case challenging part of Chicago's firearms ordinance, *Ezell v. City of Chicago*, No. 10-cv-5135, is pending before Judge Kendall of this Court. The City's motion to reassign that case has been fully briefed and argued.

## ARGUMENT

*SAA* should not be *reassigned*, regardless of whether it and *Benson* may properly be considered *related*. Local Rule 40.4(a) provides that cases may be deemed related so long as one of four conditions are met. Under Local Rule 40.4(b), however, this Court does not even have *discretion* to order *SAA* reassigned unless the City shows that *all* of the following "more stringent" criteria are met: "(1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3)

3

the earlier case has not progressed to the point where designating a later-filed case as related would be likely to substantially delay the proceedings in the earlier case; and (4) the cases are susceptible of disposition in a single proceeding." *Williams v. Walsh Constr.*, 2007 U.S. Dist. LEXIS 3970, *4-5 (N.D. Ill. Jan. 16, 2007). Because of the substantial differences between *Benson* and *SAA*, the City simply cannot make the requisite showing on requirements two and three, and its motion to reassign thus must fail.[2]

I.  **Having one judge handle both *Benson* and *SAA* is unlikely to result in substantial savings of judicial time and effort.**

When "cases will require different discovery, legal findings, defenses, or summary judgment motions it is unlikely that reassignment will result in a substantial judicial savings." *Williams*, 2007 U.S. Dist. LEXIS 3970, at *5. *Benson* and *SAA* exhibit these differences in spades. Not only does *SAA* involve different plaintiffs and unique defendants, but the nature of the sweeping and varied claims in that case—including claims for relief related to money paid, convictions suffered, and weapons confiscated under Chicago's firearms ordinances— demonstrates that discovery in the two cases is likely to diverge significantly. The judge deciding *SAA* will also be required to issue distinct legal findings on issues of federal and state law not present in *Benson* and with respect to dozens of provisions of Chicago's firearms

---

[2] Furthermore, whether or not the requirements of Rule 40.4(b)(4) (that the cases be "susceptible to disposition in a single proceeding") are met as a technical matter, as a practical matter attempting to resolve *Benson* and *SAA* in a single proceeding would be a highly inefficient use of judicial resources. *Benson* presents the question of whether certain discrete provisions of Chicago's firearms ordinance violate the Second Amendment, as incorporated against the States through the Fourteenth Amendment. *SAA*, on the other hand, presents the sweeping question of whether the entirety of Chicago's *former* and *current* firearms ordinances violate the Second Amendment, *plus* many other significant questions, including, among other issues, (1) whether the ordinances violate the First and Fourth Amendments, (2) whether the ordinances violate provisions of the Illinois Constitution, (3) whether individuals who have lost money or weapons by operation of the ordinances are entitled to recoup those losses, (4) whether individuals who have been convicted under the ordinances are entitled to have those convictions expunged, and (5) whether class certification is appropriate as to certain claims.

ordinances not challenged in *Benson*; and because *SAA* names additional defendants and seeks legal as well as equitable relief from them, the defendants in that case are also likely to raise numerous additional defenses. Furthermore, perhaps the "most obvious distinction" between the two cases are *SAA*'s class allegations, the resolution of which are likely to involve "extensive discovery and motions practice." *Id*. at *7.

The City claims that substantial judicial time savings will result from a single judge determining the legal issues common to both *Benson* and *SAA*. But in light of the manifold differences between the cases, the City has failed to demonstrate, as it must, that any potential judicial time savings would be *substantial*. *See* N.D. Ill. L.R. 40.4(b)(2); *Williams*, 2007 U.S. Dist. LEXIS 3970 at *4-5 ("the judicial savings alleged by the moving party must be substantial"); *Lawrence E. Jaffe Pension Plan v. Household Int'l*, 2003 U.S. Dist. LEXIS 7466, *6 (N.D. Ill. May 5, 2003) (rejecting reassignment when it would result in "some degree of savings of judicial time and effort," but "such savings would not be substantial").

## II. Reassigning *SAA* will likely delay progress in *Benson*.

While the complaints in *Benson* and *SAA* were filed at about the same time, the cases have been progressing at quite a different pace. *See Sunstar, Inc. v. Alberto-Culver Co.*, 2003 U.S. Dist. LEXIS 13492, *8 (N.D. Ill. July 31, 2003) (Court has denied reassignment "where cases were not proceeding at the same pace"). Indeed, discovery in *Benson* had been underway for over a month before even a summons was served on the City in *SAA*. In other words, more time elapsed between filing the complaint and service of summons in *SAA* than there is time remaining between now and the January 7, 2011 fact discovery deadline in *Benson*. Furthermore, unlike in *Benson*, neither an answer has been filed nor discovery deadlines set in *SAA*. *See Goldhamer v. Nagode*, 2007 U.S. Dist. LEXIS 93563, *8 (Dec. 20, 2007) (holding that

5

case had progressed to the point where reassignment of another case would substantially delay proceedings when defendants had answered the complaint and the court had set discovery deadlines). And the *Benson* parties are already far down the discovery road: the parties have exchanged and answered requests for production an interrogatories, have met and conferred in advance of a potential motion to compel the City, have scheduled numerous depositions for December, and have served third-party subpoenas. The potential for *SAA* to slow progress in *Benson* is thus great; and it is further exacerbated by the presence of different parties, different factual allegations, and different claims for relief in that case, as well as the class-certification proceedings that will need to take place before the issues in *SAA* are resolved.

