**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**BRETT BENSON, KENNETH PACHOLSKI, KATHRYN TYLER, MICHAEL HALL, RICK PERE, and the ILLINOIS ASSOCIATION OF FIREARMS RETAILERS,**

**Plaintiffs,**

**v.**

**THE CITY OF CHICAGO and RICHARD M. DALEY, Mayor of the City of Chicago,**

**Defendants.**

**Civil Action No. 10-cv-04184**
**Judge Ronald A. Guzman**
**Magistrate Judge Geraldine Soat Brown**

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM DEFENDANTS OR, IN THE ALTERNATIVE, TO ESTABLISH A BRIEFING SCHEDULE REGARDING CONTROLLING POINTS OF LAW**

NOW COME Plaintiffs Brett Benson, Kenneth Pacholski, Kathryn Tyler, Michael Hall, Rick Pere, and the Illinois Association of Firearms Retailers, by and through their attorneys, and respectfully move the Court to compel Defendants to produce documents, answer interrogatories, and attend depositions. In support of this Motion, Plaintiffs respectfully submit an attached memorandum of points and authorities and also state as follows:

1. This case presents a constitutional challenge to several firearms bans enacted by the City of Chicago in the wake of the Supreme Court's decision in *McDonald v. Chicago*, 130 S. Ct. 3020 (2010). Plaintiffs challenge: the total ban on possession of firearms in parts of the home; the total ban on sales or transfers of firearms within the city; the total ban on training with a firearm within city limits (including a total ban on shooting galleries and firing ranges); the total ban on possession of more than one operable firearm; and the total ban on carriage of operable firearms.

2. As an introductory matter, Plaintiffs note that we stand by our position enunciated at the September 1, 2010 conference. The constitutionality of the firearms bans at issue in this lawsuit can be decided right now as a matter of law under the binding approach adopted in *District of Columbia v. Heller*, 554 U.S. 570 (2008). If we are correct, then the months of discovery that have occurred thus far—including extensive and invasive discovery into numerous irrelevant aspects of Plaintiffs' personal lives—have been unnecessary, and the additional three months of discovery to come (and expert discovery on top of that) will be equally futile. In lieu of continuing down this path, Plaintiffs respectfully propose an alternative course that might save the parties' and the Court's resources and efficiently move this important case to resolution. Plaintiffs suggest that the Court stay discovery and establish a briefing schedule to determine the analytical framework that applies in this case and whether, under that framework, Plaintiffs' claims can be resolved now as a matter of law. If Plaintiffs are right about the law and its implications for Chicago's bans, then the case will be over. And even if Plaintiffs are wrong, the Court will have established a legal framework that will govern what is relevant for any further discovery that might be necessary.

3. Should the Court choose instead to let the parties move forward with discovery, then Plaintiffs respectfully request, for the reasons that follow and those found in the accompanying memorandum, that the Court enter an order compelling Defendants to produce documents, interrogatory answers, and witnesses for deposition.

4. At the initial status conference on September 1, 2010, Plaintiffs argued that because the challenged bans were invalid as a matter of law under the approach adopted in *Heller*, only a short discovery period was warranted. The City vigorously opposed this proposal, stating that a full eight months of fact discovery, and expert discovery on top of that, were necessary to

explore "factual issues" beyond the legislative record. Hr'g of Sept. 1, 2010, Tr. at 4, 13-15, 21. The Court accepted the City's view and established a four-month fact-discovery period to conclude on January 7, 2011. The Court has since extended that deadline to March 31, 2011, with expert discovery to close on June 30, 2011. Doc. 62. [1]

5. In granting the City's request for an extended discovery period, the Court explained:

> [A]ll of the factual issues surrounding shooting galleries and practice ranges and so on, the effects they have on neighborhoods, the safety issues, … everything up to and including … traffic flow, police protection issues, all of these things, it seems … are facts that lawyers in these … constitutional cases often seem to skip right over to the detriment of the case as it gets decided on down the line.
> …
> [W]hat I don't know [is] what facts were out there, what studies have been done. All of those things are things that I have no idea about. And are not those issues that we need to nail down before we proceed to the actual adjudication?
> …
> [I]t's difficult for me … to conclude without more, without a presentation of actual facts, that any legislation the City passes is a knee-jerk reaction…. [T]he debate about whether, to what extent and in what manner guns should be controlled in the City of Chicago is long-standing and has a long history, all of which I suspect would be of some significant relevance in the issues that are going to be presented in this case.

