IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRETT BENSON, KENNETH PACHOLSKI, ) <br> KATHRYN TYLER, MICHAEL HALL, ) <br> RICK PERE, and the ILLINOIS ) <br> ASSOCIATION OF FIREARMS RETAILERS, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE CITY OF CHICAGO and ) <br> RICHARD M. DALEY, Mayor of the ) <br> City of Chicago, ) <br> ) <br> Defendants. ) | Civil Action No. 10-cv-04184 <br> Judge Ronald A. Guzman <br> Magistrate Judge Geraldine Soat Brown |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

In support of their Motion to Compel Discovery from Defendants, Plaintiffs respectfully submit the following points and authorities.

**I. BACKGROUND**

On July 6, 2010, Plaintiffs filed the instant suit challenging several of the City's firearms bans as unconstitutional infringements of the fundamental right to keep and bear arms. Plaintiffs challenge: the total ban on possession of firearms in parts of the home; the total ban on sales or transfers of firearms within the city; the total ban on training with a firearm within city limits (including a total ban on shooting galleries and firing ranges); the total ban on possession of more than one operable firearm; and the total ban on carriage of operable firearms.

Pursuant to *District of Columbia v. Heller*, 554 U.S. 570 (2008), a court reviewing a ban on the possession and use of firearms by law-abiding citizens must analyze "the meaning of the Second Amendment" as that text was originally understood. *Id.* at 576. If the ban at issue prohibits activity that was originally understood to be protected by the enumerated right, then the

1

ban must fall. *Id.* at 628-29. There is no "freestanding 'interest-balancing'" and "certain policy choices" are simply "off the table." *Id.* at 634-36. Plaintiffs can and will show that the original understanding of the Second Amendment, as well as basic principles of constitutional law, preclude the bans at issue here: these policy choices simply are "off the table" for Chicago.

Accordingly, at the Rule 26 conference on September 1, 2010, Plaintiffs proposed a short discovery period, so that this case could move to final adjudication promptly and the fundamental rights of millions of Chicago residents could be vindicated. *See* Hr'g of Sept. 1, 2010, Tr. 4, 10. Plaintiffs stand by this point and have thus proposed, as an alternative to immediate adjudication of this Motion, a stay of discovery to allow for briefing of what we consider to be dispositive issues in this case.

As explained in more detail in the Motion, the City opposed this position at the September 1 conference and the Court accepted the City's argument, establishing a four-month fact-discovery period that has since been extended to March 31, 2011. Doc. 62. Defendants and the Court identified various "factual issues" that may be relevant to the lawsuit. And Defendants have identified, in this litigation and in the *Ezell* litigation (which also challenges one of the bans at issue here), various legal frameworks that they contend apply to Plaintiffs' challenges. Despite the fact that the discovery Plaintiffs seek is relevant to the issues identified at the September 1 conference and/or Defendants' proposed legal frameworks proposed, Defendants have refused to produce most of the discovery requested by Plaintiffs.

## II. ARGUMENT

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.

2

R. Civ. P. 26(b)(1). "Relevance in the context of discovery is broadly construed. Discovery is to be considered relevant when there is any possibility that the information sought may be relevant to the subject matter of the action." *Martinez v. Village of Mt. Prospect*, No. 96-6027, 1997 U.S. Dist. LEXIS 18763, at *4 (N.D. Ill. Nov. 14, 1997) (citations omitted). "[T]he burden of proving that the sought after information is not discoverable is generally on the party resisting discovery." *Id.* at *5.

