# EXHIBIT G



**City of Chicago**
**Richard M. Daley, Mayor**

Department of Law

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

## VIA FACSIMILE AND U.S. MAIL

November 4, 2010

Jesse Panuccio
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036

### Re: Benson v. City of Chicago, 10 C 4184

Dear Jesse:

This letter summarizes our initial conversation on November 2 regarding Defendants' responses to Plaintiffs' discovery requests. Plaintiffs indicated that they wished to discuss Defendants' responses to requests 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 25, 29, 30, 31 & 33 of Plaintiffs' First Set of Requests for Production, and Defendants' responses to Plaintiffs' First Set of Interrogatories.

The parties discussed their respective views on the relevance of the particular discovery requests at issue, as well as some of Defendants' other objections, such as vagueness and overbreadth. The parties did not reach agreement, but indicated they would take the matters under advisement and reconvene to discuss.

In addition to our views on particular requests, Defendants expressed three global concerns. *First*, we indicated that many of Plaintiffs' requests are extremely broad and seek information relating to provisions of the Ordinance that are not being challenged in the lawsuit. We asked whether Plaintiffs are willing to limit the scope of the requests to the small handful of provisions actually at issue. *Second*, we expressed our view that pre-Ordinance materials outside of the legislative record, such documents relating to internal deliberations between City personnel, or the particular views of a City employee, are not discoverable. This lawsuit merely raises challenges to a duly-enacted statute. It is the determination of the legislature embodied within the four corners of that statute, and not the views of any particular City employee or legislator, that will be subjected to constitutional scrutiny. We invited you to provide us with any contrary caselaw that you believe indicates your entitlement to this discovery. *Third*, we indicated that the CPD crime and firearms possession data requests — which seek data covering a 40-year period — pose significant logistical issues, such as how easily the data can be accessed, whether queries need to be written to retrieve the data, and whether meaningful data even exists.







**City of Chicago**
**Richard M. Daley, Mayor**

Department of Law

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

Notwithstanding these objections, we indicated that we are happy to work with Plaintiffs to try to see whether accommodation can be reached on at least some of the contested discovery requests. Among other things, we indicated that we are continuing to work with CPD's technical staff to further survey the data that is available and to review the logistical issues attendant to its production. We agreed to give you an update on this next week. You agreed that this was a sensible first step, and that when both parties have a better sense of the data particulars, the parties will reconvene to further discuss potential resolution of the discovery issues, including relevance and burden issues. Both parties agreed that these discussions do not in any way waive or prejudice their respective rights or positions, including Plaintiffs' entitlement to seek, and Defendants' right to object to, the discovery requests at issue.

Finally, we indicated that due to the resources expended in responding to Plaintiffs' discovery to date, the fact that many scope and relevance positions remain unresolved, and the logistical issues attendant to identifying and producing a responsive witness(es), the City would not be in a position to tender a Rule 30(b)(6) witness on November 12. We agreed to propose an alternative date(s) to you as soon as we are able. But, in light of unresolved scope issues and logistics, we may not be able to provide a new date by November 12.

Sincerely,

Andrew Worseck

Andrew Worseck
312-744-7129



2



# EXHIBIT H

# Cooper & Kirk

Lawyers

A Professional Limited Liability Company

1523 New Hampshire Avenue, N.W.

Washington, D.C. 20036

Jesse Panuccio
jpanuccio@cooperkirk.com

(202) 220-9600
Fax (202) 220-9601

November 5, 2010

<u>By First Class Mail and Email</u>

Andrew Worseck
City of Chicago, Department of Law
30 North LaSalle Street
Suite 900
Chicago, IL 60602
Email: andrew.worseck@cityofchicago.org

Re: *Benson v. City of Chicago*, No. 10-4184 (N.D. Ill.)

Dear Drew:

I write to follow up on our meet-and-confer of November 2, 2010, and in response to your letter of November 4 regarding that conference. At the outset, let me thank you for making the time for the somewhat lengthy call and for the cordial and forthright nature of our conversation.

I had requested the conference, pursuant to Local Rule 37.2, to discuss Defendants' objections to Plaintiffs' First Set of Requests for Production and Interrogatories. To date, Defendants have objected, on various grounds, to producing the majority of documents requested, but have produced: (i) the record of proceedings held by the Chicago City Council Committee on Police and Fire on June 18, June 29, and July 1, 2010; (ii) a web link to the video-recording of the proceedings of the Chicago City Council held on July 2, 2010; (iii) pages from the City Council Journal of Proceedings relating to the July 2, 2010 proceedings; (iv) Chicago Police Department regulations promulgated pursuant to the Responsible Firearms Owners Ordinance enacted by the Chicago City Council on July 2, 2010 (hereinafter, "the Ordinance"); and (v) the City's formal responses to plaintiffs' discovery requests in *Ezell v. City of Chicago*, No. 10-cv-5135 (N.D. Ill.). During our call, we had a helpful conversation in which you explained the City's objections more fully and we explained our basis for seeking the information requested. Both parties agreed to take the other's positions under advisement, you agreed to consult with your clients regarding some factual and logistical issues, and we agreed to reconvene early next week.

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
November 5, 2010
Page 2 of 6

In general, the City continued to question the relevance of the materials requested. Throughout our conversation, I articulated some of the bases we have for seeking these materials, which include:

- According to the Ordinance's preamble, all of its provisions are justified by the need "to provide for the ongoing protection of the public welfare and safety." Doc 24-2 at 2. *See also* Doc 37-1 at 18, *Ezell v. City of Chicago*, No. 10-cv-05135 (N.D. Ill. Sept. 20, 2010) (asserting that "comprehensive scheme" in Ordinance is justified by interest in "public health, safety, and welfare"). In challenging provisions of the Ordinance, Plaintiffs are entitled to take discovery to (i) explore whether this is the actual purpose of the Ordinance or merely a pretext, (ii) test the bases and evidence for the conclusion that firearms possessed by law-abiding citizens are detrimental to this interest, (iii) explore the degree of fit between the provisions at issue and this asserted purpose. While it is our position that the City—in defending the Ordinance—is limited to the materials and purposes found in the legislative record, *Shaw v. Hunt*, 517 U.S. 899, 908 n.4 (1996), *rev'd on other grounds Hunt v. Cromartie*, 529 U.S. 1014 (2000), that restriction does not mean that Plaintiffs are barred from discovering and introducing evidence to challenge those materials and purposes, *see, e.g.*, *Roe v. Wade*, 410 U.S. 113, 149 (1973) (discounting state's asserted interest medical safety upon review of "medical data" submitted by plaintiffs and amici challenging abortion ban); *Landmark Communications, Inc. v. Virginia*, 435 U. S. 829, 843 (1978) ("Deference to a legislative finding cannot limit judicial inquiry when First Amendment rights are at stake."); *Ashcroft v. ACLU*, 542 U.S. 656, 666-68 (2004) (considering evidence introduced by plaintiffs in district court of less restrictive alternative to law challenged under First Amendment); *Gaffney v. City of Allentown*, No. 97-4455, 1998 U.S. Dist. LEXIS 242, at *24 (E.D. Pa. Jan. 7, 1998) (noting that plaintiffs in successful constitutional challenge to a curfew law submitted analysis of crime statistics to show lack of narrow tailoring, which "contributed significantly … to the rendering of a decision in Plaintiffs' favor").

- While it is our position that *Heller* and *McDonald* mandate that nothing less than strict scrutiny can apply to Second Amendment challenges, we recognize that lower courts have applied a variety of tests and standards of review in post-*Heller* challenges. We are thus entitled to gather discovery materials that may be relevant to the variety of tests that have been employed or suggested. Moreover, the City itself maintains that either a "reasonable regulation" or "undue burden" test applies to challenges to the Ordinance. *See, e.g.*, Doc. 37-1, *Ezell*, No. 10-cv-05135, at 18-19. Much, if not all, of the discovery we have requested may lead to admissible evidence relating to one or both of these standards. *See, e.g.*, *Planned Parenthood of Se. Penn. v. Casey*, 505 U.S. 833, 888-892 (1992) (considering plaintiffs' evidence of effect of statute challenged under the Due Process Clause). We, of course, do not agree that *Heller* and *McDonald* can credibly be read to allow for such tests in Second

Cooper & Kirk
Lawyers

Andrew Worseck, Esq.
November 5, 2010
Page 3 of 6

      Amendment cases, and if the City is willing to stipulate that such tests are inapplicable, we may be able to withdraw some of our discovery requests. But short of such a stipulation, we are entitled to take discovery to meet the very defenses the City claims it will put forward in defense of its bans.

