# EXHIBIT N

09:46:29

```
                     UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION


 RHONDA EZELL, et al.,              Case No. 1:10-cv-05135

   Plaintiffs,                      Chicago, Illinois
                                    October 4, 2010
        v.                          Motion for Preliminary
                                    Injunction
 CITY OF CHICAGO,

   Defendant.
 ---------------------------------


                           VOLUME 2-A
          TRANSCRIPT OF MOTION FOR PRELIMINARY INJUNCTION
             BEFORE THE HONORABLE VIRGINIA M. KENDALL
                    UNITED STATES DISTRICT JUDGE


 APPEARANCES:

 For the Plaintiffs:    Gura & Possessky, PLLC
                        By: Alan Gura
                        101 N. Columbus St., Ste. 405
                        Alexandria, VA 22314
                        (703) 835-9085

                             - and -

                        Law Firm of David G. Sigale, P.C.
                        By: David G. Sigale
                        4300 Commerce Ct., Ste. 300-3
                        Lisle, IL 60532
                        (630) 452-4547
```

| | | |
|---|---|---|
| 10:08:43 | 1 | A. Yes. |
| 10:08:44 | 2 | Q. And is another purpose to preserve the overall quality of |
| 10:08:46 | 3 | life for residents and visitors? |
| 10:08:49 | 4 | A. Yes. |
| 10:08:49 | 5 | Q. And is another purpose to protect the character of |
| 10:08:51 | 6 | established residential neighborhoods? |
| 10:08:53 | 7 | A. Yes. |
| 10:08:53 | 8 | Q. And is another purpose to maintain orderly and compatible |
| 10:08:56 | 9 | land use and development patterns? |
| 10:08:58 | 10 | A. Yes. |
| 10:08:59 | 11 | Q. And based on your experience, does the zoning ordinance |
| 10:09:02 | 12 | advance the purposes and intents set forth in section |
| 10:09:06 | 13 | 17-1-500? |
| 10:09:06 | 14 | A. Yes, it does. |
| 10:09:10 | 15 | Q. Ms. Scudiero, based on your experience in working with the |
| 10:09:14 | 16 | Chicago zoning ordinance, what does it mean if a particular |
| 10:09:17 | 17 | use of property is not provided for in the zoning ordinance? |
| 10:09:20 | 18 | A. That use is prohibited. |
| 10:09:23 | 19 | Q. In your tenure as commissioner of the department of zoning |
| 10:09:27 | 20 | and land use planning and as the City's zoning administrator, |
| 10:09:31 | 21 | has, ever, a new use arisen that hasn't been provided for in |
| 10:09:36 | 22 | the zoning ordinance? |
| 10:09:37 | 23 | A. Yes. |
| 10:09:37 | 24 | Q. Could you give me an example? |
| 10:09:38 | 25 | A. Certainly. In the past few years, we have been asked to |

| | | |
|---|---|---|
| 10:09:43 | 1 | look at wind turbines, solar rays, vacation rentals, and |
| 10:09:51 | 2 | children's activities facilities. |
| 10:09:56 | 3 | Q. And have these new uses come to your attention? |
| 10:09:58 | 4 | A. They have. |
| 10:09:59 | 5 | Q. And how do they come to your attention? |
| 10:10:00 | 6 | A. Through the City Council. |
| 10:10:03 | 7 | Q. Do you or your office play any role in assessing these new |
| 10:10:07 | 8 | uses? |
| 10:10:08 | 9 | A. Yes, we do. |
| 10:10:08 | 10 | Q. And what role do you play? |
| 10:10:10 | 11 | A. When a new use comes forward to us, we do the research in |
| 10:10:15 | 12 | order to find if it has an appropriate place in the Chicago |
| 10:10:18 | 13 | zoning ordinance by first, normally, creating a definition, |
| 10:10:23 | 14 | trying to define exactly what it is that the City Council is |
| 10:10:26 | 15 | looking for. |
| 10:10:27 | 16 | From there we'll do a best case study. We'll look at |
| 10:10:31 | 17 | other cities, some the size of ours, some smaller than others |
| 10:10:35 | 18 | and see if they have enacted any ordinances that match the one |
| 10:10:38 | 19 | that we are looking at. And then we make assessments, what |
| 10:10:41 | 20 | zoning districts should that use go into, what's appropriate, |
| 10:10:44 | 21 | what's not. |
| 10:10:45 | 22 | We proscribe things from the parking ratios attached |
| 10:10:48 | 23 | to it, to how tall they should be, what the setbacks should |
| 10:10:51 | 24 | be, what the landscaping requirements would be with it. |
| 10:10:54 | 25 | Q. And what do you generally do with that assessment? |

