IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRETT BENSON, RAYMOND SLEDGE, KENNETH PACHOLSKI, KATHRYN TYLER, MICHAEL HALL SR., RICK PERE, and the ILLINOIS ASSOCIATION OF FIREARMS RETAILERS, | ) ) ) ) ) ) | No. 10 CV 4184 |
| Plaintiffs, | ) ) | Judge Ronald A. Guzman |
| v. | ) ) | Magistrate Judge Geraldine Soat Brown |
| THE CITY OF CHICAGO and RICHARD M. DALEY, Mayor of the City of Chicago, | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR A**
**<u>PROTECTIVE ORDER</u>**

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William M. Aguiar
Rebecca Alfert Hirsch
City of Chicago Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle Street, Suite 1230, Chicago, IL 60602
(312) 744-9010

# INTRODUCTION

This motion concerns Plaintiffs' Rule 30(b)(6) deposition notice to the City, and the individual depositions of Jody Weis, Superintendent of the Chicago Police Department ("CPD"), Ernest Brown, Acting First Deputy Superintendent of the CPD, and Patricia Scudiero, the City's Zoning Administrator. The portions of the Rule 30(b)(6) notice seeking testimony about the legislative process and history leading to the Ordinance should be quashed. First, Plaintiffs seek the testimony in order to second-guess the legislative record, but the record's weight is not at issue. Indeed, it is not scrutinized at all in Second Amendment cases. Second, any minimal relevance is substantially outweighed by the burden of complying with a request for testimony encompassing the actions and views of 50 Alderman and other City officials. Third, a witness cannot, as a legal matter, purport to testify on behalf of the City Council, a legislative body that speaks only through its legislative acts. Finally, the testimony will intrude into matters protected by the legislative, executive, and/or deliberative process privileges.

The three individual depositions should also be quashed. First, like the Rule 30(b)(6) notice, they seek information about irrelevant matters. Second, even if the testimony is somehow relevant, it is well-established that busy, high-ranking City officials such as these should not be subjected to deposition unless Plaintiffs demonstrate a "real need" for their testimony. This requires at least a showing that alternative methods of discovery are insufficient to obtain the desired information. Plaintiffs have not made that showing here.

# BACKGROUND

Plaintiffs' lawsuit challenges five provisions in the City's firearms Ordinance as violating the Second Amendment: (1) the definition of "home," insofar as it prevents residents from

possessing firearms on certain parts of their property, such as yards and garages; (2) the ban on the sale of firearms; (3) the ban on the operation of shooting ranges; (4) the requirement that no more than one assembled and operable firearm per qualified person be maintained in a home; and (5) the ban on carrying firearms in public.

At the initial status conference in this case, Plaintiffs stated that "[w]e don't believe that any facts are material to the resolution of this dispute" and that only "some very limited targeted discovery" would be necessary to address potential defenses. Exhibit A, at 4. Plaintiffs have since completely changed course and issued: (i) 41 document requests and 8 interrogatories to Defendants (*see* Exhibits B, C, D); (ii) a Rule 30(b)(6) deposition notice to the City, containing 20 deposition topics spanning 5 pages (*see* Exhibit E); and (iii) individual notices of deposition to CPD Superintendent Weis, CPD Acting First Deputy Brown, Zoning Administrator Scudiero, and Daniel Bartoli, a CPD Sergeant. *See* Exhibit F.

To date, Defendants have produced extensive documents and other information in response to this discovery. Importantly, Defendants have produced the duly-constituted legislative record of the City Council proceedings that culminated in enactment of the Ordinance on July 2, 2010. These materials include the transcripts of three days of hearings held by the City Council Committee on Police and Fire in June and July 2010, which themselves contain testimony from over 30 witnesses. The record also contains the studies, data, and written witness statements that were submitted to the Committee during those hearings.

