# Exhibit A

1

| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| | FOR THE NORTHERN DISTRICT OF ILLINOIS |
| 2 | EASTERN DIVISION |

```
 3   BRETT BENSON, RAYMOND SLEDGE,    )
     KENNETH PACHOLSKI, KATHRYN       )
 4   TYLER, MICHAEL HALL, SR., RICK   )
     PERE, and the ILLINOIS           )
 5   ASSOCIATION OF FIREARMS          )
     RETAILERS,                       )
 6                                    )
                  Plaintiffs,         )
 7                                    )
       v.                             )   No. 10 C 4184
 8                                    )
     THE CITY OF CHICAGO and          )
 9   RICHARD M. DALEY, Mayor of the   )
     City of Chicago,                 )   Chicago, Illinois
10                                    )   September 1, 2010
                  Defendants.         )   9:30 a.m.
11
                     TRANSCRIPT OF PROCEEDINGS
12           BEFORE THE HONORABLE RONALD A. GUZMAN

13
     APPEARANCES:
14
     For the Plaintiffs:       COOPER & KIRK, PLLC
15                             BY:  MR. DAVID HENRY THOMPSON
                                    MR. JESSE MICHAEL PANUCCIO
16                             1523 New Hampshire Avenue, N.W.
                               Washington, DC  20036
17                             (202) 220-9600

18                             BRENNER, FORD, MONROE & SCOTT, LTD.
                               BY:  MR. STEPHEN A. KOLODZIEJ
19                             33 North Dearborn Street
                               Suite 300
20                             Chicago, Illinois  60602
                               (312) 781-1970
21
     For the Defendants:       CITY OF CHICAGO
22                             DEPARTMENT OF LAW
                               BY:  MR. MICHAEL A. FORTI
23                                  MS. REBECCA ALFERT HIRSCH
                               30 North LaSalle Street
24                             Suite 1230
                               Chicago, Illinois  60602
25                             (312) 744-9010
```

2

1   APPEARANCES:   (Continued)

2   ALSO PRESENT:

3   For the Ezell                  GURA & POSSESSKY, PLLC
    Plaintiffs:                    BY:  MR. ALAN GURA
4                                  101 North Columbus Street
                                   Suite 405
5                                  Alexandria, Virginia  22314
                                   (713) 835-9085

6
                                   LAW FIRM OF DAVID G. SIGALE, P.C.
7                                  BY:  MR. DAVID G. SIGALE
                                   4300 Commerce Court
8                                  Suite 300-3
                                   Lisle, Illinois  60532
9                                  (630) 452-4547

10
    Court Reporter:                NANCY C. LaBELLA, CSR, RMR, CRR
11                                 Official Court Reporter
                                   219 South Dearborn Street
12                                 Room 1222
                                   Chicago, Illinois  60604
13                                 (312) 435-6890
                                   Nancy_LaBella@ilnd.uscourts.gov

14

15

16

17

18

19

20

21

22

23

24

25

3

1    (Proceedings heard in open court:)

2          THE CLERK:  10 C 4184, Benson v. The City of Chicago.

3          MR. FORTI:  Good morning, your Honor.  Michael Forti

4    on behalf of the defendants.

5          MS. HIRSCH:  Rebecca Hirsch on behalf of the

6    defendants.

7          MR. THOMPSON:  Good morning, your Honor.  David

8    Thompson on behalf of the Benson plaintiffs.

9          MR. GURA:  Good morning, your Honor.  Alan Gura on

10   behalf of the Ezell plaintiffs.

11         MR. PANUCCIO:  Good morning, your Honor.  Jesse

12   Panuccio on behalf of the Benson plaintiffs.

13         MR. KOLODZIEJ:  Stephen Kolodziej, local counsel for

14   the Benson plaintiffs.

15         MR. SIGALE:  Good morning, your Honor.  David Sigale

16   on behalf of the Ezell plaintiffs.

17         THE COURT:  Good morning, gentlemen -- I'm sorry --

18   gentlemen and lady.

19         What do we have?

20         MR. FORTI:  Your Honor, we're before you for two

21   separate reasons.  First, the City defendants in both cases

22   have filed a motion for leave to file an opening memorandum in

23   support of their previously filed motion to transfer the Ezell

24   case to this Court based on relatedness; and, as part of that

25   same motion, to expedite the briefing schedule which the Court

4

1    set.  That's the first item of business.

2         The second item of business is the previously

3    scheduled status that this Court set in the Benson case, which

4    is before you, and we're before you on that status.  The

5    parties, consistent with your rules, have filed their proposed

6    discovery schedule.

7         THE COURT:  I didn't really understand the discovery

8    schedule that was proposed very well.  What is your proposed

9    discovery schedule in this case?

10        MR. THOMPSON:  Well, your Honor, as the plaintiffs,

11   the Benson plaintiffs, we believe that the disputes in this

12   case are predominantly legal.  We don't believe that any facts

13   are material to the resolution of this dispute.  We do

14   anticipate some defenses that the City of Chicago may make

15   with respect to at least some of the counts that we think may

16   warrant some very limited targeted discovery.  And so we

17   proposed a two-and-a-half-month period in which to conduct

18   targeted limited fact discovery.  But we believe --

19        THE COURT:  Do you agree with that?

20        MR. FORTI:  As you might expect, your Honor, no.

21   Although we're interested in moving both cases along -- and I

22   want to remind all that we've only been served with the

23   amended complaint and the original complaint in August, so

24   we're only talking about two weeks being out.  We're willing

25   to move forward on discovery in both Benson and Ezell; but as

5

1    we say in our submission -- in our joint submission -- we

2    think the first order of business to proceed in an orderly

3    fashion on the important issues presented by both complaints

4    is to first decide that both the Benson and Ezell cases are

5    properly before you; and that's why we have quickly moved and

6    filed our 40.4 motion.

7         THE COURT:  I'm not sure that that's necessarily a

8    conclusion I'll come to.  As I understand it, there have

9    already been rulings made in the case before Judge Kendall;

10   have there not?

11        MR. FORTI:  There was only one ruling, and that was a

12   denial of the TRO.

13        THE COURT:  Based upon what?

14        MR. FORTI:  I'm sorry?

15        THE COURT:  Based upon the finding of what?

16        MR. FORTI:  Finding of the lack of irreparable harm.

17        THE COURT:  A pretty substantial factual finding,

18   isn't it?

19        MR. FORTI:  It's a very helpful finding that would be

20   useful for this Court in a case that the exact same count is

21   presented in the lower-filed case.

22        Rather than -- if I may, Judge -- as we lay out in

23   our motion as well as our supporting memorandum for which we

24   seek leave to file, we believe that an orderly process is

25   important here rather than moving on a preliminary injunction

6

1   in front of Judge Kendall with the risk of two different

2   courts reaching disparate decisions on the exact same issue,

3   namely whether or not it is constitutional for the City to ban

4   firing ranges within the City.  Rather than create that

5   potential conflict, we think a prompt ruling on our 40.4

6   motion is the best way to avoid that kind of confusion.  And

7   it's completely consistent with the elements of 40.4, which,

8   to date, the other side has indicated why -- for some reason

9   that they're opposed to a finding of relatedness but have not

10  made any attempt to lay out how 40.4 applies to the facts of

11  this case.

12          THE COURT:  Well, I see one problem with bringing the

13  cases together right away, which is that they're not in step

14  with each other.  Judge Kendall has already moved way ahead

15  and already determined, I suspect, one of the issues that

16  would be before me.

17          MR. FORTI:  Your Honor, with all due respect, let's

18  first remember that this was a TRO, not any ultimate finding

19  of fact.

20          THE COURT:  Sure.  But when did she schedule the

21  preliminary injunction hearing for?

22          MR. FORTI:  She scheduled the hearing for October 1.

23  Rather -- and our position is -- and I think rightly so -- is

24  that just exacerbates the problem of now having Judge Kendall

25  not only rule on a TRO decision, which was in favor of the

1   City, but to go further and rule on a preliminary injunction

2   and have the possibility then of a decision from her court and

3   then inconsistent decisions and you being forced to address

4   the very same issue.

5          I don't know of a single case, Judge, looking at

6   40.4, where, at the time that the motion for relatedness has

7   been filed, that the defendants have not even answered the

8   complaint, that any court has said that simply because a TRO

9   motion has been filed -- and I can get into the timing of that

10  if we want -- but I know of no case which says that simply

11  because a TRO has been filed, that somehow that case is

12  farther advanced.  And, in fact, I would bring the Court's --

13         THE COURT:  It is though, isn't it?

14         MR. FORTI:  -- attention to your case, to a case --

15  I'm sorry?

16         THE COURT:  It is further advanced though, isn't it?

17         MR. FORTI:  But it's not materially advanced.  And,

18  in fact, Judge, in cases that you've decided on relatedness

19  where discovery is far advanced --

20         THE COURT:  Oh, that's not fair.

21         MR. FORTI:  Judge, I have to do my job.

22         THE COURT:  All right.  Go ahead.

23         MR. FORTI:  I want to point out that in cases that

24  you've considered where discovery is far advanced, where we're

25  not at the beginning stages -- I don't know how anyone could

8

1   accurately characterize these two cases as at their inception,

2   where it's been less than two weeks since the amended

3   complaint and the Ezell complaint have been filed.  It

4   would -- it would confound me to conclude anything but that

5   these cases are at their inception.

6          And if you look at the rule under 40.(b)(2) [sic],

7   it's clear to me at least under -- under (3), that the cases

8   have not progressed to a point where it would not be in the

9   interest of justice to find relatedness.

10         Now, let's be candid here, because I think we all

11  know what's happening.  I think the plaintiffs in the Ezell

12  case, which could certainly get their day in court before this

13  Court, are orchestrating a plan by which they're trying to get

14  more and more decisions out of Judge Kendall; and that may be

15  to their benefit.  But I would submit, respectfully, it's

16  inconsistent with 40.4; and it will lead to problems of you

17  coming back to us -- first, it puts the defendant in the

18  awkward position of being in two different courtrooms at the

19  same time.  And more importantly, I think, underlying 40.4,

20  the question is -- and I believe this is the central question

21  in this very simple case -- is why should two courts consider

22  the legality of the same provision.

23         If you look at what Judge Shadur did in the prior gun

24  litigation -- and it's attached to our memorandum in

25  support -- there, there were different ordinances, the

1    ordinance for Oak Park and the ordinance for Chicago.

2    Nevertheless, that's a more difficult case.  Judge Shadur had

3    no problem deciding in three days that the cases were related.

