# Exhibit E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BRETT BENSON, KENNETH PACHOLSKI, )
KATHRYN TYLER, MICHAEL HALL SR., )
RICK PERE, and the ILLINOIS ASSOCATION )
OF FIREARMS RETAILERS, )
                                      )      **No. 10-CV-4184**

        **Plaintiffs,**           )      **Judge Ronald A. Guzman**

                                        )

**v.**                                    )

                                        )

**THE CITY OF CHICAGO and**      )
**RICHARD M. DALEY, Mayor of the**  )
**City of Chicago,**                   )

                                        )

        **Defendants.**        )

### PLAINTIFFS' NOTICE OF A DEPOSITION OF THE CITY OF CHICAGO
### PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 30(b)(6),

Plaintiffs will take the deposition by oral examination of Defendant City of Chicago at the

offices of Brenner, Ford, Monroe & Scott, Ltd., 33 North Dearborn Street, Suite 300, Chicago,

Illinois 60602, commencing at 9:30 a.m. on December 2, 2010, and continuing from day to day

thereafter until completed. The City of Chicago is required to designate one or more persons to

testify as to the matters known by, or reasonably available to, the City of Chicago as described

more particularly in Exhibit A hereto.

1

November 9, 2010                                   Respectfully submitted,

                                                  By: _____

Stephen Kolodziej                                 Charles J. Cooper*
Atty. ID # 6216375                                David H. Thompson*
BRENNER FORD MONROE & SCOTT LTD.                  Jesse Panuccio*
33 N. Dearborn St., Suite 300                     COOPER & KIRK, PLLC
Chicago, IL 60602                                 1523 New Hampshire Ave., NW
Tel: (312) 781-1970                               Washington, D.C. 20036
Fax: (312)781-9202                                Tel: (202) 220-9600
Email: skolodziej@brennerlawfirm.com              Fax: (202) 220-9601
                                                  Email: ccooper@cooperkirk.com


                                                  Brian S. Koukoutchos*
                                                  28 Eagle Trace
                                                  Mandeville, LA 70471
                                                  Tel: (985) 626-5052
                                                  bkoukoutchos@gmail.com

                                                  *Admitted *pro hac vice*
                                                  *Counsel for Plaintiffs*

## EXHIBIT A

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant City of Chicago is required to designate one or more officers, directors, managing agents, or other persons who consent to testify upon its behalf as to matters known or reasonably available to Defendant City of Chicago. Defendant City of Chicago shall set forth, for each person designated, the matters on which the person will testify.

## DEFINITIONS

As used herein, the following words and phrases shall have the following meanings:

1.    "Defendant" refers to the City of Chicago ("the City") and all of the City's subdivisions, agencies and instrumentalities, including but not limited to the Chicago City Council, the Chicago City Council Committee on Police and Fire, the Office of the City Clerk of Chicago, the Mayor of the City of Chicago, the Office of the Mayor of the City of Chicago, the Chicago Police Department, and the Chicago Independent Police Review Authority. The terms "Defendant" and "the City" also include all persons who are officials, employees, agents, or representatives of Defendant.

2.    "Person" means and refers to not only natural persons, but also firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, trusts, groups, and organizations; federal, state, or local government or government agencies, offices, bureaus, departments, entities, including any court (or judge or other officer thereof); other legal, business, or government entities; and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof or any combination thereof. "Person" includes the present and former officers, executives, partners, directors, trustees, employees,

1

attorneys, agents, representatives, and all other persons acting or purporting to act on behalf of the person and also its subsidiaries.

3.      The word "including" shall have its ordinary meaning and shall mean "including but not limited to" and shall not indicate limitation to the examples or items mentioned.

4.      The singular of each word shall be construed to include its plural and vice versa, and the root word and all derivations (*i.e.*, "ing," "ed," etc.) shall be construed to include each other.

5.      The words "and" as well as "or" shall be construed both conjunctively as well as disjunctively.

6.      The word "each" shall be construed to include "every" and vice versa.

7.      The word "any" shall be construed to include "all" and vice versa.

8.      The present tense shall be construed to include the past tense and vice versa.

9.      The masculine shall be construed to include the feminine and vice versa.

10.     The term "the Ordinance" refers to the firearms ordinance (and all provisions and amendments thereof) passed by the Chicago City Council on July 2, 2010, including those provisions currently codified as Chicago Municipal Code §§ 2-14-132, 2-14-190, 2-84-075, 4-144-010, 4-144-061, 4-144-062, 4-144-065, 8-20-010, 8-20-020, 8-20-030, 8-20-035, 8-20-040, 8-20-050, 8-20-060, 8-20-070, 8-20-080, 8-20-085, 8-20-090, 8-20-100, 8-20-110, 8-20-120, 8-20-130, 8-20-140, 8-20-145, 8-20-150, 8-20-160, 8-20-170, 8-20-180, 8-20-185, 8-20-190, 8-20-200, 8-20-205, 8-20-210, 8-20-220, 8-20-230, 8-20-240, 8-20-250, 8-20-260, 8-20-270, 8-20-280, 8-20-290, 8-20-300, 8-16-090, 8-24-005, 8-24-010, 8-24-020, 8-24-021, 8-24-027, 8-26-010, 8-26-020, 8-26-030, 8-26-040, 8-26-050, 8-26-060, 8-26-070, 8-26-080, 8-26-090, 8-26-100, 8-26-110, or any past or future codification for the firearms ordinance that has been or shall

be used. The term "the Ordinance" also includes all drafts, earlier versions, precursors, or amendments in any way reflecting, referring, or relating to the firearms ordinance passed by the Chicago City Council on July 2, 2010.

<u>MATTERS AS TO WHICH TESTIMONY IS REQUIRED</u>

1. The position, practices, experiences, and understanding of the City, Mayor Daley, and the City Council, regarding the drafting of the Ordinance, including but not limited to who was involved, what was discussed, whether any other language or alternative regulations were discussed or considered, and the reasons why the text of the Ordinance was selected, including any rational, important, substantial, or compelling reason.

2. The position, practices, experiences, and understanding of the City, Mayor Daley, and the City Council, regarding the legislative process relating to the Ordinance, including but not limited to: (i) the proceedings of the City Council's Police and Fire Committee held on June 18, June 29, and July 1, 2010; (ii) the selection of and communications with witnesses or potential witnesses who the City asked to, or who themselves requested to, appear at the proceedings of the City Council's Police and Fire Committee held on June 18, June 29, and July 1, 2010; (iii) communications between and among City officials involved with the formulation of, drafting of, or negotiations about the Ordinance; (iv) communications between any Alderman (or his or her staff) and the Chicago Police Department regarding the purposes or need for the Ordinance; (v) communications between the Mayor (or his staff) and the Chicago Police Department regarding the purposes or need for the Ordinance; and (vi) communications between anyone involved in drafting the Ordinance and the Chicago Police Department regarding the purposes or need for the Ordinance.

3. The position, practices, experiences, and understanding of the City regarding the

governmental purposes served by the Ordinance.

     4.     The position, practices, experiences, and understanding of the City regarding any less restrictive alternatives that the City considered enacting instead of the Ordinance.

     5.     The position, practices, experiences, and understanding of the City regarding the following firearm, crime, accident, and other demographic data and statistics from 1970 to present:

     a.   the time elapsed between notification of a crime in progress in Chicago and the arrival of Chicago police or other first-responders at the scene of the reported crime (i.e., "911 response time");

     b.   the number and characteristics of crimes committed annually in Chicago in or on residential yards, residential garages, residential porches, common areas of apartment and condominium complexes, other areas of residential homes, fixed places of business (including parking lots and garages), non-fixed places of business, streets, or sidewalks;

     c.   the number and characteristics of criminal offenses occurring annually in Chicago, including the type of weapon used, if any;

     d.   the number and characteristics of handguns possessed annually by residents of Chicago, including as categorized by lawful and unlawful possession;

     e.   the annual number and characteristics of illegally-possessed handguns confiscated by the City of Chicago;

     f.   the annual number and characteristics of illegally-possessed long guns confiscated by the City of Chicago;

     g.   the number and characteristics of lawfully-possessed handguns involved in

criminal activity on an annual basis in Chicago;

h.  the number and characteristics of unlawfully-possessed handguns involved in criminal activity on an annual basis in Chicago;

i.  the annual number and characteristics of firearms-related crimes committed in homes in Chicago;

j.  the annual number and characteristics of defensive gun uses in Chicago—that is, crimes against persons or property that were deterred, stopped, prevented, or otherwise ameliorated, or were attempted to be ameliorated, in any way by use of a firearm;

k.  the annual number and characteristics of accidental shootings in Chicago.

6.  The position, practices, experiences, and understanding of the City regarding how firearms, crime, and demographic data, statistics, or information about the City of Chicago are collected, stored, retrieved, calculated, processed, and used by the City.

7.  The position, practices, experiences, and understanding of the City regarding the customs, practices, and/or policies of Chicago police upon reporting to (i) the scene of a reported crime, (ii) the scene of a reported emergency, and/or (iii) a residence or business for the purposes of investigating a criminal suspect.

8.  The position, practices, experiences, and understanding of the City regarding the relationship between lawful possession of more than one operable handgun and the commission of crimes, for the period from 1970 to present.

9.  The position, practices, experiences, and understanding of the City regarding the relationship between lawful possession of more than one operable handgun and the incidence of accidental shootings, for the period from 1970 to present.

10.     The position, practices, experiences, and understanding of the City regarding firearms sales, firearms retailers, firearms dealers, firearms shops, firearms wholesalers, and firearms stores, occurring or present in Chicago from 1970 to present.

11.     The position, practices, experiences, and understanding of the City regarding firearms ranges and firearms trainers operating or conducting business in Chicago from 1970 to present.

12.     The position, practices, experiences, and understanding of the City regarding the relationship, if any, between firearms ranges and the incidence of gun-related crime.

13.     The position, practices, experiences, and understanding of the City regarding the relationship, if any, between firearms ranges and the incidence of accidental shootings.

14.     The position, practices, experiences, and understanding of the City regarding the relationship, if any, between firearms ranges and the proficient and safe handling of firearms.

15.     The position, practices, experiences, and understanding of the City regarding any City customs, policies, and/or practices relating to firearms training.

16.     The position, practices, experiences, and understanding of the City regarding the relationship between (i) the City's zoning laws and/or practices and (ii) firearms ranges and/or businesses selling firearms.

17.     The position, practices, experiences, and understanding of the City regarding the meaning of "fixed place of business" as that term is used in Chicago Municipal Code § 8-20-030, including any guidance provided to, or customs or practices of, City law enforcement personnel relating to enforcement of that provision.

