IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS ASSOCIATION OF FIREARMS RETAILERS, KENNETH PACHOLSKI,, KATHRYN TYLER, and MICHAEL HALL, | ) ) ) ) ) ) | No. 10 CV 4184 |
| Plaintiffs, | ) ) | Judge Edmond E. Chang |
| v. | ) ) | Magistrate Judge Geraldine Soat Brown |
| THE CITY OF CHICAGO and RICHARD M. DALEY, Mayor of the City of Chicago, | ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM DEFENDANTS OR, IN THE ALTERNATIVE, TO ESTABLISH A BRIEFING SCHEDULE REGARDING CONTROLLING POINTS OF LAW**

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William M. Aguiar
Rebecca Alfert Hirsch
City of Chicago Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle Street, Suite 1230, Chicago, IL 60602
(312) 744-9010

Defendants City of Chicago ("City") and Mayor Richard M. Daley, by and through their attorney, Mara S. Georges, Corporation Counsel of the City of Chicago, hereby submit their response to Plaintiffs' Motion to Compel Discovery from Defendants or, in the alternative, to Establish a Briefing Schedule Regarding Controlling Points of Law ("Motion").

## **BACKGROUND**

Plaintiffs' Motion seeks to compel discovery of 6 categories of information. *See* Motion, at 8-11. The discovery requests that underlie these categories are numerous, broad, and extensive, and they place significant burdens on Defendants. *See* Defendants' January 7, 2011 Memorandum In Support of Their Motion For A Protective Order [doc. no. 66] ("Def. Mem."), at 3. The parties have engaged in prolonged discussions regarding the proper scope of the requests, discussions that continued after Plaintiffs filed their Motion.[1] In the month that has passed since then, the parties have resolved a significant portion of the disputes raised in the Motion. As set forth in more detail below,[2] three of the Motion's six categories have been completely resolved and no longer require Court intervention. Two categories have been substantially resolved. Only one category remains wholly disputed.

**1. Completely Resolved Categories.**

**Category (b)**: *Statistics and Data About Crime and Firearms*. Before Plaintiffs filed

---

[1] Plaintiffs agreed to petition the Court jointly with Defendants in December 2010 for an extension of the discovery period, noting that the parties had "respective[ly] timely respon[ded] to discovery," but that, even so, an extension was necessary due to the "good-faith negotiations" between the parties regarding "the permissible scope of discovery." Exhibit A, ¶ 4. This belies Plaintiffs' suggestion that Defendants unilaterally "ran out the clock on the initial discovery period." Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Compel, at 13 n.12.

[2] In describing herein Defendants' commitments to respond to certain discovery requests, Defendants do not intend to, and do not, waive any objection they have or may lodge against those requests.

1

their Motion, Defendants agreed to produce responsive data that CPD had and could access without undue burden. *See* Exhibit B, at 2. The breadth of Plaintiffs' database requests required extensive time and labor by the CPD's technical staff to analyze its databases for responsive information and determine whether and how it could be extracted and produced. *See* Exhibit C, at 1-2; Exhibit D, at 3-4. After Plaintiffs requested, and Defendants agreed, that the data be produced by February 7, the Court so ordered in its January 27 minute order. Defendants have produced this material, and Plaintiffs agree that there is no live dispute concerning this category. *See* Exhibit E, at 1-2.[3]

**Category (e)**: *Deposition Testimony Regarding Treatment of Firearms Ranges and Retailers Under the Chicago Zoning Ordinance.* Defendants have agreed to produce a Rule 30(b)(6) witness to testify to the Zoning Code's impact on the operation of firearms ranges or businesses that would sell firearms. *See* Exhibit B, at 2. Plaintiffs agree that there is no longer a live dispute concerning this category. *See* Exhibit E, at 2.

**Category (f)**: *Deposition Testimony Regarding the Practices of First Responders.* Defendants have agreed to produce a Rule 30(b)(6) witnesses to testify on this topic as limited by agreement of the parties. Under that agreement, testimony is limited to the training and assumptions of police officers regarding the presence of firearms at homes or businesses to which they are called to respond on an emergency basis. *See* Exhibit B, at 2. Plaintiffs agree that there is no longer a live dispute concerning this category. *See* Exhibit E, at 2.

