# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRETT BENSON, KENNETH PACHOLSKI, )
KATHRYN TYLER, MICHAEL HALL, )
RICK PERE, and the ILLINOIS ASSOCATION )
OF FIREARMS RETAILERS, )
 )  **No. 10-CV-4184**
 )  **Judge Ronald A. Guzman**
 **Plaintiffs,** )
 )
**v.** )
 )
**THE CITY OF CHICAGO and** )
**RICHARD M. DALEY, Mayor of the** )
**City of Chicago,** )
 )
 **Defendants.** )

## <u>AGREED MOTION TO EXTEND FACT DISCOVERY</u>

NOW COME Defendants the City of Chicago and Mayor Richard M. Daley, and

Plaintiffs Brett Benson, Kenneth Pacholski, Kathryn Tyler, Michael Hall, Rick Pere, and the

Illinois Association of Firearms Retailers, by and through their attorneys, and respectfully move

the Court to continue the close of fact discovery until March 31, 2010.  In support of this Motion,

the parties respectfully state:


1. This case presents a constitutional challenge to several provisions of the City of

Chicago's firearms ordinance, enacted on July 2, 2010, in the wake of the Supreme Court's

decision in *McDonald v. Chicago*, 130 S. Ct. 3020 (2010).  Plaintiffs challenge the ban on

possession of firearms outside the "home," insofar as the City's definition of "home" excludes

possession in certain areas such as garages and yards; the ban on sales or transfer of firearms

within the city; the ban on shooting galleries and firing ranges within the city; the ban on

1

possession of more than one operable firearm in the home; and the ban on carriage of firearms.

2. Fact discovery in this case began on September 1, 2010 and is set to close on January 7, 2011.

3. Since that time the parties have methodically and diligently pursued discovery, serving numerous requests for production, interrogatories, deposition notices, and third-party subpoenas, as well as responses thereto. For example, Plaintiffs served a first set of document requests and interrogatories on September 21, 2010, and Defendants did so on October 22. The parties have already tendered written responses and objections, and produced documents, in response to this discovery. In addition, Defendants served a second set of document requests and interrogatories on November 5, 2010, and Plaintiffs did so on November 12. Responses to this discovery will be due over the next week and a half. The depositions of four of the Plaintiffs are set to occur during the week December 13, 2010.

4. Notwithstanding the parties' respective timely responses to discovery and production of documents, the parties have, in response to various discovery requests, disputed the permissible scope of discovery in this case. For example, the parties have disagreed about the permissible scope of document requests and whether certain depositions are appropriate. Nonetheless, for over a month, the parties have engaged, and continue to engage, in good-faith negotiations to come to agreement on these issues—or at least to narrow the ultimate scope of disagreement. Despite these efforts, complete agreement does not appear likely and thus the parties anticipate that some of these issues will soon be brought before the Court in the form of motions to compel or to quash. But the parties continue to work to refine and narrow the ultimate issues that will be litigated.

5. Moreover, pursuant to Fed. R. Civ. P. 15(a)(2), and with Defendants' written consent,

Plaintiffs plan to file a Second Amended Complaint in this action.[1] Although Plaintiffs have not fully come to rest on these matters, the Second Amended Complaint will likely add a party, add a count, and add some factual detail and allegations. These amendments may require additional fact discovery.

6. In light of these developments, the schedules of counsel, and the impending holidays, the parties do not believe they can reasonably complete desired fact discovery by January 7, 2011. The parties have negotiated and have agreed to a fact-discovery cutoff of March 31, 2011—an extension that they believe would provide the time necessary to complete fact discovery in this action without materially delaying the resolution of the case. The parties have further agreed that if fact discovery closes on March 31, then: expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(A)-(C), if any, should be due on May 2, 2011; rebuttal expert disclosures, if any, should be due on June 15, 2011; and expert discovery should close on June 30, 2011.

7. The parties have further agreed that by consenting to this motion they have not and do not waive any position they may take on the permissibility of any particular discovery that has been or might be sought by any party.

**CONCLUSION**

For the foregoing reasons, Defendants and Plaintiffs respectfully and jointly request that the Court enter an order continuing fact discovery until March 31, 2011, setting May 2, 2011 as the date for expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(A)-(C), setting June 15, 2011 as the date for disclosure of expert rebuttal reports, and setting June 30, 2011 as the date when expert discovery closes.

---

[1] Defendants would reserve their right to answer or otherwise plead to the new additions.

Dated: December 3, 2010                          Respectfully submitted,


For Plaintiffs:                                  For Defendants:

s/ Charles J. Cooper                             MARA S. GEORGES
Charles J. Cooper*                               Corporation Counsel
David H. Thompson*                               for the City of Chicago
Jesse Panuccio*
COOPER & KIRK, PLLC                              By: s/ Andrew W. Worseck
1523 New Hampshire Ave., NW                      Assistant Corporation Counsel
Washington, D.C. 20036
Tel: (202) 220-9600                              Michael A. Forti
Fax: (202) 220-9601                              Mardell Nereim
Email: ccooper@cooperkirk.com                    Andrew W. Worseck
                                                 William Macy Aguiar
*Admitted *pro hac vice*.                        Rebecca Alfert Hirsch
                                                 City of Chicago, Department of Law
Stephen Kolodziej                                Constitutional and Commercial Litigation
Atty. ID # 6216375                               Division
BRENNER FORD MONROE & SCOTT LTD.                 30 North LaSalle Street, Suite 1230
33 N. Dearborn St., Suite 300                    Chicago, Illinois 60602
Chicago, IL 60602                                (312) 744-9018 / 6975 / 7129 / 4216
Tel: (312) 781-1970
Fax: (312)781-9202                               *Attorneys for Defendants*
Email: skolodziej@brennerlawfirm.com


*Counsel for Plaintiffs*

4

# Exhibit B



**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

January 25, 2011

Jesse Panuccio
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
*Delivered via U.S. Mail and email*

**Re: Benson v. City of Chicago, 10 C 4184**

Dear Jesse:

I write to provide updates regarding Defendants' position concerning certain of Plaintiffs' discovery requests.

Plaintiffs' First Set of Interrogatories

Enclosed herewith, please find supplemental responses to Interrogatory Nos. 1, 2, & 6.

Plaintiffs' First Set of Requests for Production

With respect to RFP Nos. 7, 8, 9 & 14, Defendants reassert their previous objections, including vagueness, overbreadth, and undue burden. Notwithstanding those objections, Defendants will produce responsive, non-privileged documents that can be located through reasonable and targeted efforts. In particular, as to RFP No. 8, Defendants will produce documents concerning firearms vendors and ranges open to the public. These efforts do not include searches for CPD database information, a matter that the Defendants have previously examined and that the parties have previously discussed.

Plaintiffs' Rule 30(b)(6) Deposition Notice

With respect to deposition topics 3, 8, 9, 12, 13, 14 & 15, Defendants reassert their previous objections. Notwithstanding those objections, Defendants are willing to produce a responsive witness to the extent that the City's executive function has specific experience with the topic, and to the extent that the City can produce a competent witness. However, for reasons we have previously set forth, such witness(es) (indeed, any Rule 30(b)(6) witness the City may produce) cannot and will not speak on behalf of the City Council or as to the meaning or understanding of the legislative record.







**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

With respect to topic 7, Defendants reassert their previous objections. Notwithstanding those objections, we are willing to produce a responsive witness subject to the limitation set forth in my December 8 letter and your December 10 letter – namely, the topic extends only to "the training and assumptions of police officers regarding the presence of firearms at homes or business to which they are called to respond on an emergency basis."

With respect to topics 10 & 11, Defendants reassert their previous objections. Notwithstanding those objections, and subject to the limitation set forth in my December 8 letter and your December 10 letter that the topic is limited to "the location of [vendors or ranges] and any deleterious effects resulting" from them, our production on this topic will include testimony concerning vendors and ranges open to the public, to the extent that the City has specific experience with the matter, and to the extent that it can produce a competent witness.

With respect to topic 16, we are willing to produce a responsive witness to testify to the City Zoning Code's impact on the operation of firearms ranges or businesses that would sell firearms.

*       *       *

At this point, we believe that most of the discovery disputes set forth in Plaintiffs' Motion to Compel – which the Motion groups into 6 categories – are moot. As to Category (b) (crime and firearms data and statistics), there was never any dispute requiring Court intervention; the only issue is how long it will take to produce the data. As to Categories (e) (the treatment of firearms ranges and retailers under the Chicago Zoning Code) and (f) (practices of first responders), we believe the representations contained herein moot those categories completely. Likewise, these representations moot the vast majority of Category (d) (firearms training, firearms ranges, and firearms stores). As to that category, all that remains is RFP No. 13, which improperly seeks materials that are the product of the City's counsel's efforts in litigating the *Ezell* case. Finally, these representations moot many of the particular discovery requests grouped under Category (c) (the purposes of the challenged Ordinance provisions).

In sum, the profile of the parties' discovery disputes has appreciably changed since Plaintiffs filed their Motion over two weeks ago, and much of that Motion is now moot. As such, we believe the most efficient course for the parties and the Court is for Plaintiffs to withdraw their current Motion and file a narrower motion limited to those issues that may be properly characterized as disputed between the parties.



2





**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

Sincerely,

Andrew Worseck
312-744-7129





3

# Exhibit C



**City of Chicago**
Richard M. Daley, Mayor

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

## VIA FACSIMILE AND U.S. MAIL

November 4, 2010

Jesse Panuccio
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036

**Re: Benson v. City of Chicago, 10 C 4184**

Dear Jesse:

This letter summarizes our initial conversation on November 2 regarding Defendants' responses to Plaintiffs' discovery requests. Plaintiffs indicated that they wished to discuss Defendants' responses to requests 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 25, 29, 30, 31 & 33 of Plaintiffs' First Set of Requests for Production, and Defendants' responses to Plaintiffs' First Set of Interrogatories.

The parties discussed their respective views on the relevance of the particular discovery requests at issue, as well as some of Defendants' other objections, such as vagueness and overbreadth. The parties did not reach agreement, but indicated they would take the matters under advisement and reconvene to discuss.

In addition to our views on particular requests, Defendants expressed three global concerns. *First*, we indicated that many of Plaintiffs' requests are extremely broad and seek information relating to provisions of the Ordinance that are not being challenged in the lawsuit. We asked whether Plaintiffs are willing to limit the scope of the requests to the small handful of provisions actually at issue. *Second*, we expressed our view that pre-Ordinance materials outside of the legislative record, such documents relating to internal deliberations between City personnel, or the particular views of a City employee, are not discoverable. This lawsuit merely raises challenges to a duly-enacted statute. It is the determination of the legislature embodied within the four corners of that statute, and not the views of any particular City employee or legislator, that will be subjected to constitutional scrutiny. We invited you to provide us with any contrary caselaw that you believe indicates your entitlement to this discovery. *Third*, we indicated that the CPD crime and firearms possession data requests – which seek data covering a 40-year period – pose significant logistical issues, such as how easily the data can be accessed, whether queries need to be written to retrieve the data, and whether meaningful data even exists.







**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)
http://www.cityofchicago.org

Notwithstanding these objections, we indicated that we are happy to work with Plaintiffs to try to see whether accommodation can be reached on at least some of the contested discovery requests. Among other things, we indicated that we are continuing to work with CPD's technical staff to further survey the data that is available and to review the logistical issues attendant to its production. We agreed to give you an update on this next week. You agreed that this was a sensible first step, and that when both parties have a better sense of the data particulars, the parties will reconvene to further discuss potential resolution of the discovery issues, including relevance and burden issues. Both parties agreed that these discussions do not in any way waive or prejudice their respective rights or positions, including Plaintiffs' entitlement to seek, and Defendants' right to object to, the discovery requests at issue.

Finally, we indicated that due to the resources expended in responding to Plaintiffs' discovery to date, the fact that many scope and relevance positions remain unresolved, and the logistical issues attendant to identifying and producing a responsive witness(es), the City would not be in a position to tender a Rule 30(b)(6) witness on November 12. We agreed to propose an alternative date(s) to you as soon as we are able. But, in light of unresolved scope issues and logistics, we may not be able to provide a new date by November 12.

Sincerely,

Andrew Worseck

Andrew Worseck
312-744-7129



2



# Exhibit D



November 24, 2010

**City of Chicago**
Richard M. Daley, Mayor

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)
http://www.cityofchicago.org

**VIA ELECTRONIC AND U.S. MAIL**

Jesse Panuccio
Cooper & Kirk, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036

  **Re: Benson v. City of Chicago, 10 C 4184**

Dear Jesse:

  I write in response to your November 5, 2010 letter and to provide further information regarding various discovery matters as a follow-up to the parties' telephone conference on November 17, 2010. Again, we appreciate Plaintiffs' cooperation and willingness to try to work through these issues.

  <u>**Responses to Plaintiffs' First Set of Requests for Production**</u>

  Your November 5 letter indicates that Plaintiffs are focusing on requests for production 1, 2, 5-14, 16-23, 25, 28-31, and 33.

  <u>Requests 1 & 2</u>: You characterize these requests as seeking documents "relating to the legislative process and discussions surrounding passage of the Ordinance." In response to these requests, we previously produced the legislative history of the Ordinance, which includes three days of Committee hearings and the various testimony, studies, and reports presented to the Committee.[1] We believe this satisfies our discovery obligations as to these requests.

  Plaintiffs continue to seek materials outside this record, including communications of individual legislators or City employees relating to the Ordinance. We continue to object to producing these materials.

  *First*, such materials are not relevant. Plaintiffs argue that these materials may indicate whether the purposes asserted in the legislative record are "pretextual," or whether that record is reliable or objective. However, you have cited no Second Amendment case in which these questions are entertained, much less dispositive. In fact, the cases point in an entirely opposite direction. Indeed, *Heller* stressed that most firearms regulations are "presumptively lawful," *District of Columbia v. Heller*, 128 S.Ct. 2783, 2816-17 & n. 26 (2008), and that, even as to a regulation ultimately found invalid under the Second Amendment, a city's

---

[1] We will soon produce a copy of the gun dealer map that was used in the Committee hearings and will confirm that all materials from the legislative record have been produced.


BUILDING CHICAGO TOGETHER



Jesse Panuccio
November 24, 2010
Page 2

determination that the regulation is a necessary response to firearms violence is one that should be accorded significant respect. *See id.* at 2822 ("We are aware of the problem of handgun violence in this country, and we take seriously the concerns raised by the many *amici* who believe that prohibition of handgun ownership is a solution."). This is hardly a basis for suggesting that the City's regulation of firearms is flippant or pretextual.

Moreover, Second Amendment analysis turns not on pre-legislation history but on how the regulation impacts residents, and whether a proper governmental interest sufficiently supports it. *Heller*, for instance, did not examine the legislative history of the challenged law at all, much less whether the history revealed pretext or an objective basis. Rather, it found the law invalid because it – in its operation – "totally ban[ned] handgun possession in the home." *Heller*, 128 S.Ct. at 2817. Nor has the Seventh Circuit tarried with the legislative record, much less with the musings of individual legislators. *See, e.g., United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (*en banc*). *Skoien* did not ask whether the enacting Congress had data or studies before it, or whether those data or studies were reliable. Indeed, the court's analysis turned on studies published *after* the statute was enacted. *See id.* at 643-44.

In this light, Plaintiffs' cases – none of which raise Second Amendment claims – are clearly distinguishable. They address discrimination and retaliation claims that, unlike a Second Amendment claim, have governmental motive or intent as a core element. *See, e.g., Miller v. Johnson*, 515 U.S. 900, 916 (1995) (equal protection claim based on racial gerrymandering required showing that "race was the predominant factor motivating the legislature's decision"); *Johnson v. Miller*, 864 F. Supp. 1354, 1360 (S.D. Ga. 1994) (plaintiff required to show that "racial concerns were the overriding criterion for drafting a redistricting plan"); *Bagley v. Blagojevich*, 2007 WL 4302434 (C.D. Ill. Dec. 7, 2007) (First Amendment retaliation claim); *Loesel v. City of Frankenmuth*, 2010 WL 3842369, at *14 (E.D. Mich. Sept. 27, 2010) ("class of one" equal protection claim, which "involves and even requires a factual inquiry into motivation"). Plaintiffs raise no discrimination claim in this lawsuit. And the inquiry in this limited class of cases is an exception to the rule that legislative motive is not germane to constitutional analysis. *See, e.g., D.G. Restaurant Corp. v. City of Myrtle Beach*, 953 F.2d 140, 146 (4th Cir. 1992) ("courts have not as a general rule found legislation unconstitutional based on the motive of the voting legislators when the legislation is facially constitutional"); *Utah Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp.2d 1201, 1237 (D. Utah 2004) (in First Amendment case, evaluation of government's purpose "should be deferential and limited," and "personal motives of those involved in passing a statute or ordinance . . . are immaterial"); *Wreck Bar, Inc. v. Comolli*, 857 F. Supp. 182, 189 (D.R.I. 1994) ("Generally speaking, the subjective beliefs or motives of legislators are not relevant in determining whether regulations serve a permissible purpose, partly, because it is virtually impossible to discern ephemeral legislative motivations."); *National Paint and Coatings Ass'n v. City of Chicago*, 147 F.R.D. 184, 185 (N.D. Ill. 1993) (quashing depositions seeking individual motivations of city council

Jesse Panuccio
November 24, 2010
Page 3

members; courts "will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive").

