IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS ASSOCIATION OF FIREARMS ) <br> RETAILERS, KENNETH PACHOLSKI, ) <br> KATHRYN TYLER, and MICHAEL HALL, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE CITY OF CHICAGO and ) <br> RICHARD M. DALEY, Mayor of the ) <br> City of Chicago, ) <br> ) <br> Defendants. ) | FILED: February 10, 2011 <br><br> Civil Action No. 10-cv-04184 <br> Judge Edmond E. Chang |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR A PROTECTIVE ORDER**

The City of Chicago asks this Court for a protective order preventing Plaintiffs from obtaining deposition testimony from the City regarding the legislative process and history of its firearms ordinance. Because deposition testimony on these matters is potentially relevant and is otherwise proper, the City's motion for a protective order should be denied.

**BACKGROUND**

The City filed its motion for a protective order on January 7, 2011, seeking to quash all or part of several topics identified in Plaintiffs' Rule 30(b)(6) deposition notice as well as individual depositions of three City officials. *See* Defs' Mot. Prot. Order ("Defs' Mot."), Doc. 63 at 1. In particular, the City objects to topic 1, which seeks information "regarding the drafting of the Ordinance," topic 2, which seeks information "regarding the legislative process relating to the Ordinance," and topic 4, which seeks information "regarding any less restrictive alternatives that the City considered enacting instead of the Ordinance." Defs' Mem. in Support of Defs' Mot.

1

("Defs' Mem."), Doc. 66 at 4; *see also* Pls' Rule 30(b) Deposition Notice, Doc. 66-2 at 6-7. The City also objects to several other topics "to the extent that those topics extend to matters contained in the legislative process and history." Defs' Mem. 3.

On January 27, the Court granted the City's motion with respect to the three officials and directed Plaintiffs to respond to balance of the motion. *See* Jan. 27, 2011 Minute Entry, Doc. 79. As the Court observed, the City's motion for a protective order and Plaintiffs' concurrently filed motion to compel "seem to pass like electronic ships in the night on the docket because in some ways, at least in part, they are flip sides of one another." Jan. 27, 2011 Tr. of Hr'g ("Tr. of Hr'g") 3-4, attached as Ex. A. One area of overlap between the parties' submissions is the Rule 30(b)(6) deposition topics at issue in the City's motion for a protective order: while the City submits that the Court should quash several deposition topics "to the extent that those topics extend to the legislative process and history," Defs' Mot. 1, Plaintiffs submit that testimony should be compelled on topics "relating to the drafting of the Ordinance, the legislative process, and the legislative hearings," Pls' Mot. Compel ("Pls' Mot."), Doc. 65 at 8.

Although the live discovery disputes have "narrowed" since the parties filed the pending motions, *see* Tr. of Hr'g 4, the parties continue to disagree about the discoverability of information related to the Ordinance's legislative history and process. The narrowing that has taken place thus does not reach the issues raised by the City's motion for a protective order, but rather is limited to certain issues raised by Plaintiffs' motion to compel.[1]

Further, several issues raised by our motion to compel remain ripe for this Court's adjudication. In addition to discovery requests that touch on the legislative process, the City continues to object to responding to certain document requests and interrogatories seeking (1) informa-

---

[1] Plaintiffs reserve the right to move to compel on issues that are no longer ripe for this Court's adjudication in the event they once again produce disagreement between the parties.

tion related to the interests advanced by the Ordinance and the tailoring of the Ordinance to advance those interests, *see* RFP Nos. 28-31, Doc. 66-1 at 42-44, (2) discovery materials that have been exchanged in the *Ezell* litigation, *see* RFP No. 13, Doc. 66-1 at 39, and (3) documents and witnesses the City plans to use to defend the Ordinance, *see* RFP No. 33, Doc. 66-1 at 44; RFP No. 41, Doc. 65-6 at 12; Interrogatory No. 7, Doc. 65-6 at 12.[2] *See also* Pls' Letter to City of February 7, 2011, attached as Ex. B (outlining current areas of agreement and disagreement on matters subject to our motion to compel). These requests are aimed at eliminating any "surprise[]" "when we either get to the summary judgment motions or to trial." Tr. of Hr'g 12. Indeed, it is particularly important that we learn the City's planned documentary and testimonial support for the Ordinance now so that we can take further appropriate discovery based on that information. We address these topics in support of our motion to compel, *see* Pls' Mem. in Support of Pls' Mot. ("Pls' Mem."), Doc. 65-2, and we now turn to the focus of this memorandum, responding to the City's motion for a protective order.

