**INDEX OF EXHIBITS TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**

| EXHIBIT | TITLE |
|---------|-------|
| A | January 27, 2011 Transcript of Hearing |
| B | Plaintiffs' Letter to City of February 7, 2011 |
| C | Plaintiffs' Letter to City of February 9, 2011 |
| D | Defendants' Supplemental Response to Plaintiffs' First Set of Interrogatories |

# EXHIBIT A

<pre>
 1                  UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3

 4    BRETT BENSON, RAYMOND SLEDGE,       )
      KENNETH PACHOLSKI, DR. KATHRYN      )
 5    TYLER, ILLINOIS ASSOCIATION OF      )
      FIREARMS RETAILERS, MICHAEL         )
 6    HALL, and RICK PERÉ,                )
                                          )
 7           Plaintiffs,                  )
                                          )
 8    vs.                                 )   No. 10 C 4184
                                          )
 9    THE CITY OF CHICAGO and             )   Chicago, Illinois
      RICHARD M. DALEY,                   )   January 27, 2011
10                                        )   10:00 o'clock a.m.
             Defendants.                  )
11

12

         TRANSCRIPT OF PROCEEDINGS - STATUS AND MOTION HEARING
13           BEFORE THE HONORABLE EDMOND E. CHANG

14

15   APPEARANCES:

16      For the Plaintiffs:     COOPER & KIRK, PLLC
                                MR. DAVID H. THOMPSON
17                              1523 New Hampshire Avenue, N.W.
                                Washington, DC 20036
18                              202-220-9600
                                dthompson@cooperkirk.com
19
                                and
20
                                BRENNER, FORD, MONROE & SCOTT,
21                              LTD.
                                MR. STEPHEN A. KOLODZIEJ
22                              33 North Dearborn Street
                                Chicago, IL 60602
23                              312-781-1970
                                skolodziej@brennerlawfirm.com
24

25
</pre>

1    **For the Defendants:**      **CITY OF CHICAGO, DEPARTMENT OF**
                                           **LAW**

2                                  **MR. MICHAEL A. FORTI**
                                  **MR. ANDREW W. WORSECK**

3                                  **30 North LaSalle Street**
                                  **Chicago, Illinois 60602**

4                                  **312-744-9010**
                                  **mforti@cityofchicago.org**

5                                  **aworseck@cityofchicago.org**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23                   **FEDERAL OFFICIAL COURT REPORTER**
                         **MS. KRISTA BURGESON**

24                   **219 South Dearborn Street**
                       **Chicago, Illinois 60604**

25                            **312-435-5567**
                  **krista_burgeson@ilnd.uscourts.gov**

1          THE CLERK: 10 C 4184, Benson versus City of Chicago.

2          MR. THOMPSON: Good morning, your Honor. David

3 Thompson for the plaintiffs and Benson.

4          MR. FORTI: Good morning, your Honor. Michael Forti

5 on behalf of the City of Chicago.

6          MR. WORSECK: Good morning, your Honor. Andrew

7 Worseck on behalf of the City.

8          MR. KOLODZIEJ: Good morning. Steve Kolodziej, local

9 counsel for the plaintiffs and Benson.

10          THE COURT: Good morning.

11          Let's take care of the easy stuff first, shall we?

12 Okay. Obviously this case was reassigned from Judge Guzman's

13 calendar to my calendar.

14          First, there is an unopposed motion for leave to file

15 the amended complaint. That, of course, is granted. So as

16 for the second amended complaint, you may file that.

17          MR. THOMPSON: Thank you, your Honor.

18          THE COURT: Next is an unopposed motion by two

19 individuals, Brett Benson and Rick Pere --

20          MR. THOMPSON: Yes.

21          THE COURT: (Continuing) -- to withdraw as

22 plaintiffs. That is also granted.

23          MR. THOMPSON: Thank you, your Honor.

24          THE COURT: Then we have got the City's motion for a

25 protective order and your motion to compel, which seem to pass

1    like electronic ships in the night on the docket because in

2    some ways, at least in part, they are flip sides of one

3    another.

4         So, because they pass like that, and you haven't had

5    a chance to file written responses, I will give you an

6    opportunity to do that, but let me give you some preliminary

7    thoughts, that way you have something to sort of write to,

8    unless you want to tell me this has all been resolved.

9         MR. THOMPSON:  Well, your Honor, it hasn't all been

10   resolved, but the City of Chicago on Tuesday did send us a

11   letter indicating that with respect to, for example,

12   contention interrogatories, they will now answer them, and

13   they have provided answers to the contention.

14        So, it has narrowed a bit, and obviously in our

15   responsive brief we can indicate where.

