**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ILLINOIS ASSOCATION OF FIREARMS** | ) | |
| **RETAILERS , KENNETH PACHOLSKI,** | ) | |
| **KATHRYN TYLER, and MICHAEL HALL,** | ) | |
| | ) | **No. 10-CV-4184** |
| **Plaintiffs,** | ) | **Judge Edmond Chang** |
| | ) | **Magistrate Judge Geraldine Soat** |
| **v.** | ) | **Brown** |
| | ) | |
| **THE CITY OF CHICAGO and** | ) | |
| **RICHARD M. DALEY, Mayor of the** | ) | |
| **City of Chicago,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS COUNT V.**

The Defendants (hereafter, "the City") have moved to dismiss Count V of the Second

Amended Complaint ("the Complaint") for lack of standing, arguing that, as a matter of law,

there is no "likelihood that the injury" identified in Count V "will be redressed by a favorable

decision." *DH2, Inc. v. SEC*, 422 F.3d 591, 596 (7th Cir. 2005), *cited in* Defendants'

Memorandum of Law in Support of Motion to Dismiss ("City Mem.") at 4. The City is

mistaken, and its motion should therefore be denied.

**INTRODUCTION AND BACKGROUND**

The City expressly predicates its motion on the supposition that the injury from certain

provisions of the City's Responsible Gun Ownership Ordinance ("the Ordinance") identified in

Count V of the Complaint "cannot be redressed" by striking down the Ordinance "because

Illinois state law prohibits Plaintiffs from engaging in the very same conduct." City Mem. 4. We

are told, again and again, that "the Ordinance and Illinois law place the same restrictions on Plaintiffs." City Mem. 6; *see also id.* at 4 ("Illinois law prohibits the carrying or possession of loaded, operable firearms in one's vehicle or on one's person in a manner virtually identical to the City's Ordinance and, therefore, acts as an independent bar to the Plaintiffs' requested relief."); *id.* at 4-5 (invalidation of the Ordinance "would afford Plaintiffs no real relief because Illinois law would continue to ban the conduct."); *id.* at 7 (Plaintiffs' carriage of firearms "would still be prohibited … under existing, enforceable Illinois laws which they have not independently challenged."). But the City's representations about its own Ordinance and about Illinois state law are inaccurate, and its motion to dismiss therefore must fail.

It is revealing that, although the City repeatedly asserts that the restrictions on gun possession and carriage imposed by the Ordinance and Illinois firearms law are "virtually identical," the City nowhere quotes even a single word of either the Ordinance or the supposedly "identical" State statute, 720 ILCS § 5/24-1(a). Instead, the City offers only its own summary descriptions of the municipal and state laws and does not bother to discuss their actual text. (Copies of these laws are attached as Exhibits A and B for the Court's convenience). Since the City's motion to dismiss is expressly predicated on the supposed identity of these two laws, examination of their actual text is both illuminating and essential – indeed, it disposes of the City's motion.

In the wake of the Supreme Court's decisions affirming an individual right to keep and bear arms for self-defense in *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), the City responded by "design[ing] the Ordinance to negate the Supreme Court's vindication of Second Amendment rights in *McDonald*, to be as 'restrictive a tool as possible' for suppressing gun ownership, and to go

'farther than anyone else ever has' in restricting the exercise of the right to keep and bear arms." Second Amended Complaint ¶ 26. *See also id.* at ¶ 18 ("In describing the new Ordinance on July 1, 2010, Chicago Corporation Counsel Mara Georges lauded its bans and restrictions and concluded that 'we've gone farther than anyone else ever has.' ").[1]  Indeed, the City Council expressly found that it had to make its new Ordinance go well beyond the restrictions imposed by Illinois state law:  "Whereas, Although the State of Illinois has already enacted several laws to regulate the sale and possession of firearms, these laws are not sufficient to protect the City from the unique and heightened risk of firearms violence, especially handgun violence." Ordinance (Exh. A at 1).

