

**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

February 28, 2011

Christian D. Ambler
Stone & Johnson
200 East Randolph Street, 24th Floor
Chicago, IL 60601
*Delivered via U.S. Mail and email*

**Re: Benson v. City of Chicago, 10 C 4184**

Dear Mr. Ambler:

    I write in response to your February 22 letter objecting to the subpoenas issued to Mr. Campion and his business, Camco Sales & Service; Mr. Kole and his business, Ghost Industries; and Mr. Norton.

    *First*, you object to Document Request Nos. 1 & 3 of the Campion, Camco, and Norton subpoenas, and Deposition Topic Nos. 1 & 3 of the Camco subpoena. You object to the extent that these requests seek "historical information concerning the witnesses' purchase and sale of firearms, including such details as prices, types of firearms sold, marketing and sales figures." You further object to their seeking "geographical information available for customer base (including City of Chicago residents) who purchase firearms or receive firearms training." You assert that these requests: (1) seek irrelevant information to the extent that they seek "historical sales and marketing information" in locations outside Chicago; (2) pose undue burden to the extent that they require the gathering of "all sales information going back indefinitely;" and (3) "could unnecessarily jeopardize" the recipients' "proprietary interest" in "their sales data and customer bases."

    1.    We believe that your clients' historical sales and marketing information in locations other than Chicago is relevant to the injury allegedly caused to ILAFR members. The ILAFR is a plaintiff and asserts that its members – such as your clients – would operate firearms stores and ranges in Chicago "but for" the Ordinance. We are entitled to test that proposition by investigating whether it really is the Ordinance that causes the inability to operate in Chicago, or whether other factors, such as the economics of operating a firearms business in Chicago, are prohibitive. Historical marketing, sales, and customer base information in locations outside Chicago is relevant to, or may lead to the discovery of admissible evidence concerning, that question. This is because whether and how your clients have operated viable businesses outside Chicago bears upon whether and how they would be able to do so in Chicago. Any business, before expanding into a new market, would examine its current







**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

sales and marketing practices and customer base to see whether expansion is feasible and sensible. The discovery we seek goes precisely to these questions. Similarly, as you note, Plaintiffs may call Mr. Norton and Mr. Campion "to testify as to their business intentions and prospects" for operating in Chicago should the bans be invalidated. We are entitled to test whether these intentions and prospects are genuine and well-founded.

Further, wholly aside from matters put as issue by ILAFR's allegations, the requested material is relevant to whether Chicago's Ordinance impermissibly burdens the ability of Chicago residents to buy firearms or obtain training outside Chicago. The types, numbers, and prices of firearms sold by your clients outside of Chicago in the past, particularly to Chicago residents, bears upon that question.

2. As to your claim of undue burden, while reserving all rights to seek further or additional discovery encompassed by our requests, we are happy to consider an initial streamlined production that may obviate the need for further discovery. For instance, we are willing to accept aggregate sales information (*i.e.*, on a monthly or annual basis) by type of firearm in lieu of the production of individual transaction records. We are also willing to limit customer information to the customer's city or zip code and forgo customer names, street addresses, or other personal information. And, as to the types and prices of firearms sold, we are willing to limit this to catalogues, pricing sheets, or similar documents.

3. As to your claim that the requests implicate your client's proprietary information, this is difficult for us to assess on the existing record. Your letter devotes only a single speculative sentence to the matter. In any event, the representations in the preceding paragraph would seem to alleviate your concern.

*Second*, you ask that we withdraw the subpoenas to Mr. Kole and his business, Ghost Industries (collectively, "Kole"). You argue that Kole (unlike Mssrs. Campion and Norton) is neither an ILAFR member nor a witness from whom Plaintiffs will seek testimony or other evidence. You also contend that Kole has "no connection to this litigation" because he does not know any ILAFR members or potential witnesses, and because he only recently received his federal firearms license ("FFL") and has no firearms sales history.

