IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS ASSOCIATION OF FIREARMS RETAILERS, KENNETH PACHOLSKI, KATHRYN TYLER, and MICHAEL HALL, | ) ) ) ) ) ) | No. 10 CV 4184 |
| Plaintiffs, | ) ) | Judge Edmond Chang |
| v. | ) ) | Magistrate Judge Geraldine Soat Brown |
| THE CITY OF CHICAGO and RICHARD M. DALEY, Mayor of the City of Chicago, | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
COUNT V OF PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendants the City of Chicago and Richard M. Daley ("Defendants"), by and through their attorney Mara S. Georges, Corporation Counsel for the City of Chicago, file this Reply in Support of their Motion to Dismiss Count V of Plaintiffs' Complaint as follows.

**INTRODUCTION**

Plaintiffs concede that their desire to possess and carry firearms under Count V is equally prohibited, to some degree, by both the City's Responsible Gun Ownership Ordinance (the "Ordinance") and Illinois state law. *See* Plfs' Resp at 6 (the "Illinois statute prohibits *some* of the firearms possession and carriage that is outlawed by the City's Ordinance..."). In fact, Plaintiffs do not contest that the *majority* of such conduct – the ability to freely carry operable firearms on sidewalks and streets, at office buildings, malls, grocery stores, libraries, churches, restaurants, and most other public spaces – is equally prohibited under the two laws. Thus, even though Plaintiffs are correct that some differences exist between the two laws, Plaintiffs recognize that a large portion

of their claimed injury in Count V simply cannot be redressed. Under Article III standing principles, the Court should dismiss that portion of Count V.

Moreover, the "differences" Plaintiffs focus on in their dissection of the two laws are not relevant to redressabilty. First, most of the alleged "more restrictive" provisions of the Ordinance cannot be involved here because Plaintiffs have not alleged facts giving rise to a claim or injury under those provisions. Second, even if those differences did injure Plaintiffs, they comprise only a small percentage of Plaintiffs' carrying claim in Count V – certainly not enough to satisfy redressability requirements. In sum, there is, essentially, complete overlap between the Ordinance and Illinois state law as relevant to Plaintiffs' carrying claim, and all of Count V should be dismissed for lack of standing.

I. **The Differences Plaintiffs Highlight Between the Two Laws are Minimal and Not Applicable to the Claims Brought in this Case.**

The true gist of Count V of Plaintiffs' Second Amended Complaint ("Amended Complaint" or "Am. Comp.") is a carrying claim: Plaintiffs desire the unfettered ability to possess and carry operable firearms throughout the City of Chicago. Neither Illinois nor Chicago municipal law, however, permits such possession in public, and both laws prohibit possession in most private venues as well. Plaintiffs' contention that the City and Illinois state firearms law differ in significant or material respects when it comes to the right to carry is simply incorrect.

To be sure, Plaintiffs correctly catalogue some differences in the applicable language and provisions of the two laws (indeed, it would be rare for overlapping state and local regulatory schemes to track each other exactly). These "differences," however, are inconsequential to the claims asserted by Plaintiffs. For example, Plaintiffs first note that the Ordinance only allows for

possession of a handgun within a person's "home," and limits the definition of "home" to the inside of a person's dwelling, excluding the garage, porch, common areas, or yard (Chicago Mun. Code § 8-20-020(a) and 010), whereas Illinois law allows for possession of firearms at a person's dwelling including external areas such as the garage, porch, and land (720 ILCS § 5/24-1(a)(4) and (10)). Plfs.' Resp. at 6-7. Significantly, however, Plaintiffs completely fail to acknowledge that they have challenged the Ordinance's definition of "home" in Count I of their Amended Complaint. Specifically, Plaintiffs allege that the Ordinance's definition of "home" violates their Second Amendment rights by excluding from that definition garages, porches, back stairs, and yards. *See* Am. Compl., Count I. Thus, Plaintiffs have already claimed a separate injury arising from their inability to possess firearms on their land and garages, porches, or back steps – an injury which, should Plaintiffs be successful, *can* be redressed by the Court. Since Plaintiffs have raised these claims in a separate count, it is unnecessary for the Court to afford relief for the same claims in Count V, especially since the majority of Count V *cannot* be redressed. *See, e.g.*, *Vulcan Gold LLC v. Google, Inc.*, 552 F. Supp.2d 752, 778 (N.D. Ill. 2008) (relief sought was duplicative of other claim; served no useful purpose and was dismissed). In fact, the inclusion of Count I only further underscores that Count V is, in essence, a carry claim.

