# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Edmond E. Chang | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 4184 | **DATE** | 3/17/2011 |
| **CASE TITLE** | Benson, et al. Vs. The City of Chicago, et al. | | |

**DOCKET ENTRY TEXT**

With regard to Plaintiffs' motion to compel [65] and the mirror-image motion of the City for a protective order [63], the parties have narrowed their disputes to the issues below. For the reasons stated in open court, and summarized here, the Court grants in part and denies in part both motions.

■[ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

    a. *"Internal" legislative process*: Plaintiffs seek documents in the possession of City Council aldermen and the Mayor, and their respective staff members, that "reflect[ed], referr[ed], or relat[ed]" to the Ordinance. RFP No. 1. Plaintiffs also issued other requests for production and depositions that similarly would encompass, among other things, discovering information "regarding the drafting of the Ordinance, including but not limited to who was involved, what was discussed, whether any other language or alternative regulations were discussed or considered, and the reasons why the text of the Ordinance was selected," even if those discussions occurred outside of the hearings of the Council or its committees. 30(b)(6) Topic No. 1; *see also* 30(b)(6) Topic Nos. 2, 3, 8-9, 12-14, 15; RFP Nos. 2, 4(I).

    Although it is not yet clear what level of constitutional scrutiny will apply to the specific challenges to the Ordinance, the object of the scrutiny will *not* be the subjective purposes or motives of the individual alderman, the Mayor, and their staffs. Rather, the scrutiny will focus on the objective purpose of the legislation, as determined by its text, structure, and legislative history (in the form of Council and committee hearing transcripts and materials). That was the analytical focus in *United States v. Skoien,* 614 F.3d 638, 624-43 (7th Cir. 2010) (*en banc*) (Second Amendment scrutiny of 18 U.S.C. § 922(g)(9)), and the cases cited by *Skoien* as examples of applying a "strong showing" level of scrutiny in other contexts, *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 202-04 (1999) (some First Amendment questions)*; Heckler v. Mathews*, 465 U.S. 728, 744-51 (1984) (temporary gender-based distinction for pension benefits to protect reliance interests). The cases cited by

**STATEMENT**

Plaintiffs as examples of further exploration of the individual legislators' purposes or individual governmental actors' purposes are distinguishable because those cases are either equal protection cases involving intentional discrimination; First Amendment cases where the court had to sort out impermissible suppression of viewpoint versus permissible regulation of secondary effects; or in the case of *Planned Parenthood v. Casey*, 505 U.S. 833, 877 (1993), the Supreme Court's use of the word "purpose" meant, when read in context, the objective purpose of the legislation.

In other words, the focus on the objective, enacted purpose of the *legislation* rather than on the subjective considerations of individual *legislators* not presented to the Council or committee also arises from the principle that a legislator's subjective "motive" or "animus" against the Second Amendment would not invalidate an otherwise constitutional regulation of firearms. The converse is true: if legislator's had a "benign" view of the right to bear arms and mistakenly believed that a firearms regulation promoted gun ownership (*e.g.*, restricting the number of firearm stores per square mile due to a mistaken belief that the restriction would promote the stores' economic viability), but that regulation otherwise did not survive the appropriate constitutional scrutiny, the "benign" motive would not save the regulation. Moreover, even if the internal legislators' process was somehow relevant, it would be unduly burdensome to root around for the information in the offices of the multi-member Council, the Mayor, and the staff members when the Ordinance itself and the public legislative record already set forth the asserted purposes of the legislation. Accordingly, to the extent that Plaintiffs seek to discover the internal legislative process leading up to the Ordinance's adoption, the motion to compel is denied, and the City's corresponding motion for protective order is granted.

    b. *Categorization of Interests.* In requests for production Nos. 28-30, and in part in No. 31, Plaintiffs ask that the City categorize the interests advanced by the Ordinance into "compelling," "substantial," or "rational." Plaintiff's motion to compel that categorization is denied because it seeks legal conclusions rather than factual information (the underlying facts, data, studies, and other materials that the City will rely on in proving the alleged interests are already the subject of other discovery requests).

    c. *Summary Judgment / Trial.* Plaintiffs seek production of all documents that the City will use in summary judgment and trial, RFP No. 41, identification of all witnesses at trial, RFP No. 7, and production of all "documents" that the City will use to defend the Ordinance, RFP 33. The first two (RFP Nos. 41 and 7) are premature in that the parties have not yet prepared for summary judgment motions or for trial. The third request, R. 33, is a 'catch-all' that duplicates the Plaintiffs' other (appropriate) specific discovery requests for information concerning the purposes and effects of the regulation (or lack of regulation) and other alternatives. However, the Court will strictly enforce the discovery production so that neither party is surprised during summary judgment briefing and trial.

    d. *Ezell Discovery.* The City objects to producing discovery that it has obtained from the plaintiffs in the *Ezell* litigation, RFP No. 13, arguing that such discovery is not traditional discovery because the City's lawyers have obtained them through their efforts. The City's motion for protective order on this discovery is denied. Although the information may

**STATEMENT**

be physically housed in the offices of the City's lawyers, the discovery was obtained on behalf of *the City* as a party in the *Ezell* case. That information is now in the possession, custody, and control of the City. There is no applicable privilege; the work-product privilege does not apply because the City served, of course, the discovery requests on the *Ezell* plaintiffs.