| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT<br>NORTHERN DISTRICT OF ILLINOIS |
| 2 | EASTERN DIVISION |
| 3 | |
| 4 | BRETT BENSON, RAYMOND SLEDGE,<br>KENNETH PACHOLSKI, DR. KATHRYN ) |
| 5 | TYLER, ILLINOIS ASSOCIATION OF )<br>FIREARMS RETAILERS, MICHAEL ) |
| 6 | HALL, and RICK PERÉ, ) |
| 7 | Plaintiffs, ) |
| 8 | vs.  ) No. 10 C 4184 |
| 9 | THE CITY OF CHICAGO,  ) Chicago, Illinois<br>RICHARD M. DALEY, et al.,  ) March 17, 2011 |
| 10 | ) 9:00 o'clock a.m.<br>Defendants. ) |
| 11 | |
| 12 | |
| 13 | TRANSCRIPT OF PROCEEDINGS - STATUS AND MOTION HEARING<br>BEFORE THE HONORABLE EDMOND E. CHANG |
| 14 | |
| 15 | APPEARANCES: |
| 16 | For the Plaintiffs:  COOPER & KIRK, PLLC<br>MR. DAVID H. THOMPSON |
| 17 | 1523 New Hampshire Avenue, N.W.<br>Washington, DC 20036 |
| 18 | 202-220-9600<br>dthompson@cooperkirk.com |
| 19 | |
| 20 | and |
| 21 | BRENNER, FORD, MONROE & SCOTT,<br>LTD. |
| 22 | MR. STEPHEN A. KOLODZIEJ<br>33 North Dearborn Street |
| 23 | Chicago, IL 60602<br>312-781-1970 |
| 24 | skolodziej@brennerlawfirm.com |
| 25 | |

| | | |
|---|---|---|
| 1 | For the Defendants: | CITY OF CHICAGO, DEPARTMENT OF LAW |
| 2 | | MR. WILLIAM M. AGUIAR |
| | | MR. MICHAEL A. FORTI |
| 3 | | MR. ANDREW W. WORSECK |
| | | 30 North LaSalle Street |
| 4 | | Chicago, Illinois 60602 |
| | | 312-744-9010 |
| 5 | | waguiar@cityofchicago.org |
| | | mforti@cityofchicago.org |
| 6 | | aworseck@cityofchicago.org |
| 7 | | and |
| 8 | | MAYER BROWN LLP |
| | | MR. RANJIT J. HAKIM |
| 9 | | 71 South Wacker Drive |
| | | Chicago, Illinois 60606 |
| 10 | | 312-701-8758 |
| | | courtnotifications@mayerbrown.com |
| 11 | | |
| 12 | | |
| 13 | For the Movant: | STONE & JOHNSON, CHTD. |
| | | MR. CHRISTIAN D. AMBLER |
| 14 | | 200 East Randolph Street |
| | | Chicago, Illinois 60601 |
| 15 | | 312-332-5656 |
| | | cambler@stonejohnsonlaw.com |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

FEDERAL OFFICIAL COURT REPORTER
MS. KRISTA BURGESON
219 South Dearborn Street
Chicago, Illinois 60604
312-435-5567
krista_burgeson@ilnd.uscourts.gov

1       THE CLERK:  10 C 4184, Benson versus the City of
2  Chicago.

3       THE COURT:  Good morning.

4       MR. WORSECK:  Good morning, your Honor.  Andrew
5  Worseck for the City of Chicago.

6       MR. AGUIAR:  Good morning, your Honor.  William
7  Aguiar also for the City of Chicago.

8       MR. FORTI:  Good morning, your Honor.  Michael Forti
9  on behalf of the City and other Defendants.

10      MR. HAKIM:  Good morning, your Honor.  Ranjit Hakim
11  from Mayer Brown petitioning for the City and other
12  Defendants.

