```
              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION


BRETT BENSON, RAYMOND SLEDGE,     )
KENNETH PACHOLSKI, DR. KATHRYN    )
TYLER, ILLINOIS ASSOCIATION OF    )
FIREARMS RETAILERS, MICHAEL       )
HALL, and RICK PERE,              )
                                  )
             Plaintiffs,          )
                                  )
   vs.                            )  No. 10 C 04184
                                  )
THE CITY OF CHICAGO,              )  Chicago, Illinois
RICHARD M. DALEY, et al.,         )  August 4, 2011
                                  )  9:00 o'clock a.m.
             Defendants.          )


    TRANSCRIPT OF PROCEEDINGS - STATUS AND MOTION HEARING
         BEFORE THE HONORABLE EDMOND E. CHANG


APPEARANCES:

   For the Plaintiffs:    BRENNER, FORD, MONROE & SCOTT,
                          LTD.
                          MR. STEPHEN A. KOLODZIEJ
                          33 North Dearborn Street
                          Chicago, IL 60602
                          312-781-1970
                          skolodziej@brennerlawfirm.com


   (and telephonically)   COOPER & KIRK, PLLC
                          MR. DAVID H. THOMPSON
                          1523 New Hampshire Avenue, N.W.
                          Washington, DC 20036
                          202-220-9600
                          dthompson@cooperkirk.com
```

```
 1   For the Defendants:    CITY OF CHICAGO, DEPARTMENT OF
                            LAW
 2                          MR. MICHAEL A. FORTI
                            30 North LaSalle Street
 3                          Chicago, Illinois 60602
                            312-744-9010
 4                          mforti@cityofchicago.org

 5                          and

 6                          MAYER BROWN LLP
                            MR. RANJIT J. HAKIM
 7                          71 South Wacker Drive
                            Chicago, Illinois 60606
 8                          312-701-8758
                            courtnotifications@mayerbrown.com
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23          FEDERAL OFFICIAL COURT REPORTER
                 MS. KRISTA BURGESON
24             219 South Dearborn Street
                Chicago, Illinois 60604
25                   312-435-5567
            krista_burgeson@ilnd.uscourts.gov
```

| | |
|---|---|
| 1 | THE CLERK: 10 C 4184, Benson versus the City of |
| 2 | Chicago. |
| 3 | THE COURT: We will get Mr. Thompson on the line. |
| 4 | THE CLERK: Okay, Judge. |
| 5 | THE COURT: If you can recall the case. |
| 6 | THE CLERK: 10 C 4184, Benson versus the City of |
| 7 | Chicago. |
| 8 | THE COURT: I will ask the lawyers in court to first |
| 9 | announce their appearances for the record. |
| 10 | MR. HAKIM: Ranjit Hakim for the City of Chicago. |
| 11 | MR. FORTI: Michael Forti, your Honor, for the City. |
| 12 | MR. KOLODZIEJ: Steven Kolodziej, local counsel for |
| 13 | the plaintiffs. |
| 14 | THE COURT: And on the phone? |
| 15 | MR. THOMPSON: Good morning. David Thompson for the |
| 16 | plaintiffs. |
| 17 | And I do appreciate you allowing me to appear |
| 18 | telephonically. |
| 19 | THE COURT: Okay. Very well. |
| 20 | So, we have the defendants' motion to extend the |
| 21 | expert disclosure date, and I have read the motion and the |
| 22 | response. |
| 23 | Let me ask the defendant, who are the experts and |
| 24 | what are the subject matters upon which they are going to |
| 25 | opine that are the subject of this motion? |

1  MR. HAKIM: Your Honor, you are asking us to identify
2  the names of the actual experts?
3  THE COURT: Yes.
4  MR. HAKIM: So we have retained Phil Cook from Duke
5  University, who will be opining on the public carriage ban and
6  the restriction of firearm sales in the City of Chicago. We
7  have retained Daniel Webster, Johns Hopkins University, who
8  will be testifying as to the single operable weapon
9  regulation, and we have retained Joe Vince, a former ATF
10 agent, from a firm called Crime Gun Solutions who will be
11 speaking largely to the safe storage of weapons and maybe
12 other topics as well.
13 THE COURT: And so who of the three had a personal
14 matter, such as a funeral, arise?
15 MR. HAKIM: Professor Cook's father -- not father,
16 I'm sorry, uncle passed away, and the funeral was last
17 Friday.
18 THE COURT: And then as to Mr. Webster and Mr. Vince,
19 they had international conferences to attend?
20 MR. HAKIM: Both Professor Cook and Professor Webster
21 had conferences to attend.
22 Mr. Vince has not had a conference to attend.
23 THE COURT: Okay.
24 I will tell you what I am inclined to do, and then
25 you can react to that. And Mr. Thompson can have an

