```
         UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF ILLINOIS
               EASTERN DIVISION


BRETT BENSON, RAYMOND SLEDGE,      )
KENNETH PACHOLSKI, DR. KATHRYN     )
TYLER, ILLINOIS ASSOCIATION OF     )
FIREARMS RETAILERS, MICHAEL        )
HALL, and RICK PERE,               )
                                   )
              Plaintiffs,          )
                                   )
vs.                                )  No. 10 C 04184
                                   )
THE CITY OF CHICAGO,               )  Chicago, Illinois
RICHARD M. DALEY, et al.,          )  October 12, 2011
                                   )  9:00 o'clock a.m.
              Defendants.          )
```

**TRANSCRIPT OF PROCEEDINGS - STATUS AND MOTION HEARING**
**BEFORE THE HONORABLE EDMOND E. CHANG**

APPEARANCES:

```
For the Plaintiffs:    BRENNER, FORD, MONROE & SCOTT,
                       LTD.
                       MR. STEPHEN A. KOLODZIEJ
                       33 North Dearborn Street
                       Chicago, IL 60602
                       312-781-1970
                       skolodziej@brennerlawfirm.com


  (and telephonically) COOPER & KIRK, PLLC
                       MR. DAVID H. THOMPSON
                       1523 New Hampshire Avenue, N.W.
                       Washington, DC 20036
                       202-220-9600
                       dthompson@cooperkirk.com
```

```
 1   For the Defendants:     CITY OF CHICAGO, DEPARTMENT OF
                             LAW
 2                           MR. MICHAEL A. FORTI
                             MR. ANDREW W. WORSECK
 3                           30 North LaSalle Street
                             Chicago, Illinois 60602
 4                           312-744-9010
                             mforti@cityofchicago.org
 5                           aworseck@cityofchcago.org

 6                           and

 7                           MAYER BROWN LLP
                             MR. RANJIT J. HAKIM
 8                           71 South Wacker Drive
                             Chicago, Illinois 60606
 9                           312-701-8758
                             courtnotifications@mayerbrown.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23              FEDERAL OFFICIAL COURT REPORTER
                     MS. KRISTA BURGESON
24                219 South Dearborn Street
                    Chicago, Illinois 60604
25                       312-435-5567
               krista_burgeson@ilnd.uscourts.gov
```

```
 1               THE CLERK:  Mr. Thompson?  Are you there?
 2               MR. THOMPSON (telephonically):  Yes, and good
 3   morning.
 4               THE COURT:  Okay.
 5               THE CLERK:  I will call the case.
 6               10 C 4184, Benson versus City of Chicago.
 7               MR. WORSECK:  Good morning, your Honor.  Andrew
 8   Worseck for the defendants.
 9               MR. HAKIM:  Good morning, your Honor.  Ranjit Hakim
10   from Mayer Brown for the defendants.
11               MR. FORTI:  And good morning, your Honor.  Michael
12   Forti on behalf of the defendants.
13               MR. KOLODZIEJ:  Good morning.  Steven Kolodziej,
14   K-o-l-o-d-z-i-e-j, local counsel for plaintiffs.
15               THE COURT:  And then on the phone?
16               MR. THOMPSON (telephonically):  Good morning, your
17   Honor.  David Thompson for the plaintiff.
18               THE COURT:  Good morning.
19               We are here on the City's motion, and I have reviewed
20   the filings.
21               Is there anything either side would like to add?
22               MR. THOMPSON (telephonically):  Yes, your Honor.
23               This is David Thompson, and I would like to just make
24   one procedural point.
25               There was some backing and forthing in the briefs
```

