**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ILLINOIS ASSOCIATION OF** | ) | |
| **FIREARMS RETAILERS, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-CV-4184** |
| | ) | **Judge Edmond E. Chang** |
| **CITY OF CHICAGO, ET AL.,** | ) | **Magistrate Judge Geraldine Soat** |
| | ) | **Brown** |
| **Defendants.** | ) | |

**INDEX OF APPENDIX OF EXHIBITS TO**
**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGMENT**

**VOLUME ONE OF FOUR**
**Pages 1 to 57**

**Description**                                                                 **Appendix Page**

Chicago City Council Committee on Police and Fire Legislative Findings.................. 1

Chicago Responsible Gun Ownership Ordinance. ...................................... 4

Statute of Northampton (1328)....................................................... 33

Proclamation of Richard II (Nov. 2, 1381). ........................................... 34

Proclamation of Elizabeth I (July 26, 1579). ......................................... 36

Proclamation of Elizabeth I (December 2, 1594)....................................... 38

Robert Gardiner, The Compleat Constable 18 (3d ed. 1708). .......................... 39

1686 New Jersey Statute (ch. IX) .................................................... 47

1795 Massachusetts Statute (ch. XXV)................................................ 50

1792 North Carolina Statute (ch. III)................................................ 52

1786 Virginia Statute (ch. XXI)................................................... 54

1801 Tennessee Statute (ch. 22). .................................................. 56

1821 Tennessee Statute (ch. 13). .................................................. 57

1868 Florida Statute (ch. VII, sec. 14)............................................ 58

1879 Tennessee Statute (ch. CLXXXVI, sec. 1)...................................... 63

1876 Dodge City, Kansas Ordinance (sec. XI)....................................... 66

1875 Wyoming Statute (ch. 52, sec. 1)............................................. 71

1721 Pennsylvania Statute (ch. CCXLV, sec. IV).................................... 72

1751 Pennsylvania Statute (ch. CCCLXXXVIII). ..................................... 77

1746 Massachusetts Statute (ch. X)................................................ 80

1786 New York Statute (ch. 43). .................................................. 82

1817 New Orleans, Louisiana Ordinance (art. 12). ................................. 85

1817 Moyamensing Township, Pennsylvania Ordinance (sec. II) ...................... 89

1815 Northen Liberties, Pennsylvania Ordinance (sec. VIII). ...................... 90

1813 Spring Garden, Pennsylvania Ordinance (sec. V)............................... 91

1820 Kennsington, Pennsylvania Ordinance (sec. VII)............................... 91

1827 Baltimore, Maryland Ordinance (sec. 6; published in the Baltimore Gazette and
        Daily Advertiser, December 17, 1827). ...................................... 93

1851 Richmond, Virginia Ordinance (sec. IX). ..................................... 95

1859 Manchester, New Hampshire Ordinance (sec. 20)................................ 97

1865 New Haven, Connecticut Ordinance (ch. IV).................................... 99

1869 Saint Joseph, Missouri Ordinance (sec. 17). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101

1861 Illinois Statute (sec. 78). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 103

1881 Chicago, Illinois Ordinance (art. XX). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 105

1837 Georgia Statute (sec. I). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108

1879 Tennessee Statute (ch. XCVI, sec. 1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 111

1901 South Carolina Statute (No. 435, sec. 1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114

1783 Massachusetts Statute (sec. I). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116

1784 New York Statute (ch. 28). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118

1801 Massachusetts Statute (sec. I). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 122

1782 Pennsylvania Statute (ch. DCCCCLVIII, sec. XLII). . . . . . . . . . . . . . . . . . . . . . . . . . 124

1783 Pennsylvania Statute (ch. MXX, sec. XLII). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128

## City Council Committee on Police and Fire
## July 1, 2010

On June 18 and June 29, this Committee held hearings on gun violence and took testimony from experts on possible policies to reduce such violence in our city. These hearings contemplated the impact of the United States Supreme Court's *McDonald* decision on the City's handgun ban, and on future policies the City can enact to address gun violence.

More than 30 people testified at these hearings. We've heard from numerous experts on gun violence, from the Corporation Counsel and other legal experts, from the Superintendent of the Chicago Police Department and other CPD officers, from business owners, from leaders in our faith and community organizations, from those who have lost loved ones to gun violence, and even from some of the plaintiffs in the *McDonald* case.

Among the experts that testified were:

- Robyn Thomas, the Executive Director of Legal Community Against Violence

- David Hemenway, from the Harvard School of Public Health

- Thom Mannard, Executive Director of the Illinois Council Against Handgun Violence

- Tom VandenBerk, President and CEO of the Uhlich Children's Advantage Network

- Mark Walsh, the Executive Director of the Illinois Campaign to Prevent Gun Violence

- Dr. Marie Crandall, from the Trauma Unit at Northwestern Medical Faculty Foundation

- Claude Robinson, the Executive Vice President at the Uhlich Children's Advantage Network

- Annette Holt, from Purpose Over Pain

- Juliet Leftwich, the Legal Director of Legal Community Against Violence, and

- Daniel Webster, Co-Director of the Johns Hopkins Center for Gun Policy and Research

I would also like to acknowledge that one of the experts we invited, Dr. Jens Ludwig, a Professor of Social Service Administration, Law, and Public Policy at the University of Chicago's Crime Lab, was unable to speak but prepared testimony that was distributed to the members of the Committee on June 29. This testimony sets forth Dr. Ludwig's research on the costs of gun violence in Chicago. We've distributed this testimony to the Committee members again today, and I would like to note that it is on the record, and to thank Dr. Ludwig.

During our prior hearings, we also distributed and placed on the record the testimony from several of our other experts, as well as references from their work and numerous other studies on

CITY 000790

the causes and effects of gun violence, and recommendations on what we can do to address this problem.

From the evidence that was presented at these hearings, the Committee can make the following findings:

1. Chicago, like other big cities, has a serious problem of gun violence. The total economic and social costs of gun violence in Chicago are substantial. Gun violence severely impacts Chicago's criminal justice and health care systems. Gun violence foments fear in Chicago communities, which can harm property values and drive residents to flee neighborhoods.

2. An increase in the number of guns in circulation contributes to an increase in the number of incidents of gun violence. The presence of a gun makes a crime more lethal than it would be if a gun were not present.

3. Handguns, to an extreme degree, disproportionately contribute to gun violence and death in Chicago.

4. A strong permitting system for firearm owners is vital. Persons who commit violent crimes or threaten public safety by repeated substance abuse should not be allowed to possess firearms. Fingerprinting is necessary to identify ineligible persons. Public safety requires that firearm owners complete a certified firearms training course that includes both classroom instruction and range training.

5. A vigorous firearms registration system is necessary. Registration gives law enforcement essential information about firearms ownership, allows first responders to determine in advance whether individuals may have firearms, facilitates the return of lost or stolen firearms to their rightful owners, permits officers to seize unregistered weapons, and permits officers to charge an individual with a crime if he or she is in possession of an unregistered firearm. Requiring owners to confirm registration information annually is necessary to further these ends.

6. Shootings in the home are a major cause of death, particularly of children and minors. Requiring owners to secure or store their firearms when minors are present, or likely to be present, can reduce the number of accidental and intentional youth firearms injuries, including youth suicides. Further, limiting the number of firearms in the home that may be kept in an operable condition even when no minor is present reduces the risk of firearms injury in the home.

7. Requiring owners to quickly notify law enforcement of the loss, theft, or destruction of their firearm aides law enforcement in reducing illegal gun trafficking, and in identifying and prosecuting gun traffickers. Requiring owners to report the loss or theft when they know or should have known of the loss or theft enhances these purposes. A notification requirement also assists law enforcement in returning firearms to their lawful owners.

CITY 000791

8. Limiting the number of handguns in circulation is essential to public safety. Limiting registration of handguns to one per person per month will help limit handgun injuries and crimes, as well as illegal handgun trafficking and straw purchasing.

9. The carrying of firearms in public should be prohibited. In a dense, urban environment like Chicago, public carrying presents a high risk that everyday interpersonal conflicts will result in gun injury. Carrying allows carriers, particularly gang members, to intimidate others. Carrying also increases the threat to law enforcement when responding to calls for assistance.

10. The public safety requires a ban on assault weapons. Assault weapons are not designed for the purpose of self-defense in the home and are not necessary for that purpose, nor are they designed for sport. They are military-style weapons and pose a particularly dangerous threat to law enforcement, as well as to civilians.

11. "Junk guns" – cheap, low-quality handguns that are prone to misfire, fire when dropped, or otherwise malfunction, and that are usually easily concealed – are disproportionately associated with criminal misuse, especially by juveniles and young adults. Banning junk guns will reduce accidents and the risk of criminal abuse.

12. Gun dealers in the City present a risk of firearms flowing quickly into the community and into the hands of criminals, through theft or illegal trafficking, or even through legitimate purchases. Further, there are many federally-licensed gun dealers close to Chicago from which Chicago residents may purchase firearms.

The Committee understands and respects the constitutional rights of Chicago residents. The Committee is mindful of the rulings of the United States Supreme Court, and of the protections conferred by the Second Amendment. The policies that will be recommended by the Committee and contained in the Responsible Gun Ownership Ordinance are in full accord with those rights and protections and are necessary for the ongoing protection of the public welfare and the safety of the residents of Chicago.

CITY 000792

# ORDINANCE

**WHEREAS,** A recent study by the Centers for Disease Control and Prevention found that in the United States there were 30,896 deaths from firearms in 2006, making firearms one of the top ten causes of death in the country; and

**WHEREAS,** Annually, more than 100,000 people in our nation are shot or killed with a firearm, with more than 3,000 of these victims being children or teenagers; and

**WHEREAS,** The United States is one of the few remaining developed nations that places only a minimal restrictions on the sale or possession of firearms; and

**WHEREAS,** Firearm-related injuries and deaths are the cause of significant social and economic costs to the City and our communities and have a severe impact on our criminal justice and health care systems; and

**WHEREAS,** In 2009, in the City there were 1,815 aggravated batteries with a firearm, of which 83 were shootings inside a residence, and there were 379 murders with a firearm, of which 34 were murders involving a firearm inside a home; and

**WHEREAS,** Between the beginning of this year and June, 15, 2010, there were 742 aggravated batteries with a firearm, of which 36 took place inside a residence, and 152 murders with a firearm, of which 19 were inside a residence; and

**WHEREAS,** Given the dangerous and deadly nature of handguns, in 1982 the City of Chicago enacted a ban on registering handguns as a method to protect public safety and the health and welfare of its residents; and

**WHEREAS,** In 2008, the Supreme Court of the United States decided the case of *District of Columbia v. Heller,* which held that the Second Amendment to the United States Constitution protects an individual right to possess a firearm unconnected with service in the militia; and

**WHEREAS,** After the *Heller* decision, the City's handgun registration ban was challenged in the case of *McDonald v. the City of Chicago;* and

**WHEREAS,** On June 28, 2010, the Supreme Court issued its opinion in the *McDonald* case and ruled that the Second Amendment's right to possess a handgun for self-defense in the home also applied to the states; and

**WHEREAS,** Although the State of Illinois has already enacted several laws to regulate the sale and possession of firearms, these laws are not sufficient to protect the City from the unique and heightened risk of firearm violence, especially handgun violence, endemic in densely populated urban areas, and

**WHEREAS,** In order to provide for the ongoing protection of the public welfare and safety, it is essential for the City Council of the City of Chicago to promptly pass an ordinance that provides for reasonable regulation of firearms in compliance with the rulings of the United States Supreme Court, but still is effective in protecting the public from the potentially deadly consequences of gun violence in our City; and

**WHEREAS**, When a gun is registered with the City, certain personal identifying information, such as the registrant's address, is obtained so that a first responder can be advised that a gun is present in that home. In order to protect the privacy and safety of people registering guns, any information provided in the registration procedure should not be available to the public. The City is requesting that Illinois Attorney General Lisa Madigan issue an opinion, as expeditiously as possible, on whether the information provided to the City for gun registration is exempt from disclosure under the Illinois Freedom of Information Act, 5 ILCS 140, et seq.; and

**WHEREAS**, As a consequence of the United States Supreme Court decisions in *Heller* and *McDonald*, it is anticipated that gun ownership in many communities, including large urban areas, will increase. To ensure public safety and the welfare of a community, it is essential that local law enforcement agencies be made aware of any gun brought into their jurisdictions. Therefore, the United States Congress must pass a law mandating that the Bureau of Alcohol, Tobacco, Firearms and Explosives timely notify a local law enforcement agency of any purchase or sale of a firearm by a resident of that community; and

**WHEREAS**, In addition, the ability to have handguns in a home will expose taxpayers to greater costs and expenses associated with the increased number of incidents involving a first responder entering a home where a gun is present. In order to minimize the impact of these costs to the taxpayers, the United States Congress and the State of Illinois must pass laws that grant immunity for the City and its first responders from any civil liability for any accidental or lawfully intentional actions by the first responders in responding to a situation in a home where a gun is present and the first responder perceives a danger caused by the presence of the gun; now, therefore,

## BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF CHICAGO:

**SECTION 1.** Chapter 2-14 of the Municipal Code of Chicago is hereby amended by deleting the language struck through, and by adding the language underscored, as follows:

**2-14-132 Impoundment.**

(1) Whenever the owner of a vehicle seized and impounded pursuant to Sections 3-46-076, 3-56-155, 4-68-195, 9-80-220 or 9-112-555 of this Code (for purposes of this section, the "status-related offense sections"), or Sections 7-24-225, 7-24-226, 7-28-390, 7-28-440, 7-38-115(c-5), 8-4-130, 8-8-060, 8-20-015, 8-20-070, 9-12-090, 9-76-145, 9-80-240, 9-92-035, 11-4-1410, 11-4-1500 or 15-20-270 of this Code (for purposes of this section, the "use-related offense sections") requests a preliminary hearing in person and in writing at the department of administrative hearings, within 15 days after the vehicle is seized and impounded, an administrative law officer of the department of administrative hearings shall conduct such preliminary hearing within 48 hours of request, excluding Saturdays, Sundays and legal holidays, unless the vehicle was seized and impounded pursuant to Section 7-24-225 and the department of police determines that it must retain custody of the vehicle under the applicable state or federal forfeiture law. If, after the hearing, the administrative law officer determines that there is probable cause to believe that the vehicle was used in a violation of this Code for which seizure and impoundment applies, or, if the impoundment is pursuant to Section 9-92-035, that the subject vehicle is eligible for impoundment under that section, the administrative law officer shall order the continued impoundment of the vehicle as provided in this section unless the owner of the vehicle pays to the city the amount of the administrative penalty prescribed for the code violation plus fees for towing and storing the vehicle. If the vehicle is also subject to immobilization for unpaid parking and/or compliance violations, the owner of the vehicle must also pay the amounts due for all such outstanding violations prior to the release of the vehicle. If the administrative law officer determines there is no such probable cause,

or, if the impoundment is pursuant to Section 9-92-035, that the subject vehicle has previously been determined not to be eligible for impoundment under that section, the vehicle will be returned without penalty or other fees.

