IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS ASSOCIATION OF FIREARMS ) <br> RETAILERS, KENNETH PACHOLSKI, ) <br> KATHRYN TYLER, and MICHAEL HALL, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE CITY OF CHICAGO and RAHM ) <br> EMANUEL, Mayor of the City of Chicago, ) <br> ) <br> Defendants. ) | Case No: 10-CV-4184 <br> Judge Edmond E. Chang |

**PLAINTIFFS' LOCAL RULE 56.1(a)(3) STATEMENT OF MATERIAL FACTS**

Plaintiffs hereby submit their Local Rule 56.1(a)(3) statement of material facts as to which there is no genuine issue and that entitle Plaintiffs to judgment as a matter of law.

**PARTIES**

**1.** Plaintiffs Kenneth Pacholski and Kathryn Tyler, husband and wife, are residents of Chicago, Illinois and citizens of the United States. Exhibit 41 ¶¶ 1-2 (Tyler Decl.); Exhibit 42 ¶¶ 1-2 (Pacholski Decl.). They reside at 2620 West Jerome Street. Exhibit 41 ¶ 2 (Tyler Decl.); Exhibit 42 ¶ 2 (Pacholski Decl.). Pacholski owns and operates an aircraft restoration business. Exhibit 42 ¶ 3 (Pacholski Decl.). Tyler is a veterinarian and the co-owner of the Uptown Animal Hospital, a veterinary clinic located at 5545 North Clark Street in Chicago. Exhibit 41 ¶ 3 (Tyler Decl.).

**2.** Plaintiff Michael Hall is a resident of Chicago, Illinois and a citizen of the United States. Exhibit 1 ¶ 1 (Hall Decl.). He resides at 11254 South Bell Avenue with his wife and

1

sixteen-year-old son (he has three older children who currently do not live at home). *Id.* ¶ 2. He works in the telecommunications industry. *Id.* ¶ 3.

3. Plaintiff Illinois Association of Firearms Retailers (ILAFR) is a membership organization. Exhibit 78 ¶ 2 (O'Daniel Decl.). It is a not-for-profit corporation organized under the laws of Illinois. *Id.*

4. Defendant City of Chicago is a municipal corporation existing under the laws of Illinois. Defendant Rahm Emanuel is the Mayor of Chicago. *See* Chicago Statement of Fact 1.

## JURISDICTION AND VENUE

5. Plaintiffs' Second Amended Complaint seeks redress for alleged violations of the Second and Fourteenth Amendments to the United States Constitution. This court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district and a substantial part of the events giving rise to the Plaintiffs' claims occurred in this district.

## FACTS

6. Pacholski, Tyler, and Hall are licensed to possess firearms by the State of Illinois and the City of Chicago. Exhibit 42 ¶ 4 (Pacholski Decl.); Exhibit 41 ¶ 4 (Tyler Decl.); Exhibit 1 ¶ 4 (Hall Decl.). Each has thus demonstrated the ability to use firearms safely and effectively by completing successfully at least one firearms safety and training course. *See* Exhibit 42 ¶ 5 (Pacholski Decl.); Exhibit 41 ¶ 5 (Tyler Decl.); Exhibit 1 ¶¶ 3-4 (Hall Decl.); MCC 8-20-120(a)(7).

7. Pacholski is a gun collector, and he owns 18 firearms that are registered with the City of Chicago and that he keeps in his home. Exhibit 42 ¶ 4 (Pacholski Decl.); Exhibit 43 at 54-55, 85 (Pacholski Dep.). Because of Chicago's one-operable-firearm limit, he keeps only one

2

firearm, a Springfield Armory XD40 handgun, in operable condition. Exhibit 42 ¶ 6 (Pacholski Decl.).

8. Pacholski has a Florida concealed carry permit that, through operation of reciprocity rules, entitles him lawfully to carry a concealed firearm in many states. Exhibit 42 ¶ 4 (Pacholski Decl.); Exhibit 43 at 39 (Pacholski Dep.).

9. But for the one-operable-firearm limit, Pacholski would keep at least two operable firearms in different locations in his home to provide him with an accessible means of defense in case of criminal attack. Exhibit 42 ¶ 6 (Pacholski Decl.); Exhibit 43 at 155-56 (Pacholski Dep.).

