# Exhibit D

No. 12-1788

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

MARY SHEPARD *et al.*,

*Plaintiffs-Appellants,*

v.

LISA M. MADIGAN, *et al.*,

*Defendants-Appellees.*

---

On Appeal from the United States District Court for the Southern District of Illinois Civil Case No. 11-CV-405-WDS (Hon. William D. Stiehl)

---

**BRIEF *AMICI CURIAE* OF MICHAEL HALL, KENNETH PACHOLSKI, KATHRYN TYLER AND THE NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., IN SUPPORT OF PLAINTIFFS-APPELLANTS**

---

David Lehman
Deputy Executive Director and
General Counsel
NRA-ILA
11250 Waples Mill Road
Fairfax, VA 22030
Tel: (703) 267-1163
Fax: (703) 267-3973

Brian Stuart Koukoutchos
28 Eagle Trace
Mandeville, LA 70471
Tel: (985) 626-5052

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................ii

INTEREST OF *AMICI CURIAE*..........................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT...............................3

ARGUMENT...................................................................................5

FIREARMS CARRIAGE IN PUBLIC BY LAW-ABIDING CITIZENS
PROMOTES, RATHER THAN THREATENS, PUBLIC SAFETY. ..................5

    I.    ARMED SELF-DEFENSE IN PUBLIC IS PREVALENT IN THE 49
        STATES THAT, UNLIKE ILLINOIS, DO NOT OUTLAW THAT
        CONSTITUTIONAL RIGHT. ....................................................5

    II.    PRIVATE CITIZENS LICENSED TO CARRY WEAPONS DO NOT
        THREATEN PUBLIC SAFETY. ................................................13

    III.    CONTRARY TO THE DEFENDANTS' ASSERTION, PERMITTING
         LAW-ABIDING CITIZENS TO CARRY FIREARMS IN PUBLIC DOES
         NOT INCREASE — BUT MAY DECREASE — VIOLENT CRIME..............22

CONCLUSION ................................................................................29

## TABLE OF AUTHORITIES

### Cases                                                                                     Page

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ............................................3, 6

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011).......................................4, 5

### Other

13 Vt. Stat. § 4003.................................................................................................28

A.L. Kellerman & D.T. Reay, *Protection or Peril? An Analysis of Firearm-
related Deaths in the Home*, 314 New England J. of Med. 1557-60 (1986) .14

A.L. Kellerman *et al.*, *Gun Ownership as a Risk Factor for Homicide in the
Home*, 329 New England J. of Med. 1084-91 (1993) ....................................14

A.L. Kellerman *et al.*, *Injuries and Deaths Due to Firearms in the Home*,
45 Journal of Trauma 263-67 (1998) ..............................................................14

Charles C. Branas, et al., *Investigating the Link Between Gun Possession and
Gun Assault*, 99 AMER. J. PUB. HEALTH 2034 (Nov. 2009) ....................11, 12

Charles F. Wellford, John V. Pepper & Carol V. Petrie (eds.),
FIREARMS AND VIOLENCE: A CRITICAL REVIEW (2005)...........................*passim*

Daniel D. Polsby & Don B. Kates, Jr., *American Homicide Exceptionalism*,
69 U. Colo. L. Rev. 969 (1998).......................................................................20

David B. Mustard, *Comment, in* EVALUATING GUN POLICY 326
(Jens Ludwig and Philip J. Cook eds. 2003)....................................19, 20, 23

David B. Mustard, *The Impact of Gun Laws on Police Deaths*,
44 J.L. & ECON. 635 (2001).......................................................................19, 21

David Hemenway & Deborah Azrael, *The Relative Frequency of Offensive
and Defensive Gun Uses: Results from a National Survey*, 15 VIOLENCE &
VICTIMS 257 (2000) ..........................................................................6, 7, 13, 14

David McDowall *et al.*, *Easing Concealed Firearms Laws: Effects on
Homicide in Three States*, 86 J. CRIM. L. & CRIMINOLOGY 193 (1995)...........25

*First Reports Evaluating the Effectiveness of Strategies for Preventing
Violence: Firearms Laws*, 52 MORBIDITY & MORTALITY WEEKLY
REPORT 11 (CDC Oct. 3, 2003)..................................................................25, 26

Gary Kleck & Don B. Kates, Jr., ARMED:
 NEW PERSPECTIVES ON GUN CONTROL (2001).................................6, 7

Gary Kleck, TARGETING GUNS: FIREARMS AND THEIR CONTROL (1997) ...6, 9, 10

James D. Wright & Peter H. Rossi, ARMED AND CONSIDERED DANGEROUS
 (2d ed. 2008) .....................................................................................12

James Q. Wilson, *Dissent*, Appendix A to NATIONAL RESEARCH COUNCIL
 REVIEW...................................................................................23, 24

Jens Ludwig, *Concealed-Gun-Carrying Laws and Violent Crime: Evidence
 from State Panel Data*, 18 INT'L REV. L. & ECON. 239 (1998) ..........25

John Donohue, *The Impact of Concealed-Carry Laws, in* EVALUATING GUN
 POLICY 289 (Jens Ludwig & Philip J. Cook eds. 2003) ..........24, 25

John Donohue, *Guns, Crime and the Impact of State Right-to-Carry Laws*,
 73 FORDHAM L. REV. 623, 630-39 (2004) ...........................................24

John Lott, *Responding to Jack D'Aurora's piece in the Columbus Dispatch*,
 (available at http://johnrlott.blogspot.com/2011/08/responding-to-
 jack-dauroras-piece-in.html) ........................................................18

John R. Lott, Jr., MORE GUNS LESS CRIME:
 UNDERSTANDING CRIME AND GUN CONTROL LAWS (3d ed. 2010).........10, 22

Lawrence Messina, *Gun Permit Seekers Not the Criminal Type*,
 CHARLESTON GAZETTE, P. C1 (July 28, 1997)....................................18

North Carolina Department of Justice, "North Carolina Concealed
 Handgun Permit Statistics By County, 12/1/1995 thru 6/30/2011,"
 *available at* http://www.ncdoj.gov/CHPStats.aspx
 (last visited April 17, 2012). ..........................................................19

Matt Hanley and Dave Gathman, *Local police give support to conceal carry*,
 THE COURIER NEWS, Aug. 6, 2011 (available at
 http://couriernews.suntimes.com/news/6899128-418/local-police-
 give-support-to-conceal-carry.html) (last visited 8/10/11) ....................21

Nick Paulson, *Police Not Fretting Over Looming Concealed Carry Law*,
STEVENS POINT JOURNAL, Aug. 6, 2011 (available at
http://www.stevenspointjournal.com/article/20110806/SPJ0101/
108060501/Police-not-fretting-over-looming-concealed-carry-law) .......20

Philip Cook, *et al.*, *Gun Control After Heller: Threats and Sideshows From a
Social Welfare Perspective*, 56 U.C.L.A. L. REV. 1041 (2009)..........................12

Robert Hahn, *et al.*, *Firearms Laws and the Reduction of Violence:
A Systematic Review* 28 AM.J.PREV. MED. 40 (2005) ...............................26, 27

Florida Department of Agriculture and Consumer Services, Division of
Licensing, "Concealed Weapon or Firearm License Summary Report,"
*available at* http://licgweb.doacs.state.fl.us/stats/cw_monthly.pdf
(last visited April 17, 2012). ........................................................................17

Tennessee Department of Safety and Homeland Security, "Handgun
Carry Permit Statistics Calendar Year 2011" at 5, *available at*
http://www.tn.gov/safety/stats/DL_Handgun/Handgun/
HandgunReport2011Full.pdf (last visited April 17, 2012).........................18

Terry Flynn, *Gun-toting Kentuckians Hold Their Fire*,
CINCINNATI ENQUIRER (June 16, 1997) (*available at*
http://www.enquirer.com/editions/1997/06/16/loc_
kycarry.html). ...............................................................................................20

Texas Department of Public Safety, Regulatory Services Division,
Concealed Handgun Licensing Bureau, "Demographic Information
by Race/Sex," *available at*
http://www.txdps.state.tx.us/administration/crime_records/chl/
PDF/2010Calendar/ByRace/CY10RaceSexLicAppIssued.pdf and
http://www.txdps.state.tx.us/administration/crime_records/chl/
PDF/2010Calendar/ByRace/CY10RaceSexLicRevoked.pdf
(last visited April 17, 2012) ........................................................................18

Violence Policy Center, "Concealed Carry Killers," website,
*available at* www.vpc.org/ccwkillers.htm. ......................................15, 16, 17

http://www.guardian.co.uk/news/datablog/2011/jan/10/gun-
crime-us-state..............................................................................................27

## INTEREST OF *AMICI CURIAE*

Proposed *Amici* Kenneth Pacholski, Kathryn Tyler and Michael Hall

are residents of the City of Chicago and are plaintiffs in *Illinois Association*

*of Firearms Retailers v. City of Chicago*, No. 1:10-cv-04184 ("*ILAFR*"),

currently pending in the United States District Court for the Northern

District of Illinois.  That suit challenges several provisions of Chicago's gun

ordinance pursuant to the Second and Fourteenth Amendments to the

United States Constitution. *See* Second Amended Complaint, *ILAFR*, Doc.

No. 80 at 11-16.  In defense of its gun ordinance, Chicago has argued,

among other things, that the Second Amendment right does not extend

beyond the home and that the risks of public mayhem outweigh the right

to keep and bear arms.  Both of these arguments have likewise been raised

by the Defendants in this case.  This *amicus* brief addresses in particular the

latter issue — the supposed threat to public safety posed by citizens

exercising their Second Amendment rights — and canvases the scientific

literature on the subject that has been ignored almost entirely by the

Defendants and by the district court below.  *Amici* therefore submit that

this brief will be of assistance to the Court.  *See* Fed. R. App. P. 29(b)(2);

*NOW, Inc. v. Scheidler*, 223 F.3d 615, 617 (7th Cir. 2000).

1

Proposed Amicus NRA is America's foremost and oldest defender of Second Amendment rights. Founded in 1871, the NRA today has approximately four million members and its programs reach millions more. The NRA is America's leading provider of firearms marksmanship and safety training for both civilians and law enforcement. The NRA's membership includes Illinois residents, including Ms. Shepard, one of the plaintiffs in this case, and proposed *amici* Ms. Tyler and Mr. Pacholski. The rights of Illinois NRA members are infringed by the State's ban on carrying firearms for self-defense in public. The outcome of this case is thus critically important to the NRA and its Illinois members.

The Plaintiffs-Appllants have consented to the filing of this brief. In the district court below, none of the Defendants objected to the filing of the NRA's *amicus* brief in a timely fashion. Consent was sought from the Illinois State Defendants (Madigan, Quinn and Edmonds), whose counsel have informed counsel for *amici* that they take no position on the filing of *amicus* briefs and that we are free to convey their lack of a position to this Court. Communications to counsel for Defendant Livesay have not been returned. A motion for leave to file therefore accompanies this brief.

