IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS ASSOCIATION OF FIREARMS ) <br> RETAILERS, KENNETH PACHOLSKI, ) <br> KATHRYN TYLER, and MICHAEL HALL, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE CITY OF CHICAGO and RAHM ) <br> EMANUEL, Mayor of the City of Chicago, ) <br> ) <br> Defendants. ) | No.10 CV 4184 <br><br> Judge Edmond E. Chang |

### DEFENDANTS' RESPONSE TO
### PLAINTIFFS' LOCAL RULE 56.1(a)(3) STATEMENT OF MATERIAL FACTS

Defendants City of Chicago and Mayor Rahm Emanuel, by and through their attorney, Stephen R. Patton, Corporation Counsel, hereby submit, pursuant to Local Rule 56.1(b)(3), their response to Plaintiffs' Local Rule 56.1(a)(3) Statement of Material Facts.

### PARTIES

1. Plaintiffs Kenneth Pacholski and Kathryn Tyler, husband and wife, are residents of Chicago, Illinois and citizens of the United States. Exhibit 41 ¶¶ 1-2 (Tyler Decl.); Exhibit 42 ¶¶1-2 (Pacholski Decl.). They reside at 2620 West Jerome Street. Exhibit 41 ¶ 2 (Tyler Decl.); Exhibit 42 ¶ 2 (Pacholski Decl.). Pacholski owns and operates an aircraft restoration business. Exhibit 42 ¶ 3 (Pacholski Decl.). Tyler is a veterinarian and the co-owner of the Uptown Animal Hospital, a veterinary clinic located at 5545 North Clark Street in Chicago. Exhibit 41 ¶ 3 (Tyler Decl.).

**RESPONSE**: Undisputed.

2. Plaintiff Michael Hall is a resident of Chicago, Illinois and a citizen of the United

States. Exhibit 1 ¶ 1 (Hall Decl.). He resides at 11254 South Bell Avenue with his wife and sixteen-year-old son (he has three older children who currently do not live at home). *Id.* ¶ 2. He works in the telecommunications industry. *Id.* ¶ 3.

**RESPONSE**: Undisputed.

      3.      Plaintiff Illinois Association of Firearms Retailers (ILAFR) is a membership organization. Exhibit 78 ¶ 2 (O'Daniel Decl.). It is a not-for-profit corporation organized under the laws of Illinois. *Id*.

**RESPONSE**: Undisputed.

      4.      Defendant City of Chicago is a municipal corporation existing under the laws of Illinois. Defendant Rahm Emanuel is the Mayor of Chicago. *See* Chicago Statement of Fact 1.

**RESPONSE**: Undisputed.

## JURISDICTION AND VENUE

      5.      Plaintiffs' Second Amended Complaint seeks redress for alleged violations of the Second and Fourteenth Amendments to the United States Constitution. This court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district and a substantial part of the events giving rise to the Plaintiffs' claims occurred in this district.

**RESPONSE**: Undisputed.

## FACTS

      6.      Pacholski, Tyler, and Hall are licensed to possess firearms by the State of Illinois and the City of Chicago. Exhibit 42 ¶ 4 (Pacholski Decl.); Exhibit 41 ¶ 4 (Tyler Decl.); Exhibit 1 ¶ 4 (Hall Decl.). Each has thus demonstrated the ability to use firearms safely and effectively

by completing successfully at least one firearms safety and training course. *See* Exhibit 42 ¶ 5 (Pacholski Decl.); Exhibit 41 ¶5 (Tyler Decl.); Exhibit 1 ¶¶ 3-4 (Hall Decl.); MCC 8-20-120(a)(7).

**RESPONSE**: Undisputed, except that Defendants dispute the assertion that Plaintiffs have "demonstrated the ability to use firearms safely and effectively." That assertion is argumentative and is not supported by the cited materials. The cited materials establish only that Plaintiffs received the required instruction and successfully completed training courses. *See also* Defendants' March 2, 2012 Statement of Material Facts ("SOF"), ¶ 19 (acknowledging that accidental shooting may take place).

