**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ILLINOIS ASSOCIATION OF ) | | |
| FIREARMS RETAILERS, ET AL., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | No. 10-CV-4184 | |
| ) | Judge Edmond E. Chang | |
| CITY OF CHICAGO, ET AL., ) | Magistrate Judge Geraldine Soat | |
| ) | Brown | |
| Defendants. ) | | |

## DEFENDANTS' MOTION TO CITE ADDITIONAL AUTHORITY

Defendants City of Chicago and Mayor Rahm Emanuel ("Defendants" or "Chicago"), by their attorney, Stephen R. Patton, Corporation Counsel of the City of Chicago, hereby move for leave to cite *Kachalsky v. County of Westchester*, __ F.3d __, 2012 WL 5907502 (2nd Cir. Nov. 27, 2012), and *Jackson v. City and County of San Francisco*, No. C 09-2143 (N.D. Cal. Nov. 26, 2012), as additional authority in support of their Motion for Summary Judgment. These recent decisions are attached hereto respectively as Exhibits A and B. In support of this motion, Chicago states as follows:

**A.** *Kachalsky v. County of Westchester.*

1. *Kachalsky* upheld New York state restrictions on the carrying of handguns in public. New York generally prohibits citizens from carrying handguns in public at all if the handgun is carried openly, and prohibits the concealed carrying of handguns without a license. Exhibit A at *3. One of the requirements for a license to carry concealed for self defense is that the applicant demonstrate "proper cause." *Id.* at *3 (discussing N.Y. Penal Law § 400.00(2)(f)).

This requires the applicant to show "a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession." *Id.* at *3. Simply "desir[ing] to carry a concealed weapon to protect one's person and property," or living or working in a "high crime area," is not enough. *Id.* at *3. The "rigorous" application process is administered locally, and licensing officers have "considerable discretion" to decide whether proper cause exists. *Id.* at *4. Each plaintiff's application was denied for failing to "demonstrat[e] a need for self-protection distinguishable from that of the general public." *Id.* at *4.

      2.     *Kalchalsky* bears upon this case in three important respects. First, the court found that intermediate scrutiny applied. The court "assum[ed]" (but did not decide) that the Second Amendment has some reach outside the home, *id.* at *5, 8, but concluded that strict scrutiny did not apply because carrying guns outside the home "falls outside the core" of the Second Amendment. *Id.* at *9. While "the Second Amendment's core concerns are strongest inside hearth and home . . . states have long recognized a countervailing and competing set of concerns with regard to handgun ownership and use in public." *Id.* at *11. Thus, even though New York's law "places substantial limits on the ability of law-abiding citizens to possess firearms for self-defense in public," *id.* at *8, intermediate scrutiny was appropriate "[b]ecause our tradition so clearly indicates a substantial role for state regulation of the carrying of firearms in public." *Id.* at *11. *See also id.* at *10-11 (discussing robust historical tradition of vigorous regulation of gun carrying outside the home). This analysis tracks and supports Chicago's argument here that, if the Second Amendment has any application outside the home, then intermediate scrutiny should be used to evaluate Chicago's proscriptions on carrying firearms outside the home in

MCC 8-20-020 and 8-20-030. *See* Defendants' Memorandum in Support of Their Motion for Summary Judgment ("Def. Mem.") [Dkt. No. 158] at 10-11.

3. Second, and again echoing Chicago's arguments here (*see* Def. Mem. at 15-20), the court found that New York's law satisfied intermediate scrutiny because New York has a substantial interest in public safety and crime prevention, and that the law is substantially related to this interest. *See* Exhibit A at *11-13. Notably, the court dismissed the argument (also made by Plaintiffs here) that the law was faulty because "the need for self-defense may arise at any moment without prior warning." *Id.* at *15. Even though that proposition may be "[t]rue enough," *id.*, the court nonetheless upheld the law because New York was entitled to determine that restricting carrying "is in the best interest of public safety and outweighs the need to have a handgun for an unexpected confrontation." *Id.*

4. Third, the court agreed with Chicago's argument here (*see* Def. Mem. at 12-15) that "substantial deference to the predictive judgments of the legislature is warranted" under the Second Amendment, even if a plaintiff submits data or studies that purport to conflict with a government's factual submission. Exhibit A at *12. The court acknowledged "the existence of studies and data challenging the relationship between handgun ownership by lawful citizens and violent crime." *Id.* at *13. On the other hand (and like Chicago here), "New York also submitted studies and data demonstrating that widespread access to handguns in public increases the likelihood that felonies will result in death and fundamentally alters the safety and character of public spaces." *Id.* The court concluded that "[i]t is the legislature's job, not ours, to weigh conflicting evidence and make policy judgments." *Id.* "In the context of firearm regulation, the legislature is far better equipped than the judiciary to make sensitive policy judgments (within

3

constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks." *Id.* at *12.

