**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ILLINOIS ASSOCIATION OF** | ) | |
| **FIREARMS RETAILERS, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-CV-4184** |
| | ) | **Judge Edmond E. Chang** |
| **CITY OF CHICAGO, ET AL.,** | ) | **Magistrate Judge Geraldine Soat** |
| | ) | **Brown** |
| **Defendants.** | ) | |


**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL**
**BRIEF ON THE SEVENTH CIRCUIT'S DECISION IN *MOORE***
**_AND SHEPARD V. MADIGAN_ (DEC. 11, 2012)**


Defendants City of Chicago and Mayor Rahm Emanuel ("Defendants" or "Chicago"), by

their attorney, Stephen R. Patton, Corporation Counsel of the City of Chicago, hereby submit,

pursuant to the Court's December 18, 2012 order, their response to Plaintiffs' Supplemental

Brief on the Seventh Circuit's Decision in *Moore and Shepard v. Madigan* (Dec. 11, 2012) ("Pl.

Mem.").[1]

**I.      *Moore* Does Not Address The Historical Scope Question In This Case.**

Plaintiffs err in treating *Moore* as having ruled that – in Chicago – the scope of the

Second Amendment covers the carrying of guns outside the home.  *See* Pl. Mem. at 3-5.  This

stretches *Moore* too far and neglects critical context.  The statute before the court in *Moore* was a

state-wide ban, not a localized urban restriction.  *Moore* therefore did not have occasion to

---

[1] On January 8, the Illinois Attorney General filed a petition for rehearing in *Moore* &
*Shepard*.  *See, e.g.*, Seventh Circuit Case No. 12-1269, Dkt. No. 54.  Chicago has filed an *amicus*
brief in support of the petition.  *See id.*, Dkt. No. 59.

answer whether, in cities, the Second Amendment applies outside the home. This distinction is

important because determining the Second Amendment's application in a given case "requires a

textual and historical inquiry" into how the right to keep and bears arms was understood at the

time of ratification. *Ezell v. City of Chicago*, 651 F.3d 684, 701 (7th Cir. 2011). Answering that

question requires sensitivity to the particular conduct impacted by the regulation at issue in the

case and a precise analysis of whether that conduct has historically been understood as protected.

*See, e.g.*, *District of Columbia v. Heller*, 554 U.S. 570, 576-605 (2008); *Ezell*, 651 F.3d at 704-

06. Accordingly, just as *Heller* was "not a comprehensive code" and "left open" what other

protections exist under the Second Amendment," *United States v. Skoien*, 614 F.3d 638, 640 (7th

Cir. 2010) (*en banc*), so too does *Moore* leave open whether, as originally understood, the

Second Amendment protects the carrying of guns for self-defense outside the home in cities.

In this case, the historical record shows that carrying in cities is not protected. *See*

Defendants' Memorandum in Support of Their Motion for Summary Judgment ("Def. Mem.")

[Dkt. No. 158] at 6-10; Defendants' Memorandum in Response to Plaintiffs' Motion for

Summary Judgment and in Reply in Support of Defendants' Motion for Summary Judgment

("Def. Reply") [Dkt. No. 186] at 24-27. And it is not arbitrary for Chicago to be free to restrict

carrying while a state like Illinois is not. The difference flows from the historically-recognized

fact that carrying in cities presents unique dangers that do not exist to the same degree – if at all –

in non-urban areas. *See id.* This history allows cities to restrict carrying even if the need for self-

defense can arise outside the home or be generally "impli[ed]" from *Heller*. *Moore v. Madigan*

and *Shepard v. Madigan*, __ F.3d __, 2012 WL 6156062 (7th Cir. Dec. 11, 2012) ("*Moore*"), at

