# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL HALL and KATHRYN TYLER, | ) ) ) |
| Plaintiffs, | ) FILED: January 18, 2013 ) |
| v. | ) ) ) Civil Action No. ____ |
| THE CITY OF CHICAGO, | ) ) |
| Defendant. | ) ) ) |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiffs MICHAEL HALL and KATHRYN TYLER, by and through their attorneys, for their complaint against Defendant CITY OF CHICAGO, state as follows:

### INTRODUCTION

1. This is an action to vindicate the federal constitutional rights of residents of Chicago, Illinois, to bear arms, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution, which guarantee the right of law-abiding citizens to bear arms for their own lawful defense and for other lawful purposes.

2. The Supreme Court has unequivocally declared that the Second Amendment "guarantee[s] the individual right to possess *and carry*" arms. *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (emphasis added). In *McDonald v. City of Chicago*, 130 S. Ct. 3020, (2010), the Supreme Court made clear that, like other fundamental constitutional rights, the right to keep and bear arms is protected against infringement by state and local governments.

1

3. Most recently, the Seventh Circuit Court of Appeals made clear in overturning Illinois's ban on carrying firearms outside the home that "[t]he Supreme Court has decided that the [Second] [A]mendment confers a right to bear arms for self-defense, which is as important *outside* the home as inside." *Moore v. Madigan*, ___ F.3d ___, 2012 WL 6156062 at *9 (7th Cir. 2012) (emphasis added); *id.* at *2 ("A right to bear arms thus implies a right to carry a loaded gun outside the home.").

## PARTIES

4. Plaintiff Michael Hall ("Mr. Hall") is a resident of Chicago and a citizen of the United States.

5. Plaintiff Kathryn Tyler ("Dr. Tyler") is a resident of Chicago and a citizen of the United States.

6. Defendant City of Chicago is a political subdivision of the State of Illinois. The City of Chicago and its officers, agents, and employees will sometimes hereafter be referred to as "Defendant."

## JURISDICTION

7. Jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution of the United States, and under 28 U.S.C. § 1343(3) in that this action seeks to redress the deprivation, under color of law, of rights secured by the United States Constitution.

8. This action seeks relief pursuant to 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 1983 and 1988. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND

9. The City of Chicago impermissibly burdens the constitutional Second Amendment rights of individuals like Mr. Hall and Dr. Tyler and other law-abiding citizens by

prohibiting through various municipal code provisions the carrying of firearms outside their homes or fixed places of business. Specifically, MCC § 8-20-020(a) renders it "unlawful for any person to carry or possess a handgun, except when in the person's home." Section 8-20-030 renders it "unlawful for any person to carry or possess a long gun, except when in the person's home or fixed place of business." Section 8-20-010 defines "home" to mean "the inside of a person's dwelling unit which is traditionally used for living purposes, including the basement and attic" but specifically excludes "(i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas; or (iii) any dormitory, hotel, or group living, as that term is defined in section 17-17-0102-A." Section 8-20-140(a) makes it unlawful for a person to carry a firearm without a firearm registration certificate, and Section 8-20-180(c) provides that "[a] registration certificate shall only be valid for the address on the registration certificate"; "[e]xcept in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate." Thus, these provisions of the municipal code taken together impose a total ban in Chicago on possessing or carrying a handgun outside one's home (as that concept is narrowly defined), and only permit the carrying of a long gun outside one's home in one's fixed place of business. (Hereinafter these code provisions will collectively be referred to as "Chicago's Carrying Ban.")

    10.    For example, if an individual who owns a dog lived in a high crime neighborhood of Chicago and wished to carry a handgun for protection and self-defense while walking that dog around the block, he would be prohibited from doing so by Chicago's Carrying Ban. Likewise if an elderly women volunteering at a church within the Chicago city limits wished to carry a handgun for protection while performing volunteer duties, she would be unable to do so pursuant

to Chicago's Carrying Ban. Similarly, if a resident of Chicago owns his own business, such as a convenience store, in a dangerous neighborhood, the resident may not carry his firearm each day from his home to his business for purposes of self-protection. Nor may he possess a handgun at his place of business, even if he is disabled or otherwise incapable of operating a long gun. Nor can someone whose job requires him to travel throughout Chicago for work, including into or through areas of the City that experience high rates of crime – for example, a salesman required to visit clients throughout the City – carry his loaded handgun with him in his vehicle or outside of his vehicle for protection and self-defense due to Chicago's Carrying Ban.