The City argues that failing to assign *Benson*, *SAA*, and *Ezell* to a single judge could slow the cases' progress by requiring the City to litigate the issues common to each case in three separate courtrooms with three separate discovery schedules. But the City's burden is to demonstrate that *Benson* "has not progressed to the point where designating [*SAA*] as related would be likely to delay the proceedings in [*Benson*] substantially." N.D. Ill. L.R. 40.4(b)(3). As we have explained, the City cannot meet this burden given the extent to which *Benson* has progressed beyond *SAA* and given the significant legal, factual, and procedural differences between the cases.

Furthermore, the City simply assumes that discovery in *Benson* and *SAA* would proceed in lockstep if the cases were assigned to a single judge, a faulty assumption given that the City has moved for reassignment, not consolidation. *See DBD Franchising, Inc. v. DeLaurentis*, 2009 U.S. Dist. LEXIS 52890, at *19 (N.D. Ill. June 23, 2009) (explaining that "reassignment [under Rule 40.4] would not consolidate the two cases into one"). Moreover, in *SAA*, there will be need for discovery on class certification, an issue wholly irrelevant to *Benson*, but one that could

6

involve a significant amount of time. At any rate, even if the discovery schedules were coordinated, plaintiffs in both cases would still have the right to seek their own discovery, and the City would still presumably seek discovery about the individual plaintiffs in each case (just as it already has done in *Ezell* and *Benson*).

Finally, the City's argument depends on all three cases being reassigned to a single judge. But since the time that we explained why *Ezell* should not be reassigned, *see* Doc. No. 39, that case has continued down its separate track to the point that the plaintiffs have now appealed the denial of their preliminary injunction motion to the Seventh Circuit, *see Ezell*, No. 10-5135, Doc. No. 81.

## CONCLUSION

As this Court has recognized, "[t]he whole idea of [Rule 40.4(b)] is to help the courts and the litigants in a practical way. And if the cases cannot be practically handled together, there's no reason to transfer one from one judge to the other." Tr. of Hr'g of Sept. 1, 2010 at 23-24; *see also Cent. States v. Blue Sky Heavy Hauling, Inc.*, 2010 U.S. Dist. LEXIS 115934, at *7 (N.D. Ill. Oct. 28, 2010) ("The rule promotes efficient use of judicial resources by minimizing duplication of effort on cases that have a great deal in common."). In addition to demonstrating that the City fails to meet Rule 40.4(b)'s legal predicates for reassignment, the foregoing shows that, as a practical matter, assigning *SAA* and *Benson* to a single judge will not advance the cause of judicial efficiency. This Court should thus deny the City's motion to reassign *SAA*. Should the Court nonetheless reassign *SAA* to its docket, Plaintiffs respectfully submit that the two cases should not be consolidated and *Benson* should not be slowed to accommodate the lengthy discovery and unrelated motions practice that is sure to require months, if not years, to resolve in *SAA*.

| | |
|---|---|
| Dated: November 12, 2010 | Respectfully submitted, |

| | |
|---|---|
| Stephen Kolodziej<br>Atty. ID # 6216375<br>BRENNER FORD MONROE & SCOTT LTD.<br>33 N. Dearborn St., Suite 300<br>Chicago, IL 60602<br>Tel: (312) 781-1970<br>Fax: (312)781-9202<br>Email: skolodziej@brennerlawfirm.com | s/ Charles J. Cooper<br>Charles J. Cooper*<br>David H. Thompson*<br>Jesse Panuccio*<br>COOPER & KIRK, PLLC<br>1523 New Hampshire Ave., NW<br>Washington, D.C. 20036<br>Tel: (202) 220-9600<br>Fax: (202) 220-9601<br>Email: ccooper@cooperkirk.com<br><br>Brian S. Koukoutchos*<br>28 Eagle Trace<br>Mandeville, LA 70471<br>Tel: (985) 626-5052<br>bkoukoutchos@gmail.com<br><br>*Admitted *pro hac vice*.<br><br>*Counsel for Plaintiffs* |

**CERTIFICATE OF SERVICE**

    I, Charles J. Cooper, hereby certify that on this 12th day of November, 2010, I caused a copy of the foregoing to be served by electronic filing on:

 Michael A. Forti
 Andrew W. Worseck
 Rebecca Alfert Hirsch
 William Macy Aguiar
 City of Chicago, Department of Law
 Constitutional and Commercial Litigation Division
 30 N. LaSalle St., Suite 1230
 Chicago, IL 60602

and by first-class United States mail on:

 Walter Maksym
 2056 N. Lincoln Avenue
 Chicago, IL 60614

            s/ Charles J. Cooper
            Charles J. Cooper