Hr'g of Sept. 1, 2010, Tr. 13-16. The City endorsed this view completely, stating that "if the City is going to lodge a proper defense of … what we consider to be reasonable gun regulations … we think there are factual issues and [the Court has] identified some of them." *Id.* at 15.

6. In the wake of this ruling, Plaintiffs served discovery requests and deposition notices aimed at exploring issues identified by Defendants and the Court. Plaintiffs have sought discovery regarding: (i) the factual issues surrounding the bans at issue (including crime and firearm data), (ii) the history of the Ordinance and debate over Chicago firearms laws (including information relating to the legislative process surrounding the Ordinance), (ii) the governmental

[1] The parties presented a joint motion to extend discovery. Doc. 56. As will be shown below, the need for this motion arose because Defendants have objected to producing virtually any discovery.

purposes behind the Ordinance and the fit between those purposes and the provisions at issue, (iv) less restrictive alternatives to the provisions at issue.

7. On September 16, 2010, Plaintiffs served a First Set of Requests for Production ("RFPs"), and on September 21 served a First Set of Interrogatories. *See* Exs. A, B. Defendants responded, on October 21, by objecting to *all* of the RFPs and interrogatories on relevance and burden grounds. *See* Exs. A1, B1. Defendants also interposed unspecified "privilege" objections to certain requests, but did not elaborate on the basis for those claims, produce a privilege log, or state that a privilege log would be forthcoming. Aside from referring to the legislative record[2] and producing formal discovery responses and objections in *Ezell* (while withholding all other discovery in *Ezell*), Defendants produced not a single document in response to the RFPs or a single substantive response to the interrogatories, while nonetheless noting that they might "proffer other information, beyond that in the legislative record … to defend … the legality of the challenged ordinance provisions." Ex. B1 at 3.

8. The parties conducted a telephonic conference on November 2, 2010, and thereafter exchanged a series of letters and phone calls that further fleshed out the parties' positions. *See* Exs. G-J. As a result of those conferences, Defendants have, to date, only produced a single additional document—a transcript of a deposition conducted in the *Ezell* case—and have not provided any further response to the Interrogatories. On January 5, 2011, Defendants agreed to produce some statistical data called for in the RFPs. Defendants have stated, however, that they will need at least four additional weeks to serve that production.

[2] Under Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii), Defendants were required to make initial disclosures. The only material Defendants identified was "the record of proceedings held by the Chicago City Council Committee on Police and Fire … on June 18, June 29, and July 1, 2010," and "the proceedings of the Chicago City Council on July 2, 2010." Ex. D at 1.

9. On November 12, 2010, Plaintiffs served a Second Set of Requests for Production and Interrogatories. *See* Ex. C. In response, Defendants stated they would produce some documents responsive to some portions of these Requests, *see* Ex. C1 at 3-7, but as of yet no documents have been forthcoming. Defendants also refused to provide answers to the interrogatories. *Id.* at 7-9. Plaintiffs have conveyed their concerns regarding the Defendants' objections and the adequacy of their responses. *See* Ex. M. (Ltr. of Dec. 29, 2010). On January 4, 2011, the parties held a telephonic conference regarding these disputes. Defendants have agreed to reconsider their position on several requests, but a few disputes are ripe for adjudication.[3]

10. With respect to depositions, the Plaintiffs have, to date, noticed (i) a deposition of the City pursuant to Fed. R. Civ. P. 30(b)(6), and (ii) four individual depositions of City officials. *See* Exs. E, F. The individual notices were served upon: (i) Jody Weiss, Superintendent of the Chicago Police Department ("CPD"), who provided extensive testimony during the City Council's hearings on the Ordinance; (ii) CPD Sergeant Ernest Brown, who also provided testimony during the hearings; (iii) Zoning Commissioner Patricia Scudiero, whom the City called as a fact witness at the *Ezell* preliminary injunction hearing; and (iv) CPD Sergeant Dan Bartoli, whom the City also called as a fact witness in *Ezell*. The City refused to produce these witnesses, or a Rule 30(b)(6) witness, for the dates noticed.