A. **The Disputed Discovery Is Relevant to the Defenses Advanced by the City.**

The discovery at issue is plainly relevant to the defenses the City proffers in support of the challenged provisions—namely, that the bans are justified by, and tailored to serve, various government interests in health, safety, and general welfare. According to the Ordinance's preamble, all of its provisions are justified by the need "to provide for the ongoing protection of the public welfare and safety." Doc 24-2 at 1. *See also* Defs' Mem. in Opp. to Pls' Mot. for a Prelim. Inj., Doc. 37-1 at 18, *Ezell v. City of Chicago*, No. 10-05315 (N.D. Ill. 2010) (hereinafter "*Ezell* PI Opp.") (asserting that "comprehensive scheme" in Ordinance is justified by interest in "public health, safety, and welfare"). In challenging provisions of the Ordinance, Plaintiffs are thus entitled to take discovery to (i) test the bases and evidence for the conclusion that the bans at issue further the public welfare and safety, (ii) determine any other government purposes purportedly served by the bans, (iii) explore the degree of fit between the bans and the purposes they purportedly serve, and (iv) determine whether the stated purposes for the bans at issue are the actual purposes or are merely pretextual.

The City's general position appears to be that *everything* Plaintiffs' seek in discovery, beyond the official legislative record, is irrelevant. *See* Exs. A1, B1 (responding to most docu-

3

ment requests and interrogatories by objecting on relevance grounds and referring Plaintiffs only to transcripts and video of City Council proceedings). This position fails for several reasons.

First, while the City is correct that, in defending the Ordinance, it is limited to the materials and purposes found in the legislative record,[1] that restriction does not mean that Plaintiffs are barred from discovering and introducing evidence to challenge those materials and purposes.[2]

Second, the City's relevance protestations are foreclosed by its own statement (in its discovery responses, no less) that it reserves the right "to proffer other information, beyond that in the legislative record … to defend against the claims in this lawsuit and/or support the legality of the challenged ordinance provisions." Ex. B1 at 3. Indeed, in the *Ezell* litigation, the City argued that "it's not necessary for the City to have those bases [for the range ban] established in the legislative record" and that the court may consider "all kinds of sources … that were not before the legislature at the time that the laws were passed." *Ezell*, Tr. of Hr'g of Oct. 4, 2010 at 325-26 (attached as Ex. N). *See also id.* at 328 (citing city official's hearing testimony about

---

[1] *See, e.g.*, *Shaw v. Hunt*, 517 U.S. 899, 908 n.4 (1996), *rev'd on other grounds Hunt v. Cromartie*, 529 U.S. 1014 (2000); *United States v. Virginia*, 518 U.S. 515, 535-36 (1996); *Edwards v. Aguillard*, 482 U.S. 578, 586-87 (1987); *Associated Gen. Contrs. of Ohio, Inc. v. Drabik,* 214 F.3d 730, 738 (6th Cir. 2000); *Rothe Dev. Corp. v. United States DOD*, 262 F.3d 1306, 1327 (Fed. Cir. 2001).

[2] *See, e.g.*, *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 666 (1994) ("[W]e have stressed in First Amendment cases that the deference afforded to legislative findings does not foreclose our independent judgment of the facts bearing on an issue of constitutional law. This obligation … is to assure that, in formulating its judgments, Congress had drawn reasonable inferences based on substantial evidence."); *Roe v. Wade*, 410 U.S. 113, 149 (1973) (discounting state's asserted interest medical safety upon review of "medical data" submitted by plaintiffs and amici challenging abortion ban); *Landmark Commc'ns, Inc. v. Virginia*, 435 U. S. 829, 843 (1978) ("Deference to a legislative finding cannot limit judicial inquiry when First Amendment rights are at stake."); *Ashcroft v. ACLU*, 542 U.S. 656, 666-68 (2004) (considering evidence introduced by plaintiffs in district court of less restrictive alternative to law challenged under First Amendment); *Gaffney v. City of Allentown*, No. 97-4455, 1998 U.S. Dist. LEXIS 242, at *24 (E.D. Pa. Jan. 7, 1998) (noting that plaintiffs in successful constitutional challenge to a curfew law submitted analysis of crime statistics to show lack of narrow tailoring, which "contributed significantly … to the rendering of a decision in Plaintiffs' favor").