      Moving to particulars, we discussed Requests for Production Nos. 1, 2, 5-14, 16-23, 25, 28-31, and 33, and the contention interrogatories generally.[1] Requests Nos. 1 and 2, generally speaking, seek documents relating to the legislative process and discussions surrounding passage of the Ordinance. These Requests include the internal communications of City officials as well as communications to outside parties (such as the witnesses who testified before the Committee on Police and Fire). In your letter of November 4, you argue that "pre-Ordinance materials outside of the legislative record are not discoverable…. It is the determination of the legislature embodied within the four corners of the statute, and not the views of any particular City employee or legislator, that will be subjected to constitutional scrutiny." Again, we agree that in defending the Ordinance, Defendants are restricted to the four corners of the law and its legislatie history. But the materials at issue may speak to, e.g., whether the purposes enunciated in the legislative record are pretextual and whether the legislative record is reliable and objective or was manufactured to point to a certain result. Discovery of such materials is not uncommon in constitutional litigation. *See, e.g., Miller v. Johnson*, 515 U.S. 900 (1995) (in constitutional challenge to congressional districting laws, citing "testimony of … the operator of … Georgia's reapportionment computer"); *Johnson v. Miller*, 864 F. Supp. 1354, 1360-62 (S.D. Ga. 1994) (citing testimony and documents of attorney for outside interest group that advocated before Georgia General Assembly, and worked with state and federal officials, during legislative process that led to challenged law).[2]

---

[1] With respect to Request for Production No. 3, I explained that we are satisfied with the City's response and no further action is necessary. With respect to the Requests for Production that we did not discuss (Nos. 4, 15, 24, 26, 27, and 32), I indicated that these Requests were not our main focus at this point. Instead, if we are able to come to agreement on the Requests we discussed, Plaintiffs may be agreeable to pursuing Requests Nos. 4, 15, 24, 26, 27, and 32 no further. If, however, a motion to compel becomes necessary, we reserve our right to include those Requests in such a motion.

[2] *See also Shaw v. Hunt*, 517 U.S. 899 (citing testimony of "principal draftsman" of challenged law as to "principal reason" for the legislation at issue); *Cano v. Davis*, 193 F. Supp. 2d 1177 (C.D. Cal. 2002) (in constitutional challenge to congressional districting laws, "[t]he legislative privilege does not bar … a third party non-legislator[] from testifying to conversations with legislators and their staffs."); *Bagley v. Blagojevich*, 2007 U.S. Dist. LEXIS 90105, No. 05-3156 (C.D. Ill. Dec. 7, 2007) (in First Amendment challenge, permitting deposition of Governor of Illinois to probe reasons for his veto action); *Rodriguez v. Pataki*, 280 F. Supp. 2d 89 (S.D.N.Y. 2003) (granting motion to compel internal "deliberations and documents" of legislative working group); *Loesel v. City of Frankenmuth*, No. 08-11131, 2010 U.S. Dist. LEXIS 101664, at *32 (E.D. Mich. Sept. 27, 2010) (City's internal emails discoverable and probative in constitutional challenge).

Cooper & Kirk
 Lawyers

Andrew Worseck, Esq.
November 5, 2010
Page 4 of 6

Requests Nos. 1 and 2 also seek any studies or reports that were put before the City Council during its hearings. During our call, I asked whether the studies, reports, etc. that the City has thus far produced constitute all of the materials that were actually before the Committee. You confirmed that it was your understanding that any study that was brought to the Committee by a witness was produced and that if studies were referenced but not produced, those studies were not available to the legislators and were not part of their deliberations. You stated that you would confirm this point and get back to us. We look forward to receiving that confirmation.

In your letter of November 4, you also ask "whether Plaintiffs are willing to limit the scope of the requests to the small handful of provisions actually at issue." I take this question to relate mainly to Requests Nos. 1 and 2, as I am not sure such a limitation would make sense in the context of most of the other Requests (e.g., the requests for statistics). With respect to Requests Nos. 1 and 2, I an otherwise responsive document *solely* discusses or relates *only* to a provision that is not being challenged, we can agree that it need not be produced. Thus, for example, if a communication relates solely to the drafting of the ban on laser sights, it need not be produced. But if a document, or part of a document, relates or refers (i) to the Ordinance as a general matter (i.e., is not solely and exclusively limited to a provision not at issue in *Benson*), (ii) to the Ordinance's purpose, (iii) to the findings of the City Council, (iv) to the hearings of the Council about the Ordinance, or (v) to the witnesses who appeared or were invited to appear before the City Council, it is within the contemplation of Request Nos. 1 and 2. We stress, then, that any carve-out on this front must be very limited to ensure that all documents that are relevant, or that may lead to discovery of admissible evidence, are included in the production. *See* Fed. R. Civ. P. 26(b)(1).

During our call, we also discussed the Requests that can generally be described as seeking data and statistics—namely Requests Nos. 5-7, 9, 11, 12, 16-23, and 25. As you note in your letter, we had a helpful dialogue about the type of data and statistics that are available and the logistical hurdles that might present themselves in trying to access that information. We agreed that our conversation on this front will continue after you consult further with your clients about these issues. Based on your follow-up report, we may be able to come to an agreement regarding production in response to these Requests, including whether it is appropriate to narrow the timeframe of the Requests.

We also discussed Request No. 8 (dealing with information about firing ranges and firearms dealers) and Request No. 10 (dealing with 911 response time). For reasons explained during the call and above, we believe both Requests seek relevant information. As I understand where we left things, the City has agreed to consider these Requests further.

We also discussed Request No. 13, which seeks the discovery that is/was produced or received by the City in the *Ezell* case. Given that *Ezell* deals solely with one of the provisions at issue in *Benson*, we think most of the materials produced in that case are, by definition,

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
November 5, 2010
Page 5 of 6

discoverable here.[3]  We discussed whether the City would produce copies of the transcripts of the depositions taken in that case, and you suggested that such materials may be protected by the attorney work-product privilege.  To be clear, we are only asking for the actual transcripts, not any notes counsel for the City may have made on or about those transcripts.  Given that the transcripts are available to the opposing party in *Ezell*, and parts of them have been attached to pleadings in *Ezell*, we do not think any claim of work-product privilege is seriously advanced.  *See, e.g.*, *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 479 (N.D. Ill. 2002) ("The voluntary disclosure of attorney work product to an adversary waives work product protection.").  We hope you will reconsider your objections to this Request and produce this easily identifiable category of documents in the next few days.

We also discussed Requests Nos. 28-31 and 33, as well as our Interrogatories.  You stated that these are "contentious" (in the legal sense) and that the City is not yet required to answer them.  First, we are aware of no case or provision of the Federal Rules that permits Defendants to simply refuse to produce relevant, responsive information to properly issued requests for production and interrogatories on the grounds that they are "contentious."  Indeed, Rule 33 states that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact…."  *See also Pratt v. Tarr*, 464 F.3d 730, 733 (7th Cir. 2006) (noting that contention interrogatories are proper); *Thomson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004) (same).  If the City can only offer partial responses at this time, and must later supplement its answers, that procedure is acceptable under the Federal Rules if supplementation occurs in a timely manner.  *See* Fed. R. Civ. P. 26(e).  But a blanket refusal to answer is not acceptable.  *See, e.g.*, *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, No. 2:07-CV-1285, 2010 U.S. Dist. LEXIS 39619, at *5-6 (S.D. Ohio Mar. 25, 2010) ("In response to plaintiff's contention interrogatories, Grange merely referred plaintiff to otherwise unspecified pleadings and other documents in the action…. Grange must answer plaintiff's contention interrogatories in proper fashion.").  For example Interrogatory No. 1 asks Defendants to "identify every legitimate governmental interest to which Defendants contend the provision of the Ordinance challenged in Plaintiffs' First Amended Complaint are related, whether such interests are rational, important, or compelling," and Requests Nos. 28-30 seek documents related to such interests.  So that we may seek appropriate discovery, we are entitled to production of this information to the extent it exists at this time.  Presumably, Defendants had some purpose or purposes for enacting the Ordinance on July 2, 2010, and those purposes—and materials relating to them—are knowable and known by Defendants now.

Second, Defendants, in their responses to these Requests and Interrogatories, have referred Plaintiffs to the legislative record.  Yet the City has also claimed in *Ezell*, and in its discovery responses here, that it is not bound by the legislative record and may introduce materials extraneous to the record.  Again, while we may ultimately disagree about the

---

[3] We recognize, however, that certain materials dealing solely with the issue of mobile ranges or particular facts about the *Ezell* plaintiffs are probably not relevant and need not be produced.