| | | |
|---|---|---|
| 10:10:56 | 1 | A. We give our recommendations to the City Council. |
| 10:11:00 | 2 | THE COURT: So do we have a wind turbine zoning now, |
| 10:11:03 | 3 | or no? |
| 10:11:04 | 4 | THE WITNESS: We don't yet, because the testers that |
| 10:11:08 | 5 | have been put in the ground have not produced enough wind to |
| 10:11:12 | 6 | sufficiently give power to anything. |
| 10:11:15 | 7 | THE COURT: We always learn something in court every |
| 10:11:20 | 8 | day, right? |
| 10:11:22 | 9 | Go ahead. |
| 10:11:22 | 10 | BY MR. AGUIAR: |
| 10:11:23 | 11 | Q. Ms. Scudiero, does the Chicago zoning ordinance contain |
| 10:11:26 | 12 | property uses that you've never been to or have any personal |
| 10:11:30 | 13 | experience with? |
| 10:11:31 | 14 | A. Yes. |
| 10:11:31 | 15 | Q. Could you give me some examples? |
| 10:11:33 | 16 | A. Sure. I've never been to a rock crushing facility. I've |
| 10:11:38 | 17 | never been to an incinerator. I've never been to a strip |
| 10:11:42 | 18 | club. I'm sure there are more. |
| 10:11:46 | 19 | Q. But it is still your job, as the City's zoning |
| 10:11:49 | 20 | administrator, to enforce the zoning ordinance as to those |
| 10:11:52 | 21 | uses? |
| 10:11:52 | 22 | A. Yes. |
| 10:11:53 | 23 | Q. And you believe you are competent to administer those |
| 10:11:56 | 24 | zoning ordinances as to those uses? |
| 10:11:59 | 25 | A. Yes, I do. |

| | | |
|---|---|---|
| 10:11:59 | 1 | Q. Does the Chicago zoning ordinance currently provide in any |
| 10:12:02 | 2 | way for a gun range? |
| 10:12:03 | 3 | A. No. |
| 10:12:04 | 4 | Q. Does the fact that the Chicago zoning ordinance omits gun |
| 10:12:09 | 5 | ranges mean anything? |
| 10:12:10 | 6 | A. It means it's prohibited. |
| 10:12:13 | 7 | Q. Was that your decision to prohibit gun ranges? |
| 10:12:15 | 8 | A. No, it was the City Council's. |
| 10:12:18 | 9 | Q. Ms. Scudiero, have you ever been to a gun range? |
| 10:12:20 | 10 | A. No. |
| 10:12:21 | 11 | Q. Have you ever studied or read any literature about gun |
| 10:12:24 | 12 | ranges? |
| 10:12:24 | 13 | A. No. |
| 10:12:28 | 14 | Q. What is your understanding, as you sit here today, of what |
| 10:12:29 | 15 | actually transpires at a gun range? |
| 10:12:32 | 16 | A. It's my understanding that -- |
| 10:12:34 | 17 | MR. SIGALE: Objection as to speculation. |
| 10:12:36 | 18 | THE COURT: Sustained. Never been there, so ... |
| 10:12:40 | 19 | BY MR. AGUIAR: |
| 10:12:40 | 20 | Q. Ms. Scudiero, do you have any understanding of what |
| 10:12:43 | 21 | happens at a gun range? |
| 10:12:44 | 22 | MR. SIGALE: Objection, your Honor. |
| 10:12:45 | 23 | THE COURT: What's the relevance of that then? |
| 10:12:47 | 24 | Unless she's had it in her position as far as it coming before |
| 10:12:51 | 25 | her. |