Plaintiffs' vigorous discovery has not been limited to Defendants. Plaintiffs have also served extensive third-party document and deposition discovery against the following witnesses who testified before the Committee: Professor David Hemenway of Harvard University;

Professor Daniel Webster of Johns Hopkins University; Robyn Thomas, Executive Director of the Legal Community Against Violence ("LCAV"); and Juliet Leftwich, LCAV's Legal Director. Plaintiffs have also subpoenaed the Harvard Injury Control Research Center; the Johns Hopkins Center for Gun Policy Research; and the LCAV.[1]

## ARGUMENT

**I.    The Rule 30(b)(6) Deposition Seeks Improper Discovery Of The Legislative Process.**

The City objects to the following topics contained in the Rule 30(b)(6) notice:

- Topic 1: "The position, practices, experiences, and understanding of the City, Mayor Daley, and the City Council, regarding the drafting of the Ordinance, including but not limited to who was involved, what was discussed, whether any other language or alternative regulations were discussed or considered, and the reasons why the text of the Ordinance was selected, including any rational, important, substantial, or compelling reason."

- Topic 2: "The position, practices, experiences, and understanding of the City, Mayor Daley, and the City Council, regarding the legislative process relating to the Ordinance, including but not limited to: (i) the proceedings of the City Council's Police and Fire Committee held on June 18, June 29, and July 1, 2010; (ii) the selection of and communications with witnesses or potential witnesses who the City asked to, or who themselves requested to, appear at the proceedings of the City Council's Police and Fire Committee held on June 18, June 29, and July 1, 2010; (iii) communications between and among City officials involved with the formulation of, drafting of, or negotiations about the Ordinance; (iv) communications between any Alderman (or his or her staff) and the Chicago Police Department regarding the purposes or need for the Ordinance; (v) communications between the Mayor (or his staff) and the Chicago Police Department regarding the purposes or need for the Ordinance; and (vi) communications between anyone involved in drafting the Ordinance and the Chicago Police Department regarding the purposes or need for the Ordinance."

- Topic 4: "The position, practices, experiences, and understanding of the City regarding any less restrictive alternatives that the City considered enacting instead of the Ordinance."

---

[1] A representative sample of these subpoenas is attached as Exhibit G. The federal court in Boston has ruled that Plaintiffs are not entitled to depose Professor David Hemenway. *See* Exhibit H.

4

Further, the City objects to Topics 3, 8, 9, 12, 13, 14 & 15 to the extent that those topics extend to matters contained in the legislative process and history.[2]

These topics make clear that Plaintiffs seek not only to re-open the legislative record, but also to probe matters wholly outside it, which, by definition, did not form the basis for the City Council's action. Both of these tacks are improper, for four reasons. First, the testimony is not relevant to the claims at issue. Second, any minimal relevance is far outweighed by the burden of responding. Third, most of the subject matter cannot, as a legal matter, be attested to by a Rule 30(b)(6) witness. Fourth, the testimony intrudes into matters protected by various privileges.

### A. The history of the legislative process is not relevant.

There is no basis for Plaintiffs' probe into the legislative process. Plaintiffs argue that the discovery may indicate "whether the purposes enunciated in the legislative record are pretextual and whether the legislative record was reliable and objective or was manufactured to point to a certain result." Exhibit K, at 3. However, a statute's validity under the Second Amendment does not turn on how it was passed or on the weight of evidence relied upon by the legislature. Instead, the factors that may be relevant are the nature of the asserted Second Amendment right, how the statute impacts that right, and whether a proper governmental interest sufficiently