4    Here, what we're talking --

5             THE COURT:  He's very quick.

6             MR. FORTI:  Well, I'm sure you can be very quick too,

7    Judge, when you see the issues at hand.  And we're just asking

8    for an orderly procedure here.  And we came to you first on

9    our motion to expedite because, number one, you were unaware

10   of the aggressive schedule that Judge Kendall set.  And we're

11   not complaining about that schedule before you because you

12   don't have that case.  But we think where our motion was filed

13   on August 20th and the parties on the other side have had

14   opportunities to express their positions, it is not

15   unreasonable to ask them to accelerate their responses so that

16   we can -- so that you can rule.  And you may rule in the

17   City's favor; you may not rule in the City's favor; but I

18   think a prompt decision there is the first order of business.

19            And that's why we gave -- going back to your original

20   question -- that's why we gave the answers we did in the

21   discovery plan, because I don't think you can come up with a

22   cohesive discovery plan unless you consider that you have

23   multiple cases, if you decide that you have two cases in front

24   of you rather than one.

25            THE COURT:  Well, if the cases are so related that

10

1  they belong together, I don't see how moving forward on

2  discovery in one case is going to in any way conflict with

3  doing discovery in the other case.  You're going to be

4  discovering the same facts, the same issues.  It's all going

5  to meld together.

6        The problem here is that for some reason -- and this

7  is the second case today -- the parties before Judge Kendall

8  have moved aggressively for a TRO.  There's been no TRO

9  request in this case, has there?

10        MR. THOMPSON:  No, your Honor.

11        THE COURT:  So why not?  I mean, why a TRO before

12  Judge Kendall and not before me if the cases are, in fact,

13  pretty much the same?

14        MR. THOMPSON:  Well, your Honor, I can't speak for

15  Mr. Gura and why he did file a TRO, but our view was that the

16  best profile, much like in the prior case where your Honor was

17  suggesting that these legal issues are dispositive and can be

18  wrapped up in one summary judgment package for the Seventh

19  Circuit, that's the way -- we believe it's the best profile to

20  move expeditiously towards summary judgment and send this to

21  the Court of Appeals.  That's the reason we did not file for a

22  preliminary injunction, although we agree with the Ezell

23  plaintiffs that they are suffering irreparable injury; and we

24  believe our clients are suffering irreparable injury and we

25  could file for a preliminary injunction.

11

1          THE COURT:  See, there's the problem.  The parties

2     have taken a fundamentally different approach to both of these

3     cases.

4          MR. FORTI:  Your Honor, with all due respect, I would

5     disagree.  There is a question of -- there is a strategic

6     difference between the parties in terms of whether they sought

7     a TRO.  But the ultimate relief is what we need to be focused

8     on; and, that is, plain and simple, whether or not it is

9     constitutional or not for the City to ban firing ranges.  It's

10     the same provision.

11          THE COURT:  Well, I understand that.  But now how do

12     I resolve the fact that if I join these two cases, I'm going

13     to have one set of plaintiffs moving on this slow and steady

14     track and the other set of plaintiffs in the very same related

15     case that's now before me moving on a fast track wanting to

16     get things done right away and get issues actually ruled upon

17     immediately?  How do I balance -- what do I do with those two

18     approaches?

19          MR. FORTI:  Your Honor, let me first begin by

20     pointing out that under the rule and the case law that we have

21     cited to you, these cases underscore the fact that this is a

22     finding of relatedness, not a finding of consolidation.  And

23     to date, no one has moved for consolidation.  So there's a

24     recognition that there may be -- there may be different

25     tracks, and we're not opposed if there is merit to the

12

1    argument.

2         But let's talk specifically about the fact that one

3    of these defendants -- one of these plaintiffs is moving for a

4    preliminary injunction and the other one isn't.  Our

5    suggestion would be -- and I think this is the most -- the

6    most appropriate way to proceed under the rules, which is to

7    find the cases as relatedness, then entertain Mr. Gura's

8    motion for a preliminary injunction.

9         Now, we may take issue with whether the schedule that

10   Judge Kendall set is appropriate, but the first order of

11   business is to say I at least have two cases in front of me.

12   That's far preferable than, number one, the City taking

13   different positions in different courtrooms; and every time we

14   appear in front of you, you say to us, well, what's happening

15   in Judge Kendall's courtroom.  That makes no sense.

16        THE COURT:  Well, you can be pretty sure I won't do

17   that.  I can promise you that, if indeed the cases should

18   remain separate.

19        Clearly there's a close relation on the ultimate

20   issues posed by both of these cases.

21        MR. GURA:  Your Honor, we --

22        THE COURT:  Just as clearly, the processes by which

23   the plaintiffs are approaching their cases are clearly

24   different in both of these cases.  Let me just leave that

25   aside for a second because I get the feeling that we're

1   letting the tail wag the dog here.

2         What I have before me right now is one case.  And as

3   to that case, what do you see in terms of discovery?  I mean,

4   I perused the filings and it seems to me there are substantial

5   issues of fact --

6         MR. FORTI:  We would agree.

7         THE COURT:  -- to do discovery in this case.  I mean,

8   all of the factual issues surrounding shooting galleries and

9   practice ranges and so on, the effects they have on

10  neighborhoods, the safety issues, I mean, everything up to and

11  including, I guess, traffic flow, police protection issues,

12  all of these things, it seems to me, are facts that lawyers in

13  these, quote, constitutional, unquote, constitutional cases

14  often seem to skip right over to the detriment of the case as

15  it gets decided on down the line.

16        MR. THOMPSON:  Well, your Honor, if I may speak to

17  that?

18        THE COURT:  Yes.

19        MR. THOMPSON:  The record is very clear here that

20  this was a rush to judgment by the City of Chicago in the

21  aftermath of the McDonald decision.  And none of this --

22        THE COURT:  And what --

23        MR. THOMPSON:  None of this --

24        THE COURT:  I don't think that the motive for the

25  City's actions is the most important factor here, is it?

1   Isn't the most important thing to consider is whether or not

2   what they're doing is, in fact, reasonable?  Are there

3   reasonably related public safety issues?  Are there other

4   concerns that actually bear inspection, rather than what

5   somebody's momentary motivation was for moving the legislation

6   forward?

7          MR. THOMPSON:  Well, your Honor, under the heightened

8   scrutiny in the case that -- the Supreme Court has been clear

9   that the defendant cannot ex post invent for litigation

10  justifications and rationales --

11         THE COURT:  That's true.

12         MR. THOMPSON:  -- on a record that was not there.

13         THE COURT:  I agree.

14         MR. THOMPSON:  And there's nothing in the record

15  here.  The legislative record is devoid of any support for

16  these laws.

17         MR. FORTI:  Your Honor, we --

18         THE COURT:  That, I don't know.  That's what I don't

19  know, what facts were out there, what studies have been done.

20  All of those things are things that I have no idea about.  And

21  are not those issues that we need to nail down before we

22  proceed to the actual adjudication?

23         MR. THOMPSON:  And that's why we proposed a 75-day

24  period for fact discovery.  We understood that even though we

25  have our legal position, the City of Chicago would have a

1    different view.

2         MR. FORTI:  Your Honor, I only will embellish what

3    you've already said.  We think that there are important legal

4    issues.  But if the City is going to lodge a proper defense of

5    why it's passed what we consider to be reasonable gun

6    regulations, regulations which, by the way, we think can meet

7    the appropriate standard, and we don't have to reach that

8    question today either.  That's going to be an interesting

9    legal point for you to decide.  Again, better that one judge

10   rather than two start weighing in on that decision.  But in

11   the end, we think there are factual issues and you've

12   identified some of them.

13        Let me also just quickly say that -- perhaps

14   unbeknownst to plaintiffs' counsel -- that there were three

15   days of testimony before the City council before the City

16   enacted the responsible gun law.  So there is a record.

17        THE COURT:  I don't know what's happened since the

18   Supreme Court opinion and so on.  But I do know, having been

19   here for many, many years, that the City has been considering

20   gun legislation and the appropriate ways to restrict or

21   control gun ownership, possession and usage for years and

22   years and years.  And I guess it's difficult for me, given

23   that background, to conclude without more, without a

24   presentation of actual facts, that any legislation the City

25   passes is a knee-jerk reaction to anything.  This issue has

16

1   been before the City in the newspapers and in public

2   discussion and in a thousand different ways since I can

3   remember.

4        MR. FORTI:  That's absolutely right.

5        THE COURT:  If you go home tonight, you'll hear the

6   issue again.  It will come out in some report that somebody

7   else has been shot and somebody will say something about the

8   guns on the streets.  So the debate about whether, to what

9   extent and in what manner guns should be controlled in the

10  City of Chicago is long-standing and has a long history, all

11  of which I suspect would be of some significant relevance in

12  the issues that are going to be presented in this case.  And I

13  don't know that that's something that you can discover in 75

14  days.

15       Here's what I'm going to do:  We will rule on this

16  question of relatedness as best we can.  But I don't intend to

17  hold up moving forward in this case on that issue.  It's just

18  a matter of reality, a matter of fact, that the plaintiffs in

19  these two cases have moved in different ways, maybe towards

20  the same object, but on different paths.  And to the extent

21  that that causes some overlap and some inconvenience, it just

22  can't be helped.

23       How much time do you need to respond to the motion

24  for relatedness?

25       MR. GURA:  If I may address that, your Honor?

1          THE COURT:  Yes.

2          MR. GURA:  Alan Gura, counsel for the Ezell

3     plaintiffs.

4          We received notice that today we would be arguing the

5     City's motion to expedite the briefing schedule, not that this

6     would be a hearing on the relatedness motion itself, which we

7     are not fully prepared to argue.  We would like the

8     opportunity to brief it.  Your Honor --

9          THE COURT:  That's what I just asked you.  How much

10    time do you need?

11         MR. GURA:  I would like to have until October the

12    4th.  And the reason, your Honor, is this:  When your Honor

13    decided that we would have until September the 15th to brief,

14    the schedule, that was prior to the City's decision to file

15    another brief on the matter.  So now we actually have more

16    things to do.

17         Beyond that, your Honor should know that in the Ezell

18    case, we have been served over the last two days with 11

19    notices of deposition to take place between now and September

20    the 13th.

21         THE COURT:  You asked for the TRO and the preliminary

22    injunction.

23         MR. GURA:  Oh, we did.  And we're happy to comply.

24         THE COURT:  Well, then don't complain about it to me.

25         MR. GURA:  I'm not complaining about it.  In fact,

18

1    we're very eager to move forward with it quickly.