18.     The position, practices, experiences, and understanding of the City regarding the meaning of "assembled and operable," "broken down in a nonfunctioning state," "trigger lock,"

and "temporarily inoperable," as those terms are used in Chicago Municipal Code § 8-20-040, including any guidance provided to, or customs or practices of, City law enforcement personnel relating to enforcement of that provision.

19.     The position, practices, experience, and understanding of the City regarding whether and how long guns may be lawfully transported in Chicago.

20.     The position, practices, experiences, and understanding of the City regarding the City's document retention policies in general and its efforts to preserve documents and electronically stored information in this case specifically.

## CERTIFICATE OF SERVICE

I, Jesse Panuccio, hereby certify that on this 9th day of November, 2010, I caused a copy of the foregoing to be served by first-class United States mail on:

Mara S. Georges
Michael A. Forti
Andrew W. Worseck
Rebecca Alfert Hirsch
William Macy Aguiar
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle St., Suite 1230
Chicago, IL 60602

Jesse Panuccio

# Exhibit F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **BRETT BENSON, KENNETH PACHOLSKI,** | ) | |
| **KATHRYN TYLER, MICHAEL HALL SR.,** | ) | |
| **RICK PERE, and the ILLINOIS ASSOCATION** | ) | |
| **OF FIREARMS RETAILERS,** | ) | |
| | ) | **No. 10-CV-4184** |
| **Plaintiffs,** | ) | **Judge Ronald A. Guzman** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE CITY OF CHICAGO and** | ) | |
| **RICHARD M. DALEY, Mayor of the** | ) | |
| **City of Chicago,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' NOTICE OF DEPOSITIONS

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 30, Plaintiffs will depose by oral examination the following officers and employees of Defendant City of Chicago before a notary public or any officer authorized to administer oaths on the dates and times specified below. Such depositions will be recorded by stenographic means.

| Name of Deponent | Date and Time |
|---|---|
| Ernest Brown | December 1, 2010 at 9:30 a.m. |
| Daniel Bartoli | December 3, 2010 at 9:30 a.m. |
| Jody P. Weis | December 8, 2010 at 9:30 a.m. |
| Patricia A. Scudiero | December 9, 2010 at 9:30 a.m. |

The depositions will take place at the offices of Brenner, Ford, Monroe & Scott, Ltd., 33 North Dearborn Street, Suite 300, Chicago, Illinois 60602, and will continue day to day until completed.

November 12, 2010

Respectfully submitted,

By: _____

1

Stephen Kolodziej
Atty. ID # 6216375
BRENNER FORD MONROE & SCOTT LTD.
33 N. Dearborn St., Suite 300
Chicago, IL 60602
Tel: (312) 781-1970
Fax: (312)781-9202
Email: skolodziej@brennerlawfirm.com

Charles J. Cooper*
David H. Thompson*
Jesse Panuccio*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
Email: ccooper@cooperkirk.com

Brian S. Koukoutchos*
28 Eagle Trace
Mandeville, LA 70471
Tel: (985) 626-5052
bkoukoutchos@gmail.com

*Admitted *pro hac vice*
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Jesse Panuccio, hereby certify that on this 12th day of November, 2010, I caused a copy of the foregoing to be served by first-class United States mail on:

Mara S. Georges
Michael A. Forti
Andrew W. Worseck
Rebecca Alfert Hirsch
William Macy Aguiar
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle St., Suite 1230
Chicago, IL  60602

_____
Jesse Panuccio

# Exhibit G

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| | | |
|---|---|---|
| Brett Benson, et al., | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.   10-CV-4184 |
| The City of Chicago, et al., | ) | |
| | ) | (If the action is pending in another district, state where: |
| _Defendant_ | ) | Northern District of Illinois          ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  David Hemenway
     Harvard Injury Control Research Center, 677 Huntington Avenue, Kresge Building Room 309, Boston, MA  02115

☑ _Testimony:_  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is _not_ a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Merrill Corporation<br>179 Lincoln St., Suite 401<br>Boston, MA  02111 | Date and Time:<br><br>11/16/2010 9:30 am |
|---|---|

The deposition will be recorded by this method:  __stenographically__

☐ _Production:_  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  __10/06/2010__

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail, and telephone number of the attorney representing _(name of party)_    __Brett Benson, et al.__
_____ , who issues or requests this subpoena, are:

Jesse Panuccio, 1523 New Hampshire Ave., NW, Washington, DC 20036
Email: jpanuccio@cooperkirk.com
Phone: (202) 220-9600

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   10-CV-4184

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Massachusetts

| | | |
|---|---|---|
| Brett Benson, et al., | ) | |
| *Plaintiff* | ) | Civil Action No.  10-CV-4184 |
| v. | ) | |
| The City of Chicago, et al., | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Northern District of Illinois          ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  David Hemenway
     Harvard Injury Control Research Center, 677 Huntington Avenue, Kresge Building Room 309, Boston, MA  02115

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Exhibit A for a list of requested documents and electronically-stored information.

| Place: Jesse Panuccio c/o Merrill Corporation<br>179 Lincoln St., Suite 401<br>Boston, MA  02111 | Date and Time:<br>10/27/2010 12:00 pm |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:     10/06/2010

*CLERK OF COURT*

                                                            OR

_____                    _____
*Signature of Clerk or Deputy Clerk*                         *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*     Brett Benson, et al.
_____ , who issues or requests this subpoena, are:

Jesse Panuccio, 1523 New Hampshire Ave., NW, Washington, DC 20036
Email: jpanuccio@cooperkirk.com
Phone: (202) 220-9600

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 10-CV-4184

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A

### Instructions

1.      You are required to furnish all documents, electronically stored information, or things in your possession, custody, or control, or known or available to you, regardless of whether such documents, electronically stored information, or things are possessed directly by you or your employees, agents, representatives, accountants, attorneys, investigators, or consultants.

2.      All documents and electronically stored information should be produced in the same manner as they are kept in the ordinary course of business, or the documents should be organized and labeled to correspond to the categories in these Requests.

3.      If you object to a portion or an aspect of a Request, state the grounds for your objection with specificity.  If any document called for by these Requests is withheld because you claim that such information is protected under the attorney-client privilege, work-product doctrine, or other privilege or doctrine, you are required to so state, specifying for each such document its title, subject matter, sender, author, each person to whom the original or copy was circulated, recipients of copies, the persons present during the communication, the identity of the privilege being asserted, and the basis upon which the privilege is claimed.

4.      If any portion of a document is included within these Requests, the entire document should be produced.

5.      If any document cannot be produced in full, you should produce that document to the fullest extent possible, specifying the reasons for your inability to produce the remainder, and stating whatever information, knowledge, or belief you have concerning the portion of the document that is not produced.

**Definitions**

1.     "Defendants" refers to the City of Chicago ("the City") and Richard M. Daley, in his official capacity as Mayor of the City of Chicago, and all of the City's subdivisions, agencies and instrumentalities, including but not limited to the Chicago City Council, the Chicago City Council Committee on Police and Fire, the Office of the City Clerk of Chicago, the Office of the Mayor of the City of Chicago, the Chicago Police Department, and the Chicago Independent Police Review Authority.  The term "Defendants" also includes all officials, employees, agents, or representatives of Defendants.

2.     "Person" means and refers to not only natural persons, but also firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, trusts, groups, and organizations; federal, state, or local government or government agencies, offices, bureaus, departments, entities, including any court (or judge or other officer thereof); other legal, business, or government entities; and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof or any combination thereof.  "Person" includes the present and former officers, executives, partners, directors, trustees, employees, attorneys, agents, representatives, and all other persons acting or purporting to act on behalf of the person and also its subsidiaries.

3.     "Document(s)" should be construed in the broadest sense permissible, and includes all "writings," "recordings," and "photographs," as those terms are defined in Rule 1001 of the Federal Rules of Evidence, as well as all "communications" as defined below.  Accordingly, "document(s)" includes, but is not limited to, all written, printed, recorded or graphic matter, photographic matter, sound reproductions, electronic mail, or other retrievable data (whether recorded, taped, or coded electrostatically, electromagnetically, optically or otherwise on hard

drive, diskette, compact disk, primary or backup tape, audio tape or video tape) from whatever source derived and however and by whomever prepared, produced, reproduced, disseminated or made. Without limiting the generality of the foregoing, "document(s)" includes the original and any non-identical copy and also every draft and proposed draft of all correspondence, internal memoranda, notes of meetings, telegrams, telexes, facsimiles, electronic mail, reports, transcripts or notes of telephone conversations, diaries, notebooks, minutes, notes, tests, reports, analyses, studies, testimony, speeches, worksheets, maps, charts, diagrams, computer printouts, and any other writings or materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith. In addition, the word "document(s)" encompasses all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, including but not limited to "email," "voice mail," digital images and graphics, digital or analog audiotapes and files, and digital or analog videotapes and files.

4.   "Communication" means any meeting, conversation (face-to-face, telephonic, or otherwise), discussion, telex message, cable, correspondence, message, electronic mail, voice mail, exchange, provision or relay of a document, or other occurrence whereby thoughts, opinions, data, or other information are transmitted between or among one or more persons, or through any photographic, mechanical, electrical or electronic device or devices for receiving, transmitting, or storing data or other information.

5.   The word "including" shall have its ordinary meaning and shall mean "including but not limited to" and shall not indicate limitation to the examples or items mentioned.

6.      The words or phrases "reflect," "refer," or "relate to"—or any tense or combination of those words or phrases—mean reflecting, referring to, relating to, regarding, discussing, concerning, constituting, mentioning, pertaining to, alluding to, or associated with.

7.      The singular of each word shall be construed to include its plural and vice versa, and the root word and all derivations (*i.e.*, "ing," "ed," etc.) shall be construed to include each other.

8.      The words "and" as well as "or" shall be construed both conjunctively as well as disjunctively.

9.      The word "each" shall be construed to include "every" and vice versa.

10.     The word "any" shall be construed to include "all" and vice versa.

11.     The present tense shall be construed to include the past tense and vice versa.

12.     The masculine shall be construed to include the feminine and vice versa.

13.     The "knowledge," "information," "possession," "custody," and "control" of a person shall be construed to include such person's agents, representatives, and attorneys.