---

[3] Defendants produced almost all of the responsive data on February 7, and produced the remainder on February 10. The February 2-3 blizzard caused a personnel shortage in the CPD office responsible for producing the data and prevented a full production on February 7. *See* Exhibit E, at 1-2.

**2.     Substantially Resolved Categories.**

**Category (c)**: *Discovery Regarding Purposes of Challenged Ordinance Provisions and Fit Between The Provisions and Those Purposes.*  Defendants have already responded to the following discovery requests listed under this category:  Interrog. No. 1 (identification of legitimate governmental interests to which challenged provisions are related); Interrog. No. 2 (identification of less restrictive alternatives to challenged provisions considered by City); and Interrog. No. 6 (identification of reasons for firearms training or instruction required by City).  *See* Exhibit F.  Defendants have also agreed to respond to RFP 7 (relationship between possession of more than one operable firearm and commission of crimes or accidental shootings). *See* Exhibit B, at 1.  Plaintiffs do not contend that a live dispute remains regarding these items. *See* Exhibit E, at 2.

A partial dispute remains concerning Rule 30(b)(6) Topic No. 3 (governmental purposes served by the Ordinance); Nos. 8 & 9 (relationship between lawful possession of more than one operable handgun and commission of crimes or accidental shootings); and Nos. 12-14 (relationship between firearms ranges and gun-related crimes or accidental shootings, or proficient and safe handling of firearms).  Defendants have agreed to produce a witness in response to these topics, to the extent that the City's executive function has specific experience with the topic and to the extent that it can produce a competent witness.  *See* Exhibit B, at 1-2. However, Defendants maintain their position that these topics are improper to the extent that they seek testimony on behalf of the City Council or pertaining to the legislative process.  *See* Def. Mem., at 5-12.  Plaintiffs, on the other hand, persist in demanding testimony on these subjects that "reaches into the Ordinance's legislative process."  Exhibit E, at 2.

3

Finally, a full dispute remains at to RFP Nos. 28-30 (documents characterized as relating to any compelling, substantial, or rational basis for the challenged Ordinance provisions); No. 31 (documents characterized as relating to how challenged Ordinance provisions are tailored to serve governmental interests); No. 33 (documents that Defendants will use to defend challenged Ordinance provisions); No. 41 (documents Defendants will offer as evidence during summary judgment or at trial); Interrog. No. 7 (identification of witnesses Defendants will offer during summary judgment or trial);[4] and Rule 30(b)(6) Dep. Topic No. 4 (less restrictive alternatives "considered" instead of enacting Ordinance).[5]

**Category (d)**: *Discovery Regarding Firearms Training, Firearms Ranges, and Firearms Stores*. Defendants have already responded, or have agreed to respond, to all of the discovery requests listed under this category, except for part of RFP No. 13. *See* Exhibit B, at 1-2. RFP No. 13 seeks discovery materials generated in the *Ezell v. City of Chicago* litigation. Defendants have produced all discovery responses and statements tendered by the City in *Ezell* in response to the *Ezell* plaintiffs' discovery requests. Defendants have also produced all exhibits and other materials entered into evidence by both parties at the preliminary injunction hearing held in *Ezell* in early October 2010. However, Defendants object to producing the discovery requests drafted

---

[4] Plaintiffs did not identify Interrogatory No. 7 as a disputed item in their Motion, but, due to the similarity between it and RFP Nos. 33 & 41, Defendants do not object to Plaintiffs doing so in their response brief being filed today, rather than burdening the Court with a separate motion devoted to that item. However, if Plaintiffs' response brief raises new arguments concerning this discovery that are not contained in the Motion, Defendants reserve their right to file, with the Court's leave, and within 7 days, a short brief responding to the new arguments, and Plaintiffs do not object thereto. *See* Exhibit G.

[5] Because Rule 30(b)(6) Topic No. 4 asks for testimony about alternatives that the City "considered enacting instead of the Ordinance," and not simply whether alternatives exist or are familiar to the City, it goes to the heart of the legislative process and should therefore be treated as part of Category (a).

and served by the City's attorneys in *Ezell*, and the responses thereto received by the City's attorneys as a result of their litigation labors.