*Second*, any minimal relevance would be greatly outweighed by the burden of producing the material. Defendants would need to canvass the offices and staffs of 50 Aldermen and numerous City Departments, for all documents, including emails and notes, that relate or refer to the Ordinance. The sweep of these requests is objectionable in its own right, and is plainly inconsistent with Plaintiffs' September 1 representation to the Court that they would need only "very limited targeted discovery," if any, and that such discovery would entail crime statistics and the like. While your letter indicates a willingness to exclude those documents that relate solely to provisions of the Ordinance that are not at issue, you stress that such an exclusion would be "very limited," and we agree that the contours of the exclusion sketched in your letter are indeed very limited. As such, the exclusion would not appear to materially reduce the burdensomeness of the requests.

*Third*, requests 1 & 2 are further objectionable because most, if not all, of the material they seek outside the legislative record is protected from disclosure by the attorney-client, legislative, executive, or deliberative process privileges, and/or by the attorney work-product doctrine.

Requests 5-7, 9, 11, 12, 16-23, and 25: Your letter describes these requests as generally seeking crime and firearms ownership data and statistics. In our written responses, we directed Plaintiffs to various reports and data compilations maintained on the CPD's website that are responsive to these requests. Nonetheless, Plaintiffs have pressed us for additional City data.

As the parties have discussed, the identification and extraction of that data poses numerous logistical issues. We updated you on November 17 of the progress of our efforts to learn from our client precisely what types of data exist, how they are stored, whether they are responsive to the requests, whether they can feasibly be produced, and how burdensome and time-consuming it would be to produce the data. We supplied an update as to each of the above requests individually (as well as to request 10, which raises similar issues). We are awaiting further follow-up information and confirmation from the client. We expect to be able to provide a complete answer within the next two weeks.

However, until we have a complete answer from our client as to the details and logistics, we do not believe it is possible to have a productive discussion with Plaintiffs regarding what specific information, if any, should be produced.[2] As we noted on November 17, the nature and

---

[2] The parties have agreed that our efforts to explore the matter with our client and inform Plaintiffs of the nature of the data does not waive or otherwise prejudice Defendants' right to maintain its legal or other objections to production of the information.

Jesse Panuccio
November 24, 2010
Page 4

completeness of the data may inform Defendants' positions with respect to objections (for instance, if data does not exist that meets a particular request, we may object to producing "next-best" data as being unresponsive and prejudicial). And Plaintiffs agreed in your November 5 letter that the parties' "conversation on this front will continue" after we have consulted with our clients and that a discussion regarding an agreement on the production of particular data would take place after the "follow-up" report.

Request 8: Your letter describes this request as seeking "information about firing ranges and firearms dealers." We will produce the requested information as to firing ranges maintained or operated by the CPD. However, the request remains overbroad to the extent that it seeks information for private dealers and ranges going back to 1970, and, in any event, we continue to believe that such information is irrelevant. Private dealers and ranges are not currently lawful in the City and do not exist, and the conditions under which they might have existed in the past are different from those existing today.

Request 13: Your letter describes this request as "seek[ing] the discovery that is/was produced or received by the City in the *Ezell* case." We previously produced to you the City's discovery responses in *Ezell*. We are further willing to produce the deposition transcript of Patricia Scudiero, the only City employee deposed by the plaintiffs in *Ezell*, and that transcript is enclosed and labeled CITY 855-91. This will complete the production of statements or positions taken by the City during discovery in *Ezell* regarding the issues in this case.

However, we object to producing the *Ezell* plaintiffs' responses to the discovery issued by the City's attorneys, or the depositions taken by the City's attorneys. Those materials do not reflect the City's statements or positions regarding issues in this case. Further, they were not generated or obtained by the City in the course of its usual operations. Rather, they were the product of counsel's efforts in litigating the *Ezell* case. The requests seek litigation material residing in the files of Defendants' counsel and are an improper attempt to probe and obtain the attorney work product. Plaintiffs' continued interest in this material is particularly surprising in that the City's ban on firing ranges is the only provision at issue in *Ezell*, yet Plaintiffs told the Court in the Parties' Joint Rule 26(f) Report that "no discovery is needed with respect to . . . Plaintiffs' challenge to the ban on firing ranges."

Requests 28-31 & 33 (and Plaintiffs' First Set of Interrogatories): These requests essentially seek the City's legal position as to the grounds supporting the challenged Ordinance provisions – i.e., whether they are supported by a "compelling," "substantial," or "rational" governmental interest; or whether they are "narrowly-tailored." We have already produced the legislative record, which is responsive to these requests and contains the reasons, justifications, and understandings of the Ordinance articulated by the City to date.

Jesse Panuccio
November 24, 2010
Page 5

     To the extent that these requests seek additional information, they are premature "contention" discovery. They employ legal terms of art used to assess the constitutionality of legislation, and further response would require Defendants to formulate and commit to litigation positions in their defense earlier than required. To be clear, our position is not that further response to these requests is never required. It simply is that further response should take place near or after the close of discovery. *See Logan v. Burge*, 2010 WL 4074150, at *4 (N.D. Ill. Oct. 12, 2010) ("Courts routinely delay compelling responses to contention interrogatories such as these until after considerable discovery."); *Gregg v. Local 305 IBEW*, 2009 WL 1325103, at *7 (N.D. Ind. May 13, 2009) ("in the interest of judicial economy and fairness, the answers to contention interrogatories often are delayed until the end of discovery"); Fed. R. Civ. P. 33(a)(2) ("the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time").

### Plaintiffs' Notices of Depositions

     As we have previously discussed, Plaintiffs' 30(b)(6) deposition notice issued to the City is extremely broad. Among other things, it lists at least 20 deposition topics spanning 5 pages of the notice. Again, like Plaintiffs' written discovery requests, the scope of the 30(b)(6) notice is at odds with Plaintiffs' prior representations to the Court that Plaintiffs would seek very limited discovery. But even as to those subjects that are properly the subject of deposition (a matter that the parties have yet to discuss), the City will likely need to produce numerous different witnesses. This presents numerous logistical and scheduling issues which are only compounded by the impending year-end holiday season.

     Given these realities, and our ongoing efforts to respond to Plaintiffs' other discovery requests, we previously informed you that the City will not be able to produce 30(b)(6) witnesses on December 2 (a date that Plaintiffs unilaterally picked). And, as also discussed, we have proposed that the parties jointly seek a 60-day extension of the discovery period (due largely to the volume and breadth of Plaintiffs' discovery requests), and that, pursuant to that extension, the City would produce 30(b)(6) witnesses in January. We further indicated that the four individual depositions noticed by Plaintiffs for early December may be mooted in whole or in part by the 30(b)(6) deposition, and that those depositions should therefore take place after the 30(b)(6) deposition. We look forward to your response on these matters.

### Plaintiffs' Privilege Log Proposal

     Regarding your proposal that the parties need not log privileged communications between counsel and client concerning the *Benson*, *Ezell*, and *Second Amendment Arms* litigation, such communications routinely are not treated as responsive or logged. We thus have no objection to your

Jesse Panuccio
November 24, 2010
Page 6

proposal and believe that logging such documents is neither a pressing matter at present nor a productive use of counsels' time in light of other outstanding discovery matters. Indeed, even as to post-lawsuit communications that do not specifically address the three lawsuits, such communications are routinely not logged and we see no reason why they should be here. As to your view that pre-lawsuit communications between City attorneys and City officials (and, we assume, pre-lawsuit communications between Plaintiffs' counsel and Plaintiffs) are still subject to logging, the logging issue is premature because the parties are still negotiating the scope of responsive discovery. Defendants reserve all claims of privilege as to these documents and, to the extent that any pre-lawsuit communications would need to be logged, we believe (consistent with our proposal to extend discovery) that logging can and should wait until 2011.

Sincerely,

Andrew W. Worseck
312-744-7129

Enclosure

cc:    Stephen Kolodziej
       Michael A. Forti
       Mardell Nereim
       William Macy Aguiar
       Rebecca Alfert Hirsch

# Exhibit E

# Cooper & Kirk

Lawyers

A Professional Limited Liability Company

**1523 New Hampshire Avenue, N.W.**

**Washington, D.C. 20036**

Pete Patterson
ppatterson@cooperkirk.com

(202) 220-9600
Fax (202) 220-9601

February 7, 2011

By First Class Mail and Email

Andrew Worseck
City of Chicago, Department of Law
30 North LaSalle Street
Suite 900
Chicago, IL 60602
Email: andrew.worseck@cityofchicago.org

Re: *Benson v. City of Chicago*, No. 10-4184 (N.D. Ill.)

Dear Andrew:

I write in response to your letter of January 25 and to memorialize our phone conversation of February 4. As a result of that letter and subsequent discussion, many of the discovery disputes addressed in our pending motion to compel are no longer ripe for the Court's adjudication. Below I outline our understanding of the issues raised in our motion that remain contested, organized by the six categories we identified in our motion.

## Category A

Category A concerns documents and deposition testimony relating to the drafting of the Ordinance, the legislative process, and the legislative hearings. This category of information remains a principal area of disagreement between the parties and is implicated by both our motion to compel and the City's motion for a protective order. RFP Nos. 1, 2, and 4(i) and Rule 30(b)(6) Topic Nos. 1 and 2 are the primary discovery requests seeking this category of information, but additional requests such as Rule 30(b)(6) Topic Nos. 3, 4, 8, 9, 12, 13, 14, and 15 potentially reach such information as well.

## Category B

Category B concerns statistics and data about crime and firearms. On January 27, the Court ordered the City to produce this data by February 7. During our February 4 call, you indicated that the City is on track to meet this deadline except for a subset of the data requested by RFP Nos. 5 and 6, the production of which has been hampered by personnel issues related to last week's snowstorm. It is our understanding that the City will produce everything except this

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
February 7, 2011
Page 2 of 3

subset on February 7, and we expect that the City should be able to produce the subset by the end of the week. The City has also agreed to produce a witness to discuss the technical nature of any CPD data it produces, such as how such data is collected, input, search, and produced and what particular pieces of data mean or reflect. *See* Rule 30(b)(6) Topic Nos. 5, 6. There are thus no live issues remaining before the Court with respect to Category B.

## Category C

Category C concerns discovery regarding alleged purposes of the challenged provisions of the Ordinance and the fit between the provisions and those purposes. Although the parties have made progress on this category, disagreement persists with respect to RFPs 28-30, 31, 33, and 41. These requests generally seek (1) documents related to the interests advanced by the Ordinance and the tailoring of the Ordinance to advance those interests, and (2) documents the City will use to defend the Ordinance. Disagreement also persists with respect to information sought by Rule 30(b)(6) Topic Nos. 3, 4, 8, 9, 12, 13, and 14 that extends beyond the specific experience of the City's executive function and reaches into the Ordinance's legislative process. Indeed, the City has not offered to produce a witness with respect to Topic No. 4 because it views that topic as seeking legislative as opposed to executive information.

## Category D

Category D concerns information regarding firearms training, firearms ranges, and firearms stores. Although many of the issues identified in our motion to compel are now moot, the parties continue to dispute RFP No. 13, pursuant to which Plaintiffs seek discovery materials that have been exchanged in the *Ezell* litigation, and Rule 30(b)(6) Topic No. 15 as it relates to the Ordinance's legislative history.

## Categories E & F

With the City's agreement to produce a responsive witness with respect to Rule 30(b)(6) Topic Nos. 7 and 16, pursuant to the terms set forth in your January 25 letter, the issues raised motion to compel Categories E and F are no longer the subject of a live dispute between the parties.

* * * * *

As the foregoing demonstrates, many of the issues presented in our motion to compel have been resolved. Plaintiffs of course retain the right to bring these issues back before the Court if necessary, as well as any additional issues that may develop as the City continues to respond to our discovery requests. In our February 4 call, we discussed a few areas that may bear the parties' attention going forward, including:

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
February 7, 2011
Page 3 of 3

- The "reasonable and targeted" search efforts the City has agreed to undertake in connection with RFP Nos. 7, 8, 9, and 14. It is our understanding that the City will provide us with the details of these search efforts (e.g., which agencies were and were not "targeted").

- The degree to which the City may or may not be able to provide information about ranges operated by the federal government.

- The identification and making available of the Rule 30(b)(6) witnesses the City has agreed to produce.

It is our hope that we are able to work together to resolve any issues that may arise in connection with these or any other topics.

Sincerely,

Pete Patterson

Cc:    Michael Forti, Esq.
       William Aguiar, Esq.
       Rebecca Hirsch, Esq.
       David Thompson, Esq.
       Stephen Kolodziej, Esq.

# Exhibit F

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRETT BENSON, RAYMOND SLEDGE, KENNETH PACHOLSKI, KATHRYN TYLER, MICHAEL HALL SR., RICK PERE, and the ILLINOIS ASSOCIATION OF FIREARMS RETAILERS, | ) ) ) ) ) ) | No. 10 CV 4184 |
| Plaintiffs, | ) ) | Judge Edmond E. Chang |
| v. | ) ) | Magistrate Judge Geraldine Soat Brown |
| THE CITY OF CHICAGO and RICHARD M. DALEY, Mayor of the City of Chicago, | ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' SUPPLEMENTAL RESPONSE TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendants City of Chicago ("City") and Mayor Richard M. Daley, by and through their attorney, Mara S. Georges, Corporation Counsel of the City of Chicago, hereby submit supplemental responses to certain interrogatories contained in Plaintiffs' First Set of Interrogatories.

## GENERAL OBJECTIONS

A.     Defendants object to each definition, instruction, and interrogatory to the extent that it attempts to impose discovery obligations which are greater than those required under the Federal Rules of Civil Procedure.

B.     Defendants object to each definition, instruction, and interrogatory to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine.

C.     Defendants object to each definition, instruction, and interrogatory to the extent

that it requests information relating to matters that are not relevant to the pending lawsuit or not reasonably calculated to lead to the discovery of admissible evidence, or otherwise exceeds the scope and manner of discovery permitted by the Federal Rules of Civil Procedure.

D.     Defendants object to each definition, instruction, and interrogatory to the extent that it seeks legal bases, legal conclusions, or opinions.

E.     Defendants object to each interrogatory to the extent that it requests information outside the possession, custody, or control of Defendants.

F.     When Defendants state that they will produce responsive documents or provide information, they state so only to the extent responsive documents or information exist and are in their possession, custody, or control.

G.     Defendants reserve all objections to the admissibility of any information into evidence in this litigation (including information contained in the answers to these interrogatories), including, without limitation, objections of relevance and materiality.

H.     Defendants reserve the right to seasonably supplement their responses to Plaintiffs' interrogatories, including future supplementation beyond that contained herein.

## SPECIFIC OBJECTIONS AND RESPONSES

Without waiving the General Objections, which are hereby incorporated into each response below as if set forth fully therein, and without waiving the Specific Objections previously lodged as against each of the following interrogatories, which are also hereby incorporated into reach response below as if set forth fully therein, Defendants supplement their responses to the following interrogatories as follows:

**INTERROGATORY NO. 1:**  Please identify every legitimate governmental interest to which Defendants contend the provisions of the Ordinance challenged in Plaintiffs' First Amended Complaint are related, whether such interests are rational, important, or compelling.