## ARGUMENT

As the "party opposing discovery," the City "has the burden of proving that the requested discovery should be disallowed," *Stimeling v. Board of Educ. Peoria Pub. Sch. Dist 150*, No. 07-CV-1330, 2010 U.S. Dist. LEXIS 6142, at *4-5 (N.D. Ill. Jan. 26, 2010), a burden that it has failed to meet here.

**I.    THE DISPUTED DEPOSITION TOPICS SEEK RELEVANT INFORMATION**

The City primarily objects to the challenged deposition topics' relevance. Relevancy un-

---

[2] We did not include Interrogatory No. 7, dealing with the City's potential witnesses, in our motion to compel because the City had agreed to reconsider its objection to that request. *See* Pls' Mem. 11 n.11. The City has now decided to persist in its objection. Given the similarity between that request and the issues raised by the motion to compel, the parties agree that it is appropriate for the Court to address Interrogatory 7 when ruling on Plaintiffs' motion to compel. *See* Pls' Letter to City of February 9, 2011, attached as Ex. C.

3

der the federal rules, of course, "is extremely broad." *Toader v. JP Morgan Chase Bank, N.A.*, No. 09-C-06684, 2010 U.S. Dist. LEXIS 127377, at *4 (N.D. Ill. 2010). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Indeed, "[r]equests for discovery are relevant if there is *any possibility* that the information sought may be relevant to the subject matter of the action." *Toader*, 2010 U.S. Dist. LEXIS 127377, at *4 (emphasis added).

As we explained in support of our motion to compel, discovery into the Ordinance's legislative history may lead to information that (1) undermines the testimony and evidence presented to the City Council in favor of the Ordinance, (2) indicates whether the legislative record is reliable and objective or was manufactured to point to a certain result, and (3) assists the Court in determining the City's purposes in passing the challenged provisions and whether the purposes enunciated in the legislative record (or in subsequent litigation) are pretextual. Pls' Mem. 6-7. The discovery, in other words, is reasonably calculated to lead to evidence bearing on the purposes of the challenged provisions and the fit between the provisions and those purposes, and it is of a sort not uncommon in constitutional litigation. *See id*. at 7 n.5.

Nothing in the City's submission undermines these conclusions.

1. Pointing to *District of Columbia v. Heller*, 554 U.S. 570 (2008), the City argues that "a statute's validity under the Second Amendment does not turn on how it was passed or on the weight of evidence relied upon by the legislature." Defs' Mem. 5; *id.* at 9 n.5 ("legislative motive is not an element of, or otherwise pertinent to, Second Amendment claims"). While we ultimately agree with this assessment, it does not render our discovery requests irrelevant.

In *Heller*, the Court engaged in a textual and historical analysis to determine that "the inherent right of self-defense has been central to the Second Amendment right." 554 U.S. at 628.

4

The Court therefore had no occasion to consider any purported justifications for the District of Columbia's handgun ban. Because the provisions of Chicago's ordinance at issue here similarly infringe upon Plaintiffs' core Second Amendment rights, under *Heller* they must be invalidated regardless of the governmental purposes they allegedly serve.

Although we believe a textual and historical approach should govern the resolution of this case, the City disagrees. We are entitled to take discovery on issues that will be relevant to the legal standards advanced by the City. Specifically, the City argues that the Court must determine "whether a proper governmental interest sufficiently supports" its law. Defs' Mem. 5-6. If the City is right about this, the first step in any potentially applicable interest balancing approach will be to determine the interests the ordinance was actually intended to serve. *See, e.g., Richmond v. J.A. Croson Co.*, 488 U.S. 469, 500 (1989) (under strict scrutiny, "simple legislative assurances of good intention cannot suffice"); *United States v. Virginia*, 518 U.S. 515, 535-36 (1996) (under intermediate scrutiny, "a tenable justification must describe actual state purposes, not rationalizations for actions in fact differently grounded"); *Planned Parenthood v. Casey*, 505 U.S. 833 (1992) (under undue burden standard, "a provision of law is invalid … if its purpose … is to place substantial obstacles in the path of a woman seeking an abortion before the fetus attains viability"); Defs' Mem. in Opp. to Pls' Mot. for a Prelim. Inj., Doc. 37-1 at 18, *Ezell v. City of Chicago*, No. 10-05135 (N.D. Ill. 2010) (arguing for a "reasonable regulation" test that "identifies the underlying governmental objectives and weighs those goals against the burden on the individual") (quotation marks and brackets omitted).