16        THE COURT:  I appreciate that.

17        Now, with regard to on the one hand the protective

18   order to quash 30(b)(6) notices, as to taking the depositions

19   of individuals who can shed light sort of on the legislative

20   process and the drafting of the ordinance, and on the flip

21   side, your motion to compel that information, it does appear

22   to me that the important standard that we are trying to meet

23   here is whether -- and I am not making a definitive ruling on

24   this as the case law evolves, of course, but there has to be a

25   strong showing that the ordinance, which does burden an

1    individual right, meets those -- meets a legitimate objective,

2    and then there has to be some strong fit between the ordinance

3    itself and the purposes it is trying to achieve.

4         But the question is what is the legislation's purpose

5    and not the individual legislator's motives, okay?  And so I

6    want to draw -- I draw that distinction from a couple of

7    cases, and again, you can respond to this in writing.

8         The Skoien case, of course, the en banc case that the

9    7th Circuit decided, the Court there, the en banc Court there,

10   examined the objective of 922(g)9 in that case and there

11   wasn't any additional scrutiny of whether certain members of

12   Congress had their own internal personal motives in passing

13   the legislation.  The question was focused on the

14   legislation's purpose.

15        If you look at the 2 cases that Skoien cited for the

16   intermediate scrutiny standard, which it also said it wasn't

17   definitively adopting, but as an example, two cases from the

18   Supreme Court, the Buckley versus American Constitutional Law

19   Foundation and the Heckler versus Mathews case, again, both of

20   those Supreme Court decisions looked at the legislation's

21   purpose.

22        Now, to be sure, part of that examination was the

23   Congressional Record Committee reports and so on, but that is

24   a far cry, at least in my view, from examining the individual

25   motives of legislators.  So there was a legislative record to

 1    look at to determine the legislation's purpose.

 2         So, you know, that is -- I am inclined to grant the

 3    motion for protective order and deny the motion to compel to

 4    the extent that the discovery would seek the individual

 5    legislator's motives.

 6         Now, having said that, I do also want to make -- I

 7    want to clear away some of the underbrush.  There was an

 8    argument by the City, for example, that the plaintiffs had

 9    initially taken a position that this could be decided as a

10    matter of law with little or no discovery, and now they are

11    vigorously pursuing discovery.  They have every right to do

12    that.  It is just as if Judge Guzman had decided otherwise and

13    decided, well, no, we don't need much fact discovery, we can

14    decide this as a matter of law.  The City would not have been

15    disabled from arguing, well, the case law supports our

16    argument.  So, let's just clear away that argument.  They can

17    vigorously pursue discovery so long as it is discoverable

18    information that they are looking for.  That is my thought

19    with regard to the legislative process issue that the parties

20    have raised.

21         I will point out that the City, you had as one of

22    your alternative arguments the legislative privilege, citing

23    to cases like Brogan versus Scott Harris.  Now, those cases

24    involved the individual liability of legislators for monetary

25    damages, and the cases there I think were dealing more with

1   the legislative motive is irrelevant in determining whether an

2   act of a legislative body is a legislative act that is

3   entitled to absolute immunity.  The plaintiffs are not seeking

4   damages against the individual legislators.  So, I don't think

5   that line of cases is helpful to your argument, but again, you

6   can respond back in writing when you put that on paper.

7          With regard to the depositions of Superintendent Weis

8   and First Deputy Brown and the Zoning Administrator, I do

9   think that some staggered approach to discovery would make

10  more sense, that is to say that before you take a deposition

11  of one of these high level officials that you start out with

12  document requests and interrogatories directed at those

13  individuals and see what that is like before we then address

14  whether they ought to be deposed.

15         And so, for example, if you were to send a document

16  request to the Superintendent asking -- or any witness asking,

17  what materials did you rely on, you may find that the answer

18  is sufficient, or you may find that there were no documents

19  that they relied on, which would be telling in and of itself.

20         So, I am also inclined at this point to grant the

21  protective order as to the depositions of those 3 officials,

22  bearing in mind though that there may be some Answers to

23  Interrogatories or document requests that would alter our

24  course.

25         Yes?

1          MR. THOMPSON:  Your Honor, we did ask in a document

2   request and interrogatories to be sure that the City as a

3   whole was -- our view was certainly the City was obligated to

4   go speak to the witnesses, that would have been the first stop

5   on the people they should have been speaking to to see if they

6   had responsive documents or interrogatories.

7          We are happy to reissue those, but given that we did

8   that in September and we still haven't gotten an answer to

9   those document requests and interrogatories, we are -- we

10  would just note that -- we feel like we started there and we

11  got nothing.

12         MR. WORSECK:  Your Honor, if I may.

13         I am not sure that that is an entirely fair

14  characterization, at least as to some of the early discovery

15  that was served in the case.  Plaintiffs did later serve a

16  second set of discovery requests that did specifically

17  reference specific statements that these witnesses made at

18  the council hearings and asking for related documents and so

19  forth pertaining to those statements, and we have agreed to

20  respond to those requests, and we are in the process of doing

21  so.

22         We are also happy to engage in a dialogue with

23  plaintiffs regarding construction they may want to give to

24  previously issued discovery that would make it clear to both

25  parties that this discovery is actually going to these issues

1   relating to the individual witness testimony.