To that end, the City enacted the new provisions that are challenged in Count V of the Complaint, including § 8-20-020(a), which outlaws carriage or possession of "a handgun, except when in the person's home," and § 8-20-010, which restricts the definition of "home" to the "inside of a person's dwelling," and excludes "(i) any garage, including an attached garage, on the lot," and "(ii) any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas."  (Exh. A at 8, 6).  Section 8-20-010 also restricts "lawful transportation" of a firearm to those circumstances where "the firearm is: (i) broken down in a nonfunctioning state; (ii) not immediately accessible; *and* (iii) unloaded and in a firearm case." (Exh. A at 6) (emphasis added).  Note that these restrictions are *cumulative* – transportation must comply with *all three requirements.*  Section 8-20-030(a) outlaws carriage or possession of "a long gun, except when in the person's home or fixed place of business." (Exh. A at 9).  Thus handgun possession is allowed inside the home, but not in one's fixed place of business.  Finally, to back up these limits on gun possession and carriage, § 8-20-180(c) restricts the scope of the

---

[1] The City has not disputed these allegations in the Complaint, and in any event those allegations must be presumed to be true in resolving the City's motion to dismiss.

registration certificate mandated by the Ordinance for every firearm to the single "address on the registration certificate. Except in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate." (Exh. A at 17).

To enforce these new restrictions, which the City avowedly designed to go beyond Illinois state law, the City established its own enforcement regime, including an administrative system for denying and revoking registration certificates, *see* §§ 8-20-190, 8-20-200, 8-20-205, 8-20-210, and authorization for the municipal hearing system to adjudicate implementation of the Ordinance, *see* § 2-14-190. (Exh. A at 3, 18-21). The Ordinance also creates new penalties for this enforcement regime, which include fines and prison terms, seizure of firearms, and a Gun Offender Registration system. *See* §§ 8-20-250, 8-20-300, 8-26-020, 8-26-100 (Exh. A at 22-23, 27-29).

The State of Illinois's response in the wake of the Supreme Court's vindication of Second Amendment rights in *Heller* was very different. In 2009, Illinois *relaxed* its restrictions on firearms by amending § 720 ILCS 5/24-1(a)(4) to authorize possession and carriage of *any* type of firearm, including "any pistol" or "revolver," in a person's "legal dwelling" or "on the land or in the legal dwelling of another person as an invitee with that person's permission." (Exh. B at 1). *See* P.A. 96-742 (effective Aug. 25, 2009).[2] Thus, Illinois law expressly authorizes possession and, indeed, concealed carrying of any firearm, including a handgun, so long as the person is "on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission." § 5/24-1(a)(4) (Exh. B at 1). Inexplicably, this is precisely the state law provision that the City

---

[2] The same Illinois legislative amendment added the identical language to § 5/24-1(a)(10) as well (Exh. B at 2).

cites as being "identical" to its own, far more restrictive Ordinance.  City Mem. 4.  Furthermore, the Illinois restrictions do "not apply to or affect transportation of weapons that meet *one* of the following conditions: (i) are broken down in a non-functioning state; *or* (ii) are not immediately accessible; *or* (iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container …." § 5/24-1(a)(4) (Exh. B at 1) (emphasis added).[3]

## ARGUMENT

## INVALIDATION OF THE ORDINANCE PROVISIONS CHALLENGED IN COUNT V WOULD BE LIKELY TO REDRESS PLAINTIFFS' INJURIES.

**I.** **ANY OVERLAP BETWEEN THE CITY'S ORDINANCE AND ILLINOIS'S § 5/24-1(a)(4) DOES NOT DEFEAT REDRESSABILITY BECAUSE COUNT V OF THE COMPLAINT WOULD NONETHELESS FURNISH THE PLAINTIFFS WITH COMPLETE RELIEF FROM THOSE PROVISIONS OF THE ORDINANCE THAT RESTRICT FIREARMS CARRIAGE AND POSSESSION MORE SEVERELY THAN THE ILLINOIS STATUTE.**