Nonetheless, discovery of Kole is likely to lead to relevant information. Indeed, as you note, Kole was previously identified by Plaintiffs as an ILAFR member and as a person whom Plaintiffs may call at trial. It was only after Defendants subpoenaed Kole that Plaintiffs asserted that Kole is "no longer" a







**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

member of ILAFR and removed Kole from their witness list. Regardless of whether Kole is currently an ILAFR member, his prior identification in this case as such, his Chicago residency, and his recent receipt of a FFL suggest that he intends, or has intended, to open a firearms store or range in Chicago. As such, he likely possesses information concerning the steps attendant to, and the viability of, such operations in Chicago. As discussed above, these matter are relevant to Plaintiffs' claim that "but for" the Ordinance, firearms dealers and range operators would be able to operate businesses in Chicago. Accordingly, we cannot withdraw the subpoenas to Kole.

Please let me know if you have any questions. Thank you.

Sincerely,

Andrew Worseck
312-744-7129

cc: Pete Patterson





3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRETT BENSON, RAYMOND SLEDGE, KENNETH PACHOLSKI, KATHRYN TYLER, MICHAEL HALL SR., RICK PERE, and the ILLINOIS ASSOCIATION OF FIREARMS RETAILERS,<br><br>Plaintiffs<br><br>vs.<br><br>THE CITY OF CHICAGO and RICHARD M. DALEY, Mayor of the City of Chicago,<br><br>Defendants | No. 10 CV 4184<br><br>Judge Edmond E. Chang<br><br>Magistrate Judge Geraldine Soat Brown |

## MOTION TO QUASH SUBPOENAS
## SERVED ON TONY KOLE AND GHOST INDUSTRIES, LLC

The City of Chicago ("the City") has served subpoenas on Tony Kole (" Mr. Kole") and his business, Ghost Industries, LLC ("Ghost Industries"), who are not parties to this litigation. Mr. Kole and Ghost Industries hereby move to quash the subpoena pursuant to Fed. R. Civ. P. 45(c)(3).

### STATEMENT PURSUANT TO LOCAL RULE 37.2

A consultation took place by telephone between the attorney for Mr. Kole and Ghost Industries, Christian D. Ambler, and the attorney for the City, Andrew Worseck, on March 4, 2011 to attempt in good faith to resolve the dispute at issue herein. This consultation followed written communications between those attorneys dated February

22 and February 28, 2011. Notwithstanding these efforts, the parties hereto were unable to reach an agreement.

## BACKGROUND

The plaintiffs' Second Amended Complaint seeks a declaratory judgment that some or all of the City's municipal firearms ordinance is unconstitutional under the Second and Fourteenth Amendments of the United States Constitution and otherwise violate 42 U.S.C. § 1983. *Second Amended Complaint for Declaratory Judgment and Injunctive Relief (Doc. 80), at pages 16-17.* Mr. Kole is a federally licensed firearms dealer who operates his business as Ghost Industries in Norridge, Illinois. *See Affidavit of Tony Kole in Support of Motion to Quash ("Kole Affidavit"), attached hereto as Exhibit 1, at ¶ __.* Neither Mr. Kole nor Ghost Industries are plaintiffs to this litigation. Nonetheless, the City has subpoenaed both Mr. Kole and Ghost Industries for documents and deposition testimony. *See subpoenas issued to Tony Kole and Ghost Industries, LLC, attached hereto as Exhibits 2 and 3, respectively.* Specifically, the City's subpoenas seek information concerning Mr. Kole's and Ghost Industries' historical firearms sales, provision of training courses, customer data, membership in the Illinois Association of Firearm Retailers ("ILAFR"), communications with the ILAFR concerning this litigation, and business and marketing plans for selling firearms or operating shooting ranges in the City if the Ordinance is found unconstitutional. *Id.*

However, neither Mr. Kole nor Ghost Industries possess any of the information the City seeks in its subpoenas. Mr. Kole only formed Ghost Industries in July of 2010, and he only obtained his federal firearms license in January of 2011. *See Kole Affidavit,*

*Exhibit 1, at ¶ __.* Historical sales and customer information for Mr. Kole and Ghost Industries is limited to only two sales made in the last 14 days to out-of-state buyers. *Id.* Also, their business does not include the operation of any shooting ranges or the provision of training courses. *Id, at ¶ __.*