Next, several of Plaintiffs' supposed distinctions are simply irrelevant because Plaintiffs have not alleged any facts making these provisions applicable to them. For example, Plaintiffs allege that Illinois law allows for handgun possession "in a much wider range of premises" because the Ordinance restricts possession to one's "home" (Chicago Mun. Code § 8-20-180(c)), whereas Illinois law permits possession at a person's "legal dwelling" and also at his own "abode" (720 ILCS § 5/24-1(a)(4) and (10)). Plfs.' Resp. at 8. But Plaintiffs ignore that each of these terms is limited by the

3

terms "his own." Only "abodes" or "legal dwellings" possessed by Plaintiffs are relevant – not, as Plaintiffs would portray, any given "abode" or "dwelling" that a claimant might happen to occupy at a given time. No Plaintiff has alleged possession of an "abode" or "dwelling" separate from his "home," much less alleged a desire to possess a handgun at that hypothetical location. The same is true for the fact that Illinois law permits the carry of firearms on the land or legal dwelling of another person as an invitee with permission to carry such firearm (ILCS § 5/24-1(a)(4)): None of these Plaintiffs have alleged that they have been given such permission but were unable to do so because of the Ordinance, or that they have been injured by the inability to do so.[1]

Accordingly, Plaintiffs lack standing to challenge these aspects of the Ordinance. Even in pre-enforcement constitutional challenges seeking injunctive relief, Plaintiffs must meet the minimum thresholds of standing, *i.e.*, allege intent to engage in a course of conduct and an actual or imminent threat of prosecution. *See, e.g., Shirmer v. Nagode,* 621 F.3d 581, 586 (7th Cir. 2010) (plaintiff must show "intention to engage in course of conduct arguably affected with a constitutional interest"), citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298-99 (1979) ("When plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible, they do not allege a dispute susceptible to resolution by a federal court."). *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (plaintiff must demonstrate personal stake in the requested relief, not merely abstract injury).

Plaintiffs' invocation of the Ordinance's enforcement and penalty scheme throughout their response suffers from the same infirmity. Plfs.' Resp. at 4 and 10-11. Nowhere in their complaint,

---

[1] At one point, the allegations of Raymond Sledge might have covered this provision, but he has since withdrawn as a plaintiff in this action.

and certainly not in Count V, do Plaintiffs challenge the Ordinance's enforcement regulations or claim any injuries resulting therefrom. Rather, the injury Plaintiffs seek to have redressed is the violation of their constitutional right to keep and bear arms by not having the ability to freely carry operable firearms within the City – an injury that this Court cannot redress due to Plaintiffs' failure to challenge state law. In fact, no Plaintiff has alleged that he or she has been cited, arrested, fined, penalized, or that their firearms have been seized, under any of the Ordinance's enforcement provisions. Accordingly, Plaintiffs do not have standing to challenge any of the enforcement provisions of the Ordinance. *See Lyons*, 461 U.S. at 101; *Babbitt,* 442 U.S. at 299; *Shirmer,* 621 F.3d at 586. Furthermore, Plaintiffs concede that enforcement under Illinois law would remain, but they do not show how Chicago's enforcement is more onerous, or that Illinois law enforcement is not enough to deter them. Since they would still refrain carrying because of the threat or risk of prosecution under Illinois law, it does not matter what penalties the Ordinance imposes or whether those penalties are enjoined; the inability to carry would remain unredressed.