13      THE COURT:  Right, okay.

14      Let's have the plaintiffs introduce themselves as
15  well first.

16      MR. THOMPSON:  Good morning, your Honor.  David
17  Thompson for the plaintiffs.

18      MR. KOLODZIEJ:  Steven Kolodziej, local counsel for
19  the plaintiffs.

20      MR. AMBLER:  Your Honor, I am Christian Ambler for
21  Tony Kole and Ghost Industries.

22      THE COURT:  And Donald Norton?

23      MR. THOMPSON:  Yes, and Donald Norton, your Honor.

24      THE COURT:  Okay.

25      MR. AMBLER:  Yes, your Honor, but I think

1   unfortunately I should have filed that motion in the Southern

2   District.  The subpoena was issued out of the Southern

3   District.  So I will withdraw the motion.

4         THE COURT:  Okay.  Easy things first.

5         The motion to withdraw on the plaintiffs' team,

6   Mr. Panuccio, is granted.  And the motion to add Mr. Woods and

7   Mr. Hakim is also granted.  So at this rate, in a few months,

8   it will be 1 versus 20 or so with the attorneys.  Okay.

9         Then we have got, of course, the motion to compel and

10   the motion for protective order, the sort of flip sides of

11   each other.  I have reviewed the various filings on that, so

12   let me tell you where I am at on that.

13         With regard to -- and I do appreciate that both sides

14   have worked, I think, very hard in narrowing the disputes,

15   including getting statistics out despite a blizzard.  So I do

16   appreciate the work that both sides have done.

17         With regard to the request for -- to compel documents

18   and request for productions 1, 2, 4-I, or 4 Roman at 1, and

19   30(b)(6) topics 1 and 2, and those concern discovery with

20   regard to the legislative process that is outside of, you

21   know, what the legislative record is, legislative public

22   record is.  I will deny the plaintiffs' motion to compel and

23   grant the motion for protective order for the following

24   reasons.

25         As I noted in our prior hearing, I think what the

1  case law instructs is that what is important is the

2  legislation's purpose, and not the decisional process that led

3  to the ultimate legislation's adoption.  I think the cases

4  cited by the plaintiffs are either race discrimination or

5  gender discrimination cases, and so in those cases, the

6  subject of purpose had took on additional meaning.

7          To the extent that Planned Parenthood versus Casey

8  which was not a discrimination case but a substantive due

9  process case mentioned purpose, I think what the Court there

10  was getting at was, again, the legislation's objective

11  purpose, and not all the decisional process leading up to it

12  by the individual legislators.

13          The 7th Circuit tells us to make sure we read cases

14  as cases in context and not as statutes.  So while I

15  appreciate the argument that the word "purpose" appear in that

16  argument, I don't think that that is what the Supreme Court

17  was getting at.

18          So, this case is unlike an equal protection case or

19  unlike a First Amendment retaliation case where animus might

20  be -- might make a difference and where the internal

21  legislative process might make a difference.

22          And let me just say, to illustrate the point, I think

23  the converse would be true.  If legislators, not in the City

24  of Chicago, for example had a benign purpose, all right, with

25  regard to the right to bear arms, they mistakenly believe, for

1    example, that if they were to restrict the number of firearms

2    dealers to one for every square mile within their city,

3    because they think that that will actually prevent, you know,

4    cannibalistic competition, and it will actually foster the

5    number of viable firearms dealerships in the City, but it

6    turns out that they are wrong, but they had a benign purpose,

7    if that regulation still infringed, you know, the Second

8    Amendment right and wasn't a good fit, whatever level of

9    scrutiny applies, that wouldn't save the legislation.  So,

10   even if legislators, individual legislators, had a particular

11   animus, that is not what is controlling, just as it wouldn't

12   be if they thought they were fostering Second Amendment

13   rights.