1  opportunity as well.
2  August 15th was the date that the City had sought,
3  and it was granted over the plaintiff's objection.  I did say
4  in the order that there would be no further extensions.
5  However, I do understand if an unexpected personal matter
6  arose, you know, for example, the need to attend a funeral
7  and having a family member pass away.  And so as to Professor
8  Cook, I am willing to grant the extension of 11 days, and then
9  I will hear from Mr. Thompson as to whether he would like an
10 extension on his rebuttal and the amount of time he needs to
11 depose that expert.
12 But as to Mr. Webster and Mr. Vince, it doesn't sound
13 like there is anything that arose after the filing of the
14 motion that could not be anticipated, and so I am inclined to
15 disallow the extensions as to those 2 experts.
16 So, let me hear your reactions.
17 MR. HAKIM:  Your Honor, I think that -- and certainly
18 we understood the August 15th deadline to be a hard and fast
19 deadline, and if it were up to the law department or Mayer,
20 Brown, or any of our employees to meet that deadline, every
21 other obligation would be re-prioritized and we wouldn't be
22 here.
23 The difficulty for us is we don't necessarily have
24 that control over the schedules of Professor Webster, of Joe
25 Vince, of Professor Cook, and that is -- that is in part --

1  that is part of their value, they are somewhat independent and
2  can offer the Court perspective that is not necessarily the
3  direct mouthpiece of one of the parties.
4  I think, you know, you were -- the Court granted us
5  an extension based on the fact that particularly the
6  academics, Professor Webster and Professor Cook, had prior
7  obligations and couldn't meet the initial June 15th deadline.
8  We spoke to him immediately after the June 7th extension, they
9  thought they could make the August 15th deadline, but they
10 continued to -- both Professor Webster and Professor Cook are
11 experts, not just in a legal sense, but are experts in that
12 they are conducting the studies that are relevant to the
13 issues in this case, and they continue to conduct those
14 studies, continue to give lectures on those topics, and they
15 have done so throughout the course of the summer.  In between
16 that time they have read the fact discovery, they have met
17 with us, and have worked through their own studies, worked
18 through additional studies, and are currently drafting expert
19 reports.
20 Certainly on June 7th they thought they could meet
21 the August 15th deadline, and if they were our direct
22 employees, maybe we would have asked them not to attend a
23 conference that has so put them in a bind now coming up
24 towards the August 15th deadline.  But one, we don't
25 necessarily have that level of control over them, and two, I

think perhaps philosophically it is hard to ask someone to sort of stop being an expert in the field for the two months it takes to get an expert report written. I think that there may be a value to some of the conferences that they have attended, people they have spoken with, that in some ways seems perhaps inconsistent with the direction that this is heading, sort of asking for the best social science research to back these gun control regulations.

If we can't look to people like Professors Webster and Cook, then instead we are looking maybe toward the type of experts you generally see in commercial cases that are coming out of these sort of expert mills where you have much more control over their schedules, but we eschew that approach, and honestly, it may be the case that we pay the price for that, but we thought it was important to go with sort of the leading lights on this topic.

MR. FORTI: One other small point, your Honor, if I could make.

Certainly it was ultimately my judgment, and it was only after careful consideration that we decided to approach the Court again, being extremely mindful of the Court's deadlines, and we want to affirm to the Court that we are extremely respectful of the Court's schedule.

Nevertheless, we would ask you to put this request in the context of this entire case, where I think if we look at

the City's performance in terms of adhering to schedules, we have been very diligent, and as I can recall, there was only a single motion to compel that was filed against the City, and ultimately, the Court ruled in the City's favor, and so that motion to compel, because it was an interesting legal question, was not filed presumably by the plaintiffs because there was any delay on the City's part, but instead, there was an important legal issue which the Court had to consider, and again, the Court ruled in the City's favor.

So I would just ask that although it is with extreme reluctance that we are coming back to the Court, and we certainly understand the Court's position and we wish to adhere to all of the Court's deadlines, that I think it is fair to put this into context, and if we look at it in the context, I think the City has been acting diligently and I would reiterate, I think there is little, if any, prejudice to the plaintiffs for such a short extension.