1  about the City's omitting our position, our compromised
2  position, and I just wanted to confirm that the City was
3  absolutely acting in good faith, it was the City's
4  understanding, we did not want our compromised position
5  shared, and they were acting in good faith.
6      So, I wanted to remove any suggestion to the
7  contrary.
8      THE COURT: I figured as much, based on the reply.
9      Is there anything that the City would like to add?
10     MR. WORSECK: Your Honor, I would like to add two
11 things briefly.
12     First, subsequent to the filing of our motion we have
13 given further thought to whether we feel we need to issue a
14 subpoena to Dr. Kleck, K-l-e-c-k, and we have concluded that
15 we do. We think there are numerous instances in the report
16 where he cites things like the reworking of data from a
17 published study, reworking that he did himself. We haven't
18 seen that reworking. He cites things like provisional papers
19 that he has authored that, to our understanding, aren't in a
20 final form and haven't been peer reviewed. If that remains
21 the case, then we would need to see if Dr. Kleck has further
22 finalized those sorts of papers, and if not, then we would
23 need -- perhaps even if so, we would need to ask him for the
24 underlying data and methodologies that he used in connection
25 with those sorts of unpublished papers so that we could fairly

1  evaluate his bases and methodologies.
2       Our plan is as follows: We would like to issue the
3  subpoena by next Monday, the 17th, and we would envision the
4  plaintiff's having -- or Dr. Kleck having two weeks to respond
5  to that. That would put the response at October 31st. And
6  then we would ask only for a week after receiving his response
7  to take his deposition. So we were envisioning, if it works
8  with everyone else's schedules, proceeding with his deposition
9  on November 7th.
10      We are quite cognizant of the Court's aversion to
11 moving the dates in this case any further. The reason in our
12 motion we asked to go into November with this matter is
13 primarily for two reasons, the nature of the report and the
14 amount of time defendants need to prepare for taking the
15 deposition, but also Dr. Kleck's own professional schedule.
16 To our knowledge, it limits a significant number of days over
17 the next weeks that he would be available.
18      So, in order to have enough dates to play with where
19 all the parties can work out a schedule, we need to look into
20 November in order to make things work.
21      The second thing I would like to add goes to our
22 request to extend the number of hours of the deposition, and
23 we discuss in our papers the bases for why we think that is
24 appropriate.
25      Without that number of hours, we would effectively be

1  forced to put Dr. Kleck on the stand at trial without having
2  fairly discovered the bases for his opinions and methodology,
3  and we would be surprised, we would not have a fair chance
4  during discovery to fully explore his report, and we would be
5  forced to put him on at trial blindly and would not have fair
6  notice of what his testimony would be. That is an anthema to
7  the expert discovery provisions of the Federal Rules, and that
8  is laid out in detail in the committee notes to those rules,
9  some of which we cite in our papers.
10            But I want to give the Court one more example
11 supporting our request for additional hours. In Dr. Kleck's
12 report he has four tables where he groups various sets of
13 studies according to their subject matter, and so forth, and
14 he ranks those studies based on whether he thinks the
15 methodology they used was sound and the conclusions they
16 reached were sound.
17            In table three he ranks 32 studies relating to the
18 relationship between gun availability and homicide, and in
19 table four he has 18 studies relating to the frequency of
20 defensive gun uses. I think it is fair to say that those two
21 issues are probably the two biggest issues in his report, and
22 between those two tables, he has 50 studies that he cites and
23 critiques, applauds, but in any event, he is taking positions
24 on the validity of 50 studies in only those two tables.
25            If the defendants were to spend just ten minutes per

1 study across those 50 studies, that would in itself take eight
2 and a half hours of deposition time, and I think it is fair to
3 say that at least for some of those studies more than ten
4 would be necessary to fairly and accurately discover his
5 reasons for critiquing them, why he thinks they are deficient,
6 and the bases therefore.
7 So just that little piece of his report would consume
8 more than seven hours of deposition time alone, needless to
9 say he cites many more than 50 studies, he cites at least 118
10 in his report, and in many other instances he makes assertions
11 and statements for which he provides no support. And in those
12 instances, of course, we would need to spend time with him in
13 deposition asking him a series of questions to get at the
14 bases for those statements and to test those bases.
15 So for both of those reasons we think it would be
16 appropriate and fair and that the defendants would be unduly
17 prejudiced if they were not granted leave to take Dr. Kleck's
18 deposition according to the schedule I outlined earlier here
19 today, and also to have leave to take 14 hours of deposition
20 time.
21 THE COURT: In response?
22 MR. THOMPSON (telephonically): Yes, just very
23 briefly, your Honor.
24 We are hearing something new for the very first time
25 this morning about the need for the deposition and the scope

1 of the report.