*(omitted text is unaffected by this ordinance)*

### 2-14-190 Municipal hearings division – Jurisdiction.

(a)　　The department of administrative hearings is authorized to establish a system of administrative adjudication for the enforcement of all provisions of the Municipal Code that are not adjudicated by the vehicle, buildings, environmental safety or consumer affairs hearings divisions, except that it shall not adjudicate violations of the following chapters and sections: chapter 4-92 (Massage Establishments and Massage Services); chapter 4-144 (Weapons); and Section 7-28-190 (Health Nuisances – Throwing Objects into Roadways); chapter 8-20 (Weapons), other than Section 8-20-015 (Unlawful Firearm in Motor Vehicle – Impoundment); and chapter 8-24 (Firearms and Other Weapons).

*(omitted text is unaffected by this ordinance)*

SECTION 2. Chapter 2-84 of the Municipal Code of Chicago is hereby amended by adding a new section 2-84-075, as follows:

### 2-84-075 Sale of firearms and ammunition authorized by the superintendent.

Notwithstanding any other provision of this code to the contrary, the superintendent may authorize the sale of firearms or ammunition by a person issued a federal firearms license to a member of the police department, if that member is authorized to carry such firearm or ammunition. Such sales shall be conducted at department of police facilities.

SECTION 3. Title 4 of the Municipal Code of Chicago is hereby amended by adding a new section 4-144-065, by adding the language underscored, and by deleting the language struck through, as follows:

### 4-144-010 License – Required.

It shall be unlawful for any person to engage in the business of selling, or to sell, or give away or otherwise transfer, any pistol, revolver or other firearm, dagger, stiletto, billie, derringer, bowie knife, dirk, stun gun or taser, as defined in Section 24-1 of the Illinois Criminal Code, 720 ILCS 5/24-1, or other deadly weapon which can be carried or concealed on the person, or any ammunition, as that term is defined in Section 8-20-010, without securing a weapons dealer license. The license required by this chapter shall be in addition to any other license required by law. It shall be unlawful for any person licensed under this chapter to engage in the business of selling, or to sell, give away or otherwise transfer, any firearm as that term is defined in Section 8-20-010.

### 4-144-061 Sale of certain handgun ammunition prohibited.

Except as allowed by section 8-20-100(e) subsection (e) of Section 8-20-170 of this Code, it shall be unlawful for any person to sell, offer for sale, expose for sale, barter or give away to any person within the city, any armor piercing or .50 caliber ammunition of the following calibers and types:

> .45 automatic
> .380 automatic
> .38 special
> .357 magnum

~~.25 caliber~~
~~.22 caliber, including .22 long~~
~~9 millimeter~~

~~Any other ammunition, regardless of the designation by the manufacturer, distributor or seller, that is capable of being used as a substitute for any of the foregoing.~~

**4-144-062  Sale of <u>ammunition to minors-prohibited.</u> ~~handguns without childproofing or safety devices prohibited.~~**

<u>No person licensed under this chapter shall sell or otherwise transfer any ammunition to a person who is under the age of 18.</u>

~~Except as allowed by subsection (e) of Section 8-20-170 of this Code, it shall be unlawful for any person to sell, barter or give away to any person any handgun which does not contain:~~
~~(1)     A safety mechanism to hinder the use of the handgun by unauthorized users. Such devices shall include, but shall not be limited to, trigger locks, combination handle locks, and solenoid use-limitation devices, and~~
~~(2)     A load indicator device that provides reasonable warning to potential users such that users even unfamiliar with the weapon would be forewarned and would understand the nature of the warning.~~

~~Safety mechanism means a design adaption or nondetachable accessory that lessens the likelihood of unanticipated use of the handgun by other than the owner of the handgun and those specifically authorized by the owner to use the handgun.~~

~~A trigger lock means a device that when locked in place by means of a key, prevents a potential user from pulling the trigger of the handgun without first removing the trigger lock by use of the trigger lock's key.~~

~~A combination handle lock means a device that is part of the handgun which precludes the use of the handgun unless the combination tumblers are properly aligned.~~

~~A solenoid use-limitation device means a device which precludes, by use of a solenoid, the firing of the handgun unless a magnet of the appropriate strength is placed in proximity to the handle of the weapon.~~

~~A load indicator means a device which plainly indicates that a bullet is placed in the handgun in a way that pulling the trigger or otherwise handling the handgun may result in detonation.~~

**<u>4-144-065 Sale of metal piercing bullets.</u>**

<u>No person licensed under this chapter shall sell, offer for sale, expose for sale, barter, give away or otherwise transfer any metal piercing bullets, as that term is defined in section 8-20-010.</u>

**SECTION 4.**  Chapter 8-20, Articles I and II, section 8-20-010 through and including section 8-20-260 of the Municipal Code of Chicago are deleted in their entirety and replaced with the following language;

## ARTICLE I.  DEFINITIONS.

**8-20-010 Definitions:**

For purposes of this chapter the following terms shall apply:

"The Act" means the Illinois Firearm Owners Identification Card Act, 430 ILCS 65/1 et seq., as amended.

"Ammunition" means any self-contained cartridge or shotgun shell, by whatever name known, which is designed to be used or adaptable to use in a firearm; excluding however;
> (1) any ammunition used exclusively for line-throwing, signaling, or safety and required or recommended by the United States Coast Guard or Interstate Commerce Commission; or
> (2) any ammunition designed exclusively for use with a stud or rivet driver or other similar industrial ammunition.

"Antique firearm" has the same meaning ascribed to that term in 18 U.S.C. § 921(a)(16).

"Assault weapon" means:
(1) A semiautomatic rifle that has the ability to accept a detachable magazine and has one or more of the following:
> (i)   a folding or telescoping stock
> (ii)  a handgun grip which protrudes conspicuously beneath the action
> (iii) a bayonet mount
> (iv)  a flash suppressor or a barrel having a threaded muzzle
> (v)   a grenade launcher; or

(2) A semiautomatic shotgun that has one or more of the following:
> (i)   a folding or telescoping stock
> (ii)  a handgun grip which protrudes conspicuously beneath the action
> (iii) a fixed magazine capacity in excess of 5 rounds
> (iv)  an ability to accept a detachable magazine; or

(3) A semiautomatic handgun that has an ability to accept a detachable magazine and has one or more of the following:
> (i)   an ammunition magazine that attaches to thehandgun outside thehandgun grip
> (ii)  a barrel having a threaded muzzle
> (iii) a shroud that is attached to, or partially or completely encircles the barrel, and permits the shooter to hold the firearm with the non-trigger hand without being burned;
> (iv)  a manufactured weight of 50 ounces or more when the handgun is unloaded
> (v)   a semiautomatic version of an automatic firearm.

"Chicago Firearm Permit" or "CFP" means the permit issued by the City which allows a person to possess a firearm.

"Corrections officer" means wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of an offense.

"Department" means the department of police.

"Dwelling unit" has the same meaning ascribed to that term in section 17-17-0248.

"Duty-related firearm" shall mean any firearm which is authorized by any law enforcement

agency or employer to be utilized by their personnel in the performance of their official duties.

"Firearm" means any device, by whatever name known, which is designed or restored to expel a projectile or projectiles by the action of any explosive, expansion of gas or escape of gas. Provided, that such term shall not include:

> (1) any pneumatic gun, spring gun, paint ball gun or B-B gun which either expels a single globular projectile not exceeding .18 inch in diameter and which has a maximum muzzle velocity of less than 700 feet per second or breakable paint balls containing washable marking colors;
> (2) any device used exclusively for line-throwing, signaling, or safety and required or recommended by the United States Coast Guard or Interstate Commerce Commission; or
> (3) any device used exclusively for firing explosives, rivets, stud cartridges, or any similar industrial ammunition.

"Firearm case" means any firearm case, carrying box, shipping box or other similar container that is designed for the safe transportation of the firearm.

"FOID" means the Firearm Owner's Identification Card issued pursuant to the Act.

"Handgun" means a firearm designed to be held and fired by the use of a single hand, and includes a combination of parts from which such firearm can be assembled.

"High capacity magazine" means any ammunition magazine having a capacity of more than 12 rounds of ammunition.

"Home" means the inside of a person's dwelling unit which is traditionally used for living purposes, including the basement and attic. A "home" does not include: (i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas; or (iii) any dormitory, hotel, or group living, as that term is defined in section 17-17-0102-A.

"Laser sight accessory" means a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm.

"Lawful transportation" means the transportation of a firearm by a person:

> (1) in compliance with section 8-20-090; or
> (2) who has a valid FOID card, a CFP and firearm registration certificate, if applicable, and the firearm is: (i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case.

"Long gun" means any firearm, other than a handgun.

"Machine gun" means any firearm which can fire multiple rounds of ammunition by a single function of the firing device or one press of the trigger.

"Metal piercing bullet" means any bullet that is manufactured with other than a lead or lead alloy core, or ammunition of which the bullet itself is wholly composed of, or machined from, a metal or metal alloy other than lead, or any other bullet that is manufactured to defeat or penetrate bullet resistant properties of soft body armor or any other type of bullet resistant clothing which meets the minimum requirements of the current National Institute for Justice Standards for "Ballistic Resistance

of Police Body Armor."

"Organization" means partnership, company, corporation or other business entity, or any group or association of two or more persons united for a common purpose.

"Peace officer" means any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses.

"Retired department police officer" means a person who is retired from the department in good standing and without any disciplinary charges pending, and who is, or is eligible to become, an annuitant of the Policemen's Annuity and Benefit Fund of the City of Chicago.

"Sawed-off shotgun" means a shotgun having one or more barrels less than 18 inches in length and any weapon made from a shotgun, whether by alteration, modification or otherwise, if such weapon, as modified, has an overall length of less than 26 inches.

"Security personnel" means special agents employed by a railroad or public utility to perform police functions, guards of armored car companies, watchmen, security guards or persons regularly employed in a commercial or industrial operation for the protection of persons employed by, or property related to, such commercial or industrial operation; and watchmen while in the performance of the duties of their employment.

"Short-barreled rifle" means a rifle having one or more barrels less than 16 inches in length, and any weapon made from a rifle, whether by alteration, modification, or otherwise, if such weapon, as modified, has an overall length of less than 26 inches.

"Superintendent" means the superintendent of the department or his designated representative.

"Safety mechanism" means a design adaption or nondetachable accessory that lessens the likelihood of unanticipated use of the handgun.

"Trigger lock" means a device that when locked in place by means of a key, prevents a potential user from pulling the trigger of the firearm without first removing the trigger lock by use of the trigger lock's key.

"Unregisterable firearm" means any firearm listed in section 8-20-170.

"Unsafe handgun" means any handgun that is listed on the superintendent's roster of unsafe handguns because, in the determination of the superintendent, the handgun is unsafe due to its size, ability to be concealed, detectability, quality of manufacturing, quality of materials, ballistic accuracy, weight, reliability, caliber, or other factors which makes the design or operation of the handgun otherwise inappropriate for lawful use.

"Violent crime" has the same meaning ascribed to that term in the Rights of Crime Victims and Witnesses Act, 725 ILCS 120/1, et seq., as amended.

## ARTICLE II. POSSESSION OF FIREARMS

### 8-20-020 Unlawful possession of handguns.

(a) It is unlawful for any person to carry or possess a handgun, except when in the person's home.

(b) The provisions of this section shall not apply to:

      (1) peace officers, and any person summoned by a peace officer to assist in making arrests or preserving the peace, while assisting such officer;

      (2) corrections officers while in the performance of their official duty, or while commuting between their homes and places of employment;

      (3) members of the Armed Services or Reserve Forces of the United States or the Illinois National Guard or the Reserve Officers Training Corps, while in the performance of their official duty;

      (4) security personnel;

      (5) persons licensed as private security contractors, private detectives, or private alarm contractors, or employed by an agency certified by the Illinois Department of Professional Regulation;

      (6) persons regularly employed in a commercial or industrial operation as a security guard for the protection of persons employed and private property related to such commercial or industrial operation, while in the performance of their duties or traveling between sites or properties belonging to the employer, and who, as a security guard, is registered with the Illinois Department of Professional Regulation;

      (7) persons employed by a financial institution for the protection of other employees and property related to such financial institution, while in the performance of their duties, commuting between their homes and places of employment, or traveling between sites or properties owned or operated by such financial institution;

      (8) persons employed by an armored car company to drive an armored car, while in the performance of their duties;

      (9) persons who have been classified as peace officers pursuant to the Peace Officer Fire Investigation Act;

      (10) investigators of the Office of the State's Attorneys Appellate Prosecutor authorized by the board of governors of the Office of the State's Attorneys Appellate Prosecutor to carry weapons pursuant to Section 7.06 of the State's Attorneys Appellate Prosecutor's Act;

      (11) special investigators appointed by a State's Attorney under Section 3-9005 of the Counties Code;

      (12) probation officers while in the performance of their duties, or while commuting between their homes, places of employment or specific locations that are part of their assigned duties, with the consent of the chief judge of the circuit for which they are employed;

(13) court security officers while in the performance of their official duties, or while commuting between their homes and places of employment, with the consent of the sheriff;

(14) persons employed as an armed security guard at a nuclear energy, storage, weapons or development site or facility regulated by the Nuclear Regulatory Commission who have completed the background screening and training mandated by the rules and regulations of the Nuclear Regulatory Commission;

(15) duly authorized military or civil organizations while parading, with the special permission of the Governor;

(16) persons engaged in the manufacture, transportation, or sale of firearms to persons authorized under this subsection to possess those firearms;

(17) a person while engaged in the lawful transportation of a firearm.

## 8-20-030 Unlawful possession of long guns.

(a) It is unlawful for any person to carry or possess a long gun, except when in the person's home or fixed place of business.

(b) The provisions of this section shall not apply to:
(1) any person listed in section 8-20-020(b); or
(2) any duly licensed hunter who has a valid FOID card, a CFP and firearm registration certificate, while engaged in hunting in an area where hunting is permitted.

## 8-20-035 Unlawful possession of unregisterable firearms.

(a) It is unlawful for any person to carry or posses any unregisterable firearm.