10. Pacholski also would sometimes carry a firearm for protection on his property outside of the four walls of his home if not for Chicago's prohibition on such carriage. Exhibit 42 ¶ 7 (Pacholski Decl.). For example, if he saw Tyler being attacked while walking to their home from the detached, two-car garage on their property, he would like to be able to defend her with a firearm if necessary. *Id. See also* Exhibit 43 at 115-17 (Pacholski Dep.).

11. Pacholski currently has to travel outside of the City of Chicago to purchase firearms. Exhibit 42 ¶ 9 (Pacholski Decl.). He would like to be able to shop for firearms in the City, and he would shop for firearms more often if there was a gun store close to his home. *Id.*; Exhibit 43 at 52-54 (Pacholski Dep.). He would like for a gun store to open on his block, and if it had a range attached to it he would go twice a week. *Id.* at 192-93.

12. Tyler owns a Makarov 9 mm handgun that is registered with the City and that she keeps in operable condition in her home. Exhibit 41 ¶ 4 (Tyler Decl.). She also owns a shotgun that is registered with the City and that she keeps inoperable in her home. *Id.*

13. Tyler would like to carry a firearm for protection on her property outside of the four walls of her home, and she would sometimes do so if it were lawful. *Id.* ¶ 6; *see also*

3

Exhibit 12 at 52 (Tyler Dep.). For example, she would like to carry a gun for protection when gardening, particularly when Pacholski is not home. Exhibit 41 ¶ 6 (Tyler Decl.); *see also* Exhibit 12 at 78 (Tyler Dep.).

14. Bur for Chicago law, Tyler would also sometimes carry a handgun for protection at her veterinary clinic. Exhibit 41 ¶ 7 (Tyler Decl.). For example, she is notified when the clinic's alarm system is activated, and on at least one occasion the alarm has been activated at night and she has gone to the clinic alone to investigate. *Id*. Tyler would like to be able to have a handgun for protection in such situations. *Id*. *See also* Exhibit 12 at 140-45 (Tyler Dep.).

15. Like Pacholski, Tyler would like to be able to keep more than one operable firearm in their home, and she would do so if Chicago law did not prohibit it. Exhibit 41 ¶ 9 (Tyler Decl.). She keeps her handgun in the bedroom, and she is concerned about being able to access it if her home comes under attack while she is in a different part of the house. *Id*. *See also* Exhibit 12 at 94-95 (Tyler Dep.).

16. If lawful, Pacholski and Tyler sometimes would possess a firearm as a guest on another person's property, with the property owner's permission. *See* Exhibit 42 ¶ 8 (Pacholski Decl.); Exhibit 41 ¶ 8 (Tyler Decl.). And they would like to be able to permit housesitters to bring a firearm to their home for protection. *See* Exhibit 42 ¶ 8 (Pacholski Decl.); Exhibit 41 ¶ 8 (Tyler Decl.).

17. Tyler enjoys shopping for guns, and she would do so more often if gun stores were lawful in the City of Chicago, particularly if a gun store opened nearby her home. Exhibit 41 ¶ 10 (Tyler Decl.). It would be "like heaven on earth" if a gun store were to open on her block. Exhibit 12 at 165 (Tyler Dep.); *see also id.* at 93.

18. While serving as a Corpsman in the Marine Corps, Hall earned "expert" ratings for his firearms marksmanship. Exhibit 1 ¶ 3 (Hall Decl.); Exhibit 69 at 18-20 (Hall Dep.). He keeps two firearms in his home, a Stoeger Cougar 9 millimeter handgun and a Remington 12-gauge shotgun. Exhibit 1 ¶ 4 (Hall Decl.). Both weapons are registered with the City of Chicago. *Id.*

19. But for Chicago law prohibiting it, Hall would sometimes carry a firearm for protection on his property outside of the four walls of his home. *Id.* ¶ 5. Chicago's prohibition on such carriage impairs Hall's ability to protect himself and his family. *Id.* People in his neighborhood have been killed on their own balcony; vehicles parked in his driveway have been broken into on two separate occasions; and thieves have broken into his garage and attempted to steal his son's go-kart. *Id. See also* Exhibit 69 at 91-94, 108, 118-19, 235-37 (Hall Dep.).