No party's counsel contributed any funding to the submission and

preparation of the brief, which was funded here, as it was in the district court below, entirely by *amicus* NRA. A substantially similar brief submitted on behalf of the NRA in the district court was authored by undersigned counsel and by Cooper & Kirk, which is counsel for Plaintiffs-Appellants in this Court. Cooper & Kirk does not represent *amici* in connection with this appeal.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Second Amendment "guarantee[s] the individual right to … carry weapons in case of confrontation" — that is, to "wear, bear, or carry … upon the person or in the clothing or in a pocket, for the purpose … of being armed and ready for offensive or defensive action in a case of conflict with another person." *District of Columbia v. Heller*, 554 U.S. 570, 592, 584 (2008) (citation and quotation marks omitted). The Supreme Court explained in *Heller* that this right to armed self-defense is no longer "subject[] to a freestanding 'interest-balancing' approach. The very enumeration of the right" in the Constitution "necessarily takes certain policy choices off the table." *Heller*, 554 U.S. at 634-35, 636. The National Rifle Association respectfully submits that the *categorical* public

3

disarmament of *all* law-abiding citizens is one policy choice that is no longer available to the State of Illinois. *See Ezell v. City of Chicago,* 651 F.3d 684, 703 (7th Cir. 2011) (noting that the Supreme Court's decisions "suggest that broadly prohibitory laws restricting the core Second Amendment right … are categorically unconstitutional.").

Even if this Court were free to rebalance the scales and to judge the utility of the Second Amendment right to bear arms, the evidence mustered by Illinois would be insufficient to shift the balance in favor of the State's wholesale ban on carrying firearms in public.  In the court below, Illinois argued that its ban on *any* law-abiding citizen carrying a loaded and operable firearm in *any* public place is "supported by common sense and empirical evidence." Defendants' Motion to Dismiss (Doc. No. 27) at 17 (hereafter, "Illinois Motion to Dismiss").  Any supposed "common sense" appeal in Illinois's position is belied by the stubborn fact that *every other State in the Union* permits law-abiding citizens to carry weapons in public, and does so without suffering the mayhem that Illinois so confidently forecasts.  As for "empirical evidence," the district court below did not even mention, let alone review, any such evidence; it conducted no review

4

of empirical evidence and cited no studies, research or statistics. That

dooms the challenged statutes under the analysis set forth in *Ezell*, where

this Court emphasized Chicago's lack of "empirical evidence" and its

"entirely speculative" claims of threats to public safety.  *Ezell*, 651 F.3d at

709.  The meager scraps of social-science evidence proffered by Illinois—

which were not even considered by the court below—are wholly

insufficient to meet even the most forgiving standard of heightened judicial

scrutiny.  The decision below should therefore be reversed.

## ARGUMENT

### FIREARMS CARRIAGE IN PUBLIC BY LAW-ABIDING CITIZENS PROMOTES, RATHER THAN THREATENS, PUBLIC SAFETY.

I.  ARMED SELF-DEFENSE IN PUBLIC IS PREVALENT IN THE 49 STATES THAT, UNLIKE ILLINOIS, DO NOT OUTLAW THAT CONSTITUTIONAL RIGHT.

Illinois contends that "logic" and "common sense" prove that

allowing properly licensed, law-abiding citizens to carry firearms in public

inevitably leads to "armed mayhem." Illinois Motion to Dismiss at 16-17.[1]

This policy argument runs headlong into two insuperable obstacles.  First,

_____

[1] The Brady Center for Handgun Control made similar policy arguments in its *amicus* brief below, which we assume will be repeated in a similar filing in this Court.  Citations to the Brady Center brief, Doc. No. 37, will be styled "Brady Br."

the actual research on firearms violence refutes Illinois's facile slogans.
Second, the State's dire forecast of public carnage cannot be squared with
the experience of the 49 other States that permit their citizens to carry
firearms in public.

The right to "carry weapons in case of confrontation" that the
Supreme Court described in *Heller*, 554 U.S. at 592, promotes public safety.
Defensive gun use is a common and effective way for ordinary citizens to
defend themselves from violence.  The leading study designed specifically
to gauge the frequency of defensive gun use determined that every year
there are between 670,000 and 1,575,000 defensive gun uses associated with
carrying firearms in public places. Gary Kleck, TARGETING GUNS: FIREARMS
AND THEIR CONTROL 192 (1997) (describing results of the National Self-
Defense Survey); *see also* Gary Kleck & Don B. Kates, Jr., ARMED: NEW
PERSPECTIVES ON GUN CONTROL 225-26 (2001).  Thus, of the roughly 2.5
million defensive gun uses each year, as many as 63% involve citizens
carrying a firearm while outside their homes. Kleck, TARGETING GUNS,
*supra*, at 179, 192.

Although Illinois did not come to grips with this evidence below, the
Brady Center contested the efficacy and frequency of defensive gun use,

relying on a study by Drs. Hemenway and Azrael. Brady Br. 11 (citing

David Hemenway & Deborah Azrael, *The Relative Frequency of Offensive and*

*Defensive Gun Uses: Results from a National Survey*, 15 VIOLENCE & VICTIMS

257, 271 (2000)). But Dr. Hemenway's study has been discredited for

misrepresenting its own survey results: his actual data indicate at least *six*

*times* as many defensive gun uses as the estimates he reports in his article.

*See* Kleck & Kates, ARMED, *supra*, at 230 & n. 27. In contrast, Dr. Kleck's

results, indicating approximately 2.5 million defensive gun uses per year

with 1.6 million of those occurring outside the home, have been replicated

and confirmed by 19 other surveys. Many of those studies were not by

firearms advocates, but by gun-control supporters, including the federal

Centers for Disease Control, the Police Foundation, the U.S. Justice

Department, and the WASHINGTON POST. *See* Kleck & Kates, ARMED, *supra*,

at 228-31.

In particular, we draw the Court's attention to an exhaustive review

of the entire body of firearms-regulation literature that was conducted by

the principal research arm of the federal government: the National

Academy of Sciences. The National Research Council of the National

Academies of Science undertook "an assessment of the strengths and

limitations of the existing research and data on gun violence." Charles F.

Wellford, John V. Pepper & Carol V. Petrie (eds.), FIREARMS AND VIOLENCE:

A CRITICAL REVIEW 1 (2005) ("NRC REVIEW"). The NRC surveyed *all* the

extant literature on firearms regulation—hundreds of books, journal

articles, and peer-reviewed studies. *See id.* at 22-30, 78, 130-33, 156-61, 174-

77, 186-92, 242-68.[2] The NRC concluded that Dr. Kleck's figures on

defensive gun use have been replicated and confirmed, whereas Dr.

Hemenway's have not: "*At least 19 other surveys* have resulted in estimated

numbers of defensive gun uses that are similar (*i.e.*, statistically

indistinguishable) to the results found by Kleck and Gertz. *No other surveys*

---

[2] Defendants and their *amici* would like to pretend that all articles about
firearms regulation are created equal and that any given study that they
cite cancels out a study that the Plaintiffs cite. This simplistic approach is
defeated by the fact that the NRA relies principally on *two non-partisan
reviews of the entire body of firearms literature:* the one conducted by the
National Research Council that is discussed in the text above, and another
conducted by the public-health experts at the federal government's Centers
for Disease Control, which is discussed in the text below. These two
massive undertakings reviewed hundreds of books and articles, including
most of those cited by the Defendants and the Brady Center. These two
reviews assessed the state of the published scientific knowledge on the
efficacy of various types of firearms regulations and whether the available
evidence was sufficient to form a basis for policy recommendations. They
concluded that the data are utterly insufficient. This fatally impeaches the
empirical evidence that Defendants and the Brady Center have proffered.

*have found numbers consistent with* [the figures used by Dr. Hemenway]."

NRC REVIEW at 103 (emphasis added). *See also id.* at 113.

Illinois and the Brady Center belittle the value of citizens bearing

firearms in public as a form of self-defense. But defensive gun use is not

only common, it is also effective. Data from the U.S. Bureau of Justice

Statistics indicate that, in confrontations with criminals, 99% of victims

maintain control of their firearms. *See* Kleck, TARGETING GUNS, *supra,* at

168-69. Numerous studies have found that robbery victims who resist with

firearms are significantly less likely to have their property taken and are

also less likely to be injured.  *See* Kleck, TARGETING GUNS, *supra,* at 170.

"Robbery and assault victims who used a gun to resist were less likely to

be attacked or to suffer an injury than those who used any other methods

of self-protection or those who did not resist at all." *Id.* at 171. "[V]ictim

resistance with a gun almost never provokes the criminal into inflicting

either fatal or nonfatal violence." *Id.* at 174. Similarly, "rape victims using

armed resistance were less likely to have the rape attempt completed

against them than victims using any other mode of resistance," and

defensive gun use did not increase the victim's risk of "additional injury

beyond the rape itself." *Id.* at 175. Justice Department statistics reveal that

the probability of serious injury from any kind of attack is 2.5 times greater for women offering no resistance than for women resisting with a gun. *See* John R. Lott, Jr., MORE GUNS LESS CRIME: UNDERSTANDING CRIME AND GUN CONTROL LAWS 4 (3d ed. 2010).

Indeed, to prevent completion of a crime it is usually necessary only for the intended victim to display the firearm rather than pull the trigger. A national survey "indicates that about 95 percent of the time that people use guns defensively, they merely have to brandish a weapon to break off an attack." *See* Lott, MORE GUNS LESS CRIME, *supra,* at 3. Fewer than one in a thousand defensive gun uses results in a criminal being killed. *See* Kleck, TARGETING GUNS, *supra* at 178.[3]

---

[3] The Brady Center has argued that "firearms kept in the home are primarily a threat to their owners." Brady Br. 10-11 & n.5. In the first place, all such evidence, even if it were valid, is irrelevant to the case before the Court, which involves only Illinois's ban on carrying weapons in *public* places. Illinois law permits citizens to keep firearms at home for self-defense, so whatever risks accompany gun possession at home *already* exist and cannot possibly be affected by the outcome of this case.

Second, all of the Brady Center studies (or the predecessor studies on which they relied) were reviewed by the National Research Council and dismissed as proving absolutely nothing. *See, e.g.,* NRC REVIEW at 242, 243, 247, 248, 259. Even when statistical *associations* between gun ownership and homicide were found, no *causal link* could be demonstrated. *Id.* at 5. The NRC identified three fatal flaws in the research on which the Brady

Illinois asserted below that defensive gun use does not protect crime victims. Illinois Resp. to Plaintiffs' Prelim. Inj. Motion (Doc. No. 28) at 12 (citing Charles C. Branas, *et al.*, *Investigating the Link Between Gun Possession and Gun Assault*, 99 AMER. J. PUB. HEALTH 2034 (Nov. 2009)); *see also* Brady Br. 12 (same). But as Illinois concedes, that study found merely a statistical *association* between gun possession by "urban adults" who become crime victims and the risk of being shot—it did not purport to find a *causal link*. *See* Branas, *supra*, at 2037. Regardless of the effectiveness of defensive gun use, one would expect a positive statistical association between victim gun possession and victim injury, because those urban dwellers *most at risk of victimization* (*e.g.*, because they reside in a dangerous neighborhood) are also the *most likely to arm themselves for protection*—this is known as reverse causation. Going to the doctor has an extremely high positive association with being sick, but that hardly proves that going to the doctor causes

---

Center relies: "[T]hese studies do not adequately address the problem of self-selection. Second, these studies must rely on proxy measures of ownership that are certain to create biases of unknown magnitude and direction. Third, because the ecological correlations are at a higher geographic level of aggregation, there is no way of knowing whether the homicides or suicides occurred in the same areas in which the firearms are owned." *Id.* at 6. Therefore the studies "do not credibly demonstrate a causal relationship between the ownership of firearms and the causes or prevention of criminal violence or suicide." *Id.*

illness.  In fact, the Branas study acknowledged that it "did not account for the potential of reverse causation between gun possession and gun assault." *Id.* at 2039.  It further admitted that its results had no application to those citizens engaging in "regular training with guns" — precisely the training that most States reasonably require of gun-permit holders. Consequently, the study concluded with the limited advice that those bearing arms should "understand that regular possession necessitates careful safety countermeasures." *Id.* at 2039.