7.  Pacholski is a gun collector, and he owns 18 firearms that are registered with the City of Chicago and that he keeps in his home. Exhibit 42 ¶ 4 (Pacholski Decl.); Exhibit 43 at 54-55, 85 (Pacholski Dep.). Because of Chicago's one-operable-firearm limit, he keeps only one firearm, a Springfield Armory XD40 handgun, in operable condition. Exhibit 42 ¶ 6 (Pacholski Decl.).

**RESPONSE**: Defendants do not dispute the first sentence. Defendants dispute the assertion in the second sentence that Pacholski keeps the handgun in operable condition. Pacholski testified that he uses trigger locks on all of his guns. Def. Ex. 2 (Pacholski Dep.) at 165:20-23, 168:16-169:4.[1]

8.  Pacholski has a Florida concealed carry permit that, through operation of

---

[1] Defendants' Exhibits 1 - 90 were previously filed with Defendants' March 2 summary judgment submission. Defendants' Exhibits 91 - 110 were previously filed with Defendants' June 29 summary judgment submission. Defendants' Exhibits 111 - 113 are being filed as exhibits to the instant document.

reciprocity rules, entitles him lawfully to carry a concealed firearm in many states. Exhibit 42 ¶ 4 (Pacholski Decl.); Exhibit 43 at 39 (Pacholski Dep.).

**RESPONSE**: Defendants do not dispute that Pacholski has a Florida concealed carry permit, but Defendants dispute that this permit entitles him to lawfully carry a concealed firearm in many other states, as the cited materials do not properly establish the foundation of that legal opinion.

9. But for the one-operable-firearm limit, Pacholski would keep at least two operable firearms in different locations in his home to provide him with an accessible means of defense in case of criminal attack. Exhibit 42 ¶ 6 (Pacholski Decl.); Exhibit 43 at 155-56 (Pacholski Dep.).

**RESPONSE**: Undisputed.

10. Pacholski also would sometimes carry a firearm for protection on his property outside of the four walls of his home if not for Chicago's prohibition on such carriage. Exhibit 42 ¶ 7 (Pacholski Decl.). For example, if he saw Tyler being attacked while walking to their home from the detached, two-car garage on their property, he would like to be able to defend her with a firearm if necessary. *Id*. *See* also Exhibit 43 at 115-17 (Pacholski Dep.).

**RESPONSE**: Undisputed.

11. Pacholski currently has to travel outside of the City of Chicago to purchase firearms. Exhibit 42 ¶ 9 (Pacholski Decl.). He would like to be able to shop for firearms in the City, and he would shop for firearms more often if there was a gun store close to his home. *Id*.; Exhibit 43 at 52-54 (Pacholski Dep.). He would like for a gun store to open on his block, and if it had a range attached to it he would go twice a week. *Id*. at 192-93.

**RESPONSE**: Undisputed, except that Defendants dispute that the mere fact that a store is close to Mr. Pacholski's home would be reason enough for him to shop there. He testified that his

decision to patronize a particular store is influenced not only by the store's location, but also by the kinds of guns the store sells. Def. Ex. 111 (Pacholski Dep.) at 53:4-55:4.

12. Tyler owns a Makarov 9 mm handgun that is registered with the City and that she keeps in operable condition in her home. Exhibit 41 ¶ 4 (Tyler Decl.). She also owns a shotgun that is registered with the City and that she keeps inoperable in her home. *Id*.

**RESPONSE**: Undisputed.

13. Tyler would like to carry a firearm for protection on her property outside of the four walls of her home, and she would sometimes do so if it were lawful. *Id*. ¶ 6; *See also* Exhibit 12 at 52 (Tyler Dep.). For example, she would like to carry a gun for protection when gardening, particularly when Pacholski is not home. Exhibit 41 ¶ 6 (Tyler Decl.): *See* also Exhibit 12 at 78 (Tyler Dep.).

**RESPONSE**: Undisputed.

14. But for Chicago law, Tyler would also sometimes carry a handgun for protection at her veterinary clinic. Exhibit 41 ¶ 7 (Tyler Decl.). For example, she is notified when the clinic's alarm system is activated, and on at least one occasion the alarm has been activated at night and she has gone to the clinic alone to investigate. *Id*. Tyler would like to be able to have a handgun for protection in such situations. *Id*. *See also* Exhibit 12 at 140-45 (Tyler Dep.).