**B.** *Jackson v. City and County of San Francisco.*

5. In *Jackson*, the court denied the plaintiffs' request for a preliminary injunction against two provisions of the San Francisco Police Code: (1) Section 4512, which governs handguns in the home, and requires residents "to apply trigger locks or to store such weapons in locked containers when not carried on their persons," and (2) Section 613.10(g), which prohibits the sale of certain dangerous ammunition in city limits. Exhibit B, at 2.[1] The court found that plaintiffs failed to show a likelihood of success on the merits of their claim that these laws violate the Second Amendment. *Id.* at 2. Three features of *Jackson* bear upon this case.

6. First, the court applied the "substantial burden" standard to both provisions, finding that "only regulations which substantially burden the right to keep and bear arms trigger heightened scrutiny." *Id.* at 6-7. This supports Chicago's argument here that its safe storage regulation (MCC 8-20-040) and its restriction on gun sales in the City (MCC 8-20-100 & 4-144-010) should be evaluated under the undue burden standard. *See* Def. Mem. at 23-26, 37.

7. Second, as to San Francisco's safe storage law, the court found that the law did not pose a substantial burden on the right to keep and bear arms in the home. Exhibit B, at 7-8. The court explained that the law allows residents to "carry [their handguns] in their own homes at any time" and to "use them for self-defense." *Id.* at 7. This gives residents "the very set of

---

[1] The relevant text of Section 4512 states that "[n]o person shall keep a handgun within a residence owned or controlled by that person unless the handgun is stored in a locked container or disabled with a trigger lock that has been approved by the California Department of Justice," but that this prohibition "shall not apply" when "[t]he handgun is carried on the person of an individual over the age of 18." Section 4512(a), (c)(1). *See* Exhibit C hereto.

rights the *Heller* plaintiff sought and obtained." *Id.* And the storage requirements did not pose a substantial burden because it is nothing more than a "possibility" that, "in a very narrow range of circumstances, the delay inherent in rendering a handgun operable or in retrieving it from a locked container theoretically could impair a person's ability to employ it successfully in self-defense." *Id.* at 8. This reasoning applies directly to MCC 8-20-040. Indeed, in prohibiting the keeping of even one operable handgun unless carried on the person, the San Francisco law is *more* restrictive than Chicago's law, which allows one operable handgun to be kept ready at all times, even if not carried on the person. Since San Francisco's safe storage law does not impose a substantial burden, it follows *a fortiori* that Chicago's does not. Moreover, even if San Francisco's law did impose a substantial burden and therefore warrant heightened scrutiny, the court found that the plaintiffs failed to show that the law was "overreaching or improper in any way," and that San Francisco demonstrated that the law served a legitimate governmental interest by preventing gun accidents. *Id.* at 8. All of this can be said about Chicago's law, which also serves additional legitimate interests. *See* Def. Mem. at 40-44.

8. Third, as to San Francisco's ban on the sale of dangerous ammunition within city limits, the court concluded that even if the Second Amendment protected the right to possess and use the particular types of ammunition at issue, the plaintiffs failed to show "that prohibiting sales of such ammunition within City limits imposes a substantial burden on their ability to acquire it." Exhibit B, at 7. The court concluded that "when deciding whether a restriction on gun sales substantially burdens Second Amendment rights, we should ask whether the restriction leaves law-abiding citizens with reasonable alternative means for obtaining firearms sufficient for self-defense purposes" and that "a law does not substantially burden a constitutional right

5

simply because it makes the right more expensive or more difficult to exercise." Exhibit B, at 7 (quoting *Nordyke v. King*, 644 F.3d 776, 787-88 (9th Cir. 2011), reheard *en banc*, 681 F.3d 1041 (9th Cir. 2012)). Chicago has advanced this exact reasoning with respect to its restriction on gun sales in the city and demonstrated that it does not substantially burden the ability of law-abiding Chicago residents to lawfully obtain guns outside Chicago. *See* Def. Mem. at 25-27.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants respectfully request that the Court grant Defendants leave to cite, and take notice of, *Kachalsky v. County of Westchester*, __ F.3d __, 2012 WL 5907502 (2nd Cir. Nov. 27, 2012), and *Jackson v. City and County of San Francisco*, No. C 09-2143 (N.D. Cal. Nov. 26, 2012), as additional authority in support of Defendants' Motion for Summary Judgment.

Dated: November 30, 2012

Respectfully submitted,

STEPHEN R. PATTON
CORPORATION COUNSEL
CITY OF CHICAGO

BY: /s/ Andrew Worseck
One of Its Attorneys

Mardell Nereim
Andrew W. Worseck
William M. Aguiar
Rebecca Alfert Hirsch
Constitutional & Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, IL 60602
(312) 744-9010