*2. That a Chicago resident may need to defend himself outside the home is not a 21st-century

phenomenon; certainly the Framers were aware that denizens of pre-Founding English or Founding-era American cities could be victimized outside the home too. But our forebearers decided that, in cities, society's overall interest in public safety can outweigh this individualized interest, and that cities should have the freedom to restrict carrying when, in their judgment, it does.[2]

## II.    Chicago's Carry Restriction Satisfies Any Form Of Scrutiny.

If, contrary to the historical record, the Second Amendment is found to protect the carrying of guns outside the home in cities, Chicago's carry restriction should still be sustained because it is a critical tool in Chicago's efforts to combat violent crime and injury, as shown by Chicago's extensive record in this case. *Moore* did not address – much less reject – Chicago's justifications here, and Plaintiffs' efforts to find a foothold in *Moore* all fall flat.

Plaintiffs first argue that Chicago's carry restriction is subject to the "exacting" level of scrutiny described in *Moore. See* Pl. Mem. at 5-6. Chicago has already shown why this is not the case. *See* Defendants' Memorandum Addressing *Moore v. Madigan* [Dkt. No. 207] ("Def. *Moore* Mem.") at 6-7. And, even if the scrutiny described in *Moore* (which is essentially the scrutiny set forth in *Ezell*) did apply to Chicago's carry restriction, Chicago would still satisfy it. *See id.* at 7-8.

Plaintiffs then assert that *Moore* found that Illinois failed to justify its ban, and cite in

_____

[2]  Even if *Moore* can be read as concluding that the Statute of Northampton (and *Sir John Knight's Case* interpreting it) prohibited carrying only to the extent that it was done in certain ways or involved certain weapons that "terrif[ied] the public," *Moore*, 2012 WL 6156062, at *3, *Moore* did not purport to address, much less refute, the historical evidence showing that – in cities – the carrying of firearms was viewed as inherently dangerous or terrifying. *See* Def. Reply at 25-26.

3

particular Dr. Cook's article, *Gun Control After* Heller*: Threats and Sideshows from a Social Welfare Perspective*, 56 UCLA L. Rev. 1041 (2009), as showing that the public safety impact from increased carrying on a state-wide basis in Illinois would likely not be large. *See* Pl. Mem. at 7. This is neither here nor there. Chicago defends its restriction with a record very different from that presented by Illinois in *Moore*, one that is tailored to, and a demonstrates a "pragmatic" response to, the gang and gun-violence problem unique to Chicago. And, as to Dr. Cook's article, Chicago has explained that it does not bear upon the question here – *i.e.*, whether precluding carry in Chicago helps combat violent crime and injury – because the carrying it addressed took place largely in rural and suburban communities. *See* Def. *Moore* Mem. at 4.

Next, Plaintiffs argue that because *Moore* found that a state-wide ban on carrying in public is unconstitutional, a restriction on carrying on private property outside the home in Chicago must also fall. *See* Pl. Mem. at 8-9. But Plaintiffs do not point to language in *Moore* saying this, nor could they, since *Moore* did not address carrying on private residential property. Plaintiffs instead largely rehash arguments from their prior summary judgment briefs that the private spaces covered by Chicago's restriction are properly thought of as part of the "home." Chicago has already refuted those arguments by demonstrating that, given Chicago's compact plot sizes and neighborhoods, and the way that guns can be carried and abused in the private spaces outside the home, these places are qualitatively the same as conventionally "public" areas when it comes to gun violence. *See* Def. Mem. at 15-21.

The only new argument that Plaintiffs raise (one that they could have raised during summary judgment briefing) is that the spaces on one's land outside the home cannot be treated as public because, unlike in a public space, the individual owner has the right to exclude others.

4

*See* Pl. Mem. at 9. But they cite no authority for the idea that property law concepts dictate whether a firearms regulation rises or falls under the Second Amendment. Indeed, *Moore* requires that a government's response to gun violence be "pragmatic," and a pragmatic response to Chicago's gun crime epidemic is one that acknowledges the very real facts of how guns are used in private spaces in Chicago. *Heller*, too, indicates that a right to exclude plays no role in delimiting the boundaries of lawful gun regulation: Surely the owner of a private school has a right to exclude others from the property, yet "laws forbidding the carrying of firearms" in schools are "presumptively lawful." *Heller*, 554 U.S. at 626-27 & n.26.