11. Violation of these provisions of Chicago's municipal code is punishable by a fine of up to $5,000 for a first offense and up to 90 days incarceration. MCC §§ 8-20-300(a) & (b). A second offense is punishable with up to $10,000 in fines and by incarceration of up to six months. MCC § 8-20-300(b). Further, each day a violation exists constitutes a separate and distinct offense. MCC §§ 8-20-300(a) & (b).

12. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

13. The Fourteenth Amendment to the United States Constitution provides, in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

14. Because the Chicago municipal code provisions set forth above impermissibly burden and/or outright prohibit the right to carry handguns and other firearms in the City of

4

Chicago, they infringe on the right of the People, including Mr. Hall, Dr. Tyler, and other law-abiding citizens to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution and are thus null and void. *See Heller*, 554 U.S. 570; *McDonald*, 130 S.Ct. 3020; *Moore*, 2012 WL 6156062.

## FACTS

15. Plaintiff Michael Hall is over the age of 21, is married, has five children, and possesses a valid Illinois Firearms Owner Identification ("FOID") card. Like many Chicago residents, Mr. Hall is a law-abiding citizen and has no criminal record. Mr. Hall served four years as a corpsman with the Fleet Marine Corps where he received extensive weapons training, including an "expert" rating in firearms marksmanship. He has completed all of the required training (4 hours of classroom instruction and one hour of range training) required by the Chicago Municipal Code and has a current, valid Chicago Firearms Permit ("CFP").

16. Mr. Hall currently owns two firearms that are registered with the City of Chicago – a 9mm handgun and a 12-gauge shotgun.

17. Mr. Hall desires to be able to and, consistent with the decision in *Moore v. Madigan*, striking down Illinois's ban on public carriage, would carry arms for purposes of self- and family-defense on all parts of his property, including the curtilage of his home – his driveway, his garage, his porch, his yard – as well as in his neighborhood, and throughout the City of Chicago, but is prohibited from doing so by Chicago's Carrying Ban detailed above.[1] Mr. Hall is concerned with violent crime that has occurred in his neighborhood. For example, on

---

[1] The decision in *Moore v. Madigan*, 2012 WL 6156062 (7th Cir. 2012), striking down Illinois's ban on public carriage of firearms delayed implementation of that decision for 180 days to allow the State of Illinois the opportunity to draft new carriage regulations consistent with the ruling. Plaintiffs will, of course, comply with any appropriately implemented regulations enacted by the State of Illinois regarding public carriage in the event that any such regulations are enacted.

5

one occasion, just a block from his home, three persons were viciously slashed with a knife, including an eleven-year-old girl who died from this attack. Mr. Hall also has experience with items being stolen from his home, his wife's minivan being burglarized while parked in the driveway of his home, his garage being broken into and theft of a Go-Kart attempted, and items being stolen from his truck when it was parked outside his home. Chicago's Carrying Ban, however, prohibits Mr. Hall from bearing arms in the driveway of his home or his garage, or carrying firearms in his neighborhood or elsewhere in Chicago, thereby preventing him from protecting his property, his family, or others.

18. Likewise, Mr. Hall, who is employed in the telecommunications industry and travels extensively in and around Chicago to visit clients, on occasion desires to carry a handgun for his self-defense when he is traveling late at night or into certain areas of the City, but is prohibited from doing so by Chicago's Carrying Ban.

19. Plaintiff Kathryn Tyler is over the age of 21, a veterinarian, and the owner of her own animal clinic, which, like her home, is located in the city of Chicago where she has lived for 28 years. Dr. Tyler has completed all of the training (four hours of classroom instruction and one hour of range training) required by the Chicago Municipal Code and has a current, valid, Chicago Firearms Permit ("CFP"). She owns a Makarov 9mm handgun and a shotgun, both registered with the City of Chicago. Like many Chicago residents, she is a law-abiding citizen and has no criminal record.

20. Dr. Tyler, on occasion, has a desire to carry in public a handgun for armed self-defense to her place of business. Dr. Tyler would much prefer to use a handgun rather than a long gun for such purposes; it is smaller and easier to carry. For example, in the past, the emergency alarm at her business has activated in the middle of the night, and she has had to

proceed alone to address the situation. She would publicly carry a handgun for personal self-defense in such circumstances were she not precluded from doing so under Chicago's Carrying Ban. If there were not a ban on publicly carrying a handgun in Chicago, Dr. Tyler would publicly carry in other situations as well.