11. The parties conducted a telephonic meet-and-confer on December 1, 2010, and exchanged letters on December 8 and 10. *See* Exs. K, L. The City has agreed to produce Sergeant Bartoli to testify as to "CPD firearms ranges and training," Ex. K at 4, and to produce a witness regarding a few of the Rule 30(b)(6) topics. But the City continues to refuse to produce

[3] Plaintiffs have asked Defendants to transmit their final position by January 12. If we have not received a sufficient response by that point, Plaintiffs may have no choice but to move to compel on some of those requests as well.

Superintendent Weis, Sergeant Brown, Commissioner Scudiero, or a witness to testify as to many of the Rule 30(b)(6) topics.

12. The City, having achieved its desired extended discovery period during which "factual issues" could be explored, has responded to Plaintiffs' discovery requests by inexplicably and drastically altering its position. For nearly four months, the City has failed to produce virtually any document beyond the legislative hearing transcripts, and has yet to produce a single witness for a deposition. Indeed, to date the City has produced *only*: (i) the record of proceedings held by the Chicago City Council Committee on Police and Fire on June 18, June 29, and July 1, 2010; (ii) a web link to the video-recording of the proceedings of the Chicago City Council held on July 2, 2010; (iii) pages from the City Council Journal of Proceedings relating to the July 2, 2010 proceedings; (iv) Chicago Police Department regulations promulgated pursuant to the Ordinance; and (v) the City's formal responses to plaintiffs' discovery requests in *Ezell v. City of Chicago*, No. 10-cv-05135 (N.D. Ill.).[4]

13. As a justification for its refusal to provide discovery, the City claims that "materials outside" the City Council hearing transcripts and exhibits "are not relevant" to this lawsuit. *See* Ex. J at 1 (Ltr. of Nov. 24, 2010). At the same time, however, the City insists that, at any time now or in the future, it has the "right[] to … proffer other information, beyond that in the legislative record, … to defend against the claims in this lawsuit and/or support the legality of the challenged ordinance provisions." Ex. B1 at 3 (Dfs' Resps. to Pls' First Set of Interrogs.). What this evidence consists of is anyone's guess: in the City's view, Plaintiffs are entitled to discover it when the City is ready for it to be discovered—perhaps at the moment of its

[4] The City has recently agreed to produce some statistical data. And, as noted, the City has agreed to produce Sergeant Bartoli and a witness for a few of the topics noticed in Plaintiffs' Rule 30(b)(6) deposition notice.

introduction in a summary judgment brief or at trial.

14. Moreover, the City has taken the position that, in addressing the merits of Plaintiffs' claims, the Court should ignore *Heller* and apply interest-balancing tests that the *Heller* Court squarely rejected. For example, in the *Ezell* case—pending in this District and presenting a constitutional challenge to the same firearms-training ban at issue here—the City has argued that provisions of the Ordinance are to be reviewed under "reasonable regulation" or "undue burden" balancing tests. *See* Defs' Mem. in Opp. to Pls' Mot. for a Prelim. Inj., Doc. 37-1 at 17, 19, *Ezell v. City of Chicago*, No. 10-05315 (N.D. Ill. 2010) (hereinafter "*Ezell* PI Opp."). The "reasonable regulation" test, the City contends, requires a court to weigh "underlying governmental objectives" against "burden[s] on the individual." *Id.* at 24. The "undue burden" test, the City contends, should be taken from *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), which held that "a provision of law is invalid, if its purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion," *id.* at 878. *See Ezell* PI Opp. at 19. Alternatively, the City contends that some form of intermediate scrutiny should apply, and that this form of scrutiny would allow the City to introduce all manner of evidence accumulated "*after* the statute was enacted." Ex. J at 2. Despite its position on the merits, the City refuses to produce discovery that would be relevant in conducting the balancing called for by these tests.