concerns over firing ranges even though that testimony was not before the City Council). Thus, the City appears to be saying that consideration of information beyond that found in the legislative record is perfectly appropriate—but only when the City is ready to disclose that information and no sooner. That is not how federal litigation works. *See Pope v. Mendenhall*, No. 92-3880, 1994 U.S. App. LEXIS 3867, at *8 (7th Cir. 1994) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. By affording parties a reasonable opportunity to discover information that is relevant to their action, our rules seek to avoid surprise and the possible miscarriage of justice.") (quotation marks and citations omitted).[3]

Third, the City maintains that either a "reasonable regulation" or "undue burden" test applies to challenges to its firearms bans. *See, e.g.*, *Ezell* PI Opp. at 18-19. Much, if not all, of the discovery we have requested may lead to admissible evidence relating to one or both of these standards. *See, e.g.*, *Planned Parenthood of Se. Penn. v. Casey*, 505 U.S. 833, 888-892 (1992) (considering plaintiffs' evidence of effect of statute challenged under the Due Process Clause). All of the requested discovery is aimed at determining: the City's purpose in enacting the bans, the City's governmental interest(s) in the bans, the evidence and bases allegedly supporting the bans, the tailoring employed in the bans, and the effect of the bans on the rights of the City's residents. These are the very factors that matter under the various frameworks the City itself has proposed must govern this case.

**B.      The Court Should Compel Defendants to Produce Several Categories of Discovery.**

While the parties have been able to eliminate some disputes through negotiation, to date (four months into discovery) Defendants have still provided very little in the way of discovery

---

[3] Even though the City is flat wrong in its assertion that it may introduce evidence beyond the legislative record in support of its bans, Plaintiffs are still entitled to discovery on this front because there is no guarantee that Plaintiffs' position will prevail.

and thus there are several categories of discovery at issue.

### 1. *Documents and Deposition Testimony Relating to the Drafting of the Ordinance, the Legislative Process, and the Legislative Hearings*

This category actually consists of two distinct subcategories. First, the parties dispute whether Plaintiffs may obtain discovery of a materials and deposition testimony relating to witnesses who appeared at the legislative hearings held by the City Council. Plaintiffs seek communications between City officials and the witnesses who appeared at the hearings, as well as depositions of a few City officials who testified in support of the Ordinance. *See* RFP Nos. 1, 2, and 4(i) (Ex. A at 8-9); Ex. F (Dep. Notices of Weis and Brown). Second, the parties dispute whether Plaintiffs may obtain other materials relating to the legislative process beyond the transcripts of the City Council's hearings (and exhibits introduced at those hearings). For example, Plaintiffs seek: City communications with potential witnesses at the Council hearings, City communications relating to planning for the City Council hearings, City communications about the Ordinance with the press and outside special-interest groups, communications between the Chicago Police Department and those involved in the legislative process, and communications between the Mayor's office and other City officials regarding the purpose and need for the Ordinance. *See* RFP Nos. 1, 2, and 4(i) (Ex. A at 8-9). And Plaintiffs also seek a Rule 30(b)(6) witness who will testify regarding the factual history and details of the legislative process that led to passage of the Ordinance (such as the drafting process, the selection of witnesses to appear before the Council, the involvement of outside parties in the process, and the role of the Mayor's office in the process). *See* Rule 30(b)(6) Topic Nos. 1, 2 (Ex. E at 3).

This discovery may lead to information that undermines the testimony and evidence presented to the City Council in favor of the Ordinance. This information is also relevant (i) to whether the legislative record is reliable and objective or was manufactured to point to a certain

result, and (ii) to determining the City's purposes in passing the bans and whether the purposes enunciated in the legislative record (or in subsequent litigation) are pretextual.[4] Discovery of such materials is not uncommon in constitutional litigation.[5]

The City contends that some of these cases are distinguishable because they "address … claims that … have governmental motive or intent as a core element." Ex. J. at 2. For purposes

---

[4] For example, it is telling that the City Council did not invite a *single* witness who testified in opposition to the proposed bans or who called into question the efficacy or wisdom of *any* proposal the Council was considering. If City officials specifically instructed witnesses to refrain from any negative testimony, or specifically instructed the coordinator of the hearings to invite only witnesses who would toe a certain line, this would be highly relevant to Plaintiffs' attempt to question the sufficiency, accuracy, objectivity, and reliability of the evidence the City has marshaled in support of its bans.