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
November 5, 2010
Page 6 of 6

admissibility of such information as evidence in this case, there can be no question that Plaintiffs are entitled to discovery of such information to the extent Defendants are presently aware of it. We are happy to review any caselaw to the contrary.

Lastly, during our call and in your letter you stated that the City will not be prepared to produce a Rule 30(b)(6) witness or witnesses on November 12, a deposition we originally noticed on October 5. You also state that the City cannot provide an alternative date at this time because of "unresolved scope issues and logistics." As I have stated in the past, we are willing to be cooperative and flexible in scheduling depositions so that the schedules of various counsel and deponents can be accommodated. That said, we must ensure that we take this important deposition with enough time remaining for any follow-up discovery that it might necessitate. Accordingly, in the absence of a proposed alternative date from the City, we are planning to reissue the notice with the deposition set for Thursday, December 2. We are also willing to consider any date prior to December 2.

Again, we appreciate your continued attention to these issues and your cooperation. We recognize that the parties continued efforts to resolve our discovery disputes are without prejudice to any position we might take should litigation become necessary.

Sincerely,

Jesse Panuccio

Cc Michael Forti, Esq.
  Rebecca Hirsch, Esq.
  William Aguiar, Esq.
  David Thompson, Esq.

# EXHIBIT I

# Cooper & Kirk

Lawyers

A Professional Limited Liability Company

1523 New Hampshire Avenue, N.W.

Washington, D.C. 20036

Jesse Panuccio
jpanuccio@cooperkirk.com

(202) 220-9600
Fax (202) 220-9601

November 12, 2010

<u>By First Class Mail and Email</u>

Andrew Worseck
City of Chicago, Department of Law
30 North LaSalle Street
Suite 900
Chicago, IL 60602
Email: andrew.worseck@cityofchicago.org

Re: *Benson v. City of Chicago*, No. 10-4184 (N.D. Ill.)

Dear Drew:

Please find enclosed service copies of (i) Plaintiffs' Second Set of Requests for Production and Interrogatories, and (ii) Plaintiffs' Notice of Depositions. In addition, please note the following with respect to Plaintiffs' First Set of Requests for Production ("RFP"):

- At the June 29, 2010 meeting of the Chicago City Council Committee on Police and Fire, the Superintendent of the Chicago Police Department, at page 65 of the transcript, stated that "[t]he Department recovers nearly 10,000 firearms each year." Documents related to this statistic are responsive to RFP Nos. 11 and 16. Please produce any such documents.

- At the June 29, 2010 meeting of the Chicago City Council Committee on Police and Fire, Alderman Beale, at page 17 of the transcript, referred to "the map we just received." This map is clearly responsive to RFP Nos. 1, 2 and 3, but does not appear to have been included in the City's production to date. While we believe that production to be deficient in many ways, we understood that it was to include all documents introduced as evidence during the Committee's hearings. If the map has already been produced, please refer us to the Bates numbers. If it has not been produced, please produce it.

- At the July 1, 2010 meeting of the Chicago City Council Committee on Police and Fire, Corporation Counsel Georges, at page 40 of the transcript, referred to "speaking with a lot" of the Aldermen and to "a lot of briefings." Documents related to these

## Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
November 12, 2010
Page 2 of 2

     conversations and briefings are responsive to RFP Nos. 1 and 2.  Please produce any such documents.

- As we have discussed, communications with, or documents received from, witnesses appearing or invited to appear at the June 18, June 29, and/or July 1, 2010 meetings of the Chicago City Council Committee on Police and Fire are responsive to RFP Nos. 1 and 2.  Dr. Daniel Webster, who testified before the Committee on Police and Fire on June 29, 2010, has stated that the City is in possession of any documents that he possesses that are (i) communications between Dr. Webster and persons who are *not* City officials or employees regarding his testimony, and (ii) documents relating to any analysis, description, commentary, or criticism of the Ordinance, Chicago firearms regulations generally, Chicago firearm-related crime, Chicago firearm-related accidents, and/or Chicago firearms training.  Please produce these documents.

Many thanks for your continued attention to these matters.

          Sincerely,

          Jesse Panuccio

Cc    Michael Forti, Esq.
      Rebecca Hirsch, Esq.
      William Aguiar, Esq.
      David Thompson, Esq.

# EXHIBIT J



November 24, 2010

**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

**VIA ELECTRONIC AND U.S. MAIL**

Jesse Panuccio
Cooper & Kirk, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036

  **Re: Benson v. City of Chicago, 10 C 4184**

Dear Jesse:

  I write in response to your November 5, 2010 letter and to provide further information regarding various discovery matters as a follow-up to the parties' telephone conference on November 17, 2010. Again, we appreciate Plaintiffs' cooperation and willingness to try to work through these issues.

  **<u>Responses to Plaintiffs' First Set of Requests for Production</u>**

  Your November 5 letter indicates that Plaintiffs are focusing on requests for production 1, 2, 5-14, 16-23, 25, 28-31, and 33.

  <u>Requests 1 & 2</u>: You characterize these requests as seeking documents "relating to the legislative process and discussions surrounding passage of the Ordinance." In response to these requests, we previously produced the legislative history of the Ordinance, which includes three days of Committee hearings and the various testimony, studies, and reports presented to the Committee.[1] We believe this satisfies our discovery obligations as to these requests.

  Plaintiffs continue to seek materials outside this record, including communications of individual legislators or City employees relating to the Ordinance. We continue to object to producing these materials.

  *First*, such materials are not relevant. Plaintiffs argue that these materials may indicate whether the purposes asserted in the legislative record are "pretextual," or whether that record is reliable or objective. However, you have cited no Second Amendment case in which these questions are entertained, much less dispositive. In fact, the cases point in an entirely opposite direction. Indeed, *Heller* stressed that most firearms regulations are "presumptively lawful," *District of Columbia v. Heller*, 128 S.Ct. 2783, 2816-17 & n. 26 (2008), and that, even as to a regulation ultimately found invalid under the Second Amendment, a city's

---

[1] We will soon produce a copy of the gun dealer map that was used in the Committee hearings and will confirm that all materials from the legislative record have been produced.



Jesse Panuccio
November 24, 2010
Page 2

determination that the regulation is a necessary response to firearms violence is one that should be accorded significant respect. *See id.* at 2822 ("We are aware of the problem of handgun violence in this country, and we take seriously the concerns raised by the many *amici* who believe that prohibition of handgun ownership is a solution."). This is hardly a basis for suggesting that the City's regulation of firearms is flippant or pretextual.

Moreover, Second Amendment analysis turns not on pre-legislation history but on how the regulation impacts residents, and whether a proper governmental interest sufficiently supports it. *Heller*, for instance, did not examine the legislative history of the challenged law at all, much less whether the history revealed pretext or an objective basis. Rather, it found the law invalid because it – in its operation – "totally ban[ned] handgun possession in the home." *Heller*, 128 S.Ct. at 2817. Nor has the Seventh Circuit tarried with the legislative record, much less with the musings of individual legislators. *See, e.g., United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (*en banc*). *Skoien* did not ask whether the enacting Congress had data or studies before it, or whether those data or studies were reliable. Indeed, the court's analysis turned on studies published *after* the statute was enacted. *See id.* at 643-44.

In this light, Plaintiffs' cases – none of which raise Second Amendment claims – are clearly distinguishable. They address discrimination and retaliation claims that, unlike a Second Amendment claim, have governmental motive or intent as a core element. *See, e.g., Miller v. Johnson*, 515 U.S. 900, 916 (1995) (equal protection claim based on racial gerrymandering required showing that "race was the predominant factor motivating the legislature's decision"); *Johnson v. Miller*, 864 F. Supp. 1354, 1360 (S.D. Ga. 1994) (plaintiff required to show that "racial concerns were the overriding criterion for drafting a redistricting plan"); *Bagley v. Blagojevich*, 2007 WL 4302434 (C.D. Ill. Dec. 7, 2007) (First Amendment retaliation claim); *Loesel v. City of Frankenmuth*, 2010 WL 3842369, at *14 (E.D. Mich. Sept. 27, 2010) ("class of one" equal protection claim, which "involves and even requires a factual inquiry into motivation"). Plaintiffs raise no discrimination claim in this lawsuit. And the inquiry in this limited class of cases is an exception to the rule that legislative motive is not germane to constitutional analysis. *See, e.g., D.G. Restaurant Corp. v. City of Myrtle Beach*, 953 F.2d 140, 146 (4th Cir. 1992) ("courts have not as a general rule found legislation unconstitutional based on the motive of the voting legislators when the legislation is facially constitutional"); *Utah Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp.2d 1201, 1237 (D. Utah 2004) (in First Amendment case, evaluation of government's purpose "should be deferential and limited," and "personal motives of those involved in passing a statute or ordinance . . . are immaterial"); *Wreck Bar, Inc. v. Comolli*, 857 F. Supp. 182, 189 (D.R.I. 1994) ("Generally speaking, the subjective beliefs or motives of legislators are not relevant in determining whether regulations serve a permissible purpose, partly because it is virtually impossible to discern ephemeral legislative motivations."); *National Paint and Coatings Ass'n v. City of Chicago*, 147 F.R.D. 184, 185 (N.D. Ill. 1993) (quashing depositions seeking individual motivations of city council

Jesse Panuccio
November 24, 2010
Page 3

members; courts "will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive").