| | | |
|---|---|---|
| 10:12:52 | 1 | MR. AGUIAR: Your Honor, Ms. Scudiero is about to |
| 10:12:54 | 2 | testify as to the effect that gun ranges are going to have if |
| 10:12:56 | 3 | they come into the city. I believe that there's been no |
| 10:12:59 | 4 | testimony in this case to date as to actually what happens at |
| 10:13:02 | 5 | a gun range. I believe that -- |
| 10:13:03 | 6 | THE COURT: Okay. The objection is sustained as to |
| 10:13:05 | 7 | foundation. You're going to be have to be able to prove that |
| 10:13:09 | 8 | she has some basis for giving that opinion. |
| 10:13:18 | 9 | Has she reviewed gun ranges? Has she discussed it in |
| 10:13:21 | 10 | her position? |
| 10:13:25 | 11 | I'll let you take a break and talk to your team, if |
| 10:13:28 | 12 | you want. |
| 10:13:31 | 13 | MR. AGUIAR: Thank you. |
| 10:13:56 | 14 | Your Honor, if I may? |
| 10:13:58 | 15 | THE COURT: Sure. |
| 10:13:59 | 16 | MR. AGUIAR: The reasons why I asked Ms. Scudiero |
| 10:14:01 | 17 | questions about uses that aren't in the zoning ordinance, that |
| 10:14:04 | 18 | she hasn't been to yet, she is still charged with enforcing, |
| 10:14:08 | 19 | goes to this exact issue. In her job she is oftentimes |
| 10:14:11 | 20 | required to look at uses that she has no personal experience |
| 10:14:15 | 21 | on and to render opinions to City Council and others about |
| 10:14:17 | 22 | those uses. Now, that's why the foundation was laid. |
| 10:14:21 | 23 | With respect to the gun ranges -- |
| 10:14:22 | 24 | THE COURT: So the foundation is laid to lack of |
| 10:14:25 | 25 | knowledge that I opine on. But she hasn't opined on this type |

| | | |
|---|---|---|
| 10:14:29 | 1 | of incident before. |
| 10:14:30 | 2 | MR. AGUIAR: But she's oftentimes -- |
| 10:14:31 | 3 | THE COURT: I mean, this type of location before. |
| 10:14:33 | 4 | MR. AGUIAR: She's oftentimes required to do that in |
| 10:14:36 | 5 | her job. Her job is to anticipate uses, which come into the |
| 10:14:39 | 6 | city, and to advise people as to how those uses will impact |
| 10:14:43 | 7 | the City of Chicago from a zoning perspective. |
| 10:14:45 | 8 | THE COURT: Okay. Let's put meat on the bones. |
| 10:14:47 | 9 | Let's take the rock crushing facility. Maybe she never went |
| 10:14:50 | 10 | to a rock crushing facility, but she has a foundation that at |
| 10:14:54 | 11 | some point a rock crushing facility attempted to come into the |
| 10:14:58 | 12 | city. She reviewed what a rock crushing facility does and |
| 10:15:02 | 13 | made a determination as to how that might impact the |
| 10:15:06 | 14 | community. |
| 10:15:06 | 15 | So unless you can lay a foundation that she somehow |
| 10:15:10 | 16 | has reviewed what a gun range does and how it would impact the |
| 10:15:15 | 17 | community, I don't know if you have the proper witness here. |
| 10:15:19 | 18 | MR. AGUIAR: Your Honor, Ms. Scudiero is going to |
| 10:15:21 | 19 | testify as to her understanding of what a gun range is. If |
| 10:15:24 | 20 | that understanding proves to be incorrect or somehow testimony |
| 10:15:30 | 21 | has shown that it's incorrect, that would go to the weight the |
| 10:15:33 | 22 | Court affords the testimony, not its admissibility. |
| 10:15:35 | 23 | If she testifies as to what her understanding is and |
| 10:15:37 | 24 | that's wrong, then you don't have to regard her testimony at |
| 10:15:39 | 25 | all. |