---

[2] Topic 3 concerns the governmental purposes served by the Ordinance. Topic 8 concerns the relationship between lawful possession of more than one operable handgun and the commission of crime. Topic 9 concerns the relationship between lawful possession of more than one operable handgun and the incidence of accidental shootings. Topic 12 concerns the relationship between firearms ranges and the incidence of gun-related crime. Topic 13 concerns the relationship between firearms ranges and the incidence of accidental shootings. Topic 14 concerns the relationship between firearms ranges and the proficient and safe handling of firearms. Topic 15 concerns the City's policies and practices regarding firearms training. See Exhibit E, hereto, at 3-6. Should these topics encompass a purpose or basis that is not contained in the legislative history but upon which Defendants will rely in defending this case, Defendants have generally agreed to respond to the extent that the City has specific experience with that purpose or basis, and to the extent that it can produce a competent witness. *See* Exhibit I, at 1-2.

supports the statute. *District of Columbia v. Heller*, 128 S.Ct. 2783 (2008), the seminal Second Amendment case, did not examine the legislative history of the challenged law at all, much less whether that history revealed a proper or reliable basis. Rather, the Court first identified the Second Amendment right at issue, concluding that the Amendment protects "the right to possess a handgun in the home for the purpose of self-defense." *McDonald v. City of Chicago*, 130 S.Ct. 3020, 3050 (2010) (plurality opinion) (discussing *Heller*). The Court then examined the law at issue – the District of Columbia's handgun ban – and found it invalid because of the way it restricted the right. In its operation, it "totally ban[ned] handgun possession in the home." *Heller*, 128 S.Ct. at 2817.

Firearms are lethal devices that kill or injure people in Chicago daily, and their regulation is a grave public safety matter. Not surprisingly, *Heller* hardly suggested that local firearms regulation is based on flippant records that should be second-guessed by courts. Quite the contrary: *Heller* stressed that most firearms regulations are "presumptively lawful," *Heller*, 128 S.Ct. at 2816-17 & n. 26, and that, even as to a regulation ultimately found invalid under the Second Amendment, a city's determination that the regulation is a necessary response to firearms violence is one that should be accorded significant respect. *See id*. at 2822 ("We are aware of the problem of handgun violence in this country, and we take seriously the concerns raised by the many *amici* who believe that prohibition of handgun ownership is a solution."). "*Heller* did not suggest that [a regulation] would be effective only if the statute's benefits are first established by admissible evidence," and a city need not submit "proof, satisfactory to a court, that the exclusion was vital to the public safety." *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (*en banc*).

Similarly, the Seventh Circuit's Second Amendment cases do not tarry with the musings of individual legislators or the content of the legislative record. *See United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010); *United States v. Williams*, 616 F.3d 685 (7th Cir. 2010); *Skoien*, 614 F.3d 638.[3] Even though these cases reviewed the challenged laws under intermediate scrutiny,[4] they did not examine any facet of the legislative process. The Seventh Circuit merely asked whether the regulation was substantially related to an important governmental objective. *See, e.g., Skoien*, 614 F.3d at 641. And, in answering that question in the affirmative, the Seventh Circuit invoked materials (such as data compilations, academic studies, statutes, or history) that were not even part of the legislative record – indeed, that were created *after* the statute was enacted. *See Yancey*, 621 F.3d at 683-687; *Williams*, 616 F.3d at 693-94; *Skoien*, 614 F.3d at 643-44. For instance, in the course of upholding the 1996 federal ban on firearms possession by domestic violence misdemeanants, *Skoien* cited studies from 1997, 1999, 2001-2005, and 2009; at the same time, it did not at all ask whether the enacting Congress had *any* data or evidence before it, much less whether they were reliable or had been tested. *See Skoien*, 614 F.3d at 643-

---

[3] *Yancey*, *Williams*, and *Skoien* addressed whether federal bans on firearms possession by certain categories of people are valid: *Yancey,* 18 U.S.C. § 922(g)(3)'s ban on possession by unlawful users or addicts of controlled substance; *Williams*, 18 U.S.C. § 922(g)(1)'s ban on possession by felons; and *Skoien*,18 U.S.C. § 992(g)(9)'s ban on possession by domestic violence misdemeanants.