2            THE COURT:  Good.

3            MR. GURA:  In fact, Judge Kendall expedited the

4    preliminary injunction motion because she's spent a lot of

5    judicial resources considering this already.  And one of the

6    things that probably concern her was the fact that there are

7    deadlines that the City has imposed on the general public to

8    obtain range training by October 12 for people who want to

9    take care of the -- of the grandfathering period.  And then

10   people who are existing registrants, their certificates --

11   under the old law, their registration certificates are good;

12   but as they expire, they need to obtain range training.  And,

13   of course, the City has banned ranges.

14           And so part of our irreparable harm argument is that

15   starting on October 12th, we're going to have people losing

16   their rights.  And so what we have done in the Ezell case is

17   we have arranged for the provision of mobile range training

18   facilities in the City of Chicago to come in here.

19           The reason the TRO was denied as -- as I heard it and

20   as I read the transcript, your Honor, is because Judge Kendall

21   was concerned that we would not have the facilities in place

22   in time for the TRO and -- but then she accelerated the

23   preliminary injunction.  So, of course, we're going to move

24   forward.  We have filed these preliminary injunction motions

25   because we believe we have irreparable harm.  Judge Kendall

1   has expended a great deal of judicial resources on it.

2   Regardless of what Judge Kendall does with our motion, this

3   Court would still eventually hear the relatedness motion.

4   There's nothing we can do to prevent that.  All we ask for is

5   a humane briefing schedule.

6          And considering the other things that my co-counsel

7   and I have going this month that I submitted in my declaration

8   and Mr. Sigale's declaration, we think that it is extreme to

9   come in and say, well, you had the 15th before we filed the

10  brief; now that we filed the brief and that we've noticed all

11  this discovery, we should -- think your time would be cut in

12  half.

13         So, respectfully, we would ask at a minimum, your

14  Honor, please, let's at least retain September the 15th,

15  although we would respectfully ask for October the 4th.

16         The Court should know, I have taken steps to try to

17  arrange to move some of my other deadlines that I've declared

18  to.  It looks like I might be able to do some of those.  But

19  there's nothing I can do about my D.C. circuit briefs that are

20  due.  There's nothing I can do, of course, about the Supreme

21  Court amicus brief I have to do.  There's nothing I can do

22  about the CLE speaking engagement I have to do on the 16th.

23  And there's nothing I can do really about my court appearance

24  in New York on the 7th.  And so -- and, of course, the 6th is

25  Labor Day and the 9th is Rosh Hashanah.

20

1      So we're working very hard here, but I think the 15th

2 is just barely doable.  I would really like to have until the

3 4th.

4      THE COURT:  I notice we've set no reply, and I think

5 that's probably a good thing.  We're going to stick with

6 September 15th.  I don't see any reason -- I understand you're

7 very busy.  But, you know, that's a good thing for lawyers.

8      MR. GURA:  It is.

9      THE COURT:  So I have trouble feeling sorry for you

10 there.

11      September 15th for the response, and we will rule by

12 mail.

13      MR. FORTI:  Your Honor, I think that we -- would you

14 also consider the other part of our motion, which is to grant

15 us leave to file our opening memorandum?

16      THE COURT:  Sure.

17      MR. FORTI:  All right.

18      THE COURT:  File away.

19      Now, discovery in this case, which is what really

20 concerns me.  How much time do you really need to do

21 discovery?

22      MR. THOMPSON:  When we had initial conversation with

23 the City and we said 75 days, they indicated that the end of

24 the year would be sufficient.  I don't know if that's still

25 their position or not; but we could live with that, your

1    Honor.

2            MR. FORTI:  Your Honor, I think I have to couch it

3    all in terms of how -- whether or not we're going to have both

4    cases and we can try to have an orderly disposition or not,

5    but --

6            THE COURT:  Right now you've got one case.

7            MR. FORTI:  All right.

8            THE COURT:  How much time do you need for discovery?

9            MR. FORTI:  With that one case, knowing that we have

10   a preliminary injunction currently slated for October 1st, I

11   think we have to go at least till April 1st.

12           THE COURT:  Why is that, other than the fact that

13   you're preparing for a preliminary injunction hearing that has

14   some, if not many, of the same issues that this case has?

15   Doesn't that actually help you in your discovery process in

16   this case?

17           MR. FORTI:  On one count.  Let's remember that the

18   Ezell case is subsumed in the Benson case.  The Benson case

19   has five counts because the Benson case is challenging not

20   only the ban on gun ranges but four other provisions -- at

21   least, I think, four other provisions.  So we're going to be

22   focused, quite honestly, on trying to deal with the

23   preliminary injunction.  And opposing counsel has suggested

24   that they move forward already on discovery in September.

25           Realistically -- our schedules may not be as busy as

22

1   Mr. Gura's -- but, nevertheless, we'll be working on this

2   preliminary injunction.  So in reality our discovery can't

3   begin in earnest on the other counts until October.  So that's

4   the justification for pushing this at least until April.

5        And as you pointed out, it's going to be discovery in

6   terms of establishing the safety issues, among many others, as

7   to the rationales as to why this ordinance is sustainable in

8   our view.

9        THE COURT:  120 days, Carole.

10       MR. FORTI:  I'm sorry?

11       THE COURT:  120 days, fact discovery.

12       MR. THOMPSON:  Your Honor, may we start discovery --

13  propounding discovery tomorrow?

14       THE CLERK:  120 days is December 30th.

15       THE COURT:  Oh, that's not right.  First week in

16  January.

17       THE CLERK:  January 7th.

18       THE COURT:  January 7th, fact discovery cutoff date.

19       MR. THOMPSON:  And does it commence, your Honor,

20  essentially tomorrow?

21       THE COURT:  Before I answer that question, does

22  anyone expect to have expert testimony in these cases, opinion

23  testimony?

24       MR. FORTI:  I would envision that the City would,

25  consistent with the testimony that was introduced at

1    council -- at City council before the ordinance was passed.

2           THE COURT:  Okay.  Expert disclosures, 30 days after

3    January 7th, Carole.

4           THE CLERK:  February 7th.

5           THE COURT:  And expert discovery closes 30 days after

6    that.

7           THE CLERK:  March 9th.

8           THE COURT:  All right.  Discovery commences

9    immediately.  There's no reason for it not to.  If indeed we

10   find that these two cases are not only sufficiently related as

11   to actual issues but that they are sufficiently on the same

12   track that it would be beneficial to the Court and to the

13   litigants to join them, then we may have to reconsider this

14   discovery schedule.

15          But I have to tell you that unless I find that the

16   cases are sufficiently related and in tandem that we can do

17   discovery on or about the same way in both of them and that we

18   can resolve the issues in these cases in about the same

19   manner, it's not likely I'm going to find them to be

20   sufficiently related to be joined.  It's just that simple.  To

21   me it's a practical test.  You folks can hit on all the

22   different points and issues in the case law, but to me it's a

23   practical test.  The whole idea of the rule is to help the

24   courts and the litigants in a practical way.  And if the cases

25   cannot be practically handled together, there's no reason to

1  transfer one from one judge to the other.

2          As far as different judges ruling on the same issue,

3  that happens every day all over the country.  It happens here

4  just about every day.  And, frankly, I find such rulings to be

5  helpful to me, not a hindrance or in any way an obstruction;

6  so that's not a big issue to me.  To me the big issue is, are

7  these cases going to be better off being run together on the

8  same schedule and the same set of procedural precepts or are

9  we better off letting them run their own course.

10          MR. FORTI:  Your Honor, may I ask, one other matter

11  related to discovery and the like in the Benson case is that

12  to date we have not answered the complaint.  We would like to

13  have until October 12th in which to answer or otherwise plead.

14          THE COURT:  Why so long?

15          MR. FORTI:  I don't want --

16          THE COURT:  Just because you're busy?

17          MR. FORTI:  It's because we're busy handling a

18  preliminary injunction in another forum.

19          THE COURT:  Okay.

20          MR. FORTI:  Thank you, Judge.

21          THE COURT:  October 12th for the City's answer.

22          I think that takes care of all the issues I had

23  floating around in my head.  Is there anything else I need to

24  address?

25          MR. THOMPSON:  Not from our perspective, your Honor.

25

1     MR. FORTI:  No, your Honor.

2     MR. GURA:  No, your Honor.  Thank you.

3     THE COURT:  We'll set a status when we issue the

4   ruling on the motion to transfer.

5     MR. FORTI:  And that will be by mail, Judge, right?

6     THE COURT:  It will be by mail.

7     MR. FORTI:  Thank you very much.

8     MR. THOMPSON:  Thank you.

9     THE COURT:  All right.  Have a good day, folks.

10                    *    *    *    *    *

11

12  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

13

14
    */s/ Nancy C. LaBella*                        *September 3, 2010*
15  Official Court Reporter

16

17

18

19

20

21

22

23

24

25

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRETT BENSON, RAYMOND SLEDGE, )
KENNETH PACHOLSKI, KATHRYN TYLER, )
MICHAEL HALL SR., RICK PERE, )
and the ILLINOIS ASSOCATION OF )
FIREARMS RETAILERS, )
 )
 )  **No. 10-CV-4184**
  **Plaintiffs,** )  **Judge Ronald A. Guzman**
 )  **Magistrate Judge Geraldine Soat**
**v.** )   **Brown**
 )
**THE CITY OF CHICAGO and** )
**RICHARD M. DALEY, Mayor of the** )
**City of Chicago,** )
 )
  **Defendants.** )

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs hereby

propound upon Defendants the following Requests for Production. Defendants are requested to

produce and/or permit the Plaintiffs to inspect and copy each of the requested documents that

may be in the Defendants' possession, custody, or control, or those which are in the possession,

custody, or control of Defendants' attorneys, agents, or representatives. Pursuant to Rule

34(b)(2)(A), Defendants' requested documents are to be produced within thirty days of service of

these requests. This production should be made to the offices of Cooper & Kirk, PLLC, 1523

New Hampshire Ave., N.W., Washington, D.C. 20036, or at any other location and time to

which counsel mutually agree.

## DEFINITIONS

As used herein, the following terms shall have the following meanings:

1

1.      "Defendants" refers to the City of Chicago ("the City") and Richard M. Daley, in his official capacity as Mayor of the City of Chicago, and all of the City's subdivisions, agencies and instrumentalities, including but not limited to the Chicago City Council, the Chicago City Council Committee on Police and Fire, the Office of the City Clerk of Chicago, the Office of the Mayor of the City of Chicago, the Chicago Police Department, and the Chicago Independent Police Review Authority. The term "Defendants" also includes all officials, employees, agents, or representatives of Defendants.