14.     The words "the present" mean the date on which you respond to these requests.

15.     The term "the Ordinance" refers to the firearms ordinance (and all provisions and amendments thereof) passed by the Chicago City Council on July 2, 2010, including those provisions currently codified as Chicago Municipal Code §§ 2-14-132, 2-14-190, 2-84-075, 4-144-010, 4-144-061, 4-144-062, 4-144-065, 8-20-010, 8-20-020, 8-20-030, 8-20-035, 8-20-040, 8-20-050, 8-20-060, 8-20-070, 8-20-080, 8-20-085, 8-20-090, 8-20-100, 8-20-110, 8-20-120, 8-20-130, 8-20-140, 8-20-145, 8-20-150, 8-20-160, 8-20-170, 8-20-180, 8-20-185, 8-20-190, 8-20-200, 8-20-205, 8-20-210, 8-20-220, 8-20-230, 8-20-240, 8-20-250, 8-20-260, 8-20-270, 8-20-280, 8-20-290, 8-20-300, 8-16-090, 8-24-005, 8-24-010, 8-24-020, 8-24-021, 8-24-027, 8-26-010, 8-26-020, 8-26-030, 8-26-040, 8-26-050, 8-26-060, 8-26-070, 8-26-080, 8-26-090, 8-26-

4

100, 8-26-110, or any past or future codification for the firearms ordinance that has been or shall be used. The term "the Ordinance" also includes all drafts, earlier versions, precursors, or amendments in any way reflecting, referring, or relating to the firearms ordinance passed by the Chicago City Council on July 2, 2010.

## Requested Documents and Electronically Stored Information

1.      Please produce all documents, emails, and electronically stored information in your possession, custody, or control constituting, reflecting, referring, or relating to any testimony or advice you provided to Defendants regarding the Ordinance, firearms regulations generally, firearms-related crime, firearms-related accidents, and/or firearms training.

2.      Please produce all documents, emails, and electronically stored information in your possession, custody, or control constituting, reflecting, referring, or relating to any communication you had with any Defendant regarding the Ordinance, firearms regulations generally, firearms-related crime, firearms-related accidents, and/or firearms training.

3.      Please produce all documents, emails, and electronically stored information in your possession, custody, or control constituting, reflecting, referring, or relating to any analysis of, report on, description of, commentary on, or criticism of the Ordinance, Chicago firearms regulations generally, Chicago firearm-related crime, firearms-related accidents, and/or firearms training.

4.      Please produce all documents, emails, and electronically stored information in your possession, custody, or control reflecting, referring, or relating to the findings of the Chicago City Council included in the Ordinance (the "whereas clauses," attached hereto as Exhibit 1) and

any other finding of the Chicago City Council that allegedly supports the provisions of the Ordinance.

5.      Please produce all documents, emails, and electronically stored information in your possession, custody, or control constituting, reflecting, referring, or relating to any research, study, article, book or other material you referred to in the testimony or advice you provided to Defendants regarding the Ordinance, firearms regulations generally, firearms-related crime, firearms-related accidents, and/or firearms training.

# EXHIBIT 1

# ORDINANCE

**WHEREAS**, A recent study by the Centers for Disease Control and Prevention found that in the United States there were 30,896 deaths from firearms in 2006, making firearms one of the top ten causes of death in the country; and

**WHEREAS**, Annually, more than 100,000 people in our nation are shot or killed with a firearm, with more than 3,000 of these victims being children or teenagers; and

**WHEREAS**, The United States is one of the few remaining developed nations that places only a minimal restrictions on the sale or possession of firearms; and

**WHEREAS**, Firearm-related injuries and deaths are the cause of significant social and economic costs to the City and our communities and have a severe impact on our criminal justice and health care systems; and

**WHEREAS**, In 2009, in the City there were 1,815 aggravated batteries with a firearm, of which 83 were shootings inside a residence, and there were 379 murders with a firearm, of which 34 were murders involving a firearm inside a home; and

**WHEREAS**, Between the beginning of this year and June, 15, 2010, there were 742 aggravated batteries with a firearm, of which 36 took place inside a residence, and 152 murders with a firearm, of which 19 were inside a residence; and

**WHEREAS**, Given the dangerous and deadly nature of handguns, in 1982 the City of Chicago enacted a ban on registering handguns as a method to protect public safety and the health and welfare of its residents; and

**WHEREAS**, In 2008, the Supreme Court of the United States decided the case of *District of Columbia v. Heller*, which held that the Second Amendment to the United States Constitution protects an individual right to possess a firearm unconnected with service in the militia; and

**WHEREAS**, After the *Heller* decision, the City's handgun registration ban was challenged in the case of *McDonald v. the City of Chicago*; and

**WHEREAS**, On June 28, 2010, the Supreme Court issued its opinion in the *McDonald* case and ruled that the Second Amendment's right to possess a handgun for self-defense in the home also applied to the states; and

**WHEREAS**, Although the State of Illinois has already enacted several laws to regulate the sale and possession of firearms, these laws are not sufficient to protect the City from the unique and heightened risk of firearm violence, especially handgun violence, endemic in densely populated urban areas, and

**WHEREAS**, In order to provide for the ongoing protection of the public welfare and safety, it is essential for the City Council of the City of Chicago to promptly pass an ordinance that provides for reasonable regulation of firearms in compliance with the rulings of the United States Supreme Court, but still is effective in protecting the public from the potentially deadly consequences of gun violence in our City; and

**WHEREAS**, When a gun is registered with the City, certain personal identifying information, such as the registrant's address, is obtained so that a first responder can be advised that a gun is present in that home. In order to protect the privacy and safety of people registering guns, any information provided in the registration procedure should not be available to the public. The City is requesting that Illinois Attorney General Lisa Madigan issue an opinion, as expeditiously as possible, on whether the information provided to the City for gun registration is exempt from disclosure under the Illinois Freedom of Information Act, 5 ILCS 140, et seq.; and

**WHEREAS**, As a consequence of the United States Supreme Court decisions in *Heller* and *McDonald*, it is anticipated that gun ownership in many communities, including large urban areas, will increase. To ensure public safety and the welfare of a community, it is essential that local law enforcement agencies be made aware of any gun brought into their jurisdictions. Therefore, the United States Congress must pass a law mandating that the Bureau of Alcohol, Tobacco, Firearms and Explosives timely notify a local law enforcement agency of any purchase or sale of a firearm by a resident of that community; and

**WHEREAS**, In addition, the ability to have handguns in a home will expose taxpayers to greater costs and expenses associated with the increased number of incidents involving a first responder entering a home where a gun is present. In order to minimize the impact of these costs to the taxpayers, the United States Congress and the State of Illinois must pass laws that grant immunity for the City and its first responders from any civil liability for any accidental or lawfully intentional actions by the first responders in responding to a situation in a home where a gun is present and the first responder perceives a danger caused by the presence of the gun;

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Massachusetts

| | | |
|---|---|---|
| Brett Benson, et al., | ) | |
| *Plaintiff* | ) | Civil Action No.  10-CV-4184 |
| v. | ) | |
| The City of Chicago, et al., | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Northern District of Illinois        ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Harvard Injury Control Research Center,
     Kresge Building Third Floor, 677 Huntington Avenue, Boston, MA 02115

     ☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Exhibit A for a list of requested documents and electronically-stored information.

| Place: Jesse Panuccio c/o Merrill Corporation<br>179 Lincoln St., Suite 401<br>Boston, MA  02111 | Date and Time:<br><br>10/27/2010 12:00 pm |
|---|---|

     ☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

     The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  _10/06/2010_

| *CLERK OF COURT* | OR | |
|---|---|---|
| _____<br>*Signature of Clerk or Deputy Clerk* | | _____<br>*Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*     Brett Benson, et al.
_____, who issues or requests this subpoena, are:

Jesse Panuccio, 1523 New Hampshire Ave., NW, Washington, DC 20036
Email: jpanuccio@cooperkirk.com
Phone: (202) 220-9600

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   10-CV-4184

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A

### Instructions

1.      The Harvard Injury Prevention Center at the Harvard School of Public Health ("the organization") is required to furnish all documents, electronically stored information, or things in the organization's possession, custody, or control, or known or available to the organization, regardless of whether such documents, electronically stored information, or things are possessed directly by the organization or its employees, agents, representatives, accountants, attorneys, investigators, or consultants.

2.      All documents and electronically stored information should be produced in the same manner as they are kept in the ordinary course of business, or the documents should be organized and labeled to correspond to the categories in these Requests.

3.      If the organization objects to a portion or an aspect of a Request, state the grounds for the objection with specificity.  If any document called for by these Requests is withheld because the organization claims that such information is protected under the attorney-client privilege, work-product doctrine, or other privilege or doctrine, the organization is required to so state, specifying for each such document its title, subject matter, sender, author, each person to whom the original or copy was circulated, recipients of copies, the persons present during the communication, the identity of the privilege being asserted, and the basis upon which the privilege is claimed.

4.      If any portion of a document is included within these Requests, the entire document should be produced.

5.      If any document cannot be produced in full, the organization should produce that document to the fullest extent possible, specifying the reasons for the inability to produce the

remainder, and stating whatever information, knowledge, or belief the organization has

concerning the portion of the document that is not produced.

## Definitions

1.      "The organization" refers to the Harvard Injury Prevention Center at the Harvard School

of Public Health, including but not limited to any and all of its subdivisions, employees, officials,

agents, and representatives.

2.      "Defendants" refers to the City of Chicago ("the City") and Richard M. Daley, in his

official capacity as Mayor of the City of Chicago, and all of the City's subdivisions, agencies and

instrumentalities, including but not limited to the Chicago City Council, the Chicago City

Council Committee on Police and Fire, the Office of the City Clerk of Chicago, the Office of the

Mayor of the City of Chicago, the Chicago Police Department, and the Chicago Independent

Police Review Authority. The term "Defendants" also includes all officials, employees, agents,

or representatives of Defendants.

3.      "Person" means and refers to not only natural persons, but also firms, partnerships,

associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships,

syndicates, trusts, groups, and organizations; federal, state, or local government or government

agencies, offices, bureaus, departments, entities, including any court (or judge or other officer

thereof); other legal, business, or government entities; and all subsidiaries, affiliates, divisions,

departments, branches, and other units thereof or any combination thereof. "Person" includes the

present and former officers, executives, partners, directors, trustees, employees, attorneys,

agents, representatives, and all other persons acting or purporting to act on behalf of the person

and also its subsidiaries.