The only other disputed part of Category (d) concerns Rule 30(b)(6) Topic No. 15 (City policy and practices concerning firearms training), and mirrors the Rule 30(b)(6) dispute discussed above under Category (c): Defendants have agreed to produce a witness to the extent that the City's executive function has specific experience with the topic and to the extent that it can produce a competent witness, *see* Exhibit B, at 1, but Defendants object to the extent the topic seeks testimony on behalf of the City Council or pertaining to the legislative process.

3. **Unresolved Category.**

**Category (a)**: *Drafting of the Ordinance, the Legislative Process, and the Legislative Hearings*. The discovery requests under this category seek extensive discovery of the legislative process and related matters, and are wholly disputed by the parties. The dispute largely overlaps with the matters raised in Defendants' January 7, 2010 Motion for A Protective Order.[6]

## ARGUMENT

I. **The Court Should Deny Discovery Of The Legislative Process.**

   A. **The Requested Discovery Is Not Relevant.**

Category (a) seeks discovery relating to "the Drafting of the Ordinance, the Legislative Process, and the Legislative Hearings." Motion, at 8. *See also* Memorandum in Support of Plaintiffs' Motion to Compel ("Pl. Mem."), at 6-9. Specifically, Plaintiffs seek discovery relating to communications with actual or potential witnesses at the hearings held by the City

---

[6] Category (a) includes the depositions of CPD Superintendent Weis and CPD First Deputy Brown. *See* Motion, at 8. The Court, in its January 27, 2011 minute order, granted Defendants' motion to quash those depositions.

Council Committee on Police and Fire; communications relating to the planning for the hearings; communications relating to the involvement of outside interest groups in the legislative process; communications between the Chicago Police Department and those involved in the legislative process; and communications between the Mayor's Office and other City officials regarding the purpose and need for the Ordinance. *See* Motion, at 8; Pl. Mem., at 6.

The Court should deny this discovery because it is not relevant to the Second Amendment claims presented in this case. Plaintiffs argue that the discovery may aid in their effort to "undermine" or otherwise contest the reliability of the evidence contained in the legislative record. Pl. Mem., at 6-7. But, in advancing this argument, Plaintiffs do not cite a single Second Amendment case, much less one establishing that the reliability of the legislative record is germane under the Second Amendment.[7] And for good reason: As Defendants have previously

---

[7] The cases cited in footnote 5 of Plaintiffs' Memorandum are further distinguishable. Only three of them addressed discovery disputes, and, in each of those, legislative motive was a key element of the claims at issue. *See Rodriguez v. Pataki*, 280 F. Supp.2d 89, 101-02 (S.D.N.Y. 2003) (documents relevant to issue of "racially discriminatory intent" under Equal Protection/Voting Rights Act redistricting claim); *Cano v. Davis*, 193 F. Supp.2d 1177, 1179 (C.D. Cal. 2002) ("motivation was at issue" in Voting Rights Act redistricting challenge); *Loesel v. City of Frankenmuth*, 2010 WL 3842369, at *14 (E.D. Mich. Sept. 27, 2010) ("class of one" equal protection claim, which "involves and even requires a factual inquiry into motivation"). Legislative motive is not pertinent under the Second Amendment. Plaintiffs' other cases merely mention that a legislator or official was deposed or testified at trial, without indicating whether such testimony was compelled or voluntarily given. The fact that a litigant in a given case chose to produce a legislator or official hardly means that every litigant must do the same. Further, most of these remaining cases involved claims requiring a showing of discriminatory intent or seeking to eradicate discrimination. *See Shaw v. Hunt*, 517 U.S. 899, 901-02, 905-06 (1996) (equal protection discrimination challenge to redistricting law required showing of "race-based motive"); *Miller v. Johnson*, 515 U.S. 900, 916 (1995) (equal protection claim based on racial gerrymandering required showing that "race was the predominant factor motivating the legislature's decision"); *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 303 (3d Cir. 2007) (ADA and Rehabilitation Act claims, the goals of which are to "eliminat[e] discrimination against individuals with disabilities and protect[] those individuals from deprivations based on prejudice, stereotypes, or unfounded fear") (citation omitted); *Fair Hous. Advocates, Inc. v. City of Richmond Heights*, 209 F.3d 626, 631-32 (6th Cir. 2000) (Fair Housing Act claim, purpose of which is to prevent discrimination in housing); *Johnson v. Miller*, 864 F. Supp. 1354, 1360 (S.D. Ga. 1994) (plaintiff required to show that "racial concerns were the overriding criterion for drafting a redistricting plan"); *Bagley v. Blagojevich*,

explained, it is clear from the Second Amendment caselaw that how legislative records are formed, or the weight or reliability of evidence put before the legislature, is not germane. *See* Def. Mem., at 6-8 (discussing *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (*en banc*); *United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010); *United States v. Williams*, 616 F.3d 685 (7th Cir. 2010)). Those cases do not even mention these matters, much less evaluate them.