2

**ANSWER:** Without waiving their right to supplement this answer, and expressly reserving the right to do so, Defendants state that the legitimate governmental interests to which the challenged Ordinance provisions are related include:

- protecting public safety, health, and welfare;

- limiting or reducing firearm-related violence, injury, and death associated with criminal, accidental, or other firearm use (including possession, carrying and discharge) inside the home;

- limiting or reducing firearm-related violence, injury, and death associated with criminal, accidental, or other firearm use (including possession, carrying, transportation, and discharge) outside the home, including in public;

- limiting or reducing firearm suicide, including among children and minors;

- limiting or reducing firearm-related violence, injury, and death to children and minors, particularly within the home;

- limiting or reducing the risk that interpersonal encounters, whether inside the home or outside the home, including in public, result in firearm-related violence, injury, or death;

- limiting or reducing intimidation by those, especially gang members and criminals, who may possess or carry firearms outside of the home, including in public;

- limiting or reducing threats to law enforcement officers or other first responders from firearm-related violence, injury, and death associated with responding to emergency calls, criminal activity, or otherwise performing their duties, outside a home, including in public;

- limiting or reducing threats to law enforcement officers or other first responders from firearms-related violence, injury, and death associated with responding to emergency

3

calls, crimes in progress, or otherwise performing their duties, at or inside a home;

- limiting or reducing the theft of firearms or the commission of other crimes or injury against those who possess, carry, transport, store, or use firearms, including those who would operate or patronize a firearm store or vendor or a firearm shooting range;

- protecting against deleterious environmental impacts associated with the operation of firearm shooting ranges open to the public;

- limiting or reducing the introduction of firearms into illegal markets or the acquisition of firearms by persons, including criminals, not entitled to possess firearms, whether via theft, illegal trafficking, straw purchases, legitimate purchases, or otherwise;

- limiting or reducing the number of firearms that are possessed unlawfully in Chicago;

- eliminating the burden of regulating firearm stores or vendors, or firearm shooting ranges, that are open to the public;

- limiting or reducing the economic and social costs of firearm-related violence in Chicago;

- any other interest or purpose reflected in the legislative record of the Ordinance.

**INTERROGATORY NO. 2:** Please identify every less restrictive alternative to the challenged provisions of the Ordinance that Defendants considered in order to accomplish the interests identified in response to Interrogatory No. 1.

**ANSWER:** Defendants state that the request is vague, as each decision to enact a particular regulation implicitly, if not explicitly, entailed consideration and rejection of the alternative of not enacting the regulation, with such alternative (i.e., the absence of the regulation) being less restrictive than the enactment of the regulation. Defendants further state that the request is vague because it does not specify whether it encompasses only regulations that the City Council

4

expressly identified and considered as an alternative to another regulation, or whether it also

encompasses those regulations that, even if not expressly identified and considered as such, may

properly be deemed an alternative to another regulation. Subject to these objections, Defendants

further state that, without waiving their right to supplement this answer, and expressly reserving

the right to do so, and without purporting to necessarily set forth an exhaustive list, the following

un-enacted regulatory options are reflected in the legislative record of the Ordinance:

- Allowing firearms stores and vendors open to the public to operate subject to regulation.

- Requiring firearms owners to possess liability insurance.

- Restricting the number of handguns that may be lawfully possessed to one handgun per qualified applicant per home.

- Imposing heightened penalties on parents of children who gain access to a firearm.

**INTERROGATORY NO. 6:** Please identify the reasons why the City has enacted, put in place, or adheres to any other law, requirement, custom, or practice necessitating or regarding firearms instruction and/or training for any resident of, employee of, agent of, officer of, or visitor to the City of Chicago, including but not limited to the reasons why the City Council enacted the requirement that an applicant for a Chicago Firearms Permit must obtain "an affidavit signed by a firearm instructor certified by the State of Illinois ... attesting that the applicant has completed a firearm safety and training course, which, at a minimum provides one hour of range training."

**ANSWER:** Defendants state that, without waiving their right to supplement this answer, and

expressly reserving the right to do so, only the City Council can speak to its reasons for enacting

particular legislation, and that such reasons must be found in the Ordinance and its legislative

record. Further, the Ordinance's requirement that an applicant for a CFP complete a firearms

training course furthers the public safety, health, and welfare by enhancing or ensuring the

applicant's awareness of or ability to exercise safe and proper firearms possession, use, handling,

and storage. Additionally, requirements that members of the Chicago Police Department

5

complete firearms training courses or programs further the public safety, health, and welfare by

enhancing or ensuring the member's awareness of or ability to exercise safe and proper firearm

possession, use, handling, and storage, and by enhancing or ensuring the member's ability to

perform the distinct law enforcement functions and duties that the member, by virtue of his or

her status as a member, may be called upon to perform.

Dated: January 25, 2011

Respectfully submitted,

MARA S. GEORGES
CORPORATION COUNSEL
CITY OF CHICAGO

BY: _____
One of Its Attorneys

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William M. Aguiar
Rebecca Alfert Hirsch
Attorneys for the City of Chicago
Constitutional & Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, IL 60602
(312) 744-7129

## CERTIFICATE OF SERVICE

I, Andrew Worseck, an attorney, hereby certify that on this, the 25th day of January,

2011, I caused a copy of **Defendants' Supplemental Response to Plaintiffs' First Set of**

**Interrogatories,** to be served by email and by first-class United States mail, postage prepaid, on:

Charles J. Cooper
David H. Thompson
Jesse Panuccio
Cooper & Kirk, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036


_____
Andrew Worseck

7

# Exhibit G

# Cooper & Kirk

Lawyers
A Professional Limited Liability Company
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036

Pete Patterson
ppatterson@cooperkirk.com

(202) 220-9600
Fax (202) 220-9601

February 9, 2011

<u>By Email</u>

Andrew Worseck
City of Chicago, Department of Law
30 North LaSalle Street
Suite 900
Chicago, IL 60602
Email: andrew.worseck@cityofchicago.org

Re: *ILAFR v. City of Chicago*, No. 10-4184 (N.D. Ill.)

Dear Andrew:

I write to memorialize our agreement for bringing Plaintiffs' Interrogatory No. 7 before the Court. That request deals with witnesses the City intends to use in this matter, and after meeting and conferring the City continues to object to producing such information now. Rather than filing a new motion to compel, we plan to bring this disagreement to the Court's attention in the memorandum we will be filing tomorrow with the Court in connection with the pending discovery motions. To the extent we raise any new arguments with respect to Interrogatory No. 7 that are not encompassed within the arguments in our motion to compel (*e.g.*, in connection with RFPs 33 and 41), we will not object to the City filing a brief response within seven days of our memorandum.

Sincerely,

Pete Patterson

Cc:  Michael Forti, Esq.
William Aguiar, Esq.
Rebecca Hirsch, Esq.
David Thompson, Esq.
Stephen Kolodziej, Esq.

# Exhibit H

**City Council Committee on Police and Fire**
**July 1, 2010**

On June 18 and June 29, this Committee held hearings on gun violence and took testimony from experts on possible policies to reduce such violence in our city. These hearings contemplated the impact of the United States Supreme Court's *McDonald* decision on the City's handgun ban, and on future policies the City can enact to address gun violence.

More than 30 people testified at these hearings. We've heard from numerous experts on gun violence, from the Corporation Counsel and other legal experts, from the Superintendent of the Chicago Police Department and other CPD officers, from business owners, from leaders in our faith and community organizations, from those who have lost loved ones to gun violence, and even from some of the plaintiffs in the *McDonald* case.

Among the experts that testified were:

- Robyn Thomas, the Executive Director of Legal Community Against Violence
- David Hemenway, from the Harvard School of Public Health
- Thom Mannard, Executive Director of the Illinois Council Against Handgun Violence
- Tom VandenBerk, President and CEO of the Uhlich Children's Advantage Network
- Mark Walsh, the Executive Director of the Illinois Campaign to Prevent Gun Violence
- Dr. Marie Crandall, from the Trauma Unit at Northwestern Medical Faculty Foundation
- Claude Robinson, the Executive Vice President at the Uhlich Children's Advantage Network
- Annette Holt, from Purpose Over Pain
- Juliet Leftwich, the Legal Director of Legal Community Against Violence, and
- Daniel Webster, Co-Director of the Johns Hopkins Center for Gun Policy and Research

I would also like to acknowledge that one of the experts we invited, Dr. Jens Ludwig, a Professor of Social Service Administration, Law, and Public Policy at the University of Chicago's Crime Lab, was unable to speak but prepared testimony that was distributed to the members of the Committee on June 29. This testimony sets forth Dr. Ludwig's research on the costs of gun violence in Chicago. We've distributed this testimony to the Committee members again today, and I would like to note that it is on the record, and to thank Dr. Ludwig.

During our prior hearings, we also distributed and placed on the record the testimony from several of our other experts, as well as references from their work and numerous other studies on

CITY 000790

the causes and effects of gun violence, and recommendations on what we can do to address this problem.

From the evidence that was presented at these hearings, the Committee can make the following findings:

1. Chicago, like other big cities, has a serious problem of gun violence. The total economic and social costs of gun violence in Chicago are substantial. Gun violence severely impacts Chicago's criminal justice and health care systems. Gun violence foments fear in Chicago communities, which can harm property values and drive residents to flee neighborhoods.

2. An increase in the number of guns in circulation contributes to an increase in the number of incidents of gun violence. The presence of a gun makes a crime more lethal than it would be if a gun were not present.

3. Handguns, to an extreme degree, disproportionately contribute to gun violence and death in Chicago.

4. A strong permitting system for firearm owners is vital. Persons who commit violent crimes or threaten public safety by repeated substance abuse should not be allowed to possess firearms. Fingerprinting is necessary to identify ineligible persons. Public safety requires that firearm owners complete a certified firearms training course that includes both classroom instruction and range training.

5. A vigorous firearms registration system is necessary. Registration gives law enforcement essential information about firearms ownership, allows first responders to determine in advance whether individuals may have firearms, facilitates the return of lost or stolen firearms to their rightful owners, permits officers to seize unregistered weapons, and permits officers to charge an individual with a crime if he or she is in possession of an unregistered firearm. Requiring owners to confirm registration information annually is necessary to further these ends.

6. Shootings in the home are a major cause of death, particularly of children and minors. Requiring owners to secure or store their firearms when minors are present, or likely to be present, can reduce the number of accidental and intentional youth firearms injuries, including youth suicides. Further, limiting the number of firearms in the home that may be kept in an operable condition even when no minor is present reduces the risk of firearms injury in the home.

7. Requiring owners to quickly notify law enforcement of the loss, theft, or destruction of their firearm aides law enforcement in reducing illegal gun trafficking, and in identifying and prosecuting gun traffickers. Requiring owners to report the loss or theft when they know or should have known of the loss or theft enhances these purposes. A notification requirement also assists law enforcement in returning firearms to their lawful owners.

CITY 000791

2

8.   Limiting the number of handguns in circulation is essential to public safety. Limiting registration of handguns to one per person per month will help limit handgun injuries and crimes, as well as illegal handgun trafficking and straw purchasing.

9.   The carrying of firearms in public should be prohibited. In a dense, urban environment like Chicago, public carrying presents a high risk that everyday interpersonal conflicts will result in gun injury. Carrying allows carriers, particularly gang members, to intimidate others. Carrying also increases the threat to law enforcement when responding to calls for assistance.

10.  The public safety requires a ban on assault weapons. Assault weapons are not designed for the purpose of self-defense in the home and are not necessary for that purpose, nor are they designed for sport. They are military-style weapons and pose a particularly dangerous threat to law enforcement, as well as to civilians.

11.  "Junk guns" – cheap, low-quality handguns that are prone to misfire, fire when dropped, or otherwise malfunction, and that are usually easily concealed – are disproportionately associated with criminal misuse, especially by juveniles and young adults. Banning junk guns will reduce accidents and the risk of criminal abuse.

12.  Gun dealers in the City present a risk of firearms flowing quickly into the community and into the hands of criminals, through theft or illegal trafficking, or even through legitimate purchases. Further, there are many federally-licensed gun dealers close to Chicago from which Chicago residents may purchase firearms.

The Committee understands and respects the constitutional rights of Chicago residents. The Committee is mindful of the rulings of the United States Supreme Court, and of the protections conferred by the Second Amendment. The policies that will be recommended by the Committee and contained in the Responsible Gun Ownership Ordinance are in full accord with those rights and protections and are necessary for the ongoing protection of the public welfare and the safety of the residents of Chicago.

CITY 000792

# Exhibit I

# ORDINANCE

**WHEREAS,** A recent study by the Centers for Disease Control and Prevention found that in the United States there were 30,896 deaths from firearms in 2006, making firearms one of the top ten causes of death in the country; and

**WHEREAS,** Annually, more than 100,000 people in our nation are shot or killed with a firearm, with more than 3,000 of these victims being children or teenagers; and

**WHEREAS,** The United States is one of the few remaining developed nations that places only a minimal restrictions on the sale or possession of firearms; and

**WHEREAS,** Firearm-related injuries and deaths are the cause of significant social and economic costs to the City and our communities and have a severe impact on our criminal justice and health care systems; and

**WHEREAS,** In 2009, in the City there were 1,815 aggravated batteries with a firearm, of which 83 were shootings inside a residence, and there were 379 murders with a firearm, of which 34 were murders involving a firearm inside a home; and

**WHEREAS,** Between the beginning of this year and June, 15, 2010, there were 742 aggravated batteries with a firearm, of which 36 took place inside a residence, and 152 murders with a firearm, of which 19 were inside a residence; and

**WHEREAS,** Given the dangerous and deadly nature of handguns, in 1982 the City of Chicago enacted a ban on registering handguns as a method to protect public safety and the health and welfare of its residents; and

**WHEREAS,** In 2008, the Supreme Court of the United States decided the case of *District of Columbia v. Heller*, which held that the Second Amendment to the United States Constitution protects an individual right to possess a firearm unconnected with service in the militia; and

**WHEREAS,** After the *Heller* decision, the City's handgun registration ban was challenged in the case of *McDonald v. the City of Chicago*; and

**WHEREAS,** On June 28, 2010, the Supreme Court issued its opinion in the *McDonald* case and ruled that the Second Amendment's right to possess a handgun for self-defense in the home also applied to the states; and

**WHEREAS,** Although the State of Illinois has already enacted several laws to regulate the sale and possession of firearms, these laws are not sufficient to protect the City from the unique and heightened risk of firearm violence, especially handgun violence, endemic in densely populated urban areas, and

**WHEREAS,** In order to provide for the ongoing protection of the public welfare and safety, it is essential for the City Council of the City of Chicago to promptly pass an ordinance that provides for reasonable regulation of firearms in compliance with the rulings of the United States Supreme Court, but still is effective in protecting the public from the potentially deadly consequences of gun violence in our City; and

WHEREAS, When a gun is registered with the City, certain personal identifying information, such as the registrant's address, is obtained so that a first responder can be advised that a gun is present in that home. In order to protect the privacy and safety of people registering guns, any information provided in the registration procedure should not be available to the public. The City is requesting that Illinois Attorney General Lisa Madigan issue an opinion, as expeditiously as possible, on whether the information provided to the City for gun registration is exempt from disclosure under the Illinois Freedom of Information Act, 5 ILCS 140, et seq.; and

WHEREAS, As a consequence of the United States Supreme Court decisions in *Heller* and *McDonald*, it is anticipated that gun ownership in many communities, including large urban areas, will increase. To ensure public safety and the welfare of a community, it is essential that local law enforcement agencies be made aware of any gun brought into their jurisdictions. Therefore, the United States Congress must pass a law mandating that the Bureau of Alcohol, Tobacco, Firearms and Explosives timely notify a local law enforcement agency of any purchase or sale of a firearm by a resident of that community; and

WHEREAS, In addition, the ability to have handguns in a home will expose taxpayers to greater costs and expenses associated with the increased number of incidents involving a first responder entering a home where a gun is present. In order to minimize the impact of these costs to the taxpayers, the United States Congress and the State of Illinois must pass laws that grant immunity for the City and its first responders from any civil liability for any accidental or lawfully intentional actions by the first responders in responding to a situation in a home where a gun is present and the first responder perceives a danger caused by the presence of the gun; now, therefore,

### BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF CHICAGO:

SECTION 1. Chapter 2-14 of the Municipal Code of Chicago is hereby amended by deleting the language struck through, and by adding the language underscored, as follows:

**2-14-132 Impoundment.**
(1) Whenever the owner of a vehicle seized and impounded pursuant to Sections 3-46-076, 3-56-155, 4-68-195, 9-80-220 or 9-112-555 of this Code (for purposes of this section, the "status-related offense sections"), or Sections 7-24-225, 7-24-226, 7-28-390, 7-28-440, 7-38-115(c-5), 8-4-130, 8-8-060, 8-20-015, 8-20-070, 9-12-090, 9-76-145, 9-80-240, 9-92-035, 11-4-1410, 11-4-1500 or 15-20-270 of this Code (for purposes of this section, the "use-related offense sections") requests a preliminary hearing in person and in writing at the department of administrative hearings, within 15 days after the vehicle is seized and impounded, an administrative law officer of the department of administrative hearings shall conduct such preliminary hearing within 48 hours of request, excluding Saturdays, Sundays and legal holidays, unless the vehicle was seized and impounded pursuant to Section 7-24-225 and the department of police determines that it must retain custody of the vehicle under the applicable state or federal forfeiture law. If, after the hearing, the administrative law officer determines that there is probable cause to believe that the vehicle was used in a violation of this Code for which seizure and impoundment applies, or, if the impoundment is pursuant to Section 9-92-035, that the subject vehicle is eligible for impoundment under that section, the administrative law officer shall order the continued impoundment of the vehicle as provided in this section unless the owner of the vehicle pays to the city the amount of the administrative penalty prescribed for the code violation plus fees for towing and storing the vehicle. If the vehicle is also subject to immobilization for unpaid parking and/or compliance violations, the owner of the vehicle must also pay the amounts due for all such outstanding violations prior to the release of the vehicle. If the administrative law officer determines

there is no such probable cause, or, if the impoundment is pursuant to Section 9-92-035, that the subject vehicle has previously been determined not to be eligible for impoundment under that section, the vehicle will be returned without penalty or other fees.