And in making this determination, the Court need not blindly accept purposes articulated by the City, for "the mere recitation of a benign … purpose is not an automatic shield which protects against any inquiry into the actual purposes underlying a statutory scheme." *Weinberger v.*

5

*Wiesenfeld*, 420 U.S. 636, 648 (1976). Rather, in determining the legislative purpose of a law, courts look to factors including "legislative history, … testimony of parties who participated in the enactment or implementation of the challenged law or practice, historical context, and the sequence of events leading to the passage of the law or the initiation of the practice." *Bonham v. District of Columbia Library Admin.*, 989 F.2d 1242, 1245 (D.C. Cir. 1993); *see also, e.g., Edwards v. Aguillard*, 482 U.S. 578, 594-95 (1987) (relevant factors in determining legislative purpose include "plain meaning of statute's words, enlightened by their context and the contemporaneous legislative history," "the historical context of the statute," and "the specific sequence of events leading to the passage of the statute"); *Wallace v. Jaffree*, 472 U.S. 38, 43 (1985) (citing district court testimony of bill's sponsor in analysis of legislative purpose); *United States v. Board of School Comm'rs*, 637 F.2d 1101, 1108 n.14 (7th Cir. 1980) (holding that the district court "properly considered" in determining legislative purpose "the statements of a black state legislator who testified that race was never considered in drafting the legislation at issue"); *Flores v. Pierce*, 617 F.2d 1386, 1389 (9th Cir. 1980) (Kennedy, J.) (finding of illicit intent supported, *inter alia*, by evidence that "the defendant city officials deviated from previous procedural patterns"). This is precisely the type of information the disputed deposition topics are aimed at discovering.

    2. The City also argues that the Seventh Circuit's post-*Heller* Second Amendment cases "do not tarry with the … content of the legislative record." Defs' Mem. 7. But in those cases the legislature's actual purpose was not contested. *See United States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2010); *United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010) (en banc); *United States v. Williams*, 616 F.3d 685, 692-93 (7th Cir. 2010).[3] And to the extent those cases "in-

---

[3] The same is true of the Third Circuit case cited by the City. *See United States v. Marz-*

6

voked materials … that were not even part of the legislative record" in evaluating the fit between the laws at issue and their underlying purposes, Defs' Mem. 7, they only *underscore* the appropriateness of discovery that probes beyond the "duly-constituted legislative record of the City Council proceedings that culminated in enactment of the Ordinance," *id.* at 3; *see also* Pls' Mem. 4-5. At any rate, none of the Seventh Circuit's post-*Heller* Second Amendment cases have purported to establish the proper mode of judicial analysis of laws that infringe upon the core Second Amendment rights of responsible, law-abiding citizens, much less the scope of discovery appropriate in cases challenging such laws. *See Yancey*, 621 F.3d at 683; *Skoien*, 614 F.3d at 642; *Williams*, 616 F.3d at 692.

    3. Demonstrating the low esteem in which the City holds Plaintiffs' core Second Amendment rights, the City next points to *G.M. Enterprises, Inc. v. Town of St. Joseph*, 350 F.3d 631 (7th Cir. 2003), a case concerning a Wisconsin town's regulation of nude dancing, an activity which falls "within the outer ambit of the First Amendment's protection," *id.* at 636 (quotation marks omitted). But even the level of review applicable in such cases would not help the City's cause, for it affords plaintiffs the opportunity to " 'cast direct doubt on [the municipality's] rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings' "—in other words it permits plaintiffs to seek "to vitiate the result reached in the … legislative process." *Id.* at 639 (quoting *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438-39 (2002) (plurality)); *see also Alameda Books*, 535 U.S. at 438 (municipality cannot "get away with shoddy data or reasoning"). The fact that the plaintiffs in *G.M. Enterprises* were not able successfully to make such a showing surely does not mean that Plaintiffs here must be prevented from taking discov-

---

*zarella*, 614 F.3d 85, 98 (3d Cir. 2010).

7

ery that potentially could enable them to do so. *Cf. Annex Books, Inc. v. City of Indianapolis*, 581 F.3d 460, 465 (7th Cir. 2009) (holding that "shortcomings" in "studies that the City has offered in defense of its ordinance" plus a study introduced by plaintiffs "call the City's justifications into question and require an evidentiary hearing at which the City must support its ordinance under the intermediate standard of *Alameda Books*").