2         THE COURT:  And I will give enough time to file

3   written responses, for both of you to confer, and possibly

4   narrow down the disputes.

5         MR. FORTI:  Your Honor, could I suggest, because I

6   think your comments were quite insightful in terms of where

7   the parties are, but given that things have changed since the

8   original filing of the motion to compel, and I think the

9   parties may have very differing views of this case, but

10  actually have been working quite collaboratively, that without

11  any sense of trying to delay things, I just wonder if it

12  wouldn't be best for the plaintiffs to withdraw the current

13  motion, for us to meet and confer with them, taking your

14  comments, pluses and minuses, very seriously, and then file a

15  new motion that might be quite different than the one that was

16  presented here.

17        Because I think, using your term, there is a lot of

18  underbrush in terms of what is being discussed and maybe a

19  clearer presentation of what is really at issue in light of

20  the fact that -- in light of your comments, Number 1, and

21  Number 2, the production made by the City, it might just be

22  easier going forward, rather than a motion that was filed

23  before you took this case, before we filed answers, before

24  they filed an amended complaint.

25        Quite frankly, things have changed and it might just

1    be more streamlined to look at clean paper after the parties

2    have conferred in light of your comments this morning.

3            THE COURT:  Of course it is their motion, so I am not

4    going to force them to withdraw it, and I don't want to

5    prejudice their position if they want to preserve an issue for

6    appeal down the road, for example, for them to --

7            MR. FORTI:  Sure.

8            THE COURT:  (Continuing) -- for them to refile a

9    motion that is narrower but then doesn't preserve their

10   broader position.

11           But what is your take on it?

12           MR. THOMPSON:  Our preference, your Honor, would be

13   to go ahead and file a written response to the protective

14   order, allow them to file a response to the brief that we

15   filed, and in the course of that, make clear that this Tuesday

16   letter that we just received does, in fact, moot out some of

17   the issues in the motion to compel but not really the ones

18   that your Honor has just walked through.

19           THE COURT:  I think the cleaner presentation will --

20   you will be able to achieve that in the next round of filings.

21   So we will stick with that plan.

22           With regard to the plaintiff's motion to compel, in

23   terms of the categories you have outlined, I think the

24   legislative process, that is the flip side of the motion for a

25   protective order that we just discussed.

1        Then statistics and data, the plaintiff's motion

2   states that the City did agree to produce some data earlier

3   this month, but that the City needed some additional time to

4   do that.

5        So, can I have just a brief response at this point,

6   and again, you can respond further in writing?

7        MR. WORSECK:  Your Honor, we have agreed to produce

8   the data that the Chicago Police Department has, and this was

9   an inquiry that took months, frankly, both in terms of dealing

10  with the plaintiffs and then dealing with our client, for

11  everyone to come to an understanding as to what data the CPD

12  actually had on these various issues, how far back in time it

13  actually went, how easily it could be accessed, whether it was

14  in obsolete data bases or more current data bases, whether it

15  was in a data base at all versus hard copy paper files.

16       We spent a great deal of time going down that road

17  and we did achieve an understanding that I believe the

18  plaintiffs are in agreement with.  I dealt primarily with

19  Mr. Thompson's co-counsel on this, but to the extent that CPD

20  does have responsive data, we have agreed to produce it.  I

21  checked with the client yesterday and they have indicated that

22  they believe they can produce it by February 7th, which is the

23  date that plaintiffs request in their motion.

24       THE COURT:  Okay.

25       We will set that date of February 7th for production

1    of that data.  You don't need to have further written

2    responses on that issue.

3          Then the third category that the plaintiff's motion

4    to compel addresses is information regarding the governmental

5    purposes and less restrictive alternatives.

6          Again, to the extent that the plaintiff is seeking

7    individual legislator's motives, I told you where my

8    inclinations are on that.  With regard to the less restrictive

9    alternatives, I guess my view on that is if there are facts,

10   data, surveys, you know, information that the City has in its

11   possession that would speak to less restrictive alternatives,

12   and the efficacy of those, that is something that the

13   plaintiffs would be entitled to.

14         Whether or not that exists, I don't know, given the

15   fact that this ordinance is obviously -- it is the City's

16   first reaction to McDonald, but my overall concern in this

17   case is that when we either get to the summary judgment

18   motions or to trial, when we get there, that neither side is

19   surprised.  Okay?  If the City is going to rely on

20   governmental purposes and data and information that support

21   these restrictions on this individual right, then the

22   plaintiffs ought to know that in advance so they can respond

23   to it.

24         And likewise, if you are going to argue that there

25   were no less restrictive alternatives and you have information

1    and data that backs that up, I don't want the plaintiffs to be

2    surprised by that either.