The City relies on *Lockridge d/b/a Lockridge Outdoor Advertising v. Village of Alsip*, 2005 U.S. Dist. LEXIS 7600 (N.D.Ill. April 18, 2005), and urges this Court to reach the same result here.  City Mem. 5.  Plaintiffs concur in this recommendation because, regardless how the Court resolves the questions presented in Part II *infra*, *Lockridge* illustrates why redressability is *not* negated when an unchallenged statute proffered by a defendant overlaps partly – *but not completely* – with the law that plaintiffs have challenged.  Plaintiff Lockridge, an outdoor advertising company, sued the Village of Alsip when the latter invoked a municipal sign ordinance as the basis for denying plaintiff's eighteen applications for billboard permits.  *Id*. at *1-2.  Citing the Seventh Circuit's decision in *Harp Advertising v. Village of Chicago Ridge*, 9 F.3d 1290 (7th Cir. 1993) (the same case that the City argues is controlling here (City Mem. 5)),

---

[3] Plaintiffs do not accept that the Illinois restrictions on firearms carriage comport with the understanding of the Second Amendment adopted by the Supreme Court, but for present purposes the point is that Illinois law is different from, and less restrictive than, the City's Ordinance.

the Village of Alsip argued that the relief sought by Lockridge – invalidation of the village sign

ordinance – would not redress his injury because he had not also challenged a village zoning

ordinance that "would serve to prohibit Lockridge's proposed signs even if the court provided

Lockridge with all the relief he seeks by declaring the [sign ordinance] entirely invalid." *Id.* at

*3-4.  This is, of course, the same argument that the City of Chicago makes here, invoking

Illinois § 5/24-1(a)(4).

The district court in *Lockridge* rejected this redressability argument because the

defendant Village (just like the City of Chicago here) had mischaracterized its own ordinance.

The sign-height restrictions in the zoning ordinance that plaintiff Lockridge had not challenged

would indeed have blocked some of Lockridge's sign applications – *but not all of them.  Id*. at

*4-5.  As to those sign applications, the court not only held that Lockridge had standing to

challenge the sign ordinance, it also awarded Lockridge summary judgment on its First

Amendment challenge as to several of the sign applications, *id*. at *11-12, and further held that

Lockridge was entitled to both damages under 42 U.S.C. § 1983 and attorneys' fees under 42

U.S.C. § 1988.  *Id*. at *17.

Precisely the same reasoning dictates precisely the same result in this case.  The Illinois

statute prohibits *some* of the firearms possession and carriage that is outlawed by the City's

Ordinance, *but not all of it*, and redressability is therefore achieved (at a minimum) with respect

to several aspects of the Ordinance that are challenged in Count V of the Complaint.  Despite the

City's repeated assertions that the two laws are "identical," there are in fact several significant

differences between them.

*First*, the Ordinance outlaws the carrying or possession of "a handgun, except when in

the person's home," § 8-20-020(a) (Exh. A at 8), and limits the definition of "home" to the

"inside of a person's dwelling," which expressly excludes "any garage, including an attached garage, on the lot," and "any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas." § 8-20-010 (Exh. A at 6). The Illinois statute, in contrast, authorizes possession and carriage of *any* type of firearm, including "any pistol" or "revolver," not only in a person's "own abode" or "legal dwelling," but also anywhere "on his land," § 720 ILCS 5/24-1(a)(4) & (10) (Exh. B at 1-2). Thus the Illinois law not only permits firearms carriage and possession in all the garages, porches, outside buildings, and curtilage areas that the City's Ordinance excludes, it also includes any place, indoors or out, on the individual's own land. *See, e.g., People v. Chmilenko,* 44 Ill. App. 3d 1060, 1061-63 (1st Dist. 1976) (reversing conviction under this statute where defendant, confronting an intruder, brandished a handgun in defendant's garage, on his front porch, on his front steps, and in his front yard, because "the State's evidence did not prove that defendant was not on his land," where gun possession was expressly allowed by the statute).[4]

*Second*, the Ordinance outlaws any possession or carrying of a handgun in a person's "fixed place of business." *See* § 8-20-020(a) and § 8-20-030(a) (Exh. A at 8-9) (permitting only long arms in place of business). The Illinois statute, however, expressly authorizes carriage and possession of a handgun in a person's "fixed place of business." § 5/24-1(a)(4) & (10) (Exh. B at 1-2).