In their interrogatory answers, the plaintiffs identified Mr. Kole as a member of the Illinois Association of Firearm Retailers ("ILAFR"), which is one of the plaintiffs, and as a witness who may be called to testify at trial. However, Mr. Kole is no longer a member of the ILAFR *(Id., at ¶ __),* and the plaintiffs have since amended their interrogatory answers to delete Mr. Kole from their list of ILAFR members and to delete Mr. Kole and Ghost Industries from their list of potential witnesses. *Letter from Jesse Panuccio to Andrew Worseck, dated December 29, 2010, attached hereto as Exhibit 4.* Thus, neither Mr. Kole nor Ghost Industries are currently listed by any party as potential witnesses at trial. Mr. Kole and Ghost Industries have no documents relating to his past membership in the ILAFR, and they have no documents relating to communications with the ILAFR about this litigation. *See Kole Affidavit, Exhibit 1, at ¶ __.* Mr. Kole does not know and to his knowledge has never met any of the ILAFR members or any of the plaintiffs in this case, and he has no knowledge of their plans and intentions should the City's ordinance be invalidated. *Id., at ¶ __.*

With respect to his own plans, Mr. Kole has not prepared a business plan for his intended operations in the City if the ordinance is found unconstitutional. *Id., at ¶ __.* He has not made or commissioned the preparation of any sales or profit projections, performed any market or customer studies, evaluated costs, analyzed potential

locations or considered contracts or leases associated with any possible operation in Chicago. *Id., at* ¶ __. Accordingly, neither Mr. Kole nor Ghost Industries have any documents relating to these subjects. In short, Mr. Kole and Ghost Industries have not taken any steps toward the opening of a business in Chicago should the forearm sales ban be lifted.

## ARGUMENT

### THE SUBPOENA MUST BE QUASHED BECAUSE IT SEEKS IRRELEVANT INFORMATION FROM A NON-PARTY AND IS UNDULY BURDENSOME.

A. <u>The Legal Standard.</u>

Rule 45 provides that an issuing court "*must* quash" a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv) (emphasis added). The Advisory Committee Notes to Rule 45 explain that it was promulgated to "provide[] protection against undue impositions on nonparties." If such a burden is present, the court has no discretion: "Rule 45 *mandates* that the court from which the subpoena was issued *must* '*quash* or modify the subpoena.' " *Perez v. City of Chicago*, No. 02-1969, 2004 U.S. Dist. LEXIS 7415, at *13 (N.D. Ill. Apr. 28, 2004) (emphasis added).

Factors to be considered in the undue-burden inquiry include "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are requested, and the burden imposed." *Wi-Lan, Inc. v. LG Elecs., USA, Inc.*, No. 10-7721, 2011 U.S. Dist. LEXIS 4606, at *5 (N.D. Ill. Jan. 18, 2011) (quotation marks and citations omitted). Pertinent considerations include "the likelihood that compliance will result in production of the

information, whether the discovery is unreasonably cumulative or duplicative, whether the information sought is readily obtainable from another, more convenient, less burdensome (but equally reliable) source, and whether the burden of the proposed discovery outweighs its likely benefit." *Mosely v. City of Chicago*, 252 F.R.D. 421, 427 (N.D. Ill. 2008).

Of particular significance is whether "the subpoenaed party is a non-party." *Wi-Lan*, 2011 U.S. Dist. LEXIS 4606, at *6. As this Court recently explained, "[i]t is significant that Mr. deGrasse [the subject of a subpoena] is not a party. In keeping with the text and purpose of Rule 45(c)(3)(A), it has been consistently held that 'non-party status' is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue. . . . It is one thing to subject *parties* to the trials and tribulations of discovery – rightly regarded as 'the bane of modern litigation,' . . . – but Mr. deGrasse doesn't have a horse in this race." *Robinson v. Morgan Stanley*, No. 06-5158, 2010 U.S. Dist. LEXIS 25073, at *7-8 (N.D. Ill. Mar. 17, 2010). *See also In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, No. 08-402, 2008 U.S. Dist. LEXIS 21098, at *4 (N.D. Ill. Mar. 14, 2008) ("The Journals' non-party status is a significant factor to be considered in determining whether the burden imposed by the subpoenas is undue, but it is not, in itself, dispositive."); *United States ex rel. Tyson v. Amerigroup Ill., Inc.*, No. 02-6074, 2005 U.S. Dist. LEXIS 24929, at *14 (N.D. Ill. Oct. 21, 2005) (" 'non-party status' is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue").