Finally, there is no true distinction between the Ordinance and Illinois law when it comes to lawfully transporting firearms in vehicles. Plaintiffs note that the Ordinance requires firearms to be broken down, not immediate accessible, and in a carrying case, while Illinois law only requires that the firearm be broken down, not immediately accessible, *or* unloaded and in a case or a different type of container. *See* Plfs.' Resp. at 9. First, Plaintiffs ignore the fact that, pursuant to the Illinois Wildlife Code, firearms transported in any vehicle *must* be unloaded and in a firearms case. *See* 520 ILCS § 5/2.33(n). But more importantly, to the extent that these laws may not be identical, they both require, for all intents and purposes, firearms to be unavailable for immediate use when being transported in vehicles. Plaintiffs' attempt to create a meaningful difference between these two

5

provisions fails, because what Plaintiffs seek is a right to transport firearms free of *any* restraints, whether that be all three of the requirements under the Ordinance, or just one of the requirements under Illinois law. Even if the Ordinance requirements were enjoined, the Illinois requirement would remain. And while Illinois law does not require all three transportation conditions to be satisfied, it does require one of them to be. Plaintiffs' failure to challenge the Illinois requirements thus means that their asserted injury – the inability to use firearms immediately for self-defense – will persist, and remain unredressed, even if the Ordinance's requirements are enjoined.

In short, almost all of the distinctions Plaintiffs attempt to draw between the Ordinance and Illinois law are illusory, and Plaintiffs' comparison of them only serves to highlight that their differences are, at bottom, largely inconsequential to Count V. Aside from a few, very narrow exceptions, the Ordinance and Illinois law equally prohibit the right to carry that is actually at issue in this case. Thus, the Court cannot afford any real relief to Plaintiffs in Count V, and it should be dismissed for lack of redressability.

II.     **While the Remedy Need Not Redress all of Plaintiffs' Alleged Injury to Establish Standing, it Must be More than an Inconsequential Amount.**

At most then, the only provision relevant to Plaintiffs' Count V where Illinois law does not overlap with the Ordinance is that, under Illinois law, Plaintiffs may possess either a handgun or a long gun at their fixed place of business, whereas under the Ordinance they may possess only a long gun. (Chicago Mun. Code § 8-20-020(a) and 030(a) and 720 ILCS § 5/24-1(a)(4) and (10)).[2] Even assuming *arguendo,* however, that all of the differences Plaintiffs list are applicable, these differences would still comprise only the tiniest proportion of their overall claim. Virtually all of

---

[2] Plaintiff Kathryn Tyler pleads that she would prefer to keep a handgun as opposed to a long gun at her place of business because it is easier to transport and use, *see* Am. Comp., § 31.

the conduct prohibited under the City's Ordinance and challenged by Plaintiffs in Count V would remain prohibited under Illinois law: carrying handguns on public streets, parks, sidewalks, parking lots, malls, bars, office buildings, grocery stores, banks, restaurants, courthouses, churches, and libraries, and almost everywhere else in Chicago.

Plaintiffs cite several cases for the proposition that the redressability requirement is satisfied where some, but not necessarily all, of a plaintiff's injury can be remedied by the court. *See* Plfs.' Resp. at 11-12. While that general statement may be true, none of the actual facts and holdings of those cases apply here. For example, in *Massachusetts v. EPA*, 549 U.S. 497, 525 (2007), the Supreme Court held that several states had standing to challenge the EPA's decision not to regulate greenhouse gas emissions from new motor vehicles under the Clean Air Act. 549 U.S. at 516. Importantly, however, the Court noted that because Congress had expressly authorized challenges to EPA actions in its procedural rules, the states were permitted a short cut in the standing analysis, and did not have to "meet[] all the normal standards for redressability and immediacy." *Id*. at 516-17 (internal citations omitted). The Court also emphasized the fact that the states were unique as plaintiffs, suing with both proprietary and sovereign interests. *Id*. at 519. Furthermore, even though the remedy sought by the states – the regulation of motor-vehicle emissions – "will not by itself *reverse* global warming," the Court held that reduction in domestic emissions would slow the pace of global emissions in a meaningful way. *Id*. at 525 (emphasis in original).