14           So, that ruling is going to then apply to the other

15   topics and requests for productions that are identified in

16   your various filings.  So, for example, besides the 30(b)(6)

17   topics, the first 2, topic numbers 3, 8 and 9, and 12

18   through 14, to the extent that those seek discovery on the

19   legislative process outside of the legislative record, that

20   motion to compel will be denied and the motion for protective

21   order will be granted as to those.

22           Then with regard to -- and that also applies to

23   30(b)(6) topic Number 15, which has to do with firearms

24   training.

25           There is still a dispute though over the request for

1    production numbers 28 to 30, which the plaintiffs served

2    asking the City to categorize whether the purposes that they

3    have identified are compelling or substantial or rational,

4    depending on what the level of scrutiny is.  Although it is an

5    ingenious request, I am going to deny it.  First, it is not

6    even clear what scrutiny level does apply at this point, and

7    it is really akin to asking for sort of legal issue discovery

8    as opposed to factual discovery, which is what the aims of

9    discovery are supposed to be.

10        So, the motion to compel the request for production

11    and to categorize the purposes is denied.

12        I think that is the same ruling that will apply to

13    requests for production 31, which is how the law is, how the

14    ordinance is tailored to the purposes broken down by

15    compelling purpose, substantial purpose, or irrational

16    purpose.  Okay.

17        Then I have a question with regard to the next set

18    of disputes, which is request for production 33, which is

19    what documents the City will use to defend the case, request

20    for production 41, what documents the City will use as

21    evidence for motions for summary judgment or trial, and

22    number 7, which is identifying the witnesses for summary

23    judgment or trial.

24        So, the question is for the plaintiffs, and that is:

25    How is request for production 33, the documents -- you know,

1   what documents will be used to defend, how is that different

2   from the other more specific requests for production that you

3   have served that asks the City for, you know, the date of the

4   survey, all the information, regarding the purposes and the

5   fit and the alternatives.

6           MR. THOMPSON:  It really was a catchall, your Honor.

7   It was in the spirit of what the Court indicated at our last

8   meeting, that it is not fair to us to be surprised, and we did

9   not want to get a summary judgment motion and have a bunch of

10   declarations from witnesses we have never heard of, we have

11   never had an opportunity to depose, documents we have never

12   seen before, at that time.

13           So, we would hope that all the documents that would

14   be responsive to that had been covered by all of our other

15   document requests, but we feel it would be fundamentally

16   unfair for them to spring documents and witnesses on us in

17   trial or in summary judgment if we have had never seen them in

18   discovery.

19           THE COURT:  Right, and with regard to trial, that

20   will most certainly be covered by a pretrial order.  There is

21   no way they will be able to surprise you there.  With regard

22   to summary judgment, of course, you know, there is a built-in

23   mechanism in Rule 56 that if you need additional discovery

24   based on the movant's motion, then we can -- you know, you can

25   get relief that way.

1          Having said that, though, it is true that, you know,

2     we don't -- and we will take up the motion for extension of

3     discovery in a moment, but it would be, I think, quite poor

4     practice for the interest at stake on both sides if we got to

5     the point of a summary judgment motion and either the

6     plaintiffs' or the defendants' motion had some surprise

7     material in it that was not already disclosed in discovery.

8          I will look very skeptically on the propriety of

9     including materials that have not been turned over in

10    discovery in a summary judgment motion, especially since we

11    are having expert discovery as well.  There really should be

12    no reason that that is going to happen.

13         So, what I will do is I will deny these requests 33,

14    41, and 7, but with the understanding that it was a catchall,

15    meaning that all the specific requests for production, the

16    interrogatories, you know, the upcoming requests for

17    admission, for example, that all of those, you know, are

18    answered in a full way, which I expect the City will do in

19    any event.

20         But I will monitor the litigation to prevent

21    surprise and to prevent further delay.

22         MR. THOMPSON:  Thank you, your Honor.

23         THE COURT:  All right.

24         With regard to request for production 13(b), the

25    Ezell discovery, let me ask the City if you can -- perhaps I

1    should just ask you to explain what is the objection to

2    turning over documents or other discovery that you have

3    received from the Ezell plaintiffs that fit within some of

4    the other requests?