THE COURT: Okay. For the plaintiffs?

MR. THOMPSON: Yes, Judge. And very briefly, your Honor.

I would just say taking these experts one at a time I haven't heard anything with respect to Mr. Vince as to why he needs an extension. He is not an academic, he hasn't gone to any seminars, and he hasn't had any personal tragedies in his life. So I don't think he should get any extension.

Case: 1:10-cv-04184 Document #: 137 Filed: 09/08/11 Page 9 of 15 PageID #:1982

9

As for Professor Webster, likewise. I haven't heard anything unforeseen. Moreover, he testified in front of the City Council in the hearings over a year ago, so he obviously has been fully intellectually engaged in this matter for a long time.

And as to Mr. Cook, we would be -- if the Court is going to grant an 11-day extension, we would simply ask that we have an extra 11 days to respond with the rebuttal report, and to take the deposition, and that those deadlines just be moved back 11 days with respect to Professor Cook.

THE COURT: Did Mr. Webster or Professor Webster testify at the hearings for the ordinance?

MR. THOMPSON: Yes, that is correct, your Honor.

MR. FORTI: He did, your Honor, but speaking candidly, we had little contact with Professor Webster since then, and I don't want to go into all of the machinations about why Professor Webster was a challenge, let's say, to re-engage, but contrary to Mr. Thompson's suggestion, although he did spend a morning testifying a year ago, given the fact as my colleague has pointed out, he is quite engaged on a whole array of things in academia. I think it is wrong to suggest that he has been engaged as Mr. Thompson is suggesting on this particular matter. It was only after we were able to retain him that we were able to get part of his energy to focus on this.

1       THE COURT: All right.

2       In light of the personal matter that arose with
3 Professor Cook I will extend the disclosure date for him for
4 11 days until August 26th. And likewise, the rebuttal report
5 will be extended 11 days from September 15th, so that will be
6 September 26th. The plaintiffs can have another 11 days
7 beyond September 30th to depose him, if they find that
8 necessary.

9       The motion will be denied as to Professor Webster and
10 Mr. Vince. I understand the desire to retain experts who are
11 foremost in their field and constantly engaged, and that may
12 very well mean that they are busy, but there was a deadline
13 that was firmly set, that was asked for by the defendants, and
14 it is not a good reason to extend a deadline for the Professor
15 to continue to engage in other matters if that means missing
16 the deadline that had already been set.

17       So, the deadlines will remain in place for
18 Mr. Webster and Mr. Vince.

19       MR. THOMPSON: And your Honor, I would just have one
20 other request, which is to the extent the plaintiffs file a
21 report on the carriage issue and the sales issue that
22 Professor Cook is going to address, we would like to file that
23 on August 26th as well so that Professor Cook doesn't get a
24 de facto rebuttal report where he has had our report on those
25 subjects for 11 days.

| | |
|---|---|
| 1 | MR. HAKIM: That is fine. |
| 2 | THE COURT: That is granted. |
| 3 | MR. THOMPSON: Thank you, your Honor. |
| 4 | THE COURT: And let me just raise one other issue in |
| 5 | light of the Ezell case, and just going forward. |
| 6 | At the last status both sides had reported that they |
| 7 | anticipate filing dispositive motions, you know, at the end of |
| 8 | expert discovery. I take it that is still the case? |
| 9 | MR. THOMPSON: Yes, your Honor, for the plaintiffs. |
| 10 | THE COURT: And for the defendants? |
| 11 | MR. FORTI: I would envision that as well, Judge. |
| 12 | THE COURT: Okay. |
| 13 | So then going forward from there, what I would like |
| 14 | you to think about, and maybe talk about with each other, is |
| 15 | whether it makes sense to try to submit in the dispositive |
| 16 | motions the decision as if it were some sort of stipulated |
| 17 | bench trial that on a stipulated record -- and when I say |
| 18 | stipulated, I mean not obviously as to the facts themselves, |
| 19 | but as to the testimony, and what I am getting at is one could |
| 20 | envision perhaps, you know, if the evidence is viewed in the |
| 21 | light more favorable to one party than the other, that cross |
| 22 | motions might have to be denied as to certain issues or |
| 23 | certain regulations, and I am completely speculating now, this |
| 24 | is not a forecast in any way, I just want to try to nail down |
| 25 | procedurally what will happen and see if we can do this as |

1 efficiently as possible.