2 I would just make the point, number one, on the
3 number of hours, the City is trying to renegotiate a schedule
4 that we agreed to, we negotiated with them, which provided for
5 one day for them to take -- one business day for them to take
6 Dr. Kleck's deposition. They are now saying the scope of the
7 report is large. Well, it corresponds precisely with the
8 scope of their expert reports, and they were familiar with the
9 scope of those reports when they agreed to this schedule.

10 They talk about tables that look at 50 different
11 studies, many of those tables make the simple point that
12 explain it to where variables were omitted. That is clean on
13 the face of the documents and no questions need to be asked on
14 those.

15 So we really think this is trying to reopen something
16 that was agreed upon, it was ordered by the Court, and we
17 object to the City now coming in and trying to reopen
18 everything for discussion and negotiation.

19 THE COURT: Okay.

20 Do you have a response with regard to the unpublished
21 or tentative studies?

22 MR. THOMPSON (telephonically): Well, the fact that
23 they are unpublished or tentative, we believe we have provided
24 them with all of the studies, and whether a study is published
25 or unpublished doesn't affect the deposition questioning. If

it were published and peer reviewed, it is not as though they would get the work papers underlying it when they went into this and agreed to this schedule of one week to take his deposition. They were aware of the fact that it would be -- that he would be citing to studies and they wouldn't have his work papers for it. Whether it is published or not I think it is a red herring.

THE COURT: I am sorry, I thought, and maybe I misunderstood, that the City is arguing that there are unpublished papers relied on or cited by Dr. Kleck which have not been provided to the City.

So, Mr. Thompson, are you disputing that?

MR. THOMPSON (telephonically): Your Honor, my understanding was that every study that was cited to was either provided or there was a URL link. If that is not the case, we will remedy that within 48 hours to the extent that there is an unpublished study that the City does not have access to. But we don't think that issue warrants the sort of extension that they are looking at.

We offered October 24th or October 28th, and if we get them -- if we get these provisional studies within 48 hours, if they didn't have access to them, I think that would resolve this problem.

MR. WORSECK: Your Honor, if I may just clarify briefly.

1           The topics that I listed here today, we do intend to
2 seek documents relating to those in the subpoena.  We are
3 still evaluating and consulting with folks on our side as to
4 whether there would be any other materials that we would need
5 to subpoena.  The report is extremely dense, as your Honor is
6 aware.
7           So, I don't want the Court to be under the impression
8 that those are the only things we would be seeking in a
9 subpoena.  There may be additional items, and that is why we
10 are asking to have until next Monday to issue that subpoena.
11           THE COURT:  What possible other items?
12           MR. WORSECK:  There is, for instance, a 2008 study by
13 Dr. Kleck, co-authored with a Mr. Kovansik and a Mr. Schaffer,
14 or perhaps Dr. Schaffer, relating to the causal effect of gun
15 prevalence and the homicide rate.  That was denoted as a
16 discussion paper in a journal published by the -- or put on
17 the web by the Institute for the Study of Labor.  That own web
18 site indicates that this paper is a provisional paper and that
19 interested parties should contact the authors of the papers to
20 find out if there are any further updates, finalizations,
21 things of that nature, of the work.  That is one thing we
22 would be interested in seeing.
23           Dr. Kleck spends a great deal of time in his report
24 criticizing an analysis done by the Violence Policy Center
25 concerning the number of concealed carry permit holders who

subsequently commit crimes, and he critiques their classification of certain crimes as being germane to that study, and he goes through very discreetly crime by crime and says, this shouldn't have been considered, or this wasn't really a gun crime, this was committed with some other implements, or he has other critiques as to the Violence Policy Center, including those instances in his report.