(b) The provisions of this section shall not apply to corrections officers, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers, to the extent that any such person is otherwise authorized to acquire or possess assault weapons, and is acting within the scope of his duties, or to any person while engaged in the manufacturing, transportation or sale of assault weapons to people authorized to possess them under this section.

(c) Notwithstanding the provisions of subsection (a), those firearms listed in section 8-20-170(a) may be possessed and used by the department for training and tactical operation, as authorized by the superintendent.

(d) Any firearm carried or possessed in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

## 8-20-040 Firearms kept or maintained in a home.

Subject to section 8-20-050, every person who keeps or possesses a firearm in his home shall keep no more than one firearm in his home assembled and operable. If more than one person in the home has a valid CFP and registration certificate, each person with a valid CFP and registration certificate is entitled to have one such firearm assembled and operable in the home. All other firearms kept or possessed by that person in his home shall be broken down in a nonfunctioning state or shall have a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render the firearm temporarily inoperable.

The provisions of this section shall not apply to peace officers.

**8-20-050 Firearms- Protection of minors.**

(a) It is unlawful for any person to keep or possess any firearm or ammunition in his home if the person knows or has reason to believe that a minor under the age of 18 years is likely to gain access to the firearm or ammunition, unless:

> (1) the person is physically present in the home and the firearm is either being held by the person or is physically secured on the person's body;

> (2) the firearm is secured by a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render a firearm temporarily inoperable; or

> (3) the firearm and ammunition are placed in a securely locked box or container.

(b) No person shall be punished for a violation of this section under the following circumstances:

> (1) if the minor gains access to the firearm and uses it in a lawful act of self-defense or defense of another; or

> (2) if the minor gains access to the firearm because of an unlawful entry of the premises by the minor or another person.

The provisions of this section shall not apply to peace officers.

**8-20-060 Possession of a laser sight accessory, firearm silencer or muffler.**

(a) It is unlawful for any person to carry, possess, display for sale, sell or otherwise transfer any laser sight accessory, or a firearm silencer or muffler.

(b) The provisions of this section shall not apply to any members of the armed forces of the United States, or the organized militia of this or any other state, or peace officers, to the extent that any such person is otherwise authorized to acquire or possess a laser sight accessory, or firearm silencer or muffler, and is acting within the scope of his duties.

(c) Any laser sight accessory, or firearm silencer or muffler, carried, possessed, displayed or sold in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

**8-20-070 Unlawful firearm, laser sight accessory, or firearm silencer or muffler in a motor vehicle – Impoundment.**

(a) The owner of record of any motor vehicle that contains a firearm registered to a person who is not the driver or occupant of the vehicle, an unregistered firearm, a firearm that is not being lawfully transported, an unregisterable firearm, a laser sight accessory, or a firearm silencer or muffler, shall be liable to the city for an administrative penalty of $1,000.00 plus any towing and storage fees applicable under Section 9-92-080. Any such vehicle shall be subject to seizure and impoundment pursuant to this section.

(b) Whenever a police officer has probable cause to believe that a vehicle is subject to seizure and impoundment pursuant to this section, the police officer shall provide for the towing of the vehicle to a facility controlled by the city or its agents. Before or at the time the vehicle is towed,

the police officer shall notify any person identifying himself as the owner of the vehicle at the time of the alleged violation, of the fact of the seizure and of the vehicle owner's right to request a vehicle impoundment hearing to be conducted under Section 2-14-132 of this Code.

(c) The provisions of Section 2-14-132 shall apply whenever a motor vehicle is seized and impounded pursuant to this section.

### 8-20-080 Possession of ammunition.

(a) It is unlawful for any person to carry or possess any ammunition in the city, unless the person:

(1) has a valid CFP and registration certificate for a firearm of the same gauge or caliber as the ammunition possessed, and while in possession of the ammunition, has the CFP and registration certificate in his possession when he is not in his home, or, when he is in his home, has the CFP and registration certificate readily available in his home; or

(2) is a licensed weapons dealer; or

(3) is a person listed in section 8-20-020(b).

(b) Any ammunition carried or possessed in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

### 8-20-085 High capacity magazines and metal piercing bullets – Sale and possession prohibited – Exceptions.

(a) It is unlawful for any person to carry, possess, sell, offer or display for sale, or otherwise transfer any high capacity magazine or metal piercing bullets. This section shall not apply to corrections officers, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers, to the extent that any such person is otherwise authorized to acquire or possess metal piercing bullets, and is acting within the scope of his duties, or to any person while in the manufacturing, transportation or sale of high capacity magazines or metal piercing bullets to people authorized to possess them under this section.

(b) Any high capacity magazine or metal piercing bullets carried, possessed, displayed, sold or otherwise transferred in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

### 8-20-090 Interstate transportation of firearms.

It shall not be a violation of this chapter if a person transporting a firearm or ammunition while engaged in interstate travel is in compliance with 18 U.S.C.A. §926A. There shall be a rebuttable presumption that any person within the city for more than 24 hours is not engaged in interstate travel, and is subject to the provisions of this chapter.

### 8-20-100 Permissible sales and transfers of firearms and ammunition.

(a) Except as authorized by subsection (e) and section 2-84-075, no firearm may be sold, acquired or otherwise transferred within the city, except through inheritance of the firearm.

(b) No ammunition may be sold or otherwise transferred within the city, except through a licensed weapons dealer, or as otherwise allowed by this code.

(c) No firearm or ammunition shall be security for, or be taken or received by way of any

mortgage, deposit, pledge or pawn.

(d) No person may loan, borrow, give or rent to or from another person, any firearm or ammunition except in accordance with this chapter.

(e) Notwithstanding any other provision of this section, a peace officer may sell or transfer any lawfully held firearm or ammunition to another peace officer in accordance with the other provisions of this chapter.

## ARTICLE III. PERMITS FOR AND REGISTRATION OF FIREARMS.

### 8-20-110 CFP-Required

(a) Subject to subsection (d), it is unlawful for any person to carry or possess a firearm without a CFP.

(b) No CFP application shall be approved unless the applicant:

(1) is 21 years of age or older; provided that an application of a person 18 years or older but less than 21 may be approved if the person has the written consent of his parent or legal guardian to possess and acquire a firearm or firearm ammunition and that he has never been convicted of a misdemeanor, other than a traffic offense or adjudged a delinquent; provided that such parent or legal guardian is not an individual prohibited from having a FOID or CFP, and that the parent files an affidavit with the department attesting that the parent is not an individual prohibited from having a FOID or CFP;

(2) possesses a valid Illinois FOID;

(3) has not been convicted by a court in any jurisdiction of:
　　(i) a violent crime,
　　(ii) two or more offenses for driving under the influence of alcohol or other drugs; or
　　(iii) an unlawful use of a weapon that is a firearm;

(4) has vision better than or equal to that required to obtain a valid driver's license under the standards established by the Illinois Vehicle Code;

(5) is not otherwise ineligible to possess a firearm under any federal, state or local law, statute or ordinance; and

(6) has not been convicted, adjudicated, admitted to, or found liable for a violation of section 8-20-060 or 8-20-100.

(c) Each CFP issued shall be accompanied by a copy of this ordinance.

(d) Any person who has a valid firearm registration certificate issued before the effective date of this 2010 ordinance shall be exempted from acquiring a CFP until the expiration of the registration certificate; provided that upon the expiration of the registration certificate, the person shall be required to obtain a CFP. Any such person who has submitted an application for a CFP prior to or on the date of the expiration of his current registration certificate shall be deemed to be in compliance with the requirement for a CFP while his application is pending.

(e) The provisions of this section shall not apply to any person listed in section 8-20-020(b)(1)-(16) or a person engaged in interstate travel in compliance with section 8-20-100.

**8-20-120 CFP-application.**

(a) An applicant for a CFP shall submit an application to the superintendent on a form or in a manner prescribed by the superintendent. The application shall include the following:

(1) name, residential address and telephone number of the applicant;

(2) the applicant's date of birth and sex;

(3) the applicant's Illinois firearm owner's identification number and a copy of the applicant's FOID card;

(4) evidence that the applicant meets the criteria of section 8-20-110;

(5) two identical photographs of the applicant taken within 30 days immediately prior to the date of filing the application, equivalent to passport size, showing the full face, head and shoulders of the applicant in a clear and distinguishing manner;

(6) the applicant's Illinois driver's license number and a copy of the applicant's driver's license or Illinois identification card;

(7) an affidavit signed by a firearm instructor certified by the State of Illinois to provide firearm training courses attesting that the applicant has completed a firearm safety and training course, which, at a minimum, provides one hour of range training and four hours of classroom instruction that is in compliance with the requirements of the classroom instruction course, as established in rules and regulations; and

(8) any other information as the superintendent shall find reasonably necessary to effectuate the purpose of this chapter and to arrive at a fair determination as to whether the terms of this chapter have been complied with.

The superintendent shall be the custodian of all applications for CFPs under this chapter.

(b) The applicant shall submit to fingerprinting in accordance with procedures established in rules and regulations promulgated by the superintendent.

(c) For an application for a CFP submitted within 180 days of the effective date of this 2010 ordinance, the superintendent shall either approve or deny such application no later than 120 days after the date the application is submitted, unless good cause is shown. For an application for a CFP submitted thereafter, the superintendent shall either approve or deny an application within 45 days from the date the application is submitted, unless good cause is shown. An application shall not be deemed submitted until the applicant provides all the required information or documentation.

(d) All CFPs issued by the superintendent shall contain the applicant's name, date of birth, sex, and signature. Each CFP shall have the expiration date boldly and conspicuously displayed on the face of the CFP.

**8-20-130 CFP card-fee and expiration.**

(a) A CFP card shall expire 3 years after the date of issuance.

(b) The fee shall be $100.00.

(c) The CFP fee shall not be applicable to any resident of the city who is a retired department police officer.

### 8-20-140 Firearm registration certificate-required

(a) Subject to subsection (d), it is unlawful for any person to carry or possess a firearm without a firearm registration certificate.

(b) No application for a registration certificate shall be approved unless the applicant has been issued a valid CFP; provided no CFP shall be required for the issuance of a registration certificate if the person is an exempt person pursuant to section 8-20-110(e).

(c) An applicant for a registration certificate shall submit an application to the superintendent on a form or in a manner prescribed by the superintendent. The application shall include the following:

(1) name, telephone number and the address at which the firearm shall be located;

(2) a copy of the applicant's CFP and Illinois FOID card;

(3) the name of the manufacturer, the caliber or gauge, the model, type and the serial number identification of the firearm to be registered;

(4) the source from which the firearm was obtained;

(5) the address at which the firearm will be located;

(6) if an antique firearm, the year of manufacture of the firearm;

(7) the date the firearm was acquired; and

(8) any other information as the superintendent shall find reasonably necessary to effectuate the purpose of this chapter and to arrive at a fair determination as to whether the terms of this chapter have been complied with.

The superintendent shall be the custodian of all applications for registration certificates under this chapter.

(d) (1) Subject to subsection (d)(2), an application for a registration certificate shall be submitted no later than 5 business days after a person takes possession within the city of a firearm from any source; provided that any applicant who has submitted a complete application within the required 5 business days shall be considered in compliance with this subsection until his registration certificate is either approved or denied.

(2) Notwithstanding any provision of this chapter to the contrary, a person has 90 days after the effective date of this 2010 ordinance to register a firearm, including a handgun, which had not been previously registered; provided that the person and firearm meet all the requirements of this ordinance.

(e)  For an application for a firearm registration certificate submitted within 180 days after the effective date of this 2010 ordinance, the superintendent shall either approve or deny such application no later than 45 days after the date the application is submitted. For an application for a firearm registration certificate submitted thereafter, the superintendent shall either approve or deny the application within 21 days of the submission of the application, unless good cause is shown. An application shall not be deemed submitted until the applicant provides all the required information or documentation.

(f)  The provisions of this section shall not apply to:
(1) firearms owned or under the direct control or custody of any federal, state or local governmental authority maintained in the course of its official duties;

(2)  duty-related firearms owned and possessed by peace officers who are not residents of the city;

(3) duty-related firearms owned or possessed by corrections officers and who are not residents of the city;

(4) firearms owned, manufactured or possessed by licensed manufacturers of firearms, bulk transporters or licensed sellers of firearms at wholesale or retail, provided that such persons have federal firearms license;

(5) any nonresident of the city participating in any lawful recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction; provided that such firearm shall be (i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case;

(6) persons licensed as private security contractors, security guards, private detectives, or private alarm contractors, or employed by an agency certified as such by the Department of Professional Regulation;

(7) duty-related firearms of investigators of the Office of the State's Attorneys Appellate Prosecutor authorized by the board of governors of the Office of the State's Attorneys Appellate Prosecutor to carry weapons pursuant to Section 7.06 of the State's Attorneys Appellate Prosecutor's Act;

(8) duty-related firearms of special investigators appointed by a State's Attorney under Section 3-9005 of the Counties Code;

(9) firearms being transported by a person engaged in interstate travel in compliance with section 8-20-100; or

(10) those persons summoned by a peace officer to assist in making an arrest or preserving the peace while actually engaged in assisting the peace officer.

(g)  Each registration certificate issued shall contain a unique registration certificate number, the person's name, the address at which the firearm will be located, and any other information the superintendent deems necessary to identify the person and the firearm.

## 8-20-145 Registration certificates- expiration.
(a) A registration certificate issued prior to the effective date of this 2010 ordinance shall

remain in effect until its expiration.

(b) For registration certificates issued after the effective date of this 2010 ordinance, a registration certificate shall expire on the same date as the date of the expiration of the CFP issued to that person.

(c) A person shall file an annual registration report with the superintendent on a form, and in a manner, prescribed by the superintendent. The annual registration report shall set forth such information as required by the superintendent in rules and regulations. If a person has multiple registration certificates, the superintendent may align the dates for the annual registration reports to the same reporting date and combine such annual registration reports into one report.

Failure to file an annual registration report may result in revocation of a person's CFP or registration certificate, and may cause that firearm to become unregisterable to that person.

**8-20-150 Application fees.**
(a) A nonrefundable application fee of $15.00 shall be payable for each firearm registered. The fee shall accompany each initial application for a registration certificate.

(b) Any person who files an annual registration report late shall pay a late filing fee of $60.00.

(c) The application fee shall not be applicable to: (1) any duty-related firearm of a peace officer domiciled in the city, or (2) any duty-related firearm that was registered to that retired department police officer at the time of the his separation from active duty in the department.