20. If it were lawful, Hall would sometimes possess a firearm as a guest on another person's property. Exhibit 1 ¶ 6 (Hall Decl.). For example, he would like to be able to help if a law-abiding friend or neighbor felt threatened and asked him to come over with a gun. *Id.* Chicago law, however, prohibits him from doing so. *Id.*

21. Hall would shop for firearms in Chicago if gun stores were lawful in the City. Exhibit 1 ¶ 7 (Hall Decl.); Exhibit 69 at 248 (Hall Dep.).

22. ILAFR's purpose is to promote the interests of the firearm retail industry in Illinois and the Second Amendment rights of its members and their customers. Exhibit 78 ¶ 3 (O'Daniel Decl.); Exhibit 79 at 21-22, 74-75 (O'Daniel Dep.).

23. ILAFR has members who desire to sell firearms within the City of Chicago and who would do so but for the City's ban on gun sales. Exhibit 78 ¶ 6 (O'Daniel Decl.); Exhibit 79 at 83-86, 115 (O'Daniel Dep.).

24. William Campion is a member of ILAFR. Exhibit 80 ¶ 2 (Campion Decl.); Exhibit 81 at 50 (Campion Dep.). He was a police officer with the City of Chicago Police Department for 31 years, and he was at one time a licensed firearms instructor. Exhibit 80 ¶ 3 (Campion Decl.); Exhibit 81 at 19, 22 (Campion Dep.). He is federally licensed to engage in the business of selling firearms and owns and operates a gun store on his property in Steward, Illinois. Exhibit 80 ¶ 3 (Campion Decl.); Exhibit 81 at 32-33, 39-41 (Campion Dep.).

25. If the City's ban on gun sales is struck down, Campion intends to sell firearms, ammunition, and accessories at sporting goods shows and/or gun shows in Chicago. Exhibit 80 ¶ 4 (Campion Decl.); Exhibit 81 at 53-54 (Campion Dep.).

26. Steven Elliot is the President of C&E Gun Shows, a Virginia-based company that organizes and promotes gun shows throughout the country. Exhibit 38 ¶ 2 (Elliot Decl.). He has personally organized thousands of shows and attended thousands more. *Id.* ¶ 3.

27. Were it legal to sell firearms in Chicago, Elliot would organize and promote a gun show in the City. *Id.* ¶ 10.

28. Vendors who make arrangements for a table in advance of a show organized by C&E Gun Shows are guaranteed a table at the show. *Id.* ¶ 6. A vendor generally will only be denied a table if the vendor's merchandise is insufficiently related to guns, ammunition, hunting, etc. (e.g., if the vendor wants to sell Beanie Babies), if C&E Gun Shows has had a problem with the vendor in the past, or if there is not room for an additional vendor. *Id.*

| | |
|---|---|
| Dated: April 27, 2012 | Respectfully submitted, |
| Stephen Kolodziej<br>FORD & BRITTON, P.C.<br>33 N. Dearborn St., Suite 300<br>Chicago, IL 60602<br>Tel: (312) 924-7500<br>Fax: (312) 924-7516<br>Email: skolodziej@fordbritton.com | s/ Charles J. Cooper<br>Charles J. Cooper*<br>David H. Thompson*<br>Peter A. Patterson*<br>COOPER & KIRK, PLLC<br>1523 New Hampshire Ave., NW<br>Washington, DC 20036<br>Tel: (202) 220-9600<br>Fax: (202) 220-9601<br>Email: ccooper@cooperkirk.com<br><br>*Admitted *pro hac vice*.<br><br>*Attorneys for Plaintiffs* |

## **CERTIFICATE OF SERVICE**

      I, Charles J. Cooper, hereby certify that on this 27th day of April, 2012, I caused a copy of the foregoing to be served by electronic filing on:

| | |
|---|---|
| Michael A. Forti | Craig Woods |
| Mardell Nereim | Ranjit Hakim |
| Andrew W. Worseck | MAYER BROWN LLP |
| William Macy Aguiar | 71 S. Wacker Drive |
| Rebecca Alfert Hirsch | Chicago, IL  60606-4637 |
| City of Chicago, Department of Law | |
| Constitutional and Commercial Litigation Division | |
| 30 N. LaSalle St., Suite 1230 | |
| Chicago, IL  60602 | |

                                                      s/ Charles J. Cooper  
                                                          Charles J. Cooper