The Brady Center further argued that carrying a firearm for self-defense merely increases one's risk of injury because it initiates a sort of arms race where criminals are more motivated to carry guns by the anticipation that their victims may be armed. Brady Br. 12 (citing Philip Cook, *et al.*, *Gun Control After* Heller: *Threats and Sideshows from a Social Welfare Perspective*, 56 UCLA L. REV. 1041, 1081 (2009)).  First, as the passage quoted by the Brady Center itself reveals, the cited statement was mere speculation based on what the survey authors learned from interviewing criminals about their thoughts on firearms.  Second, far from concluding that armed victims motivated criminals to carry guns, the study actually

demonstrated that criminals were *deterred* by the prospect of facing armed resistance. *See* James D. Wright & Peter H. Rossi, ARMED AND CONSIDERED DANGEROUS 155 (2d ed. 2008). For example, 69% of the felons interviewed said they knew a fellow criminal who had been "scared off, shot at, wounded, captured or killed by an armed victim," *id.* at 155, and 56% opined that that "a criminal is not going to mess around with a victim he knows is armed with a gun." *Id.* at 146. None of this is surprising. The research merely confirms the common-sense expectation that criminals prefer their victims unarmed and defenseless—which is precisely how Illinois law leaves them.

## II.    PRIVATE CITIZENS LICENSED TO CARRY WEAPONS DO NOT THREATEN PUBLIC SAFETY.

Illinois and its *amicus* would have this Court believe that law-abiding citizens who have been screened and licensed by the government to carry firearms constitute an acute threat to public safety. In particular, the Brady Center asserted below that guns carried by private citizens for self-defense are used " 'far more often to kill and wound innocent victims than to kill and wound criminals . . . . ' " Brady Br. 11 (quoting Hemenway & Azrael, *supra,* 15 VIOLENCE & VICTIMS at 271). The Brady Center's use of this

supposed authority is quite damning.  First, the words for which the Brady

Center substituted ellipses at the end of its quotation are "particularly at

home." *See* 15 VIOLENCE & VICTIMS at 271 (2000).  The studies being cited in

the Hemenway article focused on the use of guns for self-defense in the

home.  Presumably the Brady Center omitted those inconvenient words

because the present case involves a law banning the carrying of firearms in

public, and therefore the risks of firearms in the home are irrelevant to, and

unaffected by, this challenge to Illinois law.

Second, the research on which Dr. Hemenway relied for the

proposition quoted by the Brady Center—several articles by A. L.

Kellerman—was thoroughly discredited many years ago.[4]  Indeed, these

articles are so flawed that, when the National Research Council conducted

its review of firearms literature, it singled out these Kellerman studies for

particular censure.  The NRC concluded that: (i) the studies utterly failed to

establish that gun ownership increased the risk of violence to the owner,

---

[4] *See* A.L. Kellerman & D.T. Reay, *Protection or Peril? An Analysis of Firearm-related Deaths in the Home,* 314 New England J. of Med. 1557-60 (1986); A.L. Kellerman *et al., Gun Ownership as a Risk Factor for Homicide in the Home,* 329 New England J. of Med. 1084-91 (1993); A.L. Kellerman *et al., Injuries and Deaths Due to Firearms in the Home,* 45 Journal of Trauma 263-67 (1998).

(ii) the studies were incapable of throwing light on "the impact of firearms on homicide or the utility of firearms for self-defense," and (iii) the studies' conclusions "that owning firearms for personal protection is 'counterproductive' and that 'people should be strongly discouraged from keeping guns in the home' " were simply "not tenable." NRC REVIEW at 118-19. The Brady Center thus can only support Defendants' position by misrepresenting its own authorities and by relying on authorities that were discredited long ago.

Illinois asserts that "[e]vidence from other States also suggests that permitting systems consistently fail to keep guns out of the hands of dangerous people." Illinois Motion to Dismiss 17. The *only* evidence cited by Illinois is a webpage maintained by the Violence Policy Center ("VPC") entitled "Concealed Carry Killers," which purports to tally the number of people killed by citizens who have permits to carry firearms in public. Illinois Motion to Dismiss 17 (citing www.vpc.org/ccwkillers.htm); *see also* Brady Br. 11. Although proffered by Illinois and the Brady Center as scholarly research, the VPC webpage does not purport to be anything of the sort. Instead, it describes itself as a collection of "vignettes" of suicides, homicides and firearms accidents culled from news clippings, and it

acknowledges that it does not have "detailed information on such killings." *See* www.vpc.org/ccwkillers.htm. If one goes to this website and clicks on the "tally" of "Total People Killed by Concealed Carry Killers: 370," one arrives at a 165-page document which collects the aforementioned "vignettes," usually with one vignette per page. (Hereafter, citations to this document will be styled "VPC Vignettes at __"; unfortunately, the VPC did not put page numbers in its document).[5]

Although Illinois argues that citizens carrying guns in public pose a threat, much of the VPC's compilation consists of incidents that took place *in the home*, where Illinois law *already* permits people to keep guns for self-defense. At least 33 of the 165 pages in the VPC compilation describe firearms-related killings in the gun-owner's home. *See, e.g.*, VPC Vignettes at 17, 51, 58, 63, 99, 157.   Plainly, this proves nothing about the supposed risk presented by public carriage of firearms.

The VPC list also includes a high percentage of incidents that likewise prove nothing about the supposed homicide risk of allowing

---

[5] This discussion that follows pertains to the version of the VPC website that was cited by Illinois and the Brady Center below. The webpage's tabulation is updated periodically but the criticisms remain the same, even if some of the figures may have changed slightly.

citizens to carry firearms in public: (i) at least 100 incidents that involved suicide rather than the killing of another, and that do not even indicate if a firearm was the means of suicide, *see id.* at 66, 75, 79; (ii) accidental gun discharges in which nobody was charged with a crime, *see id.* at 51; (iii) incidents involving rifles and shotguns rather than concealable weapons that are more typically carried in public, *see e.g., id.* at 91, 94, 151, 155; (iv) homicide by strangulation, which hardly shows that guns constitute a unique threat, *see id.* at 40; and even (v) a "vignette" in which the gun-permit owner—whom the VPC says had just been "hailed as a hero" for rescuing an abandoned baby from a trash bin—was not charged because police found that he acted lawfully in self-defense, *see id.* at 71. The VPC's tally of "Concealed Carry Killers" is a sham and proves nothing.

Far more probative is the actual experience of the 49 States that permit law-abiding citizens to carry weapons in some public places in some manner. Where such carriage is allowed, few—if any—permit holders have committed offenses with their firearms. Since they all must pass background and other checks conducted by the police, it is hardly

surprising that carry-permit holders tend to be among the most law-

abiding citizens.

- Florida has perhaps the most extensive experience with a shall-issue statute.  In the 25 years since that State adopted its regime of issuing concealed-carry permits to all qualified applicants, Florida has issued 2,167,283 licenses and revoked just 168 due to firearm crimes (including non-violent crimes) by license holders—a revocation rate of less than .008%.  Florida Department of Agriculture and Consumer Services, Division of Licensing, "Concealed Weapon or Firearm License Summary Report," *available at* http://licgweb.doacs.state.fl.us/stats/cw_monthly.pdf (last visited April 17, 2012).

- In Ohio, about 178,000 people had concealed-handgun permits in 2010 and "just 206 — 0.1% — had their permits revoked. Most revocations involved people losing their permits because they moved out of state, died or decided not to hold their license anymore." John Lott, *Responding to Jack D'Aurora's piece in the Columbus Dispatch,* (available at http://johnrlott.blogspot.com/2011/08/responding-to-jack-dauroras-piece-in.html).

- In 2011, Tennessee issued 94,975 permits and revoked only 97. Tennessee Department of Safety and Homeland Security, "Handgun Carry Permit Statistics Calendar Year 2011" at 5, *available at* http://www.tn.gov/safety/stats/DL_Handgun/Handgun/HandgunReport2011Full.pdf (last visited April 17, 2012).

- In 2010, Texas issued 102,133 licenses and revoked just 610 for any reason. Texas Department of Public Safety, Regulatory Services Division, Concealed Handgun Licensing Bureau,

"Demographic Information by Race/Sex," *available at*
http://www.txdps.state.tx.us/administration/crime_records/
chl/PDF/2010Calendar/ByRace/CY10RaceSexLicAppIssued.p
df and
http://www.txdps.state.tx.us/administration/crime_records/
chl/PDF/2010Calendar/ByRace/CY10RaceSexLicRevoked.pdf
(last visited April 17, 2012).

- In South Carolina, between 1989 and 1997, only one permit
holder was charged with a felony (a non-firearms related crime)
and the charge was dropped. *See* Mustard, *Comment, in*
EVALUATING GUN POLICY, *supra*, at 331.  *See also* Lawrence
Messina, *Gun Permit Seekers Not the Criminal Type*, CHARLESTON
GAZETTE, P. C1 (July 28, 1997) ("The sort of people who ask to
carry concealed pistols legally in Kanawha County aren't the
sort of people who commit felony offenses, court records
show.").

- In North Carolina from December 1995 through June, 2011,
228,072 permits had been issued, and only 1,203 revoked for
any reason. North Carolina Department of Justice, "North
Carolina Concealed Handgun Permit Statistics By County,
12/1/1995 thru 6/30/2011," *available at*
http://www.ncdoj.gov/CHPStats.aspx (last visited April 17,
2012).

As a result of this nationwide experience, "even those who

vehemently opposed shall-issue laws have been forced to acknowledge

that license holders are extremely law abiding and pose little threat.  The

President of the Dallas Police Association, who had lobbied against the

Texas concealed-carry law, admitted after it was enacted that '[a]ll the

horror stories I thought would come to pass didn't happen. No bogeyman.

I think it's worked out well, and that says good things about the citizens

who have permits. I'm a convert.'"  David B. Mustard, *The Impact of Gun*

*Laws on Police Deaths*, 44 J.L. & ECON. 635, 638 (2001).  Similarly, the

"president and the executive director of the Florida Chiefs of Police and the

head of the Florida Sheriff's Association admitted that despite their best

efforts to document problems arising from the law, they were unable to do

so." Mustard, *Comment, in* EVALUATING GUN POLICY at 331.  *See also* Daniel

D. Polsby & Don B. Kates, Jr., *American Homicide Exceptionalism*, 69 U. Colo.

L. Rev. 969, 1007 & n.90 (1998).  Finally, "[s]peaking on behalf of the

Kentucky Chiefs of Police Association, Lt. Col. Bill Dorsey stated, 'We

haven't seen any cases where a [concealed-carry] permit holder has

committed an offense with a firearm.'" Mustard, *Comment, in* EVALUATING

GUN POLICY at 331 & n.63.  A sheriff in Campbell County, Kentucky

admitted that, prior to the passage of the concealed carry law, he worried

that he would be uncomfortable with the type of people who were

applying for concealed carry licenses, but after the law passed he

discovered that " '[t]hese are all just everyday citizens who feel they need

some protection.' " Terry Flynn, *Gun-toting Kentuckians Hold Their Fire*,

CINCINNATI ENQUIRER (June 16, 1997) (*available at*

http://www.enquirer.com/editions/1997/06/16/loc_kycarry.html).