**RESPONSE**: Undisputed, except that Defendants dispute that Dr. Tyler would necessarily be able to bring a handgun to her clinic even if Chicago law allowed it. She testified that if her business partners objected to her bringing a gun to the clinic, "I would have to do what they want me to do." Def. Ex. 112 (Tyler Dep.) at 147:13-148:1.

15. Like Pacholski, Tyler would like to be able to keep more than one operable

firearm in their home, and she would do so if Chicago law did not prohibit it. Exhibit 41 ¶ 9 (Tyler Decl.). She keeps her handgun in the bedroom, and she is concerned about being able to access it if her home comes under attack while she is in a different part of the house. *Id*. *See also* Exhibit 12 at 94-95 (Tyler Dep.).

**RESPONSE**: Undisputed.

   16. If lawful, Pacholski and Tyler sometimes would possess a firearm as a guest on another person's property, with the property owner's permission. *See* Exhibit 42 ¶ 8 (Pacholski Decl.); Exhibit 41 ¶ 8 (Tyler Decl.). And they would like to be able to permit housesitters to bring a firearm to their home for protection. *See* Exhibit 42 ¶ 8 (Pacholski Decl.); Exhibit 41 ¶ 8 (Tyler Decl.).

**RESPONSE**: Undisputed, except that, as to the second sentence, the cited materials establish only that Pacholski and Tyler would invite housesitters to bring a firearm to their home for the housesitters' (and not for Pacholski and Tyler's) protection.

   17. Tyler enjoys shopping for guns, and she would do so more often if gun stores were lawful in the City of Chicago, particularly if a gun store opened nearby her home. Exhibit 41 ¶ 10 (Tyler Decl.). It would be "like heaven on earth" if a gun store were to open on her block. Exhibit 12 at 165 (Tyler Dep.); *See also id*. at 93.

**RESPONSE**: Undisputed, except that, as to the second sentence, the statement amounts to Dr. Tyler's opinion and is not an independent, objective fact.

   18. While serving as a Corpsman in the Marine Corps, Hall earned "expert" ratings for his firearms marksmanship. Exhibit 1 ¶ 3 (Hall Decl.); Exhibit 69 at 18-20 (Hall Dep.). He keeps two firearms in his home, a Stoeger Cougar 9 millimeter handgun and a Remington 12-

gauge shotgun. Exhibit 1 ¶ 4 (Hall Decl.). Both weapons are registered with the City of Chicago. *Id.*

**RESPONSE**: Undisputed.

19. But for Chicago law prohibiting it, Hall would sometimes carry a firearm for protection on his property outside of the four walls of his home. *Id.* ¶ 5. Chicago's prohibition on such carriage impairs Hall's ability to protect himself and his family. *Id.* People in his neighborhood have been killed on their own balcony; vehicles parked in his driveway have been broken into on two separate occasions; and thieves have broken into his garage and attempted to steal his son's go-kart. *Id. See* also Exhibit 69 at 91-94, 108, 118-19, 235-37 (Hall Dep.).

**RESPONSE**: Undisputed, except that Defendants dispute that the inability to carry a firearm impairs Hall from being able to protect himself or his family, as other means of self-defense, or flight, remain available. *See* Pl. Ex. 69, at 92:22-93:21; Defendants' June 29, 2012 Reply to Plaintiffs' Statement of Additional Facts ("RAF"), ¶ 12.

20. If it were lawful, Hall would sometimes possess a firearm as a guest on another person's property. Exhibit 1 ¶ 6 (Hall Decl.). For example, he would like to be able to help if a law-abiding friend or neighbor felt threatened and asked him to come over with a gun. *Id.* Chicago law, however, prohibits him from doing so. *Id.*

**RESPONSE**: Defendants do not dispute the second and third sentences. Defendants dispute the first sentence as lacking adequate foundation, as the cited material does not establish that any person exists who desires Hall to possess a firearm as a guest on that person's property.

21. Hall would shop for firearms in Chicago if gun stores were lawful in the City. Exhibit 1 ¶ 7 (Hall Decl.); Exhibit 69 at 248 (Hall Dep.).