Finally, Plaintiffs address Chicago's restriction on handguns in a place of business and on possessing guns in the home of another. Pl. Mem. at 10-12. But, again, they rehash previously-made arguments. As to a place of business, Chicago has already explained that restricting handguns in the workplace does not burden self-defense and that, even if it did, Chicago's restriction is justified. *See* Def. Mem. at 21-22; Def. Reply at 38. Indeed, *Moore* supports Chicago's argument that handguns can be restricted in the workplace even if handguns are protected in the home under *Heller*. *Moore* teaches that as to bans on guns in "particular places, such as public schools," the state "doesn't need to prove so strong a need" for the ban. *Moore*, 2012 WL 6156062, at *7. *See also Heller*, 554 U.S. at 626-27 & n.26 ("laws forbidding the carrying of firearms in sensitive places such as schools and government buildings" are "presumptively lawful"). Yet schools and government buildings are workplaces, and their employees can be victimized. Accordingly, if it is permissible to ban all guns in these workplaces notwithstanding an employee's self-defense interest, it must also be permissible to restrict guns in other workplaces (such as Dr. Tyler's veterinarian clinic). Plaintiffs offer no

reason for treating the two scenarios differently. And by allowing long guns in the workplace when it could ban all guns, Chicago actually permits more gun carrying than is required under the Second Amendment.

Further, Plaintiffs are wrong that Chicago's law fails because a place of business is one's "own private property" and not "a public thoroughfare." Pl. Mem. at 11. Most of the tens of thousands of employees in the Loop do not own the high-rises they work in, nor do most employees of the myriad small shops that permeate Chicago's neighborhoods. And many privately-owned workplaces are hardly shuttered enclaves. Indeed, healthy public foot traffic is the life-blood of most businesses. *Cf.* Def. Mem. at 22.

As to Chicago's restriction on guns in the home of another, Plaintiffs' argument is essentially that, regardless of whether one's home is deemed private or public, Chicago cannot justify its law. *See* Pl. Mem. at 12. To the contrary, Chicago has amply justified its restriction. Even if some Second Amendment protection extends to invitees in the home of another, Chicago has shown that allowing invitees to have guns would increase the number of guns in a home (which, in turn, increases the risk of violent injury or death) and would allow evasion of the CFP requirement. *See* Def. Mem. at 22-23; Def. Reply at 39-40. Illinois' showing in *Moore* had nothing to do with these issues, and *Moore*'s rejection of that showing therefore has no bearing on the viability of Chicago's showing here. And, for the same reasons discussed above regarding Plaintiffs' invocation of property law, a heightened showing is not required here on the ground that the owner has a wide property-right berth to dictate what happens on his land.

## III. Chicago's Gun Sales and Safe Storage Regulation Are Valid.

As to Chicago's regulations governing the acquisition of firearms and the safe storage of

6

firearms in the home, Plaintiffs first contend that *Moore* confirms that 1791 is the relevant year for determining the Second Amendment's meaning. Pl. Mem. at 12. But Chicago has never quarreled with this. And Chicago has shown that a law like its local gun acquisition regulation would not have concerned the Framers and that Plaintiffs' historical evidence addresses an entirely different fear: colonial disarmament by England. Def. Reply at 6-7. Similarly, regulations of the storage of firearms inside the home, even if they prevented a gun from being ready-to-use, were common in the Founding-era. *See* Def. Mem. at 38-39.