21. Likewise, on occasion, Dr. Tyler has a desire to carry her handgun with her when she is on her property – for example, in her fenced-in backyard where she and her husband spend considerable time – as well as in her detached garage, but she is precluded from doing so by Chicago's Carrying Ban.

22. Under the code provisions set forth above, Plaintiffs Hall and Tyler face arrest, prosecution, and incarceration should they carry a handgun outside their home, including their fixed place of business, or carry a long gun outside their home or their fixed place of business.

23. The Chicago ban against carrying firearms harms Mr. Hall, Dr. Tyler, and other similar law-abiding residents of Chicago because they are at risk of loss of property, physical injury, and death if assaulted and unable to defend themselves. As the Seventh Circuit noted in *Moore v. Madigan*, 2012 WL 6156062 at *3, "a Chicagoan is a good deal more likely to be attacked on a sidewalk in a rough neighborhood than in his apartment on the 35th floor of the Park Tower. A woman who is being stalked or has obtained a protective order against a violent ex-husband is more vulnerable to being attacked while walking to or from her home than when inside."

24. If permitted to do so by law, Mr. Hall and Dr. Tyler and other law-abiding residents of Chicago would carry a loaded and accessible weapon either on their persons or in their cars for self-defense purposes. If Plaintiffs were to carry a firearm in an effort to protect

7

themselves, their families, and their property from attack, they would risk arrest, fines, and imprisonment under Chicago's Municipal Code.

## COUNT I

### (U.S. CONST., AMENDS. II & XIV, 42 U.S.C. § 1983)

25. The preceding paragraphs are incorporated herein.

26. Plaintiffs Hall and Tyler lawfully own handguns. But for the Chicago Municipal Code provisions set forth above, they would, consistent with state law, forthwith carry their handguns with them so that they could be used for self-protection and other lawful purposes.

27. Mr. Hall, Dr. Tyler, and other law-abiding residents of Chicago wish to carry their firearms for lawful defense from any unlawful, sudden, or deadly attack that unfortunately occurs almost every, if not every, day in Chicago. But for the aforementioned Chicago Carrying Ban, Mr. Hall and Dr. Tyler and other law-abiding residents of Chicago would, consistent with state law, carry firearms pursuant to the laws and Constitution of the United States of America.

28. These aforementioned provisions infringe upon, and impose an impermissible burden upon, the Plaintiffs' right to keep and bear arms under the Second and Fourteenth Amendment.

29. As a result of the aforementioned Municipal Code provisions and the enforcement thereof by Defendant and its agents and employees, Mr. Hall and Dr. Tyler and other law-abiding residents of Chicago are subjected to irreparable harm in that they are unable to carry firearms to protect themselves outside of Chicago's very limited definition of a home, subjecting them to endangerment and vicious attacks. The aforementioned Municipal Code provisions violate Plaintiffs' Constitutional rights as set forth herein.

WHEREFORE, Plaintiffs pray that this Honorable Court:

  A. Enter a declaratory judgment that MCC §§ 8-20-010 (to the extent it defines "home" and limits the carrying of a firearm to the places outlined in that definition), 8-20-020, 8-20-030, and 8-20-180(c) are null and void because such provisions infringe Plaintiffs' constitutional rights and therefore are in violation of the United States Constitution and laws of the United States, specifically the Second and Fourteenth Amendments and 42 U.S.C. § 1983;

  B. Enter injunctive relief prohibiting the Defendant and its officers, agents, and employees from enforcing MCC §§ 8-20-010 (to the extent it defines "home" and limits the carrying of a firearm to the places outlined in that definition), 8-20-020, 8-20-030, and 8-20-180(c).

  C. Award Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988;

  D. Grant such other relief as may be proper.

Respectfully submitted,

| | |
|---|---|
| Charles J. Cooper* | s/ Stephen Kolodziej |
| David H. Thompson* | Stephen Kolodziej |
| Nicole J. Moss* | Atty. ID# 6216375 |
| Peter A. Patterson* | FORD & BRITTON, PC |
| COOPER & KIRK, PLLC | 33 N. Dearborn Street, Suite 300 |
| 1523 New Hampshire Avenue, NW | Chicago, IL 60602 |
| Washington, D.C. 20036 | Tel: (312) 924-7500 |
| Tel: (202) 220-9600 | Fax: (312) 924-7516 |
| Fax: (202) 220-9601 | Email: skolodziej@fordbritton.com |
| Email: ccooper@cooperkirk.com | |
| *Counsel for Plaintiffs* | *Designated Local Counsel* |

*Application for admission *pro hac vice* forthcoming.

9