15. As noted, the parties have exchanged numerous letters and have engaged in telephonic and in-person conferences to resolve these discovery disputes. While these negotiations have led to the resolution of some issues, several disputes remain. Accordingly, Plaintiffs respectfully seek an order compelling Defendants to produce documents, interrogatory answers, and/or deposition witnesses with respect to the following six categories:

      **a. Documents and Deposition Testimony Relating to the Drafting of the Ordinance, the Legislative Process, and the Legislative Hearings.**

First, the parties dispute whether Plaintiffs may obtain discovery of a materials and deposition testimony relating to witnesses who appeared at the legislative hearings held by the City Council. Plaintiffs seek communications between City officials and the witnesses who appeared at the hearings, as well as depositions of a few City officials who testified in support of the Ordinance. *See* RFP Nos. 1, 2, and 4(i) (Ex. A at 8-9); Ex. F (Dep. Notices of Weis and Brown). Second, the parties dispute whether Plaintiffs may obtain other materials relating to the legislative process beyond the transcripts of the City Council's hearings (and exhibits introduced at those hearings). For example, Plaintiffs seek: City communications with potential witnesses at the Council hearings, City communications relating to planning for the City Council hearings, City communications about the Ordinance with the press and outside special-interest groups, communications between the Chicago Police Department and those involved in the legislative process, and communications between the Mayor's office and other City officials regarding the purpose and need for the Ordinance. *See* RFP Nos. 1, 2, and 4(i) (Ex. A at 8-9). And Plaintiffs also seek a Rule 30(b)(6) witness who will testify regarding the factual history and details of the legislative process that led to passage of the Ordinance (such as the drafting process, the selection of witnesses to appear before the Council, the involvement of outside parties in the process, and the role of the Mayor's office in the process). *See* Rule 30(b)(6) Topic Nos. 1, 2 (Ex. E at 3).

**b. Statistics and Data about Crime and Firearms.**

Plaintiffs seek data and statistics regarding crime and firearms ownership in the City of Chicago. *See* RFP Nos. 5-7, 9, 10-12, 16-23, 25 (Ex. A at 9-15); Rule 30(b)(6) Topic No. 5 (Ex. E at 4-5). Although these requests were served in mid-September, it took Defendants until

January 4, 2011 to transmit to Plaintiffs a final position on these requests. Defendants stated that much of the data was simply unavailable, either because the City did not code information in a manner that could produce responsive results, or because various computer system conversions over the years has rendered the data unreliable or not easily retrievable. For responsive data that does exist, Defendants have agreed to produce it, but they stated that they will require at least another four weeks before a production will be made. Plaintiffs respectfully request that the Court to establish a deadline of February 7, 2011, by which Defendants must produce the data that they have agreed to produce.

**c. Discovery Regarding Alleged Purposes of the Challenged Bans and the Fit between the Bans and Those Purposes.**

Plaintiffs seek documents, interrogatory answers, and testimony relating to the governmental purposes the City contends the challenged bans serve, the relationship or fit between these alleged purposes and the bans, and the alternatives considered in an effort to advance these alleged purposes. Plaintiffs also seek, to the extent such information is presently in Defendants' possession, identification of documents to be proffered by Defendants as evidence in this case and/or in defense of the challenged provisions. *See* RFPs No. 7 (documents relating to relationship between possession of more than one operable firearm and commission of crimes or incidence of accidents), Nos. 28-30 (documents relating to any compelling, substantial, or rational basis for the Ordinance), No. 31 (documents relating to how challenged bans are tailored to serve governmental interests), No. 33 (documents Defendants will use to defend challenged provisions), No. 41 (documents to be offered as evidence) (Ex. A at 10, 15-17; Ex. C at 11); Interrogs. No. 1 (seeking identification of legitimate governmental interests to which Defendants contend challenged provisions are related), No. 2 (seeking identification of all less restrictive alternatives to challenged provisions considered by the City), No. 6 (seeking

identification of reasons for any firearms training or instruction required by the City) (Ex. B at 6-7); Rule 30(b)(6) Dep. Topics No. 3 (testimony "regarding the governmental purposes served by the Ordinance"), No. 4 (testimony "regarding any less restrictive alternatives"), Nos. 8-9 (testimony "regarding the relationship between lawful possession of more than one operable handgun" and the commission of crimes or the incidence of accidental shootings), Nos. 12-14 (testimony regarding the relationship between firearms ranges and gun-related crimes, or accidental shootings, or proficient and safe handling of firearms) (Ex. E at 3-6).