[5] *See, e.g.*, *Miller v. Johnson*, 515 U.S. 900, 918 (1995) (in constitutional challenge to congressional districting laws, citing "testimony of … the operator of … Georgia's reapportionment computer"); *Johnson v. Miller*, 864 F. Supp. 1354, 1360-62 (S.D. Ga. 1994) (citing testimony and documents of attorney for outside interest group that advocated before Georgia General Assembly, and worked with state and federal officials, during legislative process that led to challenged law); *O'Neal Homes, Inc. v. City of Orange Beach*, No. 06-0881, 2008 U.S. Dist. LEXIS 39773, at *6-16 (S.D. Ala. May 19, 2008) (in constitutional challenge to municipal zoning law, considering deposition testimony of city official who testified at city council hearing held in advance of passing the law); *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 306 (3d Cir. 2007) (in constitutional challenge to ban on methadone clinic, noting depositions of City Council members in discussion of City's failure to show link between "methadone clinics and increased crime"); *Fair Hous. Advocates, Inc. v. City of Richmond Heights*, 209 F.3d 626, 630 (6th Cir. 2000) (relying on depositions of city council members regarding "discussions about the hearings the city held in relation to passing [an] ordinance" challenged in the case); *Shaw*, 517 U.S. at 906 (citing testimony of "principal draftsman" of challenged law as to "principal reason" for the legislation at issue); *Cano v. Davis*, 193 F. Supp. 2d 1177, 1179 (C.D. Cal. 2002) (in constitutional challenge to congressional districting laws, permitting "a third party non-legislator[] [to] testify[] to conversations with legislators and their staffs."); *Bagley v. Blagojevich*, 2007 U.S. Dist. LEXIS 90105, No. 05-3156 (C.D. Ill. Dec. 7, 2007) (in First Amendment challenge, permitting deposition of Governor of Illinois to probe reasons for his veto action); *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003) (granting motion to compel internal "deliberations and documents" of legislative working group); *Loesel v. City of Frankenmuth*, No. 08-11131, 2010 U.S. Dist. LEXIS 101664, at *32 (E.D. Mich. Sept. 27, 2010) (City's internal emails discoverable and probative in constitutional challenge); *Tyler v. City of S. Beloit*, 516 F.3d 659, 665-66 (7th Cir. 2008) (noting depositions of city council members in suit raising Fifth Amendment takings challenge); *Doe v. Small*, 964 F.2d 611, 614 (7th Cir. 1992) (noting deposition of city council member in First Amendment Establishment Clause challenge); *Northeast Land Dev., LLC v. City of Scranton*, No. 3:08-290, 2010 U.S. Dist. LEXIS 76076, at *29 (M.D. Pa. July 27, 2010) ("The City's position is belied by depositions of its council-members….").

7

of resisting this discovery, the City claims that only the "impact[]" of the bans is relevant. *Id.* But, as noted above and in the Motion, in defending the constitutionality of its bans, the City has argued that courts should resort to the standard set out in *Casey*, which holds that "a provision of law is invalid, if its *purpose* or effect is to place a substantial obstacle in the path of [a person seeking to exercise a constitutional right]." 505 U.S. at 878.[6] In other words, the City's embrace of an effects-only test has been fabricated to evade discovery; the very cases cited by the City render governmental purpose a critical question.[7]

The City cannot have it both ways. If it plans to defend its bans on the basis of the *Casey* standard, Plaintiffs are entitled to discovery relevant to that standard. Indeed, in cases governed by the *Casey* standard, courts have specifically considered the trial testimony of witnesses who testified before the legislature in support of the challenged law. *See Planned Parenthood Fed'n of Am. v. Ashcroft*, 320 F. Supp. 2d 957, 981 (N.D. Cal. 2004), *rev'd on other grounds sub nom. Gonzales v. Carhart*, 550 U.S. 124 (2007) (noting trial testimony of "four witnesses [who] had offered testimony before Congress in support" of the abortion law at issue in the case).