*Second*, any minimal relevance would be greatly outweighed by the burden of producing the material. Defendants would need to canvass the offices and staffs of 50 Aldermen and numerous City Departments, for all documents, including emails and notes, that relate or refer to the Ordinance. The sweep of these requests is objectionable in its own right, and is plainly inconsistent with Plaintiffs' September 1 representation to the Court that they would need only "very limited targeted discovery," if any, and that such discovery would entail crime statistics and the like. While your letter indicates a willingness to exclude those documents that relate solely to provisions of the Ordinance that are not at issue, you stress that such an exclusion would be "very limited," and we agree that the contours of the exclusion sketched in your letter are indeed very limited. As such, the exclusion would not appear to materially reduce the burdensomeness of the requests.

*Third*, requests 1 & 2 are further objectionable because most, if not all, of the material they seek outside the legislative record is protected from disclosure by the attorney-client, legislative, executive, or deliberative process privileges, and/or by the attorney work-product doctrine.

Requests 5-7, 9, 11, 12, 16-23, and 25: Your letter describes these requests as generally seeking crime and firearms ownership data and statistics. In our written responses, we directed Plaintiffs to various reports and data compilations maintained on the CPD's website that are responsive to these requests. Nonetheless, Plaintiffs have pressed us for additional City data.

As the parties have discussed, the identification and extraction of that data poses numerous logistical issues. We updated you on November 17 of the progress of our efforts to learn from our client precisely what types of data exist, how they are stored, whether they are responsive to the requests, whether they can feasibly be produced, and how burdensome and time-consuming it would be to produce the data. We supplied an update as to each of the above requests individually (as well as to request 10, which raises similar issues). We are awaiting further follow-up information and confirmation from the client. We expect to be able to provide a complete answer within the next two weeks.

However, until we have a complete answer from our client as to the details and logistics, we do not believe it is possible to have a productive discussion with Plaintiffs regarding what specific information, if any, should be produced.[2] As we noted on November 17, the nature and

---

[2] The parties have agreed that our efforts to explore the matter with our client and inform Plaintiffs of the nature of the data does not waive or otherwise prejudice Defendants' right to maintain its legal or other objections to production of the information.

Jesse Panuccio
November 24, 2010
Page 4

completeness of the data may inform Defendants' positions with respect to objections (for instance, if data does not exist that meets a particular request, we may object to producing "next-best" data as being unresponsive and prejudicial). And Plaintiffs agreed in your November 5 letter that the parties' "conversation on this front will continue" after we have consulted with our clients and that a discussion regarding an agreement on the production of particular data would take place after the "follow-up" report.

Request 8: Your letter describes this request as seeking "information about firing ranges and firearms dealers." We will produce the requested information as to firing ranges maintained or operated by the CPD. However, the request remains overbroad to the extent that it seeks information for private dealers and ranges going back to 1970, and, in any event, we continue to believe that such information is irrelevant. Private dealers and ranges are not currently lawful in the City and do not exist, and the conditions under which they might have existed in the past are different from those existing today.

Request 13: Your letter describes this request as "seek[ing] the discovery that is/was produced or received by the City in the *Ezell* case." We previously produced to you the City's discovery responses in *Ezell*. We are further willing to produce the deposition transcript of Patricia Scudiero, the only City employee deposed by the plaintiffs in *Ezell*, and that transcript is enclosed and labeled CITY 855-91. This will complete the production of statements or positions taken by the City during discovery in *Ezell* regarding the issues in this case.

However, we object to producing the *Ezell* plaintiffs' responses to the discovery issued by the City's attorneys, or the depositions taken by the City's attorneys. Those materials do not reflect the City's statements or positions regarding issues in this case. Further, they were not generated or obtained by the City in the course of its usual operations. Rather, they were the product of counsel's efforts in litigating the *Ezell* case. The requests seek litigation material residing in the files of Defendants' counsel and are an improper attempt to probe and obtain the attorney work product. Plaintiffs' continued interest in this material is particularly surprising in that the City's ban on firing ranges is the only provision at issue in *Ezell*, yet Plaintiffs told the Court in the Parties' Joint Rule 26(f) Report that "no discovery is needed with respect to . . . Plaintiffs' challenge to the ban on firing ranges."

Requests 28-31 & 33 (and Plaintiffs' First Set of Interrogatories): These requests essentially seek the City's legal position as to the grounds supporting the challenged Ordinance provisions – i.e., whether they are supported by a "compelling," "substantial," or "rational" governmental interest; or whether they are "narrowly-tailored." We have already produced the legislative record, which is responsive to these requests and contains the reasons, justifications, and understandings of the Ordinance articulated by the City to date.

Jesse Panuccio
November 24, 2010
Page 5


To the extent that these requests seek additional information, they are premature "contention" discovery. They employ legal terms of art used to assess the constitutionality of legislation, and further response would require Defendants to formulate and commit to litigation positions in their defense earlier than required. To be clear, our position is not that further response to these requests is never required. It simply is that further response should take place near or after the close of discovery. *See Logan v. Burge*, 2010 WL 4074150, at *4 (N.D. Ill. Oct. 12, 2010) ("Courts routinely delay compelling responses to contention interrogatories such as these until after considerable discovery."); *Gregg v. Local 305 IBEW*, 2009 WL 1325103, at *7 (N.D. Ind. May 13, 2009) ("in the interest of judicial economy and fairness, the answers to contention interrogatories often are delayed until the end of discovery"); Fed. R. Civ. P. 33(a)(2) ("the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time").

## Plaintiffs' Notices of Depositions

As we have previously discussed, Plaintiffs' 30(b)(6) deposition notice issued to the City is extremely broad. Among other things, it lists at least 20 deposition topics spanning 5 pages of the notice. Again, like Plaintiffs' written discovery requests, the scope of the 30(b)(6) notice is at odds with Plaintiffs' prior representations to the Court that Plaintiffs would seek very limited discovery. But even as to those subjects that are properly the subject of deposition (a matter that the parties have yet to discuss), the City will likely need to produce numerous different witnesses. This presents numerous logistical and scheduling issues which are only compounded by the impending year-end holiday season.

Given these realities, and our ongoing efforts to respond to Plaintiffs' other discovery requests, we previously informed you that the City will not be able to produce 30(b)(6) witnesses on December 2 (a date that Plaintiffs unilaterally picked). And, as also discussed, we have proposed that the parties jointly seek a 60-day extension of the discovery period (due largely to the volume and breadth of Plaintiffs' discovery requests), and that, pursuant to that extension, the City would produce 30(b)(6) witnesses in January. We further indicated that the four individual depositions noticed by Plaintiffs for early December may be mooted in whole or in part by the 30(b)(6) deposition, and that those depositions should therefore take place after the 30(b)(6) deposition. We look forward to your response on these matters.

## Plaintiffs' Privilege Log Proposal

Regarding your proposal that the parties need not log privileged communications between counsel and client concerning the *Benson*, *Ezell*, and *Second Amendment Arms* litigation, such communications routinely are not treated as responsive or logged. We thus have no objection to your

Jesse Panuccio
November 24, 2010
Page 6


proposal and believe that logging such documents is neither a pressing matter at present nor a productive use of counsels' time in light of other outstanding discovery matters. Indeed, even as to post-lawsuit communications that do not specifically address the three lawsuits, such communications are routinely not logged and we see no reason why they should be here. As to your view that pre-lawsuit communications between City attorneys and City officials (and, we assume, pre-lawsuit communications between Plaintiffs' counsel and Plaintiffs) are still subject to logging, the logging issue is premature because the parties are still negotiating the scope of responsive discovery. Defendants reserve all claims of privilege as to these documents and, to the extent that any pre-lawsuit communications would need to be logged, we believe (consistent with our proposal to extend discovery) that logging can and should wait until 2011.