| | | |
|---|---|---|
| 10:15:39 | 1 | THE COURT: You don't need to object. His objection |
| 10:15:41 | 2 | is still standing. |
| 10:15:44 | 3 | I think that you are on shaky ground. I'll give you |
| 10:15:48 | 4 | a little leeway, and let's see what she can do. |
| 10:15:55 | 5 | BY MR. AGUIAR: |
| 10:15:56 | 6 | Q. Ms. Scudiero, have you reviewed what happens at a gun |
| 10:16:00 | 7 | range? |
| 10:16:00 | 8 | THE COURT: That's a fair question. |
| 10:16:02 | 9 | MR. SIGALE: Okay. |
| 10:16:02 | 10 | THE COURT: Overruled. |
| 10:16:03 | 11 | THE WITNESS: Since I was asked to testify, I've been |
| 10:16:06 | 12 | sort of trying to put my arms around what a gun range does. |
| 10:16:09 | 13 | I've never been to one. |
| 10:16:10 | 14 | BY MR. AGUIAR: |
| 10:16:11 | 15 | Q. What have you determined happens at a gun range? |
| 10:16:13 | 16 | MR. SIGALE: Objection, foundation. |
| 10:16:14 | 17 | THE COURT: Foundation, sustained. |
| 10:16:15 | 18 | BY MR. AGUIAR: |
| 10:16:16 | 19 | Q. What have you done to put your arms around the idea of |
| 10:16:18 | 20 | what happens at a gun range? |
| 10:16:23 | 21 | A. Just from my general knowledge of what people -- what I |
| 10:16:26 | 22 | imagine what people would do there is they would go there to |
| 10:16:31 | 23 | either learn how to shoot a gun or practice shooting a gun. |
| 10:16:33 | 24 | Q. Anything else? |
| 10:16:35 | 25 | A. I imagine they either bring their own gun there or use a |

| | | |
|---|---|---|
| 10:16:38 | 1 | gun that's on site. |
| 10:16:39 | 2 | MR. SIGALE: Your Honor, I'm going to move to strike |
| 10:16:41 | 3 | any testimony based on speculation, that includes the word |
| 10:16:45 | 4 | imagine. |
| 10:16:46 | 5 | THE COURT: Okay. I'm going to let her testify, and |
| 10:16:51 | 6 | I'll be the judge of whether there's any weight to be given to |
| 10:16:54 | 7 | it or merit. It's nebulous at this point, so I'll let you |
| 10:17:01 | 8 | have some leeway to see what you can do with it. |
| 10:17:07 | 9 | BY MR. AGUIAR: |
| 10:17:08 | 10 | Q. Ms. Scudiero, based on your understanding that you've |
| 10:17:11 | 11 | stated here today as to what happens at a gun range, in your |
| 10:17:14 | 12 | 21 years of experience with zoning in the City of Chicago, in |
| 10:17:17 | 13 | what zoning classification do you believe that a gun range |
| 10:17:20 | 14 | should be allowed in the city? |
| 10:17:22 | 15 | A. As with uses that could pose the possibility of being |
| 10:17:29 | 16 | intense, we would put them in an intensive use category, and |
| 10:17:32 | 17 | we would ask that they be put into a manufacturing district. |
| 10:17:37 | 18 | Q. You testified you would think it's an intense use. |
| 10:17:40 | 19 | What is an intense use from a zoning perspective? |
| 10:17:43 | 20 | A. From a zoning perspective, an intense use is a use that |
| 10:17:48 | 21 | could pose a threat to the health, safety, and welfare of our |
| 10:17:52 | 22 | city's residents. And the way the zoning code works, we have |
| 10:17:56 | 23 | zoning districts that are created throughout the city where, |
| 10:18:01 | 24 | you know, the residential uses are for people who, obviously, |
| 10:18:04 | 25 | they're living there, they're attending school there or church |