[4] Unlike *Yancey*, *Williams*, and *Skoien*, this case does not present a regulation that categorically bans the exercise of the Second Amendment right to possess firearms in the home for self-defense. Rather, it involves mere regulations of the exercise of that right. Accordingly, a lesser form of scrutiny should apply here. Indeed, the Seventh Circuit has explicitly "reserve[d] the question whether a different kind of firearm regulation might require a different approach." *Yancey,* 621 F.3d at 683. *See also Williams*, 616 F.3d at 692; *Skoien*, 614 F.3d at 642. But, even under intermediate scrutiny, it is clear that the instant discovery remains unwarranted, as the Seventh Circuit's Second Amendment intermediate scrutiny cases provide no support whatsoever for inquiry into the legislative process. Nor would such inquiry be warranted under Second Amendment strict scrutiny. *See United States v. Marzzarella*, 614 F.3d. 85, 99 (3rd Cir. 2010) (asking whether provision is "narrowly tailored to serve a compelling state interest," and answering those questions without scrutinizing the legislative process).

44. The formation of the legislative record was entirely beside the point.

Even in the First Amendment context where – unlike here – courts may inquire as to whether evidence is in the legislative record, the review is extremely deferential and does not contemplate scrutiny of the legislative process. For instance, *G.M. Enterprises, Inc. v. Town of St. Joseph*, 350 F.3d 631 (7th Cir. 2003) addressed a First Amendment challenge to ordinances restricting the type of dancing permissible at adult entertainment establishments in order to reduce the negative secondary effects caused by those establishments. In upholding the ordinances under First Amendment intermediate scrutiny, the court explained that legislation survives so long as the legislature considered "some evidence" that was "reasonably believed to be relevant to the problem." *Id.* at 640. The court's task was not "to reweigh the evidence considered by a legislative body," nor was it to "substitute its judgment in regards to whether a regulation will best serve a community." *Id.* at 639-40. Therefore, it did not matter that the plaintiff had been able to attain evidence that "arguably undermin[ed] the Town's inference of the correlation of adult entertainment and adverse secondary effects." *Id.* at 639. "Although this evidence shows that the Board might have reached a different and equally reasonable conclusion regarding the relationship between adverse secondary effects and sexually oriented businesses, it is not sufficient to vitiate the result reached in the Board's legislative process." *Id.*

Further, Plaintiffs' attempt to discover legislative motive is thwarted by the "'familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.'" *DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 828 (7th Cir. 1999) (quoting *United States v. O'Brien*, 391 U.S. 367, 383 (1968)). *See also*, *e.g.*, *United States v. Soderna*, 82 F.3d 1370, 1375 (7th Cir. 1996) ("We should not lightly

8

impugn the motives of legislators."); *D.G. Restaurant Corp. v. City of Myrtle Beach*, 953 F.2d 140, 146 (4th Cir. 1992). This rule applies even when fundamental rights are implicated, such as the First Amendment's free speech guarantee. *See DiMa Corp.*, 185 F.3d at 828; *Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 100 F.3d 1287, 1293 (7th Cir. 1996).[5]

      Courts are loathe to examine legislative motive for numerous reasons. First, "the text of the Constitution prohibits many government actions but makes no mention of governmental *mentes reae* (*i.e.*, guilty minds)." *Grossbaum*, 100 F.3d at 1293. *See also DiMa Corp.*, 185 F.3d at 828-29 ("The language of the First Amendment does not put us into the business of invalidating laws by reason of the evil motives of their authors.") (citation omitted). Second, it is virtually impossible to discern a common legislative motive. "Government actions may be taken for a multiplicity of reasons, and any number of people may be involved in authorizing the action." *Grossbaum*, 100 F.3d at 1293. Finally, it is "an exercise in futility" to strike down a law based on improper motive because the legislature could simply reenact the same law so long as the legislators kept their improper motive under wraps. *DiMa Corp.*, 185 F.3d at 829.