2.      "Person" means and refers to not only natural persons, but also firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, trusts, groups, and organizations; federal, state, or local government or government agencies, offices, bureaus, departments, entities, including any court (or judge or other officer thereof); other legal, business, or government entities; and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof or any combination thereof. "Person" includes the present and former officers, executives, partners, directors, trustees, employees, attorneys, agents, representatives, and all other persons acting or purporting to act on behalf of the person and also its subsidiaries.

3.      "Document(s)" should be construed in the broadest sense permissible, and includes all "writings," "recordings," and "photographs," as those terms are defined in Rule 1001 of the Federal Rules of Evidence, as well as all "communications" as defined below. Accordingly, "document(s)" includes, but is not limited to, all written, printed, recorded or graphic matter, photographic matter, sound reproductions, electronic mail, or other retrievable data (whether recorded, taped, or coded electrostatically, electromagnetically, optically or otherwise on hard drive, diskette, compact disk, primary or backup tape, audio tape or video

tape) from whatever source derived and however and by whomever prepared, produced, reproduced, disseminated or made. Without limiting the generality of the foregoing, "document(s)" includes the original and any non-identical copy and also every draft and proposed draft of all correspondence, internal memoranda, notes of meetings, telegrams, telexes, facsimiles, electronic mail, reports, transcripts or notes of telephone conversations, diaries, notebooks, minutes, notes, tests, reports, analyses, studies, testimony, speeches, worksheets, maps, charts, diagrams, computer printouts, and any other writings or materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith. In addition, the word "document(s)" encompasses all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, including but not limited to "email," "voice mail," digital images and graphics, digital or analog audiotapes and files, and digital or analog videotapes and files.

4.      "Communication" means any meeting, conversation (face-to-face, telephonic, or otherwise), discussion, telex message, cable, correspondence, message, electronic mail, voice mail, exchange, provision or relay of a document, or other occurrence whereby thoughts, opinions, data, or other information are transmitted between or among one or more persons, or through any photographic, mechanical, electrical or electronic device or devices for receiving, transmitting, or storing data or other information.

5.      The word "including" shall have its ordinary meaning and shall mean "including but not limited to" and shall not indicate limitation to the examples or items mentioned.

6.      The words or phrases "reflect," "refer," or "relate to"—or any tense or combination of those words or phrases—mean reflecting, referring to, relating to, regarding, discussing, concerning, constituting, mentioning, pertaining to, alluding to, or associated with.

3

7.      The singular of each word shall be construed to include its plural and vice versa, and the root word and all derivations (*i.e.*, "ing," "ed," etc.) shall be construed to include each other.

8.      The words "and" as well as "or" shall be construed both conjunctively as well as disjunctively.

9.      The word "each" shall be construed to include "every" and vice versa.

10.     The word "any" shall be construed to include "all" and vice versa.

11.     The present tense shall be construed to include the past tense and vice versa.

12.     The masculine shall be construed to include the feminine and vice versa.

13.     The "knowledge," "information," "possession," "custody," and "control" of a person shall be construed to include such person's agents, representatives, and attorneys.

14.     The words "the present" mean the date on which Defendants respond to these requests.

15.     The term "the Ordinance" refers to the firearms ordinance (and all provisions and amendments thereof) passed by the Chicago City Council on July 2, 2010, including those provisions currently codified as Chicago Municipal Code §§ 2-14-132, 2-14-190, 2-84-075, 4-144-010, 4-144-061, 4-144-062, 4-144-065, 8-20-010, 8-20-020, 8-20-030, 8-20-035, 8-20-040, 8-20-050, 8-20-060, 8-20-070, 8-20-080, 8-20-085, 8-20-090, 8-20-100, 8-20-110, 8-20-120, 8-20-130, 8-20-140, 8-20-145, 8-20-150, 8-20-160, 8-20-170, 8-20-180, 8-20-185, 8-20-190, 8-20-200, 8-20-205, 8-20-210, 8-20-220, 8-20-230, 8-20-240, 8-20-250, 8-20-260, 8-20-270, 8-20-280, 8-20-290, 8-20-300, 8-16-090, 8-24-005, 8-24-010, 8-24-020, 8-24-021, 8-24-027, 8-26-010, 8-26-020, 8-26-030, 8-26-040, 8-26-050, 8-26-060, 8-26-070, 8-26-080, 8-26-090, 8-26-100, 8-26-110, or any past or future codification for the firearms ordinance that has been or shall

be used. The term "the Ordinance" also includes all drafts, earlier versions, precursors, or amendments in any way reflecting, referring, or relating to the firearms ordinance passed by the Chicago City Council on July 2, 2010.

16.     The terms "firearm," "handgun," and "long gun" have the meaning assigned to those terms in Chicago Municipal Code § 8-20-110.

17.     "The litigation in *District of Columbia v. Heller*," refers to *Parker et al. v. District of Columbia*, No. 1:03-cv-00213 (D.D.C., filed Feb. 10, 2003), and all appeals and proceedings related thereto.

18.     "The litigation in *McDonald v. Chicago*," refers to *McDonald et al. v. City of Chicago et al.*, No. 1:08-cv-03645 (N.D. Ill., filed June 26, 2008), and all appeals and proceedings related thereto.

19.     "The litigation in *NRA v. Chicago*," refers to *NRA, et al. v. City of Chicago et al.*, No. 1:08-cv-03697, (N.D. Ill. filed June 27, 2008), and all appeals and proceedings related thereto.

## GENERAL INSTRUCTIONS

1.     Pursuant to Fed. R. Civ. P. 26(e)(1), these production requests are continuing in nature and Defendants shall provide supplemental answers and documents, which will augment or modify any answers contained in Defendants' responses.

2.     Each request herein constitutes a request for each document referred to or a true, complete, and legible copy thereof.

3.     Each request seeks documents that are in any way in Defendants' possession, custody, or control from any source, wherever situated, including, but not limited to, the files, records, and documents of investigators Defendants or their attorneys hired or directed, and all

documents to which the Defendants have access, including all documents in the possession, custody, or control of contractors, experts, or consultants.

4.  A document is deemed to be in Defendants' "control" if Defendants or Defendants' attorneys have the right to secure the document or a copy thereof from another person or entity having actual possession of the document.

5.  If a requested document was, but no longer is, in Defendants' possession, custody, or control, Defendants shall identify the document, its current location, and the person who has possession, custody, or control of the document; if such information is unavailable, Defendants shall identify the last known location and person who had possession, custody, or control of the document and explain the reason for and circumstances under which the document left Defendants' possession, custody, or control.

6.  If Defendants do not answer any document request or part thereof, on the basis of privilege, Defendants shall provide with respect to each such document the following:

   a. The nature of the document (letter, memorandum, chart, picture, report, etc.);

   b. The number of pages comprising the document and a description of any identifying marks or designations (*e.g.*, Bates numbers) if any, on the document;

   c. The date of the document;

   d. The name(s) of the author(s) and of any recipient(s) of the document;

   e. The name and address of any person who is not included in response to subpart (d) with respect to such document and who has access to or has seen, read, or heard any portion of the material in the document; and

   f. The nature of the privilege asserted.

7.     For each request or part of a request that Defendants refuse to answer on grounds of burdensomeness, Defendants shall explain in as much detail as possible the basis for its contention.

8.     If Defendants object to any request, or portion of a request herein, Defendants must produce all documents covered by the request, or portion of the request, not subject to the objection.  Similarly, if Defendants object to production of a document, Defendants must produce the parts of the document that are not subject to objection, redacting and clearly indicating the parts of the document that are subject to the objection.

9.     Defendants shall produce all documents as they are kept in the usual course of business and label them to correspond to the categories in the request.

10.     Defendant must produce all responsive documents in their original format.

## SPECIFIC INSTRUCTIONS CONCERNING REQUESTS FOR STATISTICS

1.     If a request seeks documents reflecting statistics categorized in a particular manner and Defendants do not possess or control any document with the categorization requested, or documents that collectively will yield the categorization requested, Defendants should produce all documents that reflect, refer, or relate to the most specific statistics or data available that are partially or fully responsive to the request.  By way of example only, if a request were to seek all documents related to annual crimes against persons categorized by gender and age of the victim, and Defendants do not possess documents showing these victim characteristics of gender and age, Defendants should produce all documents showing annual crimes against persons.

2.     If a document request seeks documents "necessary and sufficient to relate, demonstrate, or show" a particular fact or statistic and Defendants do not possess or control such

documents necessary and sufficient to respond in full, then Defendants should produce any and all documents reflecting, referring to, or relating to the fact or statistic that is the subject matter of the request.

3.      If a request seeks crime data or statistics, such data or statistics should include, if available, separate measurements of (i) reports to, or knowledge of, the Chicago Police Department and excluding complaints found to be unfounded, false, or baseless; and (ii) clearances of offenses (defined as one or more persons having been charged and turned over for prosecution for that offense).  If such measures of data or statistics are not available, the Defendants should produce data or statistics in the form in which they are available.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Please produce all documents in Defendants' possession, custody, or control (including but not limited to documents in the possession, custody, or control of City Council Aldermen, Mayor Daley, or the staff or employees of the City Council, Aldermen, or Mayor Daley) reflecting, referring, or relating to the Ordinance, including but not limited to emails, reports, correspondence, meeting notes, and memoranda.

**REQUEST FOR PRODUCTION NO. 2:** Please produce all documents reflecting, referring to, relating to, constituting, comprising, or introduced as part of the legislative process and/or history that led to passage of the Ordinance.  This request includes but is not limited to all documents reflecting, referring to, relating to, or introduced at any meeting or hearing of the City Council or a committee of the City Council including but not limited to (i) the meetings of the Police and Fire Committee held on June 8, 18, and 28, 2010, and (ii) the meetings referred to by Defendants' counsel at the September 1, 2010 hearing before Judge Guzman, *see* Tr. of Hr'g of Sept. 1, 2010 at 15 ("[T]here were three days of testimony before the City [C]ouncil before the

city enacted the … gun law. So there is a record."). This request also includes but is not limited to (i) transcripts, recordings, or records of all meetings and/or hearings in any way related to the Ordinance, and (ii) correspondence, email, or other communications with any person who was a witness at any meeting or hearing in any way related to the Ordinance.

**REQUEST FOR PRODUCTION NO. 3**: Please produce all documents reflecting, referring to, relating to, constituting, comprising, or introduced at any meeting or hearing of the Chicago City Council or a committee of the Chicago City Council occurring after July 2, 2010, and concerning firearms regulations in the City of Chicago.