4.      "Document(s)" should be construed in the broadest sense permissible, and includes all "writings," "recordings," and "photographs," as those terms are defined in Rule 1001 of the Federal Rules of Evidence, as well as all "communications" as defined below.  Accordingly, "document(s)" includes, but is not limited to, all written, printed, recorded or graphic matter, photographic matter, sound reproductions, electronic mail, or other retrievable data (whether recorded, taped, or coded electrostatically, electromagnetically, optically or otherwise on hard drive, diskette, compact disk, primary or backup tape, audio tape or video tape) from whatever source derived and however and by whomever prepared, produced, reproduced, disseminated or made.  Without limiting the generality of the foregoing, "document(s)" includes the original and any non-identical copy and also every draft and proposed draft of all correspondence, internal memoranda, notes of meetings, telegrams, telexes, facsimiles, electronic mail, reports, transcripts or notes of telephone conversations, diaries, notebooks, minutes, notes, tests, reports, analyses, studies, testimony, speeches, worksheets, maps, charts, diagrams, computer printouts, and any other writings or materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith.  In addition, the word "document(s)" encompasses all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, including but not limited to "email," "voice mail," digital images and graphics, digital or analog audiotapes and files, and digital or analog videotapes and files.

5.      "Communication" means any meeting, conversation (face-to-face, telephonic, or otherwise), discussion, telex message, cable, correspondence, message, electronic mail, voice mail, exchange, provision or relay of a document, or other occurrence whereby thoughts, opinions, data, or other information are transmitted between or among one or more persons, or

through any photographic, mechanical, electrical or electronic device or devices for receiving, transmitting, or storing data or other information.

6.      The word "including" shall have its ordinary meaning and shall mean "including but not limited to" and shall not indicate limitation to the examples or items mentioned.

7.      The words or phrases "reflect," "refer," or "relate to"—or any tense or combination of those words or phrases—mean reflecting, referring to, relating to, regarding, discussing, concerning, constituting, mentioning, pertaining to, alluding to, or associated with.

8.      The singular of each word shall be construed to include its plural and vice versa, and the root word and all derivations (*i.e.*, "ing," "ed," etc.) shall be construed to include each other.

9.      The words "and" as well as "or" shall be construed both conjunctively as well as disjunctively.

10.     The word "each" shall be construed to include "every" and vice versa.

11.     The word "any" shall be construed to include "all" and vice versa.

12.     The present tense shall be construed to include the past tense and vice versa.

13.     The masculine shall be construed to include the feminine and vice versa.

14.     The "knowledge," "information," "possession," "custody," and "control" of a person shall be construed to include such person's agents, representatives, and attorneys.

15.     The words "the present" mean the date on which the organization responds to these requests.

16.     The term "the Ordinance" refers to the firearms ordinance (and all provisions and amendments thereof) passed by the Chicago City Council on July 2, 2010, including those provisions currently codified as Chicago Municipal Code §§ 2-14-132, 2-14-190, 2-84-075, 4-144-010, 4-144-061, 4-144-062, 4-144-065, 8-20-010, 8-20-020, 8-20-030, 8-20-035, 8-20-040,

8-20-050, 8-20-060, 8-20-070, 8-20-080, 8-20-085, 8-20-090, 8-20-100, 8-20-110, 8-20-120, 8-20-130, 8-20-140, 8-20-145, 8-20-150, 8-20-160, 8-20-170, 8-20-180, 8-20-185, 8-20-190, 8-20-200, 8-20-205, 8-20-210, 8-20-220, 8-20-230, 8-20-240, 8-20-250, 8-20-260, 8-20-270, 8-20-280, 8-20-290, 8-20-300, 8-16-090, 8-24-005, 8-24-010, 8-24-020, 8-24-021, 8-24-027, 8-26-010, 8-26-020, 8-26-030, 8-26-040, 8-26-050, 8-26-060, 8-26-070, 8-26-080, 8-26-090, 8-26-100, 8-26-110, or any past or future codification for the firearms ordinance that has been or shall be used. The term "the Ordinance" also includes all drafts, earlier versions, precursors, or amendments in any way reflecting, referring, or relating to the firearms ordinance passed by the Chicago City Council on July 2, 2010.

### Requested Documents and Electronically Stored Information

1.      Please produce all documents, emails, and electronically stored information in the organization's possession, custody, or control constituting, reflecting, referring, or relating to any testimony or advice the organization or any employee, representative, or agent thereof provided to Defendants regarding the Ordinance, firearms regulations generally, firearms-related crime, firearms-related accidents, and/or firearms training.

2.      Please produce all documents, emails, and electronically stored information in the organization's possession, custody, or control constituting, reflecting, referring, or relating to any communication the organization or any employee, representative, or agent thereof had with any Defendant regarding the Ordinance, firearms regulations generally, firearms-related crime, firearms-related accidents, and/or firearms training.

3.      Please produce all documents, emails, and electronically stored information in the organization's possession, custody, or control constituting, reflecting, referring, or relating to any

analysis of, report on, description of, commentary on, or criticism of the Ordinance, Chicago firearms regulations generally, Chicago firearm-related crime, firearms-related accidents, and/or firearms training.

4.     Please produce all documents, emails, and electronically stored information in the organization's possession, custody, or control reflecting, referring, or relating to the findings of the Chicago City Council included in the Ordinance (the "whereas clauses," attached hereto as Exhibit 1) and any other finding of the Chicago City Council that allegedly supports the provisions of the Ordinance.

5.     Please produce all documents, emails, and electronically stored information in the organization's possession, custody, or control constituting, reflecting, referring, or relating to any research, study, article, book or other material the organization or any employee, representative, or agent thereof referred to in testimony or advice provided to Defendants regarding the Ordinance, firearms regulations generally, firearms-related crime, firearms-related accidents, and/or firearms training.

# EXHIBIT 1

# ORDINANCE

**WHEREAS**, A recent study by the Centers for Disease Control and Prevention found that in the United States there were 30,896 deaths from firearms in 2006, making firearms one of the top ten causes of death in the country; and

**WHEREAS**, Annually, more than 100,000 people in our nation are shot or killed with a firearm, with more than 3,000 of these victims being children or teenagers; and

**WHEREAS**, The United States is one of the few remaining developed nations that places only a minimal restrictions on the sale or possession of firearms; and

**WHEREAS**, Firearm-related injuries and deaths are the cause of significant social and economic costs to the City and our communities and have a severe impact on our criminal justice and health care systems; and

**WHEREAS**, In 2009, in the City there were 1,815 aggravated batteries with a firearm, of which 83 were shootings inside a residence, and there were 379 murders with a firearm, of which 34 were murders involving a firearm inside a home; and

**WHEREAS**, Between the beginning of this year and June, 15, 2010, there were 742 aggravated batteries with a firearm, of which 36 took place inside a residence, and 152 murders with a firearm, of which 19 were inside a residence; and

**WHEREAS**, Given the dangerous and deadly nature of handguns, in 1982 the City of Chicago enacted a ban on registering handguns as a method to protect public safety and the health and welfare of its residents; and

**WHEREAS**, In 2008, the Supreme Court of the United States decided the case of *District of Columbia v. Heller*, which held that the Second Amendment to the United States Constitution protects an individual right to possess a firearm unconnected with service in the militia; and

**WHEREAS**, After the *Heller* decision, the City's handgun registration ban was challenged in the case of *McDonald v. the City of Chicago*; and

**WHEREAS**, On June 28, 2010, the Supreme Court issued its opinion in the *McDonald* case and ruled that the Second Amendment's right to possess a handgun for self-defense in the home also applied to the states; and

**WHEREAS**, Although the State of Illinois has already enacted several laws to regulate the sale and possession of firearms, these laws are not sufficient to protect the City from the unique and heightened risk of firearm violence, especially handgun violence, endemic in densely populated urban areas, and

**WHEREAS**, In order to provide for the ongoing protection of the public welfare and safety, it is essential for the City Council of the City of Chicago to promptly pass an ordinance that provides for reasonable regulation of firearms in compliance with the rulings of the United States Supreme Court, but still is effective in protecting the public from the potentially deadly consequences of gun violence in our City; and

**WHEREAS**, When a gun is registered with the City, certain personal identifying information, such as the registrant's address, is obtained so that a first responder can be advised that a gun is present in that home. In order to protect the privacy and safety of people registering guns, any information provided in the registration procedure should not be available to the public. The City is requesting that Illinois Attorney General Lisa Madigan issue an opinion, as expeditiously as possible, on whether the information provided to the City for gun registration is exempt from disclosure under the Illinois Freedom of Information Act, 5 ILCS 140, et seq.; and

**WHEREAS**, As a consequence of the United States Supreme Court decisions in *Heller* and *McDonald*, it is anticipated that gun ownership in many communities, including large urban areas, will increase. To ensure public safety and the welfare of a community, it is essential that local law enforcement agencies be made aware of any gun brought into their jurisdictions. Therefore, the United States Congress must pass a law mandating that the Bureau of Alcohol, Tobacco, Firearms and Explosives timely notify a local law enforcement agency of any purchase or sale of a firearm by a resident of that community; and

**WHEREAS**, In addition, the ability to have handguns in a home will expose taxpayers to greater costs and expenses associated with the increased number of incidents involving a first responder entering a home where a gun is present. In order to minimize the impact of these costs to the taxpayers, the United States Congress and the State of Illinois must pass laws that grant immunity for the City and its first responders from any civil liability for any accidental or lawfully intentional actions by the first responders in responding to a situation in a home where a gun is present and the first responder perceives a danger caused by the presence of the gun;

# Exhibit H

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-mc-10375-RWZ

IN RE SUBPOENAS SERVED ON DAVID HEMENWAY, PH.D.
AND THE HARVARD INJURY CONTROL RESEARCH CENTER

Relating to Litigation Pending in the United States District Court
for the Northern District of Illinois, Eastern Division captioned:

Brett Benson, et al., Plaintiffs

v.

The City of Chicago, et al., Defendants
No. 10-04184

ORDER ON MOTION TO QUASH

November 24, 2010

ZOBEL, D.J.

Plaintiffs in an action pending in the Northern District of Illinois, Benson v. The City of Chicago, et al., No. 10-04184 (Brett Benson, Kenneth Pacholski, Kathryn Tyler, Michael Hall, Rick Pere, and the Illinois Association of Firearms Retailers) (hereinafter "Plaintiffs") have served subpoenas duces tecum and ad testificandum on both David Hemenway, Professor of Health Policy at the Harvard School of Public Health and Director of the Harvard Injury Control Research Center, and the Center.  Neither is a party to the underlying suit, and both have moved to quash the subpoenas.

Plaintiffs challenge a recently-enacted Chicago City Ordinance which imposes certain restrictions on the possession of firearms in Chicago.  The "Responsible Gun Ownership Ordinance" was passed on July 2, 1010 in response to the U.S. Supreme

Court's decision in <u>McDonald v. Chicago</u>, 130 S.Ct. 3020 (2010), which held that the Second Amendment's fundamental rights applied to municipalities such as Chicago. Prior to voting on the Ordinance, the Chicago City Council held three hearings during which it heard testimony from various experts, including Professor Hemenway.  In the underlying challenge to the Ordinance, Plaintiffs apparently plan to contend that the rationale the City Council proffers for its enactment of the Ordinance is unsupported by the legislative record.  Consequently, Plaintiffs have directed their collective attention to Professor Hemenway's testimony to the Council.