Rather, under the Second Amendment intermediate scrutiny used in these cases, the question is simply whether the regulation is substantially related to an important governmental objective. *See, e.g., Skoien*, 614 F.3d at 641-42.[8] This question essentially examines the effects of the statute, and the connection between those effects and the interests served by the statute. *See* Def. Mem., at 5-8. The legislative process is not relevant to establishing the effects produced by a statute, since a statute's effects are driven by the statute's text and how that text is applied to residents. Likewise, the legislative process does not bear upon whether those effects are properly connected to a valid governmental interest. Indeed, *Skoien* concluded, without scrutiny of the legislative process, that the effect produced by 18 U.S.C. § 922(g)(9) – keeping firearms out of the hands of domestic violence misdemeanants – was substantially related to the important governmental objective of preventing armed mayhem. *See Skoien*, 614 F.3d at 642-43. The connection was established by nothing more than "logic and data," which need not even have been part of the legislative process. *Id.* at 642. *See also* Def. Mem., at 7-8.

If the Second Amendment cases look at the legislative process at all, they do so in passing

---

2007 WL 4302434 (C.D. Ill. Dec. 7, 2007) (First Amendment retaliation claim).

[8] As Defendants have indicated, a lesser form of scrutiny than intermediate scrutiny should apply in this case. *See* Def. Mem., at 7 n. 4. But even if intermediate or strict scrutiny applies, the requested discovery remains irrelevant. *See id.*

7

and, at most, for the limited purpose of identifying governmental interests or purposes that the statute serves. And that inquiry does not stray beyond what may be reflected in the duly-constituted legislative record, such as committee reports or floor statements. *See Skoien*, 614 F.3d at 642-43 (citing Congressional Record, as cited in *United States v. Hayes*, 129 S. Ct. 1079, 1087 (2009)); *Yancey*, 621 F.3d at 683 (citing Senate report).[9] No scrutiny of the legislative process beyond these sources is remotely contemplated in the cases.[10] Indeed, it is perilous to attempt to discern a common legislative purpose from the actions of individual legislators, much less of officials or witnesses who are not members of the legislature. *See* Def. Mem., at 8, 11.

To the extent that legislative purpose is relevant here, Defendants have produced all pertinent materials. They have produced the duly-constituted legislative record, including all transcripts, statements, studies, reports, and other data submitted to the City Council. These materials include the findings issued by the City Council Committee on Police and Fire, which enumerate numerous ills whose redress is a purpose of the Ordinance. *See* Exhibit H. The Ordinance itself contains "whereas" clauses setting forth additional purposes. *See* Exhibit I, at 1-

---

[9] Indeed, the governmental purposes need not be identified in the statute or its duly-constituted legislative record. *See Williams*, 616 F.3d at 693 (noting government's "stated objective" behind 18 U.S.C. § 922(g)(1), and crediting that objective by examining law review article and prior cases). So long as those purposes exist, and the challenged provisions are sufficiently connected to them, the provisions withstand scrutiny.

[10] This too is how the Supreme Court proceeded in *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 202-04 (1999) and *Heckler v. Mathews*, 465 U.S. 728, 744-51 (1984), cases cited by *Skoien* as describing the intermediate scrutiny test. In evaluating a statute requiring certain disclosures concerning the circulators of referendum petitions, *Buckley* observed – without examining the statute's legislative history – that disclosure requirements in general serve the important governmental purpose of acting "as a control or check on domination of the initiative process by affluent special interest groups." *Buckley*, 525 U.S. at 202. Similarly, in identifying the purpose of the provision at issue in *Heckler* and whether that purpose was "illegitimate," the Court considered various reports and other contents of the duly-created legislative record, but did not venture further into the legislative process. *Heckler*, 465 U.S. at 731-35, 742-46.