*(omitted text is unaffected by this ordinance)*

**2-14-190  Municipal hearings division – Jurisdiction.**
(a)  The department of administrative hearings is authorized to establish a system of administrative adjudication for the enforcement of all provisions of the Municipal Code that are not adjudicated by the vehicle, buildings, environmental safety or consumer affairs hearings divisions, except that it shall not adjudicate violations of the following chapters and sections: chapter 4-92 (Massage Establishments and Massage Services); chapter 4-144 (Weapons); and Section 7-28-190 (Health Nuisances – Throwing Objects into Roadways); chapter 8-20 (Weapons), other than Section 8-20-015 (Unlawful Firearm in Motor Vehicle – Impoundment); and chapter 8-24 (Firearms and Other Weapons).

*(omitted text is unaffected by this ordinance)*

SECTION 2.  Chapter 2-84 of the Municipal Code of Chicago is hereby amended by adding a new section 2-84-075, as follows:

**2-84-075 Sale of firearms and ammunition authorized by the superintendent.**
Notwithstanding any other provision of this code to the contrary, the superintendent may authorize the sale of firearms or ammunition by a person issued a federal firearms license to a member of the police department, if that member is authorized to carry such firearm or ammunition. Such sales shall be conducted at department of police facilities.

SECTION 3.  Title 4 of the Municipal Code of Chicago is hereby amended by adding a new section 4-144-065, by adding the language underscored, and by deleting the language struck through, as follows:

**4-144-010  License – Required.**
It shall be unlawful for any person to engage in the business of selling, or to sell, or give away or otherwise transfer, any pistol, revolver or other firearm, dagger, stiletto, billie, derringer, bowie knife, dirk, stun gun or taser, as defined in Section 24-1 of the Illinois Criminal Code, 720 ILCS 5/24-1, or other deadly weapon which can be carried or concealed on the person, or any ammunition, as that term is defined in Section 8-20-010, without securing a weapons dealer license. The license required by this chapter shall be in addition to any other license required by law.  It shall be unlawful for any person licensed under this chapter to engage in the business of selling, or to sell, give away or otherwise transfer, any firearm as that term is defined in Section 8-20-010.

**4-144-061  Sale of certain handgun ammunition prohibited.**
Except as allowed by section 8-20-100(e) subsection (e) of Section 8-20-170 of this Code, it shall be unlawful for any person to sell, offer for sale, expose for sale, barter or give away to any person within the city, any armor piercing or .50 caliber ammunition of the following calibers and types:

.45 automatic
.380 automatic
.38 special

.357 magnum
.25 caliber
.22 caliber, including .22 long
9 millimeter

Any other ammunition, regardless of the designation by the manufacturer, distributor or seller, that is capable of being used as a substitute for any of the foregoing.

**4-144-062 Sale of <u>ammunition to minors-prohibited.</u> handguns without childproofing or safety devices prohibited.**
<u>No person licensed under this chapter shall sell or otherwise transfer any ammunition to a person who is under the age of 18.</u>

Except as allowed by subsection (e) of Section 8-20-170 of this Code, it shall be unlawful for any person to sell, barter or give away to any person any handgun which does not contain:
(1)      A safety mechanism to hinder the use of the handgun by unauthorized users. Such devices shall include, but shall not be limited to, trigger locks, combination handle locks, and solenoid use-limitation devices, and
(2)      A load indicator device that provides reasonable warning to potential users such that users even unfamiliar with the weapon would be forewarned and would understand the nature of the warning.

Safety mechanism means a design adaption or nondetachable accessory that lessens the likelihood of unanticipated use of the handgun by other than the owner of the handgun and those specifically authorized by the owner to use the handgun.

A trigger lock means a device that when locked in place by means of a key, prevents a potential user from pulling the trigger of the handgun without first removing the trigger lock by use of the trigger lock's key.

A combination handle lock means a device that is part of the handgun which precludes the use of the handgun unless the combination tumblers are properly aligned.

A solenoid use-limitation device means a device which precludes, by use of a solenoid, the firing of the handgun unless a magnet of the appropriate strength is placed in proximity to the handle of the weapon.

A load indicator means a device which plainly indicates that a bullet is placed in the handgun in a way that pulling the trigger or otherwise handling the handgun may result in detonation.

**<u>4-144-065 Sale of metal piercing bullets.</u>**
<u>No person licensed under this chapter shall sell, offer for sale, expose for sale, barter, give away or otherwise transfer any metal piercing bullets, as that term is defined in section 8-20-010.</u>

**SECTION 4.** Chapter 8-20, Articles I and II, section 8-20-010 through and including section 8-20-260 of the Municipal Code of Chicago are deleted in their entirety and replaced with the following language;

**ARTICLE I.  DEFINITIONS.**

- 4 -

## 8-20-010 Definitions:

For purposes of this chapter the following terms shall apply:

"The Act" means the Illinois Firearm Owners Identification Card Act, 430 ILCS 65/1 et seq., as amended.

"Ammunition" means any self-contained cartridge or shotgun shell, by whatever name known, which is designed to be used or adaptable to use in a firearm; excluding however;
(1) any ammunition used exclusively for line-throwing, signaling, or safety and required or recommended by the United States Coast Guard or Interstate Commerce Commission; or
(2) any ammunition designed exclusively for use with a stud or rivet driver or other similar industrial ammunition.

"Antique firearm" has the same meaning ascribed to that term in 18 U.S.C. § 921(a)(16).

"Assault weapon" means:
(1) A semiautomatic rifle that has the ability to accept a detachable magazine and has one or more of the following:
    (i) a folding or telescoping stock
    (ii) a handgun grip which protrudes conspicuously beneath the action
    (iii) a bayonet mount
    (iv) a flash suppressor or a barrel having a threaded muzzle
    (v) a grenade launcher; or

(2) A semiautomatic shotgun that has one or more of the following:
    (i) a folding or telescoping stock
    (ii) a handgun grip which protrudes conspicuously beneath the action
    (iii) a fixed magazine capacity in excess of 5 rounds
    (iv) an ability to accept a detachable magazine; or

(3) A semiautomatic handgun that has an ability to accept a detachable magazine and has one or more of the following:
    (i) an ammunition magazine that attaches to thehandgun outside thehandgun grip
    (ii) a barrel having a threaded muzzle
    (iii) a shroud that is attached to, or partially or completely encircles the barrel, and permits the shooter to hold the firearm with the non-trigger hand without being burned;
    (iv) a manufactured weight of 50 ounces or more when the handgun is unloaded
    (v) a semiautomatic version of an automatic firearm.

"Chicago Firearm Permit" or "CFP" means the permit issued by the City which allows a person to possess a firearm.

"Corrections officer" means wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of an offense.

"Department" means the department of police.

"Dwelling unit" has the same meaning ascribed to that term in section 17-17-0248.

"Duty-related firearm" shall mean any firearm which is authorized by any law enforcement agency or employer to be utilized by their personnel in the performance of their official duties.

"Firearm" means any device, by whatever name known, which is designed or restored to expel a projectile or projectiles by the action of any explosive, expansion of gas or escape of gas. Provided, that such term shall not include:

   (1)  any pneumatic gun, spring gun, paint ball gun or B-B gun which either expels a single globular projectile not exceeding .18 inch in diameter and which has a maximum muzzle velocity of less than 700 feet per second or breakable paint balls containing washable marking colors;
   (2)  any device used exclusively for line-throwing, signaling, or safety and required or recommended by the United States Coast Guard or Interstate Commerce Commission; or
   (3)  any device used exclusively for firing explosives, rivets, stud cartridges, or any similar industrial ammunition.

"Firearm case" means any firearm case, carrying box, shipping box or other similar container that is designed for the safe transportation of the firearm.

"FOID" means the Firearm Owner's Identification Card issued pursuant to the Act.

"Handgun" means a firearm designed to be held and fired by the use of a single hand, and includes a combination of parts from which such firearm can be assembled.

"High capacity magazine" means any ammunition magazine having a capacity of more than 12 rounds of ammunition.

"Home" means the inside of a person's dwelling unit which is traditionally used for living purposes, including the basement and attic. A "home" does not include: (i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas; or (iii) any dormitory, hotel, or group living, as that term is defined in section 17-17-0102-A.

"Laser sight accessory" means a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm.

"Lawful transportation" means the transportation of a firearm by a person:

   (1)  in compliance with section 8-20-090; or
   (2)  who has a valid FOID card, a CFP and firearm registration certificate, if applicable, and the firearm is: (i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case.

"Long gun" means any firearm, other than a handgun.

"Machine gun" means any firearm which can fire multiple rounds of ammunition by a single function of the firing device or one press of the trigger.

"Metal piercing bullet" means any bullet that is manufactured with other than a lead or lead alloy core, or ammunition of which the bullet itself is wholly composed of, or machined from, a metal or metal alloy other than lead, or any other bullet that is manufactured to defeat or penetrate bullet resistant properties of soft body armor or any other type of bullet resistant clothing which meets the minimum requirements of the current National Institute for Justice Standards for "Ballistic

Resistance of Police Body Armor."

"Organization" means partnership, company, corporation or other business entity, or any group or association of two or more persons united for a common purpose.

"Peace officer" means any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses.

"Retired department police officer" means a person who is retired from the department in good standing and without any disciplinary charges pending, and who is, or is eligible to become, an annuitant of the Policemen's Annuity and Benefit Fund of the City of Chicago.

"Sawed-off shotgun" means a shotgun having one or more barrels less than 18 inches in length and any weapon made from a shotgun, whether by alteration, modification or otherwise, if such weapon, as modified, has an overall length of less than 26 inches.

"Security personnel" means special agents employed by a railroad or public utility to perform police functions, guards of armored car companies, watchmen, security guards or persons regularly employed in a commercial or industrial operation for the protection of persons employed by, or property related to, such commercial or industrial operation; and watchmen while in the performance of the duties of their employment.

"Short-barreled rifle" means a rifle having one or more barrels less than 16 inches in length, and any weapon made from a rifle, whether by alteration, modification, or otherwise, if such weapon, as modified, has an overall length of less than 26 inches.

"Superintendent" means the superintendent of the department or his designated representative.

"Safety mechanism" means a design adaption or nondetachable accessory that lessens the likelihood of unanticipated use of the handgun.

"Trigger lock" means a device that when locked in place by means of a key, prevents a potential user from pulling the trigger of the firearm without first removing the trigger lock by use of the trigger lock's key.

"Unregisterable firearm" means any firearm listed in section 8-20-170.

"Unsafe handgun" means any handgun that is listed on the superintendent's roster of unsafe handguns because, in the determination of the superintendent, the handgun is unsafe due to its size, ability to be concealed, detectability, quality of manufacturing, quality of materials, ballistic accuracy, weight, reliability, caliber, or other factors which makes the design or operation of the handgun otherwise inappropriate for lawful use.

"Violent crime" has the same meaning ascribed to that term in the Rights of Crime Victims and Witnesses Act, 725 ILCS 120/1, et seq., as amended.

## ARTICLE II. POSSESSION OF FIREARMS

## 8-20-020 Unlawful possession of handguns.

(a) It is unlawful for any person to carry or possess a handgun, except when in the person's home.

(b) The provisions of this section shall not apply to:

(1) peace officers, and any person summoned by a peace officer to assist in making arrests or preserving the peace, while assisting such officer;

(2) corrections officers while in the performance of their official duty, or while commuting between their homes and places of employment;

(3) members of the Armed Services or Reserve Forces of the United States or the Illinois National Guard or the Reserve Officers Training Corps, while in the performance of their official duty;

(4) security personnel;

(5) persons licensed as private security contractors, private detectives, or private alarm contractors, or employed by an agency certified by the Illinois Department of Professional Regulation;

(6) persons regularly employed in a commercial or industrial operation as a security guard for the protection of persons employed and private property related to such commercial or industrial operation, while in the performance of their duties or traveling between sites or properties belonging to the employer, and who, as a security guard, is registered with the Illinois Department of Professional Regulation;

(7) persons employed by a financial institution for the protection of other employees and property related to such financial institution, while in the performance of their duties, commuting between their homes and places of employment, or traveling between sites or properties owned or operated by such financial institution;

(8) persons employed by an armored car company to drive an armored car, while in the performance of their duties;

(9) persons who have been classified as peace officers pursuant to the Peace Officer Fire Investigation Act;

(10) investigators of the Office of the State's Attorneys Appellate Prosecutor authorized by the board of governors of the Office of the State's Attorneys Appellate Prosecutor to carry weapons pursuant to Section 7.06 of the State's Attorneys Appellate Prosecutor's Act;

(11) special investigators appointed by a State's Attorney under Section 3-9005 of the Counties Code;

(12) probation officers while in the performance of their duties, or while commuting between their homes, places of employment or specific locations that are part of their assigned duties, with the consent of the chief judge of the circuit for which they are employed;

(13) court security officers while in the performance of their official duties, or while

commuting between their homes and places of employment, with the consent of the sheriff;

(14) persons employed as an armed security guard at a nuclear energy, storage, weapons or development site or facility regulated by the Nuclear Regulatory Commission who have completed the background screening and training mandated by the rules and regulations of the Nuclear Regulatory Commission;

(15) duly authorized military or civil organizations while parading, with the special permission of the Governor;

(16) persons engaged in the manufacture, transportation, or sale of firearms to persons authorized under this subsection to possess those firearms;

(17) a person while engaged in the lawful transportation of a firearm.

## 8-20-030 Unlawful possession of long guns.

(a) It is unlawful for any person to carry or possess a long gun, except when in the person's home or fixed place of business.

(b) The provisions of this section shall not apply to:
(1) any person listed in section 8-20-020(b); or
(2) any duly licensed hunter who has a valid FOID card, a CFP and firearm registration certificate, while engaged in hunting in an area where hunting is permitted.

## 8-20-035 Unlawful possession of unregisterable firearms.

(a) It is unlawful for any person to carry or posses any unregisterable firearm.

(b) The provisions of this section shall not apply to corrections officers, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers, to the extent that any such person is otherwise authorized to acquire or possess assault weapons, and is acting within the scope of his duties, or to any person while engaged in the manufacturing, transportation or sale of assault weapons to people authorized to possess them under this section.

(c) Notwithstanding the provisions of subsection (a), those firearms listed in section 8-20-170(a) may be possessed and used by the department for training and tactical operation, as authorized by the superintendent.

(d) Any firearm carried or possessed in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

## 8-20-040 Firearms kept or maintained in a home.

Subject to section 8-20-050, every person who keeps or possesses a firearm in his home shall keep no more than one firearm in his home assembled and operable. If more than one person in the home has a valid CFP and registration certificate, each person with a valid CFP and registration certificate is entitled to have one such firearm assembled and operable in the home. All other firearms kept or possessed by that person in his home shall be broken down in a nonfunctioning state or shall have a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render the firearm temporarily inoperable.

The provisions of this section shall not apply to peace officers.

### 8-20-050 Firearms- Protection of minors.

(a) It is unlawful for any person to keep or possess any firearm or ammunition in his home if the person knows or has reason to believe that a minor under the age of 18 years is likely to gain access to the firearm or ammunition, unless:

(1) the person is physically present in the home and the firearm is either being held by the person or is physically secured on the person's body;

(2) the firearm is secured by a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render a firearm temporarily inoperable; or

(3) the firearm and ammunition are placed in a securely locked box or container.

(b) No person shall be punished for a violation of this section under the following circumstances:

(1) if the minor gains access to the firearm and uses it in a lawful act of self-defense or defense of another; or

(2) if the minor gains access to the firearm because of an unlawful entry of the premises by the minor or another person.

The provisions of this section shall not apply to peace officers.

### 8-20-060 Possession of a laser sight accessory, firearm silencer or muffler.

(a) It is unlawful for any person to carry, possess, display for sale, sell or otherwise transfer any laser sight accessory, or a firearm silencer or muffler.