    4. The City's invocation of the "familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive," Defs' Mem. 8 (quoting *DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 828 (7th Cir. 1999), which in turn quotes *United States v. O'Brien*, 391 U.S. 367, 383 (1968)), likewise does not get it very far, for by its terms the principle only addresses situations in which a law is "otherwise constitutional." *See also O'Brien*, 391 U.S. at 384 ("It is entirely a different matter when we are asked to void a statute that is, under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of Congressmen said about it."). As we have explained, even if an interest-balancing approach were appropriate here, the first step in such an analysis would be to determine the actual purposes underlying the challenged provisions. It is only if those actual purposes are sufficient to justify the provisions that they could be deemed "otherwise constitutional." *See, e.g., City of Erie v. Pap's A.M.*, 529 U.S. 277, 292 (2000) (plurality) ("[i]n light of the … determination that one purpose of the ordinance" was a licit one, rejecting the "argument that the city council also had an illicit motive in enacting the ordinance" because "this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit motive"); *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 652 (1994) (because challenged provisions had valid purpose, "[a]ppellants' ability to hypothesize [an invalid] purpose for" them did not undermine their validity, for "it is a familiar principle of constitutional law that this Court will

8

not strike down an otherwise constitutional statute on the basis of an alleged illicit motive"); *Renton v. Playtime Theatres*, 475 U.S. 41, 47-48 (1986) (rejecting court of appeals' conclusion that City Council's valid "predominate concerns" were insufficient to sustain an ordinance if the City Council also had an improper additional "motivating factor, … apparently no matter how small a part this motivating factor may have played in the City Council's decision," because "[i]t is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive"). Discovery aimed at testing the purposes articulated by the City is thus entirely appropriate.

    5. Finally, the City cites to cases quashing depositions of city officials, but those cases dealt with attempts to probe the subjective motivations of individual lawmakers. *See City of Las Vegas v. Foley*, 747 F.2d 1294, 1299 (9th Cir. 1984) (directing district court to grant protective order quashing depositions aimed at "the subjective motivations of individuals lawmakers"); *National Paint & Coatings Ass'n v. City of Chicago*, 147 F.R.D. 184, 185 (N.D. Ill. 1993) (quashing depositions seeking "inquiry into the subjective motivations of individual legislators").

    Indeed, *Foley* itself demonstrates that discovery focusing on an ordinance's factual history and the details of a municipality's legislative process is not equivalent to seeking the subjective motivations of individual lawmakers. In the process of ordering quashed depositions that *did* seek to explore individual lawmakers' subjective motivations, the Ninth Circuit distinguished an earlier case in which it had relied on city officials' deposition testimony in assessing legislative purpose:

> [T]he deposition testimony in *Tovar* objectively indicated the Council's purpose in making the zoning decision. For example, defendant Billmeyer testified that he, in his capacity as mayor, called the special September 2nd meeting "to see what the City Council could do about getting the [plaintiffs'] Gallery Theater out of Pocatello." Defendant Ellis, the City's building inspector, testi-

9

> fied that he was instructed by Mayor Billmeyer to deny the building permit when plaintiffs applied for one. *This evidence was properly admissible because it showed the chain of events from which intent may be inferred, rather than merely the subjective intent of individual legislators.*

*Foley*, 747 F.2d at 1298 (emphasis added); *see also id.* at 1299 ("The remaining evidence considered by the court in *Tovar* demonstrated the extraordinary nature of the City Council's decision-making process, and cast suspicion on its motives."). Likewise here, the disputed deposition topics seek information relevant to assessing legislative purpose, the fit between the challenged provisions and their alleged purposes, and the factual support for the Ordinance, not merely the subjective motivations of individual lawmakers.

## II. THE CITY'S ADDITIONAL OBJECTIONS TO THE CHALLENGED DEPOSITION TOPICS LACK MERIT

In addition to relevancy, the City objects to the challenged deposition topics as unduly burdensome, legally impractical, and an intrusion into matters protected by legislative privilege. These objections fare no better than the first.

1. The City's burdensomeness argument is grounded in its assertion that it simply cannot produce a witness to speak to "the process and discussions associated with the Ordinance," because each individual Alderman and other officials and employees potentially connected to its passage "had his or her own communications or understandings regarding the bases or purposes of the Ordinance, the utility of particular provisions, or the selection of particular language." Defs' Mem. 10. But clearly the City should be able to produce a witness or handful of witnesses who can speak about the legislative process in general—e.g., the drafting process, the selection of witnesses for the hearings, and the role of the Mayor's office and other key players in the process. And we have offered to "stipulate that the City need not produce a Rule 30(b)(6) witness (or witnesses) who can speak to the entirety of communications by City officials regarding

10

the Ordinance." *See* Doc. 65-9 at 29. The City's assertion that it would have to produce separately each official potentially connected with the passage of the Ordinance in order to satisfy our requests is thus unconvincing.