3         Again, I am not -- I am not making a decision on the

4    substantive standard yet.  We may hear more from the 7th

5    Circuit on that in the Ezell case that is up on appeal.  It

6    may be that the 7th Circuit won't address that because they

7    may focus on the irreparable harm issue and dispose of it on a

8    narrow basis but, on occasion, the 7th Circuit is known to

9    write more broadly, and so we will maybe get more guidance on

10   the substantive standard.

11        But for now, the question of whether there are less

12   restrictive alternatives that are available to the City is one

13   that is, you know, discoverable.

14        MR. FORTI:  Your Honor, I think that -- I certainly

15   understand and concur with your judgment that we do not --

16   that neither side wants surprise come summary judgment or an

17   ultimate trial.

18        I think one of the objections that we had with the

19   request, but I understand fully your view, is that it presumes

20   really that strict scrutiny, as you know, is the relevant

21   test, because only there do we look at less restrictive

22   alternatives.  Tests shy of strict scrutiny, as the Court

23   knows, wouldn't envision that kind of criterion, but that does

24   not mean if we have the materials, that we would nevertheless

25   produce them, but not under the guise that we are accepting

1    strict scrutiny as being the relevant standard.

2         THE COURT:  Right, and I absolutely appreciate that,

3    and that is your legal position.

4         As I said, the 7th Circuit, and other Circuits, might

5    speak to this at some point, but given the uncertainty as to

6    what, you know, scrutiny does apply, what strong showing

7    means, and so on, it makes a lot more sense to have discovery

8    on the issues that were prepared either way.  But I appreciate

9    that you don't want to prejudice your legal position.

10        I guess the same goes for the firearms training,

11   ranges, and stores information.  If it is in the City's

12   possession, and you have information that bears on the

13   dangers, you know, that are presented by the presence of

14   shooting ranges in the City, then that is discoverable.  I

15   mean, that is going to be one of the purposes, no doubt, that

16   the City asserts justifies the ban on firing ranges in the

17   City within the City limits, then you ought to be turning that

18   information over as well.

19        The 5th category in your motion to compel was the

20   zoning ordinance, and the Zoning Ordinance Administrator.

21   Again, as I mentioned before, I think we should start with

22   document requests and interrogatories, and maybe the City can

23   designate someone other than the Zoning Administrator herself

24   in answering questions on the zoning ordinance, and what the

25   City's concerns are with regard to zoning for firearm stores

1   and ranges.

2          And then your last category was with regard to first

3   responders and the dangers presented.  Once again, on the

4   theme of no surprises on either side, if the City will be

5   asserting that the limits on the number of firearms, for

6   example, in a per permit holder is grounded on the potential

7   danger to first responders, and you have information and data

8   as to that, that ought to be discoverable.

9          So those are my thoughts.

10         Now, how long would you like to file -- let's just do

11  cross responses, okay, then after have you have conferred, and

12  hopefully narrowed the issues some, we can then --

13         MR. WORSECK:  Your Honor, I think giving some buffer

14  for the parties to confer, 21 days.

15         MR. THOMPSON:  I was thinking 2 weeks, but 21 days

16  would be all right too.

17         The only concern I have is the discovery deadline, I

18  believe, is March 31st now, and we would like to stick with

19  that in that our clients have important Constitutional rights

20  that are at stake.  So if we take 21 days, the Court will

21  obviously need time, and then based on the Court's ruling we

22  would have to do that discovery, so we would propose the 2

23  weeks.

24         THE COURT:  Let's do the 2 weeks, yes.

25         THE CLERK:  February 10th.

1      THE COURT:  And then what I would like to do is set

2  a -- I will likely just rule by mail, but we should still have

3  a status.  Let's do it actually a week or so in advance of the

4  March 31st date.

5      MR. THOMPSON:  Would it be possible, your Honor, to

6  do it -- I have a 4th Circuit argument that week, so would it

7  be possible to do it two weeks in advance of March 31st?

8      THE COURT:  Yes.

9      THE CLERK:  March 17th.

10     MR. THOMPSON:  If that is acceptable?

11     THE COURT:  That is fine.

12     THE CLERK:  March 17th at 9:00 a.m.

13     THE COURT:  We will just check in on discovery at

14  that point, whether we think summary judgment is going to do

15  it or if we need to set trial dates, and we will go forward

16  from there.

17     MR. THOMPSON:  Okay.

18     MR. FORTI:  Your Honor, 2 other matters, if I may.

19     THE COURT:  Yes.

20     MR. FORTI:  We anticipate, and I believe that Mr.

21  Worseck has already advised plaintiff's counsel of this, we

22  intend to file a motion for partial summary -- sorry, a

23  partial motion to dismiss based on the amended complaint, and

24  we would like 21 days in order to file that motion.

25     THE COURT:  Can you give me a brief outline as to the

1   grounds?

2           MR. FORTI:  Yes.

3           MR. WORSECK:  Sure.

4           Your Honor, there are two substantially new features

5   of the amended complaint.