---

[4] The authorizations for firearms carriage in the Illinois statute are material elements of any criminal offense prosecuted under that statute and therefore the state must prove them. *See, e.g., Chmilenko,* 44 Ill. App. 3d at 1062; *People v. Navarrete,* 258 Ill. App. 3d 39, 44 (1st Dist. 1994) (conviction for unlawful use of weapon based on a statute precluding possession of a revolver other than on defendant's own land or abode or fixed place of business requires proof that defendant was not on his own land or in his fixed place of business); *People v. Anderson,* 117 Ill. App. 3d 806, 808 (1st Dist. 1983) (where the state's evidence established that the defendant was not in her own abode, but no evidence was introduced which proved that defendant was not on her own land or fixed place of business, the evidence was insufficient to sustain a conviction).

*Third*, the Ordinance restricts the possession or carriage of a handgun to one's "home," § 8-20-020(a), and limits said "home" to the single "address on the registration certificate," § 8-20-180(c) (Exh. A at 8, 17).[5]  But the Illinois statute authorizes an individual to carry a handgun not only in "his legal dwelling," but also "in his own abode." § 5/24-1(a)(4) & (10) (Exh. B at 1-2). The use of both terms indicates that Illinois law authorizes carrying a gun in a much wider range of premises than one's actual "home."  "Abode" has been read to include, at the very least, not only one's own usual residence, but also another individual's apartment where one lived "on a part time basis, and kept his clothes at that apartment." *People v. McClure*, 43 Ill. App. 3d 1059, 1062 (1st Dist. 1976).  *See also People v. Price*, 375 Ill. App. 3d 684, 695 (1st Dist. 2007) ("an individual may have more than one abode").  And "dwelling" has been read by the courts as broader still:  "the legislative definition of 'dwelling' in the Criminal Code sweeps so broadly as to include any possible location fit for human habitation." *People v. Price*, 375 Ill. App. 3d at 693.  *See* 720 ILCS § 5/2-6 (" 'dwelling' means a building or portion thereof, a tent, a vehicle, or other enclosed space which is used or intended for use as a human habitation, home, or residence.").[6]

---

[5] "A registration certificate shall only be valid for the address on the registration certificate. Except in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate." § 8-20-180(c) (Exh. A at 17).

[6] In *People v. Taylor*, 28 Ill. App. 3d 186, 187-88 (1st Dist. 1975), the court ruled that "abode" as used in this firearms statute was intended by the legislature to exempt gun carriage by a person not merely in his own home, but also "in his overnight living quarters" such as a girlfriend's apartment where he kept some clothes.  In *People v. Price*, 375 Ill. App. 3d 684 (1st Dist. 2007), the court criticized *Taylor*'s broad reading of "abode" and limited *Taylor* to its facts, holding that "abode" did not encompass defendant Price's sister's home, where the defendant was merely "an overnight guest." *Id.* at 685.  *See also id.* at 688-93.  However, *Price* contrasted its narrow reading of "abode" with the expansive "legislative definition of 'dwelling,' " which "sweeps so broadly as to include any possible location fit for human habitation." *Id.* at 693.  At the time of the *Price* decision in 2007, § 5/24-1 authorized gun carriage and possession in one's "abode,"

*Fourth*, the Ordinance restricts the possession or carriage of a handgun to one's own "home," § 8-20-020(a) (Exh. A at 8), while the Illinois statute authorizes an individual to carry a handgun or any other firearm "on the land or in the legal dwelling of another person as an invitee with that person's permission." § 720 ILCS 5/24-1(a)(4) (Exh. B at 1).