When the subpoenaed individual is not a party to the lawsuit, the ability of the requesting party to obtain the requested information from an opposing party's witnesses or by other means is sufficient grounds for quashing the subpoena served on the non-party. *See, e.g., Perez v. City of Chicago*, 2004 U.S. Dist. LEXIS 7415, at *13-14 (quashing subpoena City had served on non-party and explaining that there were other ways in which the City could obtain the same or similar information); *Peoria Day Surgery Ctr. v. OSF Healthcare Sys.*, No. 06-1236, 2008 U.S. Dist. LEXIS 20499, at *10-11 (C.D. Ill. Mar. 17, 2008) (quashing subpoena and explaining that, if information could be obtained directly from the plaintiff without subpoenaing the non-party, the defendant must do that instead); *In re Bextra & Celebrex*, 2008 U.S. Dist. LEXIS 21098, at *8 (quashing defendant's subpoena and explaining that defendant could just as easily access the information itself as get it from the subpoenaed non-party); *Mosely v. City of Chicago*, 252 F.R.D. at 427 (quashing subpoena City had served on non-party and explaining that information sought could be obtained more directly from sources other than the non-party).

B. **The Subpoena Should Be Quashed.**

Compelling Mr. Kole and Ghost Industries to appear for depositions would clearly constitute an undue burden for the primary reason that these non-parties cannot offer information that is both relevant to this litigation and unavailable from the City's own information or from the plaintiffs. Indeed, no party claims an intent to call Mr. Kole to testify at trial.

The City defends its subpoenas of Mr. Kole and Ghost Industries on the grounds that it is entitled to test the proposition "whether it really is the Ordinance that causes the inability to operate [a firearms business] in Chicago, or whether other factors, such as the economics of operating a firearms business in Chicago, are prohibitive." *Letter from Andrew Worseck to Christian Ambler, dated February 28, 2011 ("City Letter"), attached hereto as Exhibit 5, at page 1*.[1] The City further contends that Mr. Kole's "Chicago residency and his recent receipt of a [sic] FFL suggest that he intends, or has intended, to open a firearms store or range in Chicago. As such, he likely possesses information concerning the steps attendant to, and the viability of, such operations in Chicago." *City Letter, Exhibit 5, at page 3*.

This rationale is insufficient. It is undisputed that the City's ordinance flatly outlaws "the business of selling ... any firearm" in Chicago. § 4-144-010. *See also* § 8-20-100. It is hard to imagine how such a law could *not* "cause[] the inability to operate" a firearms business in Chicago. The City's flat ban is plainly *the* cause for the complete absence of businesses selling firearms in Chicago. Other major American cities have businesses that sell firearms both at gun shows and at retail stores. It is simply implausible that a market of nearly 3 million individuals would go unserved in the

---

[1] At this particular point in its letter, the City was defending its subpoena of individuals who are listed by the plaintiffs as possible witnesses in this litigation, but on page 3 of its letter the City defended the subpoena of Mr. Kole, who is not a potential witness, on the same basis: "As discussed above, these matter [sic] are relevant to Plaintiffs' claim that 'but for' the Ordinance, firearms dealers and range operators would be able to operate businesses in Chicago."

absence of the City's ban. Thus, the discovery Chicago seeks is highly unlikely to be relevant to the adjudication of this case.

Even if the "viability" and "information concerning steps attendant to" setting up a firearms business in Chicago were relevant, the City is not entitled to seek discovery from Mr. Kole and Ghost Industries. The primary "step attendant to" setting up a firearms business in Chicago is complying with the City's legal and regulatory regimes. The City's Corporation Counsel hardly needs Mr. Kole or Ghost Industries to testify about the licensing and other administrative "steps" a would-be business owner must take to open a business in the City. The City can readily consult its own municipal zoning and business licensing laws. The City can, and must, instead seek that information from its own officers and employees or, at the very most, from the plaintiffs and their witnesses.

Similarly, with respect to an economic analysis of the potential profitability of such an enterprise, the City can and should receive this information from other sources. Information concerning costs for renting space is readily available to the City on the websites of commercial real estate brokers and a myriad of other sources. Likewise, the City has ready access to wage information for the City. Information about the profit margins associated with firearms is also available from public sources – a Google search on "profit margins of selling guns" turns up 85,000 hits.