The court in *Connecticut v. American Electrical Power Co.*, 582 F.3d 309, 348 (2d Cir. 2009), followed the same reasoning the Supreme Court applied in *Massachusetts v. EPA*. There, several states, a city, and land trusts sued the owners and operators of power plants to abate their emissions in an effort to reduce the effects of global warming. 582 F.3d at 316-320. Again, like in

*Massachusetts v. EPA*, nothing could realistically reverse or prevent *all* global warming, but the plaintiffs were seeking to reduce the amount of total emissions by forcing *these* defendants to cap and reduce their emissions. 582 F.3d at 348. Thus, their injury was redressable because, if successful, the reduction of emissions by these defendants would reduce the effects of global warming. *See Sierra Club v. Franklin County Power*, 546 F.3d 918, 927 (7th Cir. 2008) (plaintiffs' alleged injury – negative impact on land if proposed power plant built with outdated emissions permit – could be remedied in two significant ways: first by delaying construction *completely* during the permit application process, and then because emissions standards in new permits "were *significantly* more stringent" than the older ones) (emphasis added).

Finally, while Plaintiffs rely on an isolated quotation from *Larsen v. Valente*, 456 U.S. 228 (1982), the actual holding of that case also belies their argument. There, plaintiffs challenged a Minnesota statute placing registration and reporting requirements on religious organizations that solicited more than 50% of their funds from nonmembers. 456 U.S. at 241. The Court first stated that the plaintiffs' injury (having to register and report under the Act) would be "completely redressed by a favorable decision of the Court" if it found the rule unconstitutional. *Id.* at 244. It then went on, in response to the dissent's argument that the plaintiffs may not even qualify as a religious organization, to hold that even if that were true, plaintiffs "will be given substantial and meaningful relief" by a favorable decision because the state would have the burden of proving plaintiffs were not a religious organization. *Id*.

The circumstances here are markedly different from these cases, where the relief that could be afforded would materially redress the alleged injuries. The overwhelming proportion of the injury Plaintiffs allege in Count V – essentially, the inability to carry firearms anywhere in Chicago –

8

cannot be redressed by this Court in any meaningful fashion. Plaintiffs' failure – for whatever tactical reason known only to them – to challenge the Illinois law leaves the essence of their claim unredressable.

Moreover, not one of the cases Plaintiffs cite address redressability in the context at issue here – overlapping laws. Plaintiffs attempt to distinguish the cases cited by Defendants that *do* concern overlapping laws (*Harp, Lockridge,* and *Midwest Media Property*) by noting that they arose in the First Amendment billboard context and dealt with laws enacted by the same governmental entity. *See* Plfs.' Resp. at 12. But these cases are directly on point, and do not limit their holdings to the factual nuances that Plaintiffs have teased out; rather, they hold that, when another law on the books prevents the same activity that Plaintiff desires to engage in, the redressability requirement cannot be met. *Harp* remains controlling, and Count V should be dismissed.

### III. At The Very Least, The Court Should Dismiss Most of Count V.

As demonstrated above, all of Count V should be dismissed on redressability and related lack of standing grounds. Notably, however, Plaintiffs do not contest that, other than the differences they highlight, the right to carry operable firearms is equally prohibited under the Ordinance and Illinois law. Therefore, to the extent the Court believes that the differences Plaintiffs identify create unique injury under the Ordinance that can be redressed, the Court should allow only those pieces of Count V to remain. The Court should dismiss the remaining, and overlapping, portion of Count V.