5          MR. WORSECK:  It really goes, your Honor, to the

6    issue of attorney work product, and attorney labor.  In the

7    conventional sense, when a party is seeking discovery of the

8    City, or of any party, they seek discovery of documents and

9    information and materials that that entity either possesses,

10   or generates, or what have you, as part of its normal

11   operations.

12         We here in the Corporation Counsel's office,

13   attorneys that represent the City in specific pieces of

14   litigation, and the things that we generate, or create, or

15   request, or receive in connection with litigating a particular

16   lawsuit, we feel is outside the bonds of what is commonly

17   conceived of as the kinds of information that a client would

18   have that would be subject to production.

19         As we set out in our papers, your Honor, this is not

20   a matter where the plaintiffs are in the dark.  They have been

21   full participants in the Ezell proceedings.  They are fully

22   aware of the issues and the facts and the testimony and the

23   resolution of that case.  So we just think that this is just

24   a matter that is improper for multiple reasons.

25         THE COURT:  Let me make sure I understand this.

1          If you -- let's say hypothetically you receive from

2    the Ezell plaintiffs in response to one of your document

3    requests some study that advances the theory that there are

4    less restrictive alternatives, so you now have that document,

5    the City has that document, right, that survey, and it

6    otherwise would fall within a request for what are the other

7    less restrictive alternatives than what the ordinance sets

8    forth, would they advance the same purposes.

9          So, you are saying you wouldn't turn over that

10   document then?

11         MR. WORSECK:  Again, that would -- in our view, that

12   would be something that is outside the scope of conventional

13   discovery, being that it is something that we possess by

14   virtue of our litigation efforts as attorneys representing our

15   client in specific litigation.

16         If it had been given to the City, to one of the

17   City's operating departments, for instance, the Police

18   Department, the Department of Health, or what have you, of

19   course we would turn that over if it was responsive to a

20   request, but we think the manner in which materials are

21   obtained in this instance is important, just as they are

22   important in any situation in which you have attorney work

23   product issues arising.

24         It is the very fact that it is the attorneys' efforts

25   that lead to the attainment of the information that oftentimes

1   preclude discovery of the information and our cloak of

2   privilege.

3         THE COURT:  I appreciate the argument, here is though

4   why I am -- okay.

5         First of all, the requests themselves of course are

6   issued to the Ezell plaintiffs, and so it is not as if that is

7   confidential, right?  You are not shielding the -- the

8   requests themselves are not work product.  It may disclose,

9   you know, what you are thinking in terms of defense strategy,

10  how you are litigating that case, but it is disclosed to the

11  Ezell plaintiffs.

12        The second things is -- well, while I understand

13  that the discovery is now in the hands of the Corporation

14  Counsel physically, it is in your -- in the lawyers' office,

15  it is still -- you represent the City, and so as part of -- of

16  the City as a representative of the City, it is now in the

17  City's possession.  So, to the extent that the -- let me put

18  it this way.

19        I will deny the motion, the City's motion, for

20  protective order based solely on the fact that the Ezell

21  plaintiffs produced it.  If it otherwise falls within a

22  discovery request that the plaintiffs have made, then you

23  must turn it over.

24        MR. FORTI:  Your Honor, may I just make one other

25  point that Mr. Worseck made?

1       We certainly can do that, and perhaps this also goes

2   to the extension of time, but looking at the panoply of

3   materials that the plaintiffs have requested over the last

4   several months, we felt that in terms of burden, which is an

5   appropriate consideration too under the Federal Rules, given

6   that the Ezell plaintiffs and the plaintiffs here have worked

7   hand in hand in the Ezell case, wouldn't it be easier to get

8   that information from the plaintiffs themselves?

9       And I think that is a fair consideration when we look

10   in terms of prioritizing the vast array of documents that we

11   are being asked to produce, if they can get them from the

12   plaintiffs, the Ezell plaintiffs, wouldn't that be an easier

13   resolution?