2 But one can also envision then that a bench trial in
3 which there are live witnesses might not illuminate further
4 the depositions, right, the direct examinations and the cross
5 examinations that might occur, and when I say direct
6 examinations, basically the expert reports themselves, as if
7 they were submitted as direct examinations, and then you can
8 have depositions where you cross those experts.

9 So, what I would like you to think about, and again,
10 talk to one another, is does it make sense to not only submit
11 dispositive summary judgment motions, but in the alternative,
12 or actually I guess additionally, if based on the summary
13 judgment standard a Court would not be able to grant summary
14 judgment to either party on an issue, whether that means we
15 really need some sort of live testimony, or instead, would you
16 be willing to submit it for decision based on the record.

17 Am I making myself clear?

18 MR. HAKIM: A trial on the paper, Judge?

19 THE COURT: Exactly.

20 MR. THOMPSON: Yes, your Honor, we understand, and we
21 have familiarity with this issue in terms of these are
22 legislative fact questions like, does carriage of a firearm
23 outside the home promote public safety or decrease public
24 safety, and we think the Court -- we will think about this,
25 but our initial reaction is that that makes a lot of sense

1  for the Court to consider this on the paper, and I believe
2  that happens quite frequently.
3      MR. FORTI: Your Honor, we will certainly reflect on
4  it, but I would say we need to proceed in a cautious fashion.
5  There are many purely legal questions here that would be
6  perfectly appropriate for resolution. We will have to think
7  through whether there are some facts that might be contested,
8  that if we were both to stipulate to, in effect, we would be
9  waiving a trial that we would otherwise be entitled to.
10     So I am not pre-judging, I think it is an interesting
11 idea, but we will have to confer with the plaintiffs on that
12 first.
13     THE COURT: Right.
14     And what I mean by a stipulated submission, again, is
15 obviously you are going to disagree with each other as to what
16 inferences and what facts should be concluded from the
17 testimony and the studies, okay? But it is not clear to me
18 that live testimony where, you know, I am looking at the
19 demeanor of witnesses, is one that makes sense as opposed to,
20 you know, considering a written record.
21     Now, that is not going to make sense if, when you
22 depose the experts, you in some way hold back on your cross
23 examinations, and so I raise this now so as you head into
24 depositions you think about the possibility that this may end
25 up being your cross examination of each other's experts.

1  Now, I am not likely to compel this, okay, because
2  there is -- if summary judgment isn't proper, then we are
3  going to head to a trial if one or the other side wants it,
4  but it may be that I fashion a more limited trial where the
5  direct examination, for example, is submitted on the papers,
6  and then you just start with cross examination.  That is a
7  possibility.
8  But clearly there will be legal issues as to
9  historically what ordinances and what regulations were in
10 place at the time of the adoption of the 2nd Amendment.  But
11 even as to these additional facts, once you decide what level
12 of scrutiny applies, they are -- it is not clear to me that
13 the 7th Circuit wouldn't just be looking at the written
14 record in any event and trying factual conclusions rather than
15 relying on my conclusions after some in court testimony.
16 So, anyway, it is something to think about before you
17 head into the depositions, and then perhaps at the next status
18 we can have a little bit of a better idea of your respective
19 positions on that.
20 MR. FORTI:  I might also add, Judge, even without
21 that layer there may be, like in all cases, certain counts
22 that may be more amenable to summary judgment, and the two
23 that I can think of as we stand here is, one, as the Court may
24 be aware, the City has repealed the ban on firing ranges and
25 that, in our judgment, as we have filed before Judge Kendall,

Case: 1:10-cv-04184 Document #: 137 Filed: 09/08/11 Page 15 of 15 PageID #:1988

15

1  we argue that that count is moot; and secondly, as the Court
2  is presumably aware, the carry challenge at the State level is
3  on going in two southern or central courts in Illinois, and
4  that will give further guidance to all of us as to the merits
5  of the carry law.
6          THE COURT: Okay.
7          So, I will see you at the next status, October 6th,
8  and we can discuss it further.
9          MR. THOMPSON: Thank you, your Honor.
10         MR. KOLODZIEJ: Thank you.
11         MR. HAKIM: Thank you.
12         MR. FORTI: Thank you, your Honor.
13         (Proceedings concluded.)
14
15
16              **C E R T I F I C A T E**
17
18
19         I certify that the foregoing is a correct transcript
20  from the record of proceedings in the above-entitled matter.
21
22  /s/Krista Burgeson, CSR, RMR, CRR       August 4, 2011
    Federal Official Court Reporter         Date
23
24
25