So, it seems in order to make that critique he would have to have some sort of basis relating to that discrete event, police reports or interviews or something, where he has some understanding of what happened in order for him to critique the Violence Policy Center's inclusion of that event in their study. If he has those kinds of things, we would obviously be interested in seeing those.

He cites an NRA publication from 1990, a very small excerpt from that, and we think that it would be useful to have the entire publication to see if his quotation of the excerpt is fair.

He also makes reference to data from 1984 supplied by the Department of Health and Human Services as related to the number of suicides committed with guns. We would be interested in seeing this data.

MR. THOMPSON (telephonically): Your Honor, this is the first we are hearing that the City does not have access to certain data. The reality is when their experts provided

1   their reports, we did not get the studies that were cited.
2   These materials that are cited are publically available, and
3   to the extent that they weren't publically available, it was
4   our effort to provide them to the City.
5   　　　　I will go back and double check and make sure that
6   anything that is not publically available, the City has within
7   48 hours, and to the extent that there is something publically
8   available but the City is having trouble finding it, we are
9   happy to extend them that courtesy as well, but I really think
10  nothing that Mr. Worseck has said justifies the sort of delay
11  they are looking at, even the provisional paper they are
12  talking about.
13  　　　　Professor Kleck has listed what he is citing and what
14  he is relying upon, he is relying upon the provisional paper,
15  and that is why we cited to that, and they have that.
16  　　　　MR. FORTI: Your Honor, if I can just make one point,
17  because I think Mr. Thompson is missing the main thrust of
18  what Mr. Worseck is saying.
19  　　　　Certainly it is one point that we don't have the
20  actual documents, and even if they make a last ditch effort to
21  supply those within 48 hours, the main point is given the
22  voluminous report and all of the expert reports cited in that
23  report, we clearly need more than seven hours, and that is
24  what is primarily driving this.
25  　　　　In a case of first impressions like this case is, it

1  seems abundantly reasonable, particularly given the amount of
2  time that the plaintiffs had to take for our three witnesses
3  for us to be allowed to thoroughly examine the report and
4  these documents that we -- that Mr. Worseck alluded to, that
5  we don't even have in our possession.  It is not unreasonable
6  for us to have those materials, given the Court's admonition
7  that there should be no surprises at trial.
8       It seems to me the thrust of our position is, and we
9  needed Court relief, is to have a thorough deposition, which
10 would exceed seven hours, and then secondly, I would only
11 re-echo that we have tried to be reasonable with the
12 plaintiffs all along, but trying to accomplish a Monday and
13 Friday schedule, pushes us back into November.
14       THE COURT:  What I see are really two separate
15 issues, or maybe three.
16       With regard to any documents that have not been
17 produced, I think much of what the City is citing are -- they
18 sound like either provisional papers that the plaintiffs say
19 they have already supplied or are willing to supply within
20 48 hours, and so I will order the parties to confer and the
21 plaintiffs will supply any nonpublicly available documents
22 to the defendant within that 48-hour time period.
23       But if this is the first that you have been raising
24 this with the plaintiff, and I am not going to make the
25 plaintiffs go out and click on the URL links for you, download