**8-20-160 Restrictions on issuance of registration certificates.**
(a) Subject to subsections(b) and (c), the superintendent shall issue no more than one firearm registration certificate to a person for a handgun during any 30-day period; provided that the superintendent may permit a person first becoming a city resident to register more than one handgun if those handguns were lawfully owned in another jurisdiction for a period of 6 months prior to the date of application.

(b) In addition to a registration certificate for a handgun pursuant to subsection (a), an applicant may be issued a registration certificate for:
(1) any firearm possessed by an applicant that was lawfully registered on the date of the enactment of this ordinance;

(2) any long gun which is eligible to be registered; or

(3) any antique firearm, including antique handguns.

The burden of proving that a firearm is an antique firearm shall be on the applicant.

(c) In addition to a registration certificate for a handgun pursuant to subsection (a), a retired department police officer may be issued a registration certificate for each duty-related handgun that was registered to that retired department police officer at the time of the his separation from active duty in the department.

**8-20-170 Unregisterable firearms.**
No registration certificate shall be approved for any of the following types of firearms:

(a) a sawed-off shotgun, .50 caliber rifle, machine gun, or short-barreled rifle;

(b) an unsafe handgun;

(c) a firearm that becomes unregisterable under the provisions of this chapter; provided that it shall only be unregistrerable for that person; or

(d) assault weapons, unless they are owned by a person who is entitled to carry or possess them pursuant to section 8-20-035.

**8-20-180 CFP and registration certificate-General provisions.**

(a) After issuance of a CFP or a registration certificate to a person, the person shall examine the CFP or registration certificate to insure that the information thereon is correct. If the information is incorrect in any respect, the person shall return it to the superintendent with a signed statement showing the nature of the error. The superintendent shall correct the error if it occurred as a result of the superintendent's administrative process.

In the event that the error resulted from incorrect information contained in the application, the person shall submit an amended application setting forth the correct information and a statement explaining the error in the original application.

(b) A CFP and the registration certificate shall be valid only for the person to whom it was issued.

(c) A registration certificate shall only be valid for the address on the registration certificate. Except in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate.

(d) A CFP or registration certificate shall not be subject to sale, assignment, or transfer, voluntary or involuntary.

(e) Any application for a CFP or a registration certificate shall be held in abeyance when there is a criminal proceeding for a violent crime, or an offense involving a weapon, or a proceeding to deny or revoke a CFP or firearm registration certificate pending against the person, until such proceeding has terminated.

**8-20-185 Additional duties.**

(a) Every person issued a CFP or a firearm registration certificate, in addition to any other requirements of this code, shall immediately notify the department in a manner prescribed by the superintendent of:

(1) the destruction of his firearm, or when the person knows, or should have known, that his firearm is lost, stolen or otherwise missing;

(2) the loss, theft or destruction of the CFP or registration certificate within 72 hours of the discovery of such loss, theft, or destruction;

(3) a change in any of the information appearing on the CFP or firearm registration certificate;

(4) the sale, transfer, inheritance, or other disposition of the firearm not less than 48

hours prior to delivery.

(b) Every person issued a CFP or a firearm registration certificate, in addition to any other requirements of this code, shall:

(1) immediately return to the superintendent his copy of the registration certificate for any firearm which is lost, stolen, destroyed or otherwise disposed of; and

(2) keep all information current. Any change in required information shall be reported, on a form and in manner prescribed by the superintendent, within 24 hours after the change.

**8-20-190 Denials and revocations.**

(a) An application for a CFP or a registration certificate shall be denied for any of the following reasons:

(1) any of the eligibility criteria of this chapter are not currently met;

(2) the firearm is an unregisterable firearm;

(3) the information furnished on or in connection with the application for a CFP or a registration certificate is false or misleading; or

(4) the person fails to respond to any additional information, or investigation inquiries, requested by the superintendent regarding any application.

(b) A registration certificate shall be revoked:

(1) when the firearm becomes an unregisterable firearm; or

(2) if the CFP of the person was revoked.

(c) A CFP shall be revoked if any of the eligibility criteria of this chapter are not currently met.

(d) A CFP or registration certificate may be denied or revoked for a violation of this chapter, or any rules or regulations promulgated hereunder.

(e) The CFP and all registration certificates of any person convicted of a felony after the issuance of a CFP or registration certificate to that person shall be automatically revoked by operation of law, without a further hearing. The person shall immediately dispose of all firearms by:

(i) peaceably surrendering to the department all firearms for which a registration certificate was issued;

(ii) removing such firearm from the city; or

(iii) otherwise lawfully disposing of his interest in such firearm.

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

**8-20-200  Procedure for denial.**

(a) If an application for a CFP or a registration certificate is denied by the superintendent, the superintendent shall notify the person making such application, in writing, of the denial. The notice of denial shall:

(1) set forth the basis of the denial;

(2) include a statement that within ten days of the notice of denial, the person is entitled to request a hearing, in person and in writing, at the department of administrative hearings;

(3) include a statement that the person is entitled to appear at the hearing to testify, present documents, including affidavits, and any other evidence to contest the denial;

(4) include a statement that if the person fails to request a hearing within ten days, the person is deemed to have conceded the validity of the reason stated in the notice and the denial shall become final;

(5) include a certificate of service; and

(6) include an oath or affirmation by the superintendent certifying the correctness of the facts set forth in the notice of denial.

(b) The person, within ten days after notice is sent of the denial, may file with the department of administrative hearings a request for a hearing. Such hearing request shall be made in person, and in writing, at the department of administrative hearings.  An administrative law officer of the department of administrative hearings shall conduct such hearing within 72 hours of the request, excluding Saturdays, Sundays, and legal holidays.

(c) The department of administrative hearings shall conclude the hearing no later than 7 days after the commencement of the hearing.

(d) Based upon the evidence contained in the record, an administrative law officer of the department of administrative hearings shall, within 5 days of the conclusion of the hearing, issue written findings and enter an order granting or denying the application.  A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

(e) If the person does not request a hearing within ten days after the notification of the denial is sent, the person shall be deemed to have conceded the validity of the reason stated in the notice and the denial shall become final.

(f) Within three days after all the time for hearings or appeals has expired, the person shall:
(1) peaceably surrender to the department the firearm for which the registration certificate was denied;

(2) remove such firearm from the city; or

(3) otherwise lawfully dispose of his interest in such firearm.

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

**8-20-205 . Procedure for revocation.**

(a) Except in cases where a CFP or registration certificate is automatically revoked pursuant to section 8-20-190(e), if, in the determination of the superintendent, a CFP or a registration certificate should be revoked, he shall notify the person whose CFP or registration certificate is the subject of such revocation, in writing, of the proposed revocation. The notice shall:

    (1) set forth the basis for the revocation;

    (2) specify the location, date, and time for a hearing on the revocation;

    (3 include a statement that the person is entitled to appear at the hearing to testify, present documents, including affidavits, and any other evidence to contest the proposed revocation;

    (4) include a statement that failure of the person to appear at the hearing may include an entry of an order revoking the person's CFP or registration certificate;

    (5) include a certificate of service; and

    (6) include an oath or affirmation by the superintendent certifying the correctness of the facts set forth in the notice.

(b) The department of administrative hearings shall convene the hearing at the location and on the date and time specified in the revocation notice.

(c) Based upon the evidence contained in the record, an administrative law officer of the department of administrative hearings shall, within 5 days of the conclusion of the hearing, issue written findings and enter an order granting or denying the proposed revocation. A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

(d) Within three days after notification of a decision unfavorable to the person, and all time for appeals has expired, the person shall:

    (1) for revocation of a registration certificate:
        (i) peaceably surrender to the department the firearm for which the registration certificate was revoked;

        (ii) remove such firearm from the city; or

        (iii) otherwise lawfully dispose of his interest in such firearm.

    (2) for revocation of a CFP, dispose of all firearms in accordance with subsection (d)(1).

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

(e) In cases where a CFP or registration certificate is automatically revoked pursuant to section 8-20-190(e), the superintendent shall notify the person of the automatic revocation of the person's CFP or registration certificate. Within three days after notification of the automatic

revocation, the person may file with the department of administrative hearings a request, in writing, for a hearing on the sole issue of identity and whether he was the person so convicted. It shall be a rebuttable presumption that the person whose CFP or registration certificate was automatically revoked is the same person who was convicted of a felony.

An administrative law officer of the department of administrative hearings shall conduct such hearing within 5 days of the request for a hearing.

Based upon the evidence contained in the record, an administrative law officer of the department of hearings shall, within 5 days of the conclusion of the hearing, issue written findings as to sole issue of the identity of the person. A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

If the person does not request a hearing within three days after the notification, the person shall be deemed to have conceded the validity of the identification.

**8-20-210 Automatic revocation of registration certificates.**
If, after a hearing, a CFP issued to a person is revoked, all firearm registration certificates issued to that person shall automatically be revoked and the person shall comply with section 8-20-205(d) for disposition of the firearms.

**ARTICLE IV. Miscellaneous Provisions.**

**8-20-220 False information – Forgery – Alteration.**
(a) It is unlawful for any person purchasing any firearm or ammunition, or applying for any CFP or registration certificate, or, in giving any information pursuant to the requirements of this chapter, to knowingly give false information or offer false information or evidence of identity.

(b) It is unlawful for any person to forge or materially alter any application for a CFP or firearm registration certificate.

(c) It is unlawful for any person to forge or materially alter a CFP or a firearm registration certificate.

(d) It is unlawful for any person to knowingly possess a forged or materially altered CFP or firearm registration certificate.

(f) It is unlawful for any person to knowingly make any false statement, submit any false information or misrepresent any information required in this chapter.

**8-20-230 Notice.**
For the purposes of this chapter, service of any notice, finding or decision upon a person shall be completed by any of the following methods by:

(a) personal delivery of a copy of such notice, finding or decision to the person;

(b) leaving a copy of such notice, finding or decision at the address identified on the application for a CFP or registration certificate; or

(c) mailing, by first class mail, a copy of the notice, finding or decision to the address identified on the application for a CFP or registration certificate, in which case service shall be

complete as of the date the notice was mailed.

### 8-20-240 Posting of unsafe handguns.

(a) The superintendent shall post on the department's web site the roster of unsafe handguns.

(b) No less than 10 days prior to placing any handgun on the roster of unsafe handguns, the superintendent shall post on the department's web site the type or model of the handgun that will be placed on the roster.

### 8-20-250 Seizure and forfeiture of firearms, ammunition, laser sight accessories and firearm silencers and mufflers-Authority and destruction.

The superintendent has the authority to seize any firearm, assault weapon, ammunition, laser sight accessories, or firearm silencer or muffler carried or possessed in violation of this chapter or any applicable state or federal law. Such items are hereby declared contraband and shall be seized by and forfeited to the city.

Whenever any firearm, ammunition, laser sight accessories, or firearm silencer or muffler is surrendered or forfeited pursuant to the terms of this chapter, or any applicable state or federal law, the superintendent shall ascertain whether such firearm, ammunition, assault weapon, laser sight accessories, or firearm silencer or muffler is needed as evidence in any matter. All such items which are not required for evidence shall be destroyed at the direction of the superintendent; provided that those firearms and ammunition that the superintendent shall deem to be of use to the department may be retained for the use of the department. A record of the date and method of destruction and an inventory of the firearm or ammunition so destroyed shall be maintained.

### 8-20-260 Rules and regulations.

The superintendent has the authority to promulgate rules and regulations for the implementation of this chapter and to prescribe all forms and the information required. All rules and regulations promulgated by the superintendent pursuant to this chapter shall be posted on the department's web site.

### 8-20-270 Acquisition or possession prohibited by law.

Nothing in this chapter shall make lawful the acquisition or possession of firearms or ammunition which is otherwise prohibited by law.

### 8-20-280 Prohibition on shooting galleries and target ranges.

Shooting galleries, firearm ranges, or any other place where firearms are discharged are prohibited; provided that this provision shall not apply to any governmental agency. The discharge of a firearm in an area where hunting is permitted shall not be a violation of this section.

### 8-20-290 Severability.

If any provision or term of this chapter, or any application thereof, is held invalid, the invalidity shall not affect other applications of the provisions or terms of this chapter which reasonably can be given effect without the invalid provision or term for the application thereof.

## ARTICLE V. VIOLATION OF CHAPTER PROVISIONS.

### 8-20-300 Violation – Penalty.

(a) Any person who violates section 8-20-020, 8-20-030, 8-20-035, 8-20-060, 8-20-080 or 8-20-110 shall upon conviction be fined not less than $1,000.00 nor more than $5000.00 and be

incarcerated for a term not less than 20 days nor more than 90 days. Each day that such violation exists shall constitute a separate and distinct offense.

(b) Unless another fine or penalty is specifically provided, any person who violates any provision of this chapter, or any rule or regulation promulgated hereunder, shall upon conviction or a finding of liability for the first offense, be fined not less than $1,000.00, nor more than $5,000.00, or be incarcerated for not less than 20 days nor more than 90 days, or both. Any subsequent conviction for a violation of this chapter shall be punishable by a fine of not less than $5,000.00 and not more than $10,000.00, and by incarceration for a term of not less than 30 days, nor more than six months. Each day that such violation exists shall constitute a separate and distinct offense.

(c) In addition to any other fine or penalty provided in this chapter, the CFP or registration certificate of any person who violates any provision of this chapter, or rule or regulation promulgated hereunder, may be revoked. Any person whose CFP is revoked shall not be eligible for a CFP for 5 years from the date of the revocation; provided that the superintendent may waive this restriction if, in the determination of the superintendent, the applicant has demonstrated that the applicant has good reason to fear injury to his person or property.

(d) Upon the determination that a person has violated any provision of this chapter or any rule or regulation promulgated hereunder, the superintendent may institute an administrative adjudication proceeding with the department of administrative hearings by forwarding a copy of a notice of violation or a notice of hearing, which has been properly served, to the department of administrative hearings.

SECTION 5. The renumbering and amending of the sections in Chapter 8-20 are not intended to invalidate, alter, or otherwise affect in any way any action taken, or could have been taken, based upon those sections, nor shall it be construed to affect any offense or act committed, action or claim arising under those sections, penalty, forfeiture, or punishment incurred, except that any proceedings after the effective date of this 2010 ordinance shall conform, insofar as practicable, to the ordinance in effect at the time of the proceedings.

SECTION 6. Title 8 of the Municipal Code of Chicago is hereby amended by adding a new section 8-24-005, by deleting sections 8-24-025 and 8-24-026, by deleting the language struck through, and by adding the language underscored, as follows:

**8-16-090 Firearms for minors.**
No person shall sell, loan, or furnish to any minor any ~~gun, pistol or other firearm, or~~ any toy gun, toy pistol, or other toy firearm in which any explosive substance can be used~~, within the city; except that minors may be permitted, with the consent of their parents or guardians, to use firearms on the premises of a duly licensed shooting gallery, gun club, or rifle club, or to shoot game birds in accordance with the provisions of Section 8-24-050 of this Code~~.