Wisconsin recently passed a concealed weapons law, but law

enforcement officers there have expressed no fear that it will lead to

increased crime. To the contrary, a police representative stated that "[t]he

majority of people carrying concealed weapons will be law-abiding people

who have proper permits and pose no threat . . . Those likely to cause

trouble might already have been concealing weapons." Nick Paulson, *Police*

*Not Fretting Over Looming Concealed Carry Law*, STEVENS POINT JOURNAL,

Aug. 6, 2011 (*available at*

http://www.stevenspointjournal.com/article/20110806/SPJ0101/1080605

01/Police-not-fretting-over-looming-concealed-carry-law). One sheriff

observed that, after the law passes, " 'It's pretty much going to be business

as usual for us.' " *Id.*[6]

---

[6] The Brady Center nevertheless asserts that citizens carrying licensed
firearms pose a particular threat to the police. Brady Br. 11-12. Yet law
enforcement officers across the nation—not just the many "converts"
quoted above—support the carrying of firearms by private citizens. *See,
e.g.,* Mustard, *The Impact of Gun Laws on Police Deaths*, 44 J.L. & ECON. at 638
(a survey found that "76 percent of street officers and 59 percent of
managerial officers agreed that all trained, responsible adults should be

### III.   CONTRARY TO THE DEFENDANTS' ASSERTION, PERMITTING LAW-ABIDING CITIZENS TO CARRY FIREARMS IN PUBLIC DOES NOT INCREASE—BUT MAY DECREASE—VIOLENT CRIME.

Numerous studies indicate that authorizing more law-abiding citizens to carry firearms either lowers rates of violent crime or has no impact at all.  Either result defeats the Illinois Gun Carry Ban because the burden is on the State to justify its restriction of the right to bear arms; Plaintiffs do not need to prove that permitting public gun carriage actually reduces crime because the justification for the right to bear arms is not that it is sound policy, but that it is an enumerated constitutional right.

---

able to obtain handgun carry permits.").  Law enforcement officers in Illinois hold similar views.  A recent survey of law enforcement officials in Fox Valley, a suburb of Chicago, found that, "[o]f the dozen area law enforcement leaders contacted by The Courier-News, none said they opposed concealed carry." Matt Hanley and Dave Gathman, *Local police give support to concealed carry*, THE COURIER NEWS, Aug. 6, 2011 (available at http://couriernews.suntimes.com/news/6899128-418/local-police-give-support-to-conceal-carry.html) (last visited 8/10/11).  One of the Illinois police chiefs stated that "[w]e don't have problems with legal guns owned by responsible, trained people." *Id.* Another police chief explained that "[t]he law-abiding citizens who will get the permits are probably people we never have any contact with anyway." *Id.*  These same views prevail throughout Illinois: "The Illinois Sheriffs' Association long has been in favor of concealed carry. Last year, the Illinois Association of Chiefs of Police went from 'against' concealed carry to 'neutral' — a significant change after years of opposition." *Id.*

A great deal of research indicates that so-called "shall-issue" statutes requiring the issuance of carry permits to law-abiding citizens are strongly associated "with fewer murders, aggravated assaults and rapes." John Lott, MORE GUNS, LESS CRIME 57 (3rd ed., 2010). Although some contest this point, *see* NRC REVIEW at 120-51 (reviewing the literature supporting or contradicting Lott's results), many experts find the evidence that shall-issue laws reduce murder rates to be compelling. Consider the views of James Q. Wilson, perhaps America's most revered and influential criminologist, who was until his recent death Professor at Boston College and who previously held endowed chairs at Harvard, UCLA, and Pepperdine. Professor Wilson was on the NRC committee and he summarized the research this way: "with only a few exceptions, the studies … including those by Lott's critics, do not show that the passage of RTC [right to carry] laws drives the crime rates up (as might be the case if one supposed that newly armed people went about looking for someone to shoot)." James Q. Wilson, *Dissent*, Appendix A to NRC REVIEW at 270. *See also id.* at 270 ("for people interested in RTC [right to carry] laws, the best evidence we have is that they impose no costs but may confer benefits").

Professor Wilson also noted that the NRC's own tabulation of the

research results largely confirmed the hypothesis that shall-issue laws

reduce murder rates. *Id.* He concluded that the evidence presented

"suggests that RTC laws do in fact help drive down the murder rate,

though their effect on other crimes is ambiguous." *Id.* at 271. It is

important to remember that "no empirical research has made a case for

shall-issue laws increasing crime. Instead, the literature has disputed the

magnitude of the decrease and whether the estimated decreases are

statistically significant." David B. Mustard, *Comment, in* EVALUATING GUN

POLICY 326 (Jens Ludwig and Philip J. Cook eds. 2003). *See also id.* at 326

("Even if one uncritically accepts the most negative reviews of Lott-

Mustard [research] at face value, there is still more evidence that shall-issue

laws reduce, rather than raise, crime.").

The majority of the members of the NRC committee found the

evidence more ambiguous than did Professor Wilson, and concluded "that,

with the current evidence, *it is not possible to determine that there is a causal*

*link between the passage of right-to-carry laws and crime rates.*" NRC REVIEW at

150 (emphasis added). That conclusion, without getting into the back and

forth between Lott and his critics, is sufficient to dispose of the Illinois Gun

Carry Ban, for it is Illinois's contention that allowing the carrying of

firearms will *increase* crime and, as noted above, the State bears the burden

of proof on that argument.[7]

---

[7] In any event, none of the studies cited by Illinois or the Brady Center actually supports the proposition that allowing law-abiding citizens to carry guns in public causes an increase in criminal violence. Illinois cited John Donohue, *Guns, Crime and the Impact of State Right-to-Carry Laws*, 73 FORDHAM L. REV. 623, 630-39 (2004). *See* Illinois Motion to Dismiss 17. But that article did *not* link increased violence to the enactment of laws permitting more citizens to bear arms. *See* 73 FORDHAM L. REV. at 625. Rather, the article candidly admitted that "[a]ll we can really say is that we know that there is no evidence of *reduction* in violent crime when [right to carry] laws are passed." *Id.* at 638; *see also id.* at 639 ("our statistical models are simply too blunt an instrument to ascertain the likely modest impact of [right to carry] laws on overall crime.").

The Brady Center also cited an earlier article by the same author: John Donohue, *The Impact of Concealed-Carry Laws*, *in* EVALUATING GUN POLICY 289, 320 (Jens Ludwig & Philip J. Cook eds. 2003). Brady Br. 11. But the Brady Center misrepresents the article by quoting a snippet out of context. Donohue did *not* conclude that concealed carry laws increase crime. In fact, he disavowed as "implausible" the findings of the regression analysis to which the Brady Center refers, *id.* at 324, and he concluded, *contrary* to the Brady Center, that one cannot draw conclusions regarding how concealed carry laws affect crime. *Id.* at 324-25.

The Brady Center's remaining citations likewise fail to establish a causal connection between enactment of shall-issue laws and an increase in violent crime. *See* Jens Ludwig, *Concealed-Gun-Carrying Laws and Violent Crime: Evidence from State Panel Data*, 18 INT'L REV. L. & ECON. 239, 248-49 (1998) (conceding that the data are so incomplete and the sample so small that any supposed increase in homicide is "not statistically significant"); David McDowall *et al.*, *Easing Concealed Firearms Laws: Effects on Homicide in Three States*, 86 J. CRIM. L. & CRIMINOLOGY 193, 203 (1995) (acknowledging

The federal Centers for Disease Control ("CDC") likewise reviewed

the entire corpus of firearms literature and found that it does not support

the proposition that increasing the number of citizens permitted to carry

firearms in public increases gun violence. The CDC convened an

independent Task Force and conducted "a systematic review of scientific

evidence regarding the effectiveness of firearms laws in preventing

violence, including violent crimes, suicide and unintentional injury." *First*

*Reports Evaluating the Effectiveness of Strategies for Preventing Violence:*

*Firearms Laws*, 52 MORBIDITY & MORTALITY WEEKLY REPORT 11 (CDC Oct. 3,

2003) ("MMWR").[8] The CDC took pains to note that, unlike other

research—including the studies on which Illinois relies here—the CDC's

review involved "systemic epidemiological evaluations and syntheses of

all available scientific literature meeting specified criteria." Robert Hahn, *et*

*al., Firearms Laws and the Reduction of Violence: A Systematic Review* 28

AM.J.PREV. MED. 40, 42 (2005). Nearly all the members of the Task Force

---

that the limited data are varied and inconsistent and disavowing the
conclusion "that shall issue licensing leads to more firearms murders"); *see*
*also id.* at 204 ("our analysis does not allow a firm conclusion that shall
issue licensing increases firearms homicides").

[8] The CDC report is available at
http://www.cdc.gov/mmwr/PDF/rr/rr5214.pdf.

were physicians or epidemiologists rather than criminologists or lawyers. MMWR at 11. The Task Force reviewed *all* the firearms studies from eleven different databases of public health, medical, sociological, psychological, criminal justice, legal, economics, and public policy research. *See* 28 AM.J.PREV. MED. at 44.

The CDC Task Force concluded that there simply were insufficient data to support the hypothesis "that the presence of more firearms" being carried in public by licensed citizens "increases rates of unintended and intended injury in interpersonal confrontations." *Id.* at 53. The CDC noted that, if anything, the more reliable studies — those of "greatest design suitability" — indicated that homicide rates went *down* when more carry permits were issued. *Id.* at 54. But in the end it found that the data employed suffered from "important systemic flaws that preclude reliable conclusions" and that no policy recommendation could be made about increasing the issuance of gun permits without "further research." *Id.* at 54.

Finally, it is instructive to compare the rate of violent crime in Illinois, the only State that flatly forbids citizens to carry firearms in public, with the rates in other States, all of which permit at least some law-abiding

citizens to carry firearms in public on some basis. Illinois's fantasy that its ban prevents Illinois residents from committing mayhem with firearms is exploded by the fact that Illinois leads the nation in the percentage of murders that are committed with firearms: the figure in Illinois is 80.35%, well above the national average. *See* http://www.guardian.co.uk/news/datablog/2011/jan/10/gun-crime-us-state. The rate of murder by firearms in Illinois is 2.81 per 100,000 population. *Id.* Thus Illinois, despite its total ban on carrying firearms in public, has a gun-murder rate higher than that of 23 States where the law mandates that carry-permits be issued to law-abiding citizens who pass the government's background checks and other criteria. *See id.* Vermont, which does not even require anyone—whether a Vermont resident or just a visitor—to obtain a permit to carry a concealed weapon in public,[9] has a gun-murder rate about one-ninth that of Illinois. *Id.* That hardly supports the proposition that preventing law-abiding citizens from carrying guns will result in fewer homicides.

---

[9] *See* 13 Vt. Stat. § 4003.

Neither Plaintiff Mary Shepard nor the NRA has predicated the

challenge to Illinois's law on any argument that allowing carriage in public

would *reduce* gun violence.  Whichever way the debate goes on that issue,

the *constitutional right* to bear arms remains the same, and it cannot be

trumped by *policy* considerations, especially on the basis of evidence that

the *only* two comprehensive and authoritative reviews of the literature—

those of the National Research Council and the Centers for Disease

Control—have found to be too ambiguous and inconclusive to serve as a

basis for firearms policy.

## CONCLUSION

For the reasons given above, *amici curiae* Hall, Pacholski, Tyler and

the NRA respectfully submit that the decision below should be reversed

and the case remanded with instructions to issue an injunction against the

challenged statutes.