**RESPONSE**: Undisputed.

22. ILAFR's purpose is to promote the interests of the firearm retail industry in Illinois and the Second Amendment rights of its members and their customers. Exhibit 78 ¶ 3 (O'Daniel Decl.); Exhibit 79 at 21-22, 74-75 (O'Daniel Dep.).

**RESPONSE**: Undisputed.

23. ILAFR has members who desire to sell firearms within the City of Chicago and who would do so but for the City's ban on gun sales. Exhibit 78 ¶ 6 (O'Daniel Decl.); Exhibit 79 at 83-86, 115 (O'Daniel Dep.).

**RESPONSE**: Defendants do not dispute that ILAFR has members who desire to sell firearms within Chicago. Defendants dispute that these members would in fact do so if Chicago's ban on gun sales were removed. These members may "try" to open a store, Pl. Ex. 79, at 83:16-23, but they have not investigated the specifics of doing so, and it may be the case that they would not open a store even in the absence of a ban. *Id.* at 85:16-86:23.

24. William Campion is a member of ILAFR. Exhibit 80 ¶ 2 (Campion Decl.); Exhibit 81 at 50 (Campion Dep.). He was a police officer with the City of Chicago Police Department for 31 years, and he was at one time a licensed firearms instructor. Exhibit 80 ¶ 3 (Campion Decl.); Exhibit 81 at 19, 22 (Campion Dep.). He is federally licensed to engage in the business of selling firearms and owns and operates a gun store on his property in Steward, Illinois. Exhibit 80 ¶ 3 (Campion Decl.); Exhibit 81 at 32-33, 39-41 (Campion Dep.).

**RESPONSE**: Undisputed.

25. If the City's ban on gun sales is struck down, Campion intends to sell firearms, ammunition, and accessories at sporting goods shows and/or gun shows in Chicago. Exhibit 80

8

¶ 4 (Campion Decl.); Exhibit 81 at 53-54 (Campion Dep.).

**RESPONSE**: Undisputed.

  26. Steven Elliot is the President of C&E Gun Shows, a Virginia-based company that organizes and promotes gun shows throughout the country. Exhibit 38 ¶ 2 (Elliot Decl.). He has personally organized thousands of shows and attended thousands more. *Id*. ¶ 3.

**RESPONSE**: Undisputed.

  27. Were it legal to sell firearms in Chicago, Elliot would organize and promote a gun show in the City. *Id*. ¶ 10.

**RESPONSE**: Disputed. Elliot testified in his deposition that "if I didn't think [the profit from a Chicago gun show] was going to be in the six figure range, I probably wouldn't be going up there." Def. Ex. 113 (Elliot Dep.), at 155:16-157:5.

  28. Vendors who make arrangements for a table in advance of a show organized by C&E Gun Shows are guaranteed a table at the show. *Id*. ¶ 6. A vendor generally will only be denied a table if the vendor's merchandise is insufficiently related to guns, ammunition, hunting, etc. (e.g., if the vendor wants to sell Beanie Babies), if C&E Gun Shows has had a problem with the vendor in the past, or if there is not room for an additional vendor. *Id*.

**RESPONSE**: Undisputed.

              Respectfully submitted,

              STEPHEN R. PATTON
              Corporation Counsel
              City of Chicago

By: /s/Andrew Worseck
One of Its Attorneys

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William M. Aguiar
Rebecca A. Hirsch
City of Chicago, Department of Law
Commercial & Policy Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-9018/ 744-6975/ 744-7129 / 744-4216 / 742-0260

10

## CERTIFICATE OF SERVICE

 The undersigned, an attorney of record for the Defendants, hereby certifies that on July 30, 2012, he served a copy of the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFFS' LOCAL RULE 56.1(a)(3) STATEMENT OF MATERIAL FACTS**, on the parties listed below by electronic means pursuant to Electronic Case Filing (ECF):

Charles J. Cooper
David H. Thompson
Peter Patterson
Cooper & Kirk, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036

Stephen Kolodziej
BRENNER FORD MONROE & SCOTT LTD.
33 N. Dearborn Street, Suite 300
Chicago, IL 60602

        /s/ Andrew Worseck