Next, Plaintiffs argue that the regulations are subject to the stronger-than-*Skoien* scrutiny discussed in *Moore* because, like the Illinois law at issue in *Moore*, they impact all law-abiding adults of the relevant jurisdiction. *See* Pl. Mem. at 13. But these regulations differ from Illinois' carry ban because they merely regulate, rather than prohibit, protected conduct. If some form of scrutiny is required, it should be the undue burden standard, or – at most – intermediate scrutiny. *See Moore,* 2012 WL 6156062, at \*7 (where there is "a lesser burden, the state doesn't need to prove so strong a need"). *See also* Def. Mem. at 23-27, 37-40; Def. Reply at 7-10, 40-41.

Finally, Plaintiffs summarily assert that Chicago's regulations cannot satisfy any form of heightened scrutiny because Chicago's evidence is weaker than Illinois' evidence in *Moore*. *See* Pl. Mem. at 13. But, just as it did not examine Chicago's carry evidence, *Moore* did not assess, much less reject, Chicago's evidence supporting its acquisition and safe store regulations. That evidence abundantly justifies the regulations. *See* Def. Mem. at 27-37, 40-44; Def. Reply at 10-23, 41-44.

## IV.    A Hearing Could Be Necessary In This Case.

Plaintiffs contend that no evidentiary hearing is required here because *Moore* indicates that

only legislative facts are relevant, and legislative facts do not require determination in a trial. *See* Pl. Mem. at 13-14. But *Moore* does not indicate that this is a rule for all such cases. Indeed, the statements in *Moore* cited by Plaintiffs were specific to the claims and record in that case. *See Moore*, 2012 WL 6156062, at *9 (there are no evidentiary issues "in these two cases"); *id.* (trial not required for "the challenged statutory provisions"). Further, the fault that *Moore* found with much of Illinois' evidence is that it simply failed to address the relevant issue; the question was not whether the evidence was reliable. *See Moore*, 2012 WL 6156062, at *4-6. Accordingly, no remand was necessary to test this evidence in discovery or trial.

An evidentiary hearing may indeed be unnecessary here: Chicago's evidence is reliable and of the sort routinely relied upon to sustain gun regulations. And, even as to evidence that is disputed by the Plaintiffs, a hearing is not necessary before Chicago can prevail, due to the considerable evidentiary latitude afforded to the government's submission under the Second Amendment. *See* Def. Mem. at 12-15; Def. Reply at 5. On the other hand, a trial would be necessary before Plaintiffs could prevail, since a victory for Plaintiffs could come only after finding that Chicago's evidence is completely without merit or reliability. *See* Def. Reply at 5.

## CONCLUSION

For the foregoing reasons, Chicago respectfully requests that the Court enter judgment in favor of Chicago and against Plaintiffs on all claims.

Dated: January 15, 2013        Respectfully submitted,

                                    STEPHEN R. PATTON
                                    CORPORATION COUNSEL
                                    CITY OF CHICAGO

                BY:    /s/ Andrew Worseck
                                  One of Its Attorneys

Mardell Nereim
Andrew W. Worseck
William M. Aguiar
Rebecca Alfert Hirsch
Constitutional & Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, IL 60602
(312) 744-9010

<u>**CERTIFICATE OF SERVICE**</u>

      The undersigned, an attorney of record for the Defendants, hereby certifies that on January 15, 2013, he served a copy of the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE SEVENTH CIRCUIT'S DECISION IN** ***MOORE*** <u>***AND SHEPARD V. MADIGAN***</u> **(<u>DEC. 11, 2012</u>)**, on the parties listed below by electronic means pursuant to Electronic Case Filing (ECF):

      Charles J. Cooper
      David H. Thompson
      Peter Patterson
      Cooper & Kirk, PLLC
      1523 New Hampshire Ave., NW
      Washington, DC 20036

      Stephen Kolodziej
      BRENNER FORD MONROE & SCOTT LTD.
      33 N. Dearborn Street, Suite 300
      Chicago, IL 60602

                                <u>/s/ Andrew Worseck</u>