**d. Discovery Regarding Firearms Training, Firearms Ranges, and Firearms Stores.**

Plaintiffs seek documents and testimony relating to facts in the City's possession about firearms training, firearms ranges, and firearms sales occurring inside the City. Thus, Plaintiffs seek documents and testimony identifying firearms retailers and firearms ranges that currently operate or have operated in the City from 1970 to present. *See* RFP No. 8 (Ex. A at 10); Rule 30(b)(6) Dep. Topic No. 10-11 (Ex. E at 6). Plaintiffs also seek documents and testimony relating to any City customs, policies, or practices concerning firearms training. *See* RFP No. 14 (Ex. A at 12); Rule 30(b)(6) Dep. Topic No. 15 (Ex. E at 6). Plaintiffs also seek documents relating to any causal connection between firearms ranges and firearms crimes, firearms accidents, and/or safe and proficient handling of firearms. *See* RFP No. 9 (Ex. A at 10-11). And Plaintiffs seek the discovery materials that have been exchanged in the *Ezell* litigation, which concerns the same range ban at issue here. *See* RFP No. 13 (Ex. A at 12).

**e. Deposition Testimony Regarding the Treatment of Firearms Ranges and Retailers under the Chicago Zoning Ordinance.**

Plaintiffs seek testimony regarding the treatment of firearms retailers and firearms ranges under the City's Zoning Ordinance. *See* Rule 30(b)(6) Dep. Topic No. 16 (Ex. E at 6); Ex. F

(Scudiero Dep. Notice). The City maintains that the Zoning Ordinance independently bars the operation of firing ranges. *See Ezell*, Hr'g of Sept. 4, 2010, Tr. at 197-209 (testimony of Zoning Commissioner Scudiero) (Ex. N) . And it maintains that retail stores raise the same concerns as ranges. *Id.* at 282. Accordingly, Plaintiffs will soon amend their Complaint to include a challenge to the Zoning Ordinance to the extent it creates an independent, flat ban on firearms stores and ranges within Chicago.

**f. <u>Deposition Testimony Regarding Practices of First-Responders.</u>**

To the extent Defendants maintain that protection of first responders is a basis for the challenged provisions of the Ordinance, Plaintiffs seek deposition testimony regarding the practices and policies of Chicago police when reporting to the scene of an emergency call. *See* Rule 30(b)(6) Dep. Topic No. 7 (Ex. E at 5).

16. This discovery is plainly relevant to the issues identified by the Defendants and the Court at the September 1, 2010 hearing. Moreover, it is plainly relevant to defenses the City proffers in support of the challenged provisions—namely, that the bans are justified by, and tailored to serve, various government interests in health, safety, and general welfare. In challenging provisions of the Ordinance, Plaintiffs are thus entitled to seek this discovery to (i) test the bases and evidence for the conclusion that the bans at issue further the public welfare and safety, (ii) determine whether any other government purposes are purportedly served by the bans, (iii) explore the degree of fit between the bans at issue and the purported purposes they serve, and (iv) determine whether the stated purposes for the bans at issue are the actual purposes or are merely pretextual.

## CONCLUSION

For the foregoing reasons, and those stated in the accompanying brief in support of this

Motion, Plaintiffs respectfully request that the Court either (i) enter an order staying discovery and establishing a briefing schedule regarding controlling legal issues, or (ii) enter an order compelling Defendants to sit for depositions and to produce documents and information responsive to Plaintiffs' discovery requests.

Dated: January 7, 2011

Respectfully submitted,

s/ Charles J. Cooper
Charles J. Cooper*
David H. Thompson*
Jesse Panuccio*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
Email: ccooper@cooperkirk.com
*Admitted *pro hac vice*.
*Counsel for Plaintiffs*

Stephen Kolodziej
Atty. ID # 6216375
BRENNER FORD MONROE & SCOTT LTD.
33 N. Dearborn St., Suite 300
Chicago, IL 60602
Tel: (312) 781-1970
Fax: (312)781-9202
Email: skolodziej@brennerlawfirm.com

**CERTIFICATE OF SERVICE**

    I, Charles J. Cooper, hereby certify that on this 7th day of January, 2011, I caused a copy of the foregoing to be served by electronic filing on:

    Michael A. Forti
    Andrew W. Worseck
    Rebecca Alfert Hirsch
    William Macy Aguiar
    City of Chicago, Department of Law
    Constitutional and Commercial Litigation Division
    30 N. LaSalle St., Suite 1230
    Chicago, IL 60602

                                        s/ Charles J. Cooper
                                        Charles J. Cooper