Citing *Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997), the City argues that Superintendent Weis, Sergeant Brown, and Commissioner Scudiero, "are high-ranking and very busy

---

[6] The City has also contended that the Court should employ a "reasonable regulation" test that "identi[fies] the *underlying governmental objectives* and weig[hs] those goals against the burden on the individual." *Ezell* PI Opp. at 18 (emphasis added).

[7] The City has also argued that *Heller* does not establish the framework that should apply to the bans at issue, but rather that this is a question of "first impression." *Ezell* PI Opp. at 16-17. If that is true, then it is possible that this Court, or a higher court, may look to a variety of tests that have been employed in other constitutional contexts. And in numerous constitutional contexts, motive or purpose is a key element of the inquiry. *See, e.g., Cornelius v. NAACP Legal Def. and Edu. Fund, Inc.*, 473 U.S. 788, 813 (1985) (motive may be relevant to challenges to speech restrictions under the First Amendment); *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977) (intent or motive is element of race discrimination claim under Equal Protection Clause); *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971) (purpose of law is part of test for challenges under the First Amendment's Establishment Clause). Plaintiffs are entitled to seek discovery sufficient to litigate under these frameworks.

senior City officials" who are "not subject to deposition unless a plaintiff demonstrates a need for the information sought through testimony, and that the information cannot be obtained through alternative forms of discovery." Ex. K at 4. But the actual standard enunciated in *Olivieri* was that high-level city officials "should not have to spend their time giving depositions … unless there is some reason to believe that the deposition will produce or lead to admissible evidence." 122 F.3d at 409-10. The depositions at issue here easily meet this standard. Plaintiffs have not randomly selected City officials for deposition: each has been chosen because he or she has actual first-hand knowledge of facts that may be critical in this lawsuit. Superintendent Weis and Sergeant Brown each testified at the hearings held by the City Council Committee on Police and Fire; they offered numerous facts as well as positions on the meaning of those facts. The City Council has pointed to this testimony as the basis for the Ordinance.[8] As for Commissioner Scudiero, the relevancy of, and need for, her testimony should be readily apparent to Defendants, as the City has already called her as a key fact witness in the *Ezell* case. Commissioner Scudiero testified about the Zoning Ordinance and its relationship to "gun ranges" generally (and not specifically about the mobile ranges at issue in that case).[9]

---

[8] *See* Stmt. of City Council Comm. at 1-2 (citing testimony of "Superintendent of the [CPD] and other CPD officers" as the basis for the Committee's findings) (attached as Ex. O.)

[9] The City has also vaguely argued that "most, if not all, of the material … outside the legislative record is protected from disclosure by the attorney-client, legislative, executive, or deliberative process privileges, and/or by the attorney work-product doctrine." Ex. J at 3. But this sweeping invocation of numerous privileges, without more, is grossly insufficient. *See* Fed. R. Civ. P. 26(b)(5) ("When a party withholds information otherwise discoverable by claiming that the information is privileged … the party must: (i) expressly make the claim; and (ii) describe the nature of the documents … not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."); *Babych v. Psychiatric Solutions, Inc.*, No. 09-8000, 2010 U.S. Dist. LEXIS 132577, at *9 (N.D. Ill. Dec. 15, 2010) ("parties and their counsel are cautioned that a timely and adequate privilege log is required by the federal rules, and that failure to serve an adequate privilege log may result in a waiver of any protection from discovery"). Had Defendants provided such information, Plaintiffs could have, and may well have, challenged specific claims of privilege. For