Sincerely,

Andrew W. Worseck
312-744-7129


Enclosure

cc:    Stephen Kolodziej
       Michael A. Forti
       Mardell Nereim
       William Macy Aguiar
       Rebecca Alfert Hirsch

# EXHIBIT K



**City of Chicago**
Richard M. Daley, Mayor

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)
http://www.cityofchicago.org

## VIA FACSIMILE AND U.S. MAIL

December 8, 2010

Jesse Panuccio
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036

**Re: Benson v. City of Chicago, 10 C 4184**

Dear Jesse:

I write regarding Plaintiffs' Rule 30(b)(6) deposition notice and deposition notices for Jody Weis, Ernest Brown, and Patricia Scudiero. On December 3, the parties discussed certain matters concerning the scope and propriety of these depositions, and we agreed to take Plaintiffs' positions under advisement and supply you with our response. Our response follows below.

### Rule 30(b)(6) Deposition Notice

<u>Topics 1, 2 & 4</u>

In our view, the scope of these topics mirrors the scope of requests 1 & 2 of Plaintiffs' First Set of Requests for Production; they seek testimony about the drafting history of the Ordinance and the legislative process leading to its passage. We therefore object to producing a witness on these topics because, as more fully set forth in my November 24 letter, these matters are not relevant. Further, the City Council is a collective entity that acts and speaks through legislation. As a legal matter, a single City witness – even an Alderman or City Commissioner – cannot speak for the City Council, including its bases for enacting the ordinance or its decision to choose particular regulatory provisions or language. In addition, it is not possible to produce a witness or even a handful of witnesses who could competently speak to each Alderman's or City official's individual course of communications or other involvement with passage of the Ordinance. In reality, each Alderman and official would need to be produced separately. Thus, even if these topics had some relevance (and they do not), the resulting burden of compliance far outweighs it.

<u>Topic 3</u>

This topic seeks testimony regarding the "governmental purposes" served by the Ordinance. To the extent this topic seeks testimony about matters reflected in the legislative record, we object for the reasons set forth above. To the extent the topic seeks testimony about governmental purposes that are not







**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

reflected in the legislative record, we are amenable to producing a witness to the extent that the City has specific experience with respect to that purpose, and to the extent that it is possible to produce a competent witness.

Topics 5 & 6

As we agreed in our conversation, these topics, which essentially track the document requests seeking CPD data, are limited to testimony regarding how the data is collected, input, searched, or produced. They also encompass testimony regarding why data might not exist on a given point, or what particular pieces of data mean or reflect. The topics do not encompass testimony regarding what conclusions, inferences, or other uses may be drawn from the data. Subject to these understandings we are willing to produce a responsive witness to discuss the CPD data that the City might produce. As the parties previously have discussed and agreed, the City has not yet determined its position on whether any or all of the requested CPD data is relevant or otherwise not objectionable because it is still analyzing what data exists and various logistical issues surrounding its production. We will provide the City's position on these matters very soon.

Topic 7

We believe this topic, as written, is extremely overbroad and ambiguous. In the parties' conversation, Plaintiffs appeared willing to limit this topic to the training and assumptions of police officers regarding the presence of firearms at homes or business to which they are called to respond on an emergency basis. Even so, we fail to see how this inquiry is relevant. Plaintiffs assert the topic is relevant to the extent that the Ordinance was motivated by a desire to protect first responders. But we do not see the connection between CPD first response training and the goal of protecting first responders by limiting the number or manner of firearms in locations they are called to respond to. Even if officers are trained, as a matter of best practices, to prepare for the worst and assume that a resident has multiple illegally-possessed or maintained firearms, that would not mean that the resident in fact does so, or that the Ordinance otherwise fails to protect first responders by reducing the number of homes containing illegally-possessed or maintained firearms.

Topics 8, 9, 12, 13, 14

These topics seek testimony about the City's "position, practices, experiences, and understandings" of the "relationship" between various subjects (*e.g.*, the relationship between possession of more than one operable handgun and the incidence of accidental shootings, or the relationship between firearms

2







**City of Chicago**
**Richard M. Daley, Mayor**

Department of Law

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

ranges and gun-related crime). The use of these quoted terms renders the requests particularly overbroad and ambiguous. (Indeed, problems posed by these terms pervade many other topics as well). To the extent that these topics track corresponding document requests seeking CPD data (and they appear to do so), we are willing to produce a witness as outlined above in response to Topics 5 & 6. Moreover, to the extent that the City proffers as a basis for the challenged Ordinance provisions an understanding of or experience with these topics beyond that disclosed in the legislative record, we are willing to produce a witness as outlined above in response to Topic 3.

Topics 10 & 11

As we agreed in our conversation, these topics are limited to seeking the understanding or experience that City departments may have relating to the identified topics (firearms vendors and firearms ranges operating in the City). Further, the topics are limited to the location of such entities and any deleterious effects resulting from these entities. Even so, however, for the reasons set forth in my November 24 letter, we believe this line of inquiry is irrelevant to the extent it seeks testimony about non-CPD vendors or ranges. As such, we are willing to produce a witness to speak to the topics only insofar as they encompass CPD vendors or ranges.

Topic 15

This topic seeks testimony regarding City customs, policies, or practices regarding firearms training. To the extent this topic seeks testimony regarding the City's position on civilian training, that position is reflected in the Ordinance, its legislative history, and regulations promulgated thereunder. We are willing to produce a CPD witness to testify to the meaning and application of its regulations, but (as discussed above), testimony on the Ordinance or its history is irrelevant and improper. We are further willing to produce a witness to testify as to firearms training policies and practices employed by the CPD in the course of training its officers.

Topic 16

This topic seeks testimony regarding the "relationship" between the City's zoning laws and firearms stores or ranges. After discussing the matter, Plaintiffs indicated they were seeking testimony regarding whether the existing zoning code permits firearms stores or ranges, and, if not, whether the City would proceed to amend the code to accommodate such uses should Plaintiffs prevail on their Second Amendment challenges to the bans on stores and ranges. Plaintiffs indicated that, if the City represents that it would so amend the code,



3





**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

this topic may become unnecessary. The parties agreed to consider and discuss the matter further, and it is our understanding that the topic will be deferred for the time being.

Topics 17 & 18

These topics seek testimony about particular Ordinance terms – *i.e.*, "fixed place of business," "assembled and operable," "broken down in a nonfunctioning state," "trigger lock," and "temporarily inoperable." For the reasons outlined above, it is neither proper nor feasible to produce a witness to testify to the legislative meaning of these terms. We are willing, however, to produce a witness to testify as to how these terms are interpreted and applied by the CPD in enforcing the Ordinance.

Topic 19

This topic seeks testimony about the transportation of long guns in Chicago. We do not see how this topic is relevant. You indicated that you would review the topic and get back to us with your rationale for its inclusion.

Topic 20

This topic seeks testimony about document retention practices and polices. Plaintiffs indicated a willingness to defer the topic for now and revisit it should any future document production indicate a need to conduct discovery on this topic, and we agree with that approach.

One final note concerning all of the topics: Our production of a witness on a topic does not waive or otherwise prejudice our right to raise any objection to questions posed in the deposition, including but not limited to relevance, scope, vagueness, or overbreadth.

**Depositions of City Officials**

Plaintiffs have also noticed the individual depositions of Jody Weis, Ernest Brown, Daniel Bartoli, and Patricia Scudiero. We will produce Sgt. Bartoli, who will testify as to CPD firearms ranges and training. However, we object to the remaining depositions. They seek the testimony of high-ranking and very busy senior City officials. Witnesses of that sort are not subject to deposition unless a plaintiff demonstrates a need for the information sought through testimony, and that the information cannot be obtained through alternative forms of discovery. *See, e.g., Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997); *Bogan v. City of Boston*, 489 F.3d 487 (1st Cir. 2007). Plaintiffs



4





**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

have not indicated why other discovery methods are insufficient to obtain whatever information they would hope to obtain via these depositions. Nor does the fact that Superintendent Weis and Acting Deputy Superintendent Brown testified before the Committee on Police and Fire subject them to deposition. (Indeed, the federal court in Boston has already held this in the course of quashing Plaintiffs' attempt to depose Professor Hemenway). Their Committee testimony is a matter of public record and has been produced to Plaintiffs. For reasons we have previously discussed, further discovery into the legislative record is improper. Finally, these depositions appear to be an improper and/or premature attempt to solicit expert testimony.