| | | |
|---|---|---|
| 10:18:07 | 1 | there. |
| 10:18:07 | 2 | The next use category is the business use where |
| 10:18:10 | 3 | people do their daily shopping, business use also allows for |
| 10:18:13 | 4 | residential above them. You know, as you leave those |
| 10:18:17 | 5 | districts, you start getting into more intense uses, |
| 10:18:20 | 6 | commercial districts, manufacturing districts, plan |
| 10:18:25 | 7 | manufacturing districts. |
| 10:18:25 | 8 | We try to keep intense uses into those manufacturing |
| 10:18:30 | 9 | districts, because they are the furthest point away from the |
| 10:18:32 | 10 | residents where they live. |
| 10:18:35 | 11 | Q. Could you please give some examples of what would be an |
| 10:18:37 | 12 | intense use from a zoning perspective? |
| 10:18:38 | 13 | A. Certainly. Taverns are intense uses. Rock crushing |
| 10:18:42 | 14 | facilities are intense uses. Salvage yards, incinerators, |
| 10:18:47 | 15 | those are intense uses. They're kept at the periphery of the |
| 10:18:50 | 16 | city normally, so that they are kept away from the residential |
| 10:18:53 | 17 | areas. |
| 10:18:54 | 18 | Q. What about adult uses, are they considered an intense use? |
| 10:18:57 | 19 | A. They are. |
| 10:18:57 | 20 | Q. What about facilities that have drive-through facilities? |
| 10:19:02 | 21 | A. Drive-through facilities are considered an intense use, in |
| 10:19:07 | 22 | as they require a special use permit in all the districts that |
| 10:19:09 | 23 | they exist throughout the city. |
| 10:19:12 | 24 | Q. Again, based on your zoning experience and your stated |
| 10:19:16 | 25 | understanding of what happens at a gun range, why do you think |

| | | |
|---|---|---|
| 10:19:19 | 1 | a gun range would only be appropriate in a manufacturing |
| 10:19:22 | 2 | district? |
| 10:19:23 | 3 | A. It's to keep -- |
| 10:19:24 | 4 | MR. SIGALE: I'm going to object. I'm going to |
| 10:19:27 | 5 | object -- I don't believe a proper foundation has been laid. |
| 10:19:30 | 6 | THE COURT: Yes, overruled, based upon what I said |
| 10:19:33 | 7 | before. |
| 10:19:37 | 8 | THE WITNESS: The manufacturing districts are, again, |
| 10:19:41 | 9 | normally the furthest point away from the residential |
| 10:19:44 | 10 | districts, in order to protect the people who are residing in |
| 10:19:48 | 11 | the residential districts of the manufacturing -- as I said, |
| 10:19:52 | 12 | the manufacturing districts house the intense uses throughout |
| 10:19:54 | 13 | the city. |
| 10:19:56 | 14 | BY MR. AGUIAR: |
| 10:19:56 | 15 | Q. And, again, based on your zoning experience and your |
| 10:20:00 | 16 | stated understanding of what happens at a gun range, are there |
| 10:20:03 | 17 | any zoning classifications that you do not believe it would be |
| 10:20:06 | 18 | appropriate to place a firing range in close proximity to? |
| 10:20:10 | 19 | A. No, other than the M. |
| 10:20:14 | 20 | Q. Let me rephrase my question. |
| 10:20:16 | 21 | Based, again, on your experience in zoning -- |
| 10:20:19 | 22 | A. Yes. |
| 10:20:20 | 23 | Q. -- and your stated understanding of what happens at a gun |
| 10:20:24 | 24 | range, are there any zoning classifications you would not want |
| 10:20:28 | 25 | a firing range near? |

|  |  |
|---|---|
| 10:20:30 | 1 |
| 10:20:32 | 2 |
| 10:20:36 | 3 |
| 10:20:38 | 4 |
| 10:20:40 | 5 |
| 10:20:45 | 6 |
| 10:20:50 | 7 |
| 10:20:53 | 8 |
| 10:20:57 | 9 |
| 10:21:01 | 10 |
| 10:21:05 | 11 |
| 10:21:08 | 12 |
| 10:21:12 | 13 |
| 10:21:15 | 14 |
| 10:21:17 | 15 |
| 10:21:20 | 16 |
| 10:21:23 | 17 |
| 10:21:27 | 18 |
| 10:21:28 | 19 |
| 10:21:30 | 20 |
| 10:21:32 | 21 |
| 10:21:34 | 22 |
| 10:21:35 | 23 |
| 10:21:42 | 24 |
| 10:21:45 | 25 |