      In sum, because the purposes for which Plaintiffs seek discovery into the legislative process and history – to second-guess the bases and motives for the City Council's legislative enactment – are not relevant to Second Amendment analysis, there is no basis for the desired

---

[5] To be sure, there is a small handful of claims – such as First Amendment retaliation and Equal Protection – where legislative motive can be relevant. *See Grossbaum*, 100 F.3d at 1292-93. This is because motive is an element of those claims. *See*, *e.g.*, *Miller v. Johnson*, 515 U.S. 900, 916 (1995) (racial gerrymandering equal protection claim required showing that "race was the predominant factor motivating the legislature's decision"); *Loesel v. City of Frankenmuth*, 2010 WL 3842369, at *14 (E.D. Mich. Sept. 27, 2010) ("class of one" equal protection claim "involves and even requires a factual inquiry into motivation"). This case raises no such claim. As discussed above, legislative motive is not an element of, or otherwise pertinent to, Second Amendment claims.

9

testimony, and it should be quashed. *See City of Las Vegas v. Foley*, 747 F.2d 1294 (9th Cir. 1984) (directing district court, via writ of mandamus, to grant protective order quashing depositions of city officials seeking their legislative motives); *National Paint and Coatings Ass'n v. City of Chicago*, 147 F.R.D. 184, 185 (N.D. Ill. 1993) (quashing depositions seeking individual motivations of city council members).

      **B.**     **Producing the Rule 30(b)(6) testimony is unduly burdensome.**

Discovery into the legislative process should be quashed for a second reason. The City has 50 Aldermen and numerous other officials and employees within its executive departments, such as the CPD, potentially connected to passage of the Ordinance. Each individual had his or her own communications or understandings regarding the bases or purposes of the Ordinance, the utility of particular provisions, or the selection of particular language. It is therefore simply not possible to prepare and produce a Rule 30(b)(6) witness, or even a handful of witnesses, who could competently cover the process and discussions associated with the Ordinance. In reality, each such person would have to be produced separately.

This would be an immense burden on the City, one that far outweighs any potential relevance of the desired testimony. On the other hand, the detriment to Plaintiffs from quashing the testimony is minimal, if it exists at all. As noted above, Defendants have produced the duly-constituted legislative record to Plaintiffs. Plaintiffs therefore know which facts, studies, and other evidence was and was not before the City Council, as well as any alternative regulations or drafting language considered by the City Council. In particular, the testimony and data advanced by the academics who appeared before the Council – Professor Hemenway of Harvard University, Professor Ludwig of the University of Chicago, Professor Webster of Johns Hopkins

University – are fully known to Plaintiffs. If Plaintiffs believe that the evidence is faulty, they are free to attack it by submitting their own data or expert testimony.

      **C.**     **Producing the Rule 30(b)(6) testimony is legally impractical.**

A third reason for quashing the discovery is that it seeks testimony regarding the decisions of the City Council, a collective entity that acts and speaks through legislation. No single Alderman (or any other individual) possesses the authority to act or speak for the City Council; rather, that authority is possessed and exercised by the City Council as a whole. *See Rasche v. Village of Beecher,* 336 F.3d 588, 601 (7th Cir. 2003); *Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992). Accordingly, the City cannot produce a witness who can purport to testify as to the City Council's understanding of the Ordinance, its bases for enacting it, its assessment of the evidence before it, or its decision to choose particular regulatory language. *See United States v. Mitra*, 405 F.3d 492, 495 (7th Cir. 2005) (a public body is a "'they' not an 'it'; a committee lacks a brain (or, rather, has so many brains with so many different objectives that it is almost facetious to impute a joint goal or purpose to the collectivity")); *Grossbaum*, 100 F.3d at 1293. Those matters must be gleaned from the statutory text and the duly-constituted legislative record.