**REQUEST FOR PRODUCTION NO. 4:** Please produce all documents in Defendants' possession, custody, or control (including communications or correspondence) reflecting, referring to, or relating to any involvement the Joyce Foundation had in, or relationship between the Joyce Foundation and, (i) the Ordinance, (ii) the litigation in *District of Columbia v. Heller*, (iii) the litigation in *McDonald v. Chicago*, or (iv) the litigation in *NRA v. Chicago*.

**REQUEST FOR PRODUCTION NO. 5:** Please produce documents in Defendants' possession, custody, or control necessary and sufficient to relate, demonstrate, or show the number and type (including whether with a weapon and the kind of weapon at issue) of crimes in Chicago occurring annually in or on (i) residential yards, (ii) residential garages, (iii) residential porches, (iv) common areas of apartment and condominium complexes, (v) other areas of residential homes, broken down by room, (vi) fixed places of business (including parking lots and garages) broken down by type of business, (vii) non-fixed places of business (e.g., vending trucks, vehicles of traveling service providers such as plumbers and electricians), and (viii) streets and sidewalks, for the period from 1970 to present. For crimes involving bodily assault or harm to a victim, include documents necessary and sufficient to relate, demonstrate, or show the

age and gender of the victim.

**REQUEST FOR PRODUCTION NO. 6:** Please produce documents in Defendants' possession, custody, or control necessary and sufficient to relate, demonstrate, or show the number of criminal offenses, categorized by type of offense (including whether with a weapon and the kind of weapon at issue), occurring annually in Chicago for the period from 1970 to present.

**REQUEST FOR PRODUCTION NO. 7:** Please produce all documents in Defendants' possession, custody, or control reflecting, referring to, or relating to the relationship between lawful possession of more than one operable handgun and (i) the commission of crimes and/or (ii) the incidence of accidental shootings with those handguns, for the period from 1970 to present.

**REQUEST FOR PRODUCTION NO. 8:** Please produce all documents in Defendants' possession, custody, or control reflecting, referring to, or relating to the number, name, and contact information of all (i) firearms retailers, firearms dealers, firearms shops, firearms wholesalers, and firearms stores, and (ii) all firearms firing ranges legally permitted to operate in Chicago for any purpose, for the period from 1970 to present.

**REQUEST FOR PRODUCTION NO. 9:** Please produce all documents in Defendants' possession, custody, or control reflecting, referring to, or relating to data suggesting or showing that the presence of firearms ranges has (i) caused or been related to the incidence of gun-related crime or accidental shootings, and/or (ii) caused or been related to proficient and safe handling of firearms. Subpart (i) of this request includes but is not limited to documents (including but not limited to reports, studies, or other data) reflecting, referring, or relating to the incidence of (i) crimes occurring at, originating at, or related to firearms ranges located in Chicago or anywhere

in the United States, and (ii) accidental shootings occurring at, originating at, or related to firearms ranges located in Chicago or anywhere else in the United States.

**REQUEST FOR PRODUCTION NO. 10:** Please produce all documents in Defendants' possession, custody, or control necessary and sufficient to relate, demonstrate, or show the average time elapsed from the time an emergency 911 call reports a crime on or in a residential and/or business property to the time first responders report to the scene of the reported incident, for the period from 1990 to present. This request includes but is not limited to documents that categorize or otherwise relate response times by geographic subdivisions of the City.

**REQUEST FOR PRODUCTION NO. 11:** Please produce all documents in Defendants' possession, custody, or control necessary and sufficient to relate, demonstrate, or show the number of handguns possessed in Chicago annually—by persons other than security personnel, law enforcement personnel, or military personnel possessing handguns for official security, law-enforcement, or military purposes—categorized by lawful and unlawful ownership, for the period from 1970 to present.

**REQUEST FOR PRODUCTION NO. 12:** Please produce all documents in Defendants' possession, custody, or control necessary and sufficient to relate, demonstrate, or show the percentage and total number of handguns involved in criminal activity or accidental shootings on a yearly basis, where such handguns were lawfully possessed (by grandfathering or other means) in households in the City (by persons other than security personnel, law enforcement personnel, or military personnel for security, law-enforcement, or military purposes) following the enactment of the 1982 ban on possession (former Chicago Municipal Code §§ 8-20-040(a), -050(c)), for the period from 1982 to present. For any incidents of

criminal activity involving the lawfully owned handguns referenced in this request, please also produce all police reports, criminal judgments, or other files or information reflecting, referring to, or relating to these incidents.

**REQUEST FOR PRODUCTION NO. 13:** Please produce all documents in Defendants' possession, custody, or control reflecting, referring to, or relating to all discovery received or produced by the City of Chicago in *Ezel v. City of Chicago*, No. 10-05135 (N.D. Ill., filed Aug. 16, 2010), and/or *Second Amendment Arms v. City of Chicago*, No. 10-04257 (N.D. Ill., filed July 7, 2010), including but not limited to documents, interrogatory answers, deposition transcripts, and responses to requests for admission.

**REQUEST FOR PRODUCTION NO. 14:** Please produce all documents in Defendants' possession, custody, or control reflecting, referring to, or relating to City customs, policies, and/or practices concerning firearms training. This request includes but is not limited to documents reflecting, referring to, or relating to range training required for Chicago police officers, any other City personnel, and/or any private security personnel permitted to operate within the City.

**REQUEST FOR PRODUCTION NO. 15:** Please produce all documents in Defendants' possession, custody, or control necessary and sufficient to relate, demonstrate, or show the annual (i) total number of adults 21 years of age or older who reside(d) in Chicago, (ii) total number of such persons who possessed a valid Illinois drivers license, (iii) total number of registered automobiles in Chicago, and (iv) total number of persons who did not own, or otherwise keep in the City, an automobile, for the period from 1990 to present.

**REQUEST FOR PRODUCTION NO. 16:** Please produce all documents in Defendants' possession, custody, or control necessary and sufficient to relate, demonstrate, or

show the number of handgun-related crimes on an annual basis committed by persons unlawfully possessing handguns in the City, for the period from 1970 to present, categorized by type of crime.

**REQUEST FOR PRODUCTION NO. 17:** Please produce all documents in Defendants' possession, custody, or control necessary and sufficient to relate, demonstrate, or show the number of handgun-related crimes on an annual basis committed by persons unlawfully possessing handguns in the City under federal law, for the period from 1970 to present, categorized by type of crime.

**REQUEST FOR PRODUCTION NO. 18:** Please produce all documents in Defendants' possession, custody, or control necessary and sufficient to relate, demonstrate, or show the annual (i) total number of firearm-related crimes committed in homes in the City, and (ii) total number of firearm-related crimes committed in homes in the City by persons who were not owners of, residents of, or invitees in the home, for the period from 1970 to present.

**REQUEST FOR PRODUCTION NO. 19:** Please produce all documents in Defendants' possession, custody, or control necessary and sufficient to relate, demonstrate, or show the annual (i) total number of handgun-related crimes committed in homes in the City, and (ii) total number of handgun-related crimes in homes in the City by persons who were not owners of, residents of, or invitees in the home, for the period from 1970 to the present.

**REQUEST FOR PRODUCTION NO. 20:** Please produce all documents in Defendants' possession, custody, or control reflecting, referring to, or relating to the annual total number of defensive gun uses in the City—that is, crimes against persons or property that were deterred, stopped, prevented, or otherwise ameliorated (or were attempted to be ameliorated) in any way by use of a firearm—by security, law enforcement, or military personnel for the period

13

from 1970 to present.

**REQUEST FOR PRODUCTION NO. 21:** Please produce all documents in Defendants' possession, custody, or control reflecting, referring to, or relating to the annual total number of defensive gun uses in the City—that is, crimes against persons or property that were deterred, stopped, prevented, or otherwise ameliorated (or were attempted to be ameliorated) in any way by use of a firearm—for the period from 1970 to present, regardless of whether the firearm defensively used was lawfully possessed and excluding uses by security, law enforcement, or military personnel acting in an official capacity.

**REQUEST FOR PRODUCTION NO. 22:** Please produce all documents in Defendants' possession, custody, or control reflecting, referring, or relating to the annual total number of defensive handgun uses in the City—that is, crimes against persons or property that were deterred, stopped, prevented, or otherwise ameliorated (or were attempted to be ameliorated) in any way by use of a handgun—by persons lawfully possessing handguns for the period from 1970 to present but excluding security, law enforcement, or military personnel acting in an official capacity.

**REQUEST FOR PRODUCTION NO. 23:** Please produce all documents in Defendants' possession, custody, or control reflecting, referring to, or relating to the annual total number of defensive long gun uses in the City—that is, crimes against persons or property that were deterred, stopped, prevented, or otherwise ameliorated (or were attempted to be ameliorated) in any way by use of a long gun—by persons lawfully possessing long guns for the period from 1970 to present but excluding security, law enforcement, or military personnel acting in an official capacity.

**REQUEST FOR PRODUCTION NO. 24:** Please produce all documents in

Defendants' possession, custody, or control necessary and sufficient to relate, demonstrate, or show the annual total population of the City, categorized by age, for the period from 1970 to present.

**REQUEST FOR PRODUCTION NO. 25:** Please produce all documents in Defendants' possession, custody, or control necessary and sufficient to relate, demonstrate, or show the annual total number of accidental shootings in the City of Chicago, categorized by (i) shootings with long guns and handguns, and (ii) whether the firearm was lawfully or unlawfully possessed, for the period from 1970 to present.

**REQUEST FOR PRODUCTION NO. 26:** Please produce all documents in Defendants' possession, custody, or control reflecting, referring to, or relating to the City's definition of "fixed placed of business" as that term is used in Chicago Municipal Code § 8-20-030.

**REQUEST FOR PRODUCTION NO. 27:** Please produce all documents in Defendants' possession, custody, or control reflecting, referring to, or relating to the City's definition of "assembled and operable" as that term is used in Chicago Municipal Ordinance § 8-20-040.

**REQUEST FOR PRODUCTION NO. 28:** Please produce all documents in Defendants' possession, custody, or control reflecting, referring to, or relating to any compelling interest, justification, or reason the City had for enacting the provisions of the Ordinance that are challenged in Plaintiffs' First Amended Complaint. This request includes but is not limited to all documents in Defendants' possession, custody, or control reflecting, referring to, or relating to any and all compelling interests, justifications, or reasons the City had for enacting the requirement that persons applying for a Chicago Firearms Permit obtain "an affidavit signed by a

15

firearm instructor certified by the State of Illinois … attesting that the applicant has completed a firearm safety and training course, which, at a minimum provides one hour of range training."