The subpoenas duces tecum call for production of two categories of documents: (1) the studies and like materials Professor Hemenway specifically and publicly referenced in his testimony, and (2) communications he had with defendants and others regarding his testimony and advice to the City.

Plaintiffs apparently seek to depose Professor Hemenway about the following: (1) the factual circumstances surrounding his testimony, (2) the specific statements and evidence (such as his book) he submitted through his testimony, and (3) any other advice he gave to, or communication he had with, defendants during the legislative process that resulted in the passage of the Ordinance.

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Here, the record suggests that the Council apparently relied on some of Professor Hemenway's testimony in reaching its conclusion that "[h]andguns, to an extreme degree, disproportionately contribute to gun violence and death in Chicago."  <u>See</u> Statement of City Council Committee on Police and Fire of July 1, 2010 (Docket # 8, Ex. A,

Declaration of Jesse Panuccio, Esq.).  Therefore, to the extent Plaintiffs wish to attempt

to impugn the evidence proffered by Professor Hemenway about the relationship

between certain firearms and violence and/or death, I find that at least part of the

information sought is relevant.  The motion to quash is denied as to that part of the

subpoenas duces tecum which request production of the studies and like materials

Professor Hemenway specifically and publicly referenced in his testimony.  In all other

respects, motion to quash is allowed.  The motion to quash the subpoena ad

testificandum is also allowed.[1]

Accordingly, it is Ordered that Professor Hemenway shall identify (both by name,

and location the same may be found) all published studies, research papers, books,

and like materials referenced by him during his testimony.


*November 24, 2010*
_____
DATE

*Rya W. Zobel*
_____
RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE


----

[1] Fed. R. Civ. P. 45(c)(3)(B)(ii) provides that a court may quash a subpoena if it
requires "disclosing an unretained expert's opinion or information that does not describe
specific occurrences in dispute and results from the expert's study that was not
requested by the party."  Plaintiffs contend that the information sought here is
"information that [] describes specific occurrences in dispute" and is therefore
discoverable.  I disagree.  Professor Hemenway's earlier testimony is not fairly
characterized as the "specific occurrence[] in dispute" here.  Plaintiffs impermissibly
seek information beyond that he gave to the City Council, which is tantamount to an
unretained expert's opinion.  This the rule does not permit.

# Exhibit I





**City of Chicago**
Richard M. Daley, Mayor

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

## VIA FACSIMILE AND U.S. MAIL

December 8, 2010

Jesse Panuccio
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036

### Re: Benson v. City of Chicago, 10 C 4184

Dear Jesse:

I write regarding Plaintiffs' Rule 30(b)(6) deposition notice and deposition notices for Jody Weis, Ernest Brown, and Patricia Scudiero. On December 3, the parties discussed certain matters concerning the scope and propriety of these depositions, and we agreed to take Plaintiffs' positions under advisement and supply you with our response. Our response follows below.

#### Rule 30(b)(6) Deposition Notice

Topics 1, 2 & 4

In our view, the scope of these topics mirrors the scope of requests 1 & 2 of Plaintiffs' First Set of Requests for Production; they seek testimony about the drafting history of the Ordinance and the legislative process leading to its passage. We therefore object to producing a witness on these topics because, as more fully set forth in my November 24 letter, these matters are not relevant. Further, the City Council is a collective entity that acts and speaks through legislation. As a legal matter, a single City witness – even an Alderman or City Commissioner – cannot speak for the City Council, including its bases for enacting the ordinance or its decision to choose particular regulatory provisions or language. In addition, it is not possible to produce a witness or even a handful of witnesses who could competently speak to each Alderman's or City official's individual course of communications or other involvement with passage of the Ordinance. In reality, each Alderman and official would need to be produced separately. Thus, even if these topics had some relevance (and they do not), the resulting burden of compliance far outweighs it.

Topic 3

This topic seeks testimony regarding the "governmental purposes" served by the Ordinance. To the extent this topic seeks testimony about matters reflected in the legislative record, we object for the reasons set forth above. To the extent the topic seeks testimony about governmental purposes that are not







**City of Chicago**
Richard M. Daley, Mayor

Department of Law

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

reflected in the legislative record, we are amenable to producing a witness to the extent that the City has specific experience with respect to that purpose, and to the extent that it is possible to produce a competent witness.

Topics 5 & 6

As we agreed in our conversation, these topics, which essentially track the document requests seeking CPD data, are limited to testimony regarding how the data is collected, input, searched, or produced. They also encompass testimony regarding why data might not exist on a given point, or what particular pieces of data mean or reflect. The topics do not encompass testimony regarding what conclusions, inferences, or other uses may be drawn from the data. Subject to these understandings we are willing to produce a responsive witness to discuss the CPD data that the City might produce. As the parties previously have discussed and agreed, the City has not yet determined its position on whether any or all of the requested CPD data is relevant or otherwise not objectionable because it is still analyzing what data exists and various logistical issues surrounding its production. We will provide the City's position on these matters very soon.

Topic 7

We believe this topic, as written, is extremely overbroad and ambiguous. In the parties' conversation, Plaintiffs appeared willing to limit this topic to the training and assumptions of police officers regarding the presence of firearms at homes or business to which they are called to respond on an emergency basis. Even so, we fail to see how this inquiry is relevant. Plaintiffs assert the topic is relevant to the extent that the Ordinance was motivated by a desire to protect first responders. But we do not see the connection between CPD first response training and the goal of protecting first responders by limiting the number or manner of firearms in locations they are called to respond to. Even if officers are trained, as a matter of best practices, to prepare for the worst and assume that a resident has multiple illegally-possessed or maintained firearms, that would not mean that the resident in fact does so, or that the Ordinance otherwise fails to protect first responders by reducing the number of homes containing illegally-possessed or maintained firearms.

Topics 8, 9, 12, 13, 14

These topics seek testimony about the City's "position, practices, experiences, and understandings" of the "relationship" between various subjects (*e.g.*, the relationship between possession of more than one operable handgun and the incidence of accidental shootings, or the relationship between firearms

2







**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

ranges and gun-related crime). The use of these quoted terms renders the requests particularly overbroad and ambiguous. (Indeed, problems posed by these terms pervade many other topics as well). To the extent that these topics track corresponding document requests seeking CPD data (and they appear to do so), we are willing to produce a witness as outlined above in response to Topics 5 & 6. Moreover, to the extent that the City proffers as a basis for the challenged Ordinance provisions an understanding of or experience with these topics beyond that disclosed in the legislative record, we are willing to produce a witness as outlined above in response to Topic 3.

Topics 10 & 11

As we agreed in our conversation, these topics are limited to seeking the understanding or experience that City departments may have relating to the identified topics (firearms vendors and firearms ranges operating in the City). Further, the topics are limited to the location of such entities and any deleterious effects resulting from these entities. Even so, however, for the reasons set forth in my November 24 letter, we believe this line of inquiry is irrelevant to the extent it seeks testimony about non-CPD vendors or ranges. As such, we are willing to produce a witness to speak to the topics only insofar as they encompass CPD vendors or ranges.

Topic 15

This topic seeks testimony regarding City customs, policies, or practices regarding firearms training. To the extent this topic seeks testimony regarding the City's position on civilian training, that position is reflected in the Ordinance, its legislative history, and regulations promulgated thereunder. We are willing to produce a CPD witness to testify to the meaning and application of its regulations, but (as discussed above), testimony on the Ordinance or its history is irrelevant and improper. We are further willing to produce a witness to testify as to firearms training policies and practices employed by the CPD in the course of training its officers.

Topic 16

This topic seeks testimony regarding the "relationship" between the City's zoning laws and firearms stores or ranges. After discussing the matter, Plaintiffs indicated they were seeking testimony regarding whether the existing zoning code permits firearms stores or ranges, and, if not, whether the City would proceed to amend the code to accommodate such uses should Plaintiffs prevail on their Second Amendment challenges to the bans on stores and ranges. Plaintiffs indicated that, if the City represents that it would so amend the code,



3





**City of Chicago**
Richard M. Daley, Mayor

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

this topic may become unnecessary. The parties agreed to consider and discuss the matter further, and it is our understanding that the topic will be deferred for the time being.

Topics 17 & 18

These topics seek testimony about particular Ordinance terms – *i.e.*, "fixed place of business," "assembled and operable," "broken down in a nonfunctioning state," "trigger lock," and "temporarily inoperable." For the reasons outlined above, it is neither proper nor feasible to produce a witness to testify to the legislative meaning of these terms. We are willing, however, to produce a witness to testify as to how these terms are interpreted and applied by the CPD in enforcing the Ordinance.

Topic 19

This topic seeks testimony about the transportation of long guns in Chicago. We do not see how this topic is relevant. You indicated that you would review the topic and get back to us with your rationale for its inclusion.

Topic 20

This topic seeks testimony about document retention practices and polices. Plaintiffs indicated a willingness to defer the topic for now and revisit it should any future document production indicate a need to conduct discovery on this topic, and we agree with that approach.

One final note concerning all of the topics: Our production of a witness on a topic does not waive or otherwise prejudice our right to raise any objection to questions posed in the deposition, including but not limited to relevance, scope, vagueness, or overbreadth.

**Depositions of City Officials**

Plaintiffs have also noticed the individual depositions of Jody Weis, Ernest Brown, Daniel Bartoli, and Patricia Scudiero. We will produce Sgt. Bartoli, who will testify as to CPD firearms ranges and training. However, we object to the remaining depositions. They seek the testimony of high-ranking and very busy senior City officials. Witnesses of that sort are not subject to deposition unless a plaintiff demonstrates a need for the information sought through testimony, and that the information cannot be obtained through alternative forms of discovery. *See, e.g., Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997); *Bogan v. City of Boston*, 489 F.3d 487 (1st Cir. 2007). Plaintiffs



4





**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

have not indicated why other discovery methods are insufficient to obtain whatever information they would hope to obtain via these depositions. Nor does the fact that Superintendent Weis and Acting Deputy Superintendent Brown testified before the Committee on Police and Fire subject them to deposition. (Indeed, the federal court in Boston has already held this in the course of quashing Plaintiffs' attempt to depose Professor Hemenway). Their Committee testimony is a matter of public record and has been produced to Plaintiffs. For reasons we have previously discussed, further discovery into the legislative record is improper. Finally, these depositions appear to be an improper and/or premature attempt to solicit expert testimony.