2. Further, Defendants have tendered an interrogatory response enumerating various governmental purposes served by the challenged Ordinance provisions. *See* Exhibit F, at 2-4.

Moreover, even if Plaintiffs are correct that the weight and strength of the legislative record is germane, their possession of the legislative record gives them full knowledge of the evidence or alternatives the City Council did and did not have before it. Defendants have even agreed to produce other discovery relating to the duly-constituted legislative record, such as non-privileged documents connected to the hearing testimony given by CPD personnel. *See* Motion, Exhibit C1 thereto, at 3-6 (responses to Interrogatories Nos. 35, 36, 38-40). If Plaintiffs believe that the legislative evidence is deficient, they are perfectly free to attack it by critiquing those materials, or by submitting counter-studies or their own expert testimony. As another federal judge determined after reviewing Plaintiffs' attempt to conduct discovery into the Ordinance's legislative process, production of materials identified in the legislative record is sufficient to enable Plaintiffs "to attempt to impugn the evidence proffered" during the legislative hearings. Exhibit J, at 3. Plaintiffs will also be able to resort to the numerous facts and other City data – such as firearms ownership information or crime data – that Defendants have agreed to produce in response to myriad other discovery requests.

Finally, Plaintiffs argue that the discovery is relevant under the constitutional tests advocated by the City for evaluating the claims in this case: the undue burden standard (*see Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1993)) or the "reasonable regulation" standard used by state courts to evaluate restrictions on firearms. Pl. Mem., at 8 & n. 6. Plaintiffs contend that these tests "render governmental purpose a critical

9

question." Pl. Mem. at 8. Even if Plaintiffs' characterization of these tests is correct,[11] the inquiry into statutory purpose can be fully satisfied – just as it can under Second Amendment intermediate scrutiny – by resort to the duly-constituted legislative record and the other discovery discussed above. Plaintiffs point to nothing indicating that the undue burden or reasonable regulation tests necessitate a more searching probe of the legislative process than does the Second Amendment intermediate scrutiny standard. The only case they cite, *Planned Parenthood Fed'n of Am. v. Ashcroft*, 320 F. Supp.2d 957 (N.D. Cal. 2004), *reversed sub nom. Gonzales v. Carhart*, 550 U.S. 124 (2007), merely noted that the trial record included the testimony of witnesses (who were not legislators or other government officials) called by the government who had also testified in the legislative hearings that produced the statute. *See id.* at 981. The case did not address the scope of discovery, much less rule that testimony given *during* duly-constituted legislative hearings opens the door to discovery of matters occurring *outside* those proceedings, such as legislator communications or witness preparations. In fact, far from turning on scrutiny of the legislative process, the court applied the undue burden analysis using nothing more than the Congressional Record and the trial and deposition testimony of medical professionals regarding abortion procedures. *See id.* at 967. *See also Gonzales*, 550 U.S. at 156-57 (under *Casey* undue burden standard, determining statute's purposes from the Congressional

---

[11] Plaintiffs overread *Casey*. While *Casey* did state that "an undue burden is a shorthand for the conclusion that a state regulation has the purpose or effect" of placing a substantial obstacle in the path of a person seeking to exercise a constitutional right, *Casey*, 505 U.S. at 877, it is clear that the crux of the test is the statute's effect. *See, e.g., id.* ("the question" answered by the Court was whether a law that "imposes" an undue burden could be constitutional); *id.* ("guiding principle[]" is that law is valid if it does not have the "effect" of creating a "substantial obstacle"); *id.* at 888-891 & 893-94 (noting trial court's findings regarding "effect" of spousal notification requirement, and finding requirement invalid because likely effect is to "prevent" significant number of women from obtaining abortions).

recitals and findings).