(b) The provisions of this section shall not apply to any members of the armed forces of the United States, or the organized militia of this or any other state, or peace officers, to the extent that any such person is otherwise authorized to acquire or possess a laser sight accessory, or firearm silencer or muffler, and is acting within the scope of his duties.

(c) Any laser sight accessory, or firearm silencer or muffler, carried, possessed, displayed or sold in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

### 8-20-070 Unlawful firearm, laser sight accessory, or firearm silencer or muffler in a motor vehicle – Impoundment.

(a) The owner of record of any motor vehicle that contains a firearm registered to a person who is not the driver or occupant of the vehicle, an unregistered firearm, a firearm that is not being lawfully transported, an unregisterable firearm, a laser sight accessory, or a firearm silencer or muffler, shall be liable to the city for an administrative penalty of $1,000.00 plus any towing and storage fees applicable under Section 9-92-080. Any such vehicle shall be subject to seizure and impoundment pursuant to this section.

(b) Whenever a police officer has probable cause to believe that a vehicle is subject to seizure and impoundment pursuant to this section, the police officer shall provide for the towing of the vehicle to a facility controlled by the city or its agents. Before or at the time the vehicle is towed,

the police officer shall notify any person identifying himself as the owner of the vehicle at the time of the alleged violation, of the fact of the seizure and of the vehicle owner's right to request a vehicle impoundment hearing to be conducted under Section 2-14-132 of this Code.

(c)  The provisions of Section 2-14-132 shall apply whenever a motor vehicle is seized and impounded pursuant to this section.

**8-20-080 Possession of ammunition.**
(a) It is unlawful for any person to carry or possess any ammunition in the city, unless the person:

(1)  has a valid CFP and registration certificate for a firearm of the same gauge or caliber as the ammunition possessed, and while in possession of the ammunition, has the CFP and registration certificate in his possession when he is not in his home, or, when he is in his home, has the CFP and registration certificate readily available in his home; or

(2)  is a licensed weapons dealer; or

(3)  is a person listed in section 8-20-020(b).

(b) Any ammunition carried or possessed in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

**8-20-085  High capacity magazines and metal piercing bullets – Sale and possession prohibited – Exceptions.**
(a) It is unlawful for any person to carry, possess, sell, offer or display for sale, or otherwise transfer any high capacity magazine or metal piercing bullets.  This section shall not apply to corrections officers, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers, to the extent that any such person is otherwise authorized to acquire or possess metal piercing bullets, and is acting within the scope of his duties, or to any person while in the manufacturing, transportation or sale of high capacity magazines or metal piercing bullets to people authorized to possess them under this section.

(b)  Any high capacity magazine or metal piercing bullets carried, possessed, displayed, sold or otherwise transferred in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

**8-20-090 Interstate transportation of firearms.**
It shall not be a violation of this chapter if a person transporting a firearm or ammunition while engaged in interstate travel is in compliance with 18 U.S.C.A. §926A.  There shall be a rebuttable presumption that any person within the city for more than 24 hours is not engaged in interstate travel, and is subject to the provisions of this chapter.

**8-20-100 Permissible sales and transfers of firearms and ammunition.**
(a)  Except as authorized by subsection (e) and section 2-84-075, no firearm may be sold, acquired or otherwise transferred within the city, except through inheritance of the firearm.

(b)  No ammunition may be sold or otherwise transferred within the city, except through a licensed weapons dealer, or as otherwise allowed by this code.

(c) No firearm or ammunition shall be security for, or be taken or received by way of any mortgage, deposit, pledge or pawn.

(d) No person may loan, borrow, give or rent to or from another person, any firearm or ammunition except in accordance with this chapter.

(e) Notwithstanding any other provision of this section, a peace officer may sell or transfer any lawfully held firearm or ammunition to another peace officer in accordance with the other provisions of this chapter.

## ARTICLE III. PERMITS FOR AND REGISTRATION OF FIREARMS.

### 8-20-110 CFP-Required

(a) Subject to subsection (d), it is unlawful for any person to carry or possess a firearm without a CFP.

(b) No CFP application shall be approved unless the applicant:

(1) is 21 years of age or older; provided that an application of a person 18 years or older but less than 21 may be approved if the person has the written consent of his parent or legal guardian to possess and acquire a firearm or firearm ammunition and that he has never been convicted of a misdemeanor, other than a traffic offense or adjudged a delinquent; provided that such parent or legal guardian is not an individual prohibited from having a FOID or CFP, and that the parent files an affidavit with the department attesting that the parent is not an individual prohibited from having a FOID or CFP;

(2) possesses a valid Illinois FOID;

(3) has not been convicted by a court in any jurisdiction of:
(i)  a violent crime,
(ii)  two or more offenses for driving under the influence of alcohol or other drugs; or
(iii) an unlawful use of a weapon that is a firearm;

(4) has vision better than or equal to that required to obtain a valid driver's license under the standards established by the Illinois Vehicle Code;

(5) is not otherwise ineligible to possess a firearm under any federal, state or local law, statute or ordinance; and

(6) has not been convicted, adjudicated, admitted to, or found liable for a violation of section 8-20-060 or 8-20-100.

(c) Each CFP issued shall be accompanied by a copy of this ordinance.

(d) Any person who has a valid firearm registration certificate issued before the effective date of this 2010 ordinance shall be exempted from acquiring a CFP until the expiration of the registration certificate; provided that upon the expiration of the registration certificate, the person shall be required to obtain a CFP. Any such person who has submitted an application for a CFP prior to or on the date of the expiration of his current registration certificate shall be deemed to be

in compliance with the requirement for a CFP while his application is pending.

(e) The provisions of this section shall not apply to any person listed in section 8-20-020(b)(1)-(16) or a person engaged in interstate travel in compliance with section 8-20-100.

## 8-20-120 CFP-application

(a) An applicant for a CFP shall submit an application to the superintendent on a form or in a manner prescribed by the superintendent. The application shall include the following:

(1) name, residential address and telephone number of the applicant;

(2) the applicant's date of birth and sex;

(3) the applicant's Illinois firearm owner's identification number and a copy of the applicant's FOID card;

(4) evidence that the applicant meets the criteria of section 8-20-110;

(5) two identical photographs of the applicant taken within 30 days immediately prior to the date of filing the application, equivalent to passport size, showing the full face, head and shoulders of the applicant in a clear and distinguishing manner;

(6) the applicant's Illinois driver's license number and a copy of the applicant's driver's license or Illinois identification card;

(7) an affidavit signed by a firearm instructor certified by the State of Illinois to provide firearm training courses attesting that the applicant has completed a firearm safety and training course, which, at a minimum, provides one hour of range training and four hours of classroom instruction that is in compliance with the requirements of the classroom instruction course, as established in rules and regulations; and

(8) any other information as the superintendent shall find reasonably necessary to effectuate the purpose of this chapter and to arrive at a fair determination as to whether the terms of this chapter have been complied with.

The superintendent shall be the custodian of all applications for CFPs under this chapter.

(b) The applicant shall submit to fingerprinting in accordance with procedures established in rules and regulations promulgated by the superintendent.

(c) For an application for a CFP submitted within 180 days of the effective date of this 2010 ordinance, the superintendent shall either approve or deny such application no later than 120 days after the date the application is submitted, unless good cause is shown. For an application for a CFP submitted thereafter, the superintendent shall either approve or deny an application within 45 days from the date the application is submitted, unless good cause is shown. An application shall not be deemed submitted until the applicant provides all the required information or documentation.

(d) All CFPs issued by the superintendent shall contain the applicant's name, date of birth, sex, and signature. Each CFP shall have the expiration date boldly and conspicuously displayed on the face of the CFP.

### 8-20-130  CFP card-fee and expiration.

(a) A CFP card shall expire 3 years after the date of issuance.

(b) The fee shall be $100.00.

(c) The CFP fee shall not be applicable to any resident of the city who is a retired department police officer.

### 8-20-140  Firearm registration certificate-required

(a) Subject to subsection (d), it is unlawful for any person to carry or possess a firearm without a firearm registration certificate.

(b) No application for a registration certificate shall be approved unless the applicant has been issued a valid CFP; provided no CFP shall be required for the issuance of a registration certificate if the person is an exempt person pursuant to section 8-20-110(e).

(c) An applicant for a registration certificate shall submit an application to the superintendent on a form or in a manner prescribed by the superintendent. The application shall include the following:

(1) name, telephone number and the address at which the firearm shall be located;

(2) a copy of the applicant's CFP and Illinois FOID card;

(3) the name of the manufacturer, the caliber or gauge, the model, type and the serial number identification of the firearm to be registered;

(4) the source from which the firearm was obtained;

(5) the address at which the firearm will be located;

(6) if an antique firearm, the year of manufacture of the firearm;

(7) the date the firearm was acquired; and

(8) any other information as the superintendent shall find reasonably necessary to effectuate the purpose of this chapter and to arrive at a fair determination as to whether the terms of this chapter have been complied with.

The superintendent shall be the custodian of all applications for registration certificates under this chapter.

(d)  (1) Subject to subsection (d)(2), an application for a registration certificate shall be submitted no later than 5 business days after a person takes possession within the city of a firearm from any source; provided that any applicant who has submitted a complete application within the required 5 business days shall be considered in compliance with this subsection until his registration certificate is either approved or denied.

(2) Notwithstanding any provision of this chapter to the contrary, a person has 90 days after the effective date of this 2010 ordinance to register a firearm, including a

handgun, which had not been previously registered; provided that the person and firearm meet all the requirements of this ordinance.

(e)  For an application for a firearm registration certificate submitted within 180 days after the effective date of this 2010 ordinance, the superintendent shall either approve or deny such application no later than 45 days after the date the application is submitted.  For an application for a firearm registration certificate submitted thereafter, the superintendent shall either approve or deny the application within 21 days of the submission of the application, unless good cause is shown. An application shall not be deemed submitted until the applicant provides all the required information or documentation.

(f) The provisions of this section shall not apply to:
   (1)  firearms owned or under the direct control or custody of any federal, state or local governmental authority maintained in the course of its official duties;

   (2)  duty-related firearms owned and possessed by peace officers who are not residents of the city;

   (3) duty-related firearms owned or possessed by corrections officers and who are not residents of the city;

   (4) firearms owned, manufactured or possessed by licensed manufacturers of firearms, bulk transporters or licensed sellers of firearms at wholesale or retail, provided that such persons have federal firearms license;

   (5) any nonresident of the city participating in any lawful recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction; provided that such firearm shall be (i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case;

   (6) persons licensed as private security contractors, security guards, private detectives, or private alarm contractors, or employed by an agency certified as such by the Department of Professional Regulation;

   (7) duty-related firearms of investigators of the Office of the State's Attorneys Appellate Prosecutor authorized by the board of governors of the Office of the State's Attorneys Appellate Prosecutor to carry weapons pursuant to Section 7.06 of the State's Attorneys Appellate Prosecutor's Act;

   (8) duty-related firearms of special investigators appointed by a State's Attorney under Section 3-9005 of the Counties Code;

   (9) firearms being transported by a person engaged in interstate travel in compliance with section 8-20-100; or

   (10) those persons summoned by a peace officer to assist in making an arrest or preserving the peace while actually engaged in assisting the peace officer.

(g) Each registration certificate issued shall contain a unique registration certificate number, the person's name, the address at which the firearm will be located, and any other information the superintendent deems necessary to identify the person and the firearm.

**8-20-145 Registration certificates- expiration.**

(a) A registration certificate issued prior to the effective date of this 2010 ordinance shall remain in effect until its expiration.

(b) For registration certificates issued after the effective date of this 2010 ordinance, a registration certificate shall expire on the same date as the date of the expiration of the CFP issued to that person.

(c) A person shall file an annual registration report with the superintendent on a form, and in a manner, prescribed by the superintendent. The annual registration report shall set forth such information as required by the superintendent in rules and regulations. If a person has multiple registration certificates, the superintendent may align the dates for the annual registration reports to the same reporting date and combine such annual registration reports into one report.

Failure to file an annual registration report may result in revocation of a person's CFP or registration certificate, and may cause that firearm to become unregisterable to that person.

**8-20-150 Application fees.**

(a) A nonrefundable application fee of $15.00 shall be payable for each firearm registered. The fee shall accompany each initial application for a registration certificate.

(b) Any person who files an annual registration report late shall pay a late filing fee of $60.00.

(c) The application fee shall not be applicable to: (1) any duty-related firearm of a peace officer domiciled in the city, or (2) any duty-related firearm that was registered to that retired department police officer at the time of the his separation from active duty in the department.

**8-20-160 Restrictions on issuance of registration certificates.**

(a) Subject to subsections(b) and (c), the superintendent shall issue no more than one firearm registration certificate to a person for a handgun during any 30-day period; provided that the superintendent may permit a person first becoming a city resident to register more than one handgun if those handguns were lawfully owned in another jurisdiction for a period of 6 months prior to the date of application.

(b) In addition to a registration certificate for a handgun pursuant to subsection (a), an applicant may be issued a registration certificate for:

(1) any firearm possessed by an applicant that was lawfully registered on the date of the enactment of this ordinance;

(2) any long gun which is eligible to be registered; or

(3) any antique firearm, including antique handguns.

The burden of proving that a firearm is an antique firearm shall be on the applicant.

(c) In addition to a registration certificate for a handgun pursuant to subsection (a), a retired department police officer may be issued a registration certificate for each duty-related handgun that was registered to that retired department police officer at the time of the his separation from active duty in the department.

**8-20-170 Unregisterable firearms.**

No registration certificate shall be approved for any of the following types of firearms:

(a) a sawed-off shotgun, .50 caliber rifle, machine gun, or short-barreled rifle;

(b) an unsafe handgun;

(c) a firearm that becomes unregisterable under the provisions of this chapter; provided that it shall only be unregistrerable for that person; or

(d) assault weapons, unless they are owned by a person who is entitled to carry or possess them pursuant to section 8-20-035.

## 8-20-180 CFP and registration certificate-General provisions.

(a) After issuance of a CFP or a registration certificate to a person, the person shall examine the CFP or registration certificate to insure that the information thereon is correct. If the information is incorrect in any respect, the person shall return it to the superintendent with a signed statement showing the nature of the error. The superintendent shall correct the error if it occurred as a result of the superintendent's administrative process.

In the event that the error resulted from incorrect information contained in the application, the person shall submit an amended application setting forth the correct information and a statement explaining the error in the original application.

(b) A CFP and the registration certificate shall be valid only for the person to whom it was issued.

(c) A registration certificate shall only be valid for the address on the registration certificate. Except in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate.

(d) A CFP or registration certificate shall not be subject to sale, assignment, or transfer, voluntary or involuntary.

(e) Any application for a CFP or a registration certificate shall be held in abeyance when there is a criminal proceeding for a violent crime, or an offense involving a weapon, or a proceeding to deny or revoke a CFP or firearm registration certificate pending against the person, until such proceeding has terminated.

## 8-20-185 Additional duties.

(a) Every person issued a CFP or a firearm registration certificate, in addition to any other requirements of this code, shall immediately notify the department in a manner prescribed by the superintendent of:

(1) the destruction of his firearm, or when the person knows, or should have known, that his firearm is lost, stolen or otherwise missing;

(2) the loss, theft or destruction of the CFP or registration certificate within 72 hours of the discovery of such loss, theft, or destruction;

(3) a change in any of the information appearing on the CFP or firearm registration certificate;

(4) the sale, transfer, inheritance, or other disposition of the firearm not less than 48 hours prior to delivery.

(b) Every person issued a CFP or a firearm registration certificate, in addition to any other requirements of this code, shall:

(1) immediately return to the superintendent his copy of the registration certificate for any firearm which is lost, stolen, destroyed or otherwise disposed of; and

(2) keep all information current. Any change in required information shall be reported, on a form and in manner prescribed by the superintendent, within 24 hours after the change.

## 8-20-190 Denials and revocations.

(a) An application for a CFP or a registration certificate shall be denied for any of the following reasons:

(1) any of the eligibility criteria of this chapter are not currently met;

(2) the firearm is an unregisterable firearm;

(3) the information furnished on or in connection with the application for a CFP or a registration certificate is false or misleading; or

(4) the person fails to respond to any additional information, or investigation inquiries, requested by the superintendent regarding any application.

(b) A registration certificate shall be revoked:

(1) when the firearm becomes an unregisterable firearm; or

(2) if the CFP of the person was revoked.

(c) A CFP shall be revoked if any of the eligibility criteria of this chapter are not currently met.

(d) A CFP or registration certificate may be denied or revoked for a violation of this chapter, or any rules or regulations promulgated hereunder.