    2. The City next moves to "legal[] impractical[ities]" of complying with the contested discovery requests, arguing that no single individual can purport to testify for the City Council, which is "a collective entity that acts and speaks through legislation." Defs' Mem. 11. But Plaintiffs are asking the City to produce a witness who can testify on behalf of the City of Chicago as a party to this case—a request that is entirely appropriate under the Federal Rules. *See* Fed. R. Civ. P. 30(b)(6) ("In its notice or subpoena, a party may name as the deponent a … governmental agency …"). Indeed, the City, as a party to this suit, will speak on its own behalf in defending the Ordinance by putting forward the governmental purposes, and bases for those purposes, that allegedly support it. *See, e.g.,* Defendants' Supplemental Response to Plaintiffs' First Set of Interrogatories at 3-4, attached as Ex. D (identifying 15 "legitimate governmental interests to which the challenged Ordinance provisions" allegedly relate). Furthermore, the factual details of the legislative process surrounding the Ordinance should be information reasonably available to the City; after all, some City employee (or small group of employees) was likely responsible for drafting the ordinance and organizing the hearings held by the City Council. In sum, the City's "legal impracticality" argument plainly misses the mark.

    3. Finally, the City argues that "the Rule 30(b)(6) testimony should be quashed because it will largely, if not wholly, encompass discussions and matters protected by legislative privilege, or the executive and/or deliberative process privileges." Defs' Mem. 11 (citations omitted). It is difficult to assess this argument given that the quoted language constitutes the entirety of the City's argument on this score, excluding case citations. Indeed, this perfunctory argument surely

11

cannot be enough to meet the City's "burden of proving that the requested discovery should be disallowed." *Stimeling*, 2010 U.S. Dist. LEXIS 6142, at *4-5. *See also* Fed. R. Civ. P. 26(b)(5) ("When a party withholds information otherwise discoverable by claiming that the information is privileged …, the party must … describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged …, will enable other parties to assess the claim."); *United States v. Lanzotti*, 205 F.3d 951, 958 (7th Cir. 2000) ("We repeatedly have made clear that perfunctory and undeveloped arguments … are waived."). As we explained in support of our motion to compel, the City's discovery responses have similarly included vague, insufficient privilege claims. *See* Pls' Mem. 9 n.9.

Furthermore, with respect to legislative privilege the only binding authority cited by the City deals with legislators' immunity from civil liability for their legislative actions, which is plainly not at issue here. *See Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998) (holding "that local legislators are … absolutely immune from suit under § 1983 for their legislative activities"); *Biblia Abierta v. Banks*, 129 F.3d 899, 901 (7th Cir. 1997) (holding that legislative immunity protected Chicago Aldermen from civil liability for legislative activities). With respect to the "executive and/or deliberative process privileges," the City does not explain how they would protect information related to the *legislative* history of the Ordinance, and the cases it cites do not deal with requests for such information. And with respect to all of its privilege claims, the City does not explain how they could be construed to protect communications between City officials and outside parties. *See* Pls' Mem. 9 n.9.

At any rate, in the event that the City expands upon its privilege argument in its response to our motion to compel, and in the event the Court determines that the City has adequately pre-

served the argument, we request the opportunity to file a written response.

## CONCLUSION

For these reasons, the City's motion for a protective order should be denied.

| | |
|---|---|
| Dated: February 10, 2011 | Respectfully submitted, |

Stephen Kolodziej
Atty. ID # 6216375
BRENNER FORD MONROE & SCOTT LTD.
33 N. Dearborn St., Suite 300
Chicago, IL 60602
Tel: (312) 781-1970
Fax: (312)781-9202
Email: skolodziej@brennerlawfirm.com

s/ Charles J. Cooper
Charles J. Cooper*
David H. Thompson*
Peter A. Patterson*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
Email: ccooper@cooperkirk.com
*Admitted *pro hac vice*.
*Counsel for Plaintiffs*

13

## **CERTIFICATE OF SERVICE**

I, Charles J. Cooper, hereby certify that on this 10th day of February, 2011, I caused a copy of the foregoing to be served by electronic filing on:

Michael A. Forti
Andrew W. Worseck
Mardell Nereim
Rebecca Alfert Hirsch
William Macy Aguiar
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle St., Suite 1230
Chicago, IL 60602

                                                s/ Charles J. Cooper
                                                Charles J. Cooper