6           One is that it adds a zoning count challenging the

7   City's zoning ordinance.  We are still looking into whether or

8   not that would be a proper count to lodge, at least in the

9   fashion that the plaintiffs have lodged it.  To the extent

10  that it is asking for a wholesale enjoining of the City's

11  zoning code and zoning laws and ability to enact zoning

12  regulations that would govern the placement of gun stores or

13  gun ranges in the event they prevail on their 2nd amendment

14  claims, we think it might be seeking relief that is overbroad,

15  and with due respect to your Honor, would not be within the

16  purview of Federal Court to grant, at least not in the posture

17  that the case is currently proceeding.

18          Secondly, the complaint has changed some of the

19  allegations concerning the organizational plaintiff that is in

20  this case, the Illinois Association of Firearms Retailers, and

21  it appears that that entity is not asserting either in its own

22  right or on behalf of its membership a second amended claim,

23  or any other legally cognizable claim here, certainly no claim

24  that has been injured or harmed by any action of the City and,

25  therefore, we think there would be a lack of standing as to

1   that plaintiff.

2          THE COURT:  All right.

3          I will give you 21 days to file that motion to

4   dismiss.

5          THE CLERK:  That is February 17th.

6          MR. FORTI:  And then lastly, your Honor --

7          THE COURT:  I need to set a response brief date for

8   that.

9          MR. FORTI:  I am sorry.

10          THE COURT:  And we will be running right up to the

11   discovery close.

12          Although given the -- obviously discovery ought to

13   continue on the issue of the dangers of gun stores and

14   shooting ranges in the City even though it might pertain to

15   the zoning ordinance as well.

16          So let's give 14 days to respond.

17          THE CLERK:  March 3rd.

18          THE COURT:  5 days to reply.

19          THE CLERK:  March 16th.

20          THE COURT:  5 days from March 3rd, Sandra.

21          THE CLERK:  I'm sorry.

22          March 9th.

23          THE COURT:  All right.

24          Any other issues?

25          MR. FORTI:  Yes, your Honor.

1        Lastly, and perhaps only if this would be helpful to

2   the Court, I would suggest that it might be useful for the

3   parties, either jointly or independently, to file a status

4   report with the Court which puts into context, I think, many

5   of these issues, particularly if we are talking about where

6   this case is headed now under your control as opposed to Judge

7   Guzman's control because, with all due respect to the

8   plaintiff's position, even though we have been moving

9   diligently here, the City, as you know, has been faced with 3

10  cases challenging our gun ordinance, and I would like to put

11  into context in a status report why it might be prudent to

12  perhaps move some of the dates that have -- that were set by

13  Judge Guzman.  Although I think we will work diligently, I

14  think that the March 31st date is going to come upon us very

15  quickly, and despite putting primary resources on this case, I

16  think it is likely that we will not be able to meet that

17  deadline, and I just think it would be useful to put

18  everything into context now that we are starting fresh in this

19  courtroom.

20        THE COURT:  Here is what I understand:

21        The 7th Circuit has the Ezell case, and I believe

22  that the District Court case has been stayed.

23        MR. FORTI:  That is a question, your Honor, that I

24  can't answer.

25        We recently received a minute order from Judge

1   Kendall where she ruled that our motion to stay or to give us

2   additional time in which to file a response to the pending

3   motion to dismiss, she entered a minute order indicating that

4   our motion was moot without further explanation.  So we are at

5   a quandary as to what Judge Kendall meant.  That is the honest

6   answer in terms of what that status is in Ezell.

7           THE COURT:  And then in the 2nd amendment arms case,

8   that is at a motion to dismiss stage.  Is discovery ongoing

9   there?

10          MR. FORTI:  No, it is not.

11          THE COURT:  So you are just briefing -- and I

12  appreciate how long it takes to prepare briefs, but you are

13  not doing discovery in that case?

14          MR. FORTI:  No, we are not.

15          THE COURT:  Okay.

16          Rather than have a written status report, if you want

17  to bring a motion to extend the dates, then you ought to just

18  bring that motion rather than have a status report that, you

19  know, they are not going to entirely agree with and so on.

20          So, if you need relief from the dates, file a motion

21  and I will consider it.

22          MR. FORTI:  Very good.

23          THE COURT:  And Judge Guzman did not set a trial

24  date?