*Fifth*, the Ordinance restricts "lawful transportation" of a firearm to those circumstances where "the firearm is: (i) broken down in a nonfunctioning state; (ii) not immediately accessible; *and* (iii) unloaded and in a firearms case," § 8-20-010 (Exh. A at 6) (emphasis added), with the three requirements being *cumulative.* Illinois law phrases its transportation restrictions in the *alternative*, so that transportation is permitted so long as the firearms "meet one of the following conditions: (i) are broken down in a non-functioning state; or (ii) are not immediately accessible; *or* (iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card." § 5/24-1(a)(4) & (10) (Exh. B at 1-2) (emphasis added).[7]

Thus the carriage restrictions of the Ordinance and Illinois state law are by no means the same, and Illinois law allows for significantly wider possession and carriage of firearms,

---

but made no reference to "dwelling." Thereafter, in 2009, the legislature amended the statute to authorize carrying a gun in one's "legal dwelling" as well. *See* P.A. 96-742 (effective Aug. 25, 2009). Therefore, under the reasoning of *Price*, although the statutory term "abode" is now more narrowly defined, the statute now also authorizes firearms carry in one's "dwelling," a term that *Price* read very broadly indeed – certainly more broadly than the City Ordinance's narrow restriction of gun possession to the interior of one's home. 375 Ill. App. 3d at 693. Moreover, possession or carriage of a firearm is permitted by Illinois law in dwellings and on lands that are not one's own "dwelling" or "abode," so long as one is an invitee on said premises and has permission from the owner to carry or possess said firearm. § 5/24-1(a)(4) & (10) (Exh. B at 1-2).

[7] In addition, Illinois law is more flexible as to the type of container in which a firearm may be lawfully transported. Whereas the Ordinance mandates use of a "firearm case," § 8-20-010 (Exh. A at 6), Illinois law permits use of "a case, firearm carrying box, shipping box, or other container." § 5/24-1(a)(4) & (10) (Exh. B at 1-2).

including handguns. In these respects, Illinois state law would not impair the value of the relief Plaintiffs stand to gain if they prevail on Count V of the Complaint. Because relief under Count V is likely to redress, at least in significant part, the injuries complained of, Plaintiffs have standing to bring that cause of action.

## II. A PLAINTIFF SATISFIES THE REDRESSABILITY REQUIREMENT WHEN HE SHOWS THAT A FAVORABLE DECISION WILL RELIEVE A DISCRETE INJURY TO HIMSELF, EVEN IF SAID REMEDY WOULD NOT RELIEVE HIS EVERY INJURY.

Even if we assume *arguendo* that, contrary to fact, the Illinois statute overlaps perfectly and completely with the City's Ordinance, and forbids all of the firearms carriage that the City Ordinance forbids, a decision striking down the Ordinance would nonetheless provide some relief to the Plaintiffs sufficient to confer standing. The City contends that relief under Count V of the Complaint would not redress Plaintiffs' injuries because, even if those provisions of the Ordinance were to be struck down, Plaintiffs would remain at risk of prosecution for violation of Illinois's separate firearms-carry restrictions, which are not challenged in this lawsuit. City Mem. 4-5. But it is undisputed – indeed, the City necessarily assumes *arguendo* – that relief under Count V would at least shield Plaintiffs from the City's Ordinance and the City's own administrative enforcement regime, with its special penalties, seizure provisions, and Gun Offender Registration regime – all of which the City avowedly designed to be separate from, and to go farther than, the State of Illinois's firearms regulations. That elimination of a substantial part of the legal sanctions to which Plaintiffs would be subject – that diminution of the risk of enforcement – is sufficient to confer standing under the doctrine established by the Supreme Court of the United States.

The gun-regulation philosophies and enforcement policies of the State of Illinois diverge from those of the City of Chicago. Indeed, concerned that local governments were abrogating

the gun-carry rights provided under state law, Illinois has enacted a law providing a complete "affirmative defense" to anyone prosecuted by a city for violating "a municipal ordinance that prohibits, regulates or restricts the private ownership of firearms if the individual who is charged with the violation used the firearm in an act of self-defense or defense of another … when on his or her land or in his or her abode or fixed place of business." § 720 ILCS 5/24-10.   The Illinois Legislature enacted this statute specifically to temper the enforcement of municipal firearms regulations that are more restrictive than the State's own laws, which expressly authorize carriage of any kind of firearm, even a handgun, anywhere on one's own land, in one's abode, or in one's place of business. *See People v. Price*, 375 Ill. App. 3d at 693.