If the City is looking for an expert economic projection of the potential volume of sales that a dealer could consummate, such testimony is beyond the province of Mr. Kole. Surely, the City can retain its own expert to provide such an opinion. Moreover,

Mr. Kole has not commissioned any such study, nor has he even attempted to perform one himself. Accordingly, he cannot offer any testimony relating to economic projections associated with the operation of a firearms business in Chicago.

Notably, Mr. Kole only received a federal firearms license this year – approximately two months ago – and neither he nor Ghost Industries have made a single sale. Therefore, Mr. Kole and Ghost Industries have *no* "historical sales and marketing information" to reveal. Mr. Kole's lack of experience in this industry renders him a particularly inappropriate subject of City's quest for expert industry analysis.

Finally, plaintiffs have disclaimed any intention of calling Mr. Kole as a witness or utilizing any documents in his possession. The City insists that it is nonetheless entitled to subpoena Mr. Kole because he was, at an earlier point in the litigation, identified as a potential witness. *Id.* at 2-3. That is not the law.

The argument the City raises was rejected by this Court in *Sunrise Opportunities, Inc. v. Regier*, No. 05-2825, 2006 U.S. Dist. LEXIS 13024 (N.D. Ill. Mar. 7, 2006). There, the defendants had "originally listed Jeff Moor as a testifying expert. After he had been served with a subpoena for deposition, Defendants removed his name from their witness list." *Id.* at *20-21. The Court quashed the opposing party's subpoena, holding that, because he was no longer listed as a possible witness, they were not entitled to depose Mr. Moor, "even though he was identified previously as a testifying expert." *Id.* at *2. This Court "agree[d] with the majority of courts that Rule 26(b)(4)(A) allows only for the deposition of experts that a party intends to call at trial." *Id.* at *23 (citing *Employers Reinsurance Corp. v. Clarendon Nat'l Ins. Co.*, 213 F.R.D. 422 (D. Kan. 2003)

(collecting cases)). " 'Although plaintiff may have originally designated the witness as a testifying expert, plaintiff has the prerogative of changing his mind.' " *Id.* at *23 (quoting *Ross v. Burlington N. R.R.*, 136 F.R.D. 638, 638-39 (N.D. Ill. 1991)).

In short, if the City wishes to explore the economics of operating a firearms business generally – and specifically in Chicago, where any such business has long been, and continues to be, outlawed – then it should make inquiries of the plaintiffs and their witnesses whom they plan to call at trial or, better yet, of an expert witness that the City may itself retain. Those are the appropriate sources of such information, insofar as it might be relevant. But the City has no right to impose the undue burden of testimony and document discovery on Mr. Kole who is not named by the Plaintiffs as a prospective witness. Therefore, the subpoena as to Mr. Kole should be quashed.

WHEREFORE, Tony Kole and Ghost Industries, LLC, respectfully request that this Honorable Court enter an order quashing the subpoenas issued to them by the City of Chicago.

                                      Respectively submitted,
                                      TONY KOLE and GHOST INDUSTRIES, LLC

                                      By: /s/ Christian D. Ambler

Christian D. Ambler
Attorney Number 6228749
Stone & Johnson, Chtd.
200 East Randolph St.
24th Floor
Chicago, Illinois 60601

Tel: (312) 332-5656
Fax: (312) 332-5858
cambler@stonejohnsonlaw.com

Case: 1:10-cv-04184 Document #: 93-5 Filed: 03/08/11 Page 15 of 15 PageID #:1510

## CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of March, 2011, I caused a copy of the foregoing to be served by electronic filing on:

Michael A. Forti
Andrew W. Worseck
Mardell Nereim
Rebecca Alfert Hirsch
William Macy Aguiar
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 N. LaSalle St., Suite 1230
Chicago, IL 60602

    Charles J. Cooper
    David H. Thompson
    COOPER & KIRK, PLLC
    1523 New Hampshire Ave., NW
    Washington, D.C. 20036

    Brian S. Koukoutchos
    28 Eagle Trace
    Mandeville, LA 70471

    Stephen Kolodziej
    BRENNER FORD MONROE & SCOTT LTD.
    33 N. Dearborn St., Suite 300
    Chicago, IL 60602