Dismissing the overlapping portion of Count V would prevent the Court from wading into claims that cannot be redressed, and thus would vindicate the constitutional interests promoted by the standing requirements. *See, e.g.*, *Summers v. Earth Island Institute,* 129 S. Ct. 1142, 1148 (2009) (Article III restricts judicial power to "the traditional role of Anglo-American courts, which is to

9

redress or prevent actual or imminently threatened injury."); *Pollack v. U.S. Dep't of Justice*, 577 F.3d 736, 738-39 (7th Cir. 2009) (federal court must limit review to actual cases or controversies, which requires that alleged injury can be redressed or prevented). Furthermore, dismissing the portion of Count V that overlaps with Illinois law will prevent the unnecessary expenditure of resources by both the parties and the Court because it will properly limit the scope of evidence, testimony, and legal issues to actual redressable injuries. Finally, permitting the overlapping portion of the claim would be contrary to principles of judicial restraint and avoiding unnecessary constitutional questions. *See ISI Int'l v. Borden Ladner Gervais*, *LLP*, 256 F.3d 548, 552 (7th Cir. 2001) ("federal courts are supposed to do what they can to avoid making constitutional decisions, and strive doubly to avoid making unnecessary constitutional decisions.").

In this respect, *Lockridge* supports Defendants'– and not Plaintiffs'– argument. *See Lockridge v. Village of Alsip,* Case No. 03 CV 6720, 2005 WL 946880 (N.D. Ill. April 18, 2005). While Plaintiffs point out that *Lockridge* did not dismiss the plaintiff's claims with respect to sign applications where only the sign ordinance, but not the zoning ordinance, would have prohibited the signs, the court *did* in fact dismiss from the case all of the applications where the signs ran afoul of both the sign ordinance *and* the zoning ordinance. *Id. at* \*2. Thus, rather than support Plaintiffs' claim, *Lockridge* illustrates the appropriateness of dismissing the portion of the claim that cannot be redressed.

**IV.     The City's Purposes For Enacting the Ordinance are not Relevant to Redressability.**

Finally, Plaintiffs allege that statements made by Corporation Counsel Mara Georges concluding that "'we've gone further than anyone else ever has,'" *see* Plfs.' Resp. at 3, somehow proves that Count V can be redressed by the Court. This is incorrect. Generalized statements made

by the City, its counsel, or individual members of City Council, are simply not germane to the issue of whether Plaintiffs have standing to sue for a specific claim. Moreover, Defendants do not contest that there are several provisions of the Ordinance that are more restrictive than state law – banning gun stores and gun ranges, for example. Plaintiffs have challenged these provisions in other counts, and Defendants do not argue that they cannot be redressed. The right to freely carry operable firearms, however, is prohibited under both Illinois state and Chicago municipal law, and Count V should be dismissed.

WHEREFORE, Defendants respectfully request that the Court grant Defendants' motion and dismiss Count V of Plaintiffs' Second Amended Complaint in its entirety or, in the alternative, dismiss the portion of the claim that overlaps with Illinois state law.

Dated: March 16, 2011.

Respectfully submitted,

MARA S. GEORGES
CORPORATION COUNSEL
CITY OF CHICAGO

BY: /s/ Rebecca Alfert Hirsch
One of Its Attorneys

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William M. Aguiar
Rebecca Alfert Hirsch
Attorneys for the City of Chicago
Constitutional & Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, IL 60602
(312) 742-0260

## **CERTIFICATE OF SERVICE**

      The undersigned, an attorney of record for the Defendants, hereby certifies that on March 16, 2011, she served a copy of the foregoing **Defendants' Reply In Support of Its Motion to Dismiss Count V of Plaintiffs' Second Amended Complaint** on the parties listed below by electronic means pursuant to Electronic Case Filing (ECF):

| | |
|---|---|
| Charles J. Cooper | Stephen Kolodziej |
| David H. Thompson | Brenner Ford Monroe & Scott Ltd. |
| Peter Patterson | 33 N. Dearborn Street, Suite 300 |
| Cooper & Kirk, PLLC | Chicago, IL 60602 |
| 1523 New Hampshire Ave., NW | |
| Washington, DC 20036 | |

                                                /s/ Rebecca Alfert Hirsch