14       THE COURT:  So, how much have you gotten from the

15   Ezell plaintiffs?  What is the volume like?

16       MR. WORSECK:  Your Honor, frankly it is hard for me

17   to give you a really good answer on that as I stand here

18   today.

19       It is not terribly voluminous, but we did issue

20   multiple sets of document requests and interrogatories in

21   preparation for the preliminary injunction hearing, and

22   without going back to the office and looking at the file, I

23   would hesitate to speak further as to the volume of what we

24   received.

25       MR. FORTI:  I don't think it is voluminous, your

1   Honor, but as you may know, it was in the context of the

2   preliminary injunction, and things were pretty crazy in terms

3   of responding to Judge Kendall's strict discovery cut offs,

4   and so I don't think we -- I think we can represent that it

5   is not voluminous, but it requires some careful searching

6   through the files to exactly assess what we got from the

7   Ezell plaintiffs.

8        THE COURT:  Right, and I am assuming you followed

9   standard protocols, as did the plaintiffs in Ezell, in

10  making sure that you know exactly what they gave you, and

11  that they know exactly what they gave you.  And so going

12  through an index of that material really ought not take that

13  much time.  And if you are standing here telling me that it

14  is not voluminous, I don't think burden overrides the

15  otherwise presumption that discoverable material gets turned

16  over.

17       So, that motion for a protective order is denied.

18  That is denied.

19       The only thing I will say is -- well, is there a

20  protective order in the Ezell case?

21       MR. WORSECK:  No.

22       THE COURT:  With regard to discovery?

23       MR. WORSECK:  No.

24       THE COURT:  Okay.

25       So, unless there is some other privacy or other

1    interest at stake, you will have to turn over that

2    information.

3           So, I think that resolves the discovery disputes, the

4    pending ones.  Then we can address the motion for extension of

5    the discovery schedule.

6           Is there anything else?  I know I went through that

7    kind of quickly.

8           MR. WORSECK:  I believe that is it, your Honor.

9           MR. THOMPSON:  Yes.

10          THE COURT:  All right.

11          With regard to the motion for an extension of time,

12   this is a balance.  On the one hand, you know, the City of

13   course advances this as public safety legislation and so we,

14   of course, have to get an accurate determination here of the

15   facts.

16          On the other hand, the Supreme Court tells us there

17   is a Constitutional right to possess a firearm for one's

18   self-defense, and that is a significant interest on both

19   sides.

20          So let me just ask a couple questions:

21          First, the Ezell case is stayed pending the 7th

22   Circuit's appeal, right?

23          MR. FORTI:  No, your Honor.

24          The motion that was pending before Judge Kendall at

25   one point, you may recall we mentioned to you that she had

1    ruled on the motion as moot, but then subsequently, maybe a

2    week or two after we appeared in front of you, she issued a

3    minute order retracting that, but gave no further guidance on

4    the status of our motion to stay.

5            THE COURT:  But is discovery ongoing in that case?

6            MR. FORTI:  No.

7            THE COURT:  So the parties have stood down, even if

8    there is not a Court Order saying that the discovery is

9    stayed?

10           MR. FORTI:  That is correct.

11           THE COURT:  All right.

12           When are you next up before Judge Kendall?

13           MR. FORTI:  We do not have a date before Judge

14   Kendall.

15           Actually, the next significant date in Ezell is the

16   7th Circuit arguments in early April.

17           THE COURT:  Right, April 4th I think it is.

18           So, it sounds like there is nothing going on in that

19   case at this point other than the 7th Circuit argument, which

20   I know is important, of course.

21           Then the Second Amendment arms, the briefing on the

22   motion to dismiss, that is complete?

23           MR. WORSECK:  Yes.

24           THE COURT:  And is discovery ongoing in that case?

25           MR. WORSECK:  Discovery has not commenced in that

1  case.