1  a PDF, and send them to you.  We are only talking about
2  nonpublically available documents that the plaintiff is under
3  an obligation to produce to the defendant.
4  　　　　With regard to when the deposition should occur, of
5  course discovery has already formally closed now, and the City
6  really ought not to have been surprised by the extent of the
7  -- of Kleck's report.  It seems pretty clear in the
8  correspondence that the plaintiffs were going to produce just
9  one expert, and so that one expert was going to respond to all
10 three of the City's experts, and as I said, it should not have
11 been a surprise that there was going to be an extensive report
12 coming back from the plaintiffs.
13 　　　　Having said that, obviously the City needs to take
14 Kleck's deposition, but rather than extend it to November 7th,
15 that deposition will occur either on October 24th or October
16 28th, and I will leave it to the City to choose between those
17 two.  I have a feeling I know which one they will pick.
18 　　　　And then with regard to the number of hours, I don't
19 think it is quite accurate to correspond the number of hours
20 in total taken by the plaintiffs in taking the three experts
21 of the City, because there was undoubtedly a lot of -- not a
22 lot, but some wind up in examining him on qualifications and
23 so on, that you only need to do one time with Kleck, whereas
24 the plaintiff's had to do it each time with each of the City's
25 experts.  And a substantial portion, not by any means all of

1   it, but a substantial portion of Kleck's report is aimed at
2   poking holes, whether logical or common sense or otherwise, in
3   the three experts, the three City experts.  It is not as if
4   the entirety of the 46-page report is an affirmative setting
5   forth of an expert opinion backed by studies that would need
6   to be examined to the same extent that the portions that
7   simply poke holes in the defendant's experts would need to be
8   examined.
9              Having said that, seven hours does seem like a tight
10  time period, and so what I will allow is a ten-hour
11  deposition, which means that -- I guess what that means is you
12  probably will have to take it over October 24th and October
13  28th, but I will leave you to discuss how you will accomplish
14  that over a two business day period, but it will be a total of
15  ten hours.
16             Okay.  Anything else that needs to be clarified for
17  today?
18             MR. THOMPSON (telephonically):  Your Honor, I think
19  the only other point is I think we were all supposed to get
20  together next week on the 17th, I believe, and would it make
21  sense to deter that until after the close of expert
22  discovery?
23             THE COURT:  It would.
24             So, we will vacate whatever the next status date was
25  and we will reset it for -- well, let's say early November.

1     MR. FORTI: Your Honor --
2     I'm sorry.
3     THE COURT: Go ahead.
4     MR. FORTI: One other clarification so that we don't
5  need to come back to you in a panic perhaps.
6     If we are required to take the deposition on the
7  24th and 28th, and yet the defendants think it is appropriate
8  either to get the cooperation of the plaintiffs and get the
9  materials that we would ask for by subpoena or if we choose to
10 issue a subpoena, what I am concerned about is that the
11 subpoena is issued and the plaintiffs, albeit in good faith,
12 object to most of the materials, we are then left with taking
13 the deposition with still unanswered questions based on the
14 subpoena, and I would be extremely reluctant, given the
15 Court's view, to come back here after those depositions to say
16 things remain unfinished.
17    So, I want to front the potential subpoena problem
18 and its response with you and the plaintiffs now.
19    THE COURT: Yes, and you are free to come back to me
20 before October 24th if you have a problem with obtaining any
21 other documents. I will say that you received the report on
22 September 30th, after business hours. It is now October 12th.
23 And for this moment in this hearing to be the first time that
24 the plaintiff is hearing that there is some potential
25 additional documents that the City needs does not -- is not a

1 good sign for how responsive I will be in ordering the
2 plaintiff to turn over any more documents beyond what this
3 next conferral with the plaintiff is going to produce.
4     All right.
5     THE CLERK: That will be November 3rd at 9:15.
6     THE COURT: Anything else for today?
7     Mr. Thompson?
8     MR. THOMPSON (telephonically): No, your Honor.
9 Thank you very much for your time.
10     MR. WORSECK: Thank you, your Honor.
11     THE COURT: Thank you.
12     (Proceedings concluded.)

**18**

1 **C E R T I F I C A T E**

2

3

4     I certify that the foregoing is a correct transcript

5 from the record of proceedings in the above-entitled matter.

6

7 /s/Krista Burgeson, CSR, RMR, CRR    October 16, 2011
   Federal Official Court Reporter        Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25