**8-24-005 Definitions**
For the purposes of this Chapter, the following definitions apply:

"Corrections officers," "firearm" and "peace officer" have the meaning ascribed to those terms in section 8-20-010.

**8-24-010 Discharging firearms.**
No person shall fire or discharge any ~~gun, pistol, or other~~ firearm within the city, except in the lawful self-defense or defense of another ~~upon premises used by a duly licensed shooting gallery,~~

~~gun club, or rifle club,~~ or in accordance with the provisions of Section 8-24-050 of this Code.

No cannon or piece of artillery shall be discharged or fired off in any public way or other public place within the city, except upon the express permission of the city council.

Any person violating any of the provisions of this section shall be fined not less than $~~250.00~~ 500.00 nor more than $~~500.00~~ 1,000.00 for each offense.

The provisions of this section shall not apply to <u>persons listed in section 8-20-020 (b)(1)-(15).</u> ~~sheriffs, coroners, constables, members of the police force, or other peace officers engaged in the discharge of their official duties, or to any person summoned by any of such officers to assist in making arrests or preserving the peace while such person so summoned is engaged in assisting such officer.~~

### 8-24-020 Carrying dangerous weapons.

(a) No person shall sell, offer for sale, keep, possess, loan or give to any person any knife, the blade of which is released by a spring mechanism, including knives known as "switch-blades", any blackjack, slingshot, sandclub, sandbag, metal knuckles or bludgeon. No person shall sell, offer for sale, loan or give to any person 18 years of age or under any type or kind of knife, any blade of which is two inches in length or longer.

(b) [Reserved] ~~No person shall sell, manufacture, purchase, possess or carry any weapon from which eight or more shots or bullets may be discharged by a single function of the firing device.~~

(c) No person shall carry or possess any knife, the blade of which is released by a spring mechanism, including knives known as "switch-blades", any blackjack, slingshot, sandclub, sandbag, metal knuckles or bludgeon. No person 18 years of age or under shall carry or possess any knife, the blade of which is two inches in length or longer.

(d) No person shall carry or possess with intent to use same unlawfully against another a dagger, dirk, billy, dangerous knife, razor, stiletto or other dangerous or deadly weapon.

(e) [Reserved] ~~No person shall carry concealed on or about his person a pistol, revolver, derringer or other firearm. Provided, however, that this provision shall not apply to the following officers while engaged in the discharge of their official duties: sheriffs, coroners, constables, policemen or other duly constituted police officers and wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of crime; nor to the following employees or agents while engaged in the discharge of the duties of their employment: conductors, baggagemen, messengers, drivers, watchmen, special agents and policemen employed by railroads or express companies; nor to persons lawfully summoned by an officer to assist in making arrests or preserving the peace, while so engaged in assisting such officer.~~

(f) No person shall carry concealed on or about his person a or dagger, dirk, stiletto, bowie knife, commando knife, any blade of which is released by a spring mechanism, including knives known as "switch-blades" or any other type or kind of knife, any blade of which is more than two and one-half inches in length, ordinary razor or other dangerous weapon except that no person 18 years of age or under shall carry concealed on or about his person, any knife, the blade of which is two inches in length or longer. Provided, however, that this provision shall not apply to the following officers while engaged in the discharge of their official duties: sheriffs, coroners, <u>peace officers</u> ~~constables, policemen or other duly constituted police officers~~ and <u>corrections officers</u> ~~wardens,~~

~~superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of crime;~~ nor to the following employees or agents while engaged in the discharge of the duties of their employment: conductors, baggagemen, messengers, drivers, watchmen, special agents and policemen employed by railroads or express companies; nor to persons lawfully summoned by an officer to assist in making arrests or preserving the peace, while so engaged in assisting such officer.

(g) Any person violating the provisions of subsections (a), (c), (d) or (f) of this section shall be fined $200.00 for each offense, or shall be punished by imprisonment for a period not to exceed six months, or by both such fine and imprisonment. ~~Any person violating the provisions of subsections (b) or (e) of this section shall be subject to a fine of $300.00 for each offense, and a mandatory minimum sentence of not less than five days imprisonment nor more than six months imprisonment for a first offense; a mandatory minimum sentence of not less than fifteen days imprisonment nor more than six months imprisonment for a second offense; and a mandatory minimum sentence of not less than thirty days imprisonment nor more than six months imprisonment for a third or subsequent offense.~~

(h)   ~~In addition to all other penalties, weapons~~ Any weapons used in violation of this section are hereby declared contraband and shall be seized by and forfeited to~~, and confiscated by,~~ the city.

**8-24-021  Sale, display and use of utility knives.**
(a)     As used in this section, a "utility knife" is a knife consisting of a grip and single-edged sharp blade of the type typically used to cut such resistant surfaces as rugs, cardboard boxes, linoleum flooring and the like.

(b)     No person shall display or offer for sale any utility knife except by placing the knife either (1) in an area immediately accessible only to an employee of the establishment, and beyond the reach of any customer less than seven feet tall; or (~~b~~ 2) in a locked display cabinet, which can only be opened by an employee of the establishment.

*(omitted text is unaffected by this ordinance)*

~~**8-24-025  Assault weapons or ammunition — Sale prohibited — Exceptions.**~~
~~(a)  No person shall sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any assault weapon or assault ammunition, as those terms are defined in Chapter 8-20 of this Code. This section shall not apply to any officer, agent, or employee of this or any other municipality or state or of the United States, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers as defined in this Code to the extent that any such person is otherwise authorized to acquire or possess an assault weapon or assault ammunition and is acting within the scope of his or her duties. In addition, this section shall not apply to the acquisition or possession of assault ammunition by persons employed to provide security for armored carriers or mobile check cashing services while in the course of such duties, while commuting directly to or from the person's place of employment, and while at the person's home, if the assault ammunition (1) is acquired or possessed for use with a weapon that the person has been authorized to carry under Section 28 of the Illinois Private Detective, Private Alarm and Private Security Act of 1983; and (2) consists of an ammunition magazine that has a capacity of 15 or fewer rounds of ammunition.~~

~~(b)     Any assault weapon or assault ammunition possessed, sold or transferred in violation of subsection (a) is hereby declared to be contraband and shall be seized, and disposed of in accordance with the provisions of Section 8-20-220.~~

~~(c) Any person found in violation of this section shall be subject to a fine of not less than $500.00 nor more than $1,000.00 for each offense, and a mandatory minimum sentence of not less than five days imprisonment nor more than six months imprisonment for a first offense; a mandatory minimum sentence of not less than fifteen days imprisonment nor more than six months imprisonment for a second offense; and a mandatory minimum sentence of not less than thirty days imprisonment nor more than six months imprisonment for a third or subsequent offense.~~

~~(d) Any person who, prior to the effective date of the ordinance codified in this section, was legally in possession of an assault weapon or assault ammunition prohibited by this section shall have 14 days from the effective date of the ordinance codified in this section to do any of the following without being subject to prosecution hereunder:~~

~~(1) To remove the assault weapon or ammunition from within the limits of the City of Chicago; or~~

~~(2) To modify the assault weapon either to render it permanently inoperable or to permanently make it a device no longer defined as an assault weapon; or~~

~~(3) To surrender the assault weapon or ammunition to the superintendent of police or his designee for disposal in accordance with Section 8-20-220.~~

~~**8-24-026 Fragmenting bullets and metal piercing bullets -- Sale prohibited -- Exceptions.**~~

~~(a) No person shall manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any fragmenting bullets, metal piercing bullets, or disc projectile ammunition. This section shall not apply to any officer, agent, or employee of this or any other municipality or state or of the United States, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers as defined in this Code to the extent that any such person is otherwise authorized to acquire or possess fragmenting bullets, metal piercing bullets, or disc projectile ammunition and is acting within the scope of his or her duties.~~

~~(b) Any fragmenting bullets, metal piercing bullets, or disc projectile ammunition manufactured, possessed, sold or transferred in violation of subsection (a) are hereby declared to be contraband and shall be seized and disposed of in accordance with the provisions of Section 8-20-220.~~

~~(c) Any person found in violation of this section shall be sentenced to not more than six months imprisonment or fined $500.00, or both.~~

**8-24-027 Disguised firearms prohibited.**

(a)     No person shall purchase, acquire, sell, offer or expose for sale, or possess any firearm that is designed, constructed, modified or disguised to resemble any other object.

(b)     Any person who violates subsection (a) of this section ~~shall be guilty of a misdemeanor, and~~ shall be <u>incarcerated</u> ~~subject to incarceration~~ for not less than 30 days and not more than 180 days for each offense. Each day of a continuing violation, and each purchase, acquisition, sale, offering or exposing for sale, or possession of a different firearm described in subsection (a) shall constitute a separate and distinct offense.

(c)     Nothing in this section suspends, repeals or alters any other provision of this Code which limits, restricts or prohibits the purchase, acquisition, sale, offering or exposure for sale, or possession of a firearm.

**SECTION 7.** The Municipal Code of Chicago is hereby amended by adding a new chapter 8-26, as follows:

**Chapter 8-26 Gun Offender Registration Ordinance**

**8-26-010   Definitions:**

For purposes of this chapter, the following definitions apply:

"Corrections facility" has the same meaning ascribed to that term in 720 ILCS 5/3-1-2.

"Conviction" or "convicted" means an adjudication by a court of competent jurisdiction that a person is guilty, and includes the sentence by the court, of the gun offense.

"Gun offender" or "offender" means any person convicted of a gun offense that is subject to the provisions of this chapter.

"Gun offense" means a criminal conviction of an offense for an unlawful use of a weapon that included a firearm under 720 ILCS 5/24, or criminal possession of a firearm in violation of any federal, state or local law.

"Department," "firearm," and "superintendent" have the meaning ascribed to those terms in section 8-20-010.

**8-26-020 Duty to register and to verify.**

(a) A gun offender who resides within the city, or remains in the city to work or attend school, shall register with the superintendent within 48 hours of either: (1) release, if the gun offender receives a sentence of imprisonment; or (2) the time sentence is imposed, if the sentence does not include imprisonment.

(b) The form and manner of registration shall be as provided in rules and regulations.

(c) The registration shall include the following information;
(1) the person's name, date of birth, and sex;
(2) the address where the gun offender resides, works, or attends school;
(3) any other legal name;
(4) copy of a driver's license or non-driver's photo identification card;
(5) a photograph of the gun offender;
(6) a description of the offense for which the offender was convicted;
(7) the name and address of the offender's place of work, or expected place of work, including the name and phone number of his supervisor;
(8) the name and address of any educational institution which the offender attends or expects to attend; and
(9) any other information that the superintendent shall find reasonably necessary to effect the purpose of this chapter.

The gun offender shall sign a statement under oath attesting to the accuracy of the information required in this subsection.

(d) The superintendent may photograph the gun offender and require the gun offender to provide such documentation as the superintendent considers acceptable to verify any information required pursuant to this chapter.

(d) The gun offender shall submit to fingerprinting in accordance with rules and regulations promulgated by the superintendent.

**8-26-030 Initial and annual registration.**

(a) For the initial registration, a gun offender shall personally appear to register at such office of the police that the superintendent may direct.

(b) No later than 20 days after the one-year anniversary of the gun offender's initial registration, the gun offender shall personally appear at such office of the police that the superintendent may direct for the purpose of verifying the information required in this chapter.

(c) If a gun offender required to register under this chapter is confined to any federal, state or local correctional center, residential treatment center, hospital, or institution throughout the 20-day period set forth in subsection (b), the gun offender shall personally appear as required by this subsection within 48 hours of release.

**8-26-040 Registration period.**

A gun offender shall comply with the requirements of this chapter for a period beginning when he is required to register and continuing until 4 years from the date of conviction, or 4 years after the expiration of any time being served on probation, parole, supervised release, or conditional release, or 4 years after the gun offender is unconditionally released from a correctional facility, prison, hospital or other place of confinement, whichever is last. The registration period is tolled any time the gun offender fails to register or otherwise fails to comply with the requirements of this chapter.

**8-26-050 Duty to report.**

A gun offender shall report any change in information required by this chapter with 48 hours of such change, in a manner and in a form prescribed by the superintendent.

**8-26-060 Creation of gun offender registry.**

(a) The superintendent is authorized to collect and maintain gun offender information obtained pursuant to this chapter.

(b) The superintendent shall create and maintain a registry of gun offenders registered pursuant to the provisions of this chapter.

(c) The superintendent is authorized to make the gun offender registry available to any other city sister agencies or any regional or national government-established gun offender registry and may accept files from such registries.

**8-26-070 Cooperation with other agencies.**

The superintendent is authorized to cooperate with the judiciary and state and other city sister agencies to facilitate the implementation of this chapter. Assistance and cooperation in the implementation of this chapter shall be provided by other city departments upon the request of the superintendent.

**8-26-080 Gun offender community notification.**

The superintendent shall post the gun offender registry on the department's web site, and must make the information contained in the registry database searchable with a mapping system which identifies registered gun offenders within 5 miles of an identified address. The information shall be updated as deemed necessary by the superintendent.

**8-26-090 Rules and regulations.**

The superintendent has the authority to promulgate rules and regulations for the implementation of this chapter and to prescribe all forms and the information required.

**8-26-100 Violation-Penalty.**

Any person who violates any provision of this chapter, or rule or regulation promulgated hereunder, shall, upon conviction, be fined not less than $300.00 nor more than $500.00 or be incarcerated for a term not to exceed six months, or both. Each day that such violation exists shall constitute a separate and distinct offense.

**8-26-110 Severability.**

If any provision or term of this chapter, or any application thereof, is held invalid, the invalidity shall not affect other applications of the provisions or terms of this chapter which reasonably can be given effect without the invalid provision or term for the application thereof.