Dated: April 18, 2012                         Respectfully submitted,

David Lehman                                  s/ Brian Stuart Koukoutchos
Deputy Executive Director and                 28 Eagle Trace
General Counsel                               Mandeville, LA  70471
NRA-ILA                                       Tel: (985) 626-5052
11250 Waples Mill Road                        Email: bskoukoutchos@gmail.com
Fairfax, VA 22030
Tel: (703) 267-1163
Fax: (703) 267-3973

                                              *Counsel for Amici Curiae Michael
                                              Hall, et. al.*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) because this brief contains 6,386 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionately spaced typeface using Microsoft Office Word 2007 with 14-point Book Antiqua type.

s/ Brian Stuart Koukoutchos
Brian Stuart Koukoutchos
*Attorney for Amici Curiae*

Dated:  April 18, 2012

31

# Exhibit E

General Docket
Seventh Circuit Court of Appeals

| | |
|---|---|
| **Court of Appeals Docket #:** 12-1269 | **Docketed:** 02/06/2012 |

**Nature of Suit:** 3950 Constitutionality of State Statutes
Michael Moore, et al v. Lisa Madigan, et al
**Appeal From:** Central District of Illinois
**Fee Status:** Paid

**Case Type Information:**
    1) civil
    2) private
    3) -

**Originating Court Information:**
    **District:** 0753-3 : 3:11-cv-03134-SEM-BGC
    **Court Reporter:** Kathy Sullivan, Court Reporter
    **Trial Judge:** Sue E. Myerscough, District Court Judge
    **Date Filed:** 05/12/2011

| | |
|---|---|
| **Date Order/Judgment:** | **Date NOA Filed:** |
| 02/03/2012 | 02/03/2012 |

**Prior Cases:**
    None

**Current Cases:**
    None

---

**MICHAEL MOORE**
    Plaintiff - Appellant

Alan Gura, Attorney
Direct: 703-835-9085
[COR LD NTC Retained]
GURA & POSSESSKY
Suite 405
101 N. Columbus Street
Alexandria, VA 22314

David D. Jensen, Attorney
Direct: 212-380-6615
[COR LD NTC Retained]
DAVID JENSEN PLLC
Suite 230
111 John Street
New York, NY 10038

David G. Sigale, Attorney
Direct: 630-452-4547
[COR LD NTC Retained]
Suite 304
739 Roosevelt Road
Glen Ellyn, IL 60137

**CHARLES HOOKS**
    Plaintiff - Appellant

Alan Gura, Attorney
Direct: 703-835-9085
[COR LD NTC Retained]
(see above)

David D. Jensen, Attorney
Direct: 212-380-6615
[COR LD NTC Retained]
(see above)

David G. Sigale, Attorney
Direct: 630-452-4547
[COR LD NTC Retained]
(see above)

**PEGGY FECHTER**
    Plaintiff - Appellant

Alan Gura, Attorney
Direct: 703-835-9085
[COR LD NTC Retained]
(see above)

David D. Jensen, Attorney
Direct: 212-380-6615
[COR LD NTC Retained]
(see above)

David G. Sigale, Attorney
Direct: 630-452-4547
[COR LD NTC Retained]
(see above)

JON MAIER
      Plaintiff - Appellant

David D. Jensen, Attorney
Direct: 212-380-6615
[COR LD NTC Retained]
(see above)

David G. Sigale, Attorney
Direct: 630-452-4547
[COR LD NTC Retained]
(see above)

SECOND AMENDMENT FOUNDATION, INCORPORATED
      Plaintiff - Appellant

David D. Jensen, Attorney
Direct: 212-380-6615
[COR LD NTC Retained]
(see above)

David G. Sigale, Attorney
Direct: 630-452-4547
[COR LD NTC Retained]
(see above)

v.

LISA MADIGAN, in her official capacity as Illinois Attorney General
      Defendant - Appellee

David A. Simpson, Attorney
Direct: 312-814-3419
[COR LD NTC Government State]
OFFICE OF THE ATTORNEY GENERAL
100 W. Randolph Street
State of Illinois Center
Chicago, IL 60601-3218

HIRAM GRAU
      Defendant - Appellee

David A. Simpson, Attorney
Direct: 312-814-3419
[COR LD NTC Government State]
(see above)

-------------------------------

CITY OF CHICAGO
      Amicus Curiae

Suzanne M. Loose, Attorney
Direct: 312-744-8519
[COR LD NTC Government State]
CITY OF CHICAGO LAW DEPARTMENT
Suite 800
30 N. LaSalle Street
Chicago, IL 60602-0000

LEGAL COMMUNITY AGAINST VIOLENCE
      Amicus Curiae

Jonathan Klee Baum, Attorney
Direct: 312-902-5479
[COR LD NTC Retained]
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661-3693

MAJOR CITIES CHIEFS ASSOCIATON
      Amicus Curiae

Jonathan Klee Baum, Attorney
Direct: 312-902-5479
[COR LD NTC Retained]
(see above)

DISTRICT OF COLUMBIA, WASHINGTON D.C.
      Amicus Curiae

Todd Sunhwae Kim, Attorney
Direct: 202-724-6609
[COR LD NTC Government Federal]

|  | OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA<br>Office of the Solicitor General<br>Suite 600-S<br>441 Fourth Street N.W.<br>Washington, DC 20001 |
|---|---|
| BOARD OF EDUCATION OF THE CITY OF CHICAGO<br>Amicus Curiae | Patrick J. Rocks, Jr., Attorney<br>Direct: 773-553-1700<br>[COR LD NTC Government State]<br>CHICAGO BOARD OF EDUCATION<br>Law Department<br>Suite 799<br>125 S. Clark Street<br>Chicago, IL 60603-0000 |
| CHICAGO TRANSIT AUTHORITY<br>Amicus Curiae | Stephen L. Wood, Attorney<br>Direct: 312-681-2924<br>[COR LD NTC Government State]<br>CHICAGO TRANSIT AUTHORITY<br>Law Department<br>P.O. Box 7564<br>Chicago, IL 60680-0000 |
| BRADY CENTER TO PREVENT GUN VIOLENCE<br>Amicus Curiae | Alexander David Marks, Attorney<br>Direct: 312-840-7000<br>[COR LD NTC Retained]<br>BURKE, WARREN, MACKAY & SERRITELLA, P.C.<br>22nd Floor<br>330 N. Wabash Avenue<br>Chicago, IL 60611-3607 |
| NATIONAL BLACK POLICE ASSOCIATION<br>Amicus Curiae | Alexander David Marks, Attorney<br>Direct: 312-840-7000<br>[COR LD NTC Retained]<br>(see above) |



MICHAEL MOORE, et al.,
          Plaintiffs - Appellants

v.

LISA MADIGAN and HIRAM GRAU,
          Defendants - Appellees

| 02/06/2012 | ☐ 1<br>66 pg, 413.62 KB | Private civil case docketed. Fee paid. Transcript information sheet due by 02/21/2012. Docketing Statement due for Appellants Peggy Fechter, Charles Hooks, Jon Maier, Michael Moore, Second Amendment Foundation, Incorporated by 02/10/2012. Appellant's brief due on or before 03/19/2012 for Peggy Fechter, Charles Hooks, Jon Maier, Michael Moore and Second Amendment Foundation, Incorporated. [1] [6372098] [12-1269] (AD) |
|---|---|---|
| 02/06/2012 | ☐ 2<br>2 pg, 75.48 KB | Appearance form filed by Attorney David Simpson for Appellees Hiram Grau and Lisa Madigan.Attorney Terence J. Corrigan terminated and Attorney David Simpson added for Appellees Hiram Grau and Lisa Madigan per appearance form. [2] [6372248] [12-1269]--[Edited 02/06/2012 by KH to reflect addition and termination of attorneys] (Simpson, David) |
| 02/06/2012 | ☐ 3<br>2 pg, 76.41 KB | Appearance form filed by Attorney David Simpson for Appellees Hiram Grau and Lisa Madigan. [3] [6372253] [12-1269] (Simpson, David) |
| 02/06/2012 | ☐ | THIS CAUSE CONSISTS OF MORE THAN 5 PARTIES FOR EITHER SIDE. The following are those parties to this cause as reflected on the District Court docket, yet are not reflected on the Appellate docket/caption for administrative purposes: APPELLANT: Illinois Carry. [6372281-2] [6372281] [12-1269] (AD) |
| 02/08/2012 | ☐ 4<br>2 pg, 63.08 KB | Disclosure Statement filed by Attorney David G. Sigale for Appellants Peggy Fechter, Charles Hooks, Jon Maier, Michael Moore and Second Amendment Foundation, Incorporated. Additional Parties: Illinois Carry. [4] [6372854] [12-1269]--[Edited 02/08/2012 by CD to reflect that attorney David D. Jensen has been terminated and attorney David G. Sigale has been added as counsel for the appellants] [4] [6372854] [12-1269] (Sigale, David) |
| 02/08/2012 | ☐ 5<br>3 pg, 72.07 KB | Docketing statement filed by Appellants Peggy Fechter, Charles Hooks, Jon Maier, Michael Moore and Second Amendment Foundation, Incorporated. Prior or Related proceedings: No. [5] [6372892] [12-1269]--[Edited 02/08/2012 by SM - This is a Scanned PDF; a Native PDF must be submitted.] (Sigale, David) |
| 02/08/2012 | ☐ 6<br>2 pg, 689.64 KB | Disclosure Statement filed by Attorney David G. Sigale for Appellants Peggy Fechter, Charles Hooks, Jon Maier, Michael Moore and Second Amendment Foundation, Incorporated. Additional Parties: Illinois Carry. [6] [6372924] [12-1269] (Sigale, David) |
| 02/08/2012 | ☐ 7<br>3 pg, 712.22 KB | Docketing statement filed by Appellants Peggy Fechter, Charles Hooks, Jon Maier, Michael Moore and Second Amendment Foundation, Incorporated. Prior or Related proceedings: No. [Edited 2/9/12 by ATM to reflect this is a native version fo document #5] [7] [6372925] [12-1269] (Sigale, David) |
| 03/02/2012 | ☐ 8<br>156 pg, 2.89 MB | Submitted appellant brief by David G. Sigale for Appellants Peggy Fechter, Charles Hooks, Jon Maier, Michael Moore and Second Amendment Foundation, Incorporated. [8] [6378928] [12-1269] (Sigale, David) |
| 03/02/2012 | ☐ 10<br>115 pg, 827.04 KB | Appellant's brief filed by Appellants Peggy Fechter, Charles Hooks, Jon Maier, Michael Moore and Second Amendment Foundation, Incorporated. Paper copies due on 03/12/2012. Appellee's brief due on or before 04/02/2012 for Hiram Grau and Lisa Madigan. Electronically Transmitted. [6379155][10] [12-1269] (SP) |
| 03/02/2012 | ☐ 11<br>41 pg, 2.14 MB | Filed Appendix by Appellants Peggy Fechter, Charles Hooks, Jon Maier and Second Amendment Foundation, Incorporated. [11] [6379157] Paper copies due on 03/12/2012. [12-1269] (SP) |
| 03/03/2012 | ☐ 9<br>114 pg, 767.53 KB | Re-Submitted appellant brief by David G. Sigale for Appellants Peggy Fechter, Charles Hooks, Jon Maier, Michael Moore and Second Amendment Foundation, Incorporated. [9] [6378931] [12-1269] [edited 3/05/12 by SP to reflect correct submission of doc.#8] (Sigale, David) |
| 03/26/2012 | ☐ 12<br>5 pg, 61.03 KB | Motion filed by Appellees Hiram Grau and Lisa Madigan to extend time to file appellee brief. [6384464] [12-1269] (Simpson, David) |
| 03/26/2012 | ☐ 13<br>1 pg, 95.04 KB | Order issued GRANTING motion to extend time to file appellees' brief. [12] Appellees' brief due on or before 05/02/2012 for Hiram Grau and Lisa Madigan. Appellants' reply brief, if any, is due on or before 05/16/2012 for Appellants Peggy Fechter, Charles Hooks, Jon Maier, Michael Moore and Second Amendment Foundation, Incorporated. JKL [6384486] [12-1269] (KH) |
| 04/23/2012 | ☐ 14<br>6 pg, 62.55 KB | Motion filed by Appellees Hiram Grau and Lisa Madigan to extend time to file appellee brief., to consolidate. [6391924] [12-1269] (Simpson, David) |
| 04/26/2012 | ☐ 15<br>2 pg, 114.85 KB | Order re: Motions to consolidate and extend time. The motions to consolidate are DENIED. Appellees do not need a formal order of consolidation in order to file one brief addressing two appeals. They may file one brief, or two, at their option. The motions for an extension of time is GRANTED, but only until May 9, 2012 (in both appeals). This should allow enough time to prepare a single brief covering the two cases. Appellees previously told the court that the two suits are functionally identical. There is accordingly no need for time beyond the 30-day extension already granted, and this one-week increment. The court's last regular sitting of the current term is June 8, 2012. If the court were to delay the appellees' briefs until June 1 or June 11 (the alternate dates appellees propose), that would postpone oral argument until next September, an unnecessary delay. Appellees must file their brief (or briefs) in both cases by May 9, and appellants their reply briefs by May 23. That will permit oral argument the last week of May or the first full week of June. [14] [6391925-3] [14] [6391925-2] JKL [6392901] [12-1269, 12-1788] (AM) |