2.     *Statistics and Data about Crime and Firearms*

Plaintiffs seek data and statistics regarding crime and firearms ownership in the City of Chicago. *See* RFP Nos. 5-7, 9, 10-12, 16-23, 25 (Ex. A at 9-15); Rule 30(b)(6) Topic No. 5 (Ex. E at 4-5). After taking the full thirty days to respond to these RFPs, Defendants objected to producing anything other than a link to a website that contains various general Chicago crime statistics. *See* Ex. A1 at 4-7, 9-12.[10] At the parties' meet-and-confer on November 2, Defendants for the first time indicated that determining whether responsive data even existed—and if so, whether it existed in a sufficiently usable or retrievable format—would require inquiries that Defendants had not made prior to responding to Plaintiffs' requests. In an effort to resolve these issues without the need for this Court's intervention, Plaintiffs afforded Defendants several months to engage in these inquiries, and on January 4, 2011 Defendants reported their findings. Defendants stated that much of the data was simply unavailable, either because the City did not code information in a manner that could produce responsive results, or because various computer system conversions over the years has rendered the data unreliable or not easily retrievable. For responsive data that does exist, Defendants have agreed to produce it, but have stated that they will require at least another four weeks before a production will be made.

On this front, Plaintiffs respectfully request that the Court to establish a deadline of February 7, 2011, by which Defendants must produce the data that they have agreed to produce.

---

example, there is simply no merit to the notion that communications between City officials and outside parties (such as media or witnesses appearing at the hearings) are protected by privilege. *See, e.g.*, *Cano v. Davis*, 193 F. Supp. 2d 1177, 1179 (C.D. Cal. 2002) (permitting testimony of a "third party non-legislator[] … [about] conversations with legislators and their staffs"); *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003) (granting motion to compel internal "deliberations and documents" of legislative working group that included non-governmental parties).

[10] Plaintiffs have reviewed this website and it simply does not contain particularized data that is responsive to most of Plaintiffs' requests.

Production on or before this date will ensure that Plaintiffs have enough time to make use of these materials in depositions and to seek potentially necessary follow-up discovery in advance of the March 31 fact discovery cutoff.

      **3.** ***Discovery Regarding Alleged Purposes of the Challenged Bans and the Fit between the Bans and Those Purposes***

Plaintiffs seek documents, interrogatory answers, and testimony relating to the governmental purposes the City contends the challenged bans serve, the relationship or fit between these alleged purposes and the bans, and the alternatives considered in an effort to advance these alleged purposes. Similarly, to the extent such information is presently in Defendants' possession, Plaintiffs seek identification of documents to be proffered by Defendants as evidence in this case and/or in defense of the challenged provisions.[11] *See* RFPs No. 7 (documents relating to relationship between possession of more than one operable firearm and commission of crimes or incidence of accidents), Nos. 28-30 (documents relating to any compelling, substantial, or rational basis for the Ordinance), No. 31 (documents relating to how challenged bans are tailored to serve governmental interests), No. 33 (documents Defendants will use to defend challenged provisions), No. 41 (documents to be offered as evidence) (Ex. A at 10, 15-17; Ex. C at 11); Interrogs. No. 1 (seeking identification of legitimate governmental interests to which Defendants contend challenged provisions are related), No. 2 (seeking identification of all less restrictive alter-

---

[11] Defendants also seek identification of potential witnesses the City may call in this matter, and identification of all persons in possession of information regarding the governmental purposes of the challenged bans. *See* Interrog. Nos. 7-8 (Ex. C at 11-12). Of course, this information is also required as part of Defendants' initial disclosures, and must be updated or amended as Defendants become aware of new information. *See* Fed. R. Civ. P. 26(a)(1)(A)(i); Fed. R. Civ. P. 26(e)(1)(A). As noted above, aside from references to the legislative hearing transcripts, Defendants have not provided any further disclosures on this front. As of the January 4 meet-and-confer, however, Defendants agreed to reconsider their position on these discovery obligations. For the time being, then, Plaintiffs are refraining from seeking an order compelling a response, but such a motion may become necessary in the near future if Defendants do respond in a sufficient manner.