Again, we appreciate Plaintiffs' good-faith engagement and dialogue on these issues. Please contact me if you have any questions.

Sincerely,

*Andrew Worseck*

Andrew Worseck
312-744-7129





EXHIBIT L

# Cooper & Kirk

Lawyers

A Professional Limited Liability Company

## 1523 New Hampshire Avenue, N.W.
### Washington, D.C. 20036

Jesse Panuccio
jpanuccio@cooperkirk.com

(202) 220-9600
Fax (202) 220-9601

December 10, 2010

By First Class Mail and Email

Andrew Worseck
City of Chicago, Department of Law
30 North LaSalle Street
Suite 900
Chicago, IL 60602
Email: andrew.worseck@cityofchicago.org

Re: *Benson v. City of Chicago*, No. 10-4184 (N.D. Ill.)

Dear Drew,

Thank you for your letter of December 8, 2010, which was a follow-up to our telephone conference of December 3, 2010. The letter sets out the City's position as to (i) whether it will produce witnesses to testify about the topics listed in Plaintiffs' notice of a deposition pursuant to Fed. R. Civ. P. 30(b)(6), and (ii) whether the City will produce individual city officials upon whom Plaintiffs have served notices of deposition. We have considered the City's positions and respond as follows.

## RULE 30(b)(6) DEPOSITION NOTICE

Topics 1, 2, & 4

The City objects to producing a witness that can speak to these topics to the extent "they seek testimony about the drafting history of the Ordinance and the legislative process leading to its passage." For the reasons stated in my November 5 letter, Plaintiffs believe these matters are relevant and discoverable and will thus continue to seek deposition testimony on this topic.

The City further objects that "a single City witness … cannot speak for the City Council, including its bases for enacting the ordinance." But Plaintiffs are not asking the City to produce a witness who can speak for the entire City Council; we are asking for a witness who can testify on behalf of the City of Chicago as a party to this case—a request that is entirely appropriate under the Federal Rules. *See* Fed. R. Civ. P. 30(b)(6) ("In its notice of subpoena, a party may name as the deponent … a governmental agency…."). It is equally true that a corporation often cannot produce a Rule 30(b)(6) representative who can reasonably be said to the know the mind

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
December 10, 2010
Page 2 of 8

of every employee of the corporation; but a corporation served with a Rule 30(b)(6) deposition notice must still produce witnesses that can "testify about information known or reasonably available to the organization."  Plaintiffs believe that the factual details of the legislative process surrounding the Ordinance is information reasonably available to the City; after all, some City employee (or small group of employees) was likely responsible for drafting the ordinance and organizing the hearings held by the City Council.  *See, e.g.*, Proceedings of City of Chicago, Committee on Police and Fire, July 1, 2010, Tr. at 7 (testimony of Mara Georges) (stating that "Rose Kelly" was "the drafter of the Responsible Gun Ownership Ordinance").  Likewise, the City, as a party to this suit, will defend the Ordinance by putting forward the governmental purposes, and bases for those purposes, that allegedly support the ordinance.  Thus, just as the City can answer, and has an obligation to answer, interrogatories seeking this information, it would seem that the City can identify a witness who can testify about these purposes.

The City further objects that "it is not possible to produce a witness or even a handful of witnesses who could competently speak to each Alderman's or City official's individual course of communications or other involvement with passage of the Ordinance."  This is a fair point and we are willing to stipulate that the City need not produce a Rule 30(b)(6) witness (or witnesses) who can speak to the entirety of communications by City officials regarding the Ordinance.[1] This does not mean, however, that the City is unable to produce a witness who can speak about the legislative process in general—e.g., the drafting process, the selection of witnesses for the hearings, and the role of the Mayor's office and other key players in the process.

One further note on these issues: Topic 1 seeks testimony regarding "whether any … alternative regulations were discussed or considered" and Topic 4 seeks testimony "regarding any less restrictive alternatives that the City considered in enacting instead of the Ordinance."  If the City is willing to enter a stipulation that the only alternative regulations or less restrictive alternatives considered by the City are found in (i) the transcripts of the June 18, June 19, July 1 hearings of the Committee on Police and Fire, and/or (ii) the video recording of the July 2, 2010 proceedings of the Chicago City Council (and City Council Journal pages relating thereto), then Plaintiffs are willing to withdraw the request for a witness as to these portions of Topics 1 and 4.

Topic 3

---

[1] We continue to disagree about whether such documents must be produced pursuant to Plaintiffs' document requests, and thus the matter will ultimately be settled by the Court. Plaintiffs thus reserve the right to depose specific City employees about their communications if and when those communications are produced.

# Cooper & Kirk
#### Lawyers

Andrew Worseck, Esq.
December 10, 2010
Page 3 of 8

Topic 3 seeks testimony "regarding the governmental purposes served by the Ordinance." The City's position is that it will produce a witness to testify about "governmental purposes that are not reflected in the legislative record" but will not produce a witness to testify about "matters reflected in the legislative record." For reasons noted above and in my November 5 letter, Plaintiffs believe testimony regarding governmental purposes reflected in the legislative record is relevant and discoverable and thus the notice stands to the extent it seeks such testimony.

Furthermore, as you know, it is Plaintiffs' position that the City cannot formulate ex post governmental purposes that do not appear in the legislative record. But to the extent the City plans to defend on such grounds, we have a right to discover this information. *See* Fed. R. Civ. P. 26 (b)(1) ("Parties may obtain discovery regarding any nonprivileged matter to any party's … defense.").

## Topics 5 & 6

We are generally in agreement on these topics: to the extent the City produces a witness who can testify regarding the technical nature of data (how it is kept, whether it exists, what it means as a technical matter), Plaintiffs will not ask that witness to testify as to "what conclusions, inferences, or other uses may be drawn from the data." Plaintiffs reserve the right, however, to ask this latter set of questions about this data to witnesses tendered to testify about other topics to which the data relates (e.g., to the bases underlying the City's purported government purposes).

## Topic 7

Your letter correctly states that Plaintiffs are "willing to limit this topic to the training and assumptions of police officers regarding the presence of firearms at homes or businesses to which they are called to respond on an emergency basis." If the City will agree to a stipulation that the purpose or basis for the challenged Ordinance provisions is not to protect first responders, then Plaintiffs will agree that no testimony on this topic is needed. But if the City cannot so stipulate, the topic is relevant and the deposition is warranted. The City's argument to the contrary assumes the very facts that may be in dispute and that the testimony at issue may illuminate.

## Topics 8, 9, 12, 13, 14

If the City will agree to a stipulation that the relationship between lawful possession of more than one operable firearm and the commission of crimes is not a basis for, or related to, the ban on possession of more than one operable firearm, then no testimony on Topic 8 is needed. If the City will agree to a stipulation that the relationship between lawful possession of more than one operable firearm and the incidence of accidental shootings is not a basis for, or related to, the ban on possession of more than one operable firearm, then no testimony on Topic 9 is needed. If

Cooper & Kirk
Lawyers

Andrew Worseck, Esq.
December 10, 2010
Page 4 of 8

the City will agree to a stipulation that the relationship between firearms ranges and the incidence of gun-related crime is not a basis for, or related to, the ban on firearms ranges, then no testimony on Topic 12 is needed. If the City will agree to a stipulation that the relationship between firearms ranges and the incidence of accidental shootings is not a basis for, or related to, the ban on firearms ranges, then no testimony on Topic 13 is needed. But if the City cannot agree to the particular stipulation for a given topic, then Plaintiffs maintain that the testimony is relevant and warranted. On these topics, Plaintiffs are not willing to agree to the limitation discussed with respect to Topics 5 & 6.

As for Topic 14—testimony regarding "the relationship, if any, between firearms ranges and the proficient and safe handling of firearms"—Plaintiffs believe this is directly relevant to, among other things, the City's defense of its ban on firing ranges. The City has maintained that the ban does not pose an "undue burden" on Chicago residents seeking to exercise their right to keep and bear arms and that it is a "reasonable regulation." The relationship between firearms ranges and the proficient and safe handling of firearms would likely be a significant factor in the balancing tests that these defenses seem to invite.[2]

Plaintiffs appreciate that "to the extent that the City proffers as a basis for the challenged Ordinance provisions an understanding of or experience with [Topics 8, 9, 12, 13, and 14] beyond that disclosed in the legislative record," Defendants will produce a witness to testify regarding that understanding and experience. As we have noted, however, Plaintiffs do not agree that the testimony may be restricted only to these extra-record understandings and experiences. Again, while the legislative record is fixed as to purposes and evidence that Defendants may use to defend the challenged Ordinance provisions, Plaintiffs are certainly free to question and probe those purposes and evidence.