1  A. Any district that would have a residential component to
2  it, which would be the R districts, the B and C districts also
3  permit some residential uses.
4  Q. And why is that?
5  A. Those districts, the B and C districts specifically,
6  permit residential uses in them. The C1 and C2 districts
7  specifically permit residential uses. The C3 district does
8  not permit it. It's used as buffer between the manufacturing
9  districts and every other district. There should be some sort
10 of buffer between all of the zoning ordinance classified
11 intense uses and its residential communities.
12 Q. Now, you testified that the only zoning district in which
13 you believe it would be appropriate to place a firing range in
14 would be a manufacturing district.
15      Based on your experience in zoning and, again, your
16 stated understanding of what happens at a firing range, should
17 a firing range be automatically allowed in a manufacturing
18 district, in your opinion?
19 A. In my opinion, no.
20 Q. How would it be allowed then?
21 A. It should be allowed as a special use.
22 Q. And what is a special use?
23 A. A special use permit is issued by the Chicago zoning board
24 of appeals. The zoning board of appeals would review the
25 case -- it's an additional review -- review the case and do a

| | | |
|---|---|---|
| 10:21:50 | 1 | thorough investigation of it and deem whether a special use |
| 10:21:54 | 2 | permit should be granted for a specific site, and many, many |
| 10:21:58 | 3 | uses require special uses in the Chicago zoning ordinance. |
| 10:22:02 | 4 | Q. What use is -- what things require a special use permit? |
| 10:22:05 | 5 | A. Drive-through facilities throughout the city require a |
| 10:22:08 | 6 | special use permit, churches in the B and C district require |
| 10:22:12 | 7 | special use, nail salons, adult uses, taverns in some cases. |
| 10:22:19 | 8 | Q. You mentioned the zoning board of appeals. What is the |
| 10:22:23 | 9 | zoning board of appeals? |
| 10:22:24 | 10 | A. The zoning board of appeals is a group of experts that are |
| 10:22:27 | 11 | appointed by the mayor, affirmed by the City Council, to serve |
| 10:22:31 | 12 | on the board. And they meet monthly -- the Board of Appeals |
| 10:22:36 | 13 | meets monthly and hears requests for variations, special uses, |
| 10:22:39 | 14 | and appeals. |
| 10:22:41 | 15 | Q. To become -- or to receive approval to be a special use, |
| 10:22:45 | 16 | is there a specific procedure that must be followed? |
| 10:22:48 | 17 | A. Yes, a denial is issued by my department. That denial is |
| 10:22:51 | 18 | used to file a special use application with the zoning board |
| 10:22:55 | 19 | of appeals. That special use application is processed by the |
| 10:22:58 | 20 | board and a public hearing is set for that. |
| 10:23:02 | 21 | Q. Based on your zoning experience and, again, your stated |
| 10:23:06 | 22 | understanding of what happens at a firing range, do you |
| 10:23:10 | 23 | believe that there are any dangers to the City's public |
| 10:23:11 | 24 | health, safety, and welfare if ranges are allowed to enter the |
| 10:23:15 | 25 | city without zoning regulation? |