      **D.**     **The Rule 30(b)(6) testimony would intrude into privileged matters.**

Finally, the Rule 30(b)(6) testimony should be quashed because it will largely, if not wholly, encompass discussions and matters protected by legislative privilege, *see, e.g., Bogan v. Scott-Harris*, 523 U.S. 44 (1998); *Biblia Abierta v. Banks*, 129 F.3d 899 (7th Cir. 1997); *Laurel Park Community, LLC v. City of Tumwater*, 2010 WL 1474073 (W.D. Wash. 2010), or the executive and/or deliberative process privileges. *See United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993); *Hongsermeier v. Commissioner of Internal Rev.*, __ F.3d __, 2010 WL 3420157,

at *11 (9th Cir. Sept. 2010). Should the Court permit the Rule 30(b)(6) testimony to go forward, the City reserves the right to assert these privileges and any other applicable privilege (such as the attorney-client privilege or work-product doctrine) as objections to particular questions.

## II.     The Depositions of Busy, High-Ranking City Officials Should Be Quashed.

Defendants also seek a protective order quashing the individual depositions of Jody Weis, the CPD Superintendent; Ernest Brown, the First Deputy Superintendent of CPD; and Patricia Scudiero, the City's Zoning Administrator. These are very busy, high-ranking City officials charged with administering City functions (police and zoning) crucial to public safety and welfare. "[H]igh ranking government officials have greater duties and time constraints than other witnesses," and courts should take care to "protect officials from the constant distraction of testifying in lawsuits." *In re United States*, 985 F.2d 510, 512 (11th Cir. 1991). Accordingly, these individuals should not be subjected to deposition unless Plaintiffs can demonstrate a "real need" for their testimony. *Olivieri v. Rodriguez*, 122 F.3d 406, 409 (7th Cir. 1997).[6] In *Oliveri*, the Seventh Circuit affirmed the district court's refusal "to permit the plaintiff to depose the defendant [the CPD Superintendent] until the plaintiff submitted written interrogatories the answers to which would indicate whether deposing the defendant would serve a useful purpose." *Id.* The Seventh Circuit noted that "the superintendent of the Chicago police is a busy official

---

[6] *See also Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) ("top executive department officials should not, absent extraordinary circumstances, be called to testify or deposed regarding their reasons for taking official action"); *In re FDIC*, 58 F.3d 1055, 1062 (5th Cir. 1995) (district court erred in denying motion to quash deposition of three senior FDIC officials without first determining whether exceptional circumstances justified the depositions); *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) ("In order to protect officials from the constant distraction of testifying in lawsuits, courts have required that [a party] show a special need or situation compelling such testimony."); *In re Office of Inspector General,* 933 F.2d 276, 278 (5th Cir. 1991) (district courts must "remain mindful of the fact that exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted.").

who should not be taken away from his work to spend hours or days answering lawyer's questions unless there is a real need." *Id.* The Seventh Circuit further indicated that these concerns amply established the "good cause" required for a protective order and that "judges are to be commended rather than criticized for keeping tight reins on [discovery]." *Id.*

A "real need" does not exist when the information sought can be obtained through other discovery methods. Indeed, the Federal Rules expressly contemplate the use of alternative forms of discovery when the form initially tendered proves too burdensome. *See* Fed. R. Civ. P. 26(b)(2)(C); Fed. R. Civ. P. 26(c)(1)(C). Accordingly, in *Bogan v. City of Boston*, 489 F.3d 417 (1st Cir. 2007), the First Circuit affirmed a protective order barring the deposition of Boston's mayor because the plaintiffs "did not pursue other sources to obtain relevant information before turning to the Mayor." *Id.* at 424. *See also, e.g., Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681-82 (7th Cir. 2002) (plaintiff not entitled to depose high-ranking corporate executive where plaintiff failed to first tender interrogatories); *Marisol A. v. Giuliani*, 1998 WL 132810 (S.D.N.Y. Mar. 23, 1998), at *4 (quashing deposition where information sought "can be obtained through other sources" so as to relieve the "undue burden on an official who already has large demands on his time").