**REQUEST FOR PRODUCTION NO. 29:** Please produce all documents in Defendants' possession, custody, or control reflecting, referring to, or relating to any substantial interest, justification, or reason the City had for enacting the provisions of the Ordinance that are challenged in Plaintiffs' First Amended Complaint. This request includes but is not limited to all documents in Defendants' possession, custody, or control reflecting, referring to, or relating to any and all substantial interests, justifications, or reasons the City had for enacting the requirement that persons applying for a Chicago Firearms Permit obtain "an affidavit signed by a firearm instructor certified by the State of Illinois … attesting that the applicant has completed a firearm safety and training course, which, at a minimum provides one hour of range training."

**REQUEST FOR PRODUCTION NO. 30:** Please produce all documents in Defendants' possession, custody, or control reflecting, referring to, or relating to any rational basis the City had for enacting the provisions of the Ordinance that are challenged in Plaintiffs' First Amended Complaint. This request includes but is not limited to all documents in Defendants' possession, custody, or control reflecting, referring, or relating to any and all rational bases the City had for enacting the requirement that persons applying for a Chicago Firearms Permit obtain "an affidavit signed by a firearm instructor certified by the State of Illinois … attesting that the applicant has completed a firearm safety and training course, which, at a minimum provides one hour of range training."

**REQUEST FOR PRODUCTION NO. 31:** Please produce all documents in Defendants' possession, custody, or control reflecting, referring to, or relating to how the provisions of the Ordinance that are challenged in Plaintiffs' First Amended Complaint are

tailored to serve or otherwise further the City's (i) compelling interests, justifications, or reasons for enacting those provisions, (ii) substantial interests, justifications, or reasons for enacting those provisions, and/or (iii) rational bases for enacting those provisions.

**REQUEST FOR PRODUCTION NO. 32:** Please produce all documents in Defendants' possession, custody, or control (including but not limited to documents in the possession, custody, or control of City Council Aldermen, Mayor Daley, or the staff or employees of the City Council, Aldermen, or Mayor Daley) reflecting, referring to, or relating to litigation concerning the Second Amendment (such as *McDonald v. Chicago* or *NRA v. Chicago*) created, transmitted, sent, or received since January 1, 2007, including but not limited to emails, reports, correspondence, meeting notes, and memoranda. This request does not include documents privileged under the attorney-client privilege.

**REQUEST FOR PRODUCTION NO. 33:** Please produce all documents in Defendants' possession, custody, or control that Defendants will use to defend the provisions of the Ordinance challenged in Plaintiffs' First Amended Complaint, as well as any documents reflecting, referring to, or relating to such documents.

Respectfully submitted,

By: _____

Stephen Kolodziej
Atty. ID # 6216375
BRENNER FORD MONROE & SCOTT LTD.
33 N. Dearborn St., Suite 300
Chicago, IL 60602
Tel: (312) 781-1970
Fax: (312)781-9202
Email: skolodziej@brennerlawfirm.com

Charles J. Cooper*
David H. Thompson*
Jesse Panuccio*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
Email: ccooper@cooperkirk.com

Brian S. Koukoutchos*
28 Eagle Trace
Mandeville, LA  70471
Tel: (985) 626-5052
bkoukoutchos@gmail.com

*Admitted *pro hac vice*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Jesse Panuccio, hereby certify that on this 16th day of September, 2010, I caused a copy of the foregoing to be served by first-class United States mail on:

Mara S. Georges
William Macy Aguiar
Michael A. Forti
Andrew W. Worseck
Rebecca Alfert Hirsch
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle St., Suite 1230
Chicago, IL 60602

Jesse Panuccio

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRETT BENSON, RAYMOND SLEDGE,          )
KENNETH PACHOLSKI, KATHRYN TYLER,      )
MICHAEL HALL SR., RICK PERE,           )
and the ILLINOIS ASSOCATION OF         )
FIREARMS RETAILERS,                    )
                                       )
                                       )       No. 10-CV-4184
          Plaintiffs,                  )       Judge Ronald A. Guzman
                                       )       Magistrate Judge Geraldine Soat
v.                                     )       Brown
                                       )
THE CITY OF CHICAGO and                )
RICHARD M. DALEY, Mayor of the         )
City of Chicago,                       )
                                       )
          Defendants.                  )

## PLAINTIFFS' FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs hereby

request that Defendants City of Chicago and Mayor Richard Daley answer fully, in writing and

under oath, each of the following interrogatories. Pursuant to Rule 33(b)(2), Defendants'

answers must be provided within thirty days of service of these interrogatories. Answers to these

interrogatories should be returned to Cooper & Kirk, PLLC, 1523 New Hampshire Ave., N.W.,

Washington, D.C. 20036, or at any other location and time to which counsel mutually agree.

## DEFINITIONS

As used herein, the following terms shall have the following meanings:

1.      "Defendants" refers to the City of Chicago ("the City") and Richard M. Daley, in

his official capacity as Mayor of the City of Chicago, and all of the City's subdivisions, agencies

and instrumentalities, including but not limited to the Chicago City Council, the Chicago City

1

Council Committee on Police and Fire, the Office of the City Clerk of Chicago, the Office of the

Mayor of the City of Chicago, the Chicago Police Department, and the Chicago Independent

Police Review Authority. The term "Defendants" also includes all persons who are officials,

employees, agents, or representatives of Defendants.

    2.    "Person" means and refers to not only natural persons, but also firms,

partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures,

proprietorships, syndicates, trusts, groups, and organizations; federal, state, or local government

or government agencies, offices, bureaus, departments, entities, including any court (or judge or

other officer thereof); other legal, business, or government entities; and all subsidiaries, affiliates,

divisions, departments, branches, and other units thereof or any combination thereof. "Person"

includes the present and former officers, executives, partners, directors, trustees, employees,

attorneys, agents, representatives, and all other persons acting or purporting to act on behalf of

the person and also its subsidiaries.

    3.    The word "including" shall have its ordinary meaning and shall mean "including

but not limited to" and shall not indicate limitation to the examples or items mentioned.

    4.    The singular of each word shall be construed to include its plural and vice versa,

and the root word and all derivations (*i.e.*, "ing," "ed," etc.) shall be construed to include each

other.

    5.    The words "and" as well as "or" shall be construed both conjunctively as well as

disjunctively.

    6.    The word "each" shall be construed to include "every" and vice versa.

    7.    The word "any" shall be construed to include "all" and vice versa.

    8.    The present tense shall be construed to include the past tense and vice versa.

9. The masculine shall be construed to include the feminine and vice versa.

10. The term "the Ordinance" refers to the firearms ordinance (and all provisions and amendments thereof) passed by the Chicago City Council on July 2, 2010, including those provisions currently codified as Chicago Municipal Code §§ 2-14-132, 2-14-190, 2-84-075, 4-144-010, 4-144-061, 4-144-062, 4-144-065, 8-20-010, 8-20-020, 8-20-030, 8-20-035, 8-20-040, 8-20-050, 8-20-060, 8-20-070, 8-20-080, 8-20-085, 8-20-090, 8-20-100, 8-20-110, 8-20-120, 8-20-130, 8-20-140, 8-20-145, 8-20-150, 8-20-160, 8-20-170, 8-20-180, 8-20-185, 8-20-190, 8-20-200, 8-20-205, 8-20-210, 8-20-220, 8-20-230, 8-20-240, 8-20-250, 8-20-260, 8-20-270, 8-20-280, 8-20-290, 8-20-300, 8-16-090, 8-24-005, 8-24-010, 8-24-020, 8-24-021, 8-24-027, 8-26-010, 8-26-020, 8-26-030, 8-26-040, 8-26-050, 8-26-060, 8-26-070, 8-26-080, 8-26-090, 8-26-100, 8-26-110, or any past or future codification for the firearms ordinance that has been or shall be used. The term "the Ordinance" also includes all drafts, earlier versions, precursors, or amendments in any way reflecting, referring, or relating to the firearms ordinance passed by the Chicago City Council on July 2, 2010.

## INSTRUCTIONS

1. Pursuant to Fed. R. Civ. P. 26(e)(1), these interrogatories are continuing in nature and Defendants shall provide supplemental answers, which will augment or modify any answers contained in Defendants' responses.

2. When an interrogatory asks Defendants to "describe" or "identify" a document or other item, provide the following with respect to each document or item, if applicable:

   a. the date appearing on or pertaining to the document or item; or, if it has no date, so state and give the date or approximate date such document or item was prepared, produced, created, occurred, or came into being;

b.  any identifying or descriptive code or number, file number, title, or label of such document or other item;

c.  the general nature or description of the document or other item;

d.  the name of the person(s) who signed, authored, produced, or created the document or other item;

e.  the name of the person(s) to whom such document or other item was addressed and the name of each such person other than the addressee to whom such document or other item, or copy or reproduction thereof, was given or sent;

f.  the name of the person or entity having present possession, custody, or control of such document or other item, and the present location of such document or other item;

g.  if such document or other item was, but no longer is, in the possession, custody, or control of Defendants, state what disposition was made of such document or other item, the reason for such disposition, and the date thereof;

h.  whether any draft, copy, or reproduction of such document or other time contains any script, notation, change, addendum, or the like, not appearing on such document itself, and if so, provide the description and identification of each such draft, copy, or reproduction in accordance with these instructions.

3.  When an interrogatory requests Defendants to provide the "name" of, or to "identify" or "describe," a person, the answer shall contain the following information with respect to each such person: full name, current or last known business and home addresses, business and home telephone numbers, and email address.

4.     In answering each interrogatory, furnish all information available to Defendants that is relevant or that might lead to the discovery of relevant evidence, including information in the possession of Defendants' attorneys, or their investigators, and all persons acting on Defendants' behalf, including but not limited to Defendants' employees, agents, officers, or representatives. If Defendants are unable to answer an interrogatory in full after exercising due diligence to supply a complete answer, so state and answer to the extent possible. Specify the reasons for Defendants' inability to answer and state whatever information or knowledge Defendants have concerning the unanswered portions.

5.     If any interrogatory is objected to on the grounds of overbreadth, specifically state the manner in which it is overly broad and respond to the interrogatory as narrowed to conform to such objection.

6.     In no event is an answer to be left blank. If the answer to an interrogatory is "none," "unknown," or "not applicable," such statement should be written in the answer.

7.     If Defendants do not answer any interrogatory or part thereof, on the basis of privilege, Defendants shall state the following: (a) the date of the communication for which the privilege is claimed; (b) the author(s) of the communication; (c) the business or legal title or position of its author(s); (d) the recipient(s) or addree(s) of the communication and his or her business or legal title or position; (e) the subject matter of the information requested or the document withheld; and (f) the nature of the privilege asserted and the basis upon which it is claimed.