Again, we appreciate Plaintiffs' good-faith engagement and dialogue on these issues. Please contact me if you have any questions.

Sincerely,

Andrew Worseck
312-744-7129



5



# Exhibit J

# Cooper & Kirk

**Lawyers**
A Professional Limited Liability Company
**1523 New Hampshire Avenue, N.W.**
Washington, D.C. 20036

Jesse Panuccio
jpanuccio@cooperkirk.com

(202) 220-9600
Fax (202) 220-9601

December 10, 2010

By First Class Mail and Email

Andrew Worseck
City of Chicago, Department of Law
30 North LaSalle Street
Suite 900
Chicago, IL 60602
Email: andrew.worseck@cityofchicago.org

Re: *Benson v. City of Chicago*, No. 10-4184 (N.D. Ill.)

Dear Drew,

Thank you for your letter of December 8, 2010, which was a follow-up to our telephone conference of December 3, 2010. The letter sets out the City's position as to (i) whether it will produce witnesses to testify about the topics listed in Plaintiffs' notice of a deposition pursuant to Fed. R. Civ. P. 30(b)(6), and (ii) whether the City will produce individual city officials upon whom Plaintiffs have served notices of deposition. We have considered the City's positions and respond as follows.

## RULE 30(b)(6) DEPOSITION NOTICE

Topics 1, 2, & 4

The City objects to producing a witness that can speak to these topics to the extent "they seek testimony about the drafting history of the Ordinance and the legislative process leading to its passage." For the reasons stated in my November 5 letter, Plaintiffs believe these matters are relevant and discoverable and will thus continue to seek deposition testimony on this topic.

The City further objects that "a single City witness ... cannot speak for the City Council, including its bases for enacting the ordinance." But Plaintiffs are not asking the City to produce a witness who can speak for the entire City Council; we are asking for a witness who can testify on behalf of the City of Chicago as a party to this case—a request that is entirely appropriate under the Federal Rules. *See* Fed. R. Civ. P. 30(b)(6) ("In its notice of subpoena, a party may name as the deponent ... a governmental agency...."). It is equally true that a corporation often cannot produce a Rule 30(b)(6) representative who can reasonably be said to the know the mind

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
December 10, 2010
Page 2 of 8

of every employee of the corporation; but a corporation served with a Rule 30(b)(6) deposition notice must still produce witnesses that can "testify about information known or reasonably available to the organization." Plaintiffs believe that the factual details of the legislative process surrounding the Ordinance is information reasonably available to the City; after all, some City employee (or small group of employees) was likely responsible for drafting the ordinance and organizing the hearings held by the City Council. *See, e.g.*, Proceedings of City of Chicago, Committee on Police and Fire, July 1, 2010, Tr. at 7 (testimony of Mara Georges) (stating that "Rose Kelly" was "the drafter of the Responsible Gun Ownership Ordinance"). Likewise, the City, as a party to this suit, will defend the Ordinance by putting forward the governmental purposes, and bases for those purposes, that allegedly support the ordinance. Thus, just as the City can answer, and has an obligation to answer, interrogatories seeking this information, it would seem that the City can identify a witness who can testify about these purposes.

The City further objects that "it is not possible to produce a witness or even a handful of witnesses who could competently speak to each Alderman's or City official's individual course of communications or other involvement with passage of the Ordinance." This is a fair point and we are willing to stipulate that the City need not produce a Rule 30(b)(6) witness (or witnesses) who can speak to the entirety of communications by City officials regarding the Ordinance.[1] This does not mean, however, that the City is unable to produce a witness who can speak about the legislative process in general—e.g., the drafting process, the selection of witnesses for the hearings, and the role of the Mayor's office and other key players in the process.

One further note on these issues: Topic 1 seeks testimony regarding "whether any ... alternative regulations were discussed or considered" and Topic 4 seeks testimony "regarding any less restrictive alternatives that the City considered in enacting instead of the Ordinance." If the City is willing to enter a stipulation that the only alternative regulations or less restrictive alternatives considered by the City are found in (i) the transcripts of the June 18, June 19, July 1 hearings of the Committee on Police and Fire, and/or (ii) the video recording of the July 2, 2010 proceedings of the Chicago City Council (and City Council Journal pages relating thereto), then Plaintiffs are willing to withdraw the request for a witness as to these portions of Topics 1 and 4.

Topic 3

---

[1] We continue to disagree about whether such documents must be produced pursuant to Plaintiffs' document requests, and thus the matter will ultimately be settled by the Court. Plaintiffs thus reserve the right to depose specific City employees about their communications if and when those communications are produced.

Cooper & Kirk
Lawyers

Andrew Worseck, Esq.
December 10, 2010
Page 3 of 8

Topic 3 seeks testimony "regarding the governmental purposes served by the Ordinance." The City's position is that it will produce a witness to testify about "governmental purposes that are not reflected in the legislative record" but will not produce a witness to testify about "matters reflected in the legislative record." For reasons noted above and in my November 5 letter, Plaintiffs believe testimony regarding governmental purposes reflected in the legislative record is relevant and discoverable and thus the notice stands to the extent it seeks such testimony.

Furthermore, as you know, it is Plaintiffs' position that the City cannot formulate ex post governmental purposes that do not appear in the legislative record. But to the extent the City plans to defend on such grounds, we have a right to discover this information. *See* Fed. R. Civ. P. 26 (b)(1) ("Parties may obtain discovery regarding any nonprivileged matter to any party's … defense.").

Topics 5 & 6

We are generally in agreement on these topics: to the extent the City produces a witness who can testify regarding the technical nature of data (how it is kept, whether it exists, what it means as a technical matter), Plaintiffs will not ask that witness to testify as to "what conclusions, inferences, or other uses may be drawn from the data." Plaintiffs reserve the right, however, to ask this latter set of questions about this data to witnesses tendered to testify about other topics to which the data relates (e.g., to the bases underlying the City's purported government purposes).

Topic 7

Your letter correctly states that Plaintiffs are "willing to limit this topic to the training and assumptions of police officers regarding the presence of firearms at homes or businesses to which they are called to respond on an emergency basis." If the City will agree to a stipulation that the purpose or basis for the challenged Ordinance provisions is not to protect first responders, then Plaintiffs will agree that no testimony on this topic is needed. But if the City cannot so stipulate, the topic is relevant and the deposition is warranted. The City's argument to the contrary assumes the very facts that may be in dispute and that the testimony at issue may illuminate.

Topics 8, 9, 12, 13, 14

If the City will agree to a stipulation that the relationship between lawful possession of more than one operable firearm and the commission of crimes is not a basis for, or related to, the ban on possession of more than one operable firearm, then no testimony on Topic 8 is needed. If the City will agree to a stipulation that the relationship between lawful possession of more than one operable firearm and the incidence of accidental shootings is not a basis for, or related to, the ban on possession of more than one operable firearm, then no testimony on Topic 9 is needed. If

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
December 10, 2010
Page 4 of 8

the City will agree to a stipulation that the relationship between firearms ranges and the incidence of gun-related crime is not a basis for, or related to, the ban on firearms ranges, then no testimony on Topic 12 is needed. If the City will agree to a stipulation that the relationship between firearms ranges and the incidence of accidental shootings is not a basis for, or related to, the ban on firearms ranges, then no testimony on Topic 13 is needed. But if the City cannot agree to the particular stipulation for a given topic, then Plaintiffs maintain that the testimony is relevant and warranted. On these topics, Plaintiffs are not willing to agree to the limitation discussed with respect to Topics 5 & 6.

As for Topic 14—testimony regarding "the relationship, if any, between firearms ranges and the proficient and safe handling of firearms"—Plaintiffs believe this is directly relevant to, among other things, the City's defense of its ban on firing ranges. The City has maintained that the ban does not pose an "undue burden" on Chicago residents seeking to exercise their right to keep and bear arms and that it is a "reasonable regulation." The relationship between firearms ranges and the proficient and safe handling of firearms would likely be a significant factor in the balancing tests that these defenses seem to invite.[2]

Plaintiffs appreciate that "to the extent that the City proffers as a basis for the challenged Ordinance provisions an understanding of or experience with [Topics 8, 9, 12, 13, and 14] beyond that disclosed in the legislative record," Defendants will produce a witness to testify regarding that understanding and experience. As we have noted, however, Plaintiffs do not agree that the testimony may be restricted only to these extra-record understandings and experiences. Again, while the legislative record is fixed as to purposes and evidence that Defendants may use to defend the challenged Ordinance provisions, Plaintiffs are certainly free to question and probe those purposes and evidence.

Topics 10 & 11

These topics seek testimony regarding firearms vendors and firearms ranges present in the City prior to and after the enactment of the 1982 firearms ordinance. As your letter notes, Plaintiffs are generally willing to limit the topics "to the location of such entities and any deleterious effects resulting" for their presence or operation. (We also reserve the right to inquire about the relationship between the City's zoning laws and policies and these entities.) The City's position, however, is that even subject to this limitation it is willing "to produce a witness to speak to the topics only insofar as they encompass CPD vendors or ranges." Plaintiffs will depose a witness on this subcategory, but the bans at issue deal with *private* vendors and ranges, and thus the topic is clearly relevant and Plaintiffs cannot agree to this restriction.

---

[2] Plaintiffs, of course, do not concede that either standard is appropriate or permissible in the Second Amendment context.

# Cooper & Kirk
#### Lawyers

Andrew Worseck, Esq.
December 10, 2010
Page 5 of 8

Topic 15

    This topic seeks testimony regarding the City's "customs, policies, and/or practices relating to firearms training." Plaintiffs appreciate that the City will produce a witness to testify regarding the CPD's regulations and training policies and practices. Plaintiffs cannot agree, however, to limit the topic to this subcategory. Plaintiffs would also like the City to produce a witness who can speak to the City's customs, policies, and/or practices with respect to non-CPD security personnel (such as private security guards). And as to "testimony on the Ordinance or its history," the parties disagreement is now manifest and need not be reiterated here; Plaintiffs maintain the deposition notice in this regard.