###    B.    The Discovery Is Unduly Burdensome.

Plaintiffs' legislative process discovery is also improper because it would saddle Defendants with immense logistical burdens. The City has 50 Aldermen, each with his or her own staff. Numerous other officials and employees within the City's executive departments, such as the Chicago Police Department, are potentially connected with passage of the Ordinance. Each of these individuals would need to be canvassed to see whether they possess discovery in any way relating to drafting or passage of the Ordinance or its legislative hearings, and would need to exhaustively search their files and email for all responsive documents. The resulting City-wide burden would be immense. Further burden will result from the need to log responsive documents that are privileged. A vast majority of responsive documents are likely to be covered by the legislative, executive, deliberative process privileges, or other privileges, such as attorney-client privilege, attorney work-product doctrine, or the consultant privilege. *See* Def. Mem., at 11-12.[12] The burden and distraction Plaintiffs' discovery would place upon important City personnel – particularly members of the City Council and the CPD – far outweighs any minimal relevance the discovery might have. *See also* Def. Mem., at 10-11.

---

[12] While the holdings of *Bogan v. Scott-Harris*, 523 U.S. 44 (1998) and *Biblia Abierta v. Banks*, 129 F.3d 899 (7th Cir. 1997), addressed legislative immunity from suit, rather than a legislative testimonial privilege existing in cases where a legislator is not sued, the concerns that justify the former also justify the latter. Forcing a legislator who is not a defendant to respond to discovery concerning legislative matters may still "chill zealous representation by encouraging legislators to avoid controversial issues or stances" or otherwise erect "deterrents to the uninhibited discharge of their legislative duty." *See Biblia Abierta*, 129 F.3d at 903. *See also Laurel Park Community, LLC v. City of Tumwater*, 2010 WL 1474073 (W.D. Wash. 2010) (quashing depositions of local legislators on basis of legislative testimonial privilege even where legislators were not sued).

II.  **The Court Should Deny Discovery Calling For Defendants To Prematurely Present Their Summary Judgment And Trial Cases.**

Three pieces of Category (c) that remain in dispute call for Defendants to tender evidence that they will use during summary judgment or at trial. *See* RFP No. 33 (documents Defendants will use to defend challenged provisions); RFP No. 41 (documents to be submitted during summary judgment or offered as evidence at trial); Interrog. No. 7 (identification of summary judgment or trial witnesses). Plaintiffs cite no authority for the proposition that a party must disclose, prior to moving for summary judgment, the materials it may submit in support of that motion. Indeed, by providing that summary judgment motions may in general be filed "at any time" prior to 30 days after the close of discovery, Fed. R. Civ. P. 56(b) belies the notion that an antecedent summary judgment disclosure phase precedes moving for summary judgment. Further, if Plaintiffs are able to establish that a summary judgment motion by Defendants contains material of which Plaintiffs were previously unaware and that is prejudicial to their opposition, Fed. R. Civ. P. 56(d)(2) provides a solution: Plaintiffs can petition the Court to take discovery regarding that material or for extra time to prepare counter-affidavits.

As to Plaintiffs' demand that Defendants disclose their trial witnesses and evidence, Defendants fully appreciate that discovery aims to avoid the risk of surprise at trial, but it is far too early in the proceedings to require the parties to assemble, much less disclose, these materials. Defendants respectfully submit that the proper time for such disclosures is according to pre-trial disclosure schedule(s) established by the Court and/or the Federal Rules.

The other pieces of Category (c) that remain in dispute are RFP Nos. 28-31. These requests do not, like a typical document request, describe the requested documents according to

12

their objective subject matter or traits. Rather, they call for Defendants to assign legal characterizations to documents – *i.e.,* whether a document evinces a "compelling," "substantial," or "rational" governmental interest, or evinces "tailoring" behind a legislative provision. These requests are vague and argumentative. Whether an interest is "compelling," "substantial," or "rational" is a legal determination that the Court will ultimately make. And, to the extent the requests seek Defendants' view on whether a document relates to one or more such interest, they amount to premature contention discovery. Defendants have responded to interrogatories seeking the identification of the governmental interests served by the Ordinance. *See* Exhibit F, at 2-4. And Defendants' productions in response to Plaintiffs' other document requests may very well yield documents that could be deemed responsive to RFP Nos. 28-31 as well. For instance, a document reflecting the connection between firearms possession and accidents produced in response to RFP No. 7 could also be said to be responsive to RFP No. 28, since prevention of firearms accidents is a "compelling" governmental interest. But requiring Defendants to categorize all documents according to such labels during discovery would be extremely burdensome. And it would, like RFP Nos. 33 & 41, require Defendants to assemble and disclose their case-in-chief prematurely.