(e) The CFP and all registration certificates of any person convicted of a felony after the issuance of a CFP or registration certificate to that person shall be automatically revoked by operation of law, without a further hearing. The person shall immediately dispose of all firearms by:

(i) peaceably surrendering to the department all firearms for which a registration certificate was issued;

(ii) removing such firearm from the city; or

(iii) otherwise lawfully disposing of his interest in such firearm.

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

**8-20-200  Procedure for denial.**

(a)  If an application for a CFP or a registration certificate is denied by the superintendent, the superintendent shall notify the person making such application, in writing, of the denial.  The notice of denial shall:

(1)  set forth the basis of the denial;

(2)  include a statement that within ten days of the notice of denial, the person is entitled to request a hearing, in person and in writing, at the department of administrative hearings;

(3)  include a statement that the person is entitled to appear at the hearing to testify, present documents, including affidavits, and any other evidence to contest the denial;

(4)  include a statement that if the person fails to request a hearing within ten days, the person is deemed to have conceded the validity of the reason stated in the notice and the denial shall become final;

(5)  include a certificate of service; and

(6)  include an oath or affirmation by the superintendent certifying the correctness of the facts set forth in the notice of denial.

(b)  The person, within ten days after notice is sent of the denial, may file with the department of administrative hearings a request for a hearing. Such hearing request shall be made in person, and in writing, at the department of administrative hearings.  An administrative law officer of the department of administrative hearings shall conduct such hearing within 72 hours of the request, excluding Saturdays, Sundays, and legal holidays.

(c) The department of administrative hearings shall conclude the hearing no later than 7 days after the commencement of the hearing.

(d) Based upon the evidence contained in the record, an administrative law officer of the department of administrative hearings shall, within 5 days of the conclusion of the hearing, issue written findings and enter an order granting or denying the application.  A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

(e)  If the person does not request a hearing within ten days after the notification of the denial is sent, the person shall be deemed to have conceded the validity of the reason stated in the notice and the denial shall become final.

(f)  Within three days after all the time for hearings or appeals has expired, the person shall:
(1)  peaceably surrender to the department the firearm for which the registration certificate was denied;

(2)  remove such firearm from the city; or

(3)  otherwise lawfully dispose of his interest in such firearm.

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

**8-20-205  Procedure for revocation.**

(a) Except in cases where a CFP or registration certificate is automatically revoked pursuant to section 8-20-190(e), if, in the determination of the superintendent, a CFP or a registration certificate should be revoked, he shall notify the person whose CFP or registration certificate is the subject of such revocation, in writing, of the proposed revocation. The notice shall:

(1) set forth the basis for the revocation;

(2) specify the location, date, and time for a hearing on the revocation;

(3 include a statement that the person is entitled to appear at the hearing to testify, present documents, including affidavits, and any other evidence to contest the proposed revocation;

(4) include a statement that failure of the person to appear at the hearing may include an entry of an order revoking the person's CFP or registration certificate;

(5) include a certificate of service; and

(6) include an oath or affirmation by the superintendent certifying the correctness of the facts set forth in the notice.

(b) The department of administrative hearings shall convene the hearing at the location and on the date and time specified in the revocation notice.

(c) Based upon the evidence contained in the record, an administrative law officer of the department of administrative hearings shall, within 5 days of the conclusion of the hearing, issue written findings and enter an order granting or denying the proposed revocation. A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

(d) Within three days after notification of a decision unfavorable to the person, and all time for appeals has expired, the person shall:

(1) for revocation of a registration certificate:
(i) peaceably surrender to the department the firearm for which the registration certificate was revoked;

(ii) remove such firearm from the city; or

(iii) otherwise lawfully dispose of his interest in such firearm.

(2) for revocation of a CFP, dispose of all firearms in accordance with subsection (d)(1).

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

(e) In cases where a CFP or registration certificate is automatically revoked pursuant to section 8-20-190(e), the superintendent shall notify the person of the automatic revocation of the person's CFP or registration certificate. Within three days after notification of the automatic revocation, the person may file with the department of administrative hearings a request, in writing,

for a hearing on the sole issue of identity and whether he was the person so convicted. It shall be a rebuttable presumption that the person whose CFP or registration certificate was automatically revoked is the same person who was convicted of a felony.

An administrative law officer of the department of administrative hearings shall conduct such hearing within 5 days of the request for a hearing.

Based upon the evidence contained in the record, an administrative law officer of the department of hearings shall, within 5 days of the conclusion of the hearing, issue written findings as to sole issue of the identity of the person. A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

If the person does not request a hearing within three days after the notification, the person shall be deemed to have conceded the validity of the identification.

## 8-20-210 Automatic revocation of registration certificates.

If, after a hearing, a CFP issued to a person is revoked, all firearm registration certificates issued to that person shall automatically be revoked and the person shall comply with section 8-20-205(d) for disposition of the firearms.

## ARTICLE IV. Miscellaneous Provisions.

## 8-20-220 False information – Forgery – Alteration.

(a) It is unlawful for any person purchasing any firearm or ammunition, or applying for any CFP or registration certificate, or, in giving any information pursuant to the requirements of this chapter, to knowingly give false information or offer false information or evidence of identity.

(b) It is unlawful for any person to forge or materially alter any application for a CFP or firearm registration certificate.

(c) It is unlawful for any person to forge or materially alter a CFP or a firearm registration certificate.

(d) It is unlawful for any person to knowingly possess a forged or materially altered CFP or firearm registration certificate.

(f) It is unlawful for any person to knowingly make any false statement, submit any false information or misrepresent any information required in this chapter.

## 8-20-230 Notice.

For the purposes of this chapter, service of any notice, finding or decision upon a person shall be completed by any of the following methods by:

(a) personal delivery of a copy of such notice, finding or decision to the person;

(b) leaving a copy of such notice, finding or decision at the address identified on the application for a CFP or registration certificate; or

(c) mailing, by first class mail, a copy of the notice, finding or decision to the address identified on the application for a CFP or registration certificate, in which case service shall be complete as of the date the notice was mailed.

- 21 -

**8-20-240 Posting of unsafe handguns.**

(a) The superintendent shall post on the department's web site the roster of unsafe handguns.

(b) No less than 10 days prior to placing any handgun on the roster of unsafe handguns, the superintendent shall post on the department's web site the type or model of the handgun that will be placed on the roster.

**8-20-250 Seizure and forfeiture of firearms, ammunition, laser sight accessories and firearm silencers and mufflers-Authority and destruction.**

The superintendent has the authority to seize any firearm, assault weapon, ammunition, laser sight accessories, or firearm silencer or muffler carried or possessed in violation of this chapter or any applicable state or federal law. Such items are hereby declared contraband and shall be seized by and forfeited to the city.

Whenever any firearm, ammunition, laser sight accessories, or firearm silencer or muffler is surrendered or forfeited pursuant to the terms of this chapter, or any applicable state or federal law, the superintendent shall ascertain whether such firearm, ammunition, assault weapon, laser sight accessories, or firearm silencer or muffler is needed as evidence in any matter. All such items which are not required for evidence shall be destroyed at the direction of the superintendent; provided that those firearms and ammunition that the superintendent shall deem to be of use to the department may be retained for the use of the department. A record of the date and method of destruction and an inventory of the firearm or ammunition so destroyed shall be maintained.

**8-20-260 Rules and regulations.**

The superintendent has the authority to promulgate rules and regulations for the implementation of this chapter and to prescribe all forms and the information required. All rules and regulations promulgated by the superintendent pursuant to this chapter shall be posted on the department's web site.

**8-20-270 Acquisition or possession prohibited by law.**

Nothing in this chapter shall make lawful the acquisition or possession of firearms or ammunition which is otherwise prohibited by law.

**8-20-280 Prohibition on shooting galleries and target ranges.**

Shooting galleries, firearm ranges, or any other place where firearms are discharged are prohibited; provided that this provision shall not apply to any governmental agency. The discharge of a firearm in an area where hunting is permitted shall not be a violation of this section.

**8-20-290 Severability.**

If any provision or term of this chapter, or any application thereof, is held invalid, the invalidity shall not affect other applications of the provisions or terms of this chapter which reasonably can be given effect without the invalid provision or term for the application thereof.

**ARTICLE V. VIOLATION OF CHAPTER PROVISIONS.**

**8-20-300 Violation – Penalty.**

(a) Any person who violates section 8-20-020, 8-20-030, 8-20-035, 8-20-060, 8-20-080 or 8-20-110 shall upon conviction be fined not less than $1,000.00 nor more than $5000.00 and be incarcerated for a term not less than 20 days nor more than 90 days. Each day that such violation exists shall constitute a separate and distinct offense.

(b) Unless another fine or penalty is specifically provided, any person who violates any provision of this chapter, or any rule or regulation promulgated hereunder, shall upon conviction or a finding of liability for the first offense, be fined not less than $1,000.00, nor more than $5,000.00, or be incarcerated for not less than 20 days nor more than 90 days, or both.  Any subsequent conviction for a violation of this chapter shall be punishable by a fine of not less than $5,000.00 and not more than $10,000.00, and by incarceration for a term of not less than 30 days, nor more than six months.  Each day that such violation exists shall constitute a separate and distinct offense.

(c) In addition to any other fine or penalty provided in this chapter, the CFP or registration certificate of any person who violates any provision of this chapter, or rule or regulation promulgated hereunder, may be revoked.  Any person whose CFP is revoked shall not be eligible for a CFP for 5 years from the date of the revocation; provided that the superintendent may waive this restriction if, in the determination of the superintendent, the applicant has demonstrated that the applicant has good reason to fear injury to his person or property.

(d) Upon the determination that a person has violated any provision of this chapter or any rule or regulation promulgated hereunder, the superintendent may institute an administrative adjudication proceeding with the department of administrative hearings by forwarding a copy of a notice of violation or a notice of hearing, which has been properly served, to the department of administrative hearings.

**SECTION 5.** The renumbering and amending of the sections in Chapter 8-20 are not intended to invalidate, alter, or otherwise affect in any way any action taken, or could have been taken, based upon those sections, nor shall it be construed to affect any offense or act committed, action or claim arising under those sections, penalty, forfeiture, or punishment incurred, except that any proceedings after the effective date of this 2010 ordinance shall conform, insofar as practicable, to the ordinance in effect at the time of the proceedings.

**SECTION 6.** Title 8 of the Municipal Code of Chicago is hereby amended by adding a new section 8-24-005, by deleting sections 8-24-025 and 8-24-026, by deleting the language struck through, and by adding the language underscored, as follows:

**8-16-090  Firearms for minors.**
No person shall sell, loan, or furnish to any minor any ~~gun, pistol or other firearm, or~~ any toy gun, toy pistol, or other toy firearm in which any explosive substance can be used~~, within the city; except that minors may be permitted, with the consent of their parents or guardians, to use firearms on the premises of a duly licensed shooting gallery, gun club, or rifle club, or to shoot game birds in accordance with the provisions of Section 8-24-050 of this Code~~.

**8-24-005 Definitions**
For the purposes of this Chapter, the following definitions apply:

"Corrections officers," "firearm" and "peace officer" have the meaning ascribed to those terms in section 8-20-010.

**8-24-010  Discharging firearms.**
No person shall fire or discharge any ~~gun, pistol, or other~~ firearm within the city, except in the lawful self-defense or defense of another ~~upon premises used by a duly licensed shooting gallery, gun club, or rifle club~~, or in accordance with the provisions of Section 8-24-050 of this Code.

- 23 -

No cannon or piece of artillery shall be discharged or fired off in any public way or other public place within the city, except upon the express permission of the city council.

Any person violating any of the provisions of this section shall be fined not less than $250.00 500.00 nor more than $500.00 1,000.00 for each offense.

The provisions of this section shall not apply to persons listed in section 8-20-020 (b)(1)-(15). sheriffs, coroners, constables, members of the police force, or other peace officers engaged in the discharge of their official duties, or to any person summoned by any of such officers to assist in making arrests or preserving the peace while such person so summoned is engaged in assisting such officer.

## 8-24-020 Carrying dangerous weapons.

(a) No person shall sell, offer for sale, keep, possess, loan or give to any person any knife, the blade of which is released by a spring mechanism, including knives known as "switch-blades", any blackjack, slingshot, sandclub, sandbag, metal knuckles or bludgeon. No person shall sell, offer for sale, loan or give to any person 18 years of age or under any type or kind of knife, any blade of which is two inches in length or longer.

(b) [Reserved] No person shall sell, manufacture, purchase, possess or carry any weapon from which eight or more shots or bullets may be discharged by a single function of the firing device.

(c) No person shall carry or possess any knife, the blade of which is released by a spring mechanism, including knives known as "switch-blades", any blackjack, slingshot, sandclub, sandbag, metal knuckles or bludgeon. No person 18 years of age or under shall carry or possess any knife, the blade of which is two inches in length or longer.

(d) No person shall carry or possess with intent to use same unlawfully against another a dagger, dirk, billy, dangerous knife, razor, stiletto or other dangerous or deadly weapon.

(e) [Reserved] No person shall carry concealed on or about his person a pistol, revolver, derringer or other firearm. Provided, however, that this provision shall not apply to the following officers while engaged in the discharge of their official duties: sheriffs, coroners, constables, policemen or other duly constituted police officers and wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of crime; nor to the following employees or agents while engaged in the discharge of the duties of their employment: conductors, baggagemen, messengers, drivers, watchmen, special agents and policemen employed by railroads or express companies; nor to persons lawfully summoned by an officer to assist in making arrests or preserving the peace, while so engaged in assisting such officer.

(f) No person shall carry concealed on or about his person a or dagger, dirk, stiletto, bowie knife, commando knife, any blade of which is released by a spring mechanism, including knives known as "switch-blades" or any other type or kind of knife, any blade of which is more than two and one-half inches in length, ordinary razor or other dangerous weapon except that no person 18 years of age or under shall carry concealed on or about his person, any knife, the blade of which is two inches in length or longer. Provided, however, that this provision shall not apply to the following officers while engaged in the discharge of their official duties: sheriffs, coroners, peace officers constables, policemen or other duly constituted police officers and corrections officers wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of crime; nor to the following employees or agents while engaged in the discharge of the duties of their employment: conductors, baggagemen, messengers, drivers,

watchmen, special agents and policemen employed by railroads or express companies; nor to persons lawfully summoned by an officer to assist in making arrests or preserving the peace, while so engaged in assisting such officer.

(g) Any person violating the provisions of subsections (a), (c), (d) or (f) of this section shall be fined $200.00 for each offense, or shall be punished by imprisonment for a period not to exceed six months, or by both such fine and imprisonment. ~~Any person violating the provisions of subsections (b) or (e) of this section shall be subject to a fine of $300.00 for each offense, and a mandatory minimum sentence of not less than five days imprisonment nor more than six months imprisonment for a first offense; a mandatory minimum sentence of not less than fifteen days imprisonment nor more than six months imprisonment for a second offense; and a mandatory minimum sentence of not less than thirty days imprisonment nor more than six months imprisonment for a third or subsequent offense.~~

(h)     ~~In addition to all other penalties, weapons~~ Any weapons used in violation of this section are hereby declared contraband and shall be seized by and forfeited to~~, and confiscated by,~~ the city.

## 8-24-021 Sale, display and use of utility knives.

(a)     As used in this section, a "utility knife" is a knife consisting of a grip and single-edged sharp blade of the type typically used to cut such resistant surfaces as rugs, cardboard boxes, linoleum flooring and the like.

(b)     No person shall display or offer for sale any utility knife except by placing the knife either (1) in an area immediately accessible only to an employee of the establishment, and beyond the reach of any customer less than seven feet tall; or (b 2) in a locked display cabinet, which can only be opened by an employee of the establishment.