25          MR. FORTI:  No, he did not.

```
1            MR. THOMPSON:  No.
2            THE COURT:  Very good.
3            Anything else?
4            MR. THOMPSON:  Only to say, your Honor, that my
5    colleague, Chuck Cooper, meant to be here, he flew in last
6    night, but he has a kidney stone.  He would much rather be
7    here than where he is, and he apologizes.
8            THE COURT:  We wish him well.
9            MR. THOMPSON:  Thank you.
10           THE COURT:  Thank you all.
11           MR. FORTI:  Thank you very much.
12           (Proceedings concluded.)
13
14
15
16                 C  E  R  T  I  F  I  C  A  T  E
17
18           I certify that the foregoing is a correct transcript
19   from the record of proceedings in the above-entitled matter.
20
21   /s/Krista Burgeson, CSR, RMR, CRR     January 27, 2011
     Federal Official Court Reporter      Date
22
23
24
25
```

EXHIBIT B

# Cooper & Kirk

Lawyers
A Professional Limited Liability Company
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036

Pete Patterson
ppatterson@cooperkirk.com

(202) 220-9600
Fax (202) 220-9601

February 7, 2011

By First Class Mail and Email

Andrew Worseck
City of Chicago, Department of Law
30 North LaSalle Street
Suite 900
Chicago, IL 60602
Email: andrew.worseck@cityofchicago.org

Re:  *Benson v. City of Chicago*, No. 10-4184 (N.D. Ill.)

Dear Andrew:

I write in response to your letter of January 25 and to memorialize our phone conversation of February 4.  As a result of that letter and subsequent discussion, many of the discovery disputes addressed in our pending motion to compel are no longer ripe for the Court's adjudication. Below I outline our understanding of the issues raised in our motion that remain contested, organized by the six categories we identified in our motion.

**Category A**

Category A concerns documents and deposition testimony relating to the drafting of the Ordinance, the legislative process, and the legislative hearings.  This category of information remains a principal area of disagreement between the parties and is implicated by both our motion to compel and the City's motion for a protective order.  RFP Nos. 1, 2, and 4(i) and Rule 30(b)(6) Topic Nos. 1 and 2 are the primary discovery requests seeking this category of information, but additional requests such as Rule 30(b)(6) Topic Nos. 3, 4, 8, 9, 12, 13, 14, and 15 potentially reach such information as well.

**Category B**

Category B concerns statistics and data about crime and firearms.  On January 27, the Court ordered the City to produce this data by February 7.  During our February 4 call, you indicated that the City is on track to meet this deadline except for a subset of the data requested by RFP Nos. 5 and 6, the production of which has been hampered by personnel issues related to last week's snowstorm.  It is our understanding that the City will produce everything except this

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
February 7, 2011
Page 2 of 3

subset on February 7, and we expect that the City should be able to produce the subset by the end of the week. The City has also agreed to produce a witness to discuss the technical nature of any CPD data it produces, such as how such data is collected, input, search, and produced and what particular pieces of data mean or reflect. *See* Rule 30(b)(6) Topic Nos. 5, 6. There are thus no live issues remaining before the Court with respect to Category B.

### Category C

Category C concerns discovery regarding alleged purposes of the challenged provisions of the Ordinance and the fit between the provisions and those purposes. Although the parties have made progress on this category, disagreement persists with respect to RFPs 28-30, 31, 33, and 41. These requests generally seek (1) documents related to the interests advanced by the Ordinance and the tailoring of the Ordinance to advance those interests, and (2) documents the City will use to defend the Ordinance. Disagreement also persists with respect to information sought by Rule 30(b)(6) Topic Nos. 3, 4, 8, 9, 12, 13, and 14 that extends beyond the specific experience of the City's executive function and reaches into the Ordinance's legislative process. Indeed, the City has not offered to produce a witness with respect to Topic No. 4 because it views that topic as seeking legislative as opposed to executive information.

### Category D

Category D concerns information regarding firearms training, firearms ranges, and firearms stores. Although many of the issues identified in our motion to compel are now moot, the parties continue to dispute RFP No. 13, pursuant to which Plaintiffs seek discovery materials that have been exchanged in the *Ezell* litigation, and Rule 30(b)(6) Topic No. 15 as it relates to the Ordinance's legislative history.

### Categories E & F

With the City's agreement to produce a responsive witness with respect to Rule 30(b)(6) Topic Nos. 7 and 16, pursuant to the terms set forth in your January 25 letter, the issues raised motion to compel Categories E and F are no longer the subject of a live dispute between the parties.

* * * * *

As the foregoing demonstrates, many of the issues presented in our motion to compel have been resolved. Plaintiffs of course retain the right to bring these issues back before the Court if necessary, as well as any additional issues that may develop as the City continues to respond to our discovery requests. In our February 4 call, we discussed a few areas that may bear the parties' attention going forward, including:

# Cooper & Kirk
### Lawyers

Andrew Worseck, Esq.
February 7, 2011
Page 3 of 3

- The "reasonable and targeted" search efforts the City has agreed to undertake in connection with RFP Nos. 7, 8, 9, and 14.  It is our understanding that the City will provide us with the details of these search efforts (e.g., which agencies were and were not "targeted").

- The degree to which the City may or may not be able to provide information about ranges operated by the federal government.

- The identification and making available of the Rule 30(b)(6) witnesses the City has agreed to produce.

It is our hope that we are able to work together to resolve any issues that may arise in connection with these or any other topics.

Sincerely,

Pete Patterson

Cc:     Michael Forti, Esq.
        William Aguiar, Esq.
        Rebecca Hirsch, Esq.
        David Thompson, Esq.
        Stephen Kolodziej, Esq.