The redressability element of the Supreme Court's standing doctrine does not require that any and all of the risk of injury to which a plaintiff is subject be entirely eliminated; it is enough that the relief sought would "*reduce*" the injury complained of by the plaintiff. *Massachusetts v. EPA*, 549 U.S. 497, 525 (2007) (emphasis in original). *See also id.* at 526 (redressability is satisfied if the risk of injury pleaded by plaintiffs "would be reduced to some extent if petitioners received the relief they seek.").   Even if a risk of prosecution under Illinois law for carrying or possessing a firearm remained once the City's Ordinance were struck down, the discrete risks and penalties presented by the Ordinance would nonetheless be alleviated.   "In other words, a plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself.   He need not show that a favorable decision will relieve his *every* injury." *Larson v. Valente,* 456 U.S. 228, 244 n.15 (1982) (emphasis in original). *See also Sierra Club v. Franklin County Power*, 546 F.3d 918, 927 (7th Cir. 2008) ("A decision in favor of Sierra Club, therefore, would at least redress McKasson's injury during that time. . . . McKasson need not show that a favorable decision will relieve her every injury.") (citing *Massachusetts v.*

*EPA,* 549 U.S. at 525); *Connecticut v. American Electric Power Co.*, 582 F.3d 309, 348 (2d Cir.

2009) ("it was sufficient for the redressability inquiry to show that the requested remedy would

'*slow* or *reduce* [the injury].' In other words, that courts could provide some measure of relief

would suffice to show redressability, and the proposed remedy need not address or prevent all

harm from a variety of other sources.") (quoting *Massachusetts v. EPA,* 549 U.S. at 525 (original

emphasis by the Supreme Court)); *Tozzi v. Department of HHS,* 271 F.3d 301, 310 (D.C. Cir.

2001) (redressability met because relief sought "would redress at least some of [plaintiff]'s

economic injury.").

The City's supposed authorities are not to the contrary. The City invokes a series of First

Amendment cases involving challenges to municipal billboard restrictions where the courts held

that redressability had not been met because the plaintiffs' applications for sign permits could in

any event have been denied by the municipality under some other unchallenged municipal law

that was not subject to the same First Amendment objection. *See Harp Advertising v. Village of

Chicago Ridge*, 9 F.3d at 1291-92; *Lockridge v. Village of Alsip*, 2005 U.S. Dist. LEXIS 7600 at

*2-4; *Midwest Media Property v. Symmes Township*, 503 F.3d 456, 461-62 (6th Cir. 2007) (all

cited in City Mem. 5-6). In particular, *Harp*, which the City contends is controlling (City Mem.

5), is distinguishable from the instant case.

Plaintiff Harp challenged only the village zoning ordinance, and not a separate village

sign ordinance that was not subject to the same First Amendment challenge, and that would have

blocked all of the plaintiff's sign-permit applications in any event. *See* 9 F.3d at 1291.

Redressability was held to be lacking in those circumstances because "the village could block the

sign simply by enforcing another, valid, ordinance already on the books." *Id*. at 1292. In

contrast, here the other law on which the City would rely to defeat redressability is not a City

ordinance subject to the particular administrative enforcement scheme of penalties enacted by the City, but a statute enacted by the State of Illinois. The laws were enacted by different governments, with different penalties and different enforcement policies. Indeed, the City enacted the Ordinance precisely because it deemed the State's laws and enforcement regime inadequate. Striking down the City's Ordinance would thus relieve the Plaintiffs here of the City's restrictions and vigorous enforcement efforts, and it is the City, not the State of Illinois, that has, in the wake of the *McDonald* decision concerning the City's prior ordinance, been so eager to condemn the Supreme Court's ruling (*see* Complaint ¶¶ 18-21, 28) and to enact new restrictions on the Second Amendment right – a constitutional right that the City was rebuked by the Supreme Court for disregarding and impermissibly treating as second-class. *See McDonald*, 130 S. Ct. at 3043-44, 3049. As explained above, to satisfy redressability, Plaintiffs *need not* show that the requested remedy would relieve their "*every* injury" or "address or prevent all harm from a variety of sources."