2         THE COURT:  Then I have denied discovery on sort of

3  the internal legislative process, so that potential reason

4  drops out as a basis for the 4-month extension.

5         MR. FORTI:  And there is the fourth case, Judge,

6  which we mentioned in our paper.

7         THE COURT:  What is the status of that one?

8         MR. FORTI:  We had an agreed motion until early

9  April, if I recall, to answer, otherwise plead in that case,

10 before Judge Der-Yeghiayan.

11        THE COURT:  All right.

12        I appreciate that there is still quite a bit to do,

13 it looks like.  The City has produced over 1500 pages of

14 discovery so far.  It is now identifying some of these

15 30(b)(6) witnesses.

16        Let me make this comment:  I think the -- I don't

17 find persuasive the change in leadership in CPD as a basis for

18 delaying discovery.  As the plaintiffs point out, some of

19 these discovery requests have been pending for some time, and

20 so unless you are telling me that the superintendent either

21 past or current or future is going to be the one actually

22 picking who is going to be giving these depositions, I don't

23 see why current leadership can't be involved in that.  And

24 so waiting for new leadership in the Chicago Police

25 Department is not a basis for extending discovery.

1    However, your next 2 weeks in March, which is the

2  current fact discovery cut off date, is heavily scheduled with

3  depositions, and given that the City has hired some outside

4  help now, and I think the City is making some good faith

5  efforts to help progress this along, I think that an extension

6  of some extent is warranted.  I think 4 months is too long,

7  especially given as I said I am denying discovery on the

8  internal legislative process, and I don't find the CPD

9  leadership reason persuasive, and given that -- unlike many

10  other cases, there is going to be quite a bit of overlap

11  between factual discovery and expert discovery in this case,

12  I think, because the City relied on experts in fashioning its

13  legislation, and I think the plaintiffs have probably already

14  started their literature search in terms of studies and

15  surveys, so there will be some substantial overlap between

16  factual and expert discovery.  And so here is what I will

17  do:

18    I will extend fact discovery until June 1st, that is

19  a 2-month extension.  Now, initial expert disclosures will be

20  due June 15th instead of a longer period of time.  We will

21  allow July 15th for disclosure of rebuttal experts.  And then

22  all expert discovery will close August 1st.

23    So, the parties ought to be working on sort of their

24  outside experts' discovery and plans, even as fact discovery

25  is going on, but I think that ought to leave enough room in

1   balancing the different interests as an appropriate extension

2   of discovery.

3           Then we have kept Mr. Ambler waiting for a while.

4           What is the City's position on the motions to quash

5   for Mr. Kole and Ghost Industries?

6           MR. WORSECK:  Your Honor, we think that you should

7   deny the motion.

8           This individual and its business were identified by

9   the plaintiffs as someone they may call at trial.  They were

10  identified by the ILAFR as a member of that entity.  Even

11  though they have since apparently withdrawn their membership

12  from that organization, that change in membership status does

13  not change the fact that they possess relevant information to

14  the issues in the case.

15          The ILAFR, its whole premise for being in this case,

16  is that they have members who are ready to step in in Chicago

17  should the ban on gun stores and ranges be enjoined, and

18  serve the residents of Chicago by providing guns and range

19  training.

20          So, that raises the issue of whether or not they

21  really are in a position to do that.  They are claiming we are

22  in a position to do that and it is the ordinance that prevents

23  us from doing that.  We think it is a legitimate issue for

24  inquiry and discovery to see whether or not they really are

25  in a bona fide position economically, financially, and

1    otherwise, to step in to the City of Chicago's economic

2    situation and provide those services.

3            That is the whole reason why they say they need to

4    be a part of this case.  They are not asserting claims.  The

5    ILAFR is not asserting any violation of its own rights.  So

6    this discovery really goes to the core of why the ILAFR says

7    it needs to be in this case.