**SECTION 8.** This ordinance shall take effect 10 days after its passage and approval.

Case: 1:10-cv-04184 Document #: 158-1 Filed: 03/02/12 Page 36 of 60 PageID #:2525



THE FOUNDERS' CONSTITUTION



# Amendment II

HOME

SEARCH

CONTENTS

INDEXES

HELP

**Document 1**

## Statute of Northampton 2 Edw. 3, c. 3 (1328)

Item, it is enacted, that no man great nor small, of what condition soever he be, except the king's servants in his presence, and his ministers in executing of the king's precepts, or of their office, and such as be in their company assisting them, and also [upon a cry made for arms to keep the peace, and the same in such places where such acts happen,] be so hardy to come before the King's justices, or other of the King's ministers doing their office, with force and arms, nor bring no force in affray of the peace, nor to go nor ride armed by night nor by day, in fairs, markets, nor in the presence of the justices or other ministers, nor in no part elsewhere, upon pain to forfeit their armour to the King, and their bodies to prison at the King's pleasure. And that the King's justices in their presence, sheriffs, and other ministers in their bailiwicks, lords of franchises, and their bailiffs in the same, and mayors and bailiffs of cities and boroughs, within the same cities and boroughs, and borough-holders, constables, and wardens of the peace within their wards, shall have power to execute this act. And that the justices assigned, at their coming down into the country, shall have power to enquire how such officers and lords have exercised their offices in this case, and to punish them whom they find that have not done that which pertained to their office.

**The Founders' Constitution**
Volume 5, Amendment II, Document 1
http://press-pubs.uchicago.edu/founders/documents/amendIIs1.html
The University of Chicago Press

 Easy to print version.

Home | Search | Contents | Indexes | Help

© 1987 by The University of Chicago
All rights reserved. Published 2000
http://press-pubs.uchicago.edu/founders/

# CALENDAR

## OF THE

# CLOSE ROLLS,

### PRESERVED IN THE

## PUBLIC RECORD OFFICE.

PREPARED UNDER THE SUPERINTENDENCE OF

## THE DEPUTY KEEPER OF THE RECORDS.

## RICHARD II.

### VOL. II.

### A.D. 1381—1385.



ISSUED BY AUTHORITY OF HIS MAJESTY'S PRINCIPAL SECRETARY OF STATE
FOR THE HOME DEPARTMENT.



First published in 1914 on behalf of the Public Record Office

Reprinted by permission of the Controller of Her Britannic Majesty's
Stationery Office, London

**KRAUS REPRINT**
A Division of
KRAUS-THOMSON ORGANIZATION LIMITED
Nendeln/Liechtenstein
1972

*1381.*                      *Membrane 31d—cont.*

Oct. 26.      Geoffrey Cobbe of Wympole and Walter son of Hugh de Orewelle
Westminster. to John de Ravenser clerk of the hanaper of chancery.   Recognisance
for 40*l.*, to be levied etc. in Cambridgeshire.

Oct. 29.      William Tyler esquire to John Mangle citizen and mercer of London.
Westminster. Recognisance for 20*l.*, to be levied etc. in Lincolnshire.

Nov. 3.       William de Burstall canon of Lincoln, John de Middelton clerk and
Westminster. John de Chertesey to John dean of St. Pauls London and the chapter.
Recognisance for 1,000*l.*, to be levied etc. in Bedfordshire.
   *Cancelled on payment, acknowledged by the dean and Richard de
Puryton canon.*

   Stephen de Hoghton of Chesterton to Peter Tebaud and the heirs
of his body by Alice daughter of the grantor and Florence his wife,
with remainder to the right heirs of the said Peter.   Grant with
warranty of the reversion of a messuage, 60 acres of land, 10 acres of
meadow and 3*s.* 4*d.* of rent in Chesterton co. Cantebrigge, now held
for life by the said Alice with reversion to the grantor and his heirs.
Witnesses : John Philipot, William Walworth, Nicholas Brembre
knights, Hugh la Souche knight, Roger Harleston, William Bateman,
John Sibile.   Dated London, 23 October 5 Richard II.
   *Memorandum* of acknowledgment in the chancery at Westminster,
4 November.

Nov. 2.       To the mayor and sheriffs of London.   Order by advice of the council,
Westminster. willing to make provision for the peace in the city especially during
this parliament, as they love the king and his honour and desire the
safety of the realm and city, to take order for keeping the peace in the
city and suburbs, and to cause proclamation to be made that no stranger
or privy person, save those deputed to keep the peace, shall go armed
therein after they shall come to their lodgings, and none but a knight
shall wear his sword under pain of forfeiting his armour and of
imprisonment at the king's will, except peers of the realm for their
persons and the knights and esquires of their household and retinue,
who shall wear arms and armour as they will ; and order friendly
and honourably to entreat all strangers resorting to the city, so that
no cause of disturbance shall arise.                       By K. and C.
   [*Fœdera.*]

   Margery who was wife of Sir John de Verdoun of Draycote to Sir
Robert de Swyllyngton, his heirs and assigns.   Quitclaim with
warranty of a moiety of the manor of Ibstoke co. Leycestre
formerly of the said John, and all his lands there.   Dated 20 November
5 Richard II.   *French.*
   *Memorandum* of acknowledgment, 20 November.

   John Wakyrley, son and heir of Roger Wakyrley, to Richard
Waldegrave knight, his heirs and assigns.   Charter with warranty
of all lands, rents etc. of his said father in Hanyngton co. Norhampton
which came to the said John by inheritance.   Witnesses : William
lord le Suche, William Suche the younger, Henry Grene, Thomas

# By the Queene.

  

*A Proclamation against the common vse of Dagges, Handgunnes, Harquebuzes, Calliuers, and Cotes of Defence.*

THe Queenes Maiestie, being informed credibly from sundrie partes of the Realme, that her former commaundements, contained in her Proclamations heretofore published for the prohibiting of the common carying of Dagges, Pistolles, and such other short pieces of shot according to the Actes of Parliament remaining of force, haue not bene by such publike Officers in Shires, Townes, and other publike places duely executed, as by the saide proclamations was ordred, but haue in a generalitie bene neglected, and so the disorder growne so great in common carying of Dagges, Pistolles, and such like, not onely in Cities and Townes, and in all partes of the Realme in common high waies, whereby her Maiesties good quyet people, desirous to liue in peaceable maner, are in feare and daunger of their liues to trauel abroade for their necessarie businesse, by meanes of the multitude of the euil disposed, who contrary to the Lawes and her Maiesties proclamations do so commonly cary such offensiue weapons, being in time of peace onely meete for theeues, robbers & murderers: Whereupon her Maiestie by the aduice of her Counsel, and vpon the general complaint made of the multitude of her peaceable people, doeth giue streight charge to all maner officers, to whom the execution of the former proclamations did apperteine, that immediatly vpon the publication hereof, they do with spede take order how the contents of the foresaid proclamations may be spedily put in due execution. And to that end her Maiestie chargeth all Maiors, Shiriues, Bailiffes, and other head Officers of Cities and townes corporate. and all Iustices of Peace within all Counties and other places hauing any speciall liberties, that they do assemble them selues in some accustomed places, and there to set downe certaine order, and appoynt speciall ministers, not onely to enquire of the default of the execution of the foresaide Proclamations, but also to procede duely to the execution thereof.

And furthermore, where her Maiestie vnderstandeth that besides the enormities growne by lacke of execution of the sayd Proclamations against the common vsage of Dagges and Pistolles, there is an other greater disorder growne of common carying abroade both in Townes and Fields, of great Pieces, as Harquebuzes, Calliuers and such like, vnder colour of learning or exercising to shoote therein, to the seruice at Musters apoynted in sundrie Counties for the common seruice of the Realme, (a matter to be in good sorte fauoured, but not to be misused) by which meanes, though the generall carying of them in places not apoynted for such musters, and by the frequent shooting with them in and neere Cities, Townes corporate, or the Suburbes therof where great multitude of people do liue, reside, and trauaile vp and downe for their necessarie businesse, many harmes do ensue, and occasions like to encrease of great danger, by such libertie permitted for the vse of suche offensiue weapons in places not conuenient. For these considerations, and so the consequences of sundrie mischieues that may ensue, her Maiestie by like aduice of her Counsell, doth commaunde and charge all maner her subiects of what estate so euer they be, from henceforth to forbeare fro shooting in any maner of Handgunnes, Harquebuzes, Calliuers, or such like, of what name so euer they be,

214

either charged with Bullet by without, in any place, but onely at and in the places that are or shalbe appointed for common Musters, by the direction of the Commissioners for generall Musters, or els at and in such places as are, or shall be appointed to be meete places, either within great Cities or the Suburbes of the same, or in places farre off from Townes of habitation, for the exercise of Shooting in such pieces as is aforesayde. and for the learning to shoote in the same places. And that no such Piece be charged with Shot or Powder, but at, or in the same place so limited for Musters, or for exercise of Shooting. And if any persons being Artificers, makers of such Pieces in any place, shall haue cause to trie such pieces, either for the satisfaction of them selues, or of any that shall desire to buy the same, the triall thereof shall also be at the sayde places so limited, and at none other. And if any person shall hereafter attempt the contrary to the breache of these her Highnesses commaundementes, that the same shalbe committed to prison by any Officer hauing charge to see the keeping of the peace, or being any principall or chiefe Officer within any of the sayde Cities or Townes corporate, there to remaine by the space of two Monethes at the least. And the Piece and Shot so misused, to be seased and kept, and sent to any of her Maiesties Officers of Ordinance or Castels where any Ordinance is kept, that shalbe next to the same place, there to remaine. And vpon any seconde Offence to be committed to close prison, and there to remaine vntill the same shalbe expressely bailed by commaundement of her Maiestie, or of sixe of her priuie Counsell.

Furthermore, her Maiestie in like sort commaundeth, that no maner of Person shall vse any Shooting in any such small Pieces, within two myles of any house where her Maiestie shall reside, during the time of her Maiesties residing, vpon like paine as before is expressed. And to that ende her Maiestie chargeth her Marshal of her house, to be carefull by him selfe and his Ministers, to see the due obseruation thereof. And if he shall finde any to offende therein, not onely to commit the same to prison, but also to aduertise her Maiestie, or her priuie Counsell thereof, that some further extraordinarie punishment may be extended vpon such audacious persons, as shall aduenture to offend so neere to the place, where her Maiesties person shalbe.

And where as diuers of late yeres haue vsed to weare priuie Cotes, and Doublets of defence, thereby intending to quarrell, and make frayes vpon other vnarmed, and presume audaciously to apparell them selues with the said priuie Armour, not onely in Cities, Townes, and publike assemblie, but within her Maiesties Court wheresoeuer, to the great offence & contempt of her Highnes, and of her Lawes, and to the hurt of diuers her Maiesties good subiects. Therfore her Maiestie doth expressely prohibite & forbid all and euery of her subiects whatsoeuer, the wearing of any such priuie or secret kinde of Cote, or Doublet of Defence. And further her Maiesties expresse pleasure is, that all her Iustices of peace, Maiors, Sheriffes, Bailiffes, Constables, and other her Maiesties Officers whatsoeuer, shall and may lawfully apprehend and arrest all such persons, as shall offend contrary to the Tenour of this Proclamation in that behalfe. And the said persons so apprehended, shall, and may lawfully commit to the next prison and gaole, where they shalbe so arrested, there to remaine without baile or mainprise, vntill there shalbe direction giuen from her Maiesties priuie Counsel. And the same priuie Cotes or Double, & to be taken from them, and sent to the Sheriffe of the shire for the time being, to be by him kept vntill her Maiestie shall otherwise dispose of the same. And the partie so offending to be fined at her Highnesse will and pleasure.

Finally, also her Maiestie farther chargeth all maner Officers in Cities, Townes and other places, to make searche for all maner small Daggers, called pocket Daggers, as well in any mans house to be suspected for the same, as in the Shoppes and Houses of Artificers that do vse to make the same: And all them shall seaze and take into their custodie, deliuering a Bil of their handes, testifying the receipt thereof, to the intant the owners may haue such recompence for the same, as hereafter vpon Certificate to her Maiesties priuie Counsel, or to the Presidentes and Counsels in Wales and in the North partes, shalbe thought requisite. And herewith her Maiestie commaundeth, that no maner of person shall hereafter either make or amende, or shall bring into this Realme any such Daggers, commonly called pocket Daggers, or such like, vpon paine of imprisonment, as next aboue is expressed. And wheresoeuer there are any persons that haue made any small Shot, the same shalbe bounde in reasonable summes to her Maiesties vse, by the discretion of the principall Officers of the Towne, not to make nor put to Sale, or otherwise to vtter any such smal Pieces as are commonly called pocket Daggers, or that may be hid in any Pocket, or like place about a mans body, to be hid or caried couertly.

And for execution of all the contentes of this Proclamation, her Maiestie chargeth all her Officers, that either in Liberties or without, haue any authoritie to enquire of the breache of her Maiesties peace, to assemble them selues presently, and so monethly betwene this and Christmas next. And there by a Iurie of sufficient persons to be sworne, or by other ministers to be by them deputed, to enquire of the obseruation of all the poyntes herein contained.

Giuen at our Manour of Greenewich, the xxvi. day of Iuly in the xxi. yeere of our reigne.

God saue the Queene.

## Imprinted in London at Bacon house by Christopher Barker,

Printer to the Queenes Maiestie.

Anno. 1579.

A - 037

# By the Queene.

A Proclamation againſt the carriage of Dags, and for reformation of
ſome other great diſorders.



He Queenes Maieſtie hearing by credible report, that there are great diſorders lately growen in ſundry partes of her Realme, and ſpecially in and about her Citie of London, and in the vſuall high wayes towards the ſaid citie, and to her Maieſties Court, by common carrying of Dags, otherwiſe called Piſtols, to the terrour of all people profeſſing to trauel and liue peaceably, and which is moſt to her Maieſties griefe, by the vſage whereof, certaine perſons haue bene of late in ſundry places ſlaine with ſuch pieces: Hereupon hath called to her remembrance, that ſhe hath by former proclamations publiſhed, ſtraightly forbidden the carying, not only of ſuch Dagges, but alſo of other longer peeces, as Caliuers and ſuch like, in places and times not allowable for ſeruice: By which proclamations, as firſt, by one in very few words, in May the firſt of her reigne, Her Maieſtie reciting the Statute of her noble father King Henrie the eight, in the three and thirtieth yeere of his reigne, againſt the riding with handgunnes and daggers, vnder the length of three quarters of a yarde, commanded the ſame to be obſerued, & charged all her Iuſtices of peace at their next Seſſions, to make inquiſition of the obſeruation thereof, and to ſee the ſame Statute duely executed: And for that by proces of time, the due execution thereof hath ceaſſed, & the diſorders growen much greater, not onely in open carrying ſuch Dags, but alſo in a deuiſe to haue ſecretly ſmall Dagges, commonly called pocket Dags, and in wearing alſo ſecretly coates of armour, commonly called priuie coates, whereby many robberies and frayes haue bene increaſed, and became vnpuniſhed: Her Maieſty did in the xxi. yeere of her reigne by another open Proclamation, expreſſing the diſorders and dangers hereby enſuing, commaund that both her former Proclamation concerning the prohibition of Dags, ſhould bee ſpeedily put in execution, and added thereto her further commaundements and prohibitions againſt a diſorder in carrying and ſhooting with handguns & Caliuers within two myles of the place of her Maieſties reſidence, and neere to Townes and mens houſes, where there was no cauſe of Muſters to ſhew the ſame, nor any places ordeined for exerciſe, and againſt the wearing of priuie Coates and Dublets of defence, by ſuch as thereby moued quarels and frayes, vpon other quiet ſubiects vnarmed: And in concluſion of the ſame latter Proclamation, her Maieſtie did alſo commaund all her Officers in any Citie or Town, to make ſearch for all maner of ſuch ſmall Dags called Pocket Dags, and ſpecially in ſhops and houſes of Artificers that doe vſe to make the ſame: and thoſe to take and keepe in their poſſeſſion, giuing the owners teſtimoniall of the receipt thereof, to the end if there ſhould be ſeene good cauſe, they might haue a reaſonable recompence.