| | | |
|---|---|---|
| 04/30/2012 | ☐ 16<br>3 pg, 344.29 KB | NOTICE: Attorney Alan Gura will not be available for oral argument 06/01/2012, 06/04/2012, 06/05/2012, 06/06/2012, 06/12/2012, 06/13/2012, 08/07/2012, 08/08/2012. [16] [6393938] [12-1269]--[Edited 05/01/2012 by AB] (Gura, Alan) |
| 05/09/2012 | ☐ 17<br>4 pg, 138.06 KB | Argument set for Friday, June 8, 2012, at 9:00 a.m. in the Main Courtroom, Room 2721. Each side limited to 15 minutes. [17] [6396290] [12-1269] (AB) |
| 05/09/2012 | ☐ 18<br>1 pg, 85.47 KB | Notice to the District Court to transmit the record on appeal. [18] [6396298] [12-1269] (AB) |
| 05/09/2012 | ☐ 19<br>355 pg, 4.56 MB | Original record on appeal filed electronically. Contents of record : 1 vol. of pleadings; 1 sealed document. [19] [6396426] [12-1269] (DW) |
| 05/09/2012 | ☐ 20 | Filed electronic transcript of proceedings held on 08/04/11. [20] [6396434] THIS TRANSCRIPT IS FOR INTERNAL COURT USE ONLY. Remote electronic access to the transcript is ONLY available through the District Court's PACER system. [12-1269] (DW) |
| 05/09/2012 | ☐ 21<br>68 pg, 253.44 KB | Submitted appellee brief by David A. Simpson for Appellees Hiram Grau and Lisa Madigan. [21] [6396537] [12-1269] (Simpson, David) |
| 05/09/2012 | ☐ 22<br>2 pg, 128.2 KB | Disclosure Statement filed by Attorney Alan Gura for Appellants Peggy Fechter, Charles Hooks, Jon Maier, Michael Moore and Second Amendment Foundation, Incorporated. [22] [6396542] [12-1269] (Gura, Alan) |
| 05/09/2012 | ☐ 23<br>68 pg, 244.64 KB | Appellee's brief filed by Appellees Hiram Grau and Lisa Madigan in 12-1269, Appellees Tyler R. Edmonds, Lisa Madigan and Patrick J. Quinn in 12-1788. Paper copies due on 05/17/2012. Electronically Transmitted. [6396572][23] [12-1269, 12-1788] (AB) |
| 05/10/2012 | ☐ 24<br>1 pg, 88.51 KB | ORDER: This Court has received 1 electronic file, document no. 36, under seal from the district court. All documents filed in this Court, except those required to be sealed by statute or rule are considered public. Pursuant to 7th Circuit Operating Procedure 10(b), documents sealed in the district court will be maintained under seal in this Court for 14 days, to afford time to request the approval required by section (a) of this operating procedure. Absent a motion from a party these sealed documents will be placed in the public record on 05/25/2012. Motion shall be filed by 05/24/2012 [24] [6396592] [12-1269] (RT) |
| 05/10/2012 | ☐ 25<br>2 pg, 91.53 KB | Disclosure Statement filed by Attorney David D. Jensen for Appellants Peggy Fechter, Charles Hooks, Jon Maier, Michael Moore and Second Amendment Foundation, Incorporated. Additional Parties: Illinois Carry. [25] [6396799] [12-1269]--[Edited 05/10/2012 by CD to reflect that attorney David D. Jensen has been added as counsel for the appellants] [25] [6396799] [12-1269] (Jensen, David) |
| 05/10/2012 | ☐ 26<br>2 pg, 124.1 KB | Received argument confirmation from Alan Gura for Appellants Peggy Fechter, Charles Hooks, Jon Maier, Michael Moore and Second Amendment Foundation, Incorporated. [26] [6396807] [12-1269] (Gura, Alan) |
| 05/16/2012 | ☐ 27<br>37 pg, 238.84 KB | Submitted brief by Suzanne M. Loose for amicus City of Chicago, Legal Community Against Violence, Major Cities Chiefs Association, Board of Education of the City of Chicago, Chicago Transportation Authority. Consent from all parties contained within brief. [27] [6398217] [12-1269] (Loose, Suzanne) |
| 05/16/2012 | ☐ 28<br>21 pg, 63.85 KB | Submitted brief by Todd Kim for amicus District of Columbia. Federal or state filer (consent unnecessary). [28] [6398222] [12-1269] (Kim, Todd) |
| 05/16/2012 | ☐ 29<br>37 pg, 242.45 KB | Amicus brief filed by Amici Curiae The Major Cities Chiefs Associaton, Legal Community Against Violence and City of Chicago, CTA, Board of Education of the City of Chicago by consent. Paper copies due on 05/23/2012 Electronically Transmitted. (RS) |
| 05/16/2012 | ☐ 30<br>21 pg, 64.88 KB | Amicus brief filed by Amicus Curiae District of Columbia, Washington D.C. government filing, no consent necessary. Paper copies due on 05/23/2012 Electronically Transmitted. [6398320] [12-1269] (BS) |
| 05/16/2012 | ☐ 31<br>2 pg, 10.05 KB | Disclosure Statement filed by Attorney Alexander D. Marks for Brady Center to Prevent Gun Violence, International Brotherhood of Police Officers, Major Cities Chiefs Association, National Association of Women Law Enforcement Executives, National Black Police Association. Additional Parties: Police Foundation. [31] [6398610] [12-1269] (Marks, Alexander) |
| 05/16/2012 | ☐ 32<br>34 pg, 123.86 KB | Submitted brief by Alexander D. Marks for amicus Brady Center to Prevent Gun Violence, international Brotherhood of Police Officers, Major Cities Cheifs Association, National Association of Women Law Enforcement Executives, National Black Police Association, and Police Foundation. Consent from all parties contained within brief. [32] [6398616] [12-1269] (Marks, Alexander) |
| 05/16/2012 | ☐ 33<br>34 pg, 124.21 KB | Amicus brief filed by Amici Curiae National Black Police association and Brady Center to Prevent Gun Violence by consent. Paper copies due on 05/24/2012 Electronically Transmitted. [6398794] [12-1269]--[Edited 05/17/2012 by RS All other parties listed in party limit entry] (RS) |
| 05/16/2012 | ☐ | THIS CAUSE CONSISTS OF MORE THAN 5 AMICI: The following are those parties , yet are not reflected on the Appellate docket/caption for administrative purposes: International Brotherhood of Police Officers, Major Cities Chiefs Association, National Association of Women Law Enforcement Executives, and Police Foundation [6398800-2] [6398800] [12-1269] (RS) |

Case: 1:10-cv-04184 Document #: 182-2 Filed: 05/21/12 Page 45 of 61 PageID #:8398

https://ecf.ca7.uscourts.gov/cmecf/servlet/TransportRoom

Clear All

⦿ Documents and Docket Summary
○ Documents Only

☑ Include Page Numbers

Selected Pages: 0    Selected Size: 0 KB    (Max: 10 MB)

View Selected

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 7th Circuit Court of Appeals - 05/17/2012 12:45:12 | | | |
| PACER Login: | cc0395 | Client Code: | 01-benson v. city-10c4184 |
| Description: | Docket Report (filtered) | Search Criteria: | 12-1269 |
| Billable Pages: | 4 | Cost: | 0.40 |

# Exhibit F

**General Docket**
**Seventh Circuit Court of Appeals**

| | |
|---|---|
| **Court of Appeals Docket #:** 12-1788 | Docketed: 04/03/2012 |
| **Nature of Suit:** 3890 Other Statutory Actions | |
| Mary Shepard, et al v. Lisa Madigan, et al | |
| **Appeal From:** Southern District of Illinois | |
| **Fee Status:** Paid | |

**Case Type Information:**
   1) civil
   2) private
   3) -

**Originating Court Information:**
   **District:** 0754-3 : 3:11-cv-00405-WDS-PMF
   **Trial Judge:** William D. Stiehl, District Court Judge
   **Date Filed:** 05/13/2011

| **Date Order/Judgment:** | **Date NOA Filed:** |
|---|---|
| 03/30/2012 | 04/02/2012 |

**Prior Cases:**
   None

**Current Cases:**
   None

---

| | |
|---|---|
| **MARY E. SHEPARD**<br>     Plaintiff - Appellant | Charles J. Cooper, Attorney<br>Direct: 202-220-9600<br>[COR LD NTC Retained]<br>COOPER & KIRK<br>1523 New Hampshire Avenue N.W.<br>Washington, DC 20036<br><br>William N. Howard, Attorney<br>Direct: 312-360-6415<br>[COR LD NTC Retained]<br>FREEBORN & PETERS LLP<br>Suite 3000<br>311 S. Wacker Drive<br>Chicago, IL 60606-0000 |
| **ILLINOIS STATE RIFLE ASSOCIATION**<br>     Plaintiff - Appellant | Charles J. Cooper, Attorney<br>Direct: 202-220-9600<br>[COR LD NTC Retained]<br>(see above)<br><br>William N. Howard, Attorney<br>Direct: 312-360-6415<br>[COR LD NTC Retained]<br>(see above) |
| v. | |
| **LISA MADIGAN**, in her official capacity as Illinois Attorney General<br>     Defendant - Appellee | David A. Simpson, Attorney<br>Direct: 312-814-3419<br>[COR LD NTC Government State]<br>OFFICE OF THE ATTORNEY GENERAL<br>100 W. Randolph Street<br>State of Illinois Center<br>Chicago, IL 60601-3218 |
| **PATRICK J. QUINN**, in his official capacity as Governor of the State of Illinois<br>     Defendant - Appellee | David A. Simpson, Attorney<br>Direct: 312-814-3419<br>[COR LD NTC Government State]<br>(see above) |
| **TYLER R. EDMONDS**, in his official capacity as the State's Attorney of Union County, Illinois<br>     Defendant - Appellee | David A. Simpson, Attorney<br>Direct: 312-814-3419<br>[COR LD NTC Government State] |

(see above)