natives to challenged provisions considered by the City), No. 6 (seeking identification of reasons for any firearms training or instruction required by the City) (Ex. B at 6-7); Rule 30(b)(6) Dep. Topics No. 3 (testimony "regarding the governmental purposes served by the Ordinance"), No. 4 (testimony "regarding any less restrictive alternatives"), Nos. 8-9 (testimony "regarding the relationship between lawful possession of more than one operable handgun" and the commission of crimes or the incidence of accidental shootings), Nos. 12-14 (testimony regarding the relationship between firearms ranges and gun-related crimes, or accidental shootings, or proficient and safe handling of firearms) (Ex. E at 3-6).

  As noted above, the City contends that it is not restricted to the legislative purposes and evidence found in the legislative record. At the same time, however, the City contends that it need not identify any additional legislative purposes or evidence in support of those purposes. Instead, the City contends that such requests are "contentious" (in the legal sense) and need be answered, if at all, only at the close of discovery. *See* Ex. J at 4-5. But if Plaintiffs only find out about the City's heretofore secret motives and evidentiary support for the bans at the close of discovery, how are Plaintiffs to investigate these asserted motives and take the additional discovery they might necessitate? Contrary to the City's position, "contentious" discovery is entirely proper. *See* Fed. R. Civ. P. 33(a)(2) ("[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact"); *Pratt v. Tarr*, 464 F.3d 730, 733 (7th Cir. 2006) (noting that contention interrogatories are proper); *Thomson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004) (same). If the City can only offer partial responses at this time, and must later supplement its answers, that procedure is acceptable and required under the Federal Rules. *See* Fed. R. Civ. P. 26(e). But a blanket refusal to answer is not acceptable. Nor is it sufficient for a defendant to "merely refer[]" a plaintiff to "unspeci-

12

fied pleadings and other documents in the action." *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, No. 2:07-CV-1285, 2010 U.S. Dist. LEXIS 39619, at *5-6 (S.D. Ohio Mar. 25, 2010). Instead, the City 'must answer plaintiff[s'] contention interrogatories in the proper fashion." *Id.*[12]

Moreover, Defendants have an initial and continuing obligation to disclose such material regardless of whether Plaintiffs propound a document request. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii) ("a party must, without awaiting a discovery request, provide to the other parties … a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses").

### 4. *Discovery Regarding Firearms Training, Firearms Ranges, and Firearms Stores*.

Plaintiffs seek documents and testimony relating to facts in the City's possession about firearms training, firearms ranges, and firearms sales occurring inside the City. Thus, Plaintiffs seek documents and testimony identifying firearms retailers and firearms ranges that currently operate or have operated in the City from 1970 to present. *See* RFP No. 8 (Ex. A at 10); Rule 30(b)(6) Dep. Topic No. 10-11 (Ex. E at 6). Plaintiffs also seek documents and testimony relating to any City customs, policies, or practices concerning firearms training. *See* RFP No. 14 (Ex. A at 12); Rule 30(b)(6) Dep. Topic No. 15 (Ex. E at 6). Plaintiffs also seek documents relating

---

[12] Defendants cite this Court's decision in *Logan v. Burge*, No. 09-5471, 2010 WL 4074150, at *4 (N.D. Ill. Oct. 12, 2010), for the proposition that "[c]ourts routinely delay compelling responses to contention interrogatories … until after 'considerable discovery.'" But Defendants ignore the fact that in *Logan*, the plaintiff (whom, ironically, the City of Chicago sought to compel further response from) "ha[d] identified all documents and witnesses that he can at this time" and that more than six months of discovery remained. *Id.* In contrast, even though the City insists that it can and will introduce materials outside the legislative record in defense of its bans, it has produced not a single additional document, has provided not a single substantive interrogatory response, and has not identified (or provided for deposition) a single witness. And here, Defendants already ran out the clock on the initial discovery period, and only three months remain in the extended period, for which the Court has said there will be no extensions.