Topics 10 & 11

These topics seek testimony regarding firearms vendors and firearms ranges present in the City prior to and after the enactment of the 1982 firearms ordinance. As your letter notes, Plaintiffs are generally willing to limit the topics "to the location of such entities and any deleterious effects resulting" for their presence or operation. (We also reserve the right to inquire about the relationship between the City's zoning laws and policies and these entities.) The City's position, however, is that even subject to this limitation it is willing "to produce a witness to speak to the topics only insofar as they encompass CPD vendors or ranges." Plaintiffs will depose a witness on this subcategory, but the bans at issue deal with *private* vendors and ranges, and thus the topic is clearly relevant and Plaintiffs cannot agree to this restriction.

---

[2] Plaintiffs, of course, do not concede that either standard is appropriate or permissible in the Second Amendment context.

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
December 10, 2010
Page 5 of 8

Topic 15

This topic seeks testimony regarding the City's "customs, policies, and/or practices relating to firearms training."  Plaintiffs appreciate that the City will produce a witness to testify regarding the CPD's regulations and training policies and practices.  Plaintiffs cannot agree, however, to limit the topic to this subcategory.  Plaintiffs would also like the City to produce a witness who can speak to the City's customs, policies, and/or practices with respect to non-CPD security personnel (such as private security guards).  And as to "testimony on the Ordinance or its history," the parties disagreement is now manifest and need not be reiterated here; Plaintiffs maintain the deposition notice in this regard.

Topic 16

Topic 16 seeks testimony regarding "the relationship between (i) the City's zoning laws and/or practices and (ii) firearms ranges and/or businesses selling firearms."  This topic does *not* encompass testimony regarding requirements the Zoning Ordinance places on all businesses (e.g., rules relating to setbacks, floor-area ratios, parking spaces, window transparency), but it does generally seek testimony regarding the City's position on whether firearms retail businesses and firing ranges are permitted under the Zoning Ordinance—and, if not: (i) the reasons why, and (ii) the process for acquiring permitted use status.  Such testimony is plainly relevant.  Indeed, this is *precisely* the testimony the City elicited from Commissioner Scudiero during the preliminary injunction hearing in *Ezell*.  Moreover, as we have noted in conversation and correspondence, Plaintiffs will soon amend their complaint to challenge the Zoning Ordinance to the extent it bans firearms retailers and ranges.  This topic directly relates to that claim and to the scope of the relief Plaintiffs may require.  Accordingly, upon due consideration, we believe the City is under an obligation to tender a witness who can testify as to this topic and we do not see any reason to defer the issue further.[3]

Topics 17 & 18

---

[3] Your letter states that "it is [the City's] understanding that the topic will be deferred for the time being."  It was our understanding that further consideration would be deferred pending the City's elaboration of its position on the Zoning Ordinance in your letter.  I apologize if there was a misunderstanding in this regard.  In any event, upon review of Commissioner Scudiero's testimony, we believe this deposition is necessary unless the City enters a stipulation stating that firearms retail businesses and firearms ranges are permitted uses under the current Zoning Ordinance.

# Cooper & Kirk
Lawyers

Andrew Worseck, Esq.
December 10, 2010
Page 6 of 8

We are in agreement and Defendants will "produce a witness to testify as to how these terms are interpreted and applied by the CPD in enforcing the Ordinance."

Topic 19

Plaintiffs respectfully withdraw Topic 19 as written. Its inclusion in the deposition notice resulted from a misunderstanding of the Ordinance's requirements and restrictions, which we have now clarified to our satisfaction. Plaintiffs do, however, request that the City produce a witness to testify as to how the term "lawful transportation," as used in MCC § 8-20-020(b)(17) and as incorporated in MCC § 8-20-030(b)(1), is interpreted and applied by the CPD in enforcing the Ordinance.

Topic 20

We are in agreement that we can "defer this topic for now and revisit it should any future document production indicate a need to conduct discovery on this topic."

## DEPOSITIONS OF CITY OFFICIALS

Your letter states that the City "will produce Sgt. Bartoli, who will testify as to CPD firearms ranges and training." We appreciate that this deposition can move forward without further dispute, and we propose January 26, 27, or 28, 2011, as the date. Please let me know as soon as possible if one of these dates will work for your office and for Sgt. Bartoli.

As to Superintendent Weis, Sgt. Brown, and Commissioner Scudiero, your letter states that the City will not produce these officials pursuant to Plaintiffs' notices. The City's position is that "these are high-ranking and very busy senior City officials" who are "not subject to deposition unless a plaintiff demonstrates a need for the information sought through testimony, and that the information cannot be obtained through alternative forms of discovery." For this proposition, the City cites *Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997). But *Olivieri* is about cases involving defenses of "official immunity" and the actual standard enunciated there was that high-level city officials "should not have to spend their time giving depositions … unless there is some reason to believe that the deposition will produce or lead to admissible evidence." *Id.* at 409-10. The depositions at issue here meet this standard—and, in any event, they also meet the standard enunciated in your letter. Plaintiffs have not randomly selected City officials for deposition: each has been chosen because he or she has actual first-hand knowledge of facts that may be critical in this lawsuit.

Superintendent Weis and Sgt. Brown each testified at the hearings held by the City Council Committee on Police and Fire; they offered numerous facts as well as positions on the meaning of those facts. The City Council has pointed to this testimony as the basis for the

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
December 10, 2010
Page 7 of 8

Ordinance. For the reasons indicated in my letter of November 5, as well as during our several meet-and-confers, Plaintiffs are entitled to probe this testimony.

As for the deposition of Commissioner Scudiero, we think the relevancy of, and need for, her testimony should be readily apparent to Defendants as the City has already called her as a key fact witness in the *Ezell* case, which—like this case—challenges the constitutionality of the City's ban on ranges. In that case, Commissioner Scudiero testified about the Zoning Ordinance and its relationship to "gun ranges" generally (and not specifically about the mobile ranges at issue in that case). They City introduced this witness over the *Ezell* plaintiffs' objection that "the whole testimony is irrelevant."

## PROPOSAL FOR BRIEFING

We had previously agreed that if the parties could not come to agreement about the propriety of these depositions, the City would file a motion to quash by December 13, so that briefing on this and other discovery issues could unfold, at least in substantial part, during the month of December. Based on our most recent telephonic conversations, I understand that this date may no longer be feasible. Upon further consideration, and in light of the fact that Plaintiffs will be moving to compel on some of our document requests and interrogatories, we propose that instead of Defendants filing a motion to quash next week, Plaintiffs file an omnibus motion to compel by December 31, 2010.[4] This would put all the issues before the Court in one round of briefing, rather than requiring the two rounds of (substantively overlapping) briefing that would accompany a motion to quash by Defendants and a motion to compel by Plaintiffs. We hope this would permit the Court to rule, if it so chose, by the end of January. In the meantime, Plaintiffs could proceed with those depositions to which the City has agreed (Sgt. Bartoli and certain topics under in the Rule 30(b)(6) notice.

\*\*\*

In closing, allow me to echo your appreciation for the good-faith nature in which our discussions over discovery have unfolded thus far. I hope the cordiality will continue even in the face of disagreement on the merits of various issues and robust advocacy on behalf of our respective clients.

---

[4] Plaintiffs recognize that the when a party refuses to sit for a duly noticed deposition, the burden is on the deponent to move to quash rather than on the noticing party to move to compel. For purposes of efficiency for the parties and the Court, however, we are proposing this alternative. By advancing this proposal, Plaintiffs in no way agree to shift the burdens incumbent upon each party under the Federal Rules of Civil Procedure and do not concede in any way that the style of briefing reflects on the merits of the parties' positions.

# Cooper & Kirk

Lawyers

Andrew Worseck, Esq.
December 10, 2010
Page 8 of 8

Sincerely,

Jesse Panuccio

Enclosures

Cc:    Michael Forti, Esq.
        William Aguiar, Esq.
        Rebecca Hirsch, Esq.
        David Thompson, Esq.
        Stephen Kolodziej, Esq.

# EXHIBIT M

# Cooper & Kirk
### Lawyers
A Professional Limited Liability Company
## 1523 New Hampshire Avenue, N.W.
## Washington, D.C. 20036

Jesse Panuccio
jpanuccio@cooperkirk.com

(202) 220-9600
Fax (202) 220-9601

December 29, 2010

By Email

Andrew Worseck
City of Chicago, Department of Law
30 North LaSalle Street
Suite 900
Chicago, IL 60602
Email: andrew.worseck@cityofchicago.org

Re: *Benson v. City of Chicago*, No. 10-4184 (N.D. Ill.)