| | | |
|---|---|---|
| 10:23:18 | 1 | A. As with all the uses, without regulation there's little or |
| 10:23:23 | 2 | no control.  The zoning code proscribes what those controls |
| 10:23:28 | 3 | should be for all uses, so it would put proscriptions on |
| 10:23:34 | 4 | where, how big. |
| 10:23:36 | 5 | Q. And why would -- why do you have a concern about allowing |
| 10:23:39 | 6 | firing ranges to go anywhere in the city? |
| 10:23:42 | 7 | A. It really is the control factor.  There is, with any use |
| 10:23:47 | 8 | in the city, there are a number of people that will visit |
| 10:23:50 | 9 | sites by putting controls on.  It puts a proscription on for |
| 10:23:54 | 10 | how many parking spaces should be provided, what sort of |
| 10:23:57 | 11 | safety measures should be put in place as far as setbacks, and |
| 10:24:01 | 12 | screening, you know, as far as how many trees should be put |
| 10:24:08 | 13 | in, sort of, act as a buffer, how tall the facility can be. |
| 10:24:12 | 14 | There are various things that could be put in place when there |
| 10:24:16 | 15 | are restrictions. |
| 10:24:17 | 16 | Q. Okay.  And would you be more concerned if a firing range |
| 10:24:24 | 17 | were mobile as opposed to a traditional brick-and-mortar |
| 10:24:29 | 18 | range? |
| 10:24:29 | 19 | A. There would be no controls in place.  It would give the |
| 10:24:32 | 20 | impression then the range could be put anywhere without |
| 10:24:36 | 21 | knowing what those restrictions were.  It would be sort of |
| 10:24:43 | 22 | null and void that they could put it anywhere at any time |
| 10:24:44 | 23 | without following some sort of guide and could pose a safety |
| 10:24:50 | 24 | issue as well, because there would be no specific rules that |
| 10:24:54 | 25 | it would be following. |

```
01:52:30   1

           2

           3

           4              UNITED STATES DISTRICT COURT
                          NORTHERN DISTRICT OF ILLINOIS
           5                     EASTERN DIVISION

           6

           7   RHONDA EZELL, et al.,          Case No. 1:10-cv-05135

           8     Plaintiffs,                  Chicago, Illinois
                                              October 4, 2010
           9        v.                        Motion for Preliminary
                                              Injunction
          10
               CITY OF CHICAGO,
          11
                 Defendant.
          12   -------------------------------

          13
                                    VOLUME 2-B
          14      TRANSCRIPT OF MOTION FOR PRELIMINARY INJUNCTION
                     BEFORE THE HONORABLE VIRGINIA M. KENDALL
          15               UNITED STATES DISTRICT JUDGE

          16

          17   APPEARANCES:

          18
               For the Plaintiffs:    Gura & Possessky, PLLC
          19                          By:  Alan Gura
                                      101 N. Columbus St., Ste. 405
          20                          Alexandria, VA 22314
                                      (703) 835-9085
          21
                                         - and -
          22
                                      Law Firm of David G. Sigale, P.C.
          23                          By:  David G. Sigale
                                      4300 Commerce Ct., Ste. 300-3
          24                          Lisle, IL 60532
                                      (630) 452-4547
          25
```

```
02:25:29   1         MR. FORTI:  Your Honor, apart from the disparaging
02:25:32   2  comment about hysteria, we'll leave that aside.  Most of the
02:25:35   3  sections that we cite overall talk about the importance of an
02:25:39   4  overall licensing scheme.
02:25:40   5         And if we sort of go back to the big picture here,
02:25:43   6  the training requirement, which is sort of at the root of this
02:25:46   7  litigation, is just one part of that licensing scheme.  So
02:25:50   8  that I think is certainly relevant.
02:25:51   9         We talk about the dangers of open carrying of
02:25:55  10  weapons, based on the relief requested by the plaintiffs.
02:25:58  11  That comes into play.
02:25:59  12         We talk about the risks of loss and theft, due to
02:26:02  13  weapons generally, and the problems of guns outside of the
02:26:06  14  home.  I think the ban on the prohibition on gun dealers in
02:26:10  15  many ways can be analogized to the ban on gun ranges.
02:26:14  16         So long story short, I certainly think it's as
02:26:17  17  relevant, maybe not as favorable, to the plaintiff, but it's
02:26:19  18  as relevant as the sections they are requesting inclusion of.
02:26:22  19         THE COURT:  Okay.  Short reply, Mr. Gura?  Anything?
02:26:25  20         MR. GURA:  Short reply, we don't contest licensing.
02:26:27  21  We don't contest the training requirement even.  And, in fact,
02:26:33  22  the only thing that we object it -- everything we object to is
02:26:36  23  related directly to the operation of a gun range and that's
02:26:40  24  it.
02:26:40  25         So all these other things -- there's discussion in
```

And on the merits issue now, your Honor, as we've argued before, Heller does not answer this question as to whether ranges are protected under the Second Amendment. We think there's no basis in Heller for finding that they are. Heller addressed very different issues than those we have here.

It addressed whether or not the Second Amendment confers an individual right, as opposed to a collective right connected to the militia. It addressed whether or not you have an individual right to possess arms in the home. Those were the two questions that Heller addressed, and it spent a lot of ink addressing those questions.