Plaintiffs have failed to demonstrate a real need for these depositions. As to Superintendent Weis and First Deputy Superintendent Brown, Plaintiffs argue their depositions are necessary because they testified at the City Council hearings regarding the Ordinance and "offered numerous facts as well as positions on the meaning of those facts." Exhibit J hereto, at 6. This falls far short of the necessary showing. First, to the extent that Plaintiffs seek the depositions simply because these two witnesses testified at a legislative hearing, that reason is

insufficient. As discussed above, discovery into the legislative process is unwarranted in this case. Moreover, their legislative testimony, including the data, statistics, and studies relied upon, has been produced to Plaintiffs. Any new information Plaintiffs would gain via deposition would not – by definition – be part of the legislative record that resulted in the Ordinance. It could not shed any light on the motives or conclusions of the City Council in passing the Ordinance, and would therefore be irrelevant for this independent reason.

Second, and more important, Plaintiffs have not even identified which information they are seeking from Superintendent Weis and First Deputy Brown via deposition, much less show that they cannot obtain the information from other sources or through other discovery tools, such as document requests, interrogatories, or a Rule 30(b)(6) deposition. Indeed, Plaintiffs concede that these tools can be used here, as they have served document requests expressly seeking information relating to facts contained in the Superintendent and First Deputy's legislative testimony. For instance, they seek all documents relating to the Superintendent's statement to the City Council that "One operable firearm is all a person should need for self-defense. This rule does not burden the right to self-defense. Allowing multiple operable guns per home increases the risk of non-self-defense related injuries and death from firearms." *See* Exhibit D, at 9-10 (RFP Nos. 35 & 36). They also seek all documents relating to First Deputy Brown's statement that "[t]he risk of misuse or intimidation is very high when guns are carried in public." *See id.* at 10-11 (RFP Nos. 38 & 39). Plaintiffs have also served voluminous document requests and interrogatories seeking numerous categories of CPD data, statistics, and other information, including: information concerning the type and location of various crimes committed in the City (RFP Nos. 5 & 6); the number of handguns possessed in Chicago by civilians (RFP No. 11); and

14

the number of firearm and handgun-related crimes committed in homes by non-invitees (RFP Nos. 18 & 19). *See* Exhibit B, at 10-13.

As to Zoning Administrator Scudiero, Plaintiffs assert a need for testimony about "the Zoning Ordinance and its relationship to 'gun ranges' generally." Exhibit J, at 7. Even if relevant, information about the operation of the City's Zoning Ordinance and how it bears upon gun ranges can be obtained in many ways short of deposing the Zoning Administrator, such as via interrogatory, or via deposition of someone else. Indeed, Topic 16 of the Rule 30(b)(6) notice seeks testimony about "the relationship between (i) the City's zoning laws and/or practices and (ii) firearms ranges and/or businesses selling firearms." Exhibit E, at 6. The City's tendering of a witness in response to this topic would eliminate the need to depose the Zoning Administrator.

## **CONCLUSION**

WHEREFORE, for the reasons stated above and in Defendants' Motion, Defendants respectfully request that the Court enter an order: (1) quashing Topics 1, 2 & 4 of Plaintiffs' Rule 30(b)(6) deposition notice, and Topics 3, 8, 9, 12, 13, 14 & 15 to the extent that those topics extend to matters contained in the legislative process and history; and (2) quashing the depositions of Jody Weis, Ernest Brown, and Patricia Scudiero.

Dated: January 7, 2010.                    Respectfully submitted,

                                                MARA S. GEORGES
                                                CORPORATION COUNSEL
                                                CITY OF CHICAGO


                                     BY:    /s/ Andrew Worseck
                                                    One of Its Attorneys


Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William M. Aguiar
Rebecca Alfert Hirsch
Constitutional & Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, IL 60602
(312) 744-9010