8.     If Defendants refuse to answer an interrogatory on grounds of burdensomeness, Defendants shall explain in as much detail as possible the basis for their contention.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Please identify every legitimate governmental interest to which Defendants contend the provisions of the Ordinance challenged in Plaintiffs' First Amended Complaint are related, whether such interests are rational, important, or compelling.

**INTERROGATORY NO. 2:** Please identify every less restrictive alternative to the challenged provisions of the Ordinance that Defendants considered in order to accomplish the interests identified in response to Interrogatory No. 1.

**INTERROGATORY NO. 3:** Please identify the legislative record or legislative history (including but not limited to all documents, hearings, meetings, or other material or events) for the Ordinance, including but not limited to all persons who testified at or participated in any hearing or meeting, all exhibits or materials introduced at any hearing or meeting, and all documents, materials, or other information considered by the Chicago City Council before passing the Ordinance. This Interrogatory includes but is not limited to all materials that constitute the "record" referred to by Defendants' counsel at the September 1, 2010 hearing before Judge Guzman. *See* Tr. of Hr'g of Sept. 1, 2010 at 15.

**INTERROGATORY NO. 4:** Please state the City's definition of "fixed placed of business" as that term is used in Chicago Municipal Code § 8-20-030, including but not limited to what areas or portions of a fixed place of business that term encompasses (such as whether it includes areas outside a building, parking lots, and garages).

**INTERROGATORY NO. 5:** Please state the City's definition of "assembled and operable" as that term is used in Chicago Municipal Ordinance § 8-20-040, including but not limited to whether a gun with a trigger lock affixed to it is considered "assembled and operable," whether a semiautomatic handgun with its ammunition clip removed is considered "assembled

and operable," and whether a gun secured in a safe or lock box is considered "assembled and operable."

**INTERROGATORY NO. 6:** Please identify the reasons why the City has enacted, put in place, or adheres to any other law, requirement, custom, or practice necessitating or regarding firearms instruction and/or training for any resident of, employee of, agent of, officer of, or visitor to the City of Chicago, including but not limited to the reasons why the City Council enacted the requirement that an applicant for a Chicago Firearms Permit must obtain "an affidavit signed by a firearm instructor certified by the State of Illinois ... attesting that the applicant has completed a firearm safety and training course, which, at a minimum provides one hour of range training."

Respectfully submitted,

By: _____

Stephen Kolodziej
Atty. ID # 6216375
BRENNER FORD MONROE & SCOTT LTD.
33 N. Dearborn St., Suite 300
Chicago, IL 60602
Tel: (312) 781-1970
Fax: (312)781-9202
Email: skolodziej@brennerlawfirm.com

Charles J. Cooper*
David H. Thompson*
Jesse Panuccio*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
Email: ccooper@cooperkirk.com

Brian S. Koukoutchos*
28 Eagle Trace
Mandeville, LA 70471
Tel: (985) 626-5052
bkoukoutchos@gmail.com

*Admitted *pro hac vice*
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Jesse Panuccio, hereby certify that on this 21st day of September, 2010, I,

pursuant to Fed. R. Civ. P. 5(b)(2)(B), caused a copy of the foregoing to be served by delivering

it to the offices of:

Mara S. Georges
William Macy Aguiar
Michael A. Forti
Andrew W. Worseck
Rebecca Alfert Hirsch
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle St., Suite 1230
Chicago, IL 60602

Jesse Panuccio

# Exhibit D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BRETT BENSON, KENNETH PACHOLSKI,   )
KATHRYN TYLER, MICHAEL HALL SR.,   )
RICK PERE, and the ILLINOIS ASSOCATION )
OF FIREARMS RETAILERS,               )    No. 10-CV-4184
                                     )    Judge Ronald A. Guzman
      Plaintiffs,                )    Magistrate Judge Geraldine Soat
                                     )     Brown
v.                                  )
                                     )
THE CITY OF CHICAGO and          )
RICHARD M. DALEY, Mayor of the      )
City of Chicago,                 )
                                     )
      Defendants.              )

## PLAINTIFFS' SECOND SET OF
## REQUESTS FOR PRODUCTION AND INTERROGATORIES

      Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, Plaintiffs

hereby propound upon Defendants the following Requests for Production and Interrogatories.

Defendants are requested to produce and/or permit the Plaintiffs to inspect and copy each of the

requested documents that may be in the Defendants' possession, custody, or control, or those

which are in the possession, custody, or control of Defendants' attorneys, agents, or

representatives. Defendants are further requested to answer fully, in writing and under oath,

each of the following Interrogatories. Pursuant to Rules 33(b)(2) and 34(b)(2)(A), Defendants'

requested documents and answers are to be produced within thirty days of service of these

Requests and Interrogatories. Document production and answers to the Interrogatories should be

delivered to the offices of Cooper & Kirk, PLLC, 1523 New Hampshire Ave., N.W.,

Washington, D.C. 20036, or at any other location and time to which counsel mutually agree.

## **DEFINITIONS**

As used herein, the following terms shall have the following meanings:

1.        "Defendants" refers to the City of Chicago ("the City") and Richard M. Daley, in his official capacity as Mayor of the City of Chicago, and all of the City's subdivisions, agencies and instrumentalities, including but not limited to the Chicago City Council, the Chicago City Council Committee on Police and Fire, the Office of the City Clerk of Chicago, the Office of the Mayor of the City of Chicago, the Chicago Police Department, and the Chicago Independent Police Review Authority.  The term "Defendants" also includes all officials, employees, agents, or representatives of Defendants.

2.        "Person" means and refers to not only natural persons, but also firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, trusts, groups, and organizations; federal, state, or local government or government agencies, offices, bureaus, departments, entities, including any court (or judge or other officer thereof); other legal, business, or government entities; and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof or any combination thereof.  "Person" includes the present and former officers, executives, partners, directors, trustees, employees, attorneys, agents, representatives, and all other persons acting or purporting to act on behalf of the person and also its subsidiaries.

3.        "Document(s)" should be construed in the broadest sense permissible, and includes all "writings," "recordings," and "photographs," as those terms are defined in Rule 1001 of the Federal Rules of Evidence, as well as all "communications" as defined below. Accordingly, "document(s)" includes, but is not limited to, all written, printed, recorded or graphic matter, photographic matter, sound reproductions, electronic mail, or other retrievable

data (whether recorded, taped, or coded electrostatically, electromagnetically, optically or otherwise on hard drive, diskette, compact disk, primary or backup tape, audio tape or video tape) from whatever source derived and however and by whomever prepared, produced, reproduced, disseminated or made. Without limiting the generality of the foregoing, "document(s)" includes the original and any non-identical copy and also every draft and proposed draft of all correspondence, internal memoranda, notes of meetings, telegrams, telexes, facsimiles, electronic mail, reports, transcripts or notes of telephone conversations, diaries, notebooks, minutes, notes, tests, reports, analyses, studies, testimony, speeches, worksheets, maps, charts, diagrams, computer printouts, and any other writings or materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith. In addition, the word "document(s)" encompasses all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, including but not limited to "email," "voice mail," digital images and graphics, digital or analog audiotapes and files, and digital or analog videotapes and files.

  4.  "Communication" means any meeting, conversation (face-to-face, telephonic, or otherwise), discussion, telex message, cable, correspondence, message, electronic mail, voice mail, exchange, provision or relay of a document, or other occurrence whereby thoughts, opinions, data, or other information are transmitted between or among one or more persons, or through any photographic, mechanical, electrical or electronic device or devices for receiving, transmitting, or storing data or other information.

  5.  The word "including" shall have its ordinary meaning and shall mean "including but not limited to" and shall not indicate limitation to the examples or items mentioned.

6. The words or phrases "reflect," "refer," or "relate to"—or any tense or combination of those words or phrases—mean reflecting, referring, relating to, regarding, discussing, concerning, constituting, mentioning, pertaining to, alluding to, or associated with.

7. The singular of each word shall be construed to include its plural and vice versa, and the root word and all derivations (*i.e.*, "ing," "ed," etc.) shall be construed to include each other.

8. The words "and" as well as "or" shall be construed both conjunctively as well as disjunctively.

9. The word "each" shall be construed to include "every" and vice versa.

10. The word "any" shall be construed to include "all" and vice versa.

11. The present tense shall be construed to include the past tense and vice versa.

12. The masculine shall be construed to include the feminine and vice versa.

13. The "knowledge," "information," "possession," "custody," and "control" of a person shall be construed to include such person's agents, representatives, and attorneys.

14. The words "the present" mean the date on which Defendants respond to these requests.

15. The term "the Ordinance" refers to the firearms ordinance (and all provisions and amendments thereof) passed by the Chicago City Council on July 2, 2010, including those provisions currently codified as Chicago Municipal Code §§ 2-14-132, 2-14-190, 2-84-075, 4-144-010, 4-144-061, 4-144-062, 4-144-065, 8-20-010, 8-20-020, 8-20-030, 8-20-035, 8-20-040, 8-20-050, 8-20-060, 8-20-070, 8-20-080, 8-20-085, 8-20-090, 8-20-100, 8-20-110, 8-20-120, 8-20-130, 8-20-140, 8-20-145, 8-20-150, 8-20-160, 8-20-170, 8-20-180, 8-20-185, 8-20-190, 8-20-200, 8-20-205, 8-20-210, 8-20-220, 8-20-230, 8-20-240, 8-20-250, 8-20-260, 8-20-270, 8-20-

280, 8-20-290, 8-20-300, 8-16-090, 8-24-005, 8-24-010, 8-24-020, 8-24-021, 8-24-027, 8-26-010, 8-26-020, 8-26-030, 8-26-040, 8-26-050, 8-26-060, 8-26-070, 8-26-080, 8-26-090, 8-26-100, 8-26-110, or any past or future codification for the firearms ordinance that has been or shall be used.  The term "the Ordinance" also includes all drafts, earlier versions, precursors, or amendments in any way reflecting, referring, or relating to the firearms ordinance passed by the Chicago City Council on July 2, 2010.

16.    The terms "firearm," "handgun," and "long gun" have the meaning assigned to those terms in Chicago Municipal Code § 8-20-110.

## GENERAL INSTRUCTIONS

1.    Pursuant to Fed. R. Civ. P. 26(e)(1), these Requests and Interrogatories are continuing in nature and Defendants shall provide supplemental answers and documents, which will augment or modify any answers contained in Defendants' responses.