Topic 16

    Topic 16 seeks testimony regarding "the relationship between (i) the City's zoning laws and/or practices and (ii) firearms ranges and/or businesses selling firearms." This topic does *not* encompass testimony regarding requirements the Zoning Ordinance places on all businesses (e.g., rules relating to setbacks, floor-area ratios, parking spaces, window transparency), but it does generally seek testimony regarding the City's position on whether firearms retail businesses and firing ranges are permitted under the Zoning Ordinance—and, if not: (i) the reasons why, and (ii) the process for acquiring permitted use status. Such testimony is plainly relevant. Indeed, this is *precisely* the testimony the City elicited from Commissioner Scudiero during the preliminary injunction hearing in *Ezell*. Moreover, as we have noted in conversation and correspondence, Plaintiffs will soon amend their complaint to challenge the Zoning Ordinance to the extent it bans firearms retailers and ranges. This topic directly relates to that claim and to the scope of the relief Plaintiffs may require. Accordingly, upon due consideration, we believe the City is under an obligation to tender a witness who can testify as to this topic and we do not see any reason to defer the issue further.[3]

Topics 17 & 18

---

[3] Your letter states that "it is [the City's] understanding that the topic will be deferred for the time being." It was our understanding that further consideration would be deferred pending the City's elaboration of its position on the Zoning Ordinance in your letter. I apologize if there was a misunderstanding in this regard. In any event, upon review of Commissioner Scudiero's testimony, we believe this deposition is necessary unless the City enters a stipulation stating that firearms retail businesses and firearms ranges are permitted uses under the current Zoning Ordinance.

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
December 10, 2010
Page 6 of 8

We are in agreement and Defendants will "produce a witness to testify as to how these terms are interpreted and applied by the CPD in enforcing the Ordinance."

Topic 19

Plaintiffs respectfully withdraw Topic 19 as written. Its inclusion in the deposition notice resulted from a misunderstanding of the Ordinance's requirements and restrictions, which we have now clarified to our satisfaction. Plaintiffs do, however, request that the City produce a witness to testify as to how the term "lawful transportation," as used in MCC § 8-20-020(b)(17) and as incorporated in MCC § 8-20-030(b)(1), is interpreted and applied by the CPD in enforcing the Ordinance.

Topic 20

We are in agreement that we can "defer this topic for now and revisit it should any future document production indicate a need to conduct discovery on this topic."

## DEPOSITIONS OF CITY OFFICIALS

Your letter states that the City "will produce Sgt. Bartoli, who will testify as to CPD firearms ranges and training." We appreciate that this deposition can move forward without further dispute, and we propose January 26, 27, or 28, 2011, as the date. Please let me know as soon as possible if one of these dates will work for your office and for Sgt. Bartoli.

As to Superintendent Weis, Sgt. Brown, and Commissioner Scudiero, your letter states that the City will not produce these officials pursuant to Plaintiffs' notices. The City's position is that "these are high-ranking and very busy senior City officials" who are "not subject to deposition unless a plaintiff demonstrates a need for the information sought through testimony, and that the information cannot be obtained through alternative forms of discovery." For this proposition, the City cites *Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997). But *Olivieri* is about cases involving defenses of "official immunity" and the actual standard enunciated there was that high-level city officials "should not have to spend their time giving depositions … unless there is some reason to believe that the deposition will produce or lead to admissible evidence." *Id.* at 409-10. The depositions at issue here meet this standard—and, in any event, they also meet the standard enunciated in your letter. Plaintiffs have not randomly selected City officials for deposition: each has been chosen because he or she has actual first-hand knowledge of facts that may be critical in this lawsuit.

Superintendent Weis and Sgt. Brown each testified at the hearings held by the City Council Committee on Police and Fire; they offered numerous facts as well as positions on the meaning of those facts. The City Council has pointed to this testimony as the basis for the

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
December 10, 2010
Page 7 of 8

Ordinance. For the reasons indicated in my letter of November 5, as well as during our several meet-and-confers, Plaintiffs are entitled to probe this testimony.

As for the deposition of Commissioner Scudiero, we think the relevancy of, and need for, her testimony should be readily apparent to Defendants as the City has already called her as a key fact witness in the *Ezell* case, which—like this case—challenges the constitutionality of the City's ban on ranges. In that case, Commissioner Scudiero testified about the Zoning Ordinance and its relationship to "gun ranges" generally (and not specifically about the mobile ranges at issue in that case). They City introduced this witness over the *Ezell* plaintiffs' objection that "the whole testimony is irrelevant."

### PROPOSAL FOR BRIEFING

We had previously agreed that if the parties could not come to agreement about the propriety of these depositions, the City would file a motion to quash by December 13, so that briefing on this and other discovery issues could unfold, at least in substantial part, during the month of December. Based on our most recent telephonic conversations, I understand that this date may no longer be feasible. Upon further consideration, and in light of the fact that Plaintiffs will be moving to compel on some of our document requests and interrogatories, we propose that instead of Defendants filing a motion to quash next week, Plaintiffs file an omnibus motion to compel by December 31, 2010.[4] This would put all the issues before the Court in one round of briefing, rather than requiring the two rounds of (substantively overlapping) briefing that would accompany a motion to quash by Defendants and a motion to compel by Plaintiffs. We hope this would permit the Court to rule, if it so chose, by the end of January. In the meantime, Plaintiffs could proceed with those depositions to which the City has agreed (Sgt. Bartoli and certain topics under in the Rule 30(b)(6) notice).

\*\*\*

In closing, allow me to echo your appreciation for the good-faith nature in which our discussions over discovery have unfolded thus far. I hope the cordiality will continue even in the face of disagreement on the merits of various issues and robust advocacy on behalf of our respective clients.

---

[4] Plaintiffs recognize that the when a party refuses to sit for a duly noticed deposition, the burden is on the deponent to move to quash rather than on the noticing party to move to compel. For purposes of efficiency for the parties and the Court, however, we are proposing this alternative. By advancing this proposal, Plaintiffs in no way agree to shift the burdens incumbent upon each party under the Federal Rules of Civil Procedure and do not concede in any way that the style of briefing reflects on the merits of the parties' positions.

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
December 10, 2010
Page 8 of 8

Sincerely,

Jesse Panuccio

Enclosures

Cc:    Michael Forti, Esq.
       William Aguiar, Esq.
       Rebecca Hirsch, Esq.
       David Thompson, Esq.
       Stephen Kolodziej, Esq.

# Exhibit K

# Cooper & Kirk

### Lawyers
A Professional Limited Liability Company
## 1523 New Hampshire Avenue, N.W.
### Washington, D.C. 20036

Jesse Panuccio
jpanuccio@cooperkirk.com

(202) 220-9600
Fax (202) 220-9601

November 5, 2010

<u>By First Class Mail and Email</u>

Andrew Worseck
City of Chicago, Department of Law
30 North LaSalle Street
Suite 900
Chicago, IL 60602
Email: andrew.worseck@cityofchicago.org

Re: *Benson v. City of Chicago*, No. 10-4184 (N.D. Ill.)

Dear Drew:

I write to follow up on our meet-and-confer of November 2, 2010, and in response to your letter of November 4 regarding that conference. At the outset, let me thank you for making the time for the somewhat lengthy call and for the cordial and forthright nature of our conversation.

I had requested the conference, pursuant to Local Rule 37.2, to discuss Defendants' objections to Plaintiffs' First Set of Requests for Production and Interrogatories. To date, Defendants have objected, on various grounds, to producing the majority of documents requested, but have produced: (i) the record of proceedings held by the Chicago City Council Committee on Police and Fire on June 18, June 29, and July 1, 2010; (ii) a web link to the video-recording of the proceedings of the Chicago City Council held on July 2, 2010; (iii) pages from the City Council Journal of Proceedings relating to the July 2, 2010 proceedings; (iv) Chicago Police Department regulations promulgated pursuant to the Responsible Firearms Owners Ordinance enacted by the Chicago City Council on July 2, 2010 (hereinafter, "the Ordinance"); and (v) the City's formal responses to plaintiffs' discovery requests in *Ezell v. City of Chicago*, No. 10-cv-5135 (N.D. Ill.). During our call, we had a helpful conversation in which you explained the City's objections more fully and we explained our basis for seeking the information requested. Both parties agreed to take the other's positions under advisement, you agreed to consult with your clients regarding some factual and logistical issues, and we agreed to reconvene early next week.

Cooper & Kirk
    Lawyers

Andrew Worseck, Esq.
November 5, 2010
Page 2 of 6

      In general, the City continued to question the relevance of the materials requested. Throughout our conversation, I articulated some of the bases we have for seeking these materials, which include:

- According to the Ordinance's preamble, all of its provisions are justified by the need "to provide for the ongoing protection of the public welfare and safety." Doc 24-2 at 2. *See also* Doc 37-1 at 18, *Ezell v. City of Chicago*, No. 10-cv-05135 (N.D. Ill. Sept. 20, 2010) (asserting that "comprehensive scheme" in Ordinance is justified by interest in "public health, safety, and welfare"). In challenging provisions of the Ordinance, Plaintiffs are entitled to take discovery to (i) explore whether this is the actual purpose of the Ordinance or merely a pretext, (ii) test the bases and evidence for the conclusion that firearms possessed by law-abiding citizens are detrimental to this interest, (iii) explore the degree of fit between the provisions at issue and this asserted purpose. While it is our position that the City—in defending the Ordinance—is limited to the materials and purposes found in the legislative record, *Shaw v. Hunt*, 517 U.S. 899, 908 n.4 (1996), *rev'd on other grounds Hunt v. Cromartie*, 529 U.S. 1014 (2000), that restriction does not mean that Plaintiffs are barred from discovering and introducing evidence to challenge those materials and purposes, *see, e.g.*, *Roe v. Wade*, 410 U.S. 113, 149 (1973) (discounting state's asserted interest medical safety upon review of "medical data" submitted by plaintiffs and amici challenging abortion ban); *Landmark Communications, Inc. v. Virginia*, 435 U. S. 829, 843 (1978) ("Deference to a legislative finding cannot limit judicial inquiry when First Amendment rights are at stake."); *Ashcroft v. ACLU*, 542 U.S. 656, 666-68 (2004) (considering evidence introduced by plaintiffs in district court of less restrictive alternative to law challenged under First Amendment); *Gaffney v. City of Allentown*, No. 97-4455, 1998 U.S. Dist. LEXIS 242, at *24 (E.D. Pa. Jan. 7, 1998) (noting that plaintiffs in successful constitutional challenge to a curfew law submitted analysis of crime statistics to show lack of narrow tailoring, which "contributed significantly … to the rendering of a decision in Plaintiffs' favor").