### III. The Court Should Deny Further Discovery Of Counsels' Efforts In The *Ezell* Litigation.

RFP No. 13 seeks production of discovery materials generated in the *Ezell v. City of Chicago* litigation. Defendants have produced the discovery responses and testimony the City generated in response to the *Ezell* plaintiffs' discovery requests.[13] Production of that material in

---

[13] Defendants have also produced, in response to RFP No. 34, all exhibits and other materials entered into evidence by both parties at the preliminary held in *Ezell* in early October 2010.

this case was appropriate since it amounted to the position or statements taken by a party (the City) in litigation. *See* Exhibit D, at 4. However, Defendants object to producing the discovery requests drafted and served in *Ezell* by the City's counsel, and the responses received thereto. These materials are not the statements of the City; they are nothing more than requests posed by attorneys. Similarly, the responses received by the City's counsel to those requests are not the sort of documents generated or obtained by the City in the usual course of its operations. Rather, they are the result of counsels' work product and labor in litigating a specific case.

Moreover, there is nothing that Plaintiffs have yet to "discover" about *Ezell*. Their attorneys have been fully involved in the *Ezell* proceedings and have full knowledge of the positions taken and evidence tendered by the parties there. Plaintiffs' counsel entered appearances in *Ezell* (*see* Exhibit K), attended the proceedings in *Ezell* (*see* Exhibit L, at 5, 7), and submitted an amicus brief in *Ezell*. *See id.* at 7-8. As a result, and given that Plaintiffs could easily acquire the *Ezell* plaintiffs' discovery responses from the *Ezell* plaintiffs' counsel, their insistence on receiving this material from the City's attorneys rings hollow.

**IV.     The Court Should Deny The Motion To Stay Discovery For Purposes Of Establishing A Briefing Schedule On Controlling Points Of Law.**

Plaintiffs' Motion also requests, in the alternative, that the Court stay discovery and permit the parties to brief legal issues that Plaintiffs believe control the case. *See* Motion, at 2. Defendants respectfully submit that the Court has already effectively denied the stay request, as the Court, in its January 27 minute order, ruled on certain discovery disputes and ordered the parties to brief the remaining disputes. To the extent that the Court has not yet ruled on Plaintiffs' stay request, the Court should deny it. The proper vehicle for providing guidance to

the parties regarding the scope of discovery is to rule on particular and crystalized discovery disputes as presented in discovery motions. This gets to the nub much more efficiently than providing a generalized ruling on the "legal framework" that may govern the case (*see* Motion, at 2), something that is likely only to invite further litigation over how that framework applies to particular discovery. Moreover, "legal framework" determinations routinely await the close of discovery and the presentment of dispositive motions; Plaintiffs do not explain why this case should be any different.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Court should deny Plaintiffs' Motion to Compel Discovery from Defendants or, in the alternative, to Establish a Briefing Schedule Regarding Controlling Points of Law.

Dated: February 10, 2011.                                         Respectfully submitted,

                                                                  MARA S. GEORGES
                                                                  CORPORATION COUNSEL
                                                                  CITY OF CHICAGO

                                                          BY:     /s/ Andrew Worseck
                                                                  One of Its Attorneys

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William M. Aguiar
Rebecca Alfert Hirsch
Attorneys for the City of Chicago
Constitutional & Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, IL 60602
(312) 744-9010

## CERTIFICATE OF SERVICE

      The undersigned, an attorney of record for the Defendants, hereby certifies that on February 10, 2011 he served a copy of the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM DEFENDANTS OR, IN THE ALTERNATIVE, TO ESTABLISH A BRIEFING SCHEDULE REGARDING CONTROLLING POINTS OF LAW**, along with this certificate of service, on the parties listed below by electronic means pursuant to Electronic Case Filing (ECF):

| | |
|---|---|
| Charles J. Cooper | Stephen Kolodziej |
| David H. Thompson | Brenner Ford Monroe & Scott Ltd. |
| Peter Patterson | 33 N. Dearborn Street, Suite 300 |
| Cooper & Kirk, PLLC | Chicago, Illinois 60602 |
| 1523 New Hampshire Ave., NW | |
| Washington, DC 20036 | |

/s/ Andrew Worseck