*(omitted text is unaffected by this ordinance)*

## ~~8-24-025 Assault weapons or ammunition – Sale prohibited – Exceptions.~~

~~(a) No person shall sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any assault weapon or assault ammunition, as those terms are defined in Chapter 8-20 of this Code. This section shall not apply to any officer, agent, or employee of this or any other municipality or state or of the United States, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers as defined in this Code to the extent that any such person is otherwise authorized to acquire or possess an assault weapon or assault ammunition and is acting within the scope of his or her duties. In addition, this section shall not apply to the acquisition or possession of assault ammunition by persons employed to provide security for armored carriers or mobile check cashing services while in the course of such duties, while commuting directly to or from the person's place of employment, and while at the person's home, if the assault ammunition (1) is acquired or possessed for use with a weapon that the person has been authorized to carry under Section 28 of the Illinois Private Detective, Private Alarm and Private Security Act of 1983; and (2) consists of an ammunition magazine that has a capacity of 15 or fewer rounds of ammunition.~~

~~(b)     Any assault weapon or assault ammunition possessed, sold or transferred in violation of subsection (a) is hereby declared to be contraband and shall be seized and disposed of in accordance with the provisions of Section 8-20-220.~~

~~(c)     Any person found in violation of this section shall be subject to a fine of not less than~~

~~$500.00 nor more than $1,000.00 for each offense, and a mandatory minimum sentence of not less than five days imprisonment nor more than six months imprisonment for a first offense; a mandatory minimum sentence of not less than fifteen days imprisonment nor more than six months imprisonment for a second offense; and a mandatory minimum sentence of not less than thirty days imprisonment nor more than six months imprisonment for a third or subsequent offense.~~

~~(d)      Any person who, prior to the effective date of the ordinance codified in this section, was legally in possession of an assault weapon or assault ammunition prohibited by this section shall have 14 days from the effective date of the ordinance codified in this section to do any of the following without being subject to prosecution hereunder:~~

~~(1) To remove the assault weapon or ammunition from within the limits of the City of Chicago; or~~

~~(2) To modify the assault weapon either to render it permanently inoperable or to permanently make it a device no longer defined as an assault weapon; or~~

~~(3) To surrender the assault weapon or ammunition to the superintendent of police or his designee for disposal in accordance with Section 8-20-220.~~

~~8-24-026  Fragmenting bullets and metal piercing bullets – Sale prohibited – Exceptions.~~
~~(a) No person shall manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any fragmenting bullets, metal piercing bullets, or disc projectile ammunition. This section shall not apply to any officer, agent, or employee of this or any other municipality or state or of the United States, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers as defined in this Code to the extent that any such person is otherwise authorized to acquire or possess fragmenting bullets, metal piercing bullets, or disc projectile ammunition and is acting within the scope of his or her duties.~~

~~(b)      Any fragmenting bullets, metal piercing bullets, or disc projectile ammunition manufactured, possessed, sold or transferred in violation of subsection (a) are hereby declared to be contraband and shall be seized and disposed of in accordance with the provisions of Section 8-20-220.~~

~~(c)      Any person found in violation of this section shall be sentenced to not more than six months imprisonment or fined $500.00, or both.~~

**8-24-027  Disguised firearms prohibited.**
(a)      No person shall purchase, acquire, sell, offer or expose for sale, or possess any firearm that is designed, constructed, modified or disguised to resemble any other object.
(b)      Any person who violates subsection (a) of this section ~~shall be guilty of a misdemeanor, and~~ shall be <u>incarcerated</u> ~~subject to incarceration~~ for not less than 30 days and not more than 180 days for each offense. Each day of a continuing violation, and each purchase, acquisition, sale, offering or exposing for sale, or possession of a different firearm described in subsection (a) shall constitute a separate and distinct offense.

(c)      Nothing in this section suspends, repeals or alters any other provision of this Code which limits, restricts or prohibits the purchase, acquisition, sale, offering or exposure for sale, or possession of a firearm.

SECTION 7. The Municipal Code of Chicago is hereby amended by adding a new chapter 8-26, as follows:

**Chapter 8-26 Gun Offender Registration Ordinance**

### 8-26-010  Definitions:

For purposes of this chapter, the following definitions apply:

"Corrections facility" has the same meaning ascribed to that term in 720 ILCS 5/3-1-2.

"Conviction" or "convicted" means an adjudication by a court of competent jurisdiction that a person is guilty, and includes the sentence by the court, of the gun offense.

"Gun offender" or "offender" means any person convicted of a gun offense that is subject to the provisions of this chapter.

"Gun offense" means a criminal conviction of an offense for an unlawful use of a weapon that included a firearm under 720 ILCS 5/24, or criminal possession of a firearm in violation of any federal, state or local law.

"Department," "firearm," and "superintendent" have the meaning ascribed to those terms in section 8-20-010.

### 8-26-020 Duty to register and to verity.

(a) A gun offender who resides within the city, or remains in the city to work or attend school, shall register with the superintendent within 48 hours of either: (1) release, if the gun offender receives a sentence of imprisonment; or (2) the time sentence is imposed, if the sentence does not include imprisonment.

(b) The form and manner of registration shall be as provided in rules and regulations.

(c) The registration shall include the following information;
    (1) the person's name, date of birth, and sex;
    (2) the address where the gun offender resides, works, or attends school;
    (3) any other legal name;
    (4) copy of a driver's license or non-driver's photo identification card;
    (5) a photograph of the gun offender;
    (6) a description of the offense for which the offender was convicted;
    (7) the name and address of the offender's place of work, or expected place of work, including the name and phone number of his supervisor;
    (8) the name and address of any educational institution which the offender attends or expects to attend; and
    (9) any other information that the superintendent shall find reasonably necessary to effect the purpose of this chapter.

The gun offender shall sign a statement under oath attesting to the accuracy of the information required in this subsection.

(d) The superintendent may photograph the gun offender and require the gun offender to provide such documentation as the superintendent considers acceptable to verify any information required pursuant to this chapter.

(d) The gun offender shall submit to fingerprinting in accordance with rules and regulations promulgated by the superintendent.

### 8-26-030 Initial and annual registration.

(a) For the initial registration, a gun offender shall personally appear to register at such office of the police that the superintendent may direct.

(b) No later than 20 days after the one-year anniversary of the gun offender's initial registration, the gun offender shall personally appear at such office of the police that the superintendent may direct for the purpose of verifying the information required in this chapter.

(c) If a gun offender required to register under this chapter is confined to any federal, state or local correctional center, residential treatment center, hospital, or institution throughout the 20-day period set forth in subsection (b), the gun offender shall personally appear as required by this subsection within 48 hours of release.

## 8-26-040 Registration period.

A gun offender shall comply with the requirements of this chapter for a period beginning when he is required to register and continuing until 4 years from the date of conviction, or 4 years after the expiration of any time being served on probation, parole, supervised release, or conditional release, or 4 years after the gun offender is unconditionally released from a correctional facility, prison, hospital or other place of confinement, whichever is last. The registration period is tolled any time the gun offender fails to register or otherwise fails to comply with the requirements of this chapter.

## 8-26-050 Duty to report.

A gun offender shall report any change in information required by this chapter with 48 hours of such change, in a manner and in a form prescribed by the superintendent.

## 8-26-060 Creation of gun offender registry.

(a) The superintendent is authorized to collect and maintain gun offender information obtained pursuant to this chapter.

(b) The superintendent shall create and maintain a registry of gun offenders registered pursuant to the provisions of this chapter.

(c) The superintendent is authorized to make the gun offender registry available to any other city sister agencies or any regional or national government-established gun offender registry and may accept files from such registries.

## 8-26-070 Cooperation with other agencies.

The superintendent is authorized to cooperate with the judiciary and state and other city sister agencies to facilitate the implementation of this chapter. Assistance and cooperation in the implementation of this chapter shall be provided by other city departments upon the request of the superintendent.

## 8-26-080 Gun offender community notification.

The superintendent shall post the gun offender registry on the department's web site, and must make the information contained in the registry database searchable with a mapping system which identifies registered gun offenders within 5 miles of an identified address. The information shall be updated as deemed necessary by the superintendent.

## 8-26-090   Rules and regulations.

The superintendent has the authority to promulgate rules and regulations for the implementation of this chapter and to prescribe all forms and the information required.

**8-26-100 Violation-Penalty.**

Any person who violates any provision of this chapter, or rule or regulation promulgated hereunder, shall, upon conviction, be fined not less than $300.00 nor more than $500.00 or be incarcerated for a term not to exceed six months, or both. Each day that such violation exists shall constitute a separate and distinct offense.

**8-26-110 Severability.**

If any provision or term of this chapter, or any application thereof, is held invalid, the invalidity shall not affect other applications of the provisions or terms of this chapter which reasonably can be given effect without the invalid provision or term for the application thereof.

**SECTION 8.** This ordinance shall take effect 10 days after its passage and approval.

# Exhibit J

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-mc-10375-RWZ

IN RE SUBPOENAS SERVED ON DAVID HEMENWAY, PH.D.
AND THE HARVARD INJURY CONTROL RESEARCH CENTER

Relating to Litigation Pending in the United States District Court
for the Northern District of Illinois, Eastern Division captioned:

Brett Benson, et al., Plaintiffs

v.

The City of Chicago, et al., Defendants
No. 10-04184

ORDER ON MOTION TO QUASH

November 24, 2010

ZOBEL, D.J.

Plaintiffs in an action pending in the Northern District of Illinois, Benson v. The
City of Chicago, et al., No. 10-04184 (Brett Benson, Kenneth Pacholski, Kathryn Tyler,
Michael Hall, Rick Pere, and the Illinois Association of Firearms Retailers) (hereinafter
"Plaintiffs") have served subpoenas duces tecum and ad testificandum on both David
Hemenway, Professor of Health Policy at the Harvard School of Public Health and
Director of the Harvard Injury Control Research Center, and the Center.  Neither is a
party to the underlying suit, and both have moved to quash the subpoenas.

Plaintiffs challenge a recently-enacted Chicago City Ordinance which imposes
certain restrictions on the possession of firearms in Chicago.  The "Responsible Gun
Ownership Ordinance" was passed on July 2, 1010 in response to the U.S. Supreme

Court's decision in <u>McDonald v. Chicago</u>, 130 S.Ct. 3020 (2010), which held that the Second Amendment's fundamental rights applied to municipalities such as Chicago. Prior to voting on the Ordinance, the Chicago City Council held three hearings during which it heard testimony from various experts, including Professor Hemenway.  In the underlying challenge to the Ordinance, Plaintiffs apparently plan to contend that the rationale the City Council proffers for its enactment of the Ordinance is unsupported by the legislative record.  Consequently, Plaintiffs have directed their collective attention to Professor Hemenway's testimony to the Council.

The subpoenas duces tecum call for production of two categories of documents: (1) the studies and like materials Professor Hemenway specifically and publicly referenced in his testimony, and (2) communications he had with defendants and others regarding his testimony and advice to the City.

Plaintiffs apparently seek to depose Professor Hemenway about the following: (1) the factual circumstances surrounding his testimony, (2) the specific statements and evidence (such as his book) he submitted through his testimony, and (3) any other advice he gave to, or communication he had with, defendants during the legislative process that resulted in the passage of the Ordinance.

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Here, the record suggests that the Council apparently relied on some of Professor Hemenway's testimony in reaching its conclusion that "[h]andguns, to an extreme degree, disproportionately contribute to gun violence and death in Chicago." <u>See</u> Statement of City Council Committee on Police and Fire of July 1, 2010 (Docket # 8, Ex. A,

Declaration of Jesse Panuccio, Esq.). Therefore, to the extent Plaintiffs wish to attempt to impugn the evidence proffered by Professor Hemenway about the relationship between certain firearms and violence and/or death, I find that at least part of the information sought is relevant. The motion to quash is denied as to that part of the subpoenas duces tecum which request production of the studies and like materials Professor Hemenway specifically and publicly referenced in his testimony. In all other respects, motion to quash is allowed. The motion to quash the subpoena ad testificandum is also allowed.[1]

Accordingly, it is Ordered that Professor Hemenway shall identify (both by name, and location the same may be found) all published studies, research papers, books, and like materials referenced by him during his testimony.


_November 24, 2010_
DATE

_Rya W. Zobel_
RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE

---

[1] Fed. R. Civ. P. 45(c)(3)(B)(ii) provides that a court may quash a subpoena if it requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by the party." Plaintiffs contend that the information sought here is "information that [] describes specific occurrences in dispute" and is therefore discoverable. I disagree. Professor Hemenway's earlier testimony is not fairly characterized as the "specific occurrence[] in dispute" here. Plaintiffs impermissibly seek information beyond that he gave to the City Council, which is tantamount to an unretained expert's opinion. This the rule does not permit.

3

# Exhibit K

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

| In the Matter of | Case Number: 10-cv-05135 |
|---|---|
| Rhonda Ezell et al. v. City of Chicago | |

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

Amicus Curiae National Rifle Association

| | |
|---|---|
| NAME (Type or print)<br>Stephen Kolodziej | |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically)<br>s/ Stephen Kolodziej | |
| FIRM<br>Brenner Ford Monroe & Scott, Ltd. | |
| STREET ADDRESS<br>33 N. Dearborn St., Suite 300 | |
| CITY/STATE/ZIP<br>Chicago, IL 60602 | |
| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS)<br>6216375 | TELEPHONE NUMBER<br>(312) 781-1970 |
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☐ NO ☑ |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☑ NO ☐ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☑ NO ☐ |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☐ NO ☑ |
| IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.<br>RETAINED COUNSEL ☐   APPOINTED COUNSEL ☐ | |

# United States District Court  Northern District of Illinois
## MOTION FOR LEAVE TO APPEAR PRO HAC VICE

| Case Title: | | |
|---|---|---|
| Rhonda Ezell et al. | | Plantiff(s) |
| | VS. | |
| City of Chicago | | Defendant(s) |

| Case Number:  10-cv-5135 | Judge:  Virginia M. Kendall |
|---|---|

I, _____ Charles J. Cooper _____ hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

_____ Amicus Curiae National Rifle Association _____ by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | Date Admitted |
|---|---|
| United States Supreme Court | 10/16/82 |
| United States Court of Appeals for the Second Circuit | 11/28/83 |
| United States Court of Appeals for the Third Circuit | 9/25/92 |
| United States Court of Appeals for the Fourth Circuit | 7/19/91 |

I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)* |
|---|---|---|
| 10-4184 | Brett Benson et al. v. City of Chicago et al. | 7/6/10 |
| | | |
| | | |
| | | |

*If denied, please explain:
(Attach additional form if necessary)

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

**Has the applicant designated local counsel?    Yes ⦿          No ○**

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

Has the applicant ever been:

| | | |
|---|---|---|
| censured, suspended, disbarred, or witherwise disciplined by any court? | Yes ○ | No ⦿ |
| or is the applicant currently the subject of an investigation of the applicant's professional conduct? | Yes ○ | No ⦿ |
| transferred to inactive status, voluntarily withdrawn, or resigned from the bar of nay court? | Yes ○ | No ⦿ |
| denied admission to the bar of any court? | Yes ○ | No ⦿ |
| held in contempt of court? | Yes ○ | No ⦿ |

NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them. I declare under penalty of perjury that the foregoing is true and correct.

| October 1, 2010 | S/ Charles J. Cooper |
|---|---|
| Date | Electronic Signature of Applicant |

| | Last Name | First Name | Middle Name/Initial |
|---|---|---|---|
| Applicant's Name | Cooper | Charles | J. |
| Applicant's Law Firm | Cooper and Kirk, PLLC | | |

| | Street Address | | Room/Suite Number |
|---|---|---|---|
| Applicant's Address | 1523 New Hampshire Ave, NW | | |

| | City | State | ZIP Code | Work Phone Number |
|---|---|---|---|---|
| | Washington | DC | 20036 | 202-220-9600 |

**(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk. No admission under Rule 83.14 is effective until such time as the fee has been paid.)**

**NOTE:** Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of the Court. The fee for admission to the General Bar is $150.00 The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date. Admission to the general bar permits an attorney to practice before this Court. Pro hac vice admission entitles an attorney to appear in a particular case only. Application for such admission must be made in each case; and the admission fee must be paid in each case.

## United States District Court  Northern District of Illinois
## MOTION FOR LEAVE TO APPEAR PRO HAC VICE

| | |
|---|---|
| Case Title: Rhonda Ezell et al. | Plantiff(s) |
| VS. | |
| City of Chicago | Defendant(s) |

| | |
|---|---|
| Case Number:  10-cv-5135 | Judge:  Virginia M. Kendall |

I, _____ David H. Thompson _____ hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

_____ Amicus Curiae National Rifle Association _____ by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | Date Admitted |
|---|---|
| United States Supreme Court | 11/16/98 |
| United States Court of Appeals for the Second Circuit | 2/5/98 |
| United States Court of Appeals for the Third Circuit | 2/3/04 |
| United States Court of Appeals for the Fourth Circuit | 9/25/02 |

I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)* |
|---|---|---|
| 10-4184 | Brett Benson et al. vs. City of Chicago et al. | 7/6/10 |
| | | |
| | | |
| | | |

*If denied, please explain:
(Attach additional form if necessary)

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

**Has the applicant designated local counsel?     Yes ⦿          No ◯**

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

Has the applicant ever been:

| | | | |
|---|---|---|---|
| censured, suspended, disbarred, or witherwise disciplined by any court? | Yes ○ | No ⊙ |
| or is the applicant currently the subject of an investigation of the applicant's professional conduct? | Yes ○ | No ⊙ |
| transferred to inactive status, voluntarily withdrawn, or resigned from the bar of nay court? | Yes ○ | No ⊙ |
| denied admission to the bar of any court? | Yes ○ | No ⊙ |
| held in contempt of court? | Yes ○ | No ⊙ |

NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them. I declare under penalty of perjury that the foregoing is true and correct.

| October 1, 2010 | S/ David H. Thompson |
|---|---|
| Date | Electronic Signature of Applicant |

| | Last Name | First Name | Middle Name/Initial |
|---|---|---|---|
| Applicant's Name | Thompson | David | H. |
| Applicant's Law Firm | Cooper & Kirk, PLLC | | |

| | Street Address | | Room/Suite Number |
|---|---|---|---|
| Applicant's Address | 1523 New Hampshire Ave, NW | | |
| | City | State | ZIP Code | Work Phone Number |
| | Washington | DC | 20036 | 202-220-9600 |

**(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk. No admission under Rule 83.14 is effective until such time as the fee has been paid.)**

**NOTE:** Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of the Court. The fee for admission to the General Bar is $150.00 The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date. Admission to the general bar permits an attorney to practice before this Court. Pro hac vice admission entitles an attorney to appear in a particular case only. Application for such admission must be made in each case; and the admission fee must be paid in each case.