# EXHIBIT C

# Cooper & Kirk

Lawyers
A Professional Limited Liability Company
1523 New Hampshire Avenue, N.W.
Washington, D.C.  20036

Pete Patterson
ppatterson@cooperkirk.com

(202) 220-9600
Fax (202) 220-9601

February 9, 2011

<u>By Email</u>

Andrew Worseck
City of Chicago, Department of Law
30 North LaSalle Street
Suite 900
Chicago, IL  60602
Email: andrew.worseck@cityofchicago.org

Re:  *ILAFR v. City of Chicago*, No. 10-4184 (N.D. Ill.)

Dear Andrew:

I write to memorialize our agreement for bringing Plaintiffs' Interrogatory No. 7 before the Court.  That request deals with witnesses the City intends to use in this matter, and after meeting and conferring the City continues to object to producing such information now.  Rather than filing a new motion to compel, we plan to bring this disagreement to the Court's attention in the memorandum we will be filing tomorrow with the Court in connection with the pending discovery motions.  To the extent we raise any new arguments with respect to Interrogatory No. 7 that are not encompassed within the arguments in our motion to compel (*e.g.*, in connection with RFPs 33 and 41), we will not object to the City filing a brief response within seven days of our memorandum.

Sincerely,

Pete Patterson

Cc:    Michael Forti, Esq.
       William Aguiar, Esq.
       Rebecca Hirsch, Esq.
       David Thompson, Esq.
       Stephen Kolodziej, Esq.

EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRETT BENSON, RAYMOND SLEDGE, KENNETH PACHOLSKI, KATHRYN TYLER, MICHAEL HALL SR., RICK PERE, and the ILLINOIS ASSOCIATION OF FIREARMS RETAILERS, | ) ) ) ) ) ) | No. 10 CV 4184 |
| Plaintiffs, | ) ) | Judge Edmond E. Chang |
| v. | ) ) | Magistrate Judge Geraldine Soat Brown |
| THE CITY OF CHICAGO and RICHARD M. DALEY, Mayor of the City of Chicago, | ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' SUPPLEMENTAL RESPONSE TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendants City of Chicago ("City") and Mayor Richard M. Daley, by and through their attorney, Mara S. Georges, Corporation Counsel of the City of Chicago, hereby submit supplemental responses to certain interrogatories contained in Plaintiffs' First Set of Interrogatories.

## GENERAL OBJECTIONS

A.     Defendants object to each definition, instruction, and interrogatory to the extent that it attempts to impose discovery obligations which are greater than those required under the Federal Rules of Civil Procedure.

B.     Defendants object to each definition, instruction, and interrogatory to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine.

C.     Defendants object to each definition, instruction, and interrogatory to the extent

that it requests information relating to matters that are not relevant to the pending lawsuit or not reasonably calculated to lead to the discovery of admissible evidence, or otherwise exceeds the scope and manner of discovery permitted by the Federal Rules of Civil Procedure.

D.     Defendants object to each definition, instruction, and interrogatory to the extent that it seeks legal bases, legal conclusions, or opinions.

E.     Defendants object to each interrogatory to the extent that it requests information outside the possession, custody, or control of Defendants.

F.     When Defendants state that they will produce responsive documents or provide information, they state so only to the extent responsive documents or information exist and are in their possession, custody, or control.

G.     Defendants reserve all objections to the admissibility of any information into evidence in this litigation (including information contained in the answers to these interrogatories), including, without limitation, objections of relevance and materiality.

H.     Defendants reserve the right to seasonably supplement their responses to Plaintiffs' interrogatories, including future supplementation beyond that contained herein.

## SPECIFIC OBJECTIONS AND RESPONSES

Without waiving the General Objections, which are hereby incorporated into each response below as if set forth fully therein, and without waiving the Specific Objections previously lodged as against each of the following interrogatories, which are also hereby incorporated into reach response below as if set forth fully therein, Defendants supplement their responses to the following interrogatories as follows:

**INTERROGATORY NO. 1**:  Please identify every legitimate governmental interest to which Defendants contend the provisions of the Ordinance challenged in Plaintiffs' First Amended Complaint are related, whether such interests are rational, important, or compelling.