*Harp* cited, and the City here relies upon, a passage from the Supreme Court's decision in *Renne v. Geary*, 501 U.S. 312 (1991). *Harp*, 9 F.3d at 1291; City Mem. 6-7. The City obliquely concedes, as it must, that the portion of *Renne* on which it relies is dictum (the complaint there was dismissed not for want of redressability, but because it was unripe). In fact, the passage that the City relies upon was not even dictum in an opinion of the Court, but merely dictum in a plurality opinion (Justice Scalia refused to join the plurality's comments on redressability in Part II.B. of the opinion). *See Renne*, 501 U.S. at 314, 319. Furthermore, the City omits from its block quotation the immediately following sentences in which the plurality explained its reasoning on redressability. In that omitted passage, Justice Kennedy explained that the other, unchallenged statute might defeat any relief for the plaintiffs because "[o]verlapping enactments

13

can be designed to further *differing state interests*, and *invalidation of one may not impugn the validity of another*." *Id*. at 319 (emphasis added). The necessary implication is that, (i) if both laws further the *same* interests and (ii) if the constitutional principles invalidating one also "impugn" the other, then redressability has been met. Under this reasoning, the key to determining whether another, unchallenged statute defeats redressability is whether the constitutional arguments that have been raised against the challenged law would, if vindicated, likewise "impugn" the constitutionality of the other, unchallenged law. This scenario did not exist in *Harp*, because the First Amendment arguments that defeated the challenged municipal zoning ordinance could not "impugn" the town's other law limiting the size of billboards.

In contrast, here it is undisputed that both the challenged City Ordinance and the Illinois state statute that the City invokes, § 5/24-1(a)(4) (Exh. B at 1), further precisely the same government interest in reducing firearms injuries, so the first condition of the *Renne* dictum is not met. Moreover, the City does not even try to argue that the Illinois carry restrictions are not "impugned" by the very same Second Amendment principles that are invoked in Count V of the Complaint to challenge the City's Ordinance, so the second condition of the *Renne* dictum is similarly unmet. As a result, the existence of the State of Illinois's firearms regulations, which the City itself has declared inadequate and has supplemented with a distinct enforcement regime with separate penalties, does not defeat the relief that Plaintiffs would gain from the invalidation of the City's Ordinance even if we assume *arguendo* – and contrary to fact – that the Illinois statute prohibits the full range of firearms carriage outlawed by the City's Ordinance.

## **CONCLUSION**

For the foregoing reasons, the City's motion to dismiss should be denied.

Respectfully submitted,


By: /s/Charles J. Cooper

Stephen Kolodziej                          Charles J. Cooper*
Atty. ID # 6216375                         David H. Thompson*
BRENNER FORD MONROE & SCOTT LTD.
33 N. Dearborn St., Suite 300              COOPER & KIRK, PLLC
Chicago, IL  60602                         1523 New Hampshire Ave., NW
Tel: (312) 781-1970                        Washington, D.C.  20036
Fax: (312)781-9202                         Tel: (202) 220-9600
Email: skolodziej@brennerlawfirm.com       Fax: (202) 220-9601
                                           Email: ccooper@cooperkirk.com


                                           Brian S. Koukoutchos*
                                           28 Eagle Trace
                                           Mandeville, LA  70471
                                           Tel: (985) 626-5052
                                           bkoukoutchos@gmail.com

                                           *Admitted *pro hac vice*.

                                           *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Charles J. Cooper, hereby certify that on this 3rd day of March, 2011, I caused a copy

of the foregoing to be served by electronic filing on:

> Michael A. Forti
> Andrew W. Worseck
> Mardell Nereim
> Rebecca Alfert Hirsch
> William Macy Aguiar
> City of Chicago, Department of Law
> Constitutional and Commercial Litigation Division
> 30 N. LaSalle St., Suite 1230
> Chicago, IL 60602

/s/Charles J. Cooper