8            THE COURT:  Let me ask Mr. Thompson specifically:

9            Do you plan on calling Mr. Kole as a witness at

10   trial?

11           MR. THOMPSON:  We do not, your Honor.

12           THE COURT:  So, you deleted him from your anticipated

13   witness list?

14           MR. THOMPSON:  Correct, your Honor.

15           THE COURT:  Okay.

16           MR. THOMPSON:  And we have also represented that we

17   are not going to use any documents in his possession.

18           THE COURT:  Okay.

19           Are there other ILAFR members that you have

20   identified that are still on -- I assume there are, that are

21   still on your anticipated list of witnesses?

22           MR. THOMPSON:  Yes, who would sell firearms in the

23   City of Chicago but for the ordinance, like Mr. Campion, and

24   he was deposed last week, your Honor.

25           THE COURT:  And so I am going to grant the motion to

1  quash, because he is now -- the original grounds for deposing

2  him I think have vanished, and perhaps for good reason, given

3  the other representations that Mr. Ambler has made with regard

4  to Mr. Kole and his very recent obtaining of an FFL and the

5  very few sales that he has made, and he says he has made no

6  plans to enter into business in the City of Chicago.  And

7  given that there are other ILAFR members that you can depose

8  and take discovery from, the burden on Mr. Kole outweighs its

9  value here.

10          MR. WORSECK:  Your Honor, if I may.

11          We have a second reason for wanting to take the

12  discovery going to its relevance, and that is, it is relevant

13  to the City's claim in the case that our regulations do not

14  impose an undo burden on the ability of Chicago residents to

15  acquire firearms or to acquire range training.

16          Mr. Kole, according to the recent information we

17  received, is operating out of Norridge, Illinois, which is

18  just east of O'Hare, it is basically surrounded by the City

19  of Chicago almost on all 4 sides.  And so, basically, that is

20  de facto, a part of the City.  Is he extremely close to City

21  of Chicago residents.

22          The fact that he now has got an FFL, he has

23  apparently started selling arms in the immediate proximity of

24  the City of Chicago, we think that is relevant as to whether

25  or not Chicago residents can, without undo burden, acquire

1    firearms in neighboring municipalities.

2         THE COURT:  What you can do than though, rather than

3    depose him, you can serve a subpoena for documents, because

4    if your position is that there are vibrant firearms dealers

5    close to Chicago then you can, you know, serve a subpoena for

6    documents.

7         But in terms of taking his time at a deposition, I

8    don't think that that is the proper step to take at this

9    point.  Maybe you can do it with documents.

10        So, you should meet and confer with Mr. Ambler on

11   that, and it may be with the 2 sales that he has made so far,

12   that it is not going to be a lot of paperwork he needs to turn

13   over to you.

14        So, the motion to quash is still granted.

15        MR. FORTI:  Your Honor, might we have the

16   opportunity, depending on if -- and we will take your advice

17   and ask for documents, depending on how that plays out, we may

18   be able to re-visit this if appropriate?

19        THE COURT:  I am always willing to re-visit if there

20   is a change in circumstances.

21        MR. FORTI:  Understood.

22        MR. WORSECK:  Thank you.

23        THE COURT:  All right.

24        Then you will withdraw your motion with regard to

25   Mr. Norton because you need to bring that in the Southern

1  District?

2         MR. AMBLER:  Yes, your Honor.

3         THE COURT:  And then the last item is the motion to

4  dismiss Count 5, and I am not going to rule today, but I do

5  have a question for the City on that one.

6         The ordinance provides that each day for which there

7  is an unlawful possession or carrying of a firearm under the

8  ordinance, it is a separate and distinct offense, and there

9  is a minimum of a 20-day jail term and a maximum of a 90-day

10  jail term.

11         So, my question is if the State of Illinois were to

12  prosecute under its Criminal Code or that Wildlife Code, would

13  that necessarily prevent the City from prosecuting that same

14  person for a violation of the ordinance?