All which former commaundements and prohibitions appearing in this time to be as neceſſary or rather more to be duely executed, then before time, her Maieſtie doeth newly nowe command to be preſently executed: wherewith her Maieſtie chargeth all her Iuſtices of Peace, and ſpecially now at the firſt Seſſions that ſhalbe kept after Chriſtmas in all Counties, diligently to be giuen in charge, and by Iuries the defaults to be preſented and puniſhed.

And for more certaintie to haue the ſame ſo executed, her Maieſtie commaundeth the Cuſtos Rotulorum in euery Countie, and the Recorders in all Cities being Iuſtices of Peace, to make Certificat in writing to her Maieſties Counſell in the Starre chamber within the ſpace of viii. dayes, from the beginning of euery Hillarie Terme, how this her Maieſties preſent Proclamation hath bene in the ſayd firſt Seſſions executed: & ſo yerely to certifie the like in euery Hillarie Terme, vntill the ſame be otherwiſe directed by admonition from her Maieſties ſayde Counſell, to ceaſe from the ſame.

And although hereby the carriage of Dags is generally prohibited, yet the carriage thereof ſhall not be prohibited to perſons appointed to come to Muſters, as horſemen with Dags to ſerue therewith, or to bee vſed by any of her Maieſties miniſters or their ſeruants for their more ſuretie to carry her Maieſties treaſure, or to bring her reuenue to places appointed: So as alwayes the carriage of ſuch Dags be in open ſort, to be manifeſtly ſeene to all perſons.

Giuen at Somerſethouſe, the ſecond day of December, 1594. in the xxxvii. yeere of her Maieſties Reigne.

God ſaue the Queene.

&s; Imprinted at London by the Deputies of
Chriſtopher Barker, Printer to the Queenes moſt
excellent Maieſtie. 1594.

# *The Compleat Conſtable.*

Directing

All {
CONSTABLES,
HEADBOROUGHS,
TITHINGMEN,
CHURCH-WARDENS,
OVERSEERS of the POOR,
SURVEYORS of the High-ways, and SCAVENGERS,
}

IN THE

Duty of their ſeveral Offices, according to the Power allowed them by the Laws and Statutes: continued to this preſent Time, 1708.

Wherein the Conſtables Duty relating to the Game is fully treated. by R. G.

To which is added

A Treatiſe of Warrants and Comitments, proper for the Knowledge of all Conſtables, &c.

The 3d Edition with Additions.

LONDON,

Printed for *Tho. Bever*, at the *Hand* and *Star* near *Temple-Bar.* 1708.

Digitized by Google



THE NEW YORK
PUBLIC LIBRARY
52326
ASTOR, LENOX AND
TILDEN FOUNDATIONS.
1897.

# TO ALL

# OFFICERS

## WHOM

This TREATISE may
Concern.

### SIRS,

*THere needs no Apology (I
hope) for Compiling this
Treatise for your Use and
Direction, it being absolutely necef-
fary to publish New, or Reprint the
Old so often as the Statutes (by
which the Duty and Work of Con-
ftables, &c. is prepared and ap-
pointed) require it : And for that
there have been many Statutes made*

A 2                    *since*

Google

### To All Officers.

*since His late Majesty's Reign, and several since the former Impression. It was therefore necessary for your further Information, to make a new Edition of this Book, and to add so much of all the late Statutes as concern your several Offices, with such other Rules and Observations as may be useful to You; not doubting, but you will therefore think our Labour well continued, our Rules and Observations very profitable, and our Title most deserving to be,*

A Compleat GUIDE for
CONSTABLES. &c.

From Yours, &c.

March
1707.

## R. G.

The

Digitized by Google

( 17 )

shall be hurt in an Affray, they may have good remedy; but if the Affrayers be hurt in refiftance, they shall have no remedy againft them. *Lamb.* 141, 142. 21 *H.* 7. 21.

*Hurting the Confta-ble or his Affiftants.*

Thirdly, After an Affray, or Breach of the Peace be over, it is faid, That the Conftable, without a Warrant, cannot arreft the Affrayers, except fome perfon be dangeroufly hurt, as he may before or during the Affray. 38 *H.* 8. 6. But *quare.*

*Warrant where re-quifite. Quare.*

For its faid that if the Affrayers, when they fee the Conftable come to arreft them, fhall fly into a Houfe (by which it feems the Affray is over) the Officer may in frefh Purfuit of them, *ex Officio,* break open the Doors and Apprehend them; and if they fly into any Franchife within the County, he may follow and take them; nay, tho' they fly into another County, yet he may purfue them, and caufe them to be taken there; but then in this laft cafe, out of the County, he can meddle no further, but only as Affiftant to the Conftable there, to carry them before fome Juftice to caufe them to find Sureties, and fo much every private Man may do. *Dalton* 28, 29, 33, 34. *Lamb.* 135, 143, 144. *Cromp.* 146.

*Purfuit of Affrayer.*

And it is alfo faid, That if any Affray be in a Houfe, and the Doors are fhut, and tho' none of the Parties have taken any hurt; yet the Conftable may *ex Officio,* break into the Houfe, to fee the Peace kept. See *Dalton* ca. 8. fo. 33, 34. and *Lamb.* 135.

*Affray in a Houfe, and the Doors fhut.*

It

Digitized by Google

( 18 )

It has been held that the Conſtable might *ex Officio*, take Sureties for the Peace, *Trin.* 35. *Eliz. Skarret* Caſe : But it was then the Opinion of others that he ought to carry the Offender before a Juſtice, and this is the uſual and ſafeſt way. And 'tis held that tho' a Conſtable may do what he can to keep the Peace ; yet he cannot at the Requeſt of any Man, take ſurety of the Peace. *Cromp.* 6. 12 H. 7. *fo.* 18. *a.* 3 H. 4. 9. 10. *Kitchin fo.* 69. *a Dalton fo.* 4, 5.

*Arreſting Perſons offenſively Arm'd.* ☞ Secondly, For the *arreſting ſuch Perſons as ride or go Offenſively Arm'd*, you muſt obſerve, That if any Perſon ſhall Ride or go Arm'd offenſively, before Her Majeſties Juſtices, or any other her Officers or Miniſters, in the time of executing their Office, or in Fairs or Markets or elſewhere, by Day or by Night, in affray of Her Majeſties Subjects, and Breach of the Peace ; or wear or carry any Daggers, Guns or Piſtols Charged ; the Conſtable upon Sight thereof, may ſeize and take away their Armour and Weapons, and have them appriſed as forfeited to Her Majeſty; and may alſo carry the Perſons wearing them before a Juſtice, to give Surety to keep the Peace. *2 Ed.* 3. *ca.* 3. 7 *R.* 2. 13. 20. *R.* 2. *c.* 1. *Dalton Juſt. ca.* 9. *fo.* 35. and 159.

*Who may be arm'd and when.* But Her Majeſties Servants in her preſence, Sheriffs and their Officers, and other her Majeſties Miniſters, and ſuch as aſſiſt them to execute their Office ; and all Perſons purſuing Hue and Cry, in Caſe of

Digitized by Google

( 12 )

of Felony, and other Offences against the
Peace, have lawful Authority to bear
Armour or Weapons, *Dalt. ca. 9. fo. 36,*
*3 Co. fo. 72. 3. Co. Inst. fo. 162.*

The Constables have further Autho-
rity to search for Arms; but this is by
Warrant; of which more hereafter.

As to Riots, Routs, &c. Note, That *Suppressing*
Sheriffs, Constables and all other her Ma- *of Riots,*
jesties Officers, shall suppress Rioters and *&c.*
imprison them, and all other Offenders
against the Peace. 17 R. 2. cb. 8.

All her Majesties Leige People upon *Assistants.*
warning, shall be assistant to the Justi-
ces, Commissioners, Sheriff and Under-
sheriff, upon Pain of Imprisonment,
and to make Fine and Ransom to Her
Majesty, *Stat. 2 H. 5. 8. Dalton. J. P. c4.*
*46. fo. 114.*

It is to be Noted, That when three or *What may*
more Persons do assemble themselves to- *be called a*
gether, to and with the Intent to beat *Riot, Rout,*
or maim a Man, to pull down a *or unlaw-*
House, Wall, Pales, Hedge, or Ditch, *ful Assem-*
wrongfully, to claim or take Common, *bly.*
or a way in a Ground; to destroy any
Park, Warren, Dove-House, Pond, Pool,
Barn, Mill, or Stack of Corn, or to do
any other unlawful Act, with Force and
Violence, and against the Peace, and
in manifest Terror of the People; and
if they only meet to such a purpose or
intent, although they shall after depart
on their own accord, without doing
any thing: Yet this is an unlawful Af-
sembly: And if after such a meeting as
aforesaid,

Google

( 26 )

aforefaid, they move forward towards
the Execution of their intent, tho' they
put it not in Execution, yet it is a Rout;
and if they do put their Intent in Exe-
cution, and do any fuch thing indeed,
Then 'tis called a Riot.

And if 3, 4, or more, do enter into
Lands with Force, upon the Poffeffion of
another, tho' their Entry be lawful, yet
its a Riot, becaufe 'tis prohibited by the
Stat. to enter into Lands and Tenements
with force, or a Multitude of People.
5 A. 2. 7. 15 R. 2. 2, &c. Cromp. 68. Dalt.
fo. 57. 8. Lamberts 179, 81. 3 of dpt. and
Inftit. fo. 176.

And if any Conftable, or any private
Perfon of the fame County, do refufe to
attend and affift the Juftice of Peace up-
on Requeft, to remove a Force, or to
convey the Parties to the Goal, he may
be imprifoned for his Negleft, and make
Fine to her Majefty. 15 R. 2. ca. 2.
Dalt. ca. 22. fo. 57.

*How they
depend one
on another.*  If therefore 3 or more meet with an
evil intent to act, 'tis an unlawful Affem-
bly; if they continue and move for-
ward, 'tis a Rout; and if thereupon they
commit any Mifchief, 'tis a Riot.

*Exception.*  Yet its faid there may be a Rout, where
there was no unlawful Affembly or evil in-
tent, as in the cafe of a Man's going or
Riding to the Seffions, Market, Fair, or
other Affembly of Company with his
Servants in Harnefs, tho' he hath no in-
tent to Fight or commit any Riot, yet
this is a Rout, by the manner of his com-
ing.

Digitized by Google

THE

# GRANTS, CONCESSIONS,

AND

## ORIGINAL CONSTITUTIONS

OF THE PROVINCE OF

# NEW JERSEY

THE

# ACTS

Passed during the Proprietary Governments, and other
material Transactions before the Surrender
thereof to Queen Anne.

The Instrument of Surrender, and her formal Accept-
ance thereof

Lord CORNBURY'S COMMISSION and Instructions Conse-
quent thereon,

Collected by some Gentlemen employed by the General Assembly,
And afterwards

Published by virtue of an Act of the Legislature of the said Province
With proper Tables alphabetically Digested, containing the prin-
cipal Matters in the Book.

By AARON LEAMING and JACOB SPICER.

PHILADELPHIA:
Printed by W. BRADFORD, Printer to the King's Most Excellent
Majesty for the Province of New Jersey.

ny persons as they shall think fit, not exceeding seven, to make orders from time to time, such as may be suitable and beneficial for every town, village, hamlet, or neighbourhood, for preventing all harms by swine, in town, meadows, pastures and gardens, in any respect, and to impose penalties according to their best discretions.

## Chap. VIII.

## An Act appointing some new Commissioners of the Highways.

WHEREAS there was an act made in the year 1682, for the county of Monmouth, to enable Col. Lewis Morris, John Bound, and Joseph Parker, to lay out highways, passages, ferry's, and making bridges and such like; there being three of those persons disenabled for the true performance of the said services, *be it therefore enacted* by the Governor, Council and Deputies now met and assembled, and by the authority of the same, that John Frogmerton, John Slocame, and Nicholas Brown, in the stead and room of Col. Lewis Morris, John Bound, and Joseph Parker, be made capable and hereby invested with the same power to all intents and purposes in the said premises, as the aforesaid Col. Lewis Morris, John Bound, and Joseph Parker, were by the said acts.

## Chap. IX.

## An Act against wearing Swords, &c.

WHEREAS there hath been great complaint by the inhabitants of this Province, that several persons wearing swords, daggers, pistols, dirks, stilladoes, skeines, or any other unusual or unlawful weapons, by reason of which several persons in this Province, receive great abuses, and put in great fear and quarrels, and challenges made, to the great abuse of the inhabitants of this Province. *Be it therefore enacted* by the Governor, and Council, and Deputies now met in General Assembly, and by authority of the same, that no person or persons within this Province, presume to send any challenge in writing, by word of mouth,

19

## 290     Laws passed in 1686.

or message, to any person to fight, upon pain of being imprisoned during the space of six months, without bail or mainprize, and forfeit ten pounds; and whosoever shall except of such challenge, and not discover the same to the Governor, or some publick officer of the peace, shall forfeit the sum of ten pounds; the one moiety of the said forfeiture to be paid unto the Treasurer for the time being, for the public use of the Province, and the other moiety to such person or persons as shall discover the same, and make proof thereof in any court of record within this Province, to be recovered by the usual action of debt, in any of the said courts. *And be it further enacted* by the authority aforesaid, that no person or persons after publication hereof, shall presume privately to wear any pocket pistol, skeines, stilladers, daggers or dirks, or other unusual or unlawful weapons within this Province, upon penalty for the first offence five pounds, and to be committed by any justice of the peace, his warrant before whom proof thereof shall be made, who is hereby authorized to enquire of and proceed in the same, and keep in custody till he hath paid the said five pounds, one half to the public treasury for the use of this Province, and the other half to the informer: And if such person shall again offend against this law, he shall be in like manner committed (upon proof thereof before any justice of the peace) to the common gaol, there to remain till the next sessions, and upon conviction thereof by verdict of twelve men, shall receive judgment to be in prison six month, and pay ten pounds for the use aforesaid. *And be it further enacted* by the authority aforesaid, that no planter shall ride or go armed with sword, pistol, or dagger, upon the penalty of five pounds, to be levied as aforesaid, excepting all officers, civil and military, and soldiers while in actual service, as also all strangers, travelling upon their lawful occasions thro' this Province, behaving themselves peaceably.

# THE
# 𝔓erpetual 𝔏aws,

### OF THE

## COMMONWEALTH

### OF

# MASSACHUSETTS,

### FROM THE

## ESTABLISHMENT OF ITS CONSTITUTION

### TO THE

## SECOND SESSION of the GENERAL COURT, in 1798.

### *IN TWO VOLUMES.*

---

### VOL. II.

### Containing the LAWS from MAY, 1788, to JANUARY, 1799.

*IGNORANTIA LEGIS NEMINEM EXCUSAT.*
THE IGNORANCE OF LAW IS AN EXCUSE FOR NO ONE,
THE LAW IS THE SUBJECT'S BEST BIRTHRIGHT.

STANFORD LIBRARY

### PRINTED AT Worcester BY Isaiah Thomas.

### 1799:

Digitized by Google

## C H A P. XXIII.

An Act to incorporate certain Persons by the name of The Northwest Congregational Society in Northyarmouth. Passed *June* 26, 1794.

[S P E C I A L.]

## C H A P. XXIV.

An Act for incorporating certain Land in Dedham and Sharon, in the County of Norfolk, into a Common Field. Passed *January* 22, 1795.

[S P E C I A L.]

## C H A P. XXV.

An Act for repealing an Act, made and passed in the year of our Lord, one Thousand seven Hundred and Ninety two, entitled "An Act for punishing Criminal Offenders," and for reenacting certain Provisions therein.

1. BE it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same, That the said act be, and hereby is repealed, and made wholly null and void.

*Act repealed.*

2. *And be it further enacted by the authority aforesaid,* That every Justice of the Peace, within the county for which he may be commissioned, may cause to be staid and arrested, all affrayers, rioters, disturbers, or breakers of the peace, and such as shall ride or go armed offensively, to the fear or terror of the good citizens of this Commonwealth, or such others as may utter any menaces or threatening speeches, and upon view of such Justice, confession of the delinquent, or other legal conviction of any such offence, shall require of the offender to find sureties for his keeping the Peace, and being of the good behaviour ; and in want thereof, to commit him to prison until he shall comply with such requisition : And may further punish the breach of the Peace in any person that shall assault or strike another, by fine to the Commonwealth, not exceeding *twenty shillings*, and require sureties, as aforesaid, or bind the offender, to appear and answer for his offence at the next Court of General Sessions of the Peace, as the nature or circumstances of the case may require.

*Justices of the Peace empowered.*

[Passed *January* 29, 1795.]

CHAP.

Digitized by Google

*Collection of the Statutes of the Public & of England in Force in the State of North Carolina, Francois-Xavier Martin, (Newbern 1792) at 60-61*

## ( 60 )

## C H A P. VIII.

*Nothing ſhall be taken for Beaupleader.*

ITEM, Whereas ſome of the realm have grievouſly complained, that they be grieved by Sheriffs, naming themſelves the King's approvers, which take money by extortion for Beaupleader, the King will, that the ſtatute of Marlebridge ſhall be obſerved and kept in this point.

## C H A P. XIV.

*None ſhall commit Maintenance.*

ITEM, Becauſe the King deſireth that common right be adminiſtered to all perſons, as well poor as rich, he commandeth and defendeth, that none of his Counſellors, nor of his houſe, nor none other of his Miniſters, nor no great man of the realm by himſelf, nor by other, by ſending of letters, nor otherwiſe, nor none other in this land, great nor ſmall, ſhall take upon them to maintain quarrels nor parties in the country, to the let and diſturbance of the common law.

Statutes made at Northampton, tribus Septimanis Paſchae, in the Second Year of the Reign of Edward the Third, and in the Year of our Lord 1328.

## C H A P. I.

*A Confirmation of the Great Charter and the Charter of the Foreſt.*

[*Unneceſſary to be inſerted.*]

## C H A P. III.

*No Man ſhall come before the Juſtices, or go or ride armed.*

ITEM, It is enacted, that no man great nor ſmall, of what condition ſoever he be, except the King's ſervants in his preſence, and his Miniſters in executing of the King's precepts, or of their office, and ſuch as be in their company aſſiſting them, and alſo upon a cry made for arms to keep the peace, and the ſame in ſuch places where ſuch acts happen, be ſo hardy to come before the King's Juſtices, or other of the King's

( 61 )

Ministers doing their office with force and arms, nor bring no force in an affray of peace, nor to go nor ride armed by night nor by day, in fairs, markets, nor in the presence of the King's Justices, or other ministers, nor in no part elsewhere, upon pain to forfeit their armour to the King, and their bodies to prison at the King's pleasure. And that the King's Justices in their presence, Sheriffs and other ministers, in their bailiwicks, Lords of Franchises, and their bailiffs in the same, and Mayors and Bailiffs of cities and boroughs, within the same cities and boroughs, and borough-holders, constables and wardens of the peace within their wards shall have power to execute this act. And that the Justices assigned, at their coming down into the country, shall have power to enquire how such officers and lords have exercised their offices in this case, and to punish them whom they find that have not done that which pertain to their office.

## C H A P.   V.

### The Manner how Writs shall be delivered to the Sheriff to be executed.

ITEM where it was ordained by the statute of Westminster the second, that they which will deliver their writs to the Sheriff shall deliver them in the full county, or in the rere county, and that the Sheriff or Under-Sheriff shall thereupon make a bill : it is accorded and established, that at what time or place in the county a man doth deliver any writ to the Sheriff or to the Under-Sheriff, that they shall receive the same writs, and make a bill after the form contained in the same statute, without taking any thing therefore. And if they refuse to make a bill, others that be present shall set to their seals, and if the Sheriff or Under-Sheriff do not return the said writs, they shall be punished after the form contained in the said statute. And also the Justices of Assize shall have power to enquire thereof at every man's complaint, and to award damages, as having respect to the delay, and to the loss and peril that might happen.

## C H A P.   VI.

### Justices shall have Power to punish Breakers of the Peace.

ITEM, as to the keeping of the peace in time to come, it is ordained and enacted that the statutes made in time past, with the statute of Winchester, shall be observed and kept in every point : and where it is contained in the end of said statute of Winchester, that the Justices assigned shall have power to enquire of defaults, and to report to the King in his next parliament, and the King to remedy it, which no man hath yet seen, the same Justices shall have power to punish the offenders and disobeyers.

O

# A

# COLLECTION

## OF ALL SUCH

# ACTS

### OF THE

# GENERAL ASSEMBLY

### OF

# VIRGINIA,

OF A PUBLIC AND PERMANENT NATURE, AS ARE NOW IN
FORCE;

WITH A TABLE OF THE PRINCIPAL MATTERS.

TO WHICH ARE PREFIXED THE DECLARATION OF RIGHTS,
AND CONSTITUTION, OR FORM OF GOVERNMENT.

PUBLISHED PURSUANT TO AN ACT OF THE GENERAL ASSEMBLY, INTI-
TULED, "AN ACT PROVIDING FOR THE REPUBLICATION OF THE
LAWS OF THIS COMMONWEALTH," PASSED ON THE TWENTY-
EIGHTH DAY OF DECEMBER, ONE THOUSAND SEVEN
HUNDRED AND NINETY-TWO.

*RICHMOND:*

*Printed by Augustine Davis, Printer for the Commonwealth, 1794.*

1786.

terpofition difarmed of her natural weapons, free argument and debate, errors ceafing to be dangerous when it is permitted freely to contradict them :

II.  BE *it enacted by the General Affembly,* That no man fhall be compelled to frequent or fupport any religious worfhip, place, or Miniftry whatfoever, nor fhall be enforced, reftrained, molefted, or burthened in his body or goods, nor fhall otherwife fuffer on account of his religious opinions or belief; but that all men fhall be free to profefs, and by argument to maintain, their opinions in matters of religion, and that the fame fhall in no wife diminifh, enlarge, or affect their civil capacities.

*No man compelled to frequent or fupport any religious worfhip. All men free to profefs, and by argument to maintain their religious opinions.*

III.  AND though we well know that this Affembly elected by the people for the ordinary purpofes of legiflation only, have no power to reftrain the Acts of fucceeding Affemblies, conftituted with powers equal to our own, and that therefore to declare this Act to be irrevocable, would be of no effect in law; yet we are free to declare, and do declare, that the rights hereby afferted, are of the natural rights of mankind, and that if any Act fhall be hereafter paffed to repeal the prefent, or to narrow its operation, fuch Act will be an infringement of natural right.

*Declaration that the rights by this Act afferted, are of the natural rights of mankind.*



## *General Affembly,* begun and held at the Public Buildings, in the City of *Richmond,* on *Monday,* the 16th Day of *October,* in the Year of our Lord, 1786.

### C H A P.  XXI.

#### *An Act forbidding and punifhing Affrays.*

[Paffed the 27th of November, 1786.]

BE *it enacted by the General Affembly,* That no man, great nor fmall, of what condition foever he be, except the Minifters of Juftice in executing the precepts of the Courts of Juftice, or in executing of their office, and fuch as be in their company affifting them, be fo hardy to come before the Juftices of any Court, or other of their Minifters of Juftice, doing their office, with force and arms, on pain, to forfeit their armour to the Commonwealth, and their bodies to prifon, at the pleafure of a Court; nor go nor ride armed by night nor by day, in fairs or markets, or in other places, in terror of the Country, upon pain of being arrefted and committed to prifon by any Juftice on his own view, or proof by others, there to abide for fo long a time as a Jury, to be fworn for that purpofe by the faid Juftice, fhall direct, and in like manner to forfeit his armour to the Commonwealth; but no perfon fhall be imprifoned for fuch offence by a longer fpace of time than one month.

*Punifhment of perfons going armed before Courts of Juftice, or the Minifters of Juftice, or in fairs or markets in terror of the Country.*

### C H A P.  XXII.

#### *An Act against Confpirators.*

[Paffed the 27th of November, 1786.]

BE *it declared and enacted by the General Affembly,* That Confpirators be they that do confederate and bind themfelves by oath, covenant, or other alliance, that every of them fhall aid and bear the other falfely and malicioufly, to move or caufe to be moved any indictment or information againft another on the part of the Commonwealth, and thofe who are convicted thereof at the fuit of the Commonwealth, fhall be punifhed by imprifonment and amercement, at the difcretion of a Jury.

*Who fhall be deemed confpirators.*

I

THE

# STATUTE LAWS

OF THE

# STATE OF TENNESSEE,

OF A

## PUBLIC AND GENERAL NATURE,

REVISED AND DIGESTED

BY

JOHN HAYWOOD AND ROBERT L. COBBS.

BY ORDER OF THE GENERAL ASSEMBLY.

## VOL. I.

KNOXVILLE, T.
F. S. HEISKELL, PRINTER AND PUBLISHER.
::::::::::::
1831.

Digitized by Google

**10**          ARMIES—ARMS.

they may require; and it shall be the duty of any constable of the county where such witnesses may reside, to execute and make return thereof, and the witnesses shall receive the same pay, to be paid by the party against whom the award may be made; and they shall be subject to the same penalties for non-attendance as in similar cases; and the officer summoning such witnesses, shall receive the same fees as for summoning witnesses to attend before a justice of the peace.

## ARMIES—STANDING.

*Con. art. 11.*    § 24. The sure and certain defence of a free people is a well regulated militia: and as standing armies in time of peace are dangerous to freedom, they ought to be avoided as far as the circumstances and safety of the community will admit: and in all cases the military shall be kept in strict subordination to the civil authority.

## ARMS.

*Con. art. 11.*    § 26. The freemen of this state have a right to keep and to bear arms for their common defence.

§ 29. No citizen of this state shall be compelled to bear arms, provided he will pay an equivalent to be ascertained by law.

*1801, c. 22.*
*Persons going armed, bound to good behaviour on justice's own view or information*
§ 6 If any person or persons shall publicly ride, or go armed to the terror of the people or privately carry any dirk, large knife, pistol or any other dangerous weapon, to the fear or terror of any person, it shall be the duty of any judge or justice on his own view, or upon the information of any other person on oath, to bind such person or persons to their good behaviour, and if he or they fail to find securities, commit him or them to jail; and if such person or persons shall continue so to offend, he or they shall not only forfeit their recognizance, but be liable to an indictment, and be punished as for a breach of the peace, or riot at common law.

*1821, c. 13.*
*Fine for carrying weapons*
Each and every person so degrading himself by carrying a dirk, sword-cane, spanish stiletto, belt or pocket pistols, either public or private, shall pay a fine of five dollars for every such offence, which may be recovered by warrant before any justice of the peace, in the name of the county and for its use, in which the offence may have been committed; and it shall be the duty of a justice to issue a warrant on the application, on oath, of any person applying; and it shall be the duty of every judge, justice of the peace, sheriff, coroner and constable within this state, to see that this act shall have its full effect; *provided, nevertheless,* that nothing herein contained shall effect any person that may be on a journey to any place out of his county or state.

*1825, c. 19.*
*Sheriff, coroner or constable to arrest persons suspected.*
§ 1. When any sheriff, coroner or constable, shall know, of his own knowledge, or upon the representation, of any person, or if he or they shall have good reason to suspect any person of being armed with the intention of committing a riot or affray, or of wounding or killing any person, it shall be the duty of all such officers, immediately to arrest all such persons, so suspected, and return them before some justice of the peace, whose duty it shall be, upon proof being made that there was reasonable ground to suspect such person or persons for being armed, with intent to disturb or commit a *Justice to bind to good behaviour.* breach of the peace, to bind such person or persons in a bond, with two or more good and sufficient securities, in a sum of not less than two hundred and fifty dollars, and not exceeding two thousand dollars, conditioned for his or their good behaviour and peaceable deportment for the term of twelve months thereafter.

*Justice to have arrested, &c.*
§ 2. If any justice of the peace shall know of his own knowledge, or have reasonable cause to suspect any person or persons of being armed, with intent to commit a breach of the peace, it shall be the duty of such justice of the peace, to cause such offender or offenders

Digitized by Google