DAVID LIVESAY, in his official capacity as Sheriff of Union County, Illinois

        Defendant - Appellee

Joseph A. Bleyer, Attorney
Direct: 618-997-1331
[COR LD NTC Retained]
BLEYER & BLEYER
601 W. Jackson
P.O. Box 487
Marion, IL 62959-0000

------------------------------

MICHAEL HALL
        Amicus Curiae

Brian S. Koukoutchos, Attorney
Direct: 985-626-0189
[COR LD NTC Retained]
28 Eagle Trace
Mandeville, LA 70471-0000

KENNETH PACHOLSKI
        Amicus Curiae

Brian S. Koukoutchos, Attorney
Direct: 985-626-0189
[COR LD NTC Retained]
(see above)

KATHRYN TYLER
        Amicus Curiae

Brian S. Koukoutchos, Attorney
Direct: 985-626-0189
[COR LD NTC Retained]
(see above)

NATIONAL RIFLE ASSOCIATION OF AMERICA, INCORPORATED
        Amicus Curiae

Brian S. Koukoutchos, Attorney
Direct: 985-626-0189
[COR LD NTC Retained]
(see above)

DISTRICT OF COLUMBIA, WASHINGTON D.C.
        Amicus Curiae

Todd Sunhwae Kim, Attorney
Direct: 202-724-6609
[COR LD NTC Government Federal]
OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA
Office of the Solicitor General
Suite 600-S
441 Fourth Street N.W.
Washington, DC 20001

CITY OF CHICAGO
        Amicus Curiae

Suzanne M. Loose, Attorney
Direct: 312-744-8519
[COR LD NTC Government State]
CITY OF CHICAGO LAW DEPARTMENT
Suite 800
30 N. LaSalle Street
Chicago, IL 60602-0000

LEGAL COMMUNITY AGAINST VIOLENCE
        Amicus Curiae

Johnthan K. Baum, Attorney
Direct: 312-702-9611
[COR LD NTC Retained]
MANDEL LEGAL AID CLINIC
6020 S. University Avenue
Chicago, IL 60637-0000

THE MAJOR CITIES CHIEFS ASSOCIATON
        Amicus Curiae

Jonathan Klee Baum, Attorney
Direct: 312-902-5479
[COR LD NTC Retained]
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661-3693

CHICAGO TRANSIT AUTHORITY
        Amicus Curiae

Stephen L. Wood, Attorney
Direct: 312-681-2924
[COR LD NTC Government State]
CHICAGO TRANSIT AUTHORITY
Law Department
P.O. Box 7564

Chicago, IL 60680-0000

BOARD OF EDUCATION OF THE CITY OF CHICAGO
      Amicus Curiae

Patrick J. Rocks, Jr., Attorney
Direct: 773-553-1700
[COR LD NTC Government State]
CHICAGO BOARD OF EDUCATION
Law Department
Suite 799
125 S. Clark Street
Chicago, IL 60603-0000

MARY E. SHEPARD and ILLINOIS STATE RIFLE ASSOCIATION,
          Plaintiffs - Appellants

v.

LISA MADIGAN, et al.,
          Defendants - Appellees

| Date | Doc | Description |
|---|---|---|
| 04/03/2012 | 1<br>42 pg, 8.06 MB | Private civil case docketed. Fee paid. Transcript information sheet due by 04/17/2012. Docketing Statement due for Appellants Illinois State Rifle Association, Mary E. Shepard by 04/09/2012. Appellant's brief due on or before 05/14/2012 for Illinois State Rifle Association and Mary E. Shepard. [1] [6386977] [12-1788] (AD) |
| 04/04/2012 | 2<br>2 pg, 80.69 KB | Appearance form filed by Attorney David A. Simpson for Appellees Tyler R. Edmonds, Lisa Madigan and Patrick J. Quinn. [Edited by ATM to reflect addition of attorney Simpson and termination of attorney Hughes] [2] [6387259] [12-1788] (Simpson, David) |
| 04/09/2012 | 3<br>4 pg, 60.87 KB | Motion filed by Appellees Tyler R. Edmonds, Lisa Madigan and Patrick J. Quinn to stay briefing and hold appeal in abeyance. [6388448] [12-1788] (Simpson, David) |
| 04/09/2012 | 4<br>5 pg, 105.95 KB | Docketing statement filed by Appellants Illinois State Rifle Association and Mary E. Shepard. Prior or Related proceedings: No. [4] [6388512] [12-1788] (Howard, William) |
| 04/10/2012 | 5<br>2 pg, 91.3 KB | Filed Seventh Circuit Transcript Information Sheet by Appellants Illinois State Rifle Association and Mary E. Shepard. [5] [6388833] [12-1788] (Howard, William) |
| 04/10/2012 | 6<br>2 pg, 83.26 KB | Disclosure Statement filed by Attorney William N. Howard for Appellants Illinois State Rifle Association and Mary E. Shepard. [6] [6388834] [12-1788] (Howard, William) |
| 04/10/2012 | 7<br>2 pg, 37.26 KB | Appearance form filed by Attorney Joseph A. Bleyer for Appellee David Livesay. [7] [6388846] [12-1788] (Bleyer, Joseph) |
| 04/10/2012 | 8<br>1 pg, 36.18 KB | Disclosure Statement filed by Attorney Joseph A. Bleyer for Appellee David Livesay. [8] [6388849] [12-1788] (Bleyer, Joseph) |
| 04/10/2012 | 9<br>2 pg, 47.85 KB | Disclosure Statement filed by Attorney Charles J. Cooper for Appellants Illinois State Rifle Association and Mary E. Shepard. [9] [6388859] [12-1788]--[Edited 04/11/2012 by JAD to add atty cooper to the docket.] (Cooper, Charles) |
| 04/11/2012 | 10<br>124 pg, 978.15 KB | Submitted appellant brief by Charles J. Cooper for Appellants Illinois State Rifle Association and Mary E. Shepard. [10] [6388956] [12-1788] (Cooper, Charles) |
| 04/11/2012 | 11<br>8 pg, 54.4 KB | Filed Response in Opposition by Appellants Illinois State Rifle Association and Mary E. Shepard Attorney Charles J. Cooper to Motion to Stay Briefing and Hold Appeal in Abeyance and motion to schedule oral argument together with related case. [6388960] [12-1788] (Cooper, Charles) |
| 04/11/2012 | 12<br>124 pg, 1.01 MB | Appellant's brief filed by Appellants Illinois State Rifle Association and Mary E. Shepard. Appellee's brief due on or before 05/11/2012 for Tyler R. Edmonds, David Livesay, Lisa Madigan and Patrick J. Quinn. Paper copies due on 04/18/2012 Electronically Transmitted. [6389030][12] [12-1788] (LJ) |
| 04/13/2012 | 13<br>1 pg, 96.18 KB | ORDER: 1. Motion to stay briefing and hold appeal in abeyance, filed on 4/9/12. 2. Plaintiffs' motion to schedule oral argument together in a related case, filed on 4/11/12. The motion to stay briefing is DENIED. Further, the motion to schedule oral argument together is GRANTED. The clerk of this court will schedule this appeal for argument on the same day, and before the same panel, as the argument in appeal no. 12-1269. [3][3] [11] AIN [6389704] [12-1788] (FP) |
| 04/18/2012 | 14<br>2 pg, 335.43 KB | Disclosure Statement filed by Attorney Brian Koukoutchos for Michael Hall, Kenneth Pacholski, Kathryn Tyler and the National Rifle Association of America, Inc. [14] [6390918] [12-1788] (Koukoutchos, Brian) |
| 04/18/2012 | 15<br>41 pg, 246.39 KB | Filed Non-Party Motion for Leave to File Brief Amici Curiae by Michael Hall, Kenneth Pacholski, Kathryn Tyler and the National Rifle Association of America, Inc. [6390921] [12-1788]--[Edited 04/19/2012 by KL to reflect amici curiae brief tendered.] (Koukoutchos, Brian) |
| 04/23/2012 | 16<br>6 pg, 62.55 KB | Motion filed by Appellees Tyler R. Edmonds, Lisa Madigan and Patrick J. Quinn to extend time to file appellee brief., to consolidate cases. [6391925] [12-1788] (Simpson, David) |
| 04/26/2012 | 17<br>2 pg, 114.85 KB | Order re: Motions to consolidate and extend time. The motions to consolidate are DENIED. Appellees do not need a formal order of consolidation in order to file one brief addressing two appeals. They may file one brief, or two, at their option. The motions for an extension of time is GRANTED, but only until May 9, 2012 (in both appeals). This should allow enough time to prepare a single brief covering the two cases. Appellees previously told the court that the two suits are functionally identical. There is accordingly no need for time beyond the 30-day extension already granted, and this one-week increment. The court's last regular sitting of the current term is June 8, 2012. If the court were to delay the appellees' briefs until June 1 or June 11 (the alternate dates appellees propose), that would postpone oral argument until next September, an unnecessary delay. Appellees must file their brief (or briefs) in both cases by May 9, and appellants their reply briefs by May 23. This will permit oral argument the last week of May or the first full week of June. [6391924-3] [16] [6391924-2] [16] JKL [6392901] [12-1269, 12-1788] (AM) |
| 05/08/2012 | 18<br>3 pg, 38.51 KB | Motion filed by Appellee David Livesay to Join in Brief of Defendants-Appellees. [6396191] [12-1788] (Bleyer, Joseph) |
| 05/09/2012 | 19<br>4 pg, 138.01 KB | Argument set for Friday, June 8, 2012, at 9:00 a.m. in the Main Courtroom, Room 2721. Each side limited to 15 minutes. [19] [6396292] [12-1788] (AB) |
| 05/09/2012 | 20<br>1 pg, 86.34 KB | Notice to the District Court to transmit the record on appeal. [20] [6396300] [12-1788] (AB) |

| 05/09/2012 | ☐ 21<br>68 pg, 253.44 KB | Submitted appellee brief by David A. Simpson for Appellees Tyler R. Edmonds, Lisa Madigan and Patrick J. Quinn. [21] [6396538] [12-1788] (Simpson, David) |
| 05/09/2012 | ☐ 22<br>68 pg, 244.64 KB | Appellee's brief filed by Appellees Hiram Grau and Lisa Madigan in 12-1269, Appellees Tyler R. Edmonds, Lisa Madigan and Patrick J. Quinn in 12-1788. Paper copies due on 05/17/2012. Electronically Transmitted. [6396572][22] [12-1269, 12-1788] (AB) |
| 05/10/2012 | ☐ 23<br>1 pg, 104.67 KB | ORDER issued GRANTING motion for leave to file brief amici curiae of Michael Hall, Kenneth Pacholski, Kathryn Tyler and the National Rifle Association of America, Inc., in support of plaintiffs-appellants. The clerk of this court shall file INSTANTER, and for distribution to the assigned merits panel, the Brief Amici Curiae of Michael Hall, Kenneth Pacholski, Kathryn Tyler and the National Rifle Association of America, Inc., in Support of Plaintiffs-Appellants, submitted on April 18, 2012. [15] AIN [23] [6396653] [12-1788] (CD) |
| 05/10/2012 | ☐ 24<br>1 pg, 99.09 KB | Order issued GRANTING Motion to Joint in Brief of Defendants-appellees Lisa Madigan, Hiram Grau, Tyler R. Edmonds & Patrick J. Quinn. Appellee David Livesay may adopt the brief of the appellees filed on May 9, 2012. A copy of this order shall be distributed to the assigned merits panel. [18] CMD [6396698] [12-1788] (AD) |
| 05/10/2012 | ☐ 25<br>2 pg, 69.05 KB | Received argument confirmation from Charles J. Cooper for Appellants Illinois State Rifle Association and Mary E. Shepard. [25] [6396860] [12-1788] (Cooper, Charles) |
| 05/10/2012 | ☐ 26<br>36 pg, 173.68 KB | Amicus brief filed by Amici Curiae Michael Hall, National Rifle Association of America, Incorporated, Kenneth Pacholski and Kathryn Tyler, per order. Paper copies due on 05/18/2012 Electronically Transmitted. [6396972] [12-1788] (RT) |
| 05/14/2012 | ☐ 27<br>638 pg, 9.45 MB | Original record on appeal filed electronically. Contents of record : 2 vol. of pleadings. [27] [6397601] [12-1788] (DW) |
| 05/16/2012 | ☐ 28<br>21 pg, 63.85 KB | Submitted brief by Todd Kim for amicus District of Columbia. Federal or state filer (consent unnecessary). [28] [6398214] [12-1788] (Kim, Todd) |
| 05/16/2012 | ☐ 29<br>37 pg, 238.84 KB | Submitted brief by Suzanne M. Loose for amicus City of Chicago, Legal Community Against Violence, Major Cities Chiefs Association, Board of Education of the City of Chicago, Chicago Transportation Authority. Consent from all parties contained within brief. [29] [6398225] [12-1788] (Loose, Suzanne) |
| 05/16/2012 | ☐ 30<br>21 pg, 64.88 KB | Amicus brief filed by Amicus Curiae District of Columbia, Washington D.C. government filing, no consent necessary. Paper copies due on 05/23/2012 Electronically Transmitted. [6398273] [12-1788] (RT) |
| 05/16/2012 | ☐ 31<br>37 pg, 221.59 KB | Amicus brief filed by Amici Curiae The Major Cities Chiefs Associaton, Legal Community Against Violence and City of Chicago, CTA and Board of Education of the City of Chicago, by consent. Paper copies due on 05/23/2012 Electronically Transmitted.--[Edited 05/17/2012 by RT] (LJ) |
| 05/16/2012 | ☐ 32<br>2 pg, 10.05 KB | Disclosure Statement filed by Attorney Alexander D. Marks for Brady Center to Prevent Gun Violence, International Brotherhood of Police Officers, Major Cities Chiefs Association, National Association of Women Law Enforcement Executives, National Black Police Association. Additional Parties: Police Foundation. [32] [6398611] [12-1788] (Marks, Alexander) |
| 05/16/2012 | ☐ 33<br>34 pg, 123.86 KB | Submitted brief by Alexander D. Marks for amicus Brady Center to Prevent Gun Violence, international Brotherhood of Police Officers, Major Cities Cheifs Association, National Association of Women Law Enforcement Executives, National Black Police Association, and Police Foundation. Consent from all parties contained within brief. [33] [6398617] [12-1788] (Marks, Alexander) |

Case: 1:10-cv-04184 Document #: 182-2 Filed: 05/21/12 Page 53 of 61 PageID #:8396

https://ecf.ca7.uscourts.gov/cmecf/servlet/TransportRoom

Clear All

⦿ **Documents and Docket Summary**
○ **Documents Only**

☑ **Include Page Numbers**

**Selected Pages:** 0     **Selected Size:** 0 KB     **(Max: 10 MB)**

View Selected

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 7th Circuit Court of Appeals - 05/17/2012 09:58:49 | | | |
| **PACER Login:** | cc0395 | **Client Code:** | 01-benson v. city-10c4184 |
| **Description:** | Docket Report (filtered) | **Search Criteria:** | 12-1788 |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

# Exhibit G

## UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

### ORDER

April 26, 2012

Before

FRANK H. EASTERBROOK, *Chief Judge*

| No.: 12-1269 | MICHAEL MOORE, et al.,<br> Plaintiffs - Appellants<br><br>v.<br><br>LISA MADIGAN and HIRAM GRAU,<br>Defendants - Appellees |
|---|---|
| No.: 12-1788 | MARY E. SHEPARD and ILLINOIS STATE RIFLE ASSOCIATION,<br>Plaintiffs - Appellants<br><br>v.<br><br>LISA MADIGAN, et al.,<br>Defendants - Appellees |

**Originating Case Information:**

District Court No: 3:11-cv-03134-SEM-BGC
Central District of Illinois
District Judge Sue E. Myerscough

**Originating Case Information:**

District Court No: 3:11-cv-00405-WDS-PMF
Southern District of Illinois
District Judge William D. Stiehl

- over -

The following are before the court:

1.     **MOTION TO CONSOLIDATE AND FOR EXTENSION OF TIME**, filed on
        April 23, 2012 in appeal 12-1269, by counsel for the appellees.

2.     **MOTION TO CONSOLIDATE AND FOR EXTENSION OF TIME**, filed on
        April 23, 2012 in appeal 12-1788, by counsel for the appellees.

**IT IS ORDERED** that the motions to consolidate are **DENIED**. Appellees do not need a
formal order of consolidation in order to file one brief addressing two appeals. They may
file one brief, or two, at their option.

**IT IS FURTHER ORDERED** that the motion for an extension of time is **GRANTED**, but
only until May 9, 2012 (in both appeals). This should allow enough time to prepare a single
brief covering the two cases. Appellees previously told the court that the two suits are
functionally identical. There is accordingly no need for time beyond the 30-day extension
already granted, and this one-week increment.

The court's last regular sitting of the current term is June 8, 2012. If the court were to delay
the appellees' briefs until June 1 or June 11 (the alternate dates appellees propose), that
would postpone oral argument until next September, an unnecessary delay. Appellees
must file their brief (or briefs) in both cases by May 9, and appellants their reply briefs by
May 23. That will permit oral argument the last week of May or the first full week of June.

Important Scheduling Notice !

   Notices of hearing for particular appeals are mailed shortly before the date of oral argument. Criminal appeals are scheduled shortly
   after the filing of the appellant's main brief; civil appeals after the filing of the appellee's brief. If you foresee that you will be
   unavailable during a period in which your particular appeal might be scheduled, please write the clerk advising him of the time period
   and the reason for such unavailability. Session data is located at http://www.ca7.uscourts.gov/cal/calendar.pdf. Once an appeal is
   formally scheduled for a certain date, it is very difficult to have the setting changed. See Circuit Rule 34(e).

form name: **c7_Order_3J**(form ID: **177**)

# Exhibit H

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ORAL ARGUMENT

May 9, 2012

| No.: 12-1788 | MARY E. SHEPARD and ILLINOIS STATE RIFLE ASSOCIATION, Plaintiffs - Appellants<br><br>v.<br><br>LISA MADIGAN, et al., Defendants - Appellees |
|---|---|

**Originating Case Information:**

District Court No: 3:11-cv-00405-WDS-PMF
Southern District of Illinois
District Judge William D. Stiehl

**IT IS ORDERED** that this case be orally argued on Friday, June 8, 2012, in the Main Courtroom, Room 2721 of the United States Court of Appeals for the Seventh Circuit, 219 South Dearborn Street, Chicago, Illinois, at 9:00 a.m.

Oral argument will be no more than 15 minutes for each side. Counsel are advised that the panel of judges assigned to oral argument may decide, after reading the briefs, that less time is required for oral argument.

**IT IS FURTHER ORDERED** that counsel notify the Calendar Clerk ( 312-435-5850 ) who will present oral argument by completing the oral argument confirmation form and filing an electronic copy of the completed form through the Electronic Case Filing (ECF) System. Notice of this case entry must be received in the clerk's office no later than 5 business days prior to the scheduled argument date.

Copies of this notice have been sent to counsel of record.

**NOTE:**Any request for waiver or postponement of a scheduled oral argument must be made by formal motion, with proof of service on all other parties and must be received by the court within five (5) calendar days from the date at the top of this notice. Postponement will be granted only in extraordinary circumstances. See Circuit Rule 34(e).

NOTE
Please review the attached "Special Notice to Counsel Who Will Present Oral Argument" for important requirements and information about oral argument in the Court of Appeals.

form name: **c7_NoticeOfOralArg**(form ID: **156**)

**SPECIAL NOTICE TO COUNSEL WHO WILL PRESENT ORAL ARGUMENT**

1. The Clerk's office will contact counsel for all parties via email to confirm oral argument. This confirmation will occur approximately 7 days before the scheduled argument date. **Counsel must respond to this email within two days** to verify that he or she will be appearing to present oral argument. Counsel for **appellants** must also advise the calendar clerk how much of your allotted time is to be reserved for rebuttal.

Because the clerk must provide this information in advance to the panel of three judges who will hear oral arguments, failure to notify the calendar clerk of the time to be reserved will result in **no** officially reserved time for rebuttal. Counsel for the appellee does not receive the opportunity for rebuttal. Whenever more than one attorney will share the total time allotted for oral argument by a "side" the sequence of argument and the amount of time each attorney is to speak (to be arrived at by the consensus between or among counsel) must also be provided to the calendar clerk.

2. Every attorney who will present oral argument must be admitted to practice in this court. Lead counsel must be admitted to the Bar of this court within 30 days of the appeal's docketing. Circuit Rule 46(a). Government attorneys are exempted from this requirement by Circuit Rule 46(c).

3. Counsel presenting oral argument to the court must be seated at the appropriate counsel table when the case is called for oral argument. When facing the bench, appellant's counsel is seated to the left, appellee's counsel to the right. Counsel should remain seated at counsel table during their opponent's entire argument.

4. Because oral arguments occasionally end before their allotted time expires, counsel are expected to be in the courtroom during the argument of the case immediately preceding theirs. To allow a prompt transition between arguments, counsel for the next scheduled case should be seated in the front row of the public gallery, if possible. Please be prepared to move to the appropriate counsel table for the commencement of your argument.

5. Please be advised that the judges have read the briefs, and proceed accordingly in planning your oral argument. Lengthy expositions of the facts should be avoided, unless requested by the court.

6. The podium is equipped with three lights: white, yellow and red. The courtroom deputy clerk will activate the white light when an appellant is entering the time reserved for rebuttal or when an appellee has five minutes remaining. The yellow light will indicate when one minute of an attorney's entire allotted time remains. The red light indicates that all of the time allocated to a side has expired or when an individual attorney's time has expired in an instance where more than one attorney is presenting oral argument for a

"side". When time expires, counsel should quickly finish their thought, but not continue argument beyond the allotted time unless instructed to do so by the court. Please do not use the court's time and your own by initiating your argument with a recitation of who will be splitting time with whom and/or how much time you have decided to reserve for rebuttal. The judges will already have this information.

7. Counsel presenting oral argument must sign in at the clerk's office at least 15 minutes prior to their scheduled time. Please read the bulletin board located in the hallway by the entrance to the main courtroom for additional information regarding oral arguments. The panel of judges and the order of cases to be argued that day are posted by 9:00 a.m. each morning the court is in session.

8. Appropriate attire for counsel is conservative business dress in traditional dark colors (e.g., navy blue or charcoal gray).

9. All cellular telephones and pagers must be set to silent mode. Cameras in phones, personal digital assistants, and portable computers must be turned off. Counsel may use portable computers and smartphones in the courtroom and lawyers' room but must ensure that they do not make any noise. The wi-fi network in the courtroom is not available to counsel, but data connections over cellular networks are allowed.

10. The Court is handicapped accessible. Anyone needing special accommodations should call the clerk's office.

Thank you for your cooperation.
Gino J. Agnello, Clerk of the Court

Rev. 7/09 AK

It is important that you arrive EARLY to the courthouse, due to security screening. You will be required to present photoidentification to court security personnel upon entering the lobby of the building.

Thank you,
U.S. Court of Appeals