13

to any causal connection between firearms ranges and firearms crimes, firearms accidents, and/or safe and proficient handling of firearms. *See* RFP No. 9 (Ex. A at 10-11). And Plaintiffs seek the discovery materials that have been exchanged in the *Ezell* litigation, which concerns the same range ban at issue here. *See* RFP No. 13 (Ex. A at 12). These requests plainly seek information relevant to the City's claim that a total ban on firearms sales and ranges is necessary to protect the public health, safety, and welfare.[13]

### 5. *Deposition Testimony Regarding the Treatment of Firearms Ranges and Retailers under the Chicago Zoning Ordinance*.

Plaintiffs seek testimony regarding the treatment of firearms retailers and firearms ranges under the City's Zoning Ordinance. *See* Rule 30(b)(6) Dep. Topic No. 16 (Ex. E at 6); Ex. F (Scudiero Dep. Notice). The City maintains that the Zoning Ordinance independently bars the operation of firing ranges. *See Ezell*, Hr'g of Oct. 4, 2010, Tr. at 197-209 (testimony of Commissioner Scudiero) (Ex. N). And it maintains that retail stores raise the same concerns as ranges. *Id.* at 282. Accordingly, Plaintiffs will soon amend their Complaint to include a challenge to the Zoning Ordinance to the extent it creates an independent, flat ban on firearms stores and ranges within Chicago. The proposed depositions are thus plainly relevant. Indeed, *the City itself* called Commissioner Scudiero as a star witness in *Ezell*.

### 6. *Deposition Testimony Regarding Practices of First-Responders*.

To the extent Defendants maintain that protection of first responders is a basis for the challenged provisions of the Ordinance (and there are such indications in the legislative history),

---

[13] *See, e.g.*, *Ezell*, Hr'g of Oct. 1, 2010, Tr. at 153-54 (counsel for City arguing that "the crime rate in which a shooting range is located would be a safety concern" and that "[f]iring ranges are places where you have lots of guns, and criminals like to steal guns"); *id.* at 237-48 (Sergeant Bartoli testifying as City witness that crime and accidents are linked to firing ranges); *id.* at 342 (counsel for City arguing that firearms ranges cannot be safely placed in high-crime neighborhoods). Plaintiffs thus respectfully request an order compelling production in response to RFP No. 9.

Plaintiffs seek deposition testimony regarding the practices and policies of Chicago police when reporting to the scene of an emergency call. *See* Rule 30(b)(6) Dep. Topic No. 7 (Ex. E at 5). It almost goes without saying that such facts are relevant to assessing the effectiveness of the bans in achieving this alleged purpose.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order compelling Defendants to sit for depositions and to produce documents and information responsive to Plaintiffs' discovery requests.

Dated: January 7, 2011                                          Respectfully submitted,

Stephen Kolodziej                                              s/ Charles J. Cooper
Atty. ID # 6216375                                             Charles J. Cooper*
BRENNER FORD MONROE & SCOTT LTD.                               David H. Thompson*
33 N. Dearborn St., Suite 300                                  Jesse Panuccio*
Chicago, IL 60602                                              COOPER & KIRK, PLLC
Tel: (312) 781-1970                                            1523 New Hampshire Ave., NW
Fax: (312)781-9202                                             Washington, D.C. 20036
Email: skolodziej@brennerlawfirm.com                           Tel: (202) 220-9600
                                                               Fax: (202) 220-9601
                                                               Email: ccooper@cooperkirk.com
                                                               *Admitted *pro hac vice*.
                                                               *Counsel for Plaintiffs*

15

## **CERTIFICATE OF SERVICE**

I, Charles J. Cooper, hereby certify that on this 7th day of January, 2011, I caused a copy of the foregoing to be served by electronic filing on:

Michael A. Forti
Andrew W. Worseck
Rebecca Alfert Hirsch
William Macy Aguiar
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle St., Suite 1230
Chicago, IL  60602

                                                s/ Charles J. Cooper
                                                Charles J. Cooper