Dear Drew,

I write regarding Defendants' Response to Plaintiffs' Second Set of Requests for Production and Second Set of Interrogatories ("Plaintiffs' Second Discovery Requests"), which Defendants served on December 13, 2010.

With respect to Request for Production No. 34, "Defendants state that they will produce copies of those exhibits that were admitted into evidence in the preliminary injunction hearing in *Ezell*." To date, Defendants have not produced these documents. Please produce these documents as soon as possible. In all events, please let me know if these documents will not be produced by January 5, 2011.

With respect to Request for Production Nos. 35 part (i), 36 part (i), 38, and 39, Defendants state that they will "produce any non-privileged documents … to the extent it is not unduly burdensome to do so." To date, Defendants have not produced any documents in response to these requests. Based on Defendants' response, it is unclear whether: (i) Defendants are withholding documents on privilege grounds, (ii) Defendants are withholding documents on burden grounds, (iii) Defendants are withholding documents on some other unspecified grounds, or (iv) responsive documents simply do not exist. If documents are being withheld on privilege grounds, Defendants must specify the basis for the privilege and to produce a privilege log with information sufficient for Plaintiffs to assess the claim of privilege. If documents are being withheld on burden grounds, Defendants must clearly state as much so that Plaintiffs can decide whether to move to compel. If documents are being withheld on some other grounds, Defendants must specify those grounds. And if responsive documents simply do not exist, Defendants should inform Plaintiffs of that fact without delay.

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
December 29, 2010
Page 2 of 4


Request for Production Nos. 35 part (ii) and 36 part (ii) seek documents relating to the statement made by the Corporation Counsel to the Chicago City Council Committee on Police and Fire that "one handgun is sufficient for self-defense." Defendants state that they object to the request "as particularly irrelevant, as the Ordinance does not limit the number of handguns that one may possess." Municipal Code of Chicago § 8-20-140, however, states that "each person with a valid CFP and registration certificate is entitled to have *one* such firearm assembled and operable in the home" and "[a]ll other firearms kept or possessed by that person in his home shall be broken down in a nonfunctioning state or shall have a trigger lock or other mechanism … designed to render the firearm temporarily inoperable." Accordingly, under Chicago law, a resident may possess only one operable handgun at all times—and, thus, Chicago law most certainly does limit to one the number handguns a resident may possess for self-defense purposes. That a resident may possess any number of additional *inoperable* handguns does not change this fact. Thus, the statement at issue is highly relevant to Plaintiffs' challenge to § 8-20-140, and Plaintiffs maintain that Defendants are required to produce documents responsive to these requests or to state that no such documents exist.

Request for Production No. 37 seeks "the timeline on the history of the gun registration ordinance in Chicago" publicly and specifically referenced by Alderman Burke at the June 29, 2010 meeting of the Chicago City Council Committee on Police and Fire. Defendants "state that documents responsive to this request are protected by privilege and therefore will not be produced." This is not a proper invocation of privilege. To invoke a privilege, a party must specify the basis of the privilege and provide information sufficient for the requesting party to assess the validity of the claim of privilege. *See* Fed. R. Civ. P. 26(b)(5) ("When a party withholds information otherwise discoverable by claiming that the information is privileged … the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable others to assess the claim."). Accordingly, please provide the basis of the privilege claim over these documents as well as information identifying the author of, and all persons who have received or viewed, the document(s).

Request No. 40 seeks "the 'investigations tracing crime guns' referred to by Kevin Johnson at the June 29, 2010 meeting of the Chicago City Council Committee on Police and Fire." Defendants state that "to the extent the identified witness contemplated specific investigations in connection with his testimony, they will produce those investigations to the extent they are not privileged or otherwise protected from disclosure, and to the extent it is not unduly burdensome to do so." To date, Defendants have not produced any documents in response to this request. Based on Defendants' response, it is unclear whether: (i) Defendants are withholding documents on privilege grounds, (ii) Defendants are withholding documents on burden grounds, (iii) Defendants are withholding documents on some other unspecified grounds, or (iv) responsive documents simply do not exist. If documents are being withheld on privilege

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
December 29, 2010
Page 3 of 4

grounds, Defendants must specify the basis for the privilege and to produce a privilege log with information sufficient for Plaintiffs to assess the claim of privilege. If documents are being withheld on burden grounds, Defendants must clearly state as much so that Plaintiffs can decide whether to move to compel. If documents are being withheld on some other grounds, Defendants must specify those grounds. And if responsive documents simply do not exist, Defendants should inform Plaintiffs of that fact without delay. Given the context of Sgt. Johnson's testimony, however, we find it hard to believe that he did not have investigations "in mind" when he specifically referenced "investigations tracing crime guns."

Request No. 41 and Interrogatory No. 7 seek the evidence and witnesses that Defendants will proffer in this case in defense of the provisions at issue. Defendants refer to their responses and answers to other document requests and interrogatories, and state that they will produce and/or identify and further response documents or information "according to such schedules as the Court or Federal Rules of Civil Procedure." Under the Federal Rules of Civil Procedure, Defendants must produce responsive documents and information thirty days after discovery requests have been served. To date, Defendants have only produced the transcripts of the legislative hearings (and associated exhibits) and a handful of other documents relating to the *Ezell* litigation. If Defendants are in possession of other documents or information responsive to Request No. 41 or Interrogatory No. 7, they are required to produce such documents and information here and now. Defendants are, of course, entitled to supplement or correct any production should further development call into question the accuracy or completeness of a response. But Defendants are not entitled to simply withhold all information relevant to their defenses until after the discovery period has closed.

Interrogatory No. 8 seeks the identity of "all persons in possession of information regarding the governmental justifications for, or governmental purposes or interests in, each of the" challenged provisions of the Ordinance. Defendants object (i) that this Interrogatory "can be accommodated by Defendants' tendering of witness(es) in response" to Plaintiffs' notice of a Rule 30(b)(6) notice, and (ii) that Defendants "have already produced documents and other information" responsive to this Interrogatory." As noted above, Defendants have thus far produced very little in response to any of Plaintiffs' discovery requests; and Defendants have yet to produce a single Rule 30(b)(6) witness and, indeed, contend that they need not produce any witness with respect to most topics in the deposition notice. If it is Defendants' contention that the only persons with information responsive to Interrogatory No. 8 are identified in the legislative history produced to date, then we will hold Defendants to that position if they attempt to call as a witness, or introduce evidence deriving from, any person not disclosed therein. But if Defendants, in fact, have present knowledge of the identity of any additional persons responsive to this Interrogatory, they must provide that information to Plaintiffs.

I note that "Defendants object to the timeframe of those requests seeking documents from 1970 to present." Plaintiffs' Second Set of Discovery Requests does not establish a specific timeframe. Based on the nature of these requests and interrogatories, we believe that the

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
December 29, 2010
Page 4 of 4

documents or information, if in the City's possession, is relevant, regardless of its date of creation. Nonetheless, we suspect that most documents and information responsive to these particular requests and interrogatories will not reach back to 1970.

As you know, Plaintiffs are preparing to file, on January 7, 2011, a motion to compel production and answers to Plaintiffs' First Set of Requests for Production and First Set of Interrogatories. Based on Defendants' Response to Plaintiffs' Second Set of Discovery Requests, we are concerned that some of those requests and interrogatories may also need to be the subject of a motion to compel. Because it would be inefficient to seek the Court's intervention twice on discovery requests that are already pending, and because we must ensure discovery is completed by March 30, we plan to include in the January 7 motion any unresolved issues regarding Plaintiffs' Second Set of Discovery Requests. Accordingly, to the extent Defendants plan to produce documents, clarify objections based on burden or other grounds, or produce a privilege log pursuant to Rule 26(b)(5), please do so by close of business on January 5, 2011. If we do not receive any production or supplemental response by that time, we will consider Defendants' responses to Plaintiffs Second Set of Discovery Requests final as they now stand and will draft the motion accordingly. Moreover, because the Local Rules require a telephonic meet-and-confer before a motion to compel may be filed, I propose that we address these issues during our already-scheduled call tomorrow, December 30, 2010.

Many thanks for your attention to these matters.

Sincerely,

Jesse Panuccio

Enclosures

Cc: Michael Forti, Esq.
William Aguiar, Esq.
Rebecca Hirsch, Esq.
David Thompson, Esq.
Stephen Kolodziej, Esq.