It was free to spill even more ink talking about shooting ranges had it thought that that was necessary or appropriate, and it did not. In fact, the ink that it did spill was to the end of explaining that, again, courts should take baby steps in these claims. Many forms of regulation are presumptively lawful, and further questions about the scope of the Second Amendment will need to wait 'til another day.

On the issue of the justifications of this ban, your Honor, we think it's clear from the record developed before the City Council that there are ample reasons supporting this particular ban on shooting ranges. Now, although it's not necessary for the City to have those bases established in the legislative record, under the intermediate scrutiny standard

| | | |
|---|---|---|
| 03:23:10 | 1 | or the lesser standards.  And that's clear from the Seventh |
| 03:23:12 | 2 | Circuit cases addressing the Second Amendment, which apply |
| 03:23:17 | 3 | intermediate scrutiny. |
| 03:23:18 | 4 | They bring in all kinds of sources in the course of |
| 03:23:24 | 5 | their analysis that were not before the legislature at the |
| 03:23:27 | 6 | time that the laws were passed.  But here we do have a record |
| 03:23:30 | 7 | before the City Council.  And it's clear if you look at that |
| 03:23:33 | 8 | record in toto that the -- there's one thing to the City's new |
| 03:23:39 | 9 | gun ordinance is that it is in the public safety, health, and |
| 03:23:46 | 10 | welfare to limit the carrying and use of guns outside the |
| 03:23:51 | 11 | home.  That's a very serious problem in Chicago. |
| 03:23:53 | 12 | THE COURT:  Well, what do you believe are the facts |
| 03:23:56 | 13 | that you established that showed that it was dangerous or |
| 03:24:02 | 14 | unhealthy for the gun range to be within your borders? |
| 03:24:08 | 15 | MR. WORSECK:  The testimony before the City Council |
| 03:24:14 | 16 | from a number of different witnesses, and those witnesses are |
| 03:24:18 | 17 | in the excerpts from the Council proceedings that we've |
| 03:24:20 | 18 | submitted to your Honor, talk about the severe problems you |
| 03:24:25 | 19 | have once guns leave the home.  There were witnesses who |
| 03:24:28 | 20 | testified about the dangers of carrying weapons in general. |
| 03:24:31 | 21 | There were witnesses who talked about -- |
| 03:24:34 | 22 | THE COURT:  But aren't they going to leave the home |
| 03:24:37 | 23 | to go across the border to go to Aurora or Oshkosh or wherever |
| 03:24:42 | 24 | they are going to be to be trained? |
| 03:24:44 | 25 | MR. WORSECK:  Well, the reason why it's a special |

```
03:25:53   1   ranges in Chicago --
03:25:54   2            THE COURT:  Well, no, they need to transport their
03:25:57   3   guns, right, in order to go to other --
03:25:58   4            MR. WORSECK:  Well, they would transport them to the
03:26:00   5   suburbs; they wouldn't transport them to a single spot in the
03:26:02   6   city where --
03:26:02   7            THE COURT:  So you're not arguing that the
03:26:04   8   transportation of the gun itself is the harm?
03:26:07   9            MR. WORSECK:  It's a combination.  It's the
03:26:09  10   transportation and the congregating.
03:26:10  11            You heard from --
03:26:11  12            THE COURT:  Well, you can't really argue just the
03:26:14  13   transportation, because they have to leave the city with their
03:26:16  14   guns as it is.
03:26:17  15            MR. WORSECK:  Well, Sergeant Bartoli testified that
03:26:22  16   one of the concerns with gun ranges is theft, and criminals
03:26:25  17   will case out the range and they will take note of the cars
03:26:28  18   coming and going, assume that those cars have weapons in them.
03:26:32  19   So once the patron leaves the range, who knows what's going to
03:26:36  20   happen once they get a few blocks away?  They could --
03:26:39  21            THE COURT:  Based on what?  He didn't give us any
03:26:41  22   examples of that, any studies of that, any incidents that
03:26:44  23   occurred under his watch, right?
03:26:47  24            MR. WORSECK:  I believe he said based on his
03:26:52  25   experience that the theft of arms is a very serious problem in
```