2.    Each Request herein constitutes a request for each document referred to or a true, complete, and legible copy thereof.

3.    Each Request seeks documents that are in any way in Defendants' possession, custody, or control from any source, wherever situated, including, but not limited to, the files, records, and documents of investigators Defendants or their attorneys hired or directed, and all documents to which the Defendants have access, including all documents in the possession, custody, or control of contractors, experts, or consultants.

4.    A document is deemed to be in Defendants' "control" if Defendants or Defendants' attorneys have the right to secure the document or a copy thereof from another person or entity having actual possession of the document.

5.    If a requested document was, but no longer is, in Defendants' possession, custody, or control, Defendants shall identify the document, its current location, and the person who has

possession, custody, or control of the document; if such information is unavailable, Defendants shall identify the last known location and person who had possession, custody, or control of the document and explain the reason for and circumstances under which the document left Defendants' possession, custody, or control.

6.     If Defendants do not answer any Request or part thereof, on the basis of privilege, Defendants shall provide with respect to each such document the following:

a. The nature of the document (letter, memorandum, chart, picture, report, etc.);

b. The number of pages comprising the document and a description of any identifying marks or designations (*e.g.*, Bates numbers) if any, on the document;

c. The date of the document;

d. The name(s) of the author(s) and of any recipient(s) of the document;

e. The name and address of any person who is not included in response to subpart (d) with respect to such document and who has access to or has seen, read, or heard any portion of the material in the document; and

f. The nature of the privilege asserted.

7.     For each Request or part of a Request that Defendants refuse to answer on grounds of burdensomeness, Defendants shall explain in as much detail as possible the basis for its contention.

8.     If Defendants object to any Request, or portion of a Request herein, Defendants must produce all documents covered by the Request, or portion of the request, not subject to the objection.  Similarly, if Defendants object to production of a document, Defendants must produce the parts of the document that are not subject to objection, redacting and clearly indicating the parts of the document that are subject to the objection.

9.     Defendants shall produce all documents as they are kept in the usual course of business and label them to correspond to the categories in the request.

10.     Defendant must produce all responsive documents in their original format.

11.     When an Interrogatory asks Defendants to "describe" or "identify" a document or other item, provide the following with respect to each document or item, if applicable:

a.   the date appearing on or pertaining to the document or item; or, if it has no date, so state and give the date or approximate date such document or item was prepared, produced, created, occurred, or came into being;

b.   any identifying or descriptive code or number, file number, title, or label of such document or other item;

c.   the general nature or description of the document or other item;

d.   the name of the person(s) who signed, authored, produced, or created the document or other item;

e.   the name of the person(s) to whom such document or other item was addressed and the name of each such person other than the addressee to whom such document or other item, or copy or reproduction thereof, was given or sent;

f.   the name of the person or entity having present possession, custody, or control of such document or other item, and the present location of such document or other item;

g.   if such document or other item was, but no longer is, in the possession, custody, or control of Defendants, state what disposition was made of such document or other item, the reason for such disposition, and the date thereof;

7

      h.   whether any draft, copy, or reproduction of such document or other time

contains any script, notation, change, addendum, or the like, not appearing on

such document itself, and if so, provide the description and identification of

each such draft, copy, or reproduction in accordance with these instructions.

12.     When an Interrogatory requests Defendants to provide the "name" of, or to

"identify" or "describe," a person, the answer shall contain the following information with

respect to each such person: full name, current or last known business and home addresses,

business and home telephone numbers, and email address.

13.     In answering each Interrogatory, furnish all information available to Defendants

that is relevant or that might lead to the discovery of relevant evidence, including information in

the possession of Defendants' attorneys, or their investigators, and all persons acting on

Defendants' behalf, including but not limited to Defendants' employees, agents, officers, or

representatives. If Defendants are unable to answer an Interrogatory in full after exercising due

diligence to supply a complete answer, so state and answer to the extent possible. Specify the

reasons for Defendants' inability to answer and state whatever information or knowledge

Defendants have concerning the unanswered portions.

14.     If any Interrogatory is objected to on the grounds of overbreadth, specifically state

the manner in which it is overly broad and respond to the interrogatory as narrowed to conform

to such objection.

15.     In no event is an answer to be left blank. If the answer to an Interrogatory is

"none," "unknown," or "not applicable," such statement should be written in the answer.

16.     If Defendants do not answer any Interrogatory or part thereof, on the basis of

privilege, Defendants shall state the following: (a) the date of the communication for which the

privilege is claimed; (b) the author(s) of the communication; (c) the business or legal title or

position of its author(s); (d) the recipient(s) or addree(s) of the communication and his or her

business or legal title or position; (e) the subject matter of the information requested or the

document withheld; and (f) the nature of the privilege asserted and the basis upon which it is

claimed.

17.     If Defendants refuse to answer an Interrogatory on grounds of burdensomeness,

Defendants shall explain in as much detail as possible the basis for their contention.


## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 34:** Please produce all exhibits that were

introduced at—or proposed exhibits that were exchanged between parties prior to or during—the

preliminary injunction hearing held on October 1 and 4, 2010, in *Ezell v. City of Chicago*,

No.1:10-cv-05135 (N.D. Ill.).

**REQUEST FOR PRODUCTION NO. 35:** Please produce all documents that were in

the City's possession *on or prior to* July 2, 2010, reflecting, referring to, relating to, confirming,

or supporting:

(i) The following statement made by the Superintendent of the Chicago Police

Department at the June 29, 2010 meeting of the Chicago City Council Committee on

Police and Fire: "One operable firearm is all a person should need for self-defense. This

rule does not burden the right to self-defense. Allowing multiple operable guns per home

increases the risk of non-self-defense related injuries and death from firearms."

(ii) The following statement made by the Corporation Counsel for the City of Chicago at

the June 29, 2010 meeting of the Chicago City Council Committee on Police and Fire:

"one handgun is sufficient for self-defense."

**REQUEST FOR PRODUCTION NO. 36:** Please produce all documents that came into the City's possession *after* July 2, 2010, reflecting, referring to, relating to, confirming, or supporting:

> (i) The following statement made by the Superintendent of the Chicago Police
>
> Department at the June 29, 2010 meeting of the Chicago City Council Committee on
>
> Police and Fire: "One operable firearm is all a person should need for self-defense. This
>
> rule does not burden the right to self-defense. Allowing multiple operable guns per home
>
> increases the risk of non-self-defense related injuries and death from firearms."
>
> (ii) The following statement made by the Corporation Counsel for the City of Chicago at
>
> the June 29, 2010 meeting of the Chicago City Council Committee on Police and Fire:
>
> "one handgun is sufficient for self-defense."

**REQUEST FOR PRODUCTION NO. 37:** Please produce "the timeline on the history of the gun registration ordinance in Chicago" referenced by Alderman Burke at the June 29, 2010 meeting of the Chicago City Council Committee on Police and Fire.

**REQUEST FOR PRODUCTION NO. 38:** Please produce all documents that were in the City's possession *on or prior to* July 2, 2010, reflecting, referring to, relating to, confirming, or supporting the statement by Ernest Brown at the June 29, 2010 meeting of the Chicago City Council Committee on Police and Fire that "[t]he risk of misuse or intimidation is very high when guns are carried in public," to the extent such documents relate to carriage by law-abiding persons.

**REQUEST FOR PRODUCTION NO. 39:** Please produce all documents that came into the City's possession *after* July 2, 2010, reflecting, referring to, relating to, confirming, or

supporting the statement by Ernest Brown at the June 29, 2010 meeting of the Chicago City

Council Committee on Police and Fire that "[t]he risk of misuse or intimidation is very high

when guns are carried in public," to the extent such documents relate to carriage by law-abiding

persons.

**REQUEST FOR PRODUCTION NO. 40:** Please produce the "investigations tracing

crime guns" referred to by Kevin Johnson at the June 29, 2010 meeting of the Chicago City

Council Committee on Police and Fire.

**REQUEST FOR PRODUCTION NO. 41:** Please produce all documents Defendants

intend to offer as evidence at the trial in this matter, or as evidence attached to a motion for

summary judgment or in response to a motion for summary judgment.

## INTERROGATORIES

**INTERROGATORY NO. 7:** Please identify all witnesses, including experts, you will or

may call at the trial in this matter, or from whom you may attach affidavits or declarations to a

motion for summary judgment or in response to a motion for summary judgment, and describe

the general subject matter upon which they will address.

**INTERROGATORY NO. 8:** Please identify any and all persons in possession of

information regarding the governmental justifications for, or governmental purposes or interests

in, each of the following provisions of the Ordinance:

(i) Chicago Municipal Code §§ 8-20-010, -020, -030, to the extent those provisions

prohibit the possession or use of firearms outside of one's "home" or "fixed place of business" as

those terms are defined therein;

(ii) Chicago Municipal Code §§ 4-144-010, 8-20-100;

(iii) Chicago Municipal Code § 8-20-120 to the extent it requires Chicago residents to

complete a firearms safety and training course before possessing a firearm in Chicago;

(iv) Chicago Municipal Code § 8-20-280;

(v) Chicago Municipal Code § 8-20-040;

(vi) Chicago Municipal Code §§ 8-20-010, -020, -030, -140(a), -180(c), to the extent

those provisions render it unlawful to carry or possess an operable firearm outside one's

home or fixed place of business as those terms are defined therein.

Dated: November 12, 2010                       Respectfully submitted,

By: _____

Stephen Kolodziej                         Charles J. Cooper*
Atty. ID # 6216375                      David H. Thompson*
BRENNER FORD MONROE & SCOTT LTD.     Jesse Panuccio*
33 N. Dearborn St., Suite 300           COOPER & KIRK, PLLC
Chicago, IL 60602                   1523 New Hampshire Ave., NW
Tel: (312) 781-1970                 Washington, D.C. 20036
Fax: (312) 781-9202                Tel: (202) 220-9600
Email: skolodziej@brennerlawfirm.com    Fax: (202) 220-9601
                                         Email: ccooper@cooperkirk.com

Brian S. Koukoutchos*
28 Eagle Trace
Mandeville, LA 70471
Tel: (985) 626-5052
bkoukoutchos@gmail.com

*Admitted *pro hac vice*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Jesse Panuccio, hereby certify that on this 12th day of November, 2010, I caused a copy of the foregoing to be served by first-class United States mail on:

Mara S. Georges
Michael A. Forti
Andrew W. Worseck
Rebecca Alfert Hirsch
William Macy Aguiar
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle St., Suite 1230
Chicago, IL  60602

_____
Jesse Panuccio