- While it is our position that *Heller* and *McDonald* mandate that nothing less than strict scrutiny can apply to Second Amendment challenges, we recognize that lower courts have applied a variety of tests and standards of review in post-*Heller* challenges. We are thus entitled to gather discovery materials that may be relevant to the variety of tests that have been employed or suggested. Moreover, the City itself maintains that either a "reasonable regulation" or "undue burden" test applies to challenges to the Ordinance. *See, e.g.*, Doc. 37-1, *Ezell*, No. 10-cv-05135, at 18-19. Much, if not all, of the discovery we have requested may lead to admissible evidence relating to one or both of these standards. *See, e.g.*, *Planned Parenthood of Se. Penn. v. Casey*, 505 U.S. 833, 888-892 (1992) (considering plaintiffs' evidence of effect of statute challenged under the Due Process Clause). We, of course, do not agree that *Heller* and *McDonald* can credibly be read to allow for such tests in Second

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
November 5, 2010
Page 3 of 6

Amendment cases, and if the City is willing to stipulate that such tests are inapplicable, we may be able to withdraw some of our discovery requests. But short of such a stipulation, we are entitled to take discovery to meet the very defenses the City claims it will put forward in defense of its bans.

Moving to particulars, we discussed Requests for Production Nos. 1, 2, 5-14, 16-23, 25, 28-31, and 33, and the contention interrogatories generally.[1] Requests Nos. 1 and 2, generally speaking, seek documents relating to the legislative process and discussions surrounding passage of the Ordinance. These Requests include the internal communications of City officials as well as communications to outside parties (such as the witnesses who testified before the Committee on Police and Fire). In your letter of November 4, you argue that "pre-Ordinance materials outside of the legislative record are not discoverable.... It is the determination of the legislature embodied within the four corners of the statute, and not the views of any particular City employee or legislator, that will be subjected to constitutional scrutiny." Again, we agree that in defending the Ordinance, Defendants are restricted to the four corners of the law and its legislatie history. But the materials at issue may speak to, e.g., whether the purposes enunciated in the legislative record are pretextual and whether the legislative record is reliable and objective or was manufactured to point to a certain result. Discovery of such materials is not uncommon in constitutional litigation. *See, e.g., Miller v. Johnson*, 515 U.S. 900 (1995) (in constitutional challenge to congressional districting laws, citing "testimony of ... the operator of ... Georgia's reapportionment computer"); *Johnson v. Miller*, 864 F. Supp. 1354, 1360-62 (S.D. Ga. 1994) (citing testimony and documents of attorney for outside interest group that advocated before Georgia General Assembly, and worked with state and federal officials, during legislative process that led to challenged law).[2]

---

[1] With respect to Request for Production No. 3, I explained that we are satisfied with the City's response and no further action is necessary. With respect to the Requests for Production that we did not discuss (Nos. 4, 15, 24, 26, 27, and 32), I indicated that these Requests were not our main focus at this point. Instead, if we are able to come to agreement on the Requests we discussed, Plaintiffs may be agreeable to pursuing Requests Nos. 4, 15, 24, 26, 27, and 32 no further. If, however, a motion to compel becomes necessary, we reserve our right to include those Requests in such a motion.

[2] *See also Shaw v. Hunt*, 517 U.S. 899 (citing testimony of "principal draftsman" of challenged law as to "principal reason" for the legislation at issue); *Cano v. Davis*, 193 F. Supp. 2d 1177 (C.D. Cal. 2002) (in constitutional challenge to congressional districting laws, "[t]he legislative privilege does not bar ... a third party non-legislator[] from testifying to conversations with legislators and their staffs."); *Bagley v. Blagojevich*, 2007 U.S. Dist. LEXIS 90105, No. 05-3156 (C.D. Ill. Dec. 7, 2007) (in First Amendment challenge, permitting deposition of Governor of Illinois to probe reasons for his veto action); *Rodriguez v. Pataki*, 280 F. Supp. 2d 89 (S.D.N.Y. 2003) (granting motion to compel internal "deliberations and documents" of legislative working group); *Loesel v. City of Frankenmuth*, No. 08-11131, 2010 U.S. Dist. LEXIS 101664, at *32 (E.D. Mich. Sept. 27, 2010) (City's internal emails discoverable and probative in constitutional challenge).

# Cooper & Kirk
#### Lawyers

Andrew Worseck, Esq.
November 5, 2010
Page 4 of 6

Requests Nos. 1 and 2 also seek any studies or reports that were put before the City Council during its hearings. During our call, I asked whether the studies, reports, etc. that the City has thus far produced constitute all of the materials that were actually before the Committee. You confirmed that it was your understanding that any study that was brought to the Committee by a witness was produced and that if studies were referenced but not produced, those studies were not available to the legislators and were not part of their deliberations. You stated that you would confirm this point and get back to us. We look forward to receiving that confirmation.

In your letter of November 4, you also ask "whether Plaintiffs are willing to limit the scope of the requests to the small handful of provisions actually at issue." I take this question to relate mainly to Requests Nos. 1 and 2, as I am not sure such a limitation would make sense in the context of most of the other Requests (e.g., the requests for statistics). With respect to Requests Nos. 1 and 2, I an otherwise responsive document *solely* discusses or relates *only* to a provision that is not being challenged, we can agree that it need not be produced. Thus, for example, if a communication relates solely to the drafting of the ban on laser sights, it need not be produced. But if a document, or part of a document, relates or refers (i) to the Ordinance as a general matter (i.e., is not solely and exclusively limited to a provision not at issue in *Benson*), (ii) to the Ordinance's purpose, (iii) to the findings of the City Council, (iv) to the hearings of the Council about the Ordinance, or (v) to the witnesses who appeared or were invited to appear before the City Council, it is within the contemplation of Request Nos. 1 and 2. We stress, then, that any carve-out on this front must be very limited to ensure that all documents that are relevant, or that may lead to discovery of admissible evidence, are included in the production. *See* Fed. R. Civ. P. 26(b)(1).

During our call, we also discussed the Requests that can generally be described as seeking data and statistics—namely Requests Nos. 5-7, 9, 11, 12, 16-23, and 25. As you note in your letter, we had a helpful dialogue about the type of data and statistics that are available and the logistical hurdles that might present themselves in trying to access that information. We agreed that our conversation on this front will continue after you consult further with your clients about these issues. Based on your follow-up report, we may be able to come to an agreement regarding production in response to these Requests, including whether it is appropriate to narrow the timeframe of the Requests.

We also discussed Request No. 8 (dealing with information about firing ranges and firearms dealers) and Request No. 10 (dealing with 911 response time). For reasons explained during the call and above, we believe both Requests seek relevant information. As I understand where we left things, the City has agreed to consider these Requests further.

We also discussed Request No. 13, which seeks the discovery that is/was produced or received by the City in the *Ezell* case. Given that *Ezell* deals solely with one of the provisions at issue in *Benson*, we think most of the materials produced in that case are, by definition,

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
November 5, 2010
Page 5 of 6

discoverable here.[3]  We discussed whether the City would produce copies of the transcripts of the depositions taken in that case, and you suggested that such materials may be protected by the attorney work-product privilege.  To be clear, we are only asking for the actual transcripts, not any notes counsel for the City may have made on or about those transcripts.  Given that the transcripts are available to the opposing party in *Ezell*, and parts of them have been attached to pleadings in *Ezell*, we do not think any claim of work-product privilege is seriously advanced. *See, e.g.*, *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 479 (N.D. Ill. 2002) ("The voluntary disclosure of attorney work product to an adversary waives work product protection.").  We hope you will reconsider your objections to this Request and produce this easily identifiable category of documents in the next few days.

We also discussed Requests Nos. 28-31 and 33, as well as our Interrogatories.  You stated that these are "contentious" (in the legal sense) and that the City is not yet required to answer them.  First, we are aware of no case or provision of the Federal Rules that permits Defendants to simply refuse to produce relevant, responsive information to properly issued requests for production and interrogatories on the grounds that they are "contentious."  Indeed, Rule 33 states that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact...." *See also Pratt v. Tarr*, 464 F.3d 730, 733 (7th Cir. 2006) (noting that contention interrogatories are proper); *Thomson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004) (same).  If the City can only offer partial responses at this time, and must later supplement its answers, that procedure is acceptable under the Federal Rules if supplementation occurs in a timely manner. *See* Fed. R. Civ. P. 26(e).  But a blanket refusal to answer is not acceptable. *See, e.g.*, *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, No. 2:07-CV-1285, 2010 U.S. Dist. LEXIS 39619, at *5-6 (S.D. Ohio Mar. 25, 2010) ("In response to plaintiff's contention interrogatories, Grange merely referred plaintiff to otherwise unspecified pleadings and other documents in the action.... Grange must answer plaintiff's contention interrogatories in proper fashion.").  For example Interrogatory No. 1 asks Defendants to "identify every legitimate governmental interest to which Defendants contend the provision of the Ordinance challenged in Plaintiffs' First Amended Complaint are related, whether such interests are rational, important, or compelling," and Requests Nos. 28-30 seek documents related to such interests.  So that we may seek appropriate discovery, we are entitled to production of this information to the extent it exists at this time.  Presumably, Defendants had some purpose or purposes for enacting the Ordinance on July 2, 2010, and those purposes—and materials relating to them—are knowable and known by Defendants now.

Second, Defendants, in their responses to these Requests and Interrogatories, have referred Plaintiffs to the legislative record.  Yet the City has also claimed in *Ezell*, and in its discovery responses here, that it is not bound by the legislative record and may introduce materials extraneous to the record.  Again, while we may ultimately disagree about the

---

[3] We recognize, however, that certain materials dealing solely with the issue of mobile ranges or particular facts about the *Ezell* plaintiffs are probably not relevant and need not be produced.

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
November 5, 2010
Page 6 of 6

admissibility of such information as evidence in this case, there can be no question that Plaintiffs are entitled to discovery of such information to the extent Defendants are presently aware of it. We are happy to review any caselaw to the contrary.

Lastly, during our call and in your letter you stated that the City will not be prepared to produce a Rule 30(b)(6) witness or witnesses on November 12, a deposition we originally noticed on October 5. You also state that the City cannot provide an alternative date at this time because of "unresolved scope issues and logistics." As I have stated in the past, we are willing to be cooperative and flexible in scheduling depositions so that the schedules of various counsel and deponents can be accommodated. That said, we must ensure that we take this important deposition with enough time remaining for any follow-up discovery that it might necessitate. Accordingly, in the absence of a proposed alternative date from the City, we are planning to reissue the notice with the deposition set for Thursday, December 2. We are also willing to consider any date prior to December 2.

Again, we appreciate your continued attention to these issues and your cooperation. We recognize that the parties continued efforts to resolve our discovery disputes are without prejudice to any position we might take should litigation become necessary.

Sincerely,

Jesse Panuccio

Cc    Michael Forti, Esq.
      Rebecca Hirsch, Esq.
      William Aguiar, Esq.
      David Thompson, Esq.