# United States District Court  Northern District of Illinois
# MOTION FOR LEAVE TO APPEAR PRO HAC VICE

| | |
|---|---|
| Case Title:  Rhonda Ezell et al. | Plantiff(s) |
| VS. | |
| City of Chicago | Defendant(s) |

| | |
|---|---|
| Case Number:  10-cv-5135 | Judge:  Virginia M. Kendall |

I, _____ Jesse M. Panuccio _____ hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

_____ Amicus Curiae National Rifle Association _____ by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | Date Admitted |
|---|---|
| District of Columbia | 6/16/08 |
| Florida | 10/20/06 |
| United States Supreme Court | 4/19/10 |
| United States Court of Appeals for the Tenth Circuit | 11/14/06 |

I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)* |
|---|---|---|
| 10-4184 | Brett Benson et al. v. City of Chicago et al. | 7/6/10 |
| | | |
| | | |
| | | |

*If denied, please explain:
(Attach additional form if necessary)

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

**Has the applicant designated local counsel?   Yes** ⦿     **No** ○

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

Has the applicant ever been:

| | | |
|---|---|---|
| censured, suspended, disbarred, or witherwise disciplined by any court? | Yes ○ | No ● |
| or is the applicant currently the subject of an investigation of the applicant's professional conduct? | Yes ○ | No ● |
| transferred to inactive status, voluntarily withdrawn, or resigned from the bar of nay court? | Yes ○ | No ● |
| denied admission to the bar of any court? | Yes ○ | No ● |
| held in contempt of court? | Yes ○ | No ● |

NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them. I declare under penalty of perjury that the foregoing is true and correct.

| October 1, 2010 | S/ Jesse M. Panuccio |
|---|---|
| Date | Electronic Signature of Applicant |

| | Last Name | First Name | Middle Name/Initial |
|---|---|---|---|
| Applicant's Name | Panuccio | Jesse | M. |
| Applicant's Law Firm | Cooper and Kirk, PLLC | | |

| | Street Address | | Room/Suite Number |
|---|---|---|---|
| Applicant's Address | 1523 New Hampshire Ave, NW | | |
| | City | State | ZIP Code | Work Phone Number |
| | Washington | DC | 20036 | 202-220-9600 |

**(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk. No admission under Rule 83.14 is effective until such time as the fee has been paid.)**

NOTE: Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of the Court. The fee for admission to the General Bar is $150.00 The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date. Admission to the general bar permits an attorney to practice before this Court. Pro hac vice admission entitles an attorney to appear in a particular case only. Application for such admission must be made in each case; and the admission fee must be paid in each case.

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 5135 | **DATE** | 11/9/2010 |
| **CASE TITLE** | Ezell et al vs. City of Chicago | | |

**DOCKET ENTRY TEXT**

Motion for leave to appear pro hac vice [61]. [62]. [63] is granted.

Docketing to mail notices.

| | Courtroom Deputy Initials: | TSA |
|---|---|---|

10C5135 Ezell et al vs. City of Chicago

Page 1 of 1

# Exhibit L

12:55:19  1

2

3

4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION
6

7

RHONDA EZELL, et al.,          Case No. 1:10-cv-05135
8

   Plaintiffs,                 Chicago, Illinois
9                              October 1, 2010
         v.                    Motion for Preliminary
10                             Injunction

11  CITY OF CHICAGO,

12   Defendant.
    -------------------------------
13

14                            VOLUME 1
          TRANSCRIPT OF MOTION FOR PRELIMINARY INJUNCTION
15           BEFORE THE HONORABLE VIRGINIA M. KENDALL
                 UNITED STATES DISTRICT JUDGE
16

17
APPEARANCES:
18

19  For the Plaintiffs:    Gura & Possessky, PLLC
                          By:  Alan Gura
20                        101 N. Columbus St., Ste. 405
                          Alexandria, VA 22314
21                        (703) 835-9085

22                              - and -

23                        Law Firm of David G. Sigale, P.C.
                          By:  David G. Sigale
24                        4300 Commerce Ct., Ste. 300-3
                          Lisle, IL 60532
25                        (630) 452-4547

1

2

<u>APPEARANCES</u>:

3

4

For the Defendant:     Chicago Corporation Counsel

5                      By:  William M. Aguiar,
                            Michael A. Forti,

6                           Rebecca Alfert Hirsch,
                            Mardell Nereim, and

7                           Andrew W. Worseck
                       30 N. LaSalle Street

8                      Chicago, IL 60602
                       (312) 744-2784

9

10   <u>Also Present</u>:        Stephen A. Kolodziej
                       Brenner, Ford, Monroe & Scott, Ltd.

11

12                     Richard Pearson,
                       Illinois State Rifle Association;

13

                       Julianne Versnel,
14                     Second Amendment Foundation;

15                     Christopher Hart,
                       Action Target

16

17

<u>COURT REPORTER</u>:       FEDERAL OFFICIAL COURT REPORTER
18                     April M. Metzler, RPR, CRR, FCRR
                       219 South Dearborn St., Rm. 2318-A

19                     Chicago, IL 60604
                       (312) 408-5154

20                     April_Metzler@ilnd.uscourts.gov

21

22

23

24

     Proceedings recorded by mechanical stenography; transcript
25   produced by notereading.

1

# I N D E X

2

3

**DESCRIPTION**                                                      **PAGE**

4

5     MR. GURA, OPENING STATEMENT                                   9

6     MR. AGUIAR, OPENING STATEMENT                                16

7     CHRISTOPHER HART, DIRECT EXAMINATION                        32
8     BY MR. GURA

9     CHRISTOPHER HART, CROSS-EXAMINATION                         52
10    BY MR. FORTI

11    CHRISTOPHER HART, REDIRECT EXAMINATION                      82
12    BY MR. GURA

13    JULIANNE VERSNEL, DIRECT EXAMINATION                        85
14    BY MR. SIGALE

15    JULIANNE VERSNEL, CROSS-EXAMINATION                         97
16    BY MR. WORSECK

17    JULIANNE VERSNEL, REDIRECT EXAMINATION                     123
18    BY MR. SIGALE

19    RICHARD PEARSON, DIRECT EXAMINATION                        129
20    BY MR. SIGALE

21    RICHARD PEARSON, CROSS-EXAMINATION                         148
22    BY MR. WORSECK

23    RICHARD PEARSON, REDIRECT EXAMINATION                      167
24    BY MR. SIGALE

25

4

| | |
|---|---|
| 12:59:48 | 1 |

       (Commenced at 1:19 p.m.)

01:19:11   2       THE COURT:  Okay, folks.  10C5135.  We're here for

01:19:16   3  preliminary hearing.  Let's start with putting everyone's name

01:19:19   4  on the record.  Excuse my short delay.  I have to move my

01:19:24   5  belongings from my chambers to the courtroom each time I do

01:19:29   6  something, so it's a little -- it's taking a little longer

01:19:32   7  than usual.

01:19:33   8       You may proceed.

01:19:34   9       MR. GURA:  Good afternoon, your Honor.  Alan Gura for

01:19:37  10  the plaintiffs.

01:19:37  11       MR. SIGALE:  Good afternoon, your Honor.  David

01:19:39  12  Sigale, S-i-g-a-l-e, on behalf of the plaintiffs.

01:19:40  13       THE COURT:  Good morning.

01:19:43  14       MR. GURA:  And we're just informing the Court,

01:19:45  15  there's a third-party that wants to make a motion in this

01:19:47  16  case.

01:19:47  17       THE COURT:  Okay.  Who is that?

01:19:48  18       MR. GURA:  And that is this fellow here, Mr. Steve

01:19:52  19  Kolodziej.

01:19:52  20       MR. KOLODZIEJ:  Good afternoon, your Honor.  Do you

01:19:53  21  want to ...

01:19:53  22       THE COURT:  Okay, folks.

01:19:55  23       MR. AGUIAR:  Good afternoon, your Honor.  William

01:19:57  24  Aguiar --

01:19:57  25       THE COURT:  I'll let the third party, who's not

01:19:59  1  appearing, direct the judge as to what I should do next.

01:19:59  2        (Laughter.)

01:20:05  3        THE COURT:  Okay.  Go ahead.

01:20:05  4        MR. AGUIAR:  Good afternoon, your Honor.  William

01:20:06  5  Aguiar, A-g-u-i-a-r, on behalf of the City.

01:20:09  6        MS. HIRSCH:  Good afternoon, your Honor.  Rebecca

01:20:11  7  Hirsch on behalf of the City.

01:20:12  8        THE COURT:  All right.

01:20:12  9        MR. FORTI:  Good afternoon, your Honor.  Michael

01:20:13  10  Forti, F-o-r-t-i, on behalf of the City.

01:20:16  11        MS. NEREIM:  Good afternoon, your Honor.  Mardell

01:20:17  12  Nereim, M-a-r-d-e-l-l N-e-r-e-i-m, on behalf of the City.

01:20:25  13        MR. WORSECK:  And good afternoon, your Honor.  Andrew

01:20:27  14  Worseck on behalf of the City.

01:20:28  15        THE COURT:  Good afternoon.  I want to make sure I

01:20:29  16  have your name.  Is it Mardell Nereim?

01:20:29  17        MS. NEREIM:  Mardell Nereim.

01:20:34  18        THE COURT:  Nereim.  Okay.

01:20:35  19        All right.  Sir?

01:20:36  20        MR. KOLODZIEJ:  I'm sorry, your Honor.  I'm Steve

01:20:38  21  Kolodziej, K-o-l-o-d-z-i-e-j.  I'm counsel for the National

01:20:43  22  Rifle Association.  I've been attending the hearings in this

01:20:45  23  case, and I noted that earlier this week the Court again

01:20:49  24  raised the question of level of scrutiny to be applied

01:20:52  25  analyzing this case.

| | | |
|---|---|---|
| 01:20:53 | 1 | The NRA and its members have a substantial interest |
| 01:20:56 | 2 | in this issue.  They're litigating it in courts across the |
| 01:21:01 | 3 | country.  And the Court has not yet come to rest on that issue |
| 01:21:04 | 4 | or if you find additional discussion on the issue helpful, |
| 01:21:07 | 5 | we're prepared to file and request leave to file an amicus |
| 01:21:11 | 6 | brief limited to a discussion of the appropriate framework for |
| 01:21:13 | 7 | analysis of Second Amendment challenges after <u>Heller</u> and |
| 01:21:17 | 8 | <u>McDonald</u>. |
| 01:21:17 | 9 | We have a motion for leave to file instanter and a |
| 01:21:20 | 10 | proposed brief ready, and if it please the Court, we are |
| 01:21:23 | 11 | prepared to file that. |
| 01:21:24 | 12 | THE COURT:  Okay.  Is there an objection to the |
| 01:21:26 | 13 | filing of an amicus brief from the NRA?  Right, the NRA? |
| 01:21:30 | 14 | MR. KOLODZIEJ:  Yes. |
| 01:21:31 | 15 | MR. FORTI:  Your Honor, the only objection we would |
| 01:21:35 | 16 | have is that counsel, as it turns out, also is representing |
| 01:21:38 | 17 | the defendants in a case I mentioned to this Court before, |
| 01:21:39 | 18 | which is the <u>Benson</u> case pending in front of Judge Guzman. |
| 01:21:43 | 19 | There will be ample time for counsel to present those |
| 01:21:46 | 20 | arguments in the <u>Benson</u> case in front of Judge Guzman. |
| 01:21:50 | 21 | It was a tactical move by our friends on the other |
| 01:21:53 | 22 | side to separate these cases, so I would think the best time |
| 01:21:56 | 23 | for them to file such a motion -- or such a paper would be as |
| 01:22:00 | 24 | we proceed in the <u>Benson</u> case not on preliminary relief in |
| 01:22:04 | 25 | this case. |

| | | |
|---|---|---|
| 01:22:04 | 1 | THE COURT: Okay. It's just -- is the memo solely on |
| 01:22:08 | 2 | the level of scrutiny? |
| 01:22:09 | 3 | MR. KOLODZIEJ: It is, your Honor. And to clarify, I |
| 01:22:12 | 4 | am not here -- I am local counsel in the <u>Benson</u> case. The NRA |
| 01:22:15 | 5 | is not a party to the <u>Benson</u> case. I am here on behalf of the |
| 01:22:18 | 6 | National Rifle Association. |
| 01:22:19 | 7 | THE COURT: Right. And -- but he is saying that you |
| 01:22:22 | 8 | have moved in that case to participate as an amicus; is that |
| 01:22:26 | 9 | correct? Or to file in that case? |
| 01:22:28 | 10 | MR. KOLODZIEJ: No. |
| 01:22:28 | 11 | THE COURT: Oh, you have not. |
| 01:22:30 | 12 | You're saying that's the appropriate place for them |
| 01:22:32 | 13 | to do so? |
| 01:22:33 | 14 | MR. FORTI: Yes. |
| 01:22:33 | 15 | THE COURT: Okay. So since you are going to stick |
| 01:22:36 | 16 | around, as I know, I'll take your amicus motion under |
| 01:22:40 | 17 | advisement today, probably take a look to see if it is the |
| 01:22:44 | 18 | kind of thing that would be beneficial to the Court's review. |
| 01:22:47 | 19 | And I'll just give you a short ruling by mail, and you're |
| 01:22:50 | 20 | invited, of course, as a member of the public to participate |
| 01:22:52 | 21 | in the sense of observing today. But I'll make a ruling later |
| 01:22:56 | 22 | about the amicus brief. Okay. |
| 01:22:58 | 23 | MR. KOLODZIEJ: Thank you, your Honor. And just for |
| 01:23:00 | 24 | procedures sake, we have not yet filed this on the CM/ECF |
| 01:23:04 | 25 | system. |

| | | |
|---|---|---|
| 01:23:04 | 1 | THE COURT: Right. |
| 01:23:05 | 2 | MR. KOLODZIEJ: Should we do that and then deliver a |
| 01:23:07 | 3 | copy to you? |
| 01:23:08 | 4 | THE COURT: Right. You can give me a courtesy copy, |
| 01:23:10 | 5 | and then -- you can give it to my staff here. And then in |
| 01:23:14 | 6 | part of my review and taking under your oral motion under |
| 01:23:17 | 7 | advisement will be to skim it and see if the issues are |
| 01:23:20 | 8 | relevant and helpful, because that's the analysis, under |
| 01:23:24 | 9 | amicus, to see if whether it would be beneficial to the |
| 01:23:27 | 10 | Court's analysis. And if it is, I will then issue an order |
| 01:23:30 | 11 | which permits you to file and we'll have the staff call you, |
| 01:23:33 | 12 | and then you can CM/ECF file it, because you really don't have |
| 01:23:37 | 13 | permission as of this date. |
| 01:23:38 | 14 | MR. KOLODZIEJ: Understood. We have motion for leave |
| 01:23:40 | 15 | to file instanter attached to this. |
| 01:23:42 | 16 | THE COURT: Okay. |
| 01:23:42 | 17 | MR. KOLODZIEJ: So we can file that today. |
| 01:23:44 | 18 | THE COURT: That's fine. That's what you can do. |
| 01:23:45 | 19 | Right. |
| 01:23:46 | 20 | MR. KOLODZIEJ: And I'll give a copy to all counsel. |
| 01:23:48 | 21 | THE COURT: All right. Thank you. |
| 01:23:49 | 22 | All right, folks. Are we ready to proceed with our |
| 01:23:52 | 23 | hearing? |
| 01:23:53 | 24 | MR. GURA: Yes, we are. |
| 01:23:54 | 25 | MR. SIGALE: Yes, your Honor. |