2

**ANSWER:** Without waiving their right to supplement this answer, and expressly reserving the right to do so, Defendants state that the legitimate governmental interests to which the challenged Ordinance provisions are related include:

- protecting public safety, health, and welfare;

- limiting or reducing firearm-related violence, injury, and death associated with criminal, accidental, or other firearm use (including possession, carrying and discharge) inside the home;

- limiting or reducing firearm-related violence, injury, and death associated with criminal, accidental, or other firearm use (including possession, carrying, transportation, and discharge) outside the home, including in public;

- limiting or reducing firearm suicide, including among children and minors;

- limiting or reducing firearm-related violence, injury, and death to children and minors, particularly within the home;

- limiting or reducing the risk that interpersonal encounters, whether inside the home or outside the home, including in public, result in firearm-related violence, injury, or death;

- limiting or reducing intimidation by those, especially gang members and criminals, who may possess or carry firearms outside of the home, including in public;

- limiting or reducing threats to law enforcement officers or other first responders from firearm-related violence, injury, and death associated with responding to emergency calls, criminal activity, or otherwise performing their duties, outside a home, including in public;

- limiting or reducing threats to law enforcement officers or other first responders from firearms-related violence, injury, and death associated with responding to emergency

3

calls, crimes in progress, or otherwise performing their duties, at or inside a home;

- limiting or reducing the theft of firearms or the commission of other crimes or injury against those who possess, carry, transport, store, or use firearms, including those who would operate or patronize a firearm store or vendor or a firearm shooting range;

- protecting against deleterious environmental impacts associated with the operation of firearm shooting ranges open to the public;

- limiting or reducing the introduction of firearms into illegal markets or the acquisition of firearms by persons, including criminals, not entitled to possess firearms, whether via theft, illegal trafficking, straw purchases, legitimate purchases, or otherwise;

- limiting or reducing the number of firearms that are possessed unlawfully in Chicago;

- eliminating the burden of regulating firearm stores or vendors, or firearm shooting ranges, that are open to the public;

- limiting or reducing the economic and social costs of firearm-related violence in Chicago;

- any other interest or purpose reflected in the legislative record of the Ordinance.

**INTERROGATORY NO. 2**: Please identify every less restrictive alternative to the challenged provisions of the Ordinance that Defendants considered in order to accomplish the interests identified in response to Interrogatory No. 1.

**ANSWER**: Defendants state that the request is vague, as each decision to enact a particular regulation implicitly, if not explicitly, entailed consideration and rejection of the alternative of not enacting the regulation, with such alternative (i.e., the absence of the regulation) being less restrictive than the enactment of the regulation. Defendants further state that the request is vague because it does not specify whether it encompasses only regulations that the City Council

4

expressly identified and considered as an alternative to another regulation, or whether it also encompasses those regulations that, even if not expressly identified and considered as such, may properly be deemed an alternative to another regulation. Subject to these objections, Defendants further state that, without waiving their right to supplement this answer, and expressly reserving the right to do so, and without purporting to necessarily set forth an exhaustive list, the following un-enacted regulatory options are reflected in the legislative record of the Ordinance:

- Allowing firearms stores and vendors open to the public to operate subject to regulation.

- Requiring firearms owners to possess liability insurance.

- Restricting the number of handguns that may be lawfully possessed to one handgun per qualified applicant per home.

- Imposing heightened penalties on parents of children who gain access to a firearm.

**INTERROGATORY NO. 6**: Please identify the reasons why the City has enacted, put in place, or adheres to any other law, requirement, custom, or practice necessitating or regarding firearms instruction and/or training for any resident of, employee of, agent of, officer of, or visitor to the City of Chicago, including but not limited to the reasons why the City Council enacted the requirement that an applicant for a Chicago Firearms Permit must obtain "an affidavit signed by a firearm instructor certified by the State of Illinois ... attesting that the applicant has completed a firearm safety and training course, which, at a minimum provides one hour of range training."

**ANSWER:** Defendants state that, without waiving their right to supplement this answer, and expressly reserving the right to do so, only the City Council can speak to its reasons for enacting particular legislation, and that such reasons must be found in the Ordinance and its legislative record. Further, the Ordinance's requirement that an applicant for a CFP complete a firearms training course furthers the public safety, health, and welfare by enhancing or ensuring the applicant's awareness of or ability to exercise safe and proper firearms possession, use, handling, and storage. Additionally, requirements that members of the Chicago Police Department

complete firearms training courses or programs further the public safety, health, and welfare by

enhancing or ensuring the member's awareness of or ability to exercise safe and proper firearm

possession, use, handling, and storage, and by enhancing or ensuring the member's ability to

perform the distinct law enforcement functions and duties that the member, by virtue of his or

her status as a member, may be called upon to perform.


Dated: January 25, 2011                                    Respectfully submitted,

                                                           MARA S. GEORGES
                                                           CORPORATION COUNSEL
                                                           CITY OF CHICAGO

                                           BY:    _____
                                                           One of Its Attorneys

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William M. Aguiar
Rebecca Alfert Hirsch
Attorneys for the City of Chicago
Constitutional & Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, IL 60602
(312) 744-7129

6

## CERTIFICATE OF SERVICE

I, Andrew Worseck, an attorney, hereby certify that on this, the 25th day of January,

2011, I caused a copy of **Defendants' Supplemental Response to Plaintiffs' First Set of**

**Interrogatories,** to be served by email and by first-class United States mail, postage prepaid, on:

Charles J. Cooper
David H. Thompson
Jesse Panuccio
Cooper & Kirk, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036


_____
Andrew Worseck