15         MR. WORSECK:  I don't believe it would necessarily

16  preclude the City from doing that.  As a matter of practice I

17  believe it is usually the case that the State's Attorney's

18  Office -- to the extent there is a violation of State law in

19  connection with a violation of Municipal law, that City

20  attorneys in connection with the State's Attorney's Office

21  will make decisions as to how best to charge and prosecute

22  the case.  Sometimes that may result in the Municipal charges

23  not being advanced in the prosecution, but that is a

24  discretionary decision that the prosecutors make with respect

25  to each case.

1  THE COURT:  And so it is not -- the Municipal

2  violation would be -- could be brought in the same State Court

3  proceeding?

4  MR. WORSECK:  It is my understanding.  I am not an

5  expert on the manner in which these are prosecuted though.

6  MR. FORTI:  Judge, if we use the example of the prior

7  ban in Chicago, there were many criticisms that the ban was

8  ineffective and people that were critical of the ban would

9  point to the fact that there were very few prosecutions.

10  As a rebuttal to that, we pointed out this very

11  argument that was made, that the State's Attorney would make a

12  judgment, that they would go after penalties that were more

13  severe under the State ordinance, state law, and consequently,

14  there were no proceedings ever brought if there was an action

15  brought on the State law.

16  So, that is at least one example of a situation

17  where the State law, because of the penalties there, the

18  State's Attorney makes a judgment, and the City then, as far

19  as I am aware, never separately would prosecute under the

20  former ordinance.

21  THE COURT:  Right, but the prosecution, if the City

22  were to proceed, would be in Illinois Circuit Court?

23  MR. FORTI:  Yes.

24  THE COURT:  But there is no legal bar, like some

25  form of internal double jeopardy, that would prevent --

1         MR. FORTI:  Judge, I think that is a very

2  interesting question, and I wouldn't want to hazard a guess

3  without talking to the lawyers in our -- in the City that

4  handle that work.  Our group does not.  But I wouldn't want

5  to make a judgment about double jeopardy without looking into

6  that.

7         We can get back to you if you would like.

8         THE COURT:  Since I am going to take it under

9  advisement, I will give you 7 days to file supplemental

10  paper.  Really I am just trying to get a sense of whether

11  there is -- not so much a discretionary matter of practice

12  issue, but is there a legal bar to bringing a prosecution

13  under the ordinance if the State brings a prosecution under

14  its State law?

15         Do you see my point?  I am trying to see what exactly

16  the overlap would be for penalties.

17         THE CLERK:  That will be filed by March 24th, the

18  supplemental papers.

19         THE COURT:  And if you feel the need to reply, you

20  can file 3 days after that, but you might not feel the need to

21  reply.

22         Now, is there anything else we need to do today other

23  than set another status date?

24         MR. THOMPSON:  Just one point of clarification, your

25  Honor.

1          Would it be a reasonable assumption for the parties

2   that on the schedule, absent a compelling change in

3   circumstances, that this discovery schedule will not be --

4   there won't be further extensions?

5          THE COURT:  Right, absent the most extraordinary of

6   circumstances, to use the phrase that the 7th Circuit likes

7   to use in its briefing schedules, these are hard and fast

8   dates.

9          MR. THOMPSON:  Thank you, your Honor.

10          THE COURT:  So let's set a status for right after the

11   fact discovery close, which is the new date of June 1st.

12          THE CLERK:  Okay.

13          We will see you back here on June 6th at 8:30 -- I'm

14   sorry, we will make that at 9:00 o'clock.

15          THE COURT:  All right.

16          Thank you.

17          MR. THOMPSON:  Thank you.

18          MR. WORSECK:  Thank you, your Honor.

19          (Proceedings concluded.)

20

21

22

23

24

25

1    # C E R T I F I C A T E

2

3         I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6    /s/Krista Burgeson, CSR, RMR, CRR      March 